UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PNC BANK, N.A. and § <br> COLUMBIA HOUSING SLP § <br> CORPORATION, as partners in § <br> 2013 Travis Oak Creek, LP, and § <br> 2013 TRAVIS OAK CREEK, LP § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> 2013 TRAVIS OAK CREEK GP, LLC, § <br> 2013 TRAVIS OAK CREEK § <br> DEVELOPER, INC., § <br> CHULA INVESTMENTS, LTD., § <br> and RENE O. CAMPOS § <br> § <br> Defendants. § | Civil Action No. 3:17-cv-01521 |

**PNC BANK, N.A.'S, COLUMBIA HOUSING SLP CORPORATION'S, AND
<u>2013 TRAVIS OAK CREEK, LP'S FIRST AMENDED COMPLAINT</u>**

Plaintiffs PNC Bank, N.A. (the "**Investment Limited Partner**") and Columbia Housing SLP Corporation ("**Columbia Housing**") (together, the "**Limited Partners**") and 2013 Travis Oak Creek, LP (the "**Partnership**") (collectively, "**Plaintiffs**") file this First Amended Complaint against 2013 Travis Oak Creek GP, LLC (the "**First GP**"), 2013 Travis Oak Creek Developer, Inc. ("**Developer**"), Chula Investments, Ltd. ("**Chula**"), and Rene O. Campos ("**Campos**") (collectively, "**Defendants**").

**I.   PARTIES**

1.   PNC Bank, N.A. is a federally chartered bank with its principal place of business in Pittsburgh, Pennsylvania. It can be served with papers in this matter through its counsel of record.

2. Columbia Housing is an Oregon Corporation with its principal place of business in Portland, Oregon. It can be served with papers in this matter through its counsel of record.

3. 2013 Travis Oak Creek, LP is a Texas limited partnership. Its sole general partner is Columbia Housing SLP Corporation and its sole limited partner is PNC Bank, N.A. It can be served with papers in this matter through its counsel of record.

4. 2013 Travis Oak Creek GP, LLC is a Texas limited liability company. On information and belief, all its members are citizens and residents of Texas. It can be served with process through its registered agent for service of process, 2001 Agency Corporation, 14160 Dallas Parkway, Suite 800, Dallas, Texas 75254.

5. 2013 Travis Oak Creek Developer, Inc. is a Texas corporation with its principal place of business in Dallas, Texas. It can be served with process through its registered agent for service of process, 2001 Agency Corporation, 14160 Dallas Parkway, Suite 800, Dallas, Texas 75254.

6. Chula Investments, Ltd. is a Texas limited partnership. Its sole general partner is Chula Management, LLC, a Texas limited liability company. On information and belief, all the limited partners in Chula and all the members in its general partner are Texas citizens and/or residents. Chula can be served with process through its registered agent for service of process, 2001 Agency Corporation, 14160 Dallas Parkway, Suite 800, Dallas, Texas 75254.

7. Renee O. Campos is a Texas citizen and resident. He can be served with process at his home located at 3637 Binkley Ave., Dallas, Texas 75205 or wherever he may be found.

## II.   VENUE AND JURISDICTION

8. The Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1332(a) because (i) the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and (ii) there is complete diversity of citizenship between the Plaintiffs and

the Defendants. For purposes of diversity, the Limited Partners are domiciled in Pennsylvania and Oregon and the Partnership is therefore domiciled in both of those states; Defendants are domiciled in Texas. As described more fully below, Plaintiff seeks damages of more than $75,000.00.

9.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to this action occurred in this District.

### III.  BACKGROUND

**A. Background of the Parties' Relationship and Dispute**

10. On or about May 23, 2014, PNC Bank, N.A. and Columbia Housing, as the Limited Partners, and 2013 Travis Oak Creek GP, LLC, as the First GP, entered into that certain Amended and Restated Agreement of Limited Partnership of 2013 Travis Oak Creek, LP (the "**Partnership Agreement**"). The Partnership Agreement is the governing document of the Partnership. A copy of the Partnership Agreement is attached as **Exhibit A**. The Developer also executed the Partnership Agreement and agreed to be bound by certain provisions.

11. To guaranty the performance of the First GP under the Partnership Agreement, the Developer, Chula, and Campos (the "**Guarantors**") executed that certain Agreement of Guaranty dated May 23, 2014 (the "**Guaranty**"), for the benefit of the Partnership and the Limited Partners. The Guaranty is attached as Exhibit 5 to the Partnership Agreement.

12. The purpose of the Partnership is to acquire, construct, and/or rehabilitate as applicable, own, develop, operate, maintain, manage, lease, sell, mortgage, or otherwise dispose of an apartment complex and all other improvements constructed or rehabilitated on property (the "**Property**") located in Austin, Travis County, Texas, more commonly known as the Lucero Apartments (the "**Project**").

13. The Partnership has several lenders. Among these, by far the largest is JPMorgan Chase Bank, N.A. (the "**Construction Lender**"), which provided a loan of $26 million (the "**Construction Loan**") for the construction of the Lucero Apartments complex. The Construction Lender has a mortgage on the Property under a deed of trust that secures the Construction Loan. The Construction Loan had an original maturity date of May 23, 2017.

14. The Construction Loan is a temporary funding arrangement. The Partnership Agreement provides that, on or before the Construction Loan's maturity, the First GP is required to cause the Partnership to refinance the Construction Loan with a permanent loan to be made pursuant to that certain $27,300,000 Fannie Mae Forward Commitment for Fixed Rate Mortgage Loan dated May 21, 2014 (the "**Forward Commitment**") between the Partnership and PNC Bank, N.A. as a lender and not as a Limited Partner. However, the First GP caused the Partnership to default under, and the subsequent termination of, the Forward Commitment.

15. The First GP's actions were without justification or excuse and, on information and belief, were intended solely for its own benefit or that of its affiliates. As a result, the Partnership has become obligated to pay millions of dollars in fees under the Forward Commitment that it would not have otherwise incurred. Further, the Limited Partners' interests in the Partnership have suffered a serious diminution of value.

**B. The First GP Has Numerous Duties and Obligations to the Limited Partners Under the Partnership Agreement**

16. Under the Partnership Agreement, the First GP agreed to undertake duties and obligations on behalf of the Partnership for the benefit of the Limited Partners. Among these, the First GP is required to develop, construct, rehabilitate, and operate the Project. *See* Ex. A. § 6.7. Further, under the Partnership Agreement, the First GP was required to obtain "**Final Construction Completion**" by no later than the "**Completion Date**" of March 1, 2016. Final

Construction Completion was defined to mean the "construction and/or rehabilitation of the Project, as applicable, without lien (unless such liens have been bonded over to the satisfaction of the SLP) or defect in accordance with the Plans and Specifications" attached to the Partnership Agreement. *See* Ex. A at 7.

17. Because of the importance of completing construction in a timely manner and in keeping the Project within its original budget, the First GP unconditionally agreed to guarantee and to promptly pay any "**Development Costs**" (as defined in the Partnership Agreement) when due to the extent that allocated Partnership funds were insufficient to cover such costs. *Id.* § 6.7(j).

18. The First GP also agreed to cause the Partnership to promptly pay all Partnership debts when they become due and to perform all other Partnership obligations under all agreements and legal requirements applicable to the Partnership. *Id.* § 6.5(a). The First GP is also required to cause the Partnership to pay all its accounts payable within sixty (60) days of their respective due dates. *Id.*

19. The Partnership Agreement provides that if the First GP fails to fulfill any of its contractual duties and obligations, then an "**Event of Default**" occurs, which allows the Limited Partners to exercise, at their option, several remedies under the Partnership Agreement. Among these, the Limited Partners have the right to remove and replace the First GP and to require the First GP to repurchase their interests in the Partnership for a specified value determined under the Partnership Agreement.

### C. The First GP Has Defaulted Under the Partnership Agreement

20. The First GP has not complied with its duties and obligations under the Partnership Agreement. In particular, the First GP has allowed the Partnership to default on the

Construction Loan. Although the Construction Loan originally matured on May 23, 2017, the Construction Lender temporarily refrained from declaring a default until June 1, 2017. Because of the First GP's previous repudiation of the Forward Commitment, the Partnership was left without the ability to repay the Construction Loan by the extended maturity date. On June 2, 2017, the Construction Lender sent the Partnership a Notice of Default declaring the Partnership to be in formal default on the Construction Loan and reserving the right to exercise any and all remedies against the Partnership, including against any collateral. The Partnership faces a total loss of virtually all of its assets if the Construction Lender exercises its remedies under the mortgage on the Property, which will negatively affect both the Partnership and the Limited Partner's interests therein. A copy of that Notice of Default is attached as **Exhibit B**.

21. Further, the First GP has not completed construction of the Lucero Apartments as required under the Partnership Agreement. Instead, the First GP has allowed the defective installation of stucco on the buildings on the Property. This has prevented the Project from achieving Final Construction Completion as required by the Partnership Agreement.

22. The First GP's failure with respect to the stucco installation has resulted in a continuing need for an extensive rehabilitation of the apartment buildings on the Property, which has yet to occur. The Partnership will likely incur substantial additional expenses for this remediation, which it may or may not be able to recover from Weis Builders, the Project's general contractor. The general contractor has brought claims against the Partnership for nonpayment (the "**Contractor Litigation**") related to the stucco installation. Additionally, Weis Builders has filed a substantial mechanic's lien against the Property.

23. The First GP's failure to comply with its duties and obligations under the Partnership Agreement has resulted in numerous Events of Default. These include the failure to satisfy the following provisions of the Partnership Agreement:

(i) § 7.7(a)(2): Failing to achieve Final Construction Completion by March 1, 2016;

(ii) § 7.7(a)(5): Allowing multiple events to occur that entitle the Investment Limited Partner or Columbia Housing to exercise their right to require a repurchase of their interests in the Partnership, including:

   a. § 5.5(c)(1): The uncured declaration of default by the Construction Lender;

   b. § 5.5(c)(3): Default under and termination of the Forward Commitment;

   c. § 5.5(d)(3): Failure to achieve "Mortgage Loan Commencement" by the date required by the Forward Commitment or by 36 months after May 23, 2014; and

   d. § 5.5(f): Occurrence of other Event of Defaults under the Partnership Agreement;

(iii) § 7.7(a)(6): The First GP's breach of covenants, duties, obligations, representations, and warranties under the Partnership Agreement, including, but not limited to:

   a. § 6.7: Failing to take all action necessary or appropriate for the proper development, rehabilitation, maintenance and operation of the Project in accordance with the Partnership Agreement, the Project Documents and applicable laws and regulations;

   b. § 6.7(g): Failing to achieve Final Construction Completion by the Completion date with no physical or mechanical defects or deficiencies in the condition of

       the Project which would materially and adversely affect the Project or any portion thereof;

    c. § 6.7(j): Failing to guarantee and fund the payment of all Development Costs not otherwise covered by allocated funds;

    d. § 6.5(h): Allowing a default, Event of Default, and/or event which, with the giving of notice or passage of time or both, would constitute a default, has occurred and is continuing under the Partnership Agreement or any of the Project Documents; allowing a violation of any Lender or Agency requirement(s);

    e. § 6.5(k): Allowing the occurrence of an event that would constitute an Event of Withdrawal with respect to the First GP;

    f. § 6.5(w): Allowing a lien against the Project other than those created or permitted by the Project Documents or noted or excepted in the Title (as those terms are defined in the Partnership Agreement);

    g. § 6.5(x): Allowing a pending suit, the Construction Litigation, against the Partnership, which foreseeably would materially or adversely affect the operation of the Partnership or the Project; and

    h. Other breaches under the provisions of the Partnership Agreement;

(iv) § 7.7(a)(6): The Guarantors' failure to fully satisfy the First GP's obligations under the Partnership Agreement as required by the Guaranty; and

(v) § 7.7(a)(7): Allowing the Partnership to default on the Construction Loan and the Forward Commitment.

24. These failures are direct violations of the First GP's obligations, duties, representations, and warranties under the Partnership Agreement. The Limited Partners have previously notified the First GP of its failures, breaches, and defaults. Copies of the Limited Partners' notices to the First GP are attached as **Exhibits C** and **D**.

25. Under Section 6.6(d) of the Partnership Agreement, the First GP is also obligated to indemnify and hold the Limited Partners harmless for any losses, injuries, or damages of any kind whatsoever that the Limited Partners incur that arise out of or relate to any Event of Default or circumstances that would give rise to an Event of Default or to any negligence or misconduct of the First GP or any of its affiliates that has an adverse effect on the Partnership. Similarly, Section 7.8 of the Partnership Agreement requires that the First GP must pay on demand any costs of the Limited Partners in enforcing their rights and remedies under the Partnership Agreement, including all attorneys' fees and expenses. As of the present time, despite demand, the First GP has not fulfilled these indemnification obligations to the Limited Partners. This constitutes a breach of their covenants under the Partnership Agreement and is therefore an Event of Default.

**D. First GP's Failure to Repurchase**

26. Pursuant to Section 5.1 of the Partnership Agreement, the Limited Partners have the right to require the First GP to repurchase their respective interests in the Partnership upon the occurrence of any one of several enumerated events. Under Section 5.2, the amount of the repurchase price is equal to: all Capital Contributions (as defined in the Partnership Agreement) previously paid by the Limited Partners to the Partnership; plus interest on such Capital Contributions at an annual interest rate of 10% calculated from the date each Capital

Contribution was paid through the payment date of the purchase price; plus a number of other repurchase price elements. In total, this amount substantially exceeds $10,000,000.

27. Several events triggering the right to demand repurchase of the Limited Partner interests have occurred, including the following:

   i.  § 5.5(c)(1): Failure to cure the Partnership's default under the terms of the Forward Commitment;

   ii. § 5.5(c)(3): Failure to cause the Partnership to cure the defaults set forth in that certain Notice of Reservation of Rights dated May 23, 2017, from the Construction Lender;

   iii. § 5.5(d)(3): Failure to achieve "Mortgage Loan Commencement" by the date required by the Forward Commitment or by 36 months after May 23, 2014; and

   iv. § 5.5(f): The occurrence of other Events of Default under the Partnership Agreement.

28. On February 28, 2017, the Limited Partners sent a Notice of Default to the First GP concerning the failures under the Forward Commitment. That letter included a reservation of the right to require a repurchase of the Limited Partners' interests in the Partnership based on that Event of Default. On June 7, 2017, the Limited Partners sent a Demand for Repurchase of their interests in the Partnership to the First GP. *See* Ex. D. The First GP has yet to comply with that demand.

**E. The Guarantors' Defaults.**

29. As discussed above, the First GP's obligations are secured by the Guaranty executed by the Developer, Chula, and Campos. *See* Exhibit 5, § 2 to Ex. A. Under the Guaranty, the Guarantors "unconditionally guarantee[d] to the Partnership and to the Limited Partners the

full and prompt payment, performance, observance, compliance, and satisfaction of all obligations, covenants, representations, and warranties on the part of the First GP" under the Partnership Agreement "as and when due." *Id.*

30.     Despite this Guaranty, the Guarantors have failed to pay and satisfy the First GP's obligations under the Partnership Agreement. Specifically, they have failed to guarantee the First GP's obligation to pay Development Costs that are not satisfied using allocated Partnership funds. Further, they have not remedied the First GP's numerous breaches of the Partnership Agreement set forth above.

### F. Columbia Housing Properly Removed the First GP

31.     Because of the First GP's breaches of the Partnership Agreement, Columbia Housing elected to remove the First GP as general partner of the Partnership. *See* Ex. D. This was in full accord and compliance with the applicable provisions of the Partnership Agreement.

32.     The removal also constituted an Event of Withdrawal under the Partnership Agreement. Pursuant to Section 9.1 of the Agreement, upon the occurrence of that Event of Withdrawal, the First GP automatically ceased to be a general partner of the Partnership, and Columbia Housing became the replacement general partner. Furthermore, the First GP automatically relinquished to Columbia Housing (1) its entire economic interest in the Partnership and (2) all unpaid fees from the Partnership to the First GP and its affiliates, including without limitation, any unpaid fees, deferred development fees, reimbursements of amounts advanced or other amounts distributions, profits, deferred fees and other amounts, whether earned or not.

### G. The First GP Has Refused to Relinquish Control of the Partnership Despite Removal.

33. Despite Columbia Housing's proper removal of the First GP pursuant to the Partnership Agreement and despite the fact that the First GP has automatically relinquished any and all interest or right in the Partnership and is therefore no longer a partner in the Partnership, the First GP refuses to recognize its removal or to relinquish control of the Partnership's assets.

34. In particular, the First GP has refused to acknowledge to third parties that it has been removed; has refused to turn over Partnership assets (including, but not limited to, bank accounts, books and records, the Property, etc.) to Columbia Housing, the new general partner; and has refused to allow Columbia Housing's representatives onto the Property or to assume management of the Project. On at least one occasion on June 8, 2017, Columbia Housing's designated representatives were turned away when they peaceably requested that management of the apartment complex on the Property be turned over to them.

## IV.  CAUSES OF ACTION

### COUNT I
### (Breach of Contract: Partnership Agreement Duties and Obligations)

35. The Limited Partners hereby incorporate the allegations contained in paragraphs 1–34 above as if fully set forth herein.

36. The Partnership Agreement is a valid, binding contract, between the Limited Partners and the First GP.

37. The First GP breached the Partnership Agreement when it failed to perform in accordance with its terms, as set forth above. Specifically, the First GP has breached the following provisions in the Partnership Agreement by failing, without legal excuse or justification, to perform according to their terms: Section 6.5(h), Section 6.5(k), Section 6.5(w), Section 6.5(x), Section 6.6(d), Section 6.7, Section 6.7(g), Section 6.7(j), Section 7.7(a)(2),

Section 7.7(a)(5), Section 7.7(a)(6), Section 7.7(a)(7), and Section 7.8. As a direct result of these breaches, the Limited Partners have suffered damages in an amount that well exceeds the minimum jurisdictional limits of this Court.

38. Under the terms of the Partnership Agreement, the Limited Partners are entitled to recover such damages and their attorneys' fees through trial, appeal, and Supreme Court review.

39. All conditions precedent for the Limited Partners to recover have occurred or have been performed or have been waived.

## COUNT II
### (Breach of Contract: Failure to Repurchase)

40. The Limited Partners hereby incorporate the allegations contained in paragraphs 1–34 above as if fully set forth herein.

41. The First GP breached the Partnership Agreement by failing to repurchase the Limited Partners' interests in the Partnership upon demand as was required of it pursuant to Article V of the Partnership Agreement. As a direct result of these breaches, the Limited Partners have suffered damages in an amount that well exceeds the minimum jurisdictional limits of this Court.

42. Under the terms of the Partnership Agreement, the Limited Partners are entitled to recover such damages and their attorneys' fees incurred in bringing this action (through trial, appeal, and Supreme Court review) and in taking other efforts to enforce their rights under the Partnership Agreement.

43. All conditions precedent for the Limited Partners to recover have occurred or have been performed or have been waived.

## COUNT III
### (Suit on Guaranty)

44. Plaintiffs hereby incorporate the allegations contained in paragraphs 1–34 above as if fully set forth herein.

45. The Guarantors entered into the Guaranty for the benefit of all of the Plaintiffs. The Guaranty is a valid and binding agreement of guaranty, and Plaintiffs are express, intended beneficiaries of the obligations contained therein. Plaintiffs are entitled to direct recourse against the Guarantors to the extent that the First GP has not fulfilled any of its duties or obligations under the Partnership Agreement.

46. The Guarantors breached the Guaranty when they failed to perform the obligations required of the First GP under the Partnership Agreement and/or by failing to ensure that the First GP performed, observed, and complied with the same. As a direct result of the Guarantors' breaches, Plaintiffs have suffered damages in an amount that well exceeds the minimum jurisdictional limits of this Court.

47. Under the terms of the Guaranty, Plaintiffs are entitled to recover their attorneys' fees incurred in bringing this action through trial, appeal, and Supreme Court review and in taking other efforts to enforce their rights under the Guaranty.

48. All conditions precedent for Plaintiffs to recover under the Guaranty have occurred or have been performed or have been waived.

## COUNT IV
### (Declaratory Judgment)

49. Plaintiffs hereby incorporate the allegations contained in paragraphs 1–34 above as if fully set forth herein.

50. Plaintiffs request that this Court declare the rights of the parties under the various contracts. Specifically, Plaintiffs request that the Court declare that the First GP was properly

removed as general partner of the Partnership, that Columbia Housing has become the replacement general partner, and that an Event of Withdrawal has occurred under the Partnership Agreement. Plaintiffs further request that the Court declare that the First GP has automatically relinquished to Columbia Housing (1) its entire economic interest in the Partnership and (2) all unpaid fees from the Partnership to the First GP and its affiliates, including without limitation, any unpaid fees, deferred development fees, reimbursements of amounts advanced or other amounts distributions, profits, deferred fees and other amounts, whether earned or not.

51.     Further, Plaintiffs are entitled to injunctive relief, including temporary restraining order, preliminary injunction, and/or permanent injunction, prohibiting Defendants from taking any action that interferes with Columbia Housing's exercise of its rights and powers as the sole general partner in the Partnership.

52.     Pursuant to controlling, substantive law, Plaintiffs are also entitled to their attorneys' fees and costs through trial, appeal, and Supreme Court review as may be equitable and just.

## COUNT V
### (Breach of Fiduciary Duty)

53.     Plaintiffs hereby incorporate the allegations contained in paragraphs 1–34 above as if fully set forth herein.

54.     The First GP owed Plaintiffs fiduciary duties of care, loyalty, and good faith.

55.     The First GP breached its fiduciary duty of care to Plaintiffs by causing the Partnership to default on the Forward Commitment and to default on the Construction Loan. This was not a reasonable exercise of the First GP's business judgment.

56.     Further, the First GP breached its fiduciary duties of loyalty and good faith to Plaintiffs by taking actions that had a detrimental effect on the Partnership and the Limited

Partners' interests therein and that were calculated to cause a benefit to the First GP and its affiliates. In particular, it caused the default under the Forward Commitment for the purpose of attempting to pressure the Limited Partners into make additional capital contributions to the Partnership that were outside the terms of the Partnership Agreement.

57.     As a result of the First GP's breaches of its fiduciary duties, Plaintiffs were injured and the First GP benefited. Plaintiffs have suffered damages in an amount that exceeds the minimum jurisdictional limits of this Court. Plaintiffs sue herein to recover such damages.

58.     All conditions precedent for Plaintiffs to recover have occurred or have been performed or have been waived.

## V.     REQUEST FOR RELIEF

Plaintiffs respectfully request that the Court:

1.      Enter judgment in favor of the Limited Partners against the First GP for breach of the Partnership Agreement and against the Guarantors for breach of the Guaranty, and award the Limited Partners their actual direct, indirect, general, special, and consequential damages caused by those breaches;

2.      Enter a Declaratory Judgment providing that the First GP was removed as general partner of the Partnership, that Columbia Housing has become the replacement general partner, and that an Event of Withdrawal has occurred under the Partnership Agreement. Plaintiffs further request that the Court declare that the First GP has automatically relinquished to Columbia Housing (1) its entire economic interest in the Partnership and (2) all unpaid fees from the Partnership to the First GP and its affiliates, including without limitation, any unpaid fees, deferred development fees, reimbursements of amounts advanced or other amounts distributions, profits, deferred fees and other amounts, whether earned or not;

3. Enter injunctive relief, including temporary restraining order, preliminary injunction, and/or permanent injunction, prohibiting the Defendants from taking any action that interferes with Columbia Housing's exercise of its rights as the general partner in the Partnership;

4. Award the Limited Partners their reasonable and necessary attorneys' fees, costs, and expenses incurred in this action through trial, appeal, and Supreme Court review and in taking steps to enforce their rights under the Partnership Agreement and the Guaranty;

5. Award the Limited Partners prejudgment and post-judgment interest and costs; and

6. Grant the Limited Partners such other and further relief to which they may be justly entitled.

| | |
|---|---|
| Dated: June 8, 2017. | By: /s/ *Robert M. Hoffman* <br> Robert M. Hoffman <br> Texas Bar No. 09788200 <br> robhoffman@andrewskurth.com <br> James C. Bookhout <br> Texas Bar No. 24087187 <br> jamesbookhout@andrewskurth.com <br> **ANDREWS KURTH KENYON LLP** <br> 1717 Main Street, Suite 3700 <br> Dallas, Texas 75201 <br> Telephone:   (214) 659-4400 <br> Facsimile:    (214) 659-4401 <br> <br> **ATTORNEYS FOR PLAINTIFFS** <br> **PNC BANK, N.A. AND COLUMBIA HOUSING** <br> **SLP CORPORATION** |