# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| PNC BANK, N.A. and | § | |
| COLUMBIA HOUSING SLP | § | |
| CORPORATION, as partners in | § | |
| 2013 Travis Oak Creek, LP, and | § | |
| 2013 TRAVIS OAK CREEK, LP | § | |
| | § | |
| **Plaintiffs,** | § | Civil Action No. 3:17-cv-01521-K |
| | § | |
| v. | § | |
| | § | |
| 2013 TRAVIS OAK CREEK GP, LLC, | § | |
| 2013 TRAVIS OAK CREEK | § | |
| DEVELOPER, INC., | § | |
| CHULA INVESTMENTS, LTD., | § | |
| and RENE O. CAMPOS | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION, AND BRIEF IN SUPPORT

Robert M. Hoffman
Texas Bar No. 09788200
robhoffman@andrewskurth.com
James C. Bookhout (*seeking admission*)
Texas Bar No. 24087187
jamesbookhout@andrewskurth.com
ANDREWS KURTH KENYON LLP
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone:   (214) 659-4400
Facsimile:   (214) 659-4401

**ATTORNEYS FOR PLAINTIFFS
PNC BANK, N.A., COLUMBIA HOUSING SLP
CORPORATION, AND 2013 TRAVIS OAK
CREEK, L.P.**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ......................................................................................................1

II.     BACKGROUND AND FACTS ..............................................................................4

        A.      Background of the Parties' Relationship and Dispute ...............................4

        B.      The First GP Had Numerous Duties and Obligations to the Limited
                Partners Under the Partnership Agreement................................................5

        C.      The First GP Defaulted Under the Partnership Agreement .......................6

        D.      Columbia Housing Properly Removed the First GP..................................8

        E.      The First GP Refuses to Relinquish Control of the Partnership Despite Its
                Removal ....................................................................................................9

        F.      Procedural History ...................................................................................9

III.    LEGAL STANDARD............................................................................................10

IV.     ARGUMENT AND AUTHORITIES...................................................................11

        A.      Plaintiffs have Demonstrated a Likelihood of Success on the Merits ...................11

        B.      Plaintiffs Have Demonstrated Irreparable Injury...................................15

        C.      The Balance of the Hardships Weighs in Favor of a Preliminary Injunction ........17

        D.      An Injunction Serves the Public Interest ...............................................18

V.      CONCLUSION.....................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2013 Travis Oak Creek GP, LLC et al. v. PNC Bank, N.A. et al.*,
  Case No. 1:17-cv-00560-RP ...................................................................................................10

*American Hosp. Supply Corp. v. Hospital Prods. Ltd.*,
  780 F.2d 589 (7th Cir. 1986) ...............................................................................................15

*Caplan v. Fellheimer Eichen Braverman & Kaskey*,
  68 F.3d 828 (3d Cir. 1995)....................................................................................................17

*City of Dall. v. Delta Airlines, Inc.*,
  Civ. A. No. 3:15-CV-2069-K, 2016 WL 98604 (N.D. Tex. Jan. 8, 2016) .......................11, 15

*Courtroom Scis., Inc. v. Andrews*,
  Civ. A. No. 3:09-CV-251-0, 2009 WL 1313274 (N.D. Tex. May 11, 2009) .........................11

*Davis v. Mineta*,
  302 F.3d 1104 (10th Cir. 2002) ............................................................................................17

*Fed. Savings & Loan Ins. Corp. v.* Dixon,
  835 F.2d 554 (5th Cir. 1987) ................................................................................................16

*Free Mkt. Found. v. Reisman*,
  540 F. Supp. 2d 751 (W.D. Tex. 2008)..................................................................................11

*Haltom Oil Co. v. Phillips Petroleum Co.*,
  304 F.2d 95 (5th Cir. 1962) ..................................................................................................18

*Joshua Ropa v. Fox*,
  4:16-cv-00752, 2016, WL 6248743 (E.D. Tex. Oct. 26, 2016).............................................16

*Lone Star Steakhouse & Saloon, Inc. v. Adams*,
  148 F. Supp. 2d 1141 (D. Kan. 2001) ...................................................................................18

*Marett v. Scott*,
  Civ. A. 299-cv-2444-D-B, 2000 WL 491857 (N.D. Miss. Apr. 10, 2000) ...........................16

*Oracle Real Estate Holdings I LLC v. Adrian Holdings Co. I LLC*,
  582 F.Supp.2d 616 (S.D.N.Y. 2008)...................................................................................15, 16

*Provident Life and Acc. Ins. Co. v. Knott*,
  128 S.W.3d 211 (Tex. 2003).................................................................................................18

*Speaks v. Kruse*,
    445 F.3d 396 (5th Cir. 2006) ....................................................................10

*In re St. Casimir Development Corp.*,
    358 B.R. 24 (S.D.N.Y. 2007).....................................................................17

**Statutes**

TEX. BUS. ORG. CODE § 153.155(a) .........................................................12

TEX. BUS. ORG. CODE § 153.155(a)(3) .....................................................19

**Rules**

Federal Rules of Civil Procedure Rule 65 ....................................................1

Plaintiffs PNC Bank, N.A. ("**PNC**"), Columbia Housing SLP Corporation ("**Columbia Housing**"), and 2013 Travis Oak Creek, LP (the "**Partnership**") (collectively the "**Plaintiffs**") respectfully submit this Motion for Temporary Restraining Order and Preliminary Injunction, and Brief in Support, pursuant to Rule 65 of the Federal Rules of Civil Procedure, against Defendants 2013 Travis Oak Creek GP, LLC (the "**First GP**"), 2013 Travis Oak Creek Developer, Inc. (the "**Developer**"), Chula Investments, Ltd. ("**Chula**"), and Rene O. Campos ("**Campos**") (collectively, the "**Defendants**").

## I.      INTRODUCTION

The Court should enter injunctive relief in favor of Plaintiffs to prevent Defendants, including the First GP, the Partnership's former general partner, from maintaining their attempts to unlawfully usurp control of the Partnership and its assets.

The Partnership was created to build, maintain, and operate a low-income multifamily apartment complex known as the Lucero Apartments in Austin, Texas (the "**Project**"). The First GP is an affiliate of both the Developer and the property manager, Eureka Multifamily Group, LP (the "**Property Manager**"). The Partnership is governed by a written Amended and Restated Agreement of Limited Partnership of 2013 Travis Oak Creek, LP dated May 23, 2014 (the "**Partnership Agreement**").

The First GP committed undisputed defaults under the Partnership Agreement. In particular, it:

- Failed to achieve completion of construction on the Project even more than a *year past* the contractual deadline of March 1, 2016;

- Allowed the existence of a multimillion dollar mechanic's lien and related litigation against the Partnership; and

- Allowed the Partnership to default on a $26 million secured senior construction loan, resulting in the impending threat of foreclosure.

As expressly provided by the Partnership Agreement, Columbia Housing sent a notice of removal to the First GP. Under the terms of the parties' agreement, upon service of that notice, the First GP *automatically*: (i) was removed as the general partner; (ii) transferred all of its interest in the Partnership to Columbia Housing; and (iii) relinquished any and all attendant rights and interests in the Partnership to Columbia Housing. Prior to the First GP's removal, PNC and Columbia Housing owned approximately 99.99% of the Partnership, and the First GP owned approximately 0.01%. Post-removal, PNC and Columbia Housing own 100%. Thus, under the Partnership's self-executing provisions—that the First GP expressly agreed to—the First GP is no longer a partner in the Partnership and has no further right to exercise control over its assets as general partner.

But the First GP won't let go. It continues to hold Partnership funds; to deal with and wrongfully represent the Partnership in interactions with tenants and other third parties; and to block Plaintiffs' rightful representatives from entry onto the Partnership's property. In short, the First GP, with the aid of the other Defendants, has prevented Columbia Housing from exercising any of its lawful rights as general partner of the Partnership. Instead, the First GP has filed a separate, duplicative lawsuit in state court in Travis County, Texas seeking to evade this Court's jurisdiction over these matters. For example, it requested not only injunctive relief but also the appointment of a receiver over the Partnership—a party to this case. That second-filed action, which came two days after the filing of the instant lawsuit, has been removed to and remains pending before the U.S. District Court for the Western District of Texas.

Based on the facts above, the Plaintiffs have demonstrated a likelihood of success on the merits. Defendants have failed to comply with the clear and unambiguous terms of the Partnership Agreement. When Columbia Housing served a notice of removal, the First GP was automatically removed as general partner in the Partnership and Columbia Housing became the sole general partner in its place based on the express terms of the Partnership Agreement. That is, the removal *has already occurred*. The First GP's removal is the last peaceable status quo under the parties' contract. But the First GP, in yet another direct violation of the Partnership Agreement, has refused to relinquish control of the Partnership and its funds despite its contractually agreed upon removal and lack of any further ownership interest in the Partnership.

The First GP's failure to acknowledge and comply with its removal is causing imminent and irreparable harm to the Plaintiffs. The Partnership cannot have two masters. Columbia Housing urgently needs clear authority to act on behalf of the Partnership, including to negotiate with the Partnership's senior lender (who is threatening to foreclose), hire property managers, collect rents, hold funds, and maintain the Lucero Apartments complex. But the First GP is refusing to accept its automatic removal and is misrepresenting its role to the Partnership's tenants and counterparties. In so doing, it is depriving Plaintiffs of their legal right to meaningful control of the Partnership. Given that the First GP is responsible for the events leading up to its removal as general partner, the balance of the equities favors an injunction because the danger that the First GP's continued misconduct will disrupt the completion of the Project or result in foreclosure outweighs any speculative or self-inflicted harm to the First GP. For these same reasons, Plaintiffs' request for injunctive relief serves the public interest.

Accordingly, Plaintiffs seek an order: (1) finding that Defendant 2013 Travis Oak Creek GP, LLC was removed as the general partner of the Partnership and (2) enjoining Defendants

(and all those acting in active concert with them) from taking any action that interferes with Columbia Housing's exercise of its role, authority, powers, control, rights, duties, obligations, or privileges as sole general partner of the Partnership.

## II.    BACKGROUND AND FACTS

### A.  Background of the Parties' Relationship and Dispute.

On or about May 23, 2014, PNC Bank, N.A. and Columbia Housing, as the "**Limited Partners**," and 2013 Travis Oak Creek GP, LLC, as the First GP, entered into the Partnership Agreement. *See* Appendix ("**App.**") 5 (Exhibit A, Declaration of David Hasselwander, "**Hasselwander Decl.**" ¶ 3). The Partnership Agreement is the governing document of the Partnership. *See* App. 5 (Hasselwander Decl. ¶ 3). The Developer also executed the Partnership Agreement and agreed to be bound by certain provisions. *See* App. 13 (Exhibit A-1 to Hasselwander Decl., "**Partnership Agreement**").

The purpose of the Partnership is to acquire, construct, and/or rehabilitate as applicable, own, develop, operate, maintain, manage, lease, sell, mortgage, or otherwise dispose of an apartment complex and all other improvements constructed or rehabilitated on property (the "**Property**") located in Austin, Travis County, Texas, more commonly known as the Lucero Apartments. *See* App. 5 (Hasselwander Decl. ¶¶ 2, 4).

The Partnership has several lenders. *See* App. 5 (Hasselwander Decl. ¶ 5). Among these, by far the largest is JPMorgan Chase Bank, N.A. (the "**Construction Lender**"), which provided a loan of $26 million (the "**Construction Loan**") for the construction of the Lucero Apartments complex. *See* App. 5 (Hasselwander Decl. ¶ 5). The Construction Lender has a mortgage on the Property under a deed of trust that secures the Construction Loan. *See* App. 5–6 (Hasselwander Decl. ¶ 6). The Construction Loan had an original maturity date of May 23, 2017. *See id.*

The Construction Loan is a temporary funding arrangement. *See* App. 6 (Hasselwander Decl. ¶ 6). The Partnership Agreement provides that, on or before the Construction Loan's maturity, the First GP is required to cause the Partnership to refinance the Construction Loan with a permanent loan to be made pursuant to that certain $27,300,000 Fannie Mae Forward Commitment for Fixed Rate Mortgage Loan dated May 21, 2014 (the "**Forward Commitment**") between the Partnership and PNC Bank, N.A. as a lender and not as a Limited Partner. *See* App. 6 (Hasselwander Decl. ¶ 6). However, the First GP caused the Partnership to fail to close on the replacement loan under the terms of the Forward Commitment by the contractual deadline and refused to pay extension fees, the result of which was a default under and the irrevocable termination of the Forward Commitment. *See* App. 6 (Hasselwander Decl. ¶ 6). As a result, the Partnership has become obligated to pay millions of dollars in fees under the Forward Commitment that it would not have otherwise incurred. *See* App. 6 (Hasselwander Decl. ¶ 6).

### B. The First GP Had Numerous Duties and Obligations to the Limited Partners Under the Partnership Agreement.

Under the Partnership Agreement, the First GP agreed to undertake duties and obligations on behalf of the Partnership for the benefit of the Limited Partners. *See* App. 6 (Hasselwander Decl. ¶ 7). Among these, the First GP was required to develop, construct, rehabilitate, and operate the Project. *See* App. 6 (Hasselwander Decl. ¶ 7); App. 59 (Partnership Agreement § 6.7). Further, under the Partnership Agreement, the First GP was required to obtain "**Final Construction Completion**" by no later than the "**Completion Date**" of March 1, 2016. *See* App. 6 (Hasselwander Decl. ¶ 7). Final Construction Completion was defined to mean the "construction and/or rehabilitation of the Project, as applicable, without lien (unless such liens have been bonded over to the satisfaction of the SLP) or defect in accordance with the Plans and Specifications" attached to the Partnership Agreement. *See* App. 6 (Hasselwander Decl. ¶ 7).

Because of the importance of completing construction in a timely manner and in keeping the Project within its original budget, the First GP unconditionally agreed to guarantee and to promptly pay any "**Development Costs**" (as defined in the Partnership Agreement) when due, to the extent that allocated Partnership funds were insufficient to cover such costs. *See* App. 7 (Hasselwander Decl. ¶ 8); App. 61 (Partnership Agreement § 6.7(j)).

The First GP also agreed to cause the Partnership to promptly pay all Partnership debts when they become due and to perform all other Partnership obligations under all agreements and legal requirements applicable to the Partnership. *See* App. 7 (Hasselwander Decl. ¶ 9 ); App. 51 (Partnership Agreement § 6.5(a)). The First GP is also required to cause the Partnership to pay all its accounts payable within sixty (60) days of their respective due dates. *See* App. 51 (Partnership Agreement § 6.5(a)).

Under the Partnership Agreement, if the First GP failed to fulfill any of its contractual duties and obligations, then an "**Event of Default**" occurs, which allows Columbia Housing to exercise the right to remove and replace the First GP. *See* App. 7 (Hasselwander Decl. ¶ 10 ).

### C.  The First GP Defaulted Under the Partnership Agreement.

The First GP has not complied with its duties and obligations under the Partnership Agreement. *See* App. 7 (Hasselwander Decl. ¶ 11).

First, the First GP has not completed construction of the Lucero Apartments as required under the Partnership Agreement. *See* App. 8 (Hasselwander Decl. ¶ 12). Instead, the First GP has allowed the defective installation of stucco on the buildings on the Property. *See* App. 8 (Hasselwander Decl. ¶ 12). This has prevented the Project from achieving Final Construction Completion as required by the Partnership Agreement, which is another Event of Default under the Partnership Agreement. *See* App. 8 (Hasselwander Decl. ¶ 12).

Second, the general contractor has brought claims against the Partnership for nonpayment (the "**Contractor Litigation**") related to the stucco installation. *See* App. 8 (Hasselwander Decl. ¶ 13). Additionally, the general contractor has filed a substantial mechanic's lien against the Property. *See* App. 8 (Hasselwander Decl. ¶ 13); App. 204 (Declaration of James C. Bookhout ("**Bookhout Decl.**"), Ex. B-3, Mechanic's Lien).

Third, although the Construction Loan originally matured on May 23, 2017, the Construction Lender temporarily refrained from declaring a default until June 1, 2017. *See* App. 7 (Hasselwander Decl. ¶ 11). On June 2, 2017, the Construction Lender sent the Partnership a Notice of Default declaring the Partnership to be in formal default on the Construction Loan and reserving the right to exercise any and all remedies against the Partnership, including against any collateral. *See* App. 7 (Hasselwander Decl. ¶ 11); App. 173 (Exhibit A-2 to Hasselwander Decl., "**Chase Notice of Default**"). The Partnership faces a total loss of virtually all of its assets if the Construction Lender exercises its remedies under the mortgage on the Property, which will negatively affect both the Partnership and the Limited Partner's interests therein. *See* App. 7 (Hasselwander Decl. ¶ 11).

The First GP's failure to comply with its duties and obligations under the Partnership Agreement has resulted in numerous Events of Default. *See* App. 8 (Hasselwander Decl. ¶ 14). These include the failure to satisfy the following provisions of the Partnership Agreement:

(i) § 7.7(a)(2): Failing to achieve Final Construction Completion by March 1, 2016, *see* App. 70, (Partnership Agreement);

(ii) § 7.7(a)(6): Breach of covenants, duties, obligations, representation, and warranties under the Partnership Agreement, including, but not limited to:

      a.  § 6.5(w): Allowing a lien against the Project other than those created or permitted by the Project Documents or noted or excepted in the Title (as those terms are defined in the Partnership Agreement), *see* App. 56, (Partnership Agreement);

      b.  § 6.5(x): Allowing a pending suit, the Construction Litigation, against the Partnership, which foreseeably would materially or adversely affect the operation of the Partnership or the Project, *see* App. 56, (Partnership Agreement); and

  (iii)  § 7.7(a)(7): Allowing the Partnership to default on the Construction Loan and the Forward Commitment, *see* App. 71, (Partnership Agreement § 7.7(a)).[1]

These failures were direct violations of the First GP's obligations, duties, representations, and warranties under the Partnership Agreement. *See* App. 8 (Hasselwander Decl. ¶ 14). PNC and Columbia Housing have notified the First GP of its failures, breaches, and defaults. *See* App. 8 (Hasselwander Decl. ¶ 14); App. 176–88, (Exhibits A-3 (the "**Notice of Default**" and A-4 to Hasselwander Decl.).

### D.  Columbia Housing Properly Removed the First GP.

Because of the First GP's defaults—any one of which would have sufficed—Columbia Housing removed the First GP as general partner of the Partnership on or about June 7, 2017. *See* App. 8 (Hasselwander Decl. ¶ 16). Once sent, the notice of removal *automatically*: (i) removed the First GP as a general partner in the Partnership; (ii) effectuated a transfer of the First GP's interest in the Partnership to Columbia Housing; (iii) transferred all other remaining interests in and attendant rights to Columbia Housing. *See* App. 72 (Partnership Agreement

---

[1] This list includes only those breaches relevant to this Motion. Further breaches are described in the Plaintiffs' live pleading in this case.

§ 7.7(c)). The removal also constituted an Event of Withdrawal under the Partnership Agreement. *See* App. 9 (Hasselwander Decl. ¶ 17); App. 78 (Partnership Agreement § 9.1). Pursuant to Section 9.1 of the Agreement, upon the occurrence of that Event of Withdrawal, the First GP automatically ceased to be a partner of the Partnership. In other words, after delaying completion of construction for over a year and allowing a substantial mechanic's lien against the Property, among other defaults, the First GP's role running the Partnership ended.

### E.  The First GP Refuses to Relinquish Control of the Partnership Despite Its Removal.

Despite Columbia Housing's removal of the First GP pursuant to the Partnership Agreement, and despite the fact that the First GP has automatically relinquished any and all interest or right in the Partnership and is therefore no longer a partner in the Partnership, the First GP refuses to leave. *See* App. 9 (Hasselwander Decl. ¶ 18).

In particular, the First GP continues to advise third parties that it is the general partner; continues dominion and control over Partnership assets (including bank accounts, books and records, the Property, etc.); and is blocking Columbia Housing's representatives from entry onto the Property. *See* App. 9  (Hasselwander Decl. ¶ 19). On at least one occasion on June 8, 2017, Columbia Housing's designated representatives were turned away when they peaceably requested that management of the apartment complex on the Property be turned over to them. *See* App. 9 (Hasselwander Decl. ¶ 19).

### F.  Procedural History.

On June 8, 2017, Plaintiffs PNC and Columbia Housing filed this lawsuit before this Court against Defendants. Three of the Defendants—the First GP, the Developer, and Chula— have been served with process. Plaintiffs expect Mr. Campos to be served shortly. Although they

have not yet appeared, Defendants are aggressively represented by Ken Chaiken of Chaiken & Chaiken, P.C.

On the morning of June 10, 2017, Plaintiffs filed their First Amended Complaint, which added the Partnership as a Plaintiff and included additional allegations regarding Defendants' actions after the removal of the First GP.

On June 10, 2017, the First GP filed lawsuit against PNC and Columbia Housing in state court in Travis County, Texas. The First GP fraudulently joined the Partnership as a plaintiff, even though the First GP is no longer a partner in the Partnership and even though it has relinquished all of its interest in the Partnership to Columbia Housing. In the Second Filed Action, the First GP seeks appointment of a receiver over the Partnership as well as injunctive relief. On that same date, PNC and Columbia Housing removed that case to the U.S. District Court for the Western District of Texas, where it is currently pending as *2013 Travis Oak Creek GP, LLC et al. v. PNC Bank, N.A. et al.*, Case No. 1:17-cv-00560-RP, before the Honorable Robert Pitman, U.S. District Judge.

### III.   LEGAL STANDARD

A temporary restraining order or preliminary injunction "should issue if the movant establishes: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006). An application for preliminary injunction is "not a trial on the merits." *Free Mkt. Found. v. Reisman*, 540 F. Supp. 2d 751, 756 (W.D. Tex. 2008). Nor is the movant "'required to prove [his] entitlement to summary judgment' for purposes of preliminary injunction." *City of*

*Dall. v. Delta Airlines, Inc.*, Civ. A. No. 3:15-CV-2069-K, 2016 WL 98604, at *7 (N.D. Tex. Jan. 8, 2016) (citation omitted). "'Where the other factors are strong, a showing of some likelihood of success on the merits will justify temporary injunctive relief.'" *Courtroom Scis., Inc. v. Andrews*, Civ. A. No. 3:09-CV-251-0, 2009 WL 1313274, at *8 (N.D. Tex. May 11, 2009).

## IV.   ARGUMENT AND AUTHORITIES

### A.  Plaintiffs have Demonstrated a Likelihood of Success on the Merits.

*1.  The First GP Committed Multiple Serious Defaults Under the Partnership Agreement.*

As discussed above, the First GP has committed a number of defaults, any one of which justified Columbia Housing's self-effectuating notice of removal. In particular, the First GP has, among numerous other defaults:

- Failed to achieve Final Construction Completion even more than a *year past* the deadline of March 1, 2016;

- Allowed the existence of a multimillion dollar mechanic's lien and related litigation against the Partnership;

- Allowed the Partnership to default on the Construction Loan, resulting in the impending threat of foreclosure by the Construction Lender; and

- Caused a default under and termination of the Forward Commitment, resulting in a multimillion dollar fee that the Partnership must now pay.

*2.  Columbia Housing Has the Authority and Absolute Right to Remove and Replace the First GP and to Automatically Assume Its Control of and Interest in the Partnership, as It Did.*

Under Texas law, "a person ceases to be the general partner of a limited partnership" when "the general partner is removed as a general partner in accordance with the partnership

agreement." TEX. BUS. ORG. CODE § 153.155(a). Here, Section 7.7 of the Partnership Agreement provides that "the SLP [may] elect[] to remove a General Partner, [and] *such removal shall occur automatically and without any further action by any Partner upon the giving of notice thereof* … ." *Id.* at 72 (Ex. A-1 § 7.7(c)) (emphasis added). "Upon the removal of the General Partner … the removed General Partner's Partnership interest shall be sold to the SLP or its designee" automatically and without the necessity of any action by the Partnership or the other partners and "any and all rights of the removed General Partner … shall transfer automatically to the SLP or its designee." *Id.* at 72 (Ex. A-1 § 7.7(c)(1)–(2)). The First GP irrevocably appointed Columbia Housing as its lawful attorney, with full power of substation and coupled with an interest, with "power to … take all action and do all things necessary or appropriate to implement and carry out the provisions of [] Section 7.7." *Id.* at 70 (Ex. A-1 § 7.7).

3.  *Columbia Housing Properly Exercised Its Right to Remove the First GP and, as a Result, Has Automatically Become the Sole General Partner in the Partnership.*

On February 28, 2017, Columbia Housing sent the First GP the Notice of Default under the Partnership Agreement identifying several important breaches of the Partnership Agreement, including the First GP's failure to comply with all requirements under the Forward Commitment and the existence of a mechanic's lien affecting the Property. *Id.* at 178 (Ex. A-3 at 2).

Despite the First GP's receipt of the Notice of Default, the situation continued to deteriorate. In particular, the Construction Lender served two different notices on the Partnership, including one on June 2, 2017, setting forth the occurrence of a formal default under the Construction Loan and reserving the rights to pursue any and all remedies against the Partnership. *Id.* at 173–75 (Ex. A-2).

On or about June 7, 2017, Columbia Housing sent a proper notice of removal under Section 7.7 and notice of an Event of Withdrawal under Section 9.1 of the Partnership

Agreement. *See id.* at 181–88 (Ex. A-4) (the "**Notice of Removal**"). The Notice of Removal was accompanied by the required $100 check under Section 7.7 of the Partnership Agreement. *See id.* at 188 (Ex. A-4).

As provided in the Partnership Agreement, upon Columbia Housing's Notice of Removal, the First GP was automatically removed from its role as General Partner and as a partner in the Partnership. *See id.* at 72 (Ex. A-1 § 7.7(b)). Further, the First GP automatically relinquished any and all interest in the Partnership to Columbia Housing. *See id.* As a result, the First GP is not only no longer a general partner in the Partnership, it has no legal or equitable interest in the Partnership whatsoever.

4. *The First GP Is Usurping Columbia Housing's Roles as General Partner.*

Despite receiving Columbia Housing's Notice of Removal, the First GP is maintaining control over the Partnership and its assets when it has no legal right to. Instead, the First GP has actively claimed that it is still the sole general partner in the Partnership, to the point of filing a duplicative lawsuit in state court in Travis County in the Partnership's name. *See* Case No. 1:17-cv-00560-RP (W.D. Tex.) (the "**Second-Filed Action**").

For example, on multiple occasions, the First GP's counsel, acting on behalf of his client, has refused to acknowledge the reality of the situation, claiming that "the Partnership [] remains under the control of 2013 Travis Oak Creek GP, LLC" and that the Plaintiffs have "misrepresented to various third parties that 2013 Travis Oak Creek GP, LLC is no longer the General Partner of … 2013 Travis Oak Creek, LP." *See* App. 196 (Bookhout Decl. ¶ 3); App. 201–03 (Ex. B-2). Similarly, he has stated that "[t]he general partner has not been removed by your clients and its purported attempts to remove the general partner are not self-effectuating." Again, acting on behalf of the First GP, counsel threatened to take actions adverse to PNC and Columbia Housing's interest in the Partnership:

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, AND BRIEF IN SUPPORT**                                     **Page 13**

> [U]nderstand that if you or your law firm represent that you are counsel for the partnership or that your clients are the general partner, we intend to sue you and your firm for that wrongful misconduct. ***And in this regard, we shall be notifying all parties with whom the general partner is continuing to do business, that the general partner is and remains 2013 Travis Oak Creek GP, LLC***.

*Id.* at 196, 199 (Bookhout Decl. ¶ 2 & Ex. B-1) (emphasis added).

Further, the First GP interfered with the termination of the Partnership's property manager and, in so doing, wrongfully asserted control over the Lucero Apartments complex, the Partnership's main asset. *See* App. 210–11 (Exhibit C, Declaration of Twala Gann ("**Gann Declaration**") ¶¶ 4–6). Apparently, the First GP has instructed the Property Manager to not only prevent Columbia Housing from performing as general partner but also to refuse to accept service of the Partnership's Notice of Termination of the property management agreement. App. 9 (Hasselwander Decl. ¶ 19 ).

Finally, the First GP has sought to use the Second-Filed Action to evade the Court's authority. In that case, the First GP has requested extraordinary remedies, including appointment of a receiver over the Partnership and injunctive relief. The First GP requested that the receiver be given authority to specifically carry out the First GP's desired actions for the Partnership. *See* Case No. 1-17-cv-00560-RP, Docket Entry No. 2.

The First GP's refusal to recognize the Notice of Removal is without any good faith factual or legal basis and borders on the delusional. As discussed, the First GP committed a number of serious, material defaults under the Partnership Agreement, these constituted "Events of Default" under the Agreement, and these Events of Default were more than sufficient for Columbia Housing to exercise its right to remove the First GP as a general partner.

**B.  Plaintiffs Have Demonstrated Irreparable Injury**.

The "premise of the preliminary injunction is that the remedy available at the end of the trial will not make the plaintiff whole…." *American Hosp. Supply Corp. v. Hospital Prods. Ltd.*, 780 F.2d 589, 594 (7th Cir. 1986). As such, to establish irreparable harm, a movant must show "'a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm.'" *Delta Airlines,* 2016 WL 98604, at *15 (citation omitted). Federal courts have recognized that "where [a] contract has 'intrinsic' value that cannot easily be quantified, the bargained-for provisions may provide a basis for injunctive relief." *Oracle Real Estate Holdings I LLC v. Adrian Holdings Co. I LLC*, 582 F.Supp.2d 616 (S.D.N.Y. 2008).

In *Oracle*, the court found that irreparable harm existed where the party seeking the injunction would have lost its bargained-for right under a profit sharing agreement to assume control of the real estate development company it had invested in. *Oracle Real Estate Holdings I LLC*, 582 F.Supp.2d 626. Specifically, the court held that the right to assume control upon an event of default was explicitly bargained for in the profit sharing agreement, that it would be "difficult if not impossible to value" this right to take control of the company, and by the time litigation concluded, this right could be "meaningless or substantially diminished." *See id*. The agreement in place reflected the clear understanding between the parties that the investing company would be entitled to control of the real estate development company upon an event of default. *See id*. Moreover, the value of control over a company is highly dependent on the function of the skill and resources of the party exercising control, thereby making it difficult to assess. *See id*. Finally, the court noted that because the property at issue was subject to foreclosure proceedings, the likelihood that an adequate remedy, such as specific performance,

would be available upon completion of the litigation, was low, making the risk of irreparable harm particularly potent. *See id*.

Much like *Oracle*, the bargained-for remedy established in the Partnership Agreement, has "intrinsic value that cannot easily be quantified." *Id*. The right to control, manage, and administer the Project for the next several years is significant and nonmonetary. Moreover, given the defaults on the Construction Loan and under the Forward Commitment as a result of the First GP's actions, the Partnership is facing an imminent threat of irreparable harm, and it needs to determine who is authorized to make binding decisions on its behalf in order to rectify the situation. Despite its removal, the First GP refuses to return the Partnership's funds; interferes with the Partnership's relationship with its tenants; refuses to let Columbia Housing's representatives onto the Property; and threatens to sue Plaintiffs' counsel for attempting to assert Columbia Housing's and the Partnership's rights. *See Fed. Savings & Loan Ins. Corp. v.* Dixon, 835 F.2d 554 (5th Cir. 1987) (irreparable harm where funds held in constructive trust were at risk of dissipation, thereby depriving plaintiff of ability to recover them after trial); *Joshua Ropa v. Fox*, 4:16-cv-00752, 2016, WL 6248743 (E.D. Tex. Oct. 26, 2016) (irreparable harm from use of plaintiff's funds without permission); *Marett v. Scott*, Civ. A. 299-cv-2444-D-B, 2000 WL 491857 (N.D. Miss. Apr. 10, 2000) (irreparable harm where claim to property would result inability to develop it and effectively threaten existence of the movant's business). Further, Columbia Housing needs clear authority to negotiate with the Construction Lender on behalf of the Partnership.

Critically, Columbia Housing's bargained-for right of removal is self-executing, and therefore all the more valuable to the Plaintiffs in this case. When the removal occurs automatically under the terms of the Partnership Agreement, it is appropriate for the court to

enforce it. *See In re St. Casimir Development Corp.*, 358 B.R. 24, 39 (S.D.N.Y. 2007) (holding that court would have enforced self-executing removal of general partner in limited partnership as provided by partnership agreement upon showing of proper notice under agreement). As such, removal has already occurred. However, the First GP has unambiguously stated its intention to reassert its former authority over the Partnership. *See* App. 199 (Ex. B-1 at 1).

Without a preliminary injunction, the First GP will be able to wreak havoc on the Partnership. That would essentially nullify any benefit the Plaintiffs bargained for under the Partnership Agreement. The Court should not permit the First GP to repudiate the parties' agreement and to wrongfully exercise control over the Partnership's assets even though it is no longer a partner. The Plaintiffs desperately need the Court's assistance to ensure that Columbia Housing's and the Partnership's rights are not irreparably damaged.

### C.  The Balance of the Hardships Weighs in Favor of a Preliminary Injunction.

Any harm that Defendants may suffer from an injunction is self-inflicted and outweighed by the irreparable harm incurred by the Plaintiffs. *See Davis v. Mineta*, 302 F.3d 1104, 1116 (10th Cir. 2002) (balance of harms weighed in favor of injunction because "defendants are largely responsible for their own harm"); *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995) (dismissing movant's request due to self-inflicted harm).

Allowing the First GP to operate the Partnership, act as the trustee for its funds, and to tout to the world that it is the general partner, when it has no interest in the Partnership, would be inequitable. Moreover, Defendants cannot demonstrate any harm stemming from their removal as general partner. Indeed, for the reasons set forth above and in the accompanying evidence, any resulting "harm" is self-inflicted. That is not sufficient to overcome Plaintiffs' request for injunctive relief. The First GP failed to comply with the Partnership Agreement and must bear the consequences of its actions.

For these reasons, there is no countervailing harm of Defendants to balance against the imminent and irreparable harm facing Plaintiffs.

**D.  An Injunction Serves the Public Interest**.

This motion meets the final injunction prong because the "the public interest always lies with the truth." *Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1150 (D. Kan. 2001). Here, the truth is that the Plaintiffs and the Defendants entered into the Partnership Agreement with the understanding that upon the occurrence of certain events, the First GP would, upon notice, be automatically removed as a general partner in the Partnership.

A contract or agreement entered into between two parties is not a non-binding statement of their preferences; rather, it is an attempt by the parties to allocate the risks and opportunities associated with their venture. The Court's role is not to redistribute these risks and opportunities, but to enforce the allocation as the parties have agreed upon them. *See Provident Life and Acc. Ins. Co. v. Knott*, 128 S.W.3d 211 (Tex. 2003). Critically, this requires enforcing the agreement as drafted by the parties, according to the terms employed. *See Haltom Oil Co. v. Phillips Petroleum Co.*, 304 F.2d 95 (5th Cir. 1962). To do otherwise would significantly abridge the parties' freedom of contract and would create uncertainty as to the enforceability of contracts entered into on a regular basis.

The Partnership Agreement is clear. Upon the occurrence of an Event of Default, the removal of the General Partner "shall occur automatically and without further action by any Partner upon the giving of notice thereof…." *See* App. 72 (Partnership Agreement, § 7.7(c)). The First GP caused several Events of Default to occur and Columbia Housing elected to remove it as the general partner. As soon as Columbia Housing sent notice to the First GP of its removal, it was complete and self-effectuating. Failure to enforce this removal would be contrary to well-established contract law and would destroy public confidence in the validity of negotiated

agreements. Moreover, it would be contrary to Texas law requiring the enforcement of contractual removal provisions. *See* TEX. BUS. ORG. CODE § 153.155(a)(3). Thus, the public interest weighs strongly in favor of entering an injunction in favor of Plaintiffs.

### V.   CONCLUSION

Plaintiffs PNC and Columbia Housing respectfully request that the Court grant its motion for preliminary injunction and enter an order: (1) finding that Defendant 2013 Travis Oak Creek GP, LLC was removed as the general partner of the Partnership, and (2) enjoining Defendants (and any person acting in active concert with them) from taking any action that interferes with Columbia Housing's singular exercise of its role, authority, powers, control, rights, duties, obligations, or privileges as general partner of the Partnership.

Dated: June 12, 2017.
By:  /s/ *Robert M. Hoffman*

Robert M. Hoffman
Texas Bar No. 09788200
robhoffman@andrewskurth.com
James C. Bookhout
Texas Bar No. 24087187
jamesbookhout@andrewskurth.com
**ANDREWS KURTH KENYON LLP**
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone:   (214) 659-4400
Facsimile:   (214) 659-4401

**ATTORNEYS FOR PLAINTIFFS
PNC BANK, N.A., COLUMBIA HOUSING SLP
CORPORATION, AND 2013 TRAVIS OAK
CREEK, LP**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that, pursuant to L.R. 5.1(d), on June 12, 2017, a copy of the foregoing document was served on counsel for the Defendants via email.

<u>*/s/ Robert M. Hoffman*</u>
Robert M. Hoffman