UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| PNC BANK, N.A. and §<br>COLUMBIA HOUSING SLP §<br>CORPORATION, as partners in §<br>2013 Travis Oak Creek, LP, and §<br>2013 TRAVIS OAK CREEK, LP §<br>§<br>Plaintiffs, §<br>§<br>v. §<br>§<br>2013 TRAVIS OAK CREEK GP, LLC, §<br>2013 TRAVIS OAK CREEK §<br>DEVELOPER, INC., §<br>CHULA INVESTMENTS, LTD., §<br>and RENE O. CAMPOS §<br>§<br>Defendants. § | Civil Action No. 1:17-cv-00584-RP |

**PLAINTIFFS' SUPPLEMENT IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiffs PNC Bank, N.A. ("**PNC**"), Columbia Housing SLP Corporation ("**Columbia Housing**"), and 2013 Travis Oak Creek, LP (the "**Partnership**") (collectively, "**Plaintiffs**") submit this Supplement in Support of their pending Motion for Temporary Restraining Order and for Preliminary Injunction (the "**Motion**") against Defendants 2013 Travis Oak Creek GP, LLC (the "**First GP**"), 2013 Travis Oak Creek Developer, Inc. (the "**Developer**"), Chula Investments, Ltd. ("**Chula**"), and Rene O. Campos ("**Campos**") (collectively, "**Defendants**").

**A. The First GP Has Committed Serious, Independent Events of Default Under the Partnership Agreement.**

As described in the Motion, the First GP has committed a number of independent defaults under the Partnership Agreement.[1] Any one of these Events of Default is, standing on its own,

---

[1] Capitalized terms not defined herein have the same meaning given to those terms in the Motion.

**PLAINTIFFS' SUPPLEMENT IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**     Page 1
DAL:959312.2

sufficient grounds for the immediate removal of the First GP as a general partner in the Partnership. Under the terms of the Partnership Agreement, Columbia Housing delivered a notice of removal to the First GP. *See* App. 182–88 (Notice of Removal).[2] The outstanding Events of Default by the First GP include:

    i.    Promoting a voluntary receivership proceeding in this Court (App. 23–24, Partnership Agreement at 5–6);

    ii.    Failing to achieve Final Construction Completion by March 1, 2016—a delay of more than one year (App. 70, Partnership Agreement § 7.7(a)(2));

    iii.    Allowing a mechanic's lien to continue to exist against the Partnership's property (*see* App. 56, Partnership Agreement § 6.5(w));

    iv.    Allowing the existence of a pending suit against the Partnership with the general contractor for the Project that will likely materially or adversely effect on the operation of the Partnership that has not been bonded against (*see* App. 56, Partnership Agreement § 6.5(x));

    v.    Existence of a default under the Forward Commitment (*see* App. 71, Partnership Agreement § 7.7(a)(7)); and

    vi.    Existence of a default under the Construction Loan (*see* App. 71, Partnership Agreement § 7.7(a)(7)).

Again, any of these occurrences is an independent Event of Default under the Partnership Agreement. *See* App. 70–71 (Partnership Agreement § 7.7(a)). As provided by Sections 7.7(b) and (c) of that Agreement, if Columbia Housing serves a notice of removal based on any single Event of Default, the General Partner is automatically removed as a general partner and

---

[2] Citations to "App." refer to the Appendix to the Motion.

automatically relinquishes its interest to the Partnership to Columbia Housing. *See* App. 72 (Partnership Agreement §§ 7.7(b)–(c)); *see also* App. 78 (Partnership Agreement § 9.1). The First GP would have to convince the Court that each of the six Events of Default has not occurred to reverse the automatic removal upon notice of June 7.

### B. The First GP's Excuses Are Unavailing.

For the reasons set forth below, the First GP's excuses for these Events of Default are not valid either under the applicable law or the facts. Moreover, since the First GP does not, and cannot, dispute or provide excuse for four of the Events of Default—a delay of Final Construction Completion lasting over a year; embroiling the Partnership in a receivership proceeding; allowing a pending lawsuit against the Partnership; and allowing a mechanic's lien against the Partnership—the First GP's alleged excuses regarding the two remaining defaults are immaterial to the First GP's removal.

#### 1. *The "Breakage Fee" Is A Red Herring.*

The First GP argues that the so-called "Breakage Fee"—i.e., the fee that the Partnership incurred for not closing on the loan contemplated by the Forward Commitment—is unenforceable. This is neither true nor enough to excuse the First GP's many other defaults under the Partnership Agreement.

First, contrary to the First GP's argument, the Forward Commitment had a contractually mandated expiration date by which the Partnership was obligated to close on the permanent mortgage loan contemplated in that agreement. While the First GP paid the first fee required to extend that expiration date, it refused to pay the second one. Thus, with no further extension, the Forward Commitment terminated according to its terms. The First GP can hardly blame PNC for simply abiding by an express agreement between it and the Partnership.

Second, the Breakage Fee was provided for by the express terms of the Forward Commitment. The First GP knew about the Breakage Fee from the moment it executed the Partnership Agreement, and it cannot now complain that it has to pay it. Moreover, the "Breakage Fee" is an obligation of the Partnership that the First GP no longer has the right or standing to challenge following its removal as general partner. Further, the evidence presented at the preliminary injunction hearing will show that an extensive economic analysis supports the amount of the Breakage Fee and imminently demonstrating its enforceability.

Third, neither PNC nor Columbia Housing has "admitted" that the Breakage Fee is anything other than what is required under the Forward Commitment. The quote from David Hasselwander to which the First GP refers was actually included in the Partnership's 2016 audited financial reports as prepared by and at the direction of the First GP. *See* Case No. 1:17-cv-00560-RP, Doc. No. 9-2 at 2. In the quoted email from Mr. Hasselwander, he expressly states: "Please let me know if these are acceptable to [] you as I tried to state them as fact without denying or accepting liability on any party to the transaction." *Id.* Moreover, the email also requests the inclusion of the following: "On February 28, 2017, the limited partners issued a default letter to the partnership claiming violations under the partnership agreement. … As of April 10, 2017, the matter remains unresolved." *Id.* The February 28, 2017 default letter expressly refers to defaults under the Forward Commitment. *See* App. 178. As to the exact language that the First GP quotes, it simply says: "***the Partnership*** views any potential claim to be fully defensible, with exposure not to exceed $1 million." *See* Case No. 1:17-cv-00560-RP, Doc. No. 9-2 at 2 (emphasis added). At the time Mr. Hasselwander consented to the inclusion of this language in the audited reports, the First GP was still the general partner in the Partnership.

Thus, the "Partnership's" view on this matter in no way bound either of PNC or Columbia Housing as limited partners. In sum, the First GP has simply taken this language out of context.

Finally, the Breakage Fee is immaterial to the issues at hand. Even if the First GP were correct regarding the enforceability of the Breakage Fee, this would only relate to the Event of Default concerning the Forward Commitment. It would not in any way affect the other five Events of Default described above, all of which would remain outstanding. Therefore, it is little more than a red herring and does nothing to alleviate the First GP of its responsibility for these other defaults.

2. *PNC and Columbia Housing Are Not Obligated to Consent to the First GP's Replacement Loan or to Provide Additional Capital.*

Under the Partnership Agreement, Columbia Housing has the right, in its sole and complete discretion, to give or withhold consent to certain loans to the Partnership. *See* App. 21, 48 (Partnership Agreement at 3 & § 6.2(d)). Further, while PNC is obligated to make certain capital contributions, it must do so only if a number of conditions precedent are met.

In this case, the evidence at the preliminary injunction hearing will show that the First GP proposed a temporary—not permanent—bridge loan to refinance the Construction Loan and that PNC and Columbia Housing *conditionally* consented to the same. *See* Case No. 1:17-cv-00560-RP, Doc. No. 9-4 at 3–4. The condition was that the First GP deliver final documents for the new bridge loan to PNC and Columbia Housing for their approval. *Id.* This condition meant that the First GP would have to demonstrate a means of resolving all of the other issues facing the Partnership, including the Breakage Fee, mechanic's lien, and Construction Litigation, in order to get such final documents; otherwise, the bridge lender would refuse to move forward. *See id.* The First GP has never presented PNC and Columbia Housing with any such solution. As a result, the condition they set forth has not been met. Moreover, threats, breaches of fiduciary

duty, and bullying have continued apace. *See, e.g.*, App. 199 ("[U]nderstand that if you or your law firm represent that you are counsel for the partnership or that your clients are general partner, we intend to sue you and your firm for that wrongful misconduct.").

Similarly, the evidence at the preliminary injunction hearing will show that the First GP did not meet the conditions to the funding of further equity installments. One such condition was the lack of any Event of Default. *See* 34 (Partnership Agreement § 3.2(b)(6)). Another was achievement of Final Construction Completion. *See* App. 33 (Partnership Agreement § 3.2(a)(2)(i)). As described in detail in the Motion and as set forth above, a number of Events of Default have occurred and the First GP failed to achieve Final Construction Completion. As a result, PNC was not obligated to make any further capital contributions to the Partnership. Given the First GP's repeated failure to perform, no prudent investor would ever waive these conditions and throw good money in after bad.

Finally, even if these were valid excuses, the First GP would still only have resolved the Construction Loan default. Again, five other Events of Default would remain.

3. *The Automatic Removal Language in the Partnership Agreement Is Fully Enforceable.*

Contrary to the First GP's claim, Texas law gives full force and effect to the provisions in a limited partnership agreement to which the parties agreed regarding the automatic removal of a general partner. *See* TEX. BUS. ORG. CODE § 153.155(a). Further, Courts in other jurisdictions, applying identical statutes, have held that self-effectuating removal language in a partnership agreement is enforceable. *In re St. Casimir Development Corp.*, 358 B.R. 24, 39 (S.D.N.Y. 2007).

Here, the Partnership Agreement expressly provides that, upon service of a notice of removal, the First GP is automatically removed as partner in the Partnership and relinquishes its

interest and all authority to Columbia Housing. *See* Motion at 12; App. 72 (Partnership Agreement §§ 7.7(b)–(c)). Columbia Housing complied with the removal provisions of the Partnership Agreement. Accordingly, the First GP has been fully removed from the Partnership. That was the status quo as of June 7, 2017.

| | |
|---|---|
| Dated: June 16, 2017. | By: /s/ *David P. Whittlesey*<br>Robert M. Hoffman<br>Texas Bar No. 09788200<br>robhoffman@andrewskurth.com<br>James C. Bookhout (*seeking admission*)<br>Texas Bar No. 24087187<br>jamesbookhout@andrewskurth.com<br>**ANDREWS KURTH KENYON LLP**<br>1717 Main Street, Suite 3700<br>Dallas, Texas 75201<br>Telephone:   (214) 659-4400<br>Facsimile:   (214) 659-4401<br><br>David P. Whittlesey<br>Texas Bar No. 00791920<br>dwhittlesey@andrewskurth.com<br>**ANDREWS KURTH KENYON LLP**<br>111 Congress Avenue, Suite 1700<br>Austin, Texas 78701<br>Telephone:   (512) 320-9200<br>Facsimile:   (512) 320-9292<br><br>**ATTORNEYS FOR PLAINTIFFS PNC BANK, N.A., COLUMBIA HOUSING SLP CORPORATION, AND 2013 TRAVIS OAK CREEK, LP** |

## CERTIFICATE OF SERVICE

      I certify that, on June 16, 2017, a copy of the foregoing document was served on counsel for the Defendants via email and on all counsel of record via the Court's CM/ECF facilities.

                                  */s/ David P. Whittlesey*
                                  David P. Whittlesey