IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| 2013 TRAVIS OAK CREEK GP, LLC and 2013 TRAVIS OAK CREEK, LP,<br><br>    Plaintiffs,<br><br>v.<br><br>PNC BANK, N.A. and COLUMBIA HOUSING SLP CORPORATION,<br><br>    Defendants. | § § § § § § § § § § § § | 1:17-cv-560-RP |
| PNC BANK, N.A.; COLUMBIA HOUSING SLP CORPORATION; and 2013 TRAVIS OAK CREEK, LP;<br><br>    Plaintiffs,<br><br>v.<br><br>2013 TRAVIS OAK CREEK GP, LLC; 2013 OAK CREEK DEVELOPER, INC.; CHULA INVESTMENTS, LTD; and RENE O. CAMPOS,<br><br>    Defendants. | § § § § § § § § § § § § § § § § | 1:17-cv-584-RP |

**ORDER**

Before the Court in the above-entitled matters are 2013 Travis Oak Creek GP, LLC's Verified Emergency Motion for Appointment of a Receiver, and/or for a Temporary Restraining Order and Preliminary Injunction, filed June 12, 2017, (Case No. 1:17-cv-560, Dkt. 9); and PNC Bank, N.A. and Columbia Housing SLP Corporation's Motion for a Temporary Restraining Order and Preliminary Injunction, (Case No. 1:17-cv-584; Dkt. 10). Both motions are also brought in the name of 2013 Travis Oak Creek, LP, a partnership whose rightful general partner is the subject of the dispute underlying this litigation. The Court held a hearing on the two competing emergency motions on June 16, 2017. For the following reasons, the Court concludes that: (1) both applications

for a temporary restraining order should be denied; (2) both motions for a preliminary injunction should be set for a full evidentiary hearing; and (3) the motion for appointment of a receiver should be carried pending resolution of the parties' respective requests for injunctive relief.

## I. Background

On May 23, 2014, 2013 Travis Oak Creek GP, LLC ("2013 Travis Oak Creek GP"); PNC Bank, N.A. ("PNC Bank"); and Columbia Housing SLP Corporation ("Columbia Housing") entered into an amended partnership agreement ("the Partnership Agreement"), forming 2013 Travis Oak Creek, LP ("the Partnership"). Under the Partnership Agreement, 2013 Travis Oak Creek GP served as the Partnership's general partner, whereas PNC Bank and Columbia Housing served as limited partners. The purpose of the Partnership is to develop, operate, maintain, and manage an apartment complex in Austin, Texas known as the Lucero Apartments ("the Property").

The Partnership financed the construction of the Property with a $26 million loan ("the Construction Loan") from J.P. Morgan Chase Bank, N.A. ("the Construction Lender"). The Construction Loan was secured with a mortgage on the Property and had an original maturity date of May 23, 2017. The Partnership Agreement provides that, prior to its maturation, the Construction Loan will be refinanced with a permanent loan to be issued by PNC Bank pursuant to a forward commitment backed by Fannie Mae ("the Replacement Loan").

After construction of the Property was complete and the apartments occupied, 2013 Travis Oak Creek GP discovered several severe defects in the installation of the Property's exterior stucco. Discovery of these defects led to a dispute between 2013 Travis Oak Creek GP and the general contractor responsible for constructing the Property. This dispute ultimately resulted in the general contractor placing a multimillion dollar mechanic's lien on the Property and filing a lawsuit in state court against the Partnership to foreclose on the lien. The ongoing litigation between the Partnership and the general contractor required the Partnership to extend the closing date for the

2

Replacement Loan to be issued by PNC Bank. The Partnership and PNC Bank agreed on a revised

May 2017 closing date to coincide with the maturation of the Construction Loan. The extension of

the closing date for the Replacement Loan led to the Partnership owing substantial fees to PNC

Bank and Fannie Mae. However, the amount and timing of the fees owed is the subject of a

significant and ongoing disagreement between the parties. Although the parties contest the character

and sequence of the preceding events, the fee disagreement eventually led to the Partnership failing

to timely close the Replacement Loan. The failure of the Partnership to close the Replacement Loan

in turn led to the Partnership defaulting on the Construction Loan. On June 2, 2017, the

Construction Lender sent the Partnership a notice of default declaring its right to exercise any

available remedies against the Partnership, including its right to foreclose on the Property.

On or around June 7, 2017, Columbia Housing sent 2013 Travis Oak Creek GP a notice

stating that it was being removed as general partner of the Partnership and that its financial interest

in the Partnership and its responsibilities as the Partnership's general partner were being transferred

to Columbia Housing. Both Columbia Housing and PNC Bank contend that in the event the general

partner defaults on its obligations under the Partnership Agreement, the agreement allows Columbia

Housing to remove and replace the general partner. Columbia Housing and PNC Bank also contend

that the relevant removal provisions of the Partnership Agreement are automatic and self-executing,

meaning that as of the moment that 2013 Travis Oak Creek GP was served with a notice of removal

it immediately ceased to be the Partnership's general partner. 2013 Travis Oak Creek GP disputes

that it has been rightfully removed from the Partnership and continues (1) to represent to third-

parties that it is the Partnership's general partner, (2) to manage and operate the Property, and (3) to

exercise dominion and control over the Partnership's assets, including the Property.

On June 8, 2017, PNC Bank and Columbia Housing filed a lawsuit in the United States

District Court for the Northern District of Texas against 2013 Travis Oak Creek GP and its three

3

guarantors. The lawsuit seeks injunctive relief preventing 2013 Travis Oak Creek GP from interfering with Columbia Housing's exercise of its purported rights as general partner of the Partnership. On the morning of June 10, PNC Bank and Columbia Housing amended their complaint to add the Partnership itself as a plaintiff. Also on the morning of June 10, Travis Oak Creek GP filed a mirror-image case in state court in Travis County, Texas. Later that day, PNC Bank and Columbia Housing removed the mirror-image case to this Court, asserting federal diversity jurisdiction.

On June 12, 2017, PNC Bank and Columbia Housing filed an emergency motion in the Northern District requesting entry of a temporary restraining order and a preliminary injunction. On the same day, Travis Oak Creek GP filed its own emergency motion in this Court, requesting the appointment of a temporary receiver to manage the Partnership and the Property as well as entry of a temporary restraining order and a preliminary injunction. The next day, this Court held a hearing on 2013 Travis Oak Creek GP's motion and subsequently stayed the action pending a resolution of the proper venue for this litigation by the district court in the Northern District, where the first-filed action was pending. On June 15, the Northern District, acting on its own motion, determined that venue was proper in the Western District and transferred the first-filed action here.

Thus, there are now two related cases pending before this Court: first, the case originally filed in state court by 2013 Travis Oak Creek GP, Case Number 1:17-cv-560 (hereinafter, "the '560 case"), and the case originally filed by PNC Bank and Columbia Housing in the Northern District, Case Number 1:17-cv-584 (hereinafter, "the '584 case"). 2013 Travis Oak Creek GP has objected to consolidating the two cases on the basis that this Court lacks jurisdiction and in support of that contention has filed a motion to dismiss in the '584 case for a lack of diversity jurisdiction. In light of that objection and the unresolved jurisdictional issue, the two cases are presently proceeding separately.

4

In each case there is a motion for emergency relief pending, with both motions asking the Court to clarify what entity presently acts as general partner of and thereby controls the Partnership. Those emergency motions are now before the Court.

## II. Jurisdiction

Before proceeding, the Court must determine whether it has jurisdiction to hear the pending motions. In their complaint in the '584 case and their notice of removal in the '560 case, PNC Bank and Columbia Housing assert federal diversity jurisdiction under 28 U.S.C. § 1332, which gives federal district courts original jurisdiction over civil actions "between . . . citizens of different States." To satisfy this requirement, there must be "complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 90 (2005).

In the '584 case, 2013 Travis Oak Creek GP has filed a motion to dismiss for lack of subject matter jurisdiction. (Case No. 1:17-cv-584, Dkt. 22). In the motion, 2013 Travis Oak Creek GP, a Texas citizen, asserts that it is the general partner of the Partnership and therefore the Partnership is a citizen of Texas. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) ("The citizenship of a limited partnership is based upon the citizenship of each of its partners."). Because the defendants in the case, 2013 Oak Creek GP and its guarantors, are also citizens of Texas, it follows that there is a lack of complete diversity that denies this Court's jurisdiction.[1]

In the '560 case, 2013 Travis Oak Creek GP has not formally moved for remand, but has suggested on the record that the Court may lack jurisdiction for similar reasons as in the '584 case. The issue presents itself somewhat differently in the '560 case, however, because the parties agree that the Partnership, a named plaintiff in the case, is a citizen of Oregon and Pennsylvania, the states

---

[1] The Court notes a weakness to this argument: if 2013 Travis Oak Creek GP is the general partner of the Partnership, seemingly PNC Bank and Columbia Savings, as only limited partners, lack the capacity or standing to bring a lawsuit on behalf of the Partnership. Arguably, the appropriate remedy is not to dismiss the case for lack of jurisdiction but to dismiss the Partnership as plaintiff for lack of standing, thereby creating diversity and saving this Court's jurisdiction.

where its limited partners are citizens. As the limited partners are also the named defendants in the '560 case, there is no dispute that the parties are nominally non-diverse. Yet, PNC Bank and Columbia Housing assert, in their notice of removal, that the Partnership was fraudulently joined because 2013 Travis Oak Creek GP, no longer a partner in the Partnership, lacks a basis to bring a lawsuit on its behalf.

In both cases, the issue of jurisdiction turns on the central issue underlying the merits of this litigation: was 2013 Travis Oak Creek GP rightfully and automatically removed as general partner of the Partnership? The answer to that question dictates both the citizenship of the Partnership and which entities have the standing and capacity to bring a lawsuit on behalf of the Partnership. If 2013 Oak Creek GP was automatically removed as general partner, then (1) the Partnership is a citizen of Pennsylvania and Oregon, the states where its two remaining partners are citizens; (2) in the '560 case, the Partnership was improperly named as a plaintiff because 2013 Oak Creek GP has no authority to bring a lawsuit on its behalf; and (3) in both the '560 and '584 cases there is complete diversity between the properly named parties, with 2013 Oak Creek GP and its guarantors (all citizens of Texas) on one side and PNC Bank (a citizen of Pennsylvania), Colombia Housing (a citizen of Oregon), and, in the '584 case, the Partnership (a citizen of Pennsylvania and Oregon) on the other side. There is thus no way to disentangle the jurisdictional issue from the numerous factual issues present in this litigation.

A court may assess its subject matter jurisdiction by looking to: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir.1996)). In examining its jurisdiction, "the district court is empowered to consider matters of fact which may be in dispute," but a case should be dismissed for lack of subject matter jurisdiction

"only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.* (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir.1998)).

Here, the relevant jurisdictional facts are hotly contested. However, the parties have not yet been afforded an opportunity to create an evidentiary record, and the Court is therefore not yet in a position to resolve factual disputes. At this stage of the litigation, the Court may appropriately find jurisdiction in reliance on the pleadings. PNC Bank and Columbia Housing have alleged facts in their complaint in the '584 case and in their notice of removal in the '560 case that if proven true would vindicate this Court's jurisdiction. Accordingly, the Court is satisfied that is has jurisdiction to resolve the pending motions for emergency relief. In making this determination, the Court does not deny 2013 Travis Oak Creek GP's pending motion to dismiss on the basis of subject matter jurisdiction. Rather, the Court defers ruling of that motion until it has had an adequate opportunity to resolve the underlying factual issues.

Moreover, because the Court is satisfied that, at least at this stage, it has jurisdiction, it overrules 2013 Travis Oak Creek GP's jurisdiction-based objection to consolidation and concludes the '560 case should be consolidated into the '584 case.

### III. Injunctive Relief

Both parties have moved for preliminary injunctive relief. PNC Bank and Columbia Housing move for entry of a temporary restraining order and a preliminary injunction declaring that 2013 Travis Oak Creek GP was removed as the general partner of the Partnership and enjoining 2013 Travis Oak Creek GP from interfering with Columbia Housing's exercise of its rights as the substitute general partner. Conversely, 2013 Travis Oak Creek GP moves for entry of a temporary restraining order and a preliminary injunction declaring that it remains the general partner of the

Partnership and enjoining PNC Bank and Columbia Housing from interfering with the exercise of its rights attendant to its status as general partner.

However, at the hearings held on these motions, 2013 Travis Oak Creek GP stated that it seeks only the injunctive relief necessary to enforce an order appointing a receiver and later expressed skepticism that either side is entitled to an injunction. It is thus unclear to what degree 2013 Travis Oak Creek GP continues to seek injunctive relief. It is clear that PNC Bank and Columbia Housing continue to seek both a temporary restraining order and a preliminary injunction. It is similarly clear that the core of the relief requested by 2013 Travis Oak Creek GP is the appointment of a receiver. The following analysis thus focuses on but is not limited to PNC Bank and Columbia Housing's application for a temporary restraining order and a preliminary injunction. 2013 Travis Oak Creek GP's application for appointment of a receiver is discussed in the next section of this order.

A temporary restraining order or preliminary injunction "should issue if the movant establishes: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006).

The Court begins with the first factor: whether the movant has demonstrated a substantial likelihood of success on the merits. PNC Bank and Columbia Housing argue that 2013 Travis Oak Creek GP has committed numerous, inarguable defaults on the terms of the Partnership Agreement and that the Partnership Agreement unambiguously allows Columbia Housing to remove 2013 Travis Oak Creek GP in the event of default. The default events alleged by PNC Bank and Columbia Housing are 2013 Travis Oak Creek GP's: (1) failing to achieve final construction

completion by a deadline of March 1, 2016; (2) allowing a mechanic's lien to be placed on the Property and a related lawsuit to be filed against the Partnership; (3) allowing the Partnership to default on the Construction Loan resulting in an impending threat of foreclosure; and (4) allowing default on the Fannie Mae forward commitment, causing the Partnership to lose the Replacement Loan and to incur substantial fee obligations. In supplemental briefing, PNC Bank and Columbia Housing also allege that 2013 Travis Oak Creek GP's pending request for the Court to appoint a receiver is in of itself a default on the Partnership Agreement.

2013 Travis Oak Creek GP's responses are many. Generally, it argues that the alleged defaults either (1) did not occur, (2) arose out of circumstances created by the limited partners, or (3) occurred only with the consent of the limited partners. Moreover, 2013 Travis Oak Creek GP asserts that the limited partners also defaulted on the Partnership Agreement and that their prior breach relieves it from its obligations under the agreement. Finally, 2013 Travis Oak Creek GP argues that the Partnership Agreement's removal provisions are not enforceable under Texas law.

In short, 2013 Travis Oak Creek GP disagrees with nearly every assertion made by PNC Bank and Columbia Housing. Determining the rightful general partner of the Partnership appears to require resolution of a variety of factual and legal disputes. With only an array of unsubstantiated and contradictory assertions at its disposal, the Court is unable to conclude that either party has demonstrated a substantial likelihood of success on the merits.

The Court now turns to the second factor in the test for preliminary injunctive relief: whether the movant has demonstrated a substantial threat of irreparable injury if the injunction does not issue. PNC Bank and Columbia Housing assert that they would be irreparably harmed if they lose their bargained-for right to assume control of the Partnership. They contend that it is difficult if not impossible to place a monetary value on their contractual right to control and manage the Property henceforth. Conversely, 2013 Travis Oak Creek GP argues that forfeiture of its interest in

the Property and loss of its ability to manage the Partnership would cause it irreparable injury. Moreover, both sides contend both that the possibility that the Construction Lender will foreclose on the Construction Loan poses the risk of an irreparable injury to the Partnership and that injunctive relief is necessary to clarify who controls the Partnership, thereby allowing it to secure alternative financing, remedy its default, and avoid foreclosure.

For the purposes of the parties' temporary restraining order applications, the relevant question is not whether preliminary injunctive relief will at some point be necessary to avoid irreparable injury. Rather, the relevant question is whether *immediate* injunctive relief is necessary to avoid *imminent* irreparable injury. Put differently, the Court asks whether the injunctive relief requested can wait until the Court has had an opportunity to hold a hearing on the motion for a preliminary injunction. Here, the Court is satisfied that the requested injunctive relief can wait. The Court acknowledges that some form of preliminary relief will at some point likely be necessary to clarify what entity controls the Partnership and therefore allow the Partnership to negotiate and contract out from under the cloud of litigation. Yet, at the hearing on these motions, counsel for PNC Bank and Columbia Housing represented that its clients do not intend to attempt to assume control of the Partnership pending resolution of the motions currently before the Court. Counsel also represented that the next opportunity for the Construction Lender to initiate foreclosure proceedings is not until August 2017. In light of these representations, the Court is not persuaded that irreparable injury is so imminent as to require immediate relief.

In sum, at this early stage of the litigation, without the aid of an evidentiary hearing or full briefing on contested legal issues, the Court is unable to conclude that either party has demonstrated a substantial likelihood of success on the merits. Moreover, it appears to the Court that the potential irreparable injuries faced by the parties—most pertinently, the threat of foreclosure on the Property—are not so imminent as to require injunctive relief prior to a full hearing. Having resolved

that the first two factors of the test for preliminary injunctive relief counsel squarely against issuance

of a temporary restraining order, the Court does not reach the remaining two factors. The Court

thus denies the parties' applications for temporary restraining orders and sets the preliminary

injunction motions for an expedited evidentiary hearing.

## IV. Appointment of a Receiver

2013 Travis Oak Creek GP moves for appointment of a temporary receiver to manage the

Partnership and the Property pending resolution of this litigation. Under Federal Rule of Civil

Procedure 66, a motion to appoint a receiver may be brought "by anyone showing an interest in

certain property . . . to justify conservation of the property." *Santibanez v. Wier McMahon & Co.*, 105

F.3d 234, 241 (5th Cir. 1997). Correspondingly, "a district court has the authority to place into

receivership assets in litigation 'to preserve and protect the property pending its final disposition.'"

*Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012) (quoting *Gordon v. Washington,* 295 U.S. 30,

37 (1935)). Receivership is appropriate "in a number of contexts." *Id.* at 306. "Examples . . . of the

proper use of a receivership include[] the preservation of property until the foreclosure of a

mortgage, or of trust property until appointment of a new trustee, or of a debtor's property until a

judgment creditor has it applied to his judgment." *Id.* at 305. However, "receivership is 'an

extraordinary remedy that should be employed with the utmost caution' and is justified only when

there is a clear necessity to protect a party's interest in property, legal and less drastic equitable

remedies are unavailable, and the benefits of the receivership outweigh the burdens on the affected

parties." *Id.* (quoting 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §

2983 (3d ed.2012)).

Here, 2013 Travis Oak Creek GP argues that appointment of a receiver is necessary as "the

Partnership cannot have two masters, and the fact that both sides claim conflicting right and

authority to act for the Partnership creates an impossible disruption in the Partnership's

management and operations." (Dkt. 9, at 10). Given the parties' common belief that some form of judicial intervention is necessary to clarify what entity controls the Partnership, but divergent understandings of the last peaceable status quo and the appropriate injunctive relief, 2013 Travis Oak Creep GP suggests that appointment of a neutral receiver is the only way to preserve the Partnership's interests pending resolution of this litigation.

The Court agrees that appointment of a disinterested receiver may be the only appropriate means of safeguarding the Partnership's interests pending a determination of what entity is the Partnership's rightful general partner. Yet, appointing a receiver is a drastic and intrusive step that the Court is reticent to take unless proven absolutely necessary. Moreover, the resolution of the pending motions for entry of a preliminary injunction could potentially provide clarity as to what entity controls the partnership and therefore obviate the need for a receiver. Accordingly, the Court elects to carry the motion to appoint a receiver pending the hearing on the parties' preliminary injunction motions.

## V. Conclusion

**IT IS HEREBY ORDERED** that 2013 Travis Oak Creek GP's Motion to Lift Stay, (Case No. 1:17-cv-560, Dkt. 14) is **GRANTED.** The stay of Case Number 1:17-cv-560 entered by this Court on June 14, 2017, (Dkt. 12), is hereby **LIFTED.**

**IT IS FURTHER ORDERED** that Case Number 1:17-cv-560 is **CONSOLIDATED** with Case Number 1:17-cv-584. The master file and docket shall be maintained under Case Number 1:17-cv-584.

**IT IS FURTHER ORDERED** that 2013 Travis Oak Creek GP's application for a temporary restraining order (contained within Case No. 1:17-cv-560, Dkt. 9) and PNC Bank and Columbia Housing's application for a temporary restraining order (contained within Case No. 1:17-cv-584, Dkt. 10) are **DENIED.**

**IT IS FURTHER ORDERED** that 2013 Travis Oak Creek GP's motion for entry of a preliminary injunction (contained within Case No. 1:17-cv-560, Dkt. 9) and PNC Bank and Columbia Housing's motion for entry of a preliminary injunction (contained within Case No. 1:17-cv-584, Dkt. 10) are set for an evidentiary hearing to be held at 9:00 a.m. on July 21, 2017 in Courtroom Four of the United States Courthouse at 501 West Fifth Street, Austin, Texas 78701.

**IT IS FINALLY ORDERED** that 2013 Travis Oak Creek GP's motion for appointment of a receiver (contained within Case No. 1:17-cv-560, Dkt. 9) is **TAKEN UNDER ADVISEMENT.**

**SIGNED** on June 19, 2017.


_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE