**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **PNC BANK, N.A. COLUMBIA HOUSING SLP CORPORATION, and 2013 TRAVIS OAK CREEK, LP**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**2013 TRAVIS OAK CREEK GP, LLC, 2013 TRAVIS OAK CREEK DEVELOPER, INC., CHULA INVESTMENTS, LTD., and RENE O. CAMPOS**<br><br>**Defendants.** | § § § § § § § § § § § § § § § | **Action No. 1:17-cv-584-RP-ML** |
| **2013 TRAVIS OAK CREEK GP, LLC and 2013 TRAVIS OAK CREEK, LP,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**PNC BANK, N.A. and COLUMBIA HOUSING SLP CORPORATION**<br><br>**Defendants.** | § § § § § § § § § § § | **consolidated with Case No. 1:17-cv-560-RP** |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

PNC Bank, N.A. ("**PNC**") and Columbia Housing SLP Corporation ("**Columbia Housing**") (collectively the "**Plaintiffs**") respectfully submit this Response to the Motion to Dismiss (the "**Motion**") filed by Defendants 2013 Travis Oak Creek GP, LLC (the "**First GP**"), 2013 Travis Oak Developer, Inc., Chula Investments, Ltd., and Rene O. Campos.

## I. INTRODUCTION

The Court should deny the Motion because diversity jurisdiction exists here. As alleged in the Amended Complaint, Plaintiffs are citizens of Oregon and Pennsylvania for purposes of diversity. Defendants are each a citizen of Texas, and Defendants do not deny or dispute that fact. Instead, Defendants argue that the First GP, which is a citizen of Texas, is still a partner in the Partnership. Their tenuous argument is directly controverted by more than sufficient allegations in Plaintiffs' live pleading. Defendants offer no declarations or other evidence in support of that argument—merely the bald assertion that the First GP is still a partner. Not only is this insufficient to rebut the express allegations in the Amended Complaint, but Plaintiffs have also submitted the undisputed Declarations of David Hasselwander setting forth the facts establishing that the First GP was removed as a partner in the Partnership. The First GP's own sworn Petition in the related case consolidated with this one admits—*under oath*—to the events giving rise to Columbia Housing's right to remove the First GP and that the First GP received a notice of removal setting forth those defaults.[1]

The Court is empowered to consider the undisputed facts in the record and its own resolution of any disputed facts. The only facts before the Court are the ones contained in the Amended Complaint and in Mr. Hasselwander's declarations. For these reasons, the Court should conclude that the First GP was removed as general partner in the Partnership prior to the filing of this lawsuit and that, accordingly, complete diversity of parties exists.

## II. LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenges the Court's subject matter jurisdiction. "There are three avenues for a movant to demonstrate a lack of jurisdiction: (1) on

[1] *See* Case No. 1:17-cv-560-RP, Doc. No. 2.

the face of the complaint alone; (2) the complaint supplemented by undisputed facts in the record; and (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *Lifesize, Inc. v. Chimene*, A. No. 1:16-CV-1109-RP, 2017 WL 1532609, at *3 (W.D. Tex. Apr. 26, 2017) (citing *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004)). The burden of demonstrating that jurisdiction is on party invoking the court's jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Where a jurisdictional challenge is raised, the court is generally "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Montez*, 392 F.3d at 149. "However, where issues of fact are central both to subject matter jurisdiction and the claim on the merits, ... the trial court must assume jurisdiction and proceed to the merits." *Id.* at 150.

## III. BACKGROUND AND PROCEDURAL HISTORY

### A. Background of the Parties' Relationship.

On or about May 23, 2014, PNC Bank, N.A. and Columbia Housing, as limited partners, and 2013 Travis Oak Creek GP, LLC, as the First GP, entered into the Partnership Agreement. *See* Case No. 1:17-cv-560-RP, Doc. No. 9 ("**Pls.' Mtn. to Appoint Receiver**"), Ex. A at 1. The Partnership Agreement is the governing document of the Partnership. *See id*. The purpose of the Partnership is to acquire, construct, and/or rehabilitate as applicable, own, develop, operate, maintain, manage, lease, sell, mortgage, or otherwise dispose of an apartment complex and all other improvements constructed or rehabilitated on property (the "**Property**") located in Austin, Travis County, Texas, more commonly known as the Lucero Apartments (collectively, the "**Project**"). *See* Case No. 1:17-cv-560-RP, Doc. No. 2 ("**Pls. Petition**") ¶ 8.

The Partnership has several lenders. Among these, by far the largest is JPMorgan Chase Bank, N.A. (the "**Construction Lender**"), which provided a loan of $26 million (the

"**Construction Loan**") for the construction of the Lucero Apartments complex. *Id.* ¶ 10. The Construction Loan had an original maturity date of May 23, 2017. *Id.*

The Construction Loan is a temporary funding arrangement. *See id*. The Partnership Agreement provides that, on or before the Construction Loan's maturity, the First GP is required to cause the Partnership to refinance the Construction Loan with a permanent loan to be made pursuant to that certain $27,300,000 Fannie Mae Forward Commitment for Fixed Rate Mortgage Loan dated May 21, 2014 (the "**Forward Commitment**") between the Partnership and PNC Bank, N.A. as a lender and not as a Limited Partner. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 9. However, the First GP caused the Partnership to fail to close on the replacement loan under the terms of the Forward Commitment by the contractual deadline. *See* Pls.' Petition ¶¶ 13-14.

Under the Partnership Agreement, if the First GP failed to fulfill any of its contractual duties and obligations, then an "**Event of Default**" occurs, which allows Columbia Housing to exercise the right to remove and replace the First GP. *See* Pls.'s Mtn. to Appoint Receiver, Ex. A at 52 (Section 7.7(a)).

**B. The First GP Defaulted Under the Partnership Agreement.**The First GP has not complied with its duties and obligations under the Partnership Agreement. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 33 (Section 6.5). This has resulted in numerous Events of Default, including:

- The First GP has filed a voluntary application for appointment of a receiver over the Partnership and/or its assets. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 5 (Article II), 30-31 (Section 6.2(g)).

- The First GP failed to achieve Final Construction Completion (as defined in the Partnership Agreement) by March 1, 2016. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 42 (Section 6.7(g)).
- The general contractor for the Project has brought claims against the Partnership for nonpayment related to the stucco installation. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 38 (Section 6.5(x)).
- The general contractor has filed a substantial mechanic's lien against the Property. *See id*.
- The Partnership has received multiple Notices of Default from JPMorgan Chase Bank, N.A. under the Construction Loan. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 36 (Section 6.5(h)).
- The First GP has allowed a default under and the termination of the Forward Commitment. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 53 (Section 7.7(a)(7)).

These failures were direct violations of the First GP's obligations, duties, representations, and warranties under the Partnership Agreement. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 33 (Section 6.5). PNC and Columbia Housing notified the First GP of its failures, breaches, and defaults, but it not only failed to correct them, but continued to allow new ones to occur. *See* Pls.' Petition ¶¶ 16-17.

**C. Columbia Housing Properly Removed the First GP.**Because of the First GP's admitted defaults—any one of which would have sufficed—Columbia Housing sent a notice of removal of the First GP as general partner of the Partnership on or about June 7, 2017. *See id*. Once sent, the notice of removal *automatically*: (i) removed the First GP as a general partner in the Partnership; (ii) effectuated a transfer of the First GP's interest in the Partnership to

Columbia Housing; (iii) transferred all other remaining interests in and attendant rights to Columbia Housing. The removal also constituted an Event of Withdrawal under the Partnership Agreement. Pursuant to Section 9.1 of the Partnership Agreement, upon the occurrence of that Event of Withdrawal, the First GP automatically ceased to be a partner of the Partnership. In other words, after delaying completion of construction for over a year and allowing a substantial mechanic's lien against the Property, among other defaults, the First GP's role running the Partnership ended. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 60 (Section 9.1(b)).

**D. The First GP Refuses to Relinquish Control of the Partnership Despite Its Removal.**Despite Columbia Housing's removal of the First GP pursuant to the Partnership Agreement, and despite the fact that the First GP has automatically relinquished any and all interest or right in the Partnership and is therefore no longer a partner in the Partnership, the First GP has usurped Columbia Housing's rightful role as general partner. *See id.*; Pls.' Petition ¶ 21.

In particular, the First GP continues to advise third parties that it is the general partner; continues dominion and control over Partnership assets (including bank accounts, books and records, the Property, etc.); and is blocking Columbia Housing's representatives from entry onto the Property. *See* Pls.' Petition ¶¶ 21-22. On at least one occasion on June 8, 2017, Columbia Housing's designated representatives were turned away when they peaceably requested that management of the apartment complex on the Property be turned over to them. *See id*. ¶ 18.

**E. Procedural History.**

On June 8, 2017, PNC and Columbia Housing filed a lawsuit in the U.S. District Court for the Northern District of Texas against the First GP, 2013 Travis Oak Creek Developer, Inc., Chula Investments, Ltd., and Rene O. Campos alleging claims for breach of contract, suit on guaranty, and breach of fiduciary duty and seeking a declaratory judgment that the First GP was

removed as general partner of the Partnership and that Columbia Housing had become the replacement general partner (the "**First-Filed Action**"). *See* Case No. 3:17-cv-1521, ECF 1. On the morning of June 9, 2017, PNC and Columbia Housing filed their First Amended Complaint, which added the Partnership as a Plaintiff and included additional allegations regarding Defendants' actions after the removal of the First GP. *Id.*, ECF 9.

On June 9, 2017, the First GP filed its Original Petition and Verified Application for Temporary Restraining Order, Temporary and Permanent Injunction, and Appointment (the "**Petition**") against PNC and Columbia Housing in state court in Travis County, Texas. Case No. 1:17-cv-560, ECF 2. The First GP fraudulently joined the Partnership as a plaintiff, given that the First GP is no longer a partner in the Partnership and its interest in the Partnership has been relinquished to Columbia Housing under the Partnership Agreement. Case No. 1:17-cv-560, ECF 2. The Petition seeks appointment of a receiver over the Partnership as well as injunctive relief. On that same date, PNC and Columbia Housing removed that case to the U.S. District Court for the Western District of Texas, where it is was assigned Case No. 1:17-cv-00560-RP, before the Honorable Robert Pitman, U.S. District Judge (the "**Second-Filed Action**"). *Id.*, ECF 1.

On June 15, 2017, Judge Kinkeade, acting on his own motion, transferred the First-Filed Action to the Austin Division of the U.S. District Court for the Western District of Texas. *Id.*, ECF 17.

On June 16, 2017, the Court held a hearing on the parties' competing motions for temporary restraining order and the First GP's application for the appointment of a receiver. *Id.*, ECF 19. On June 19, 2017, the Court entered an order denying both requests for temporary restraining order, taking the request to appoint a receiver under advisement, and setting a hearing on the parties' cross-motions for preliminary injunction for July 21, 2017. *Id.*, ECF 25. The

Court also consolidated the First-Filed Action and Second-Filed Action under the First-Filed Action's cause number. *See id*.

## IV. ARGUMENT AND AUTHORITIES

### A. The Amended Complaint Adequately Alleges that Diversity Jurisdiction Exists.

The Amended Complaint adequately alleges that diversity jurisdiction exists. Indeed, it provides detailed allegations regarding the citizenship of each of the parties. *See* Doc. No. 9 ¶¶ 1–7. Further, the Amended Complaint expressly sets forth the grounds upon which the Court's subject matter jurisdiction is based. *See id.* ¶ 8.

As alleged in the Amended Complaint, PNC is a federally chartered bank with its principal place of business in Pittsburgh, Pennsylvania. *See* Doc. No. 9 ¶ 1; **Exhibit A**, Declaration of David Hasselwander ("**Hasselwander Decl.**") ¶ 3; **Exhibit B** at 8. Thus, for purposes of diversity jurisdiction, PNC is a citizen of Pennsylvania. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006). Columbia Housing is an Oregon corporation with its principal place of business in Oregon. *See* Doc. No. 9 ¶ 2; Hasselwander Decl. ¶ 3. For purposes of diversity jurisdiction, it is a citizen of Oregon. 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010). Finally, 2013 Travis Oak Creek, LP is a Texas limited partnership with Columbia Housing as its sole general partner and PNC as its sole limited partner. *See* Doc. No. 9 ¶ 3; Hasselwander Decl. ¶ 3. For purposes of diversity jurisdiction, it takes on the citizenship of all its partners, and thus it is a citizen of both Pennsylvania and Oregon. *See, e.g.*, *Harvey v. Grey Wolf Drilling Co.*, 542 F. 3d 1077, 1079 (5th Cir. 2008).

Similarly, the Amended Complaint adequately alleges that all of the Defendants are citizens of the State of Texas for diversity purposes. In particular, it alleges that 2013 Travis Oak Creek GP, LLC is a Texas limited liability company and that all of its members are citizens and

residents of Texas. *See* Doc. No. 9 ¶ 4; Hasselwander Decl. ¶ 4. For purposes of diversity, it is a citizen of the Texas. *See, e.g.*, *Harvey*, 542 F.3d at 1080. Similarly, 2013 Travis Oak Creek Developer, Inc. is a Texas corporation with its principal place of business in Dallas, Texas. Doc. *See* Doc. No. 9 ¶ 5; Hasselwander Decl. ¶ 4. For purposes of diversity, it is also a citizen of the Texas. 28 U.S.C. § 1332(c)(1); *see Hertz*, 559 U.S. at 80–81 (2010). Chula Investments, Ltd. is a Texas limited partnership; its sole general partner is Chula Management, LLC. *See* Doc. No. 9 ¶ 6; Hasselwander Decl. ¶ 4. All of the limited partners in Chula Investments, Ltd. and all of the members in its general partner are Texas citizens. *Id.* For purposes of diversity jurisdiction, it is a citizen of Texas. *See Harvey*, 542 F.3d at 1079. Finally, Rene O. Campos is domiciled in the State of Texas. *See* Doc. No. 9 ¶ 7; Hasselwander Decl. ¶ 4. For purposes of diversity jurisdiction, he is also a citizen of Texas.

Thus, the Amended Complaint adequately alleges that complete diversity exists on both sides of this lawsuit. It also alleges that the minimum amount in controversy is met, *see* Doc. No. 9 ¶ 8, and Defendants do not argue otherwise. Plaintiffs have met their pleading burden in this case. Further, to the extent the Court has inquiries concerning the citizenship of any partners or members in any entity, such information is not publicly available, and Plaintiffs move the Court to permit limited jurisdictional discovery to identify such persons or entities. In any case, by their silence on the issue, Defendants have essentially conceded that they are ultimately all citizens of Texas for purposes of diversity.

Since the Amended Complaint alleges that, for purposes of diversity jurisdiction, Plaintiffs are solely citizens of Oregon and Pennsylvania; Defendants are solely citizens of Texas; and that the amount in controversy exceed $75,000, Plaintiffs have adequately alleged

that complete diversity of parties exists in this case. Therefore, they have met their burden to plead subject matter jurisdiction.

**B. The First GP Is Not a Partner in the Partnership, and Its Citizenship Is Not Relevant to Plaintiffs' Citizenship for Purposes of Diversity.**

Diversity exists as to the claims in this case because the First GP is no longer a partner in the Partnership and its citizenship is irrelevant to determining the citizenship of the Partnership for purposes of diversity jurisdiction.

As alleged in the Complaint and shown in the Declaration of David Hasselwander attached to Plaintiffs' Motion for Preliminary Injunction, the First GP allowed numerous "Events of Default" under the Partnership Agreement to occur, including the six Events of Default that form the basis for the injunctive relief that PNC, Columbia Housing, and the Partnership seek in this case. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 30-31 (Section 6.2(g)), 36 (Section 6.5(h)), 38 (Section 6.5(x)), 42 (Section 6.7(g)), 53 (Section 7.7(a)(7)); Case No. 1:17-cv-00584-RP, ECF 11 ("**Appx. To Mtn. for PI**"), ECF 11 at 7-9. These Events of Default were longstanding. For example, the First GP had failed to achieve Final Construction Completion (as defined by the Partnership Agreement) for more than *a year* after the deadline of March 1, 2016. *See* Pls. Petition ¶ 10; Appx. to Mtn. for PI at 8, ¶ 12. The First GP failed to cause the Partnership to honor the terms of the Forward Commitment, which caused the Partnership to default on the Forward Commitment and to lose a committed source of funds to pay off the Construction Loan. *See* Pls.' Petition ¶¶ 10, 12; Appx. to Mtn. for PI at 7, ¶ 11. The First GP committed another Event of Default by seeking the appointment of a receiver over the Partnership. *See id*. ¶¶ 24-26; Pls.' Mtn. to Appoint Receiver, Ex. A at 5 (Article II), 30-31 (Section 6.2(g)).

Based on these Events of Default, the Partnership Agreement expressly provided Columbia Housing with the right to remove the First GP and to become the sole general partner in the Partnership. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 60 (Section 9.1(b)); Appx. to Mtn. for PI at 8, ¶ 16. On June 7, 2017, in compliance with the terms of the parties' agreement, Columbia Housing exercised this right by sending a Notice of Default and Notice of Withdrawal to the First GP. *See* Pls.' Petition ¶ 16; Appx. to Mtn. for PI at 8-9, ¶¶ 16-17. Under the terms of the Partnership Agreement, the First GP automatically ceased to be a partner in the Partnership and Columbia Housing became the sole general partner. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 60 (Section 9.1(b)); Appx. to Mtn. for PI at 9, ¶ 17.

The First GP admits to a number of these defaults in its Petition in the Second-Filed Action. For instance, the First GP admits that "the Chase construction loan [] is now in the status of a post maturity default." *See* Pls.' Petition ¶¶ 12-15. It admits that there is a "general contractor's lien against the Property" and that the contractor has filed litigation against the Partnership. *Id.* ¶¶ 10, 14. Further, it admits that the Partnership's apartment buildings have "several, severe defects in th[eir] construction." *Id*. By admitting to these items, the First GP has also admitted that Final Construction Completion did not occur as of March 1, 2016. *See id.* ¶ 10. Thus, the First GP's own live pleading admits that these Events of Default occurred. Although it offers up excuses for some of these defaults, the Petition has no excuse whatsoever for the failure to achieve Final Construction Completion, the existence of a mechanic's lien against the Property, or the general contractor's pending lawsuit against the Partnership.

Crucially, Defendants' Motion does not contain any evidence on this issue. The only items before the Court for its consideration are the allegations in Plaintiffs' Amended Complaint and the Declaration of David Hasselwander. Defendants have not submitted any evidence in

rebuttal, merely their naked assertion that the First GP is still a partner in the Partnership. This is not enough. Plaintiffs have carried their burden to demonstrate that diversity jurisdiction exists.

Defendants' only argument is that whether the First GP was removed is an "ultimate issue[] to be determined in this case." But the First GP was either removed as of when Columbia Housing sent the notice of removal or it wasn't. Defendants cannot defeat the Court's jurisdiction merely by raising implausible and conclusory assertions that the removal did not occur and offering no evidence in support of those assertions. The First GP can choose to "not agree" it has been removed as a partner all it wants, but that removal can nevertheless have still occurred. A driver can deny that the traffic light was red, but the video from the red light camera shows what it shows. Plaintiffs' request for declaratory judgment simply asks the Court to find that Columbia Housing effectively removed the First GP as of the date of Columbia Housing's notice of removal. The First GP's argument is essentially that it can exercise a "heckler's veto" over the Court's exercise of its own jurisdiction. Certainly, that is not what federal law allows.

Based on the evidence submitted to the Court and the parties' own pleadings, there is no basis for the First GP to argue that it is still a partner in the Partnership. Because it is no longer a partner in the Partnership, the First GP's citizenship is irrelevant for determining the citizenship of the Partnership. Plaintiffs are citizens of Oregon and Pennsylvania and Defendants are citizens of Texas. Thus, complete diversity of citizenship exists, and the Court has subject matter jurisdiction over this case. The Court should deny the Motion.

## V. CONCLUSION

Plaintiffs respectfully request that the Court (i) deny Defendants' Motion to Dismiss (Doc. No. 9) in this case; (ii) to the extent that the Court has any remaining concerns about its

jurisdiction, that it permit Plaintiffs to conduct limited jurisdictional discovery; and (iii) grant Plaintiffs all such other and further relief to which they may be justly entitled.

Dated: June 30, 2017.

By: */s/ Robert M. Hoffman*
Robert M. Hoffman
Texas Bar No. 09788200
robhoffman@andrewskurth.com
James C. Bookhout (*seeking admission*)
Texas Bar No. 24087187
jamesbookhout@andrewskurth.com
**ANDREWS KURTH KENYON LLP**
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone: (214) 659-4400
Facsimile: (214) 659-4401

David P. Whittlesey
Texas Bar No. 00791920
dwhittlesey@andrewskurth.com
**ANDREWS KURTH KENYON LLP**
111 Congress Avenue, Suite 1700
Austin, Texas 78701
Telephone: (512) 320-9200
Facsimile: (512) 320-9292

**ATTORNEYS FOR PLAINTIFFS PNC BANK, N.A., COLUMBIA HOUSING SLP CORPORATION, AND 2013 TRAVIS OAK CREEK, LP**

## CERTIFICATE OF SERVICE

I certify that, pursuant to L.R. 5.1(d), on June 30, 2017, a copy of the foregoing document was served on counsel for the Defendants via email.

*/s/ Robert M. Hoffman*
Robert M. Hoffman