UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PNC BANK, N.A. COLUMBIA HOUSING SLP CORPORATION, and 2013 TRAVIS OAK CREEK, LP | § § § § | |
| Plaintiffs, | § | Action No. 1:17-cv-584-RP-ML |
| v. | § § | |
| 2013 TRAVIS OAK CREEK GP, LLC, 2013 TRAVIS OAK CREEK DEVELOPER, INC., CHULA INVESTMENTS, LTD., and RENE O. CAMPOS | § § § § § § § | |
| Defendants. | § | |
| ------------------------------------------------------ | | |
| 2013 TRAVIS OAK CREEK GP, LLC and 2013 TRAVIS OAK CREEK, LP, | § § | consolidated with Case No. 1:17-cv-560-RP |
| Plaintiffs, | § § | |
| v. | § § | |
| PNC BANK, N.A. and COLUMBIA HOUSING SLP CORPORATION | § § § § | |
| Defendants. | § | |

**PNC BANK, N.A'S AND COLUMBIA HOUSING SLP CORPORATION'S
MOTION TO DISMISS AND BRIEF IN SUPPORT**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), PNC Bank, N.A. ("**PNC**") and Columbia Housing SLP Corporation ("**Columbia Housing**") (collectively the "**Plaintiffs**") respectfully submit this Motion to Dismiss all claims[1] brought by Defendants 2013 Travis Oak Creek GP, LLC (the "**First GP**") and 2013 Travis Oak Creek, LP (the

---

1

"**Partnership**") for lack of standing and for failure to state a claim upon which relief can be granted and Brief in Support.

## I.   INTRODUCTION

The Court should dismiss the First GP's claims, both on behalf of itself and in the name of the Partnership.

This case is about the First GP's refusal to acknowledge its removal as the general partner in the Partnership. In an attempt to resist its self-effectuating removal, the First GP has brought two "claims": one for appointment of a receiver and one for injunctive relief. However, as a matter of law, federal courts will not appoint a receiver if it is the primary relief sought by a party. Further, a request for injunctive relief is not an independent cause of action under Texas law. Because the Court cannot grant the appointment of a receiver as the primary relief that the First GP seeks and because the request for injunctive relief is not a cause of action in its own right, the Court must dismiss all of the First GP's pending claims for failure to state cause of action upon which relief can be granted.

Further, the First GP has no standing to bring any claims in the name of the Partnership. Under Texas law, only a general partner has authority to initiate a suit on a limited partnership's behalf, and only if it has consent of a majority of the partnership interests or if provided by the limited partnership agreement. Here, the Amended and Restated Agreement of Limited Partnership of 2013 Travis Oak Creek, LP dated May 23, 2014 (the "**Partnership Agreement**") requires the First GP to obtain the consent of Columbia Housing to commence the "claims" at issue in this case. The First GP is manifestly no longer a partner in the Partnership. Numerous "Events of Default" have occurred, which the First GP admits to in its sworn pleading. For instance, seeking a receiver an independent Event of Default by the First GP. Further, it also

admits that it received a notice of removal from Columbia Housing based on those defaults. As a result of that notice, the First GP was automatically removed as a general partner in the Partnership. Because it is no longer a partner, it has no standing to bring claims in the Partnership's name. Moreover, it does not plead that it has the consent of PNC and Columbia Housing to file such claims, as required by both Texas law and the Partnership Agreement. Therefore, the First GP has failed to plead a necessary condition to its standing.

Finally, the First GP has no standing to request the appointment of a receiver to rehabilitate the Partnership because it is no longer a partner in that entity. Under Texas law, only partners and creditors of a limited partnership have the right to request appointment of a rehabilitative receiver. The First GP is neither of those things. It cannot request that the Court appoint a receiver over the Partnership, and that "claim" must be dismissed.

## II.   LEGAL STANDARD

### A. Standard Under Rule 12(b)(1).

Standing is an indispensable component of subject matter jurisdiction and may be challenged by a motion to dismiss under Rule 12(b)(1). "There are three avenues for a movant to demonstrate a lack of jurisdiction: (1) on the face of the complaint alone; (2) the complaint supplemented by undisputed facts in the record; and (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *Lifesize, Inc. v. Chimene*, A. No. 1:16-CV-1109-RP, 2017 WL 1532609, at *3 (W.D. Tex. Apr. 26, 2017) (citing *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004)). The burden of demonstrating that jurisdiction rests at all times with the party invoking the court's jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Where a jurisdictional challenge is raised, the court is generally "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to

hear the case." *Montez*, 392 F.3d at 149. "However, where issues of fact are central both to subject matter jurisdiction and the claim on the merits, ... the trial court must assume jurisdiction and proceed to the merits." *Id.* at 150.

### B. Standard Under Rule 12(b)(6).

A motion under Fed. R. Civ. P. 12(b)(6) seeks to dismiss one or more causes of action for failure to state a claim. "When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a complaint must contain sufficient factual matter that, if accepted as true, states a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. BACKGROUND AND PROCEDURAL HISTORY

### A. Background of the Parties' Relationship.

On or about May 23, 2014, PNC Bank, N.A. and Columbia Housing, as limited partners, and 2013 Travis Oak Creek GP, LLC, as the First GP, entered into the Partnership Agreement. *See* Case No. 1:17-cv-560-RP, Doc. No. 9 ("**Pls.' Mtn. to Appoint Receiver**"), Ex. A at 1. The Partnership Agreement is the governing document of the Partnership. *See id.* The purpose of the Partnership is to acquire, construct, and/or rehabilitate as applicable, own, develop, operate,

maintain, manage, lease, sell, mortgage, or otherwise dispose of an apartment complex and all other improvements constructed or rehabilitated on property (the "**Property**") located in Austin, Travis County, Texas, more commonly known as the Lucero Apartments (collectively, the "**Project**"). *See* Case No. 1:17-cv-560-RP, Doc. No. 2 ("**Pls. Petition**") ¶ 8.

The Partnership has several lenders. Among these, by far the largest is JPMorgan Chase Bank, N.A. (the "**Construction Lender**"), which provided a loan of $26 million (the "**Construction Loan**") for the construction of the Lucero Apartments complex. *Id*. ¶ 10. The Construction Loan had an original maturity date of May 23, 2017. *Id*.

The Construction Loan is a temporary funding arrangement. *See id*. The Partnership Agreement provides that, on or before the Construction Loan's maturity, the First GP is required to cause the Partnership to refinance the Construction Loan with a permanent loan to be made pursuant to that certain $27,300,000 Fannie Mae Forward Commitment for Fixed Rate Mortgage Loan dated May 21, 2014 (the "**Forward Commitment**") between the Partnership and PNC Bank, N.A. as a lender and not as a Limited Partner. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 9. However, the First GP caused the Partnership to fail to close on the replacement loan under the terms of the Forward Commitment by the contractual deadline. *See* Pls.' Petition ¶¶ 13-14.

Under the Partnership Agreement, if the First GP failed to fulfill any of its contractual duties and obligations, then an "**Event of Default**" occurs, which allows Columbia Housing to exercise the right to remove and replace the First GP. *See* Pls.'s Mtn. to Appoint Receiver, Ex. A at 52 (Section 7.7(a)).

## B. The First GP Defaulted Under the Partnership Agreement.

The First GP has not complied with its duties and obligations under the Partnership Agreement. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 33 (Section 6.5). This has resulted in numerous Events of Default, including:

- The First GP has filed a voluntary application for appointment of a receiver over the Partnership and/or its assets. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 5 (Article II), 30-31 (Section 6.2(g)).

- The First GP failed to achieve Final Construction Completion (as defined in the Partnership Agreement) by March 1, 2016. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 42 (Section 6.7(g)).

- The general contractor for the Project has brought claims against the Partnership for nonpayment related to the stucco installation. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 38 (Section 6.5(x)).

- The general contractor has filed a substantial mechanic's lien against the Property. *See id*.

- The Partnership has received multiple Notices of Default from JPMorgan Chase Bank, N.A. under the Construction Loan. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 36 (Section 6.5(h)).

- The First GP has allowed a default under and the termination of the Forward Commitment. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 53 (Section 7.7(a)(7)).

These failures were direct violations of the First GP's obligations, duties, representations, and warranties under the Partnership Agreement. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 33 (Section 6.5). PNC and Columbia Housing notified the First GP of its failures, breaches, and

defaults, but it not only failed to correct them, but continued to allow new ones to occur. *See* Pls.' Petition ¶¶ 16-17.

**C. Columbia Housing Properly Removed the First GP.** Because of the First GP's admitted defaults—any one of which would have sufficed—Columbia Housing sent a notice of removal of the First GP as general partner of the Partnership on or about June 7, 2017. *See id*. Once sent, the notice of removal *automatically*: (i) removed the First GP as a general partner in the Partnership; (ii) effectuated a transfer of the First GP's interest in the Partnership to Columbia Housing; (iii) transferred all other remaining interests in and attendant rights to Columbia Housing. The removal also constituted an Event of Withdrawal under the Partnership Agreement. Pursuant to Section 9.1 of the Partnership Agreement, upon the occurrence of that Event of Withdrawal, the First GP automatically ceased to be a partner of the Partnership. In other words, after delaying completion of construction for over a year and allowing a substantial mechanic's lien against the Property, among other defaults, the First GP's role running the Partnership ended. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 60 (Section 9.1(b)).

**D. The First GP Refuses to Relinquish Control of the Partnership Despite Its Removal.** Despite Columbia Housing's removal of the First GP pursuant to the Partnership Agreement, and despite the fact that the First GP has automatically relinquished any and all interest or right in the Partnership and is therefore no longer a partner in the Partnership, the First GP has usurped Columbia Housing's rightful role as general partner. *See id*.; Pls.' Petition ¶ 21.

In particular, the First GP continues to advise third parties that it is the general partner; continues dominion and control over Partnership assets (including bank accounts, books and records, the Property, etc.); and is blocking Columbia Housing's representatives from entry onto the Property. *See* Pls.' Petition ¶¶ 21-22. On at least one occasion on June 8, 2017, Columbia

Housing's designated representatives were turned away when they peaceably requested that management of the apartment complex on the Property be turned over to them. *See id.* ¶ 18.

    **E. Procedural History.** On June 8, 2017, PNC and Columbia Housing filed a lawsuit in the U.S. District Court for the Northern District of Texas against the First GP, 2013 Travis Oak Creek Developer, Inc., Chula Investments, Ltd., and Rene O. Campos alleging claims for breach of contract, suit on guaranty, and breach of fiduciary duty and seeking a declaratory judgment that the First GP was removed as general partner of the Partnership and that Columbia Housing had become the replacement general partner (the "**First-Filed Action**"). *See* Case No. 3:17-cv-1521, ECF 1. On the morning of June 9, 2017, PNC and Columbia Housing filed their First Amended Complaint, which added the Partnership as a Plaintiff and included additional allegations regarding Defendants' actions after the removal of the First GP. ECF 9.

    On June 9, 2017, the First GP filed its Original Petition and Verified Application for Temporary Restraining Order, Temporary and Permanent Injunction, and Appointment (the "**Petition**") against PNC and Columbia Housing in state court in Travis County, Texas. Case No. 1:17-cv-560, ECF 2. The First GP fraudulently joined the Partnership as a plaintiff, given that the First GP is no longer a partner in the Partnership and its interest in the Partnership has been relinquished to Columbia Housing under the Partnership Agreement. *See id*. The Petition seeks appointment of a receiver over the Partnership as well as injunctive relief. On that same date, PNC and Columbia Housing removed that case to the U.S. District Court for the Western District of Texas, where it is was assigned Case No. 1:17-cv-00560-RP, before the Honorable Robert Pitman, U.S. District Judge (the "**Second-Filed Action**"). ECF 1.

On June 15, 2017, Judge Kinkeade, acting on his own motion, transferred the First-Filed Action to the Austin Division of the U.S. District Court for the Western District of Texas. ECF 17.

On June 16, 2017, the Court held a hearing on the parties' competing motions for temporary restraining order and the First GP's application for the appointment of a receiver. ECF 19. On June 19, 2017, the Court entered an order denying both requests for temporary restraining order, taking the request to appoint a receiver under advisement, and setting a hearing on the parties' cross-motions for preliminary injunction for July 21, 2017. ECF 25.  The Court also consolidated the First-Filed Action and Second-Filed Action under the First-Filed Action's cause number. *See id*.

### IV.    ARGUMENT AND AUTHORITIES

**A. The First GP and the Partnership Have Not Asserted Any Actual Causes of Action.** The First GP has failed to assert any causes of action in its live pleading that would permit the Court to grant any relief.

**First**, the Court cannot appoint a receiver if that is the primary relief that a claimant seeks. This rule of law is longstanding. As the U.S. Supreme Court has stated: "[t]his Court has frequently admonished that a federal court of equity should not appoint a receiver where the appointment is not a remedy auxiliary to some primary relief which is sought and which equity may appropriately grant." *Kellam v. Maryland Cas. Co. of Baltimore, Md.*, 312 U.S. 377, 381 (1941). "This is because appointment of a receiver 'is not an end in itself.'" *N.Y. Community Bank v. Sherman Ave. Assocs., LLC*, 786 F. Supp. 2d 171, 175 (D.D.C. 2011); *see also Gordon v. Washington*, 295 U.S. 30, 34 (1935) ("[T]here is no occasion for a court of equity to appoint a receiver of property of which it is asked to make no further disposition."). When there is no other pending cause of action to support it, the district court *cannot* appoint a receiver. *Id.* at 176

("[T]he Court will not appoint a receiver, regardless of the justification, when it is sought as the primary form of relief.").

In this case, the primary form of relief that the First GP seeks is the appointment of a receiver. There is no other underlying claim or cause of action alleged in the Petition because, as set forth below, a request for injunctive relief is not an independent claim. As counsel has represented to the Court at the recent hearing on its application for receiver, the receivership request is the primary relief that the First GP is seeking in this litigation. Indeed, counsel for the First GP stated that the request for injunctive relief was simply "in support" of the receivership request. This is also evident from the face of the First GP's Petition. See Pls.' Petition at 2-3. Because the Court cannot, as a matter of settled law, appoint a receiver when it is sought as the primary form of relief, the First GP's request for that relief must be dismissed.

Second, injunctive relief is unavailable because the First GP has not alleged an underlying cause of action. "[A] request for injunctive relief is not itself a cause of action but depends on an underlying cause of action." *Cook v. Wells Fargo Bank, N.A.*, Civ. A. No. 3:10–CV–0592–D, 2010 WL 2772445, at *4 (N.D. Tex. 2010). "Injunctive relief is simply a form of equitable remedy." *Id.* Therefore, "[u]nder Texas law, a prayer for injunctive relief without a cause of action supporting entry of a judgment must be dismissed." *Barcenas v. Fed. Home Loan Mortg. Corp.*, Civ. A. No. H–12–2466, 2013 WL 286250, at *9 (S.D. Tex.) (citing *Cook*, 2010 WL 2772445, at *4); *see also Pajooh v. Harmon*, 82 Fed. App'x 898, 899 (5th Cir. 2003) (upholding denial of injunctive relief when plaintiff failed to state a claim for which relief may be granted).

Here, the only other "cause of action" in the Petition is for the appointment of a receiver. But as set forth above, a claimant cannot seek a receiver as its primary form of relief. *See, e.g.*,

*N.Y. Community Bank*, 786 F. Supp. 2d at 175. Thus, there is no appropriate underlying cause of action to support the First GP's request for injunctive relief. As a result, the First GP's "claim" for injunctive relief must be dismissed.

For these reasons, the First GP (and, by extension, the Partnership) have failed to state any claim on which relief can be granted. The Court cannot grant injunctive relief unless there is another pending cause of action upon which that request is based. Similarly, the Court cannot appoint a receiver when it is the primary form of relief sought. Thus, the Petition must be dismissed in its entirety because it fails to allege any cause of action on which the Court may enter relief.

**B. The First GP Lacks Standing to Bring Claims on Behalf of the Partnership.** The Court lacks subject matter jurisdiction over the First GP's attempt to bring claims on behalf of the Partnership because the First GP has no standing to bring such claims.

Article III of the U.S. Constitution limits the jurisdiction of federal courts to cases and controversies. "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). This requirement, like other jurisdictional requirements, is not subject to waiver and demands strict compliance. *Raines*, 521 U.S. at 819; *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996). To meet the standing requirement a plaintiff must show (1) she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Consol. Cos., Inc. v. Union Pacific R.R. Co.*, 499 F.3d 382, 385 (5th Cir. 2007).

The First GP lacks standing to bring claims in the name of the Partnership because it is effectively no longer able to act as the general partner—or, indeed, any type of partner—in the Partnership. Under Texas law, "a general partner acting with authority has the capacity to bring a suit in the name of the limited partnership, but only when a majority-in-interest of the partners agree to such action." *Wesolek v Layton*, 871 F. Supp. 2d 620, 628 (S.D. Tex. 2012) (citing TEX. BUS. ORG. CODE § 152.209). Certainly, a *former* general partner has no standing to bring suit on behalf of the limited partnership. *See id.*

Here, the First GP has allowed numerous "Events of Default" under the Partnership Agreement to occur, including the six Events of Default that form the basis for the injunctive relief that PNC, Columbia Housing, and the Partnership seek in this case. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 30-31 (Section 6.2(g)), 36 (Section 6.5(h)), 38 (Section 6.5(x)), 42 (Section 6.7(g)), 53 (Section 7.7(a)(7)). These Events of Default were longstanding. For example, the First GP had failed to achieve Final Construction Completion (as defined by the Partnership Agreement) for more than *a year* after the deadline of March 1, 2016. *See* Pls. Petition ¶ 10. The First GP failed to cause the Partnership to honor the terms of the Forward Commitment, which caused the Partnership to default on the Forward Commitment and to lose a committed source of funds to pay off the Construction Loan. *See id* ¶¶ 10, 12. The First GP committed another Event of Default by seeking the appointment of a receiver over the Partnership to try and avoid the consequences of its repeated failures to comply with the Partnership Agreement. *See id.* ¶¶ 24-26; Pls.' Mtn. to Appoint Receiver, Ex. A at 5 (Article II), 30-31 (Section 6.2(g)).

Based on these Events of Default, the Partnership Agreement expressly provided Columbia Housing with the right to remove the First GP and to become the sole general partner

in the Partnership. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 60 (Section 9.1(b)). On June 7, 2017, in compliance with the terms of the parties' agreement, Columbia Housing exercised this right by sending a Notice of Default and Notice of Withdrawal to the First GP. *See* Pls.' Petition ¶ 16. Under the terms of the Partnership Agreement, the First GP automatically ceased to be a partner in the Partnership and Columbia Housing became the sole general partner. *See* Pls.' Mtn. to Appoint Receiver, Ex. A at 60 (Section 9.1(b)).

The First GP admits to a number of these defaults in its Petition. For instance, the First GP admits that "the Chase construction loan [] is now in the status of a post maturity default." *See* Pls.' Petition ¶¶ 12-15. It admits that there is a "general contractor's lien against the Property" and that the contractor has filed litigation against the Partnership. *Id.* ¶¶ 10, 14. Further, it admits that the Partnership's apartment buildings have "several, severe defects in th[eir] construction." *Id*. By admitting to these items, the First GP has also admitted that Final Construction Completion did not occur as of March 1, 2016. *See id.* ¶ 10. Thus, the First GP's own live pleading admits that these Events of Default occurred. Although it offers up excuses for some of these defaults, the Petition has no excuse whatsoever for the failure to achieve Final Construction Completion, the existence of a mechanic's lien against the Property, or the general contractor's pending lawsuit against the Partnership.

Based on the evidence submitted to the Court and the parties' own pleadings, there is no rational basis for the First GP to argue that it is still a partner in the Partnership. It is axiomatic that, to bring suit in the name of a limited partnership, one must be a partner in that entity. Moreover, for a general partner to do so, it needs the express consent of a majority-in-interest of the partners or at express authority under the limited partnership agreement. *See Wesolek*, 871 F. Supp. 2d at 628.

Here, the First GP is no longer a partner in the Partnership. It has no standing to cause the Partnership to file a lawsuit of any kind. And, not only has the First GP been removed as general partner, but PNC and Columbia Housing, partners holding well over 99% of the interests in the Partnership, have not consented to this lawsuit. *See* **Exhibit A**, Declaration of David Hasselwander ("**Hasselwander Decl.**") ¶ 5. Nor can the First GP show that it has satisfied this necessary condition to attaining standing. *See id.* ¶ 5. The Partnership Agreement clearly requires Columbia Housing's consent to commence any lawsuit in the name of the Partnership. See Pls.' Mtn. to Appoint Receiver, Ex. A at 31 (Section 6.2(g)-(h)). There is simply no legal basis for the First GP to assert any claims in the name of the Partnership.

For these reasons, the First GP has no standing to cause the Partnership to bring any claims against PNC and Columbia Housing. The Court should dismiss any and all such claims and requests for relief.

**C.  Similarly, the First GP Lacks Standing to Pursue a Request for a Receiver.** For the same reasons, the First GP lacks standing to pursue a request for appointment of a receiver over the Partnership. Under Texas law, to request the appointment of a receiver for purposes of rehabilitation, the applicant must be an *owner* or *creditor* of the entity. TEX. BUS. ORG. CODE § 11.404(a).[2]

Here, the First GP is no longer an owner in the Partnership, and it has not alleged that it is a creditor of the Partnership. As explained above, the First GP committed numerous, longstanding Events of Default under the Partnership Agreement. As a result, on June 7, 2017, Columbia Housing exercised its right to remove the First GP as the general partner. Further, the

---

[2] Although the First GP does not directly characterize its request as a rehabilitation, it seeks a receiver to "manage and operate the affairs and business of the Partnership" and to "resolve the Chase Bank post maturity default," which are manifestly requests for "rehabilitation."

First GP admits to the existence of multiple Events of Default in its verified Petition. *See* Pls.' Petition ¶ 10, 11, 13, 14. It also admits to having received Columbia Housing's notice of removal. *See id*. ¶ 16. Under these circumstances, there is no legitimate dispute that the First GP was properly removed as a partner in the Partnership according to the terms that the parties agreed to.

Because the First GP is no longer a partner in the Partnership, it has no standing under Texas law to seek to have a receiver appointed for the Partnership. But even if the First GP were still the general partner, by filing its application for appointment of receiver, it has purposefully committed an Event of Default sufficient to give effect to Columbia Housing's notice of removal—which would divest it of any standing to bring that request in the first place. The Court therefore cannot, as a matter of law, consider that request. The First GP's application for appointment of a receiver should be dismissed.

### V.   CONCLUSION

PNC and Columbia Housing respectfully request that the Court grant their Motion to Dismiss and enter an order dismissing all claims or causes of action that the First GP (either for itself or in the name of the Partnership) has asserted in this consolidated suit.

| | |
|---|---|
| Dated: June 30, 2017. | By: /s/ *Robert M. Hoffman*<br>Robert M. Hoffman<br>Texas Bar No. 09788200<br>robhoffman@andrewskurth.com<br>James C. Bookhout (*seeking admission*)<br>Texas Bar No. 24087187<br>jamesbookhout@andrewskurth.com<br>**ANDREWS KURTH KENYON LLP**<br>1717 Main Street, Suite 3700<br>Dallas, Texas 75201<br>Telephone:   (214) 659-4400<br>Facsimile:    (214) 659-4401<br><br>David P. Whittlesey<br>Texas Bar No. 00791920<br>dwhittlesey@andrewskurth.com<br>**ANDREWS KURTH KENYON LLP**<br>111 Congress Avenue, Suite 1700<br>Austin, Texas 78701<br>Telephone:   (512) 320-9200<br>Facsimile:    (512) 320-9292<br><br>**ATTORNEYS FOR PLAINTIFFS PNC BANK, N.A., COLUMBIA HOUSING SLP CORPORATION, AND 2013 TRAVIS OAK CREEK, LP** |

## CERTIFICATE OF SERVICE

I certify that, pursuant to L.R. 5.1(d), on June 30, 2017, a copy of the foregoing document was served on counsel for the Defendants via email.

/s/ *Robert M. Hoffman*
Robert M. Hoffman