# EXHIBIT A

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| PNC BANK, N.A. COLUMBIA HOUSING SLP CORPORATION, and 2013 TRAVIS OAK CREEK, LP | § § § | |
| Plaintiffs, | § § | Action No. 1:17-cv-584-RP-ML |
| v. | § § | |
| | § | consolidated with |
| 2013 TRAVIS OAK CREEK, LP, | § | Case No. 1:17-cv-560-RP |
| 2013 TRAVIS OAK CREEK GP, LLC, | § | |
| 2013 TRAVIS OAK CREEK DEVELOPER, INC., | § § | |
| CHULA INVESTMENTS, LTD., | § | |
| and RENE O. CAMPOS | § § | |
| Defendants. | § § | |

## PLAINTIFFS' OBJECTIONS AND RESPONSES
## TO DEFENDANTS' INTERROGATORIES

TO:     *Defendants 2013 Travis Oak Creek GP, LLC, 2013 Travis Oak Creek Developer, Inc., Chula Investments, Ltd., and Rene O. Campos, by and through their counsel of record, Kenneth C. Chaiken, 5801 Tennyson Pkwy., Suite 440, Plano, Texas 75024.*

Pursuant to Federal Rule of Civil Procedure 33 and the Court's *Order on Emergency Motion for Expedited Discovery* entered by the Court, Plaintiffs PNC Bank, N.A. ("**PNC**") and Columbia Housing SLP Corporation ("**Columbia Housing**") (together, "**Plaintiffs**") serve these Objections and Responses to the Interrogatories propounded by Defendants 2013 Travis Oak Creek GP, LLC (the "**First GP**"), 2013 Travis Oak Creek Developer, Inc. ("**Developer**"), Chula Investments, Ltd. ("**Chula**"), and Rene O. Campos ("**Campos**") (collectively, the "**Defendants**").

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Plaintiffs object to the definition of the term "Arbor Loan" as vague and ambiguous because they do not have sufficient information to determine what its terms were and whether the Arbor Loan could or would have "paid off" the $26,000,000 construction loan from JPMorgan Chase Bank, N.A. to 2013 Travis Oak Creek, LP (the "**Partnership**"). Further, they do not have sufficient information to determine the meaning of the "conditional consent" referred to in the definition of "Arbor Loan." Plaintiffs will use the following definition of "Arbor Loan": "a bridge loan that was purportedly sought by 2013 Travis Oak Creek GP, LLC from Arbor Commercial Mortgage and/or one of its affiliates."

2.     Plaintiffs object to the definition of the term "Consent" as vague and ambiguous because it does not specify the "required or contemplated … provision[s] of the Amended and Restated Agreement of Limited Partnership of 2013 Travis Oak Creek, LP." Plaintiffs will use the following definition of "Consent": "prior written approval in accordance with Section 13.4 of the Amended and Restated Agreement of Limited Partnership of 2013 Travis Oak Creek, LP."

3.     Plaintiffs object to the definition of the term "Limited Partner" as vague and ambiguous because the capitalized term "Substitute Limited Partner" is not defined. Plaintiffs will use the following definition of "Limited Partner": "either of PNC Bank, N.A., in its capacity as "ILP" in the Partnership, and/or Columbia Housing SLP Corporation, in its capacity as "SLP" in the Partnership."

4.     Plaintiffs object to the definition of the term "Non-delivery Fee" as vague and ambiguous because the term "collapse" does not apply to that certain $27,300,000 Fannie Mae Forward Commitment for Fixed Rate Mortgage Loan dated May 21, 2014, as amended by letter agreement initially dated March 28, 2016 and subsequently revised on April 6, 2016 (as amended, the "**Forward Commitment**"). Plaintiffs will use the following definition of "Non-

delivery Fee": "the fees that the Forward Commitment required the Partnership to pay to PNC Bank, N.A., in its capacity as a DUS lender, following the termination of the Forward Commitment, such fees being colloquially referred to from time to time as 'breakage fee(s)'."

5.     Plaintiffs object to the definition of the term "Partner" as vague and ambiguous because the term "General Partner" is undefined and because 2013 Travis Oak Creek GP, LLC is no longer a partner in the Partnership. Plaintiffs will use the following definition of the term "Partner": "any of (i) PNC Bank, N.A., in its capacity as "ILP" in the Partnership; (ii) Columbia Housing SLP Corporation, in its capacity as "SLP" in the Partnership; and/or (iii) 2013 Travis Oak Creek GP, LLC, in its former capacity as a general partner in the Partnership, from which it has been removed."

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**  Identify every third party to whom PNC Bank paid a fee or any other monies, to extend the closing date of the First Mortgage Loan to May 2017 and identify the contract, agreement or other instrument that required such a payment.

**ANSWER:**

**PLAINTIFFS DESIGNATE THE RESPONSE TO INTERROGATORY NO. 1 AS "CONFIDENTIAL" UNDER THE PROTECTIVE ORDER IN PLACE IN THIS CASE.**

The Forward Commitment contractually required the Partnership to consummate a fixed rate mortgage loan in the amount of $27,300,000 (the "**Mortgage Loan**") with PNC Real Estate Multifamily Agency Finance ("**PNCRE MF AF**"), acting as Delegated Underwriting and Servicing ("**DUS**") lender for the Federal National Mortgage Association ("**Fannie Mae**"), by no later than May 23, 2016, which the Forward Commitment defined as the "**Final Delivery Date**." The purpose of the Mortgage Loan was to act as permanent financing to pay off the temporary construction loan from JPMorgan Chase Bank, N.A. to the Partnership in the original amount of $26,000,000.

The terms of the Forward Commitment permitted one six-month extension of the Final Delivery Date from May 23, 2016, to November 23, 2016, upon payment of a contractually agreed upon extension fee. The First GP caused the Partnership to pay the contractually agreed upon extension fee for the first extension of the Final Delivery Date. Upon termination of the Forward

Commitment, PNCRE MF AF paid a fee of 0.5% or $136,500 to PNC Capital Markets, LLC ("**PNCCM**") as required by a letter agreement between PNCRE MF AF and PNCCM dated May 23, 2014 (the "**MBS Forward Purchase Confirmation**"), and 0.25% or $68,250 to Fannie Mae pursuant to the terms of Fannie Mae's DUS agreements with PNCRE MF AF. Based on this fee, PNCCM adjusted its purchase price under the MBS Forward Purchase Confirmation from par (100%) to 99.5%.

The First GP did not cause the Partnership to consummate the Mortgage Loan as required by the terms of the Forward Commitment by the extended Final Delivery Date of November 23, 2016. Instead, the First GP asked PNCRE MF AF for another extension of the Final Delivery Date to May 23, 2017—that is, another six month extension. However, a second extension was not provided for by the terms of the Forward Commitment, and PNCRE MF AF could not agree to a second extension without the agreement of PNCCM, the mortgage-backed securities investor in the Forward Commitment, which it had no obligation to agree to. Indeed, PNCCM would incur significant costs associated with the second extension of the Final Delivery Date that the First GP requested, including (i) lost interest during that period; and (ii) market risks associated with pushing out the Final Delivery Date, including but not limited to hedge costs, liquidity premiums associated with selling a far forward settling security, and a credit spread exposure premium associated with the potential for widening credit spreads on an unsalable security.

Under the MBS Forward Purchase Confirmation and PNCRE MF AF's DUS agreements with Fannie Mae, PNCRE MF AF was required to collect and then pay certain fees to Fannie Mae and to PNCCM in order to permit a second extension of the Final Delivery Date to May 23, 2017. To collect these fees, PNCRE MF AF was required to send a letter agreement for the payment of the above fees to the First GP and to Fannie Mae. The First GP, acting on behalf of the Partnership, and Fannie Mae each executed that certain "Request for extension of Final Delivery Date" dated November 14, 2016 (the "**Second Extension Letter Agreement**"). The First GP executed the Second Extension Letter Agreement on November 15, 2016. Fannie Mae also executed the Second Extension Letter Agreement on or about that date.

The fees that PNCRE MF AF were required to collect from the Partnership under the Second Extension Letter Agreement for the first month of the six-month requested extension included each of the following: (i) a fee of $204,750 to be paid to PNCCM; (ii) a standby fee of 0.125% or $34,135 to be paid to Fannie Mae; and (iii) an extension fee of 0.250% or $68,250 to be paid to Fannie Mae. The First GP caused the Partnership to pay the fees for the first month of the second extension of the Final Delivery Date, and PNCRE MF AF paid those fees to PNCCM and Fannie Mae, respectively.

For each of months two through six of the second extension of the Final Delivery Date, PNCRE MF AF was required to obtain the following fees from the Partnership, each to be paid to PNCCM: for the second month, a fee of 0.975% or $238,875; for the third month, a fee of 1.125% or $307,125; for the fourth month, a fee of $1.375% or $375,375; for the fifth month, a fee of 1.625% or $443,625; for the sixth month, a fee of 1.625% or $443,625. The Partnership failed to pay any of these fees. Although the First GP caused the Partnership to pay the first month's extension fee of $307,125, it failed to pay the next month's extension fee. After the failure to pay the second month's extension fee, PNCRE MF AF gave the Partnership numerous

notices of nonpayment and a grace period to make that payment, but the First GP still did not cause the Partnership to make that payment. As a result, the Forward Commitment terminated according to its terms, and the Partnership became obligated to pay a "non-delivery fee" (i.e., the "breakage fee") to PNCRE MF AF.

**INTERROGATORY NO. 2:**  State the amount paid by PNC Bank to any third party to extend the closing date of the First Mortgage Loan to May 2017 and how such sum was calculated or computed.

**ANSWER:**

**PLAINTIFFS DESIGNATE THE RESPONSE TO INTERROGATORY NO. 2 AS "CONFIDENTIAL" UNDER THE PROTECTIVE ORDER IN PLACE IN THIS CASE.**

PNCRE MF AF either paid or would have been required to pay the fees set forth above in response to Interrogatory No. 1 to the recipients identified therein and respectfully refers Defendants to Plaintiffs' response to the same.

**INTERROGATORY NO. 3:**  State the amount of the actual out of pocket loss that PNC Bank suffered as a result of non-conversion of the Forward Commitment, if any, the method used to arrive at the amount stated and all parties to whom any such losses were paid by PNC.

**ANSWER:**

**PLAINTIFFS DESIGNATE THE RESPONSE TO INTERROGATORY NO. 3 AS "CONFIDENTIAL" UNDER THE PROTECTIVE ORDER IN PLACE IN THIS CASE.**

PNC responds as follows:

PNCCM incurred actual losses comprised of two components:

(1) **Commitment cancellation costs** (i.e., hedge unwind cost, mark to market losses of cancelled position); and
(2) **Opportunity cost** (i.e., profit that would have been made if the security was delivered as agreed).

**(1) Commitment cancellation costs:**

- Cancellation of security trade (i.e., buy price from PNCRE MF AF – 99.50%, cost at time of cancellation – 109.902%)

  (109.902% - 99.50%) x $27,300,000 (face value) =      – $     2,839,840

- Costs of unwinding hedge instruments

|  |  |  |  |
|---|---|---|---|
| (1) swap (pay fixed, receive float ) | = | – $ | 27,117 |
| (2) Treasury hedge | = | – $ | 7,172 |
| • Total write-downs taken since rate lock | = | – $ | 1,315,651 |
| **Total Commitment Cancellation Cost** | = | – $ | 4,189,779 |
| • Good faith deposit (2%) | = | $ | 546,000 |
| **Net Commitment Cancellation Cost** | = | – $ | 3,643,779 |

**(2) Opportunity cost:**

As of the time of cancellation, PNCCM would have sold the delivered security for approximately 116.934% of face value of security

|  |  |  |  |
|---|---|---|---|
| • Lost Profit = 116.934% (market value of security) – 109.902% (PNCCM's cost basis) times $27,300,000 (face value of security) | = | – $ | 1,919,531.25 |
| **Total Opportunity Cost** | = | – $ | 1,919,531.25 |
| **Total Costs as of January 30, 2017** | = | – $ | 5,563,310.25 |

As of the time that the Forward Commitment was entered into, there would have been no way to determine PNCCM's out of pocket expenses for the following reasons:

• The commitment cancellation and hedge unwind costs are based on U.S. Treasury and swap yields at the time of cancellation (i.e., in this case, in early 2017). In May 2014, these costs could not have been estimated or forecasted for a date at least two years into the future with any degree of certainty or confidence, as they are based numerous factors, including but not limited to: actions of the Federal Reserve System, U.S. Government policy, market volatility, global market conditions (including in Europe, Asia, and the Middle East), prices of commodities such as crude oil, the U.S. political climate, and geo-political interactions and conflicts.

• The opportunity cost is based on prevailing credit spreads in the commercial mortgage-backed securities markets at the time of cancellation. These credit spreads similarly could not have been estimated nor forecasted for a date at least two years into the future with any degree of certainty or confidence in May 2014, as they are determined by numerous factors that vary markedly over time, including but not limited to: the laws of supply and demand, market confidence, individual investment preferences, and prevailing economic conditions. Any estimate of future spreads would be, at best, a guess with no certainty as to the estimated value.

**INTERROGATORY NO. 4:**   Describe in detail the evidence at the preliminary injunction hearing you intend to rely upon to support your contention that "an extensive economic analysis supports the amount of the Breakage Fee and imminently demonstrating its enforceability" as stated in your Supplement to Motion for TRO and Preliminary Injunction.

**ANSWER:** Plaintiffs object to this request because it is overly broad and unduly burdensome on its face in that it is a "blockbuster" interrogatory and essentially seeks to require Plaintiffs to provide a narrative account of the case by listing "every fact" which supports the identified allegation or defense regarding the "non-delivery fee" or "breakage fee." *See, e.g., HCB Fin. Corp. v. Kennedy*, 2016 WL 6216179, at *2 (S.D. Miss. Mar. 28, 2016) (finding interrogatory was overly broad because it sought information related to any individual that might have discoverable information); *Nieman v. Hale*, No. 3:12-cv-2433-L-BN, 2013 WL 6814789, at *11 (N.D. Tex. Dec. 26, 2013) (denying motion to compel response to "blockbuster" interrogatory); *Brassell v. Turner*, No. 3:05-cv-476-TSL-JCS, 2006 WL 1806465, at *2 (S.D. Miss. June 29, 2006) (finding interrogatories overly broad an unduly burdensome where they sought an open-ended narrative that was not tailored in any way); *Grynberg v. Total S.A.*, No. 3-cv-01280-WYD-BNB, 2006 WL 1186836, at *7 (D. Colo. May 3, 2006) (denying motion to compel answer to "blockbuster" interrogatory); *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 186–87 (D. Kan. 1997) (finding interrogatories unduly burdensome that required the party to identify all facts supporting its position, all witnesses with knowledge of those facts, and all documents supporting the position). In particular, this request inappropriately seeks a listing of all evidence upon which Plaintiffs intend to rely at the July 21, 2017 hearing in this matter regarding the identified topic, which could include the specific contents of documents, the specific expected testimony from each witness, and other burdensome information. Further, pursuant to Fed. R. Civ. P. 33(a)(2), Plaintiffs object to this interrogatory as a premature contention interrogatory because, at the present time, they have not identified all evidence that they may use at the July 21, 2017 hearing on any allegation or defense, including any related to the "non-delivery fee" or "breakage fee." Based on the foregoing, Plaintiffs object to responding to this interrogatory.

**INTERROGATORY NO. 5:**   Identify each person, entity, governmental unit and/or agency with whom PNC Bank, and/or Columbia Housing has discussed or mentioned the alleged defaults of the Partnership Agreement alleged to have been committed by 2013 Travis Oak Creek GP, LLC.

**ANSWER:** Plaintiffs object to this interrogatory because it is not directly relevant to the issues set for hearing on July 21, 2017, and therefore violates the Court's *Order on Emergency Motion for Expedited Discovery.* Whether Plaintiffs have discussed the "alleged defaults of the Partnership Agreement alleged [sic] to have been committed by 2013 Travis Oak Creek GP, LLC" with any third party is not directly relevant to whether either party is entitled to obtain a preliminary injunction concerning control of the Partnership and/or its assets. It has no bearing on whether the First GP failed to comply with the Partnership Agreement or whether "Events of Default" have occurred under Section 7.7(a) of the Partnership Agreement. Based on the foregoing, Plaintiffs object to this interrogatory.

**INTERROGATORY NO. 6:** Identify each person, entity, governmental unit and/or agency with whom PNC Bank and/or Columbia Housing has discussed the fees claimed by PNC Bank to extend the closing date for the First Mortgage Loan and for non-conversion of the Forward Commitment.

**ANSWER:** Plaintiffs object to this interrogatory because it is not directly relevant to the issues set for hearing on July 21, 2017, and therefore violates the Court's *Order on Emergency Motion for Expedited Discovery.* Whether Plaintiffs have discussed the "the fees claimed by PNC Bank to extend the closing date for the First Mortgage Loan and for non-conversion of the Forward Commitment" with any third party is not directly relevant to whether either party is entitled to obtain a preliminary injunction concerning control of the Partnership and/or its assets. It has no bearing on whether the First GP failed to cause the Partnership to close on the Mortgage Loan by the Final Delivery Date (as extended). Based on the foregoing, Plaintiffs object to this interrogatory.

**INTERROGATORY NO. 7:** Identify each person, entity, governmental unit and/or agency with whom PNC Bank and/or Columbia Housing discussed efforts of the Partnership to obtain alternative financing to pay off the Construction Loan.

**ANSWER:** Plaintiffs object to this interrogatory because it is not directly relevant to the issues set for hearing on July 21, 2017, and therefore violates the Court's *Order on Emergency Motion for Expedited Discovery.* Whether Plaintiffs have discussed the "efforts of the Partnership to obtain alternative financing to pay off the Construction Loan" with any third party is not directly relevant to whether either party is entitled to obtain a preliminary injunction concerning control of the Partnership and/or its assets. It has no bearing on whether the First GP failed to cause the Partnership to pay off the "Construction Loan" by its maturity date of May 23, 2017. Based on the foregoing, Plaintiffs object to this interrogatory.

**INTERROGATORY NO. 8:** Identify each person, entity, governmental unit and/or agency with whom PNC Bank, N.A. and/or Columbia Housing SLP Corporation had communication on behalf of the Partnership following discovery of the construction deficiency or defect at the Property.

**ANSWER:** Plaintiffs object to this interrogatory because it is not directly relevant to the issues set for hearing on July 21, 2017, and therefore violates the Court's *Order on Emergency Motion for Expedited Discovery.* Whether Plaintiffs have communicated with any third party "on behalf of the Partnership following discovery of the construction deficiency or defect at the Property" is not directly relevant to whether either party is entitled to obtain a preliminary injunction concerning control of the Partnership and/or its assets. It has no bearing on whether the First GP failed to achieve "Final Construction Completion" by March 1, 2016, or to prevent the filing of a substantial mechanic's lien or collection litigation against the Partnership by Weis Builders, the general contractor on the project. Based on the foregoing, Plaintiffs object to this interrogatory.

**INTERROGATORY NO. 9:**  With regard to each event of default alleged by you to support your allegations of default by 2013 Travis Oak Creek GP, LLC under the Partnership Agreement, identify by date, author and delivery method, each notice of default that was issued detailing the specifics of each such alleged event default and the cure date that was associated with each such event, if any.

**ANSWER:**  Plaintiffs object to this request because it is compound and seeks to ask a number of specific, separate interrogatories under the heading of a single interrogatory and therefore violates the limit of ten (10) interrogatories permitted under the Court's *Order on Emergency Motion for Expedited Discovery*. Plaintiffs further object to this interrogatory because it is overly broad and unduly burdensome in that seeks to have them provide detailed information regarding numerous written communications, each of which are already in Defendants' possession and each of which provides information such as the "date, author and delivery method" and the specific content of each. It is unnecessary and unreasonably burdensome to request that Plaintiffs set this forth information in writing when Defendants may simply refer to the face of the referenced communication.

Plaintiffs do not object to providing information regarding the methods by which they notified the First GP of its defaults (and that Events of Default had occurred) under the Partnership Agreement, and respond that they notified the First GP as follows:

- "Notice of Default, Demand for Performance and Reservation of Right to Require Repurchase Pursuant to Partnership Agreement" dated February 28, 2017, from Kathleen Wu, on behalf of PNC, as ILP, and Columbia Housing, as SLP, to Renee Campos, on behalf of 2013 Travis Oak Creek GP, LLC;
- The "(i) Demand for Repurchase of Limited Partner Interests and (ii) Notice of Removal of General Partner Pursuant to Section 7.7(c) of The Partnership Agreement and (iii) Notice of Event of Withdrawal of General Partner Pursuant to Section 9.1 of The Partnership Agreement" dated June 7, 2017 from Kathleen Wu, on behalf of PNC, as ILP, and Columbia Housing, as SLP, to Renee Campos, on behalf of 2013 Travis Oak Creek GP, LLC;
- The "(i) Supplemental Notice of Removal of the First GP Pursuant to Section 7.7(c) of the Partnership Agreement and (ii) Supplemental Notice of Event of Withdrawal of the First GP Pursuant to Section 9.1 of the Partnership Agreement" dated June 16, 2017 from Kathleen Wu, on behalf of PNC, as ILP, and Columbia Housing, as SLP, to Renee Campos, on behalf of 2013 Travis Oak Creek GP, LLC;
- Orally at meetings of the Partnership that took place at the First GP's request on March 16, 2017, and on May 15, 2017;
- In an email sent by Kathleen J. Wu to Kenneth B. Chaiken on Wednesday March 22, 2017, with the subject line "Letter of Today's Date";
- In a letter dated December 27, 2016, from Sarah Garland, on behalf of PNC, as DUS lender, to Rene Campos, on behalf of 2013 Travis Oak Creek, LP;
- In an email sent by Donald W. Giffen, Jr. to Rene O. Campos on Tuesday, December 20, 2016, with the subject line "RE: 2013 Travis Oak Creek, LP";
- In various other letters, emails, and phone calls in 2016 and early 2017 between representatives of Plaintiffs and representatives of Defendants; and

- In each of the pleadings and in each of the oral hearings in the instant lawsuit.

Although the First GP has committed numerous "Events of Default" under the Partnership Agreement, Plaintiffs have alleged the following six "Events of Default" as the basis for their request to the Court for entry of injunctive relief in this case:

1. Promoting a voluntary receivership proceeding in the instant lawsuit (originally Case No. 1:17-cv-560-RP) (Partnership Agreement at 5–6, § 7.7(a)(3)), Cure Period: None;
2. Failing to achieve Final Construction Completion by March 1, 2016 (Partnership Agreement § 7.7(a)(2)), Cure Period: None;
3. Allowing a mechanic's lien to continue to exist against the Partnership's property (Partnership Agreement §§ 6.5(w), 7.7(a)(6)), Cure Period: fifteen (15) business days to the extent such default was capable of being cured;
4. Allowing the existence of a pending suit against the Partnership with the general contractor for the Project that will likely materially or adversely effect on the operation of the Partnership that has not been bonded against (Partnership Agreement §§ 6.5(x), 7.7(a)(6)), Cure Period: fifteen (15) business days to the extent such default was capable of being cured;
5. Existence of a default under the Forward Commitment (Partnership Agreement § 7.7(a)(7)), Cure Period: fifteen (15) business days to the extent such default was capable of being cured; and
6. Existence of a default under the construction loan with JPMorgan Chase Bank, N.A. (Partnership Agreement § 7.7(a)(7)), Cure Period: fifteen (15) business days to the extent such default was capable of being cured.

Pursuant to Section 7.7 of the Partnership Agreement, all cure periods described, to the extent the particular Event of Default was capable of being cured, have now expired.

**INTERROGATORY NO. 10:**  With regard to each event of default alleged by you to support your allegations of default by 2013 Travis Oak Creek GP, LLC under the Partnership Agreement, identify the specific loss, damage or injury, if any that either PNC or Columbia has suffered, and describe how you calculated or computed the same.

**ANSWER:** Plaintiffs object to this request because it seeks information that is not directly relevant to the hearing set in this case on July 21, 2017, as required by the Court's *Order on Emergency Motion for Expedited Discovery* in that information regarding monetary damages or losses that Plaintiffs have suffered is not relevant to whether any party is entitled to a preliminary injunction in this matter. In particular, information describing how monetary losses were calculated or computed is well outside the issues to be heard on July 21, 2017.

Plaintiffs do not object to providing information concerning how they will incur irreparable harm if a preliminary injunction is not entered prohibiting Defendants from taking any action that interferes with Columbia Housing's singular exercise of its role, authority, powers, control, rights, duties, obligations, or privileges as general partner of the Partnership, and respond to this interrogatory as follows:

Plaintiffs are being irreparably harmed by the First GP's usurpation of Columbia Housing's control of the Partnership as general partner. In particular, they are being deprived of a bargained-for remedy set forth in the Partnership Agreement that has intrinsic value that cannot be quantified. The right to control, manage, and administer the Partnership for the next several years is significant and nonmonetary. Plaintiffs have invested more than $11 million into the Partnership to date. But they are being deprived of the right to exercise the protections that they negotiated for that investment by the First GP's acts and omissions. The First GP is continuing to assert authority over the Partnership in spite of committing numerous Events of Default and having been removed. This is a clear violation of the provisions of Sections 7.7 and 9.1 of the Partnership Agreement providing for the First GP's removal and withdrawal following an Event of Default. In so doing, the First GP has seriously threatened PNC's investment in the Partnership. While Plaintiffs negotiated the removal language to protect their investment, the First GP is depriving Plaintiffs of the contractual remedy for which they bargained.

Moreover, given the defaults on the Construction Loan as a result of the First GP's actions, the Partnership is facing an imminent threat of foreclosure on the Lucero Apartments complex (and the underlying real estate), and Defendants are preventing Columbia Housing from exercising its authority to try and prevent that from occurring. As of the present, JPMorgan Chase Bank, N.A. cannot determine who is authorized to make binding decisions on behalf of the Partnership or with whom it can negotiate. Despite its removal, the First GP refuses to return the Partnership's funds; interferes with the Partnership's relationship with its tenants; refuses to let Columbia Housing's representatives onto the Property; and threatens to sue Plaintiffs' counsel for attempting to assert Columbia Housing's and the Partnership's rights. Further, Columbia Housing needs clear and unfettered authority to negotiate with JPMorgan Chase Bank, N.A. on behalf of the Partnership.

A money judgment against Defendants in two years—even if collectible, which is doubtful—would not protect Plaintiffs against the loss of Columbia Housing's ability to control the Partnership as general partner. Moreover, money damages would not be an adequate remedy for Plaintiffs' loss of the ability to carry out the Partnership's project to develop a low-income multifamily apartment complex as was originally agreed. Damages would not change the fact that in mere months, JPMorgan Chase Bank, N.A. will almost certainly have foreclosed on the Lucero Apartments complex and the Partnership will be left with few or no assets. Plaintiffs would lose the real value associated with being able to save a project for low-income residents and to make it work as the Partnership Agreement guarantees. Damages would not and could not rectify a defunct business enterprise. Without a preliminary injunction, the First GP will be able to continue running the Partnership into the ground. That would essentially nullify any benefit Plaintiffs bargained for with Defendants under the Partnership Agreement.

As result, Plaintiffs are facing irreparable harm from the First GP's continued usurpation of control of the Partnership and its assets, and they therefore are seeking entry of a preliminary injunction by the Court prohibiting Defendants from taking any action that interferes with Columbia Housing's singular exercise of its role, authority, powers, control, rights, duties, obligations or privileges as general partner of the Partnership.

Dated: July 10, 2017.

By: /s/ *Robert M. Hoffman*
Robert M. Hoffman
Texas Bar No. 09788200
robhoffman@andrewskurth.com
James C. Bookhout (*seeking admission*)
Texas Bar No. 24087187
jamesbookhout@andrewskurth.com
**ANDREWS KURTH KENYON LLP**
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone:  (214) 659-4400
Facsimile:   (214) 659-4401

David P. Whittlesey
Texas Bar No. 00791920
dwhittlesey@andrewskurth.com
**ANDREWS KURTH KENYON LLP**
111 Congress Avenue, Suite 1700
Austin, Texas 78701
Telephone:  (512) 320-9200
Facsimile:   (512) 320-9292

**ATTORNEYS FOR PLAINTIFFS
PNC BANK, N.A., COLUMBIA HOUSING SLP
CORPORATION, AND 2013 TRAVIS OAK
CREEK, LP**

## CERTIFICATE OF SERVICE

I certify that on July 10, 2017, a copy of the foregoing document was served on counsel for the Defendants in this case via email.

/s/ *Robert M. Hoffman*
Robert M. Hoffman

## VERIFICATION

I, Abi Tobun, hereby declare and state as follows:

"My name is Abi Tobun. I am over the age of twenty-one (21) years and am fully competent to execute this Verification. I have personal knowledge of the facts recited in Plaintiffs PNC Bank, N.A.'s and Columbia Housing SLP Corporation's Objections and Responses to Defendant's Interrogatories Nos. 1, 2, and 3 and/or have obtained information from persons at PNC Bank, N.A. with personal knowledge, and these facts, based on that knowledge and information, are true and correct."

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 10, 2017.

_____
Abi Tobun

## VERIFICATION

I, David Hasselwander, hereby declare and state as follows:

"My name is David Hasselwander. I am over the age of twenty-one (21) years and am fully competent to execute this Verification. I have personal knowledge of the facts recited in Plaintiffs PNC Bank, N.A.'s and Columbia Housing SLP Corporation's Objections and Responses to Defendant's Interrogatories Nos. 9 and 10 and/or have obtained information from persons at PNC Bank, N.A. and Columbia Housing SLP Corporation with personal knowledge, and these facts, based on that knowledge and information, are true and correct."

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 10, 2017.

David Hasselwander

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| PNC BANK, N.A. COLUMBIA | § | |
| HOUSING SLP CORPORATION, and | § | |
| 2013 TRAVIS OAK CREEK, LP | § | |
| | § | |
| **Plaintiffs,** | § | Action No. 1:17-cv-584-RP-ML |
| | § | |
| v. | § | |
| | § | **consolidated with** |
| 2013 TRAVIS OAK CREEK, LP, | § | **Case No. 1:17-cv-560-RP** |
| 2013 TRAVIS OAK CREEK GP, LLC, | § | |
| 2013 TRAVIS OAK CREEK | § | |
| DEVELOPER, INC., | § | |
| CHULA INVESTMENTS, LTD., | § | |
| and RENE O. CAMPOS | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFFS' OBJECTIONS AND RESPONSES
TO DEFENDANTS' REQUESTS FOR ADMISSION**

TO:   *Defendants 2013 Travis Oak Creek GP, LLC, 2013 Travis Oak Creek Developer, Inc., Chula Investments, Ltd., and Rene O. Campos, by and through their counsel of record, Kenneth C. Chaiken, 5801 Tennyson Pkwy., Suite 440, Plano, Texas 75024.*

Pursuant to Federal Rule of Civil Procedure 36 and the Court's *Order on Emergency Motion for Expedited Discovery* entered by the Court, Plaintiffs PNC Bank, N.A. ("**PNC**") and Columbia Housing SLP Corporation ("**Columbia Housing**") (together, "**Plaintiffs**") serve the attached Objections and Responses to the Requests for Admission propounded by Defendants 2013 Travis Oak Creek GP, LLC (the "**First GP**"), 2013 Travis Oak Creek Developer, Inc. ("**Developer**"), Chula Investments, Ltd. ("**Chula**"), and Rene O. Campos ("**Campos**") (collectively, the "**Defendants**").

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      Plaintiffs object to the definition of the term "Arbor Loan" as vague and ambiguous because they do not have sufficient information to determine what its terms were and whether the Arbor Loan could or would have "paid off" the $26,000,000 construction loan from JPMorgan Chase Bank, N.A. to 2013 Travis Oak Creek, LP (the "**Partnership**"). Further, they do not have sufficient information to determine the meaning of the "conditional consent" referred to in the definition of "Arbor Loan." Plaintiffs will use the following definition of "Arbor Loan": "a bridge loan that was purportedly sought by 2013 Travis Oak Creek GP, LLC from Arbor Commercial Mortgage and/or one of its affiliates."

2.      Plaintiffs object to the definition of the term "Consent" as vague and ambiguous because it does not specify the "required or contemplated … provision[s] of the Amended and Restated Agreement of Limited Partnership of 2013 Travis Oak Creek, LP." Plaintiffs will use the following definition of "Consent": "prior written approval in accordance with Section 13.4 of the Amended and Restated Agreement of Limited Partnership of 2013 Travis Oak Creek, LP."

3.      Plaintiffs object to the definition of the term "Forward Commitment" as vague and ambiguous because it fails to address executed amendments to the same. Plaintiffs will use the following definition of "Forward Commitment": "that certain $27,300,000 Fannie Mae Forward Commitment for Fixed Rate Mortgage Loan dated May 21, 2014, as amended by letter agreement initially dated March 28, 2016 and subsequently revised on April 6, 2016."

4.      Plaintiffs object to the definition of the term "Limited Partner" as vague and ambiguous because the capitalized term "Substitute Limited Partner" is not defined. Plaintiffs will use the following definition of "Limited Partner": "either of PNC Bank, N.A., in its capacity as "ILP" in the Partnership, and/or Columbia Housing SLP Corporation, in its capacity as "SLP" in the Partnership."

5.      Plaintiffs object to the definition of the term "Non-delivery Fee" as vague and ambiguous because the term "collapse" does not apply to the Forward Commitment. Plaintiffs will use the following definition of "Non-delivery Fee": "the fees that the Forward Commitment required the Partnership to pay to PNC Bank, N.A., in its capacity as a DUS lender, following the termination of the Forward Commitment, such fees being colloquially referred to from time to time as 'breakage fee(s)'."

6.      Plaintiffs object to the definition of the term "Partner" as vague and ambiguous because the term "General Partner" is undefined and because 2013 Travis Oak Creek GP, LLC is no longer a partner in the Partnership. Plaintiffs will use the following definition of the term "Partner": "any of (i) PNC Bank, N.A., in its capacity as "ILP" in the Partnership; (ii) Columbia Housing SLP Corporation, in its capacity as "SLP" in the Partnership; and/or (iii) 2013 Travis Oak Creek GP, LLC, in its former capacity as a general partner in the Partnership, from which it has been removed."

## OBJECTIONS AND RESPONSES TO
## DEFENDANTS' REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1**:  Columbia gave consent to 2013 Travis Oak Creek GP, LLC withholding final payment to Builder due to one or more issues concerning deficient construction at the Property, by Builder.

**RESPONSE**: Plaintiffs object to this request as vague and ambiguous because the phrase "due to one or more issues" is not defined and is not sufficiently specific to allow Plaintiffs to respond to the substance of this request. Plaintiffs cannot determine what "issues" Defendants are referring to. Based on their objection, Plaintiffs' response is: **Denied.**

**REQUEST FOR ADMISSION NO. 2**:  PNC Bank and Columbia knew Builder filed a lien against the Property after the Partnership withheld payment to Builder, due to one or more issues concerning deficient construction at the Property, by Builder, that Builder had not agreed to remediate, at the Columbia consented to the Partnership defending against Builder's lien and payment claims in litigation, and to the Partnership prosecuting claims against Builder, in the litigation commenced against the Partnership, by Builder.

**RESPONSE**: Plaintiffs object to this request as vague and ambiguous because the phrase "due to one or more issues" is not defined and is not sufficiently specific to allow Plaintiffs to respond to the substance of this request. Plaintiffs cannot determine what "issues" Defendants are referring to. Based on their objection, Plaintiffs' response is: **Denied.**

**REQUEST FOR ADMISSION NO. 3**:  An extension of the closing date of the First Mortgage Loan to May of 2017 was needed and agreed to by PNC.

**RESPONSE**:  **Denied.**

**REQUEST FOR ADMISSION NO. 4**:  PNC Bank demanded the Partnership pay monthly fees to extend the closing date of the First Mortgage Loan to May of 2017.

**RESPONSE**: Plaintiffs admit that, pursuant to its agreements with the Federal National Mortgage Association ("**Fannie Mae**") and to compensate for lost interest and market risk, PNC was required to obtain extension fees for each month of the second extension of the "Final Delivery Date" under the Forward Commitment from November 23, 2016, to May 23, 2017. In all other respects, Plaintiffs' response is: **Denied.**

**REQUEST FOR ADMISSION NO. 5**:  The fees demanded by PNC Bank, N.A. to extend the closing date of the First Mortgage Loan to May of 2017 were not a condition of the Forward Commitment.

**RESPONSE**: Plaintiffs admit that the Forward Commitment did not provide for or permit a second extension of the "Final Delivery Date" from November 23, 2016, to May 23, 2017. In all other respects, Plaintiffs' response is: **Denied.**

**REQUEST FOR ADMISSION NO. 6**:  One or both of Columbia and PNC Bank, as limited partners in the Partnership, gave consent to the Partnership's withholding of payment of the fee that was demanded by PNC Bank to extend the closing date for the First Mortgage Loan, to May of 2013.

**RESPONSE**: Plaintiffs respond that the "First Mortgage Loan" never had a closing date of May of 2013, and therefore Plaintiffs' response is: **Denied.**

**REQUEST FOR ADMISSION NO. 7**:  Neither Columbia nor PNC Bank as limited partners of the Partnership paid the fee that was demanded by PNC Bank to extend the closing date for the First Mortgage Loan to May of 2013.

**RESPONSE**: Plaintiffs respond that the "First Mortgage Loan" never had a closing date of May of 2013, and therefore Plaintiffs' response is: **Denied.**

**REQUEST FOR ADMISSION NO. 8**:  PNC Bank and Columbia, as limited partners in the Partnership, have stated to 2013 Travis Oak Creek GP, LLC that any potential claim against the Partnership by PNC Bank following its termination or collapse of the Forward Commitment, is fully defensible.

**RESPONSE**: **Denied.**

**REQUEST FOR ADMISSION NO. 9**:  One or both of PNC Bank and Columbia, as limited partners in the Partnership, gave conditional consent in writing to the Partnership's obtaining the Arbor Loan.

**RESPONSE**: Plaintiffs admit that they sent the letter attached to these responses as **Exhibit A** and dated April 24, 2017, regarding "Amended and Restated Agreement of Limited Partnership of 2013 Travis Oak Creek, LP, a Texas limited partnership (the "*Partnership*"), dated as of May 23, 2014 (with any amendments and modifications thereto specifically approved in writing by the limited partners, the "*Partnership Agreement*"), among 2013 Travis Oak Creek GP, LLC, a Texas limited liability company (the "*General Partner*"), PNC Bank, National Association, a national banking association (the "*Investment Limited Partner*"), and Columbia Housing SLP Corporation, an Oregon corporation (the "*Special Limited Partner*"), together with the Investment Limited Partner, the "*Limited Partners*")" to 2013 Travis Oak Creek GP, LLC. In all other respects, their response to this request is: **Denied.**

**REQUEST FOR ADMISSION NO. 10**:  One or both of PNC Bank and Columbia, as limited partners in the Partnership, were informed that in connection with a scheduled May closing of the Arbor Loan, 2013 Travis Oak Creek GP, LLC had obtained a commitment to bond against the lien filed against the Property by the Builder.

**RESPONSE**: Despite having made a reasonable inquiry, Plaintiffs are without sufficient knowledge or information concerning the meaning or existence of any "scheduled May closing of the Arbor Loan" or any "commitment to bond against the lien filed against the Property by the Builder" to enable them to admit or deny this request, and their response is therefore: **Denied.**

**REQUEST FOR ADMISSION NO. 11**:  PNC Bank and Columbia knew that the Arbor Loan, if closed, was arranged to cause the full and complete purchase or pay off of the Construction Loan, in full.

**RESPONSE**: **Denied.**

**PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANTS' REQUESTS FOR ADMISSION—Page 5**
DAL:960456.1

**REQUEST FOR ADMISSION NO. 12**:  PNC Bank and Columbia knew that the Arbor Loan, if closed, was arranged to include a hold back of funds to be used to pay for construction deficiency remediation costs, should Builder fail to remediate the same at its cost, or to pay for such costs of remediation.

**RESPONSE**: **Denied.**

**REQUEST FOR ADMISSION NO. 13**:  PNC Bank refused to subordinate its second lien against the Property, to the liens to be held by Arbor in connection with the Arbor Loan.

**RESPONSE**: Plaintiffs respond that PNC does not have a second lien against the Property; this request is therefore: **Denied.**

**REQUEST FOR ADMISSION NO. 14**:  Prior to the closing of the Arbor Loan, PNC Bank was informed of the sources and uses of the proposed Arbor Loan, and demanded payment from such loan, if funds were available, to apply to its "breakage fee" claim or claim for "non-delivery fees", in excess of $6 million.

**RESPONSE**: **Denied.**

**REQUEST FOR ADMISSION NO. 15**:  Prior to June 7, 2017, PNC Bank and Columbia had not proposed or consented to a particular settlement of PNC Bank's claim for a "breakage fee" or "non-delivery fee".

**RESPONSE**: **Denied.**

**REQUEST FOR ADMISSION NO. 16**:  Prior to June 7, 2017, PNC Bank and Columbia, as limited partners in the Partnership, had informed 2013 Travis Oak Creek GP, LLC that they wold [sic] not consent to final closing documents of the Arbor Loan, unless 2013 Travis Oak Creek GP, LLC caused PNC Bank's claim for a "breakage fee" or "non-delivery fee" to be resolved to PNC Bank's satisfaction.

**RESPONSE**: **Denied.**

**REQUEST FOR ADMISSION NO. 17**:  Since June 7, 2017, neither PNC Bank nor Columbia, as limited partners in the Partnership, have reached an agreement with PNC Bank, as a bank, to

**PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANTS' REQUESTS FOR ADMISSION—Page 6**
DAL:960456.1

settle or resolve PNC Bank's claim against the Partnership for a "breakage fee" or "non-delivery fee".

**RESPONSE**: **Admitted.**


**REQUEST FOR ADMISSION NO. 18**:  PNC Bank and/or Columbia, as limited partners in the Partnership, have reached an agreement with PNC Bank, as a bank, to settle or resolve PNC Bank's claim against the Partnership for a "breakage fee" or "non-delivery fee".

**RESPONSE**: **Denied.**

Dated: July 10, 2017.

By: /s/ *Robert M. Hoffman*
Robert M. Hoffman
Texas Bar No. 09788200
robhoffman@andrewskurth.com
James C. Bookhout (*seeking admission*)
Texas Bar No. 24087187
jamesbookhout@andrewskurth.com
**ANDREWS KURTH KENYON LLP**
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone:  (214) 659-4400
Facsimile:  (214) 659-4401

David P. Whittlesey
Texas Bar No. 00791920
dwhittlesey@andrewskurth.com
**ANDREWS KURTH KENYON LLP**
111 Congress Avenue, Suite 1700
Austin, Texas 78701
Telephone:  (512) 320-9200
Facsimile:  (512) 320-9292

**ATTORNEYS FOR PLAINTIFFS
PNC BANK, N.A., COLUMBIA HOUSING SLP
CORPORATION, AND 2013 TRAVIS OAK
CREEK, LP**

## CERTIFICATE OF SERVICE

I certify that on July 10, 2017, a copy of the foregoing document was served on counsel for the Defendants in this case via email.

 /s/ *Robert M. Hoffman*
Robert M. Hoffman

# EXHIBIT A



1717 Main Street, Suite 3700
Dallas, Texas 75201
214.659.4400 Phone
214.659.4401 Fax
andrewskurth.com

Kathleen J. Wu
214.659.4448 Phone
kwu@aklip.com

April 24, 2017

**VIA FEDEX, CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED AND**
**U.S. MAIL**

2013 Travis Oak Creek GP, LLC
603 W 8th Street
Austin, Texas 78701
Attn: Rene Campos

**VIA FEDEX, CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED AND**
**U.S. MAIL**

2013 Travis Oak Creek GP, LLC
c/o Eureka Multifamily Group
3001 Knox Street, Suite 400
Dallas, Texas 75205
Attn:  Rene Campos

Re:    Amended and Restated Agreement of Limited Partnership of 2013 Travis Oak Creek, LP,
a Texas limited partnership (the "*Partnership*"), dated as of May 23, 2014 (with any
amendments and modifications thereto specifically approved in writing by the limited
partners, the "*Partnership Agreement*"), among 2013 Travis Oak Creek GP, LLC, a
Texas limited liability company (the "*General Partner*"), PNC Bank, National
Association, a national banking association (the "*Investment Limited Partner*"), and
Columbia Housing SLP Corporation, an Oregon corporation (the "*Special Limited
Partner*", together with the Investment Limited Partner, the "*Limited Partners*")

Dear Mr. Campos:

As you know, this firm represents and writes to you on behalf of the Limited Partners.
We have received notice of General Partner's request for the Limited Partners' consent to the
Partnership obtaining new bridge financing for the Project[1] (the "*Proposed Financing*").  By this
correspondence the Limited Partners hereby grant their consent to the Proposed Financing,
subject to General Partner fulfilling one condition set forth below to the satisfaction of the
Limited Partners.

The Limited Partners' consent to the Proposed Financing is expressly conditioned on
receipt by the Limited Partners of the final documents evidencing the Proposed Financing,
including but not limited to the settlement statement, and approval of the same.

---

[1] Capitalized terms not otherwise defined herein shall take the meanings assigned to them in the Partnership
Agreement.

Travis Oak
April 24, 2017
Page 2

At this time, all rights of the Limited Partners to exercise any rights or remedies under the Partnership Agreement for any existing or future defaults on the part of General Partner, including the right to require repurchase of their interests, are hereby specifically reserved.

Neither the conditional consent provided herein nor any previous or contemporaneous correspondence or other communications (including all communications directly from or on behalf of the Limited Partners) is intended to be, nor should it be construed as, a waiver of any rights, benefits, agreements, remedies or recourses to which any of the Limited Partners may be entitled with respect to any failures, breaches or defaults that have occurred or may occur under the Partnership Agreement, or otherwise, including the Partnership Default or as consent or acquiescence to any acts or omissions.  Each of the Limited Partners further continues to reserve any and all rights, remedies, agreements, benefits and recourses available to it under the Partnership Agreement or any other agreement, document or instrument (including, without limitation, the Guaranty and any Project Document) to which any of the Limited Partners is a party or possesses rights as a direct or third party beneficiary, or otherwise at law or in equity, together with any and all claims, counterclaims or defenses the Limited Partners may have under the Partnership Agreement or otherwise at law or in equity in connection with any negligence, misconduct, or otherwise on the part of General Partner.  The Limited Partners further continue to reserve the right to seek recovery of any and all costs, expenses, obligations, liabilities, losses, damages and other recoverable amounts, whether or not demanded hereunder, including, without limitation, any actual, punitive or other damages against General Partner, the Guarantors and/or any other responsible party.

Thank you for your urgent attention to this important matter.

Very truly yours,

Kathleen J. Wu

cc:   Joy O'Brien, Esq.                          **VIA EMAIL**
      Mr. David Hasselwander                     **VIA EMAIL**

      Kenneth B. Chaiken, Esq.                   **VIA EMAIL**
      (*kchaiken@chaikenlaw.com*)

DAL:956671.1

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PNC BANK, N.A. COLUMBIA HOUSING SLP CORPORATION, and 2013 TRAVIS OAK CREEK, LP | § § § | |
| Plaintiffs, | § § | Action No. 1:17-cv-584-RP-ML |
| v. | § § | consolidated with |
| 2013 TRAVIS OAK CREEK, LP, 2013 TRAVIS OAK CREEK GP, LLC, 2013 TRAVIS OAK CREEK DEVELOPER, INC., CHULA INVESTMENTS, LTD., and RENE O. CAMPOS | § § § § § § § | Case No. 1:17-cv-560-RP |
| Defendants. | § | |

## PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANTS' REQUESTS FOR PRODUCTION

TO: *Defendants 2013 Travis Oak Creek GP, LLC, 2013 Travis Oak Creek Developer, Inc., Chula Investments, Ltd., and Rene O. Campos, by and through their counsel of record, Kenneth C. Chaiken, 5801 Tennyson Pkwy., Suite 440, Plano, Texas 75024.*

Pursuant to Federal Rule of Civil Procedure 34 and the Court's *Order on Emergency Motion for Expedited Discovery* entered by the Court, Plaintiffs PNC Bank, N.A. ("**PNC**") and Columbia Housing SLP Corporation ("**Columbia Housing**") (together, "**Plaintiffs**") serve the attached Objections and Responses to the Requests for Production propounded by Defendants 2013 Travis Oak Creek GP, LLC (the "**First GP**"), 2013 Travis Oak Creek Developer, Inc. ("**Developer**"), Chula Investments, Ltd. ("**Chula**"), and Rene O. Campos ("**Campos**") (collectively, the "**Defendants**").

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Plaintiffs object to the definition of the term "Arbor Loan" as vague and ambiguous because they do not have sufficient information to determine what its terms were and whether the Arbor Loan could or would have "paid off" the $26,000,000 construction loan from JPMorgan Chase Bank, N.A. to 2013 Travis Oak Creek, LP (the "**Partnership**"). Further, they do not have sufficient information to determine the meaning of the "conditional consent" referred to in the definition of "Arbor Loan." Plaintiffs will use the following definition of "Arbor Loan": "a bridge loan that was purportedly sought by 2013 Travis Oak Creek GP, LLC from Arbor Commercial Mortgage and/or one of its affiliates."

2.     Plaintiffs object to the definition of the term "Consent" as vague and ambiguous because it does not specify the "required or contemplated … provision[s] of the Amended and Restated Agreement of Limited Partnership of 2013 Travis Oak Creek, LP." Plaintiffs will use the following definition of "Consent": "prior written approval in accordance with Section 13.4 of the Amended and Restated Agreement of Limited Partnership of 2013 Travis Oak Creek, LP."

3.     Plaintiffs object to the definition of the term "Forward Commitment" as vague and ambiguous because it fails to address executed amendments to the same. Plaintiffs will use the following definition of "Forward Commitment": "that certain $27,300,000 Fannie Mae Forward Commitment for Fixed Rate Mortgage Loan dated May 21, 2014, as amended by letter agreement initially dated March 28, 2016 and subsequently revised on April 6, 2016."

4.     Plaintiffs object to the definition of the term "Limited Partner" as vague and ambiguous because the capitalized term "Substitute Limited Partner" is not defined. Plaintiffs will use the following definition of "Limited Partner": "either of PNC Bank, N.A., in its capacity as "ILP" in the Partnership, and/or Columbia Housing SLP Corporation, in its capacity as "SLP" in the Partnership."

5.      Plaintiffs object to the definition of the term "Non-delivery Fee" as vague and ambiguous because the term "collapse" does not apply to the Forward Commitment. Plaintiffs will use the following definition of "Non-delivery Fee": "the fees that the Forward Commitment required the Partnership to pay to PNC Bank, N.A., in its capacity as a DUS lender, following the termination of the Forward Commitment, such fees being colloquially referred to from time to time as 'breakage fee(s)'."

6.      Plaintiffs object to the definition of the term "Partner" as vague and ambiguous because the term "General Partner" is undefined and because 2013 Travis Oak Creek GP, LLC is no longer a partner in the Partnership. Plaintiffs will use the following definition of the term "Partner": "any of (i) PNC Bank, N.A., in its capacity as "ILP" in the Partnership; (ii) Columbia Housing SLP Corporation, in its capacity as "SLP" in the Partnership; and/or (iii) 2013 Travis Oak Creek GP, LLC, in its former capacity as a general partner in the Partnership, from which it has been removed."

## OBJECTIONS AND RESPONSES TO
## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1**:  Documents generated and/or received by PNC Bank, N.A. and/or Columbia mentioning any construction deficiency and/or defect at the Property.

**RESPONSE**: Plaintiffs object to this request because it seeks documents protected by the attorney-client privilege and/or work product doctrine in that many responsive discussions would have been conducted with counsel for the purpose of seeking legal advice or in anticipation of the instant lawsuit or of trial of the same. In particular, numerous communications between representatives of Plaintiffs and their counsel in this case for the purpose of discussing the instant litigation and/or Plaintiffs' strategies with respect to the instant litigation would be responsive to this request as written, and such communications are protected by the attorney-client privilege and/or work product doctrine. Plaintiffs will withhold any such documents on the basis of those privileges. Plaintiffs will produce non-privileged, responsive documents in their possession, custody, or control, if any.

**REQUEST FOR PRODUCTION NO. 2**:  Documents generated and/or received by PNC Bank, N.A. and/or Columbia that mention extension of the closing date for the First Mortgage Loan.

**RESPONSE**: Plaintiffs object to this request because it seeks documents protected by the attorney-client privilege and/or work product doctrine in that many responsive discussions would have been conducted with counsel for the purpose of seeking legal advice or in anticipation of the instant lawsuit or of trial of the same. In particular, numerous communications between representatives of Plaintiffs and their counsel in this case for the purpose of discussing the instant litigation and/or Plaintiffs' strategies with respect to the instant litigation would be responsive to this request as written, and such communications are protected by the attorney-client privilege and/or work product doctrine. Plaintiffs will withhold any such documents on the basis of those privileges. Plaintiffs will produce non-privileged, responsive documents in their possession, custody, or control, if any.

**REQUEST FOR PRODUCTION NO. 3**:  Documents generated and/or received by PNC Bank, N.A. and/or Columbia that mention any lien filed against the Property.

**RESPONSE**: Plaintiffs object to this request because it seeks documents protected by the attorney-client privilege and/or work product doctrine in that many responsive discussions would have been conducted with counsel for the purpose of seeking legal advice or in anticipation of the instant lawsuit or of trial of the same. In particular, numerous communications between representatives of Plaintiffs and their counsel in this case for the purpose of discussing the instant litigation and/or Plaintiffs' strategies with respect to the instant litigation would be responsive to this request as written, and such communications are protected by the attorney-client privilege and/or work product doctrine. Plaintiffs will withhold any such documents on the basis of those privileges. Plaintiffs will produce non-privileged, responsive documents in their possession, custody, or control, if any.

**REQUEST FOR PRODUCTION NO. 4**:  Documents generated and/or received by PNC Bank, N.A. and/or Columbia that mention default under the Construction Loan.

**RESPONSE**: Plaintiffs object to this request because it seeks documents protected by the attorney-client privilege and/or work product doctrine in that many responsive discussions would have been conducted with counsel for the purpose of seeking legal advice or in anticipation of the instant lawsuit or of trial of the same. In particular, numerous communications between representatives of Plaintiffs and their counsel in this case for the purpose of discussing the instant litigation and/or Plaintiffs' strategies with respect to the instant litigation would be responsive to this request as written, and such communications are protected by the attorney-client privilege and/or work product doctrine. Plaintiffs will withhold any such documents on the basis of those privileges. Plaintiffs will produce non-privileged, responsive documents in their possession, custody, or control, if any.

**REQUEST FOR PRODUCTION NO. 5**:  Documents generated and/or received by PNC Bank, N.A. and/or Columbia that mention termination or collapse of the Forward Commitment for the First Mortgage Loan.

**RESPONSE**: Plaintiffs object to this request because it seeks documents protected by the attorney-client privilege and/or work product doctrine in that many responsive discussions would have been conducted with counsel for the purpose of seeking legal advice or in anticipation of the instant lawsuit or of trial of the same. In particular, numerous communications between representatives of Plaintiffs and their counsel in this case for the purpose of discussing the instant litigation and/or Plaintiffs' strategies with respect to the instant litigation would be responsive to this request as written, and such communications are protected by the attorney-client privilege and/or work product doctrine. Plaintiffs will withhold any such documents on the basis of those privileges. Plaintiffs further object to this request as vague and ambiguous in that the term "collapse" does not apply to the Forward Commitment and is not specific enough for Plaintiffs to determine what documents Defendants seek in response to this request. Plaintiffs do not object to producing documents mentioning the termination of the Forward Commitment and will produce responsive documents in their possession, custody, or control, if any.

**REQUEST FOR PRODUCTION NO. 6**:  Documents generated and/or received by PNC Bank, N.A. and/or Columbia that mention any potential loans to the Partnership following collapse of the Forward Commitment.

**RESPONSE**: Plaintiffs object to this request because it seeks documents protected by the attorney-client privilege and/or work product doctrine in that many responsive discussions would have been conducted with counsel for the purpose of seeking legal advice or in anticipation of the instant lawsuit or of trial of the same. In particular, numerous communications between representatives of Plaintiffs and their counsel in this case for the purpose of discussing the instant litigation and/or Plaintiffs' strategies with respect to the instant litigation would be responsive to this request as written, and such communications are protected by the attorney-client privilege and/or work product doctrine. Plaintiffs will withhold any such documents on the basis of those privileges. Plaintiffs object to this request as vague and ambiguous in that the term "collapse" does not apply to the Forward Commitment and is not specific enough for Plaintiffs to determine what documents Defendants seek in response to this request. Plaintiffs do not object to producing documents that mention potential loans to the Partnership following the termination of the Forward Commitment and will produce responsive documents in their possession, custody, or control, if any.

**REQUEST FOR PRODUCTION NO. 7**:  Documents generated and/or received by PNC Bank, and/or Columbia mentioning withholding final payment to the Builder.

**RESPONSE**: Plaintiffs object to this request because it seeks documents protected by the attorney-client privilege and/or work product doctrine in that many responsive discussions would have been conducted with counsel for the purpose of seeking legal advice or in anticipation of

the instant lawsuit or of trial of the same. In particular, there may be communications between representatives of Plaintiffs and their counsel in this case for the purpose of discussing the instant litigation and/or Plaintiffs' strategies with respect to the instant litigation that would be responsive to this request as written, and such communications are protected by the attorney-client privilege and/or work product doctrine. Plaintiffs will withhold any such documents on the basis of those privileges. Plaintiffs will produce non-privileged, responsive documents in their possession, custody, or control, if any.

**REQUEST FOR PRODUCTION NO. 8**:  Documents generated and/or received by PNC Bank, N.A. and/or Columbia analyzing, mentioning, describing or calculating the "Non-delivery Fee" payment demanded by PNC Bank.

**RESPONSE**: Plaintiffs object to this request because it seeks documents protected by the attorney-client privilege and/or work product doctrine in that many responsive discussions would have been conducted with counsel for the purpose of seeking legal advice or in anticipation of the instant lawsuit or of trial of the same. In particular, there are communications between representatives of Plaintiffs and their counsel in this case for the purpose of discussing the instant litigation and/or Plaintiffs' strategies with respect to the instant litigation that would be responsive to this request as written, and such communications are protected by the attorney-client privilege and/or work product doctrine. Plaintiffs will withhold any such documents on the basis of those privileges. Plaintiffs object to this request as overly broad and unduly burdensome in that all documents "analyzing, mentioning, describing or calculating the 'non-delivery fee'" could be interpreted to include a voluminous set of documents having anything to do with the Forward Commitment or the "non-delivery fee" that resulted from the termination of the Forward Commitment. Plaintiffs do not object to producing basic documents describing the calculation of the "non-delivery fee" or "breakage fee" or directly discussing the amount of that fee and will produce such documents in their possession, custody, or control, if any.

**REQUEST FOR PRODUCTION NO. 9**:  Documents generated and/or received by PNC Bank and/or Columbia mentioning the defensibility of a claim by PNC Bank to enforce or collect a "Non-delivery Fee."

**RESPONSE**: Plaintiffs object to this request because it solely seeks documents protected by the attorney-client and work product privileges in that any discussion of the "defensibility of a claim by PNC Bank to enforce or collect a 'non-delivery fee'" necessarily involves discussions taking place in anticipation of litigation. Indeed, the only discussions that would have taken place regarding "defensibility of a claim" regarding the "non-delivery fee" or "breakage fee" would have been in anticipation of potential litigation over that issue; indeed, that is the only reason to discuss such an issue. In particular, numerous communications between representatives of Plaintiffs and their counsel in this case for the purpose of discussing the instant litigation and/or Plaintiffs' strategies with respect to the instant litigation would be responsive to this request, and such communications are protected by the attorney-client privilege and/or work product doctrine.

<mark>Plaintiffs will withhold any documents responsive to this request on the basis of the asserted privileges.</mark>

**REQUEST FOR PRODUCTION NO. 10**:   Documents generated and/or received by PNC Bank and/or Columbia that mention any bond(s) that were obtained or to be obtained by or on behalf of the Partnership.

**RESPONSE**: Plaintiffs object to this request because it seeks documents protected by the attorney-client privilege and/or work product doctrine in that many responsive discussions would have been conducted with counsel for the purpose of seeking legal advice or in anticipation of the instant lawsuit or of trial of the same. In particular, there are communications between representatives of Plaintiffs and their counsel in this case for the purpose of discussing the instant litigation and/or Plaintiffs' strategies with respect to the instant litigation that would be responsive to this request as written, and such communications are protected by the attorney-client privilege and/or work product doctrine. Plaintiffs will withhold any such documents on the basis of those privileges. Plaintiffs will produce non-privileged, responsive documents in their possession, custody, or control, if any.

**REQUEST FOR PRODUCTION NO. 11**:   Documents generated and/or received by PNC Bank and/or Columbia that mention Capital Contribution payments made by and/or to be made by PNC Bank or Columbia, to the Partnership.

**RESPONSE**: Plaintiffs object to this request because it seeks documents protected by the attorney-client privilege and/or work product doctrine in that many responsive discussions would have been conducted with counsel for the purpose of seeking legal advice or in anticipation of the instant lawsuit or of trial of the same. In particular, numerous communications between representatives of Plaintiffs and their counsel in this case for the purpose of discussing the instant litigation and/or Plaintiffs' strategies with respect to the instant litigation would be responsive to this request as written, and such communications are protected by the attorney-client privilege and/or work product doctrine. Plaintiffs will withhold any such documents on the basis of those privileges. Plaintiffs will produce non-privileged, responsive documents in their possession, custody, or control, if any.

**REQUEST FOR PRODUCTION NO. 12**:   Documents generated and/or received by PNC Bank and/or Columbia that mention or describe a fee to extend the closing date of the First Mortgage Loan.

**RESPONSE**: Plaintiffs object to this request because it seeks documents protected by the attorney-client privilege and/or work product doctrine in that many responsive discussions would have been conducted with counsel for the purpose of seeking legal advice or in anticipation of the instant lawsuit or of trial of the same. In particular, numerous communications between representatives of Plaintiffs and their counsel in this case for the purpose of discussing the instant

litigation and/or Plaintiffs' strategies with respect to the instant litigation would be responsive to this request as written, and such communications are protected by the attorney-client privilege and/or work product doctrine. Plaintiffs will withhold any such documents on the basis of those privileges. Plaintiffs will produce non-privileged, responsive documents in their possession, custody, or control, if any.

**REQUEST FOR PRODUCTION NO. 13**:  Documents generated and/or received by PNC Bank and/or Columbia mentioning consent by the Limited Partners for the Partnership to commence, settle, compromise, mediate, or otherwise relinquish any claim (actual or prospective), or to release, waive or diminish any material Partnership rights in any litigation or arbitration matter involving a claim against the Builder.

**RESPONSE**: Plaintiffs object to this request because it seeks documents protected by the attorney-client privilege and/or work product doctrine in that many responsive discussions would have been conducted with counsel for the purpose of seeking legal advice or in anticipation of the instant lawsuit or of trial of the same. In particular, numerous communications between representatives of Plaintiffs and their counsel in this case for the purpose of discussing the instant litigation and/or Plaintiffs' strategies with respect to the instant litigation would be responsive to this request as written, and such communications are protected by the attorney-client privilege and/or work product doctrine. Plaintiffs will withhold any such documents on the basis of those privileges. Plaintiffs will produce non-privileged, responsive documents in their possession, custody, or control, if any.

**REQUEST FOR PRODUCTION NO. 14**:  Documents generated and/or received by PNC Bank and/or Columbia that mention, describe, analyze or discuss the Arbor Loan.

**RESPONSE**: Plaintiffs object to this request because it seeks documents protected by the attorney-client privilege and/or work product doctrine in that many responsive discussions would have been conducted with counsel for the purpose of seeking legal advice or in anticipation of the instant lawsuit or of trial of the same. In particular, numerous communications between representatives of Plaintiffs and their counsel in this case for the purpose of discussing the instant litigation and/or Plaintiffs' strategies with respect to the instant litigation would be responsive to this request as written, and such communications are protected by the attorney-client privilege and/or work product doctrine. Plaintiffs will withhold any such documents on the basis of those privileges. Plaintiffs will produce non-privileged, responsive documents in their possession, custody, or control, if any.

**REQUEST FOR PRODUCTION NO. 15**:  Documents generated and/or received by PNC Bank and/or Columbia that mention, describe, analyze or discuss consent given by PNC Bank and/or Columbia for the Partnership to obtain the Arbor Loan.

**RESPONSE**: Plaintiffs object to this request because it seeks documents protected by the attorney-client privilege and/or work product doctrine in that many responsive discussions would have been conducted with counsel for the purpose of seeking legal advice or in anticipation of the instant lawsuit or of trial of the same. In particular, numerous communications between representatives of Plaintiffs and their counsel in this case for the purpose of discussing the instant litigation and/or Plaintiffs' strategies with respect to the instant litigation would be responsive to this request as written, and such communications are protected by the attorney-client privilege and/or work product doctrine. Plaintiffs will withhold any such documents on the basis of those privileges. Plaintiffs further object to this request as vague and ambiguous because the term "consent" is not capitalized and is therefore undefined; Plaintiffs will instead use the definition of the term "Consent" given in their objections to Defendants' Definitions and Instructions above. Using that definition of "Consent," Plaintiffs will produce non-privileged, responsive documents in their possession, custody, or control, if any.

**REQUEST FOR PRODUCTION NO. 16**:  Documents generated and/or received by PNC Bank and/or Columbia that mention, describe, analyze or discuss economic analysis and/or enforceability of the amount claimed by PNC Bank for the Non-delivery Fee.

**RESPONSE**: Plaintiffs object to this request because it seeks documents protected by the attorney-client privilege and/or work product doctrine in that many responsive discussions would have been conducted with counsel for the purpose of seeking legal advice or in anticipation of the instant lawsuit or of trial of the same. In particular, numerous communications between representatives of Plaintiffs and their counsel in this case for the purpose of discussing the instant litigation and/or Plaintiffs' strategies with respect to the instant litigation would be responsive to this request as written, and such communications are protected by the attorney-client privilege and/or work product doctrine. Plaintiffs will withhold any such documents on the basis of those privileges. Plaintiffs will produce non-privileged, responsive documents in their possession, custody, or control, if any.

**REQUEST FOR PRODUCTION NO. 17**:  Documents identifying every third party to whom PNC Bank paid a fee or any other monies, to extend the closing date of the First Mortgage Loan to May 2017 and the contract, agreement or other instrument that required such a payment.

**RESPONSE**: Plaintiffs object to this request because the phrase "[D]ocuments identifying every third party" is vague and ambiguous in that it does not describe the documents sought with sufficient particularity to allow Plaintiffs to identify them. Further, Defendants object to this request because it seeks documents that are not directly relevant to the hearing set in this case on July 21, 2017, as required by the Court's *Order on Emergency Motion for Expedited Discovery* in that documents regarding a fee paid to a third party to extend the termination date of the Forward Commitment to May 2017 do not have any bearing on whether either party is entitled to a preliminary injunction regarding control of the Partnership. Based on the foregoing, Plaintiffs will withhold any documents responsive to this request, if any.

**REQUEST FOR PRODUCTION NO. 18**:  Documents showing the actual out of pocket loss that PNC Bank suffered as a result of non-conversion of the Forward Commitment, if any, the method used to arrive at the amount stated and all parties to whom any such losses were paid by PNC.

**RESPONSE**: Plaintiffs object to this request because the phrase "[D]ocuments identifying every third party" is vague and ambiguous in that it does not describe the documents sought with sufficient particularity to allow Plaintiffs to identify them. Further, Defendants object to this request because it seeks documents that are not directly relevant to the hearing set in this case on July 21, 2017, as required by the Court's *Order on Emergency Motion for Expedited Discovery* in that documents regarding PNC's actual out of pocket loss as a result of the termination of the Forward Commitment have no relevance to whether there was a default under the Forward Commitment or whether the 2013 Travis Oak Creek GP, LLC (the "**First GP**") improperly allowed the Forward Commitment to terminate. Plaintiffs have not alleged that the "non-delivery fee" or "breakage fee" is an "Event of Default" upon which the removal of the First GP was based. PNC does not object to providing basic information concerning the amount of losses that it incurred and has provided that information in response to Defendants' corresponding interrogatory. To the extent that any documents are used to support that interrogatory response, PNC will produce those documents, if any.

**REQUEST FOR PRODUCTION NO. 19**:  Documents generated and/or received by PNC Bank, N.A. and/or Columbia that mention default under the Partnership Agreement alleged to have been committed by 2013 Travis Oak Creek GP, LLC.

**RESPONSE**: Plaintiffs object to this request because it seeks documents protected by the attorney-client privilege and/or work product doctrine in that a number of discussions concerning 2013 Travis Oak Creek GP, LLC's defaults under the Partnership Agreement were between Plaintiffs and their counsel or were made in anticipation of the instant lawsuit with the First GP regarding those defaults or of trial of the same. In particular, numerous communications between representatives of Plaintiffs and their counsel in this case for the purpose of discussing the instant litigation and/or Plaintiffs' strategies with respect to the instant litigation would be responsive to this request as written, and such communications are protected by the attorney-client privilege and/or work product doctrine. Plaintiffs will withhold any such documents on the basis of those privileges. Plaintiffs will produce non-privileged, responsive documents in their possession, custody, or control, if any.

**REQUEST FOR PRODUCTION NO. 20**:  With regard to each event of default alleged by you to support your allegations of default by 2013 Travis Oak Creek GP, LLC under the Partnership Agreement, documents that identify the specific loss, damage or injury, if any that either PNC or Columbia has suffered, and describe how you calculated or computed the same.

**PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANTS' REQUESTS FOR PRODUCTION–**
**Page 10**
DAL:960455.1

**RESPONSE**: Plaintiffs object to this request because it seeks documents that are not directly relevant to the hearing set in this case on July 21, 2017, as required by the Court's *Order on Emergency Motion for Expedited Discovery* in that documents regarding monetary damages or losses that Plaintiffs have suffered are not relevant to whether any party is entitled to a preliminary injunction in this matter. In particular, documents describing how monetary losses were calculated or computed are well outside the issues for determination on July 21, 2017. Plaintiffs do not object to producing and will produce documents in their possession, custody, or control demonstrating that they will incur irreparable harm if a preliminary injunction is not entered prohibiting Defendants from taking any action that interferes with Columbia Housing's singular exercise of its role, authority, powers, control, rights, duties, obligations, or privileges as general partner of the Partnership.

Dated: July 10, 2017.

By: _/s/ Robert M. Hoffman_____
Robert M. Hoffman
Texas Bar No. 09788200
robhoffman@andrewskurth.com
James C. Bookhout (*seeking admission*)
Texas Bar No. 24087187
jamesbookhout@andrewskurth.com
**ANDREWS KURTH KENYON LLP**
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone: (214) 659-4400
Facsimile: (214) 659-4401

David P. Whittlesey
Texas Bar No. 00791920
dwhittlesey@andrewskurth.com
**ANDREWS KURTH KENYON LLP**
111 Congress Avenue, Suite 1700
Austin, Texas 78701
Telephone: (512) 320-9200
Facsimile: (512) 320-9292

**ATTORNEYS FOR PLAINTIFFS
PNC BANK, N.A., COLUMBIA HOUSING SLP
CORPORATION, AND 2013 TRAVIS OAK
CREEK, LP**

## CERTIFICATE OF SERVICE

I certify that on July 10, 2017, a copy of the foregoing document was served on counsel for the Defendants in this case via email.

_/s/ Robert M. Hoffman_____
Robert M. Hoffman

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **PNC BANK, N.A. COLUMBIA** | § | |
| **HOUSING SLP CORPORATION, and** | § | |
| **2013 TRAVIS OAK CREEK, LP** | § | |
| | § | |
| **Plaintiffs,** | § | **Action No. 1:17-cv-584-RP-ML** |
| | § | |
| **v.** | § | |
| | § | **consolidated with** |
| **2013 TRAVIS OAK CREEK, LP,** | § | **Case No. 1:17-cv-560-RP** |
| **2013 TRAVIS OAK CREEK GP, LLC,** | § | |
| **2013 TRAVIS OAK CREEK** | § | |
| **DEVELOPER, INC.,** | § | |
| **CHULA INVESTMENTS, LTD.,** | § | |
| **and RENE O. CAMPOS** | § | |
| | § | |
| **Defendants.** | § | |

**COLUMBIA HOUSING SLP CORPORATION'S OBJECTIONS AND WITNESS DESIGNATIONS IN RESPONSE TO DEFENDANTS' NOTICE OF ORAL AND VIDEO DEPOSITION OF COLUMBIA HOUSING SLP CORPORATION PURSUANT TO FED. R. CIV. P., RULE 30(b)(6)**

TO:    *Defendants 2013 Travis Oak Creek GP, LLC, 2013 Travis Oak Creek Developer, Inc., Chula Investments, Ltd., and Rene O. Campos, by and through their counsel of record, Kenneth C. Chaiken, 5801 Tennyson Pkwy., Suite 440, Plano, Texas 75024.*

Pursuant to the Federal Rules of Civil Procedure and the *Order on Emergency Motion for Expedited Discovery* entered by the Court, Columbia Housing SLP Corporation ("**Columbia Housing**") serves its Objections and Witness Designations in response to the Notice of Deposition of Columbia Housing SLP Corporation Pursuant to Fed. R. Civ. P., Rule 30(b)(6) propounded by Defendants 2013 Travis Oak Creek GP, LLC (the "**First GP**"), 2013 Travis Oak Creek Developer, Inc. ("**Developer**"), Chula Investments, Ltd. ("**Chula**"), and Rene O. Campos ("**Campos**") (collectively, the "**Defendants**").

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      Columbia Housing objects to the definition of the term "Arbor Loan" as vague and ambiguous because it does not have sufficient information to determine what its terms were and whether the Arbor Loan could or would have "paid off" the $26,000,000 construction loan from JPMorgan Chase Bank, N.A. to 2013 Travis Oak Creek, LP (the "**Partnership**"). Further, Columbia Housing does not have sufficient information to determine the meaning of the "conditional consent" referred to in the definition of "Arbor Loan." Plaintiffs will use the following definition of "Arbor Loan": "a bridge loan that was purportedly sought by 2013 Travis Oak Creek GP, LLC from Arbor Commercial Mortgage and/or one of its affiliates."

2.      Columbia Housing objects to the definition of the term "Consent" as vague and ambiguous because it does not specify the "required or contemplated … provision[s] of the Amended and Restated Agreement of Limited Partnership of 2013 Travis Oak Creek, LP." Columbia Housing will use the following definition of "Consent": "prior written approval in accordance with Section 13.4 of the Amended and Restated Agreement of Limited Partnership of 2013 Travis Oak Creek, LP."

3.      Columbia Housing objects to the definition of the term "Forward Commitment" as vague and ambiguous because it fails to address executed amendments to the same. Columbia Housing will use the following definition of "Forward Commitment": "that certain $27,300,000 Fannie Mae Forward Commitment for Fixed Rate Mortgage Loan dated May 21, 2014, as amended by letter agreement initially dated March 28, 2016 and subsequently revised on April 6, 2016."

4.      Columbia Housing objects to the definition of the term "Limited Partner" as vague and ambiguous because the capitalized term "Substitute Limited Partner" is not defined.

COLUMBIA HOUSING SLP CORPORATION'S OBJECTIONS AND WITNESS DESIGNATIONS IN RESPONSE TO DEFENDANTS' NOTICE OF DEPOSITION OF COLUMBIA HOUSING SLP CORPORATION—Page 2

AUS:709260.1

Columbia Housing will use the following definition of "Limited Partner": "either of PNC Bank, N.A., in its capacity as "ILP" in the Partnership, and/or Columbia Housing SLP Corporation, in its capacity as "SLP" in the Partnership."

5.      Columbia Housing objects to the definition of the term "Non-delivery Fee" as vague and ambiguous because the term "collapse" does not apply to the Forward Commitment. Columbia Housing will use the following definition of "Non-delivery Fee": "the fees that the Forward Commitment required the Partnership to pay to PNC Bank, N.A., in its capacity as a DUS lender, following the termination of the Forward Commitment, such fees being colloquially referred to from time to time as 'breakage fee(s)'."

6.      Columbia Housing objects to the definition of the term "Partner" as vague and ambiguous because the term "General Partner" is undefined and because 2013 Travis Oak Creek GP, LLC is no longer a partner in the Partnership. Columbia Housing will use the following definition of the term "Partner": "any of (i) PNC Bank, N.A., in its capacity as "ILP" in the Partnership; (ii) Columbia Housing SLP Corporation, in its capacity as "SLP" in the Partnership; and/or (iii) 2013 Travis Oak Creek GP, LLC, in its former capacity as a general partner in the Partnership, from which it has been removed."

## OBJECTIONS TO MATTERS UPON WHICH EXAMINATION IS REQUESTED

**NO. 1**:  The identity of every third party to whom PNC Bank paid a fee or any other monies, to extend the closing date of the First Mortgage Loan to May 2017 and the contract, agreement or other instrument that required such a payment.

**OBJECTIONS**: Columbia Housing objects to this topic because Columbia Housing is a separate entity from PNC Bank, N.A. and because it has never been a lender or potential lender to the Partnership of any kind. Instead, it is solely an investor in the Partnership. Therefore, Columbia Housing cannot prepare any witness to testify regarding matters known only to PNC, acting in its capacity as a Delegated Underwriting and Servicing ("**DUS**") lender for the Federal National Mortgage Association ("**Fannie Mae**"), and objects to the same.

**NO. 2**:  The amount paid by PNC Bank to any third party to extend the closing date of the First Mortgage Loan to May 2017 and how such sum was calculated or computed.

**OBJECTIONS**: Columbia Housing objects to this topic because Columbia Housing is a separate entity from PNC Bank, N.A. and because it has never been a lender or potential lender to the Partnership of any kind. Instead, it is solely an investor in the Partnership. Therefore, Columbia Housing cannot prepare any witness to testify regarding matters known only to PNC, acting in its capacity as a DUS lender for Fannie Mae, and objects to the same.

**NO. 3**:  The amount of the actual out of pocket loss that PNC Bank suffered as a result of non-conversion of the Forward Commitment, if any, the method used to arrive at that amount and all parties to whom any such losses were paid by PNC.

**OBJECTIONS**: Columbia Housing objects to this topic because Columbia Housing is a separate entity from PNC Bank, N.A. and because it has never been a lender or potential lender to the Partnership of any kind. Instead, it is solely an investor in the Partnership. Therefore, Columbia Housing cannot prepare any witness to testify regarding matters known only to PNC, acting in its capacity as a DUS lender for Fannie Mae, and objects to the same.

**NO. 4**:  The evidence at the preliminary injunction hearing that PNC Bank and Columbia intend to rely upon to support their contention that "an extensive economic analysis supports the amount of the Breakage Fee and imminently demonstrating its enforceability" as stated in their Supplement to Motion for TRO and Preliminary Injunction.

**OBJECTIONS**: Columbia Housing objects to this topic because Columbia Housing is a separate entity from PNC Bank, N.A. and because it has never been a lender or potential lender to the Partnership of any kind. Instead, it is solely an investor in the Partnership. Therefore, Columbia Housing cannot prepare any witness to testify regarding matters known only to PNC, acting in its capacity as a Delegated Underwriting and Servicing ("**DUS**") lender for Fannie Mae, and objects to the same.

**NO. 5**:  Each person, entity, governmental unit and/or agency with whom PNC Bank, and/or Columbia Housing has discussed or mentioned the alleged defaults of the Partnership Agreement alleged to have been committed by 2013 Travis Oak Creek GP, LLC and the substance and purposes of such communications.

**OBJECTIONS**: Columbia Housing objects to this topic because it is not directly relevant to the issues set for hearing on July 21, 2017, and therefore violates the Court's *Order on Emergency Motion for Expedited Discovery.* Whether Columbia Housing has discussed the "alleged defaults

COLUMBIA HOUSING SLP CORPORATION'S OBJECTIONS AND WITNESS DESIGNATIONS IN RESPONSE TO DEFENDANTS' NOTICE OF DEPOSITION OF COLUMBIA HOUSING SLP CORPORATION—Page 4

AUS:709260.1

of the Partnership Agreement alleged [sic] to have been committed by 2013 Travis Oak Creek GP, LLC" with any third party is not directly relevant to whether either party is entitled to obtain a preliminary injunction concerning control of the Partnership and/or its assets. It has no bearing on whether the First GP failed to comply with the Partnership Agreement or whether "Events of Default" have occurred under Section 7.7(a) of the Partnership Agreement. Based on the foregoing, Columbia Housing objects to preparing a witness to testify regarding this topic.

**NO. 6**:   Each person, entity, governmental unit and/or agency with whom PNC Bank and/or Columbia Housing discussed the fees claimed by PNC Bank to extend the closing date for the First Mortgage Loan and for non-conversion of the Forward Commitment and the substance a purposes of such communications.

**OBJECTIONS:** Columbia Housing objects to this topic because Columbia Housing is a separate entity from PNC Bank, N.A. and because it has never been a lender or potential lender to the Partnership of any kind. Instead, it is solely an investor in the Partnership. Therefore, Columbia Housing cannot prepare any witness to testify regarding matters known only to PNC, acting in its capacity as a DUS lender, and objects to the same. Columbia Housing objects to this topic because it is not directly relevant to the issues set for hearing on July 21, 2017, and therefore violates the Court's *Order on Emergency Motion for Expedited Discovery.* Whether Plaintiffs have discussed the "the fees claimed by PNC Bank to extend the closing date for the First Mortgage Loan and for non-conversion of the Forward Commitment" with any third party is not directly relevant to whether a party is entitled to obtain a preliminary injunction concerning control of the Partnership and/or its assets. It has no bearing on whether the First GP failed to cause the Partnership to close on the Mortgage Loan by the Final Delivery Date (as extended).   Based on the foregoing, Columbia Housing objects to preparing a witness to testify regarding this topic.

**NO. 7**:   With regard to each event of default alleged by Columbia and/or PNC Bank to support their allegations of default by 2013 Travis Oak Creek GP, LLC under the Partnership Agreement, the date, author and delivery method of each notice of default that was issued detailing the specifics of each such alleged event default and the cure date that was associated with each such event, if any.

**OBJECTIONS:** Columbia Housing objects to this topic because it is overly broad and unduly burdensome in that it seeks to have Columbia Housing prepare a witness to provide detailed information regarding numerous written communications, each of which are already in Defendants' possession and each of which provides information such as the "date, author and delivery method" and the specific content of each. It is unnecessary and unreasonably burdensome to request that Columbia Housing have a witness memorize such information when Defendants may simply refer to the face of the referenced communication. Columbia Housing therefore objects to having a witness memorize such information. Columbia Housing does not object to preparing a witness to answer questions concerning the general methods by and dates on which it notified the First GP concerning the "Events of Default" that occurred under the

COLUMBIA HOUSING SLP CORPORATION'S OBJECTIONS AND WITNESS DESIGNATIONS IN
RESPONSE TO DEFENDANTS' NOTICE OF DEPOSITION OF COLUMBIA HOUSING SLP
CORPORATION—Page 5

Partnership Agreement. Columbia Housing designates David Hasselwander to testify as to this narrowed topic.

**NO. 8**:  The facts underlying each event of default alleged by Columbia and/or PNC Bank to support their allegations of default by 2013 Travis Oak Creek GP, LLC under the Partnership Agreement.

**OBJECTIONS:** None. Columbia Housing designates David Hasselwander to testify as to this topic.

**NO. 9**:  The specific loss, damage or injury, if any that either PNC or Columbia has suffered (and describe how the same has been calculated or computed) as a result of each event of default alleged by Columbia and/or PNC Bank to support their allegations of default by 2013 Travis Oak Creek GP, LLC under the Partnership Agreement.

**OBJECTIONS:** Columbia Housing objects to this topic because it seeks information that is not directly relevant to the hearing set in this case on July 21, 2017, as required by the Court's *Order on Emergency Motion for Expedited Discovery* in that information regarding monetary damages or losses that PNC Bank, N.A. or Columbia Housing have suffered is not relevant to whether any party is entitled to a preliminary injunction in this matter. In particular, information describing how monetary losses were calculated or computed is well outside the issues to be heard on July 21, 2017. Columbia Housing does not object to preparing a witness to answer questions concerning how it will incur irreparable harm if a preliminary injunction is not entered prohibiting Defendants from taking any action that interferes with Columbia Housing's singular exercise of its role, authority, powers, control, rights, duties, obligations, or privileges as general partner of the Partnership. Columbia Housing designates David Hasselwander to testify as to this narrowed topic.

**NO. 10**:  Negotiations and discussion between 2013 Travis Oak Creek GP, LLC on the one hand, and Columbia and PNC Bank on the other hand, about the terms and conditions of closing the Arbor Loan.

**OBJECTIONS**: None. Columbia Housing designates David Hasselwander to testify as to this topic.

Dated: July 10, 2017.

By: _/s/ *Robert M. Hoffman*_____
Robert M. Hoffman
Texas Bar No. 09788200
robhoffman@andrewskurth.com
James C. Bookhout (*seeking admission*)
Texas Bar No. 24087187
jamesbookhout@andrewskurth.com
**ANDREWS KURTH KENYON LLP**
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone:   (214) 659-4400
Facsimile:   (214) 659-4401

David P. Whittlesey
Texas Bar No. 00791920
dwhittlesey@andrewskurth.com
**ANDREWS KURTH KENYON LLP**
111 Congress Avenue, Suite 1700
Austin, Texas 78701
Telephone:   (512) 320-9200
Facsimile:   (512) 320-9292

**ATTORNEYS FOR PLAINTIFFS
PNC BANK, N.A., COLUMBIA HOUSING SLP
CORPORATION, AND 2013 TRAVIS OAK
CREEK, LP**

## CERTIFICATE OF SERVICE

I certify that on July 10, 2017, a copy of the foregoing document was served on counsel for the Defendants in this case via email.

_/s/ *Robert M. Hoffman*_____
Robert M. Hoffman

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **PNC BANK, N.A. COLUMBIA** | § | |
| **HOUSING SLP CORPORATION, and** | § | |
| **2013 TRAVIS OAK CREEK, LP** | § | |
| | § | |
| **Plaintiffs,** | § | **Action No. 1:17-cv-584-RP-ML** |
| | § | |
| **v.** | § | |
| | § | **consolidated with** |
| **2013 TRAVIS OAK CREEK, LP,** | § | **Case No. 1:17-cv-560-RP** |
| **2013 TRAVIS OAK CREEK GP, LLC,** | § | |
| **2013 TRAVIS OAK CREEK** | § | |
| **DEVELOPER, INC.,** | § | |
| **CHULA INVESTMENTS, LTD.,** | § | |
| **and RENE O. CAMPOS** | § | |
| | § | |
| **Defendants.** | § | |

**PNC BANK, N.A.'S  OBJECTIONS AND DESIGNATIONS IN RESPONSE TO**
**DEFENDANTS' NOTICE OF ORAL AND VIDEO DEPOSITION OF**
**PNC BANK, N.A. PURSUANT TO FED. R. CIV. P., RULE 30(b)(6)**

TO:   *Defendants 2013 Travis Oak Creek GP, LLC, 2013 Travis Oak Creek Developer, Inc., Chula Investments, Ltd., and Rene O. Campos, by and through their counsel of record, Kenneth C. Chaiken, 5801 Tennyson Pkwy., Suite 440, Plano, Texas 75024.*

Pursuant to the Federal Rules of Civil Procedure and the *Order on Emergency Motion for Expedited Discovery* entered by the Court, PNC Bank, N.A. ("**PNC**") serves its Objections and Witness Designations in response to the Notice of Deposition of PNC Bank, N.A. Pursuant to Fed. R. Civ. P., Rule 30(b)(6) propounded by Defendants 2013 Travis Oak Creek GP, LLC (the "**First GP**"), 2013 Travis Oak Creek Developer, Inc. ("**Developer**"), Chula Investments, Ltd. ("**Chula**"), and Rene O. Campos ("**Campos**") (collectively, the "**Defendants**").

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      PNC objects to the definition of the term "Arbor Loan" as vague and ambiguous because it does not have sufficient information to determine what its terms were and whether the Arbor Loan could or would have "paid off" the $26,000,000 construction loan from JPMorgan Chase Bank, N.A. to 2013 Travis Oak Creek, LP (the "**Partnership**"). Further, PNC does not have sufficient information to determine the meaning of the "conditional consent" referred to in the definition of "Arbor Loan." Plaintiffs will use the following definition of "Arbor Loan": "a bridge loan that was purportedly sought by 2013 Travis Oak Creek GP, LLC from Arbor Commercial Mortgage and/or one of its affiliates."

2.      PNC objects to the definition of the term "Consent" as vague and ambiguous because it does not specify the "required or contemplated … provision[s] of the Amended and Restated Agreement of Limited Partnership of 2013 Travis Oak Creek, LP." PNC will use the following definition of "Consent": "prior written approval in accordance with Section 13.4 of the Amended and Restated Agreement of Limited Partnership of 2013 Travis Oak Creek, LP."

3.      PNC objects to the definition of the term "Forward Commitment" as vague and ambiguous because it fails to address executed amendments to the same. PNC will use the following definition of "Forward Commitment": "that certain $27,300,000 Fannie Mae Forward Commitment for Fixed Rate Mortgage Loan dated May 21, 2014, as amended by letter agreement initially dated March 28, 2016 and subsequently revised on April 6, 2016."

4.      PNC objects to the definition of the term "Limited Partner" as vague and ambiguous because the capitalized term "Substitute Limited Partner" is not defined. PNC will use the following definition of "Limited Partner": "either of PNC Bank, N.A., in its capacity as "ILP" in the Partnership, and/or Columbia Housing SLP Corporation, in its capacity as "SLP" in the Partnership."

5.      PNC objects to the definition of the term "Non-delivery Fee" as vague and ambiguous because the term "collapse" does not apply to the Forward Commitment. PNC will use the following definition of "Non-delivery Fee": "the fees that the Forward Commitment required the Partnership to pay to PNC Bank, N.A., in its capacity as a DUS lender, following the termination of the Forward Commitment, such fees being colloquially referred to from time to time as 'breakage fee(s)'."

6.      PNC objects to the definition of the term "Partner" as vague and ambiguous because the term "General Partner" is undefined and because 2013 Travis Oak Creek GP, LLC is no longer a partner in the Partnership. PNC will use the following definition of the term "Partner": "any of (i) PNC Bank, N.A., in its capacity as "ILP" in the Partnership; (ii) Columbia Housing SLP Corporation, in its capacity as "SLP" in the Partnership; and/or (iii) 2013 Travis Oak Creek GP, LLC, in its former capacity as a general partner in the Partnership, from which it has been removed."

## **OBJECTIONS TO MATTERS UPON WHICH EXAMINATION IS REQUESTED**

**NO. 1**:  The identity of every third party to whom PNC Bank paid a fee or any other monies, to extend the closing date of the First Mortgage Loan to May 2017 and the contract, agreement or other instrument that required such a payment.

**OBJECTIONS**: None. PNC designates Abi Tobun to testify as to this topic.

**NO. 2**:  The amount paid by PNC Bank to any third party to extend the closing date of the First Mortgage Loan to May 2017 and how such sum was calculated or computed.

**OBJECTIONS**: None. PNC designates Abi Tobun to testify as to this topic.

**NO. 3**:  The amount of the actual out of pocket loss that PNC Bank suffered as a result of non-conversion of the Forward Commitment, if any, the method used to arrive at that amount and all parties to whom any such losses were paid by PNC.

**OBJECTIONS**: None. PNC designates Abi Tobun to testify as to this topic.

**NO. 4**:  The evidence at the preliminary injunction hearing that PNC Bank and Columbia intend to rely upon to support their contention that "an extensive economic analysis supports the amount of the Breakage Fee and imminently demonstrating its enforceability" as stated in their Supplement to Motion for TRO and Preliminary Injunction.

**OBJECTIONS**: PNC objects to this request because its (and its attorneys') determinations, opinions, and mental impressions concerning the evidence that PNC may use at the July 21, 2017 hearing is protected by the work product doctrine because it that information was prepared during litigation and in advance of trial in the instant lawsuit. PNC objects to this topic because it is overly broad and unduly burdensome on its face in that it seeks to have PNC prepare a witness to testify extensively as to all "evidence" that it may use or rely upon regarding the topic described, which is too cumbersome and voluminous for a witness—who is not a lawyer—to personally recall. PNC further objects to this topic because it is premature in that discovery is not yet complete and it has not yet made a determination as to every item of evidence it may use at the hearing on July 21, 2017, regarding the "non-delivery fee" or "breakage fee" by the date and time of the requested deposition. PNC will not prepare a witness to testify regarding all "evidence" that it may present regarding the described topic at the hearing on July 21, 2017. PNC does not object to preparing a witness to testify regarding the economic analysis supporting the amount of the "non-delivery fee" or 'breakage fee," and PNC designates Abi Tobun to testify as to this narrowed topic.

**NO. 5**:  Each person, entity, governmental unit and/or agency with whom PNC Bank, and/or Columbia Housing has discussed or mentioned the alleged defaults of the Partnership Agreement alleged to have been committed by 2013 Travis Oak Creek GP, LLC and the substance and purposes of such communications.

**OBJECTIONS**: PNC objects to this topic because it is not directly relevant to the issues set for hearing on July 21, 2017, and therefore violates the Court's *Order on Emergency Motion for Expedited Discovery*. Whether PNC has discussed the "alleged defaults of the Partnership Agreement alleged [sic] to have been committed by 2013 Travis Oak Creek GP, LLC" with any third party is not directly relevant to whether either party is entitled to obtain a preliminary injunction concerning control of the Partnership and/or its assets. It has no bearing on whether the First GP failed to comply with the Partnership Agreement or whether "Events of Default" have occurred under Section 7.7(a) of the Partnership Agreement. Based on the foregoing, PNC objects to preparing a witness to testify regarding this topic.

**PNC BANK, N.A.'S OBJECTIONS AND WITNESS DESIGNATIONS IN RESPONSE TO DEFENDANTS' NOTICE OF DEPOSITION OF PNC BANK, N.A.—Page 4**

DAL:960453.1

**NO. 6**:  Each person, entity, governmental unit and/or agency with whom PNC Bank and/or Columbia Housing discussed the fees claimed by PNC Bank to extend the closing date for the First Mortgage Loan and for non-conversion of the Forward Commitment and the substance a purposes of such communications.

**OBJECTIONS:** PNC objects to this topic because it is not directly relevant to the issues set for hearing on July 21, 2017, and therefore violates the Court's *Order on Emergency Motion for Expedited Discovery.* Whether PNC has discussed the "the fees claimed by PNC Bank to extend the closing date for the First Mortgage Loan and for non-conversion of the Forward Commitment" with any third party is not directly relevant to whether a party is entitled to obtain a preliminary injunction concerning control of the Partnership and/or its assets. It has no bearing on whether the First GP failed to cause the Partnership to close on the fixed rate mortgage loan required by the Forward Commitment by the "Final Delivery Date" (as extended). Based on the foregoing, PNC objects to preparing a witness to testify regarding this topic.

**NO. 7**:  With regard to each event of default alleged by Columbia and/or PNC Bank to support their allegations of default by 2013 Travis Oak Creek GP, LLC under the Partnership Agreement, the date, author and delivery method of each notice of default that was issued detailing the specifics of each such alleged event default and the cure date that was associated with each such event, if any.

**OBJECTIONS:** PNC objects to this topic because it is overly broad and unduly burdensome in that it seeks to have PNC prepare a witness to provide detailed information regarding numerous written communications, each of which are already in Defendants' possession and each of which provides information such as the "date, author and delivery method" and the specific content of each. It is unnecessary and unreasonably burdensome to request that PNC have a witness memorize such information when Defendants may simply refer to the face of the referenced communications. PNC therefore objects to having a witness memorize such information. PNC does not object to preparing a witness to answer questions concerning the general methods by and dates on which it notified the First GP concerning the "Events of Default" that occurred under the Partnership Agreement. PNC designates David Hasselwander to testify as to this narrowed topic.

**NO. 8**:   The facts underlying each event of default alleged by Columbia and/or PNC Bank to support their allegations of default by 2013 Travis Oak Creek GP, LLC under the Partnership Agreement.

**OBJECTIONS:** None. PNC designates David Hasselwander to testify as to this topic.

**NO. 9**:  The specific loss, damage or injury, if any that either PNC or Columbia has suffered (and describe how the same has been calculated or computed) as a result of each event of default

alleged by Columbia and/or PNC Bank to support their allegations of default by 2013 Travis Oak Creek GP, LLC under the Partnership Agreement.

**OBJECTIONS:** PNC objects to this topic because it seeks information that is not directly relevant to the hearing set in this case on July 21, 2017, as required by the Court's *Order on Emergency Motion for Expedited Discovery* in that information regarding monetary damages or losses that PNC or Columbia Housing SLP Corporation have suffered is not relevant to whether any party is entitled to a preliminary injunction in this matter. In particular, information describing how monetary losses were calculated or computed is well outside the issues to be heard on July 21, 2017. PNC does not object to preparing a witness to answer questions concerning how it will incur irreparable harm if a preliminary injunction is not entered prohibiting Defendants from taking any action that interferes with Columbia Housing's singular exercise of its role, authority, powers, control, rights, duties, obligations, or privileges as general partner of the Partnership. PNC designates David Hasselwander to testify as to this narrowed topic.

**NO. 10**:  Negotiations and discussion between 2013 Travis Oak Creek GP, LLC on the one hand, and Columbia and PNC Bank on the other hand, about the terms and conditions of closing the Arbor Loan.

**OBJECTIONS**: None. PNC designates David Hasselwander to testify as to this topic.

Dated: July 10, 2017.                   By:  /s/ *Robert M. Hoffman*

Robert M. Hoffman
Texas Bar No. 09788200
robhoffman@andrewskurth.com
James C. Bookhout (*admitted* pro hac vice)
Texas Bar No. 24087187
jamesbookhout@andrewskurth.com
**ANDREWS KURTH KENYON LLP**
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone:   (214) 659-4400
Facsimile:    (214) 659-4401

David P. Whittlesey
Texas Bar No. 00791920
dwhittlesey@andrewskurth.com
**ANDREWS KURTH KENYON LLP**
111 Congress Avenue, Suite 1700
Austin, Texas 78701
Telephone:   (512) 320-9200
Facsimile:    (512) 320-9292

**ATTORNEYS FOR PLAINTIFFS
PNC BANK, N.A., COLUMBIA HOUSING SLP
CORPORATION, AND 2013 TRAVIS OAK
CREEK, LP**

## CERTIFICATE OF SERVICE

I certify that on July 10, 2017, a copy of the foregoing document was served on counsel for the Defendants in this case via email.

 /s/ *Robert M. Hoffman*
Robert M. Hoffman