# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **PNC BANK, N.A., COLUMBIA HOUSING SLP CORPORATION, and 2013 TRAVIS OAK CREEK, LP** | § § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | |
| **2013 TRAVIS OAK CREEK GP, LLC, 2013 TRAVIS OAK CREEK DEVELOPER, INC., CHULA INVESTMENTS, LTD., and RENE O. CAMPOS** | § § § § § § | |
| **Defendants.** | § § | |
| | § | **Civil Action No. 1:17-cv-00584-RP** |
| **2013 TRAVIS OAK CREEK GP, LLC and 2013 TRAVIS OAK CREEK, LP,** | § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | |
| **PNC BANK, N.A. and COLUMBIA HOUSING SLP CORPORATION** | § § § | |
| **Defendants.** | § | |

## RESPONSE TO PNC BANK, NATIONAL ASSOCIATION'S AND COLUMBIA HOUSING SLP CORPORATION'S MOTION FOR PRELIMINARY INJUNCTION, AND BRIEF IN SUPPORT

*Response to PNC Bank, National Association's and Columbia Housing SLP Corporation's*
*Motion for Preliminary Injunction, and Brief in Support*                    *Page 1*
2547133.1

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

2013 Travis Oak Creek GP, LLC, 2013 Travis Oak Creek Developer, Inc., Chula Investments, Ltd., and Rene O. Campos LP (collectively "Respondents") file this Response to the Motion for Preliminary Injunction ("Response") filed by PNC National Bank, National Association ("PNC") and Columbia Housing SLP Corporation ("Columbia"), and respectfully show as follows:

## **INTRODUCTION**

PNC and Columbia, for themselves and the Partnership[1] (for which they lack standing or authority to act) (collectively "Movants") seek an improper and legally unavailable mandatory injunction, and injunctive relief that alters the last actual, peaceable, non-contested status quo that preceded the controversy they initiated, wrongfully and without basis.  Movants also rely upon legally unenforceable "remedies" provisions in the Partnership Agreement,[2] to justify the self-help, forfeiture action that putatively gives rise to their request for injunctive relief, and that is legally unavailable, further due to an absence of the default events they allege, or the application of legal bars to their seeking any remedies in response to any such putative events of default.

---

[1] 2013 Travis Oak Creek, LP (the "Partnership").

[2] See § 7.7 of the Amended and Restated Agreement of Limited Partnership of 2013 Travis Oak Creek, LP (the "Partnership Agreement"), Appendix 1, pages 0001-0160 (Plaintiffs_00008456-8614 – Depo Ex. 3)

*Response to PNC Bank, National Association's and Columbia Housing SLP Corporation's*
*Motion for Preliminary Injunction, and Brief in Support*                    *Page 2*
2547133.1

Movants have neither suffered nor shown an irreparable or imminent injury, and they have not shown that they are without an adequate remedy at law to address their claims in this case.  They likewise have not shown, and cannot show, a likelihood of success on the merits of any of their claims.  Moreover, the balance of hardships weighs in favor of Respondents, who will suffer a forfeiture that is precluded by law and equity, if injunctive relief is granted in favor of Movants. And, Movants have acted with the utmost of unclean hands, and engaged in other highly inequitable conduct, and in a manner that precludes their injunctive relief request, under theories of laches, waiver and/or estoppel, or under the theory of induced or invited, alleged defaults, and first material breach.

Throughout this Response, documentary evidence is cited that is included in a supporting Appendix to aid the Court.  Certain facts may be established through testimony alone, or exhibits introduced at the Preliminary Injunction hearing.

## FACTS

1.      PNC and Columbia are related entities operated by PNC Bank through its real estate division called PNC Real Estate.  David Hasselwander has been their point of contact for Respondents during the relevant time periods.

2.      The parties' relationship, both as partners and with PNC as a proposed lender, was conflict-free until a construction related problem arose,[3] and the parties

---

[3] Appendix 15 pages 0374-0375 (PLAINTIFFS_00004274, Depo Exh. 33).

*Response to PNC Bank, National Association's and Columbia Housing SLP Corporation's*
*Motion for Preliminary Injunction, and Brief in Support*                                           *Page 3*
2547133.1

began discussing it in the context of possibly needing an extension of the date for closing[4] the loan contemplated by PNC's Forward Commitment.[5]

3.    Faced with threats from PNC Capital Markets, LLC – the "MBS Investor" – as early as May of 2016 that it would charge PNC Bank a non-delivery fee if the Forward Commitment did not close by the end of November of 2016,[6] PNC engaged in a consistent pattern and practice of refusing to provide reasonable accommodations to its borrower, 2013 Travis Oak Creek, LP (a partnership in which PNC is a limited partner), at the urging of either "Don's Group"[7] or the PNC groups (i.e., PNC Bank and PNC Capital Markets, LLC) operated by Abi Tobun. "Don's Group" actually refused to allow PNC to offer the Partnership reasonable and more favorable financing terms than those proposed in the Forward Commitment, and interfered with PNC's supposed willingness to provide the same to the Partnership.[8]  Respondents will show that PNC would not proceed with more favorable terms unless 2013 Travis Oak Creek GP, LLC (the "GP") agreed that the

---

[4] Appendix 16 pages 0376-0377 (PLAINTIFFS_00006858, Depo Exh. 32).

[5] Forward Commitment for Fixed Rate Mortgage Loan not to exceed $27,300,000.00 under the Fannie Mae DUS Product Line between PNC Bank and the Partnership dated May 21, 2014 (the "Forward Commitment"), Appendix 2, pages 0161-0320 (PLAINTIFFS_00020826-20984, Depo Exh. 30).

[6] See Email, Appendix 3 pages 0321-0322 (PLAINTIFFS_00007840, Depo Exh. 18).

[7] "Don's Group" is the group within PNC that comprises the limited partner in the Partnership.

[8] See Email, Appendix 4 pages 0323-0325 (PLAINTIFFS_00007838-7839, Depo Exh. 19).

*Response to PNC Bank, National Association's and Columbia Housing SLP Corporation's*
*Motion for Preliminary Injunction, and Brief in Support*                    *Page 4*
2547133.1

$2.7 million loan increase that would have gone to the Partnership would instead be paid to PNC as fees.  See excerpt from Mark Rogers' deposition, Appendix 17.

4.     In early September of 2016, Tobun's group within PNC began a campaign by which PNC would punish and penalize the Partnership, by charging penalties and fees.[9]  One such punitive fee penalty was a so called MBS Investor extension fee that was not authorized under the Forward Commitment or in line with market loan extension practices.[10]

5.     When the Partnership protested the MBS Investor extension fees, PNC Bank retaliated and threatened to terminate the Forward Commitment for non-payment of the second installment of the penalty PNC charged on behalf of PNC Capital Markets, LLC,[11] even though such non-payment was not a failure to comply with or perform under the Forward Commitment and Fannie Mae guidelines.  See Appendix 2, Forward Commitment at § M(1).  PNC terminated the Forward Commitment on January 31, 2017.[12]  PNC thus wrongfully refused to perform its obligation to provide the financing to the Partnership that was intended,

---

[9] Appendix 25, pages 0543-0548 (PLAINTIFFS_00007815, Depo Exh 21).

[10] Appendix 5 pages 0326-0331 (PLAINTIFFS_00000501-505, Depo Exh 31); Appendix 6 pages 0332-0334 (PLAINTIFFS_00017000-001, Depo Exh 51); Appendix 7 pages 0335-0336 (PLAINTIFFS_00002762, Depo Exh 25).

[11] Letter, Appendix 8 pages 0337-0340 (PLAINTIFFS_00008625-8627, Depo Exh. 8); Letter, Appendix 9 pages 0341-0345 (2013TOGP 000013-16 (at 000014).

[12] Letter, Appendix 18, pages 0381-0384 (PLAINTIFFS_00011021-11023).

*Response to PNC Bank, National Association's and Columbia Housing SLP Corporation's*
*Motion for Preliminary Injunction, and Brief in Support*                                    *Page 5*
2547133.1

among other things, to pay off the Chase Bank Construction Loan[13] in May of 2017.

6.    After terminating the Forward Commitment, PNC immediately continued its campaign of trying to extract from GP punitive fee penalties that were not authorized, due or owing, including a payment of in excess of $7 million, characterized as a "non-delivery fee," which it claimed was due and owing under the Delivery Assurance Certificate that accompanied the PNC Forward Commitment.[14]

7.    Respondents will show that PNC, acting in all of its conflicted capacities, thereafter used its demand for the payment of the "non-delivery fee" as a basis to withhold equity payments to the Partnership, and to withhold its final consent to close the Arbor loan[15] despite that PNC conditionally consented to such loan previously.[16]

8.    The demand for such a payment from GP—who was not an obligor— to pay a fee that was not allowed, and that was a non-recourse obligation if it was owed (see Delivery Assurance Certificate at § 11), was wrongful and actionable in

---

[13] Credit Support and Funding Agreement dated May 23, 2014 between Chase Bank and the Partnership (the "Chase Bank Construction Loan").

[14] Appendix 10 pages 0346-0358 [PLAINTIFFS_00007819-7830).

[15] Movants will show that the Arbor loan is an interim bridge loan from Arbor Commercial Mortgage to pay off the Chase Bank Construction Loan, that GP arranged, with Movant's consent.

[16] Appendix 14, pages 0371-0373 (PLAINTIFFS_00008628-8629).

*Response to PNC Bank, National Association's and Columbia Housing SLP Corporation's*
*Motion for Preliminary Injunction, and Brief in Support*                                *Page 6*
2547133.1

and of itself, but it caused the Partnership to lose the ability to pay Chase Bank at the time of the maturity of the Construction Loan, or shortly thereafter, placing the Partnership in a default position relative to Chase Bank.

9.    PNC and Columbia consented to disputing Weis Builder's claim for payment, and to defending against the Wies litigation action to enforce its claim for payment and its mechanic's lien,[17] only to turn around and attempt to capitalize on the existence of the lien and lawsuit by alleging them to be events of default under the Partnership Agreement, seeking to unilaterally forfeit GP's position and rights and interests in the Partnership, to unilaterally rescind the Partnership Agreement, and steal the entire "deal" for themselves.   In fact, neither the existence of the Weis lien nor the pendency of the Weis lawsuit was an event of default under the Partnership Agreement.

10.    GP also did not commit an event of default under the Partnership Agreement in the form of a default under a Permitted Loan, as neither the Forward Commitment, nor the Chase Bank Construction Loan, were "Permitted Loans" as the term is defined in the Partnership Agreement.   See Partnership Agreement, Appendix 1; Schedule to Partnership Agreement.

11.    GP has not sought an insolvency receivership and thus no "Event of Bankruptcy" has occurred under the Partnership Agreement.

---

[17] Appendix 11 pages 0359-0361 (PLAINTIFFS_00020467-68).

12.    Final Construction Completion (as defined in the Partnership Agreement) occurred before March 1, 2016.[18]  The project had final certificates of occupancy by the first week of February of 2016.[19]

13.    There was no default under the Forward Commitment – PNC wrongfully terminated it – and PNC itself admitted the same when David Hasselwander informed GP that PNC's non-delivery fee claim was fully defensible.[20]

14.    PNC and Columbia consented to the Arbor loan,[21] then refused to cooperate in the closing of that loan.  The loan opportunity vanished when this suit was commenced.

## LEGAL STANDARD

To obtain a preliminary injunction, a movant must show: 1) a substantial likelihood of success on the merits, 2) a substantial threat that irreparable injury will result if the injunction is not granted, 3) that the threatened injury outweighs the threatened harm to the non-movant, and 4) that granting the injunction is not adverse to the public interest.  *DFW Metro Line Services v. Sw. Bell Tel. Co.,* 901 F.2d 1267, 1269 (5th Cir. 1990).  "Generally, a movant must satisfy each of [the]

---

[18] Appendix 12 pages 0362-0366 (PLAINTIFFS_00007056-7059); Appendix 13 pages 0367-0370 (2013TOGP 08664, 08665 and 08669).

[19] Appendix 19 pages 0385-0389 (2013TOGP 008663, 2013TOGP 004970-4972).

[20] Email, Appendix 20, pages 0390-0394 (Depo Exh. 4).

[21] Appendix 14 pages 936109363 (PLAINTIFFS_00008628-8629).

*Response to PNC Bank, National Association's and Columbia Housing SLP Corporation's*
*Motion for Preliminary Injunction, and Brief in Support*                    *Page 8*
2547133.1

four traditional criteria in order to be entitled to a preliminary injunction….” *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 268 (5th Cir. 2012). “A preliminary injunction is an extraordinary remedy that ‘should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements.’” *Id.* (quoting *Planned Parenthood Ass'n of Hidalgo Cnty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012)).

Where, as here, the movant seeks a mandatory injunction that would alter the status quo, it carries an especially heavy burden with respect to the four criteria for a preliminary injunction. *Harris v. Wilters*, 596 F.2d 678, 680 (5th Cir. 1979) (“Only in rare instances is the issuance of a mandatory preliminary injunction proper”). “[W]hen a plaintiff applies for a mandatory preliminary injunction, such relief should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party.” *Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.,* 441 F.2d 560, 561 (5th Cir. 1971) (internal quotes omitted).  This is especially true at the preliminary stage of proceedings. *Miami Beach Fed. Sav. & Loan Ass'n v. Callander*, 256 F.2d 410, 415 (5th Cir. 1958) (A mandatory injunction, “especially at the preliminary stage of proceedings, should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party”).

## ARGUMENT AND AUTHORITIES

### A.  Movants cannot demonstrate an Impending Substantial Threat of Irreparable Harm

"To obtain a preliminary injunction, a movant must show… a substantial threat that irreparable injury will result if the injunction is not granted…." *DFW Metro Line Services v. Sw. Bell Tel. Co.*, 901 F.2d 1267, 1269 (5th Cir. 1990). Movants are unable to make such showing.  Movants have articulated only two harms they claim constitute irreparable injury to them:  (1) imminent foreclosure of the Property;[22] and (2) the Columbia's inability to control the Partnership. [Hasselwander Depo. 9:11-15, 11:12-24 and 14:7-17].  Such alleged harms do not meet the required standard of a substantial threat that irreparable injury will result absent an injunction.

"The party seeking a preliminary injunction must also show that the threatened harm is more than mere speculation." *Janvey v. Alguire*, 647 F.3d 585, 601 (5th Cir. 2011).  In order to obtain an injunction, "a showing of '[s]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant.'"  647 F.3d at 600 (quoting *Productos Carnic, S.A. v. Cent. Amer. Beef & Seafood Trading Co.,* 621 F.2d 683, 686–87 (5th Cir. 1980)).

---

[22] At the center of this controversy is a piece of property the Partnership acquired, then constructed, and now manages an apartment complex under HUD (the "Property" or the "Project").

*Response to PNC Bank, National Association's and Columbia Housing SLP Corporation's*
*Motion for Preliminary Injunction, and Brief in Support*                                    *Page 10*
2547133.1

Movants' claim of an "imminent foreclosure" of the Property is mere speculation and under the current facts cannot establish irreparable harm.  Here, Movants admit as of July 19, 2017 there has been no posting of foreclosure by anyone.[23]  As such, a foreclosure cannot occur until at the earliest, in September, assuming Chase Bank posts, and posts correctly.  Significantly, no one knows whether or not a foreclosure will occur at all.  Chase Bank – of concern to Movants – may forbear indefinitely.  This is the definition of speculation and is not sufficient to establish an irreparable injury, let alone an imminent one.

Movants also claim irreparable injury due to Columbia's inability to become the general partner in the Partnership.  First and foremost, it is ridiculous that Movants claim this is a loss since they never had control of the Partnership to begin with.  How is their inability to control something they never controlled, a loss?

Movants attempt to bootstrap their "inability to control" argument to their need to control the Partnership in order to prevent a possible foreclosure, and we are back to speculation.  Because Movants' claims of injury are mere speculation and speculative injury cannot establish irreparable harm, they are not entitled to their requested injunctive relief.  *Janvey v. Alguire*, 647 F.3d 585, 601 (5th Cir. 2011).

---

[23] Hasselwander Deposition 16:19-17:4, Appendix 21, pages 0395-0401

*Response to PNC Bank, National Association's and Columbia Housing SLP Corporation's*
*Motion for Preliminary Injunction, and Brief in Support*                              *Page 11*
2547133.1

Moreover, it is well established that "[t]here can be no irreparable injury where money damages would adequately compensate a plaintiff." *Id., see also Spiegel v. City of Houston*, 636 F.2d 997, 1001 (5th Cir. 1981) (to show likelihood of irreparable harm, "plaintiffs need to establish that at the time of the injunction it was under a substantial threat of harm which cannot be undone through monetary remedies") (internal quotes omitted).  Here, any injury to Movants' interest in the Partnership is quantifiable, and they prove this point themselves by offering to sell their interest to Respondents based on a particular money formula.[24]  Moreover Hasselwander admits that none of the harms on which Movants base their irreparable injury claim flow from any of the causes of action Movants actually assert, and in fact each cause of action requests money damages, as he also admits.

Movants largely rely on *Oracle Real Estate Holdings I v. Adrian Holdings Co. I, LLC,* 528 F.Supp.2d 616 (S.D.N.Y. 2008).  This is an out-of-circuit district court case and is not controlling here.  To the extent the Court relies on *Oracle,* the Court should note it is in agreement with *DFW Metro* that an injunction may not issue "[i]f an injury can be appropriately compensated by an award of monetary damages" because "no irreparable injury may be found to justify specific relief." *Id.*

---

[24] Appendix 11, pages 0359-0361 (PLAINTIFFS_00008030-8036).

*Oracle* also cautions against equating loss of alleged contractual rights with irreparable harm:  "Finding irreparable harm in the loss of contractual rights too readily would effectively replace damages with specific performance as the default remedy for breach of contract, an inefficient result that would risk making even prohibitively expensive performance compulsory.  Thus, as the Second Circuit has cautioned, not all bargained-for contractual provisions provide a basis for injunctive relief, since a rule to this effect would eviscerate the essential distinction between compensable and non-compensable harm."  *Id.* (internal quotes and citations omitted).

Notably, The *Oracle* court cites three characteristics of the claimed harm as the basis for concluding that it was irreparable: Oracle sought to enforce (1) a bargained-for right to corporate control, (2) that is difficult if not impossible to value, which (3) could be meaningless or substantially diminished in value by the end of the litigation absent injunctive relief.  *Id.* at 626.  None of the three characteristics exist in the present case.  Here, Movants have inappropriately usurped control of an entity it never had control of, so the first characteristic does not exist.[25]  Movants' interest in the Partnership is easy to value as demonstrated

---

[25] The instant controversy between the parties began as Movants' June 7, 2017 attempt to usurp control of the Partnership and forfeit the interests and rights of 2013 Travis Oak Creek GP, LLC ("GP").  The status of the partners' relationship on June 6th is the last actual, peaceable status quo before the controversy.  *See e.g., La Rouche v. Kezer*, 20 F.3d 68, 74 n.7 (2nd Cir. 1994).

*Response to PNC Bank, National Association's and Columbia Housing SLP Corporation's*
*Motion for Preliminary Injunction, and Brief in Support*                                          *Page 13*
2547133.1

by the amount they charge to force, by suit, repurchase of their interests.  Movants are not entitled to an injunction that alters that last actual peaceable status quo before the controversy, especially given the availability of monetary relief, as noted above.

Moreover, the facts in *Oracle* which made that plaintiff's interest difficult to value are not present in this case.  In particular, the *Oracle* court concluded that the value of control of the entity at issue, which held real property for development, was "entirely a function of the skill and resources of the party who exercises control" because the real property held by the entity was "little more than many acres of heavily indebted, undeveloped land…."  *Id.*  Here, the Property is fully-developed and fully-occupied.  Moreover, GP is a sophisticated and extremely experienced developer and property manager with extended resources to operate the Property (see, e.g., its ability to negotiate for the partnership a $32 million loan commitment from Arbor to take out the Chase construction loan).  Movants neither allege nor can prove otherwise.

As to the third characteristic, unlike *Oracle*, there is *no* likelihood that Movants' interest in the Partnership could be meaningless or substantially diminished in value by the end of the litigation absent an injunction.  In *Oracle*, lenders had filed foreclosure actions against three of the five properties at issue.  Here, a foreclosure is mere speculation, nothing more, and cannot be the basis of

*Response to PNC Bank, National Association's and Columbia Housing SLP Corporation's*
*Motion for Preliminary Injunction, and Brief in Support*                                              *Page 14*
2547133.1

irreparable injury.  See *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011); see also *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (to constitute irreparable harm, the claimed harm "must be imminent or certain, not merely speculative").

Movants cannot establish imminent irreparable injury and their injunction request should be denied on this ground alone.

## B.   Movants cannot demonstrate a Substantial Likelihood of Success on the Merits

To obtain the preliminary injunctive relief requested, Movants must also establish a substantial likelihood of success on the merits of their underlying claim(s).  *See Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006).  The underlying claim(s) brought against Respondents by Movants in their First Amended Complaint are breach of contract and fiduciary duty claims, based on alleged events of default under the Partnership Agreement, a request for declaratory relief, a suit for repurchase of Movants' interests in the Partnership, and to enforce guaranty obligations.  *See* Doc. 9.

### i.    § 7.7 of the Partnership Agreement is unenforceable as a matter of law.

To support their right to remove GP as the Partnership's general partner, Movants rely on legally unenforceable "remedy" provisions in the Partnership Agreement, the "removal" language of § 7.7 and "Event of Withdrawal" language of § 9.1, which read in relevant part, as follows:

*Response to PNC Bank, National Association's and Columbia Housing SLP Corporation's*
*Motion for Preliminary Injunction, and Brief in Support*                                    *Page 15*
2547133.1

7.7. Special Rights of the Limited Partners. Upon the occurrence of an Event of Default (as defined below) that has not been timely cured as permitted herein, the SLP shall have the right, but not the obligation, to…  (ii) remove each General Partner as provided in Section 7.7(c).

> (a) An **"Event of Default"** shall be the occurrence at any time of any one or more of the following events unless expressly waived in writing by the SLP in its sole discretion;
>
> 9.1 (a)  Each of the following acts constitute an "event of withdrawal"
> (5) The SLP's removal of the General Partner as General Partnership and;
> 9.1 (b)  Upon the occurrence of an event of withdrawal, such General Partner shall automatically cease to be a Partner of the Partnership and… relinquish to the SLP… the Relinquished Interests.

This combined putative remedy is actually a right given the Movants to rescind the contract with Respondents at their option and in their sole discretion. Under Texas law, to obtain rescission a party must show it has no adequate remedy at law for damages, it is not in breach and the alleged breach is material. *Ferguson v. DRG/Colony North, Ltd.*, 764 S.W.2d 874, 886 (Tex. App. – Austin 1989, writ denied) (no adequate remedy at law), *Williams v. Davey*, 114 S.W. 195 (Tex. App. – Galveston 1908, writ ref'd) (requesting party not in breach), *Boyter v. MCR Construction Co.*, 673 S.W.2d 938, 941 (Tex. App. – Dallas 1984, writ ref'd n.r.e) (rescission may be granted upon a showing of fraud or a material breach of an executory contract).

*Response to PNC Bank, National Association's and Columbia Housing SLP Corporation's Motion for Preliminary Injunction, and Brief in Support*
2547133.1

*Page 16*

Because the right to rescission is an equitable right, it may also be waived under certain circumstances. *Regional Properties Inc. v Financial And Real Estate Consulting Co.*, 752 F.2d 178 (5th Cir. 1985), citing *CattleFeeders, Inc. v. Jordan*, 549 S.W.2d 29, 33 (Tex. Civ. App. – Corpus Christi 1977, no writ). Under the doctrine of unclean hands, a court may refuse to grant equitable relief to a plaintiff who has been guilty of unlawful or inequitable conduct regarding the issue in dispute. *See Right to Life Advocates, Inc. v. Aaron Women's Clinic,* 737 S.W.2d 564, 571 (Tex. App.—Houston [14th Dist.] 1987, writ denied).

Movants are unable to unilaterally effectuate a self-help of rescission of the Partnership Agreement – as they seek to do – because they cannot demonstrate that Respondents failed to substantially perform a material obligation or duty. Likewise, Movants have not alleged, nor can they show, that any fraud was committed by Respondents. Movants also have adequate remedies at law and also by contract as discussed above in this Response, and their unclean hands and other inequitable conduct regarding the issues in dispute are well-established throughout this Response.

Notwithstanding the foregoing obstacles to Movants' attempts to rescind the Partnership Agreement by putatively and unilaterally removing GP. Section 7.7 of the Partnership Agreement, to the extent it allows Movants to remove GP at Movants' discretion, renders all of the promises by Movants to perform under the

*Response to PNC Bank, National Association's and Columbia Housing SLP Corporation's*
*Motion for Preliminary Injunction, and Brief in Support*                                    *Page 17*
2547133.1

Partnership Agreement, illusory.  When a party's performance under a contract is at its option, such promise to perform is illusory.  *O'Farrill Avila v. Gonzalez*, 974 S.W.2d 237, 244 (Tex. App. – San Antonio 1998, pet. denied).  Removal of GP is repudiation of a promise to act as limited partners in accordance with the Partnership Agreement's terms and conditions.  When the promise of performance is illusory, it cannot form the basis of an enforceable agreement.  *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644, 660–61 (Tex. 2006) (citing RESTATEMENT (SECOND) OF CONTRACTS § 77, cmt. a (1981).  Section 7.7 is unenforceable because it renders Movants' performance promises in the Partnership Agreement optional and illusory.

Movants' reliance upon § 7.7 and 9.1 is, accordingly, reliance upon unenforceable, illusory contract provisions.  *Id*.

### ii.   The events of default alleged by Movants are not events of default and/or, Movants are legally barred from seeking remedies in response to the same (if they occurred) under the theories of estoppel, waiver, consent, or first material breach.

In support of their Motion for Preliminary Injunction, Movants allege only the following "Events of Default":

1. Promoting a voluntary receivership proceeding in the instant lawsuit (originally Case No. 1:17-cv-560-RP) (Partnership Agreement at 5–6, § 7.7(a)(3));
2. Failing to achieve Final Construction Completion by March 1, 2016 (Partnership Agreement § 7.7(a)(2));

*Response to PNC Bank, National Association's and Columbia Housing SLP Corporation's*
*Motion for Preliminary Injunction, and Brief in Support*                                                                 *Page 18*
2547133.1

3. Allowing a mechanic's lien to continue to exist against the Partnership's property (Partnership Agreement §§ 6.5(w), 7.7(a)(6));

4. Allowing the existence of a pending suit against the Partnership with the general contractor for the Project that will likely materially or adversely effect on the operation of the Partnership that has not been bonded against (Partnership Agreement §§ 6.5(x), 7.7(a)(6));

5. Existence of a default under the Forward Commitment (Partnership Agreement § 7.7(a)(7)); and,

6. Existence of a default under the construction loan with JPMorgan Chase Bank, N.A. (Partnership Agreement § 7.7(a)(7)).

*See* Appendix 23, Plaintiffs' Objections and Responses to Defendants' Interrogatories (No. 9).   Based on their naked allegations that such events of default exist, Movants summarily assert that they have shown a substantial likelihood of success on the merits, which they have not done.  Examination of the alleged events of default cited above is required.

## 1.   <u>Voluntary Receivership Petition</u>

Movants erroneously allege that GPs request for the appointment of a receiver is a prohibited "Event of Bankruptcy," and thus an event of default pursuant to §7.7(a)(3).  This argument fails because it depends upon an incorrect reading of the definition of "Event of Bankruptcy" in the Partnership Agreement. See Appendix 1, pp. 5 and 6.  To constitute an Event of Bankruptcy, the receivership requested would have to be in connection with an insolvency proceeding, or it would have to be one.  "Event of Bankruptcy" is defined in relevant part as (ii) "the voluntary or involuntary commencement of … a

*Response to PNC Bank, National Association's and Columbia Housing SLP Corporation's*
*Motion for Preliminary Injunction, and Brief in Support*                                                                 *Page 19*
2547133.1

receivership or other insolvency proceeding …," as its title (referring to bankruptcy) necessarily implies and confirms.

## 2.    Final Construction Completion

As noted above and confirmed in Appendix 25, a Certificate of Substantial Completion was issued by the Project Architect on March 1, 2016, and actual tenant occupancy had commenced before then.  Final lien waiver certificates were obtained (see Appendix 13).  Weis did not file a lien until January of 2017, and Movants consented to fighting it.   The project has not been proven to have construction defects – indeed Weis Builders contends that the stucco issues are mere punch list items – although it has issues requiring remediation.[26]  Notably, Movants employed their own construction consultant, they were well aware of any alleged construction issues before any disputes with Wies were initiated, and they never complained about the construction issues – or alleged any default involving delayed "Final Construction Completion," until this suit was commenced.[27] Waiver and laches should come to mind.

---

[26] Notably, while complaining about the existence of these issues in this suit to declare defaults, Movants ignore their agreement to allow, in fact require, GP to "diligently pursue remediation of any construction related issues prior to expiration of the warranty period under the Construction Contract."  See Appendix 1, Partnership Agreement, pg. 42 § 6.7(i).  This is precisely what GP has been doing.

[27] Conspicuously, in the one and only default notice that pre-dated the June 7th notice of repurchase and notice of removal, Movants' counsel made no mention whatsoever of any event of default involving the Final Construction Completion issue they now rely upon.  See Appendix 10, pages 0346-0358.

*Response to PNC Bank, National Association's and Columbia Housing SLP Corporation's*
*Motion for Preliminary Injunction, and Brief in Support*                                                    *Page 20*
2547133.1

### 3.   <u>Mechanic's Lien</u>

Movants misread Section 6.5(w) of the Partnership Agreement.  It actually states the following, in relevant part (emphasis added):

> (w)   **No** charges, **liens**, claims, covenants, conditions, restrictions, easements, rights of way, options, judgments, special assessments or encumbrances **exist against the Project other than those which are created or permitted by the Project Documents** or are noted or excepted in the Title.

The Partnership Agreement defines "Project Documents" to include the Construction Contract (see Appendix 1 at p.12), and Construction Contract is defined to be the Weis Builders Construction Contract with the Partnership.  See Appendix 1, Schedule to Partnership Agreement.  The Construction Contract is a Project Document.

To the extent that Weis Builders had a lien on the Project—the validity and proper perfection of which the Partnership has and continues to dispute—that lien arises solely from, and was "created or permitted" by the Construction Contract. Weis filed its Mechanic's Lien Affidavit and Claim on or about January 10, 2017, asserting lien rights under the Texas Property Code and the Texas Constitution. Under the Texas Constitution contractors, meaning those having a construction contract with the owner, are entitled to a lien on buildings that they build:

> Mechanics, artisans and materialmen, of every class, **shall have a lien upon the buildings and articles made or repaired by them** for the value of their labor done thereon, or materials furnished therefore; and

*Response to PNC Bank, National Association's and Columbia Housing SLP Corporation's*
*Motion for Preliminary Injunction, and Brief in Support*                                    *Page 21*
2547133.1

the Legislature shall provide by law for the speedy and efficient enforcement of said liens.

*See* Texas Constitution, Article XVI, §37 (**emphasis** added).  Texas Courts have long held that this Constitutional Lien is held only by parties that have a direct contract with the owner.  *See*, *Horan v. Frank*, 51 Tex. 401 (1879).  Likewise, under the Texas Property Code, an entity has a lien if:

> (1) **the person** labors, specially fabricates material, or **furnishes labor or materials for the construction** or repair in this state **of**:
>
> > (A)   **a house building or improvement**;

and

> (2) **the person** labors, specially fabricates the material or **furnishes the labor or materials under or by virtue of a contract with the owner** or the owner's agent, trustee, receiver, contractor or subcontractor.

*See* Tex. Prop. Code §53.021 (**emphasis** added).   In other words, Weis's lien on the Project is legally "created or permitted", by Weis furnishing labor and materials "under or by virtue of" the Construction Contract.

Because GP is not required by the Partnership Agreement to keep the Project free from liens that are "**created or permitted by the Project Documents**" and because the lien filed by Weis is created or permitted" by the Construction Contract, which is a Project Document, the existence of Weis' lien is not an Event of Default under the Partnership Agreement, § 6.5(w), and Movants' contention to the contrary is misplaced.

*Response to PNC Bank, National Association's and Columbia Housing SLP Corporation's*
*Motion for Preliminary Injunction, and Brief in Support*                                                                 *Page 22*
2547133.1

Even if the existence of the Weis lien could be considered an event of default, the Partnership Agreement did not permit GP to deliver a settlement payment of the lien claim to Weis because Section 6.2(h) of the Partnership Agreement provides in relevant part, as follows:

> 6.2. Restrictions on Authority of General Partner. The General Partner shall be bound by all Project Documents. In addition, without the prior Consent of the SLP, no General Partner shall:
>
> (h)   Cause the Partnership to commence, **settle**, compromise, mediate or otherwise relinquish any claim (actual or prospective), or to release, waive or diminish any material Partnership rights in any litigation or arbitration matter involving a claim of in excess of $10,000, or to do so as to any claim regardless of amount against the General Partner, Guarantor, Developer, Builder or Property Manager or any Affiliate thereof.

Movants not only did not provide consent to Respondents to relinquish, settle or compromise Weis' lien claim, Movants consented to fighting it, and countersuing. *See* discussion below regarding estoppel, waiver and consent.

## 4.   Litigation by Weis

Movants also have not proven that Weis' lawsuit to seek payment and enforce its lien, is an Event of Default under § 6.5(x)(i) of the Partnership Agreement.   Indeed Movants utterly fail to show and cannot show that "the continuing effect" of the pending lawsuit (one they consented to litigating, in any event) could materially or adversely affect the operations of the Partnership or the Project.   And focusing on the potential outcome of the suit is irrelevant, because

*Response to PNC Bank, National Association's and Columbia Housing SLP Corporation's*
*Motion for Preliminary Injunction, and Brief in Support*                                              *Page 23*
2547133.1

the ultimate outcome is immaterial to the condition set forth in § 6.5(x)(i) – which focuses only on the effect the pendency of the suit has on operations.

Finally, Movants ignore the concept that the Weis lien would have to be a valid one, otherwise its existence would be immaterial, as would any putative event of default arising from its mere existence.  And as with the lien issue above, given Movants' consent to litigate with Weis, the issues of estoppel, waiver and consent discussed below apply.

### 5.   Default under the Forward Commitment

By causing the Partnership to default under the Forward Commitment provided by Section 7.7(a)(7) of the Partnership Agreement expressly states that an Event of Default includes "[a]ny default under a Permitted Loan is declared which is not cured within any applicable notice period."  Movants' allegations that a default under the Forward Commitment is an event of default under §7.7(a)(7) fails for the following reasons:

   a.   There was no default under the Forward Commitment by anyone other than PNC itself, for terminating it without contractual cause;

   b.   The definition of Permitted Loans in the Partnership Agreement does not include the Forward Commitment.  Indeed, Permitted Loans means the loans(s) so identified in the Schedule, which identifies only the actual First Mortgage Loan contemplated by the Forward Commitment; and

   c.   A commitment to make a loan is not a loan – it is merely a commitment to make one.

*Response to PNC Bank, National Association's and Columbia Housing SLP Corporation's*
*Motion for Preliminary Injunction, and Brief in Support*                                                                *Page 24*
2547133.1

It is a fundamental principle of contract law that when a party commits a material breach of contract, the other party is discharged or excused from further performance.  *Mustang Pipeline Co. v. Driver Pipeline Co.,* 134 S.W.3d 195, 196 (Tex. 2004).  The existence of the Partnership is a condition under the Forward Commitment as is payment of the Chase Loan, with proceeds of the loan contemplated by the Forward Commitment.  See Appendix 2, Forward Commitment, p.2 (4), p. 2 (7).  When PNC breached the Forward Commitment, it excused GP's obligations to obtain financing to, among other things, resolve the Chase Construction Loan, and excused any putative obligations on the part of the Partnership to pay fees demanded by PNC, including a non-delivery fee, under the Forward Commitment itself.

## 6.    Default under the Construction Loan

As in the case of the Forward Commitment, the Chase Construction loan is not a Permitted Loan under the definition of Permitted Loans, in the Partnership Agreement, most notably because the parties chose to define it as the "Construction Loan."  Accordingly, a default under the construction loan is not an Event of Default under § 7.7(a)(7) of the Partnership Agreement, that covers only Permitted Loans.

Moreover, Respondents will show that AGP had arranged a loan, with Movants' consent, that would have paid off the Construction Loan on a timely

*Response to PNC Bank, National Association's and Columbia Housing SLP Corporation's*
*Motion for Preliminary Injunction, and Brief in Support*                                    *Page 25*
2547133.1

basis or within a cure period.  Pursuant to the discussion below about estoppel, waiver and consent, Respondents cannot benefit from a putative event of default they consented to resolving in a particular manner, just as they cannot benefit from a lack of cooperation – indeed their interference – in closing that new loan.

## C.   Chase Bank Default and Estoppel, Waiver, Consent, Invited or Induced Breach and First Material Breach.

Movants are estopped from claiming any of the Events of Default under the Partnership Agreement to the extent any that they allege are actual Events of Default under the doctrine of quasi-estoppel.  Quasi-estoppel is an equitable doctrine that prevents a party from asserting a right that is inconsistent with a prior position and the assertion of the inconsistent right disadvantages the other party. *Lopez v. Munoz, Hockeman & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). Consent to actions Movants later complain about as Events of Default bars the complaints. *Id.*

Waiver can be asserted against a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right. *Sun Exploration & Prod. Co. v. Benton,* 728 S.W.2d 35, 37 (Tex. 1987).  A waivable right may spring from law or from a contract. *Ford v. Culbertson,* 158 Tex. 124, 308 S.W.2d 855, 865 (1958).  Waiver may be proven by silence or inaction to show an intention to yield a known right.  *Alford, Meroney & Co. v. Rowe,* 619 S.W.2d 210, 213 (Tex. Civ. App.—Amarillo 1981, writ ref'd n.r.e.).

*Response to PNC Bank, National Association's and Columbia Housing SLP Corporation's*
*Motion for Preliminary Injunction, and Brief in Support*                                                    *Page 26*
2547133.1

Consenting to or agreeing to actions Movants later complain about as Events of Default, is a waiver of the complaints.  *Id.*

When cooperation is necessary for performance of a contractual duty, there is an implied duty to cooperate.  *Bank One v. Stewart*, 967 S.W.2d 419, 441 (Tex. App. – Houston [1[st] Dist.] 1996, no writ).  The implied duty to cooperate requires a party to not interfere with another party's performance under the contract.  Id. at 435.  When Movants consented to the Arbor Loan, they were duty bound to allow GP to perform its contracted right to close the financing.  Movants cannot be permitted to complain about the consequences of their refusal to cooperate, to completion.  *Id.*

## <u>CONCLUSION</u>

For all the foregoing reasons, the motion for prelim injunction should be denied.  However, in the event the court decides to grant Movants' injunction, the Court should do so only with the requirement of a substantial bond, given the extreme injury and damage such injunctive relief would cause to Respondents.

Respectfully submitted,

*/s/ Kenneth B. Chaiken*
Kenneth B. Chaiken
State Bar No.  04057800
kchaiken@chaikenlaw.com

**CHAIKEN & CHAIKEN, P.C.**
Legacy Town Center III
5801 Tennyson Parkway
Plano, Texas 75024
(214) 265-0250 telephone
(214) 265-1537 facsimile

William S. Rhea
State Bar No. 16807100
brhea@dbcllp.com
Millicent Lundburg
State Bar No. 24042737
mlundburg@dbcllp.com

**DuBOIS, BRYANT & CAMPBELL, LLP**
303 Colorado Street, Suite 2300
Austin, TX  78701
(512) 457-8000
(512) 457-8008 (Facsimile)

**ATTORNEYS FOR RESPONDENTS**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on all counsel of record via the Court's electronic filing system on this 20th day of July, 2017.

*/s/ Kenneth B. Chaiken*
Kenneth B. Chaiken