# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| PNC BANK, N.A. COLUMBIA | § | |
| HOUSING SLP CORPORATION, and | § | |
| 2013 TRAVIS OAK CREEK, LP | § | |
| | § | |
| Plaintiffs, | § | Action No. 1:17-cv-584-RP-ML |
| | § | |
| v. | § | |
| | § | consolidated with |
| | § | Case No. 1:17-cv-560-RP |
| 2013 TRAVIS OAK CREEK GP, LLC, | § | |
| 2013 TRAVIS OAK CREEK | § | |
| DEVELOPER, INC., | § | |
| CHULA INVESTMENTS, LTD., | § | |
| and RENE O. CAMPOS | § | |
| | § | |
| Defendants. | § | |

## REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION


Dated: July 25, 2017.

Robert M. Hoffman
Texas Bar No. 09788200
robhoffman@andrewskurth.com
James C. Bookhout (*admitted* pro hac vice)
Texas Bar No. 24087187
jamesbookhout@andrewskurth.com
**ANDREWS KURTH KENYON LLP**
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone:   (214) 659-4400
Facsimile:   (214) 659-4401


David P. Whittlesey
Texas Bar No. 00791920
dwhittlesey@andrewskurth.com
**ANDREWS KURTH KENYON LLP**
111 Congress Avenue, Suite 1700
Austin, Texas 78701
Telephone:   (512) 320-9200
Facsimile:   (512) 320-9292

**ATTORNEYS FOR PLAINTIFFS**

Plaintiffs PNC Bank, N.A. ("**PNC**"), Columbia Housing SLP Corporation ("**Columbia**"), and 2013 Travis Oak Creek, LP (the "**Partnership**") (collectively, "**Plaintiffs**") file this Reply Brief in support of their pending Motion for Preliminary Injunction against Defendants 2013 Travis Oak Creek GP, LLC (the "**Original GP**"), 2013 Travis Oak Creek Developer, Inc., Chula Investments, Ltd., and Rene O. Campos (collectively "**Defendants**").

**A. Plaintiffs Have Demonstrated a Substantial Threat of Irreparable Harm.**

  *1.  Chase Bank Is Pursuing All of its Rights and Remedies, Including Foreclosure.*

Plaintiffs have shown a substantial threat of irreparable harm. As the evidence at the preliminary injunction hearing demonstrated, JPMorgan Chase Bank, N.A. ("**Chase**"), the construction lender, declared a post-maturity default on a $26,000,000 loan (the "**Construction Loan**") to the Partnership and has begun to exercise all of its remedies. Most notably, on June 28, 2017, it exercised a set off against $834,000 in cash collateral for the Construction Loan.

Further, Chase has begun its legally required due diligence for posting the Project for foreclosure by ordering an appraisal by a third party and requesting access to various Partnership books and records. The Office of the Comptroller of the Currency ("**OCC**"), which regulates national banks such as Chase, has established regulations and guidelines that require certain due diligence in advance of foreclosure on real property serving as collateral for a loan. In particular, this includes an appraisal of the property subject to the foreclosure. *See* 12 C.F.R. § 34.85; **Exhibit A**, OCC Comptroller's Handbook, Other Real Estate Owned at 10 (Sept. 2013).

Chase has already begun to comply with these regulations and guidelines. According to Defendants' counsel, "Chase has advised that it is ordered an appraisal for the Lucero Apts … [and] has asked for the most current rent roll, Partnership financial statements, the HUD/HAP contracts, and the Partnership's 2016 audited financial statements." *See* **Exhibit B**, Email from

K. Chaiken. Mr. Chaiken added that the Original GP would be immediately providing the information that Chase seeks. *Id.* The only plausible reason that Chase seeks to obtain such OCC-mandated prerequisites is that it intends to proceed with a foreclosure of the Project. Further, Chase sent its counsel to monitor the preliminary injunction hearing on July 21, 2017. In short, Chase is taking precisely the actions it must to remove this default from its books. Defendants' perilous position that Chase may "forbear indefinitely" is belied both by the facts and by common sense.

2. *The Right to Remove the Original GP Is Significant and Non-Monetary.*

Moreover, Defendants' actions are depriving PNC and Columbia Housing of the benefit of a bargained-for contractual right. Texas law recognizes that a general partner in a limited partnership may be validly removed pursuant to the terms of the partnership agreement. TEX. BUS. ORG. CODE § 153.155(a); *Bradford Partners II, L.P. v. Fahning*, 231 S.W.3d 513, 518–19 (Tex. App.—Dallas 2007, no pet.).

Here, the Partnership Agreement permits Columbia Housing to remove the Original GP after an Event of Default. This right has "intrinsic value that cannot easily be quantified." *See Oracle Real Estate Holdings I, LLC v. Adrian Holdings Co. I, LLC*, 582 F. Supp. 2d 616, 626 (S.D.N.Y. 2008). In particular, Columbia Housing cannot ever regain the right to take preventative actions that it will have lost as this matter proceeds towards trial. Indeed, Chase's foreclosure will result in a total loss—one that Plaintiffs would have prevented if allowed to act in accordance with the Partnership Agreement. No money judgment can ever turn back the clock and allow Plaintiffs to resolve the various crises facing the Partnership. This is precisely the type of situation for which injunctive relief is intended. *See, e.g.*, *Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223, 228 (S.D. Tex. 2011) ("Irreparable injury may be shown where a

business 'would suffer a substantial loss of business and perhaps even bankruptcy' absent injunctive relief.").

Further, Defendants are wrong in asserting that the contractual remedy of removal constitutes "rescission" of the Partnership Agreement. Under the contract, the Original GP's removal does not return to their pre-contractual status, as rescission would necessarily imply. *See, e.g.*, *United States v. Texarkana Trawlers*, 846 F.2d 297, 304 (5th Cir. 1988). Instead, the Partnership will retain ownership of the Lucero Apartments complex, and the Original GP will retain a promissory note from the Partnership in excess of $7,330,000 for that property. *See* Partnership Agreement § 7.7(c)(4). This is hardly the same situation as of the day the Partnership Agreement was signed.

Nor is the Partnership Agreement illusory. The removal provisions of Section 7.7(c) of the Partnership Agreement reflect the following bargained-for exchange: the Original GP agrees to refrain from allowing an Event of Default to occur in exchange for the Columbia Housing's agreement not to remove the Original GP. Conversely, if the Original GP fails to perform its promise, Columbia Housing's removal rights vest. The removal right is triggered only by the occurrence of an Event of Default—not Columbia Housing's whim.  Accordingly, the provision is supported by equivalent counter obligations and is enforceable. *See Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 790–91 (Tex. 2008).

Further, Texas law does not recognize the doctrine of illusory provisions in a contract, only illusory contracts. "Individual paragraphs of a contract are not separate and divisible contracts. Rather an individual paragraph is merely a part of an entire, integrated contract between contracting parties. Mutuality of obligation in each individual clause of a contract is unnecessary where there is consideration given for the contract as a whole." *Howell v. Murray*

*Mortg. Co.*, 890 S.W.2d 78, 86–88 (Tex. App.—Amarillo 1994, writ denied). Accordingly, because the Partnership Agreement as a whole is supported by sufficient consideration, Columbia Housing's agreed upon right to remove the Original GP is enforceable. *See id* at 87.

### B.  Plaintiffs Have Demonstrated a Substantial Likelihood of Success on the Merits

The evidence at the preliminary injunction hearing demonstrated that Plaintiffs are likely to succeed on the merits of their claim for breach of contract and their request for declaratory relief. Indeed, there was ample evidence presented that:

- Final Construction Completion was never achieved. *See* Partnership Agreement, p. 7 & §§ 6.7(g), 7.7(a)(2). The Original GP allowed the construction of the Lucero Apartments with substantial defects in the stucco façade, which allows water infiltration into the apartments and presents a potentially serious safety issue. According to the Original GP's own building envelope experts, remediating the stucco problem will cost as much as **$5.5 million**. Additionally, there has never been a binding, executed Certificate of Substantial Completion to demonstrate to a permanent lender that construction is complete.

- The Chase Construction Loan matured on May 23, 2017, and is in default. *See* Partnership Agreement, p. 12 & § 7.7(a)(7).

- Weis Builders, the general contractor that the Original GP selected, has filed a $3.285 million mechanic's lien against the Project. *See* Partnership Agreement §§ 6.5(w), 7.7(a)(6).

- Weis Builders has also instituted a judicial foreclosure on the mechanic's lien and seeks a judgment against the Partnership in an amount well in excess of $3.285 million. *See* Partnership Agreement §§ 6.5(x), 7.7(a)(6).

- The Original GP failed to close on a permanent mortgage loan under the Forward Commitment, which would have paid off the Chase Construction Loan, despite an affirmative contractual obligation to do so. *See* Partnership Agreement, p. 12 & § 7.7(a)(7).

- The Original GP seeks appointment of a receiver over the Partnership, largely because the Partnership is insolvent and unable to pay its bills as they become due, including the Chase Construction Loan. *See* Partnership Agreement, p. 5–6, §§ 6.5(k), 7.7(a)(3), 7.7(a)(6).

The Original GP's defenses are unavailing. As to the mechanic's lien, the plain language of the Partnership Agreement does not limit Section 6.5(w) to liens that the Original GP unilaterally decides are valid and enforceable. Indeed, Texas courts have upheld the removal of a general partner in a limited partnership based on a substantially similar contractual provision relating to liens. *Fahning*, 231 S.W.3d at 518–20.

Further, contrary to Defendants' arguments, the Construction Contract with Weis Builders *does not* create a right to a mechanic's lien. Instead, it merely provides that a party asserting a mechanic's lien must comply with any deadlines or lien notice required by applicable law. *See* **Exhibit C**, Construction Contract, p. 91, § 15.2.8. It is the Texas Constitution and relevant statutes that create or permit a mechanic's lien, not the Construction Contract. *See* TEX. CONST, Art. XVI, § 37; TEX. PROP. CODE § 53.021. The Construction Contract certainly does not create or permit a mechanic's lien; rather, it requires the issuance of *lien waivers*. *See id.* p. 77, § 9.10.2.3(v). Tellingly, Defendants' interpretation of Section 6.5(w) would gut the covenant of no liens, leaving PNC's investment without meaningful protection.

Further, the only consent that PNC and Columbia Housing have ever given pertaining to the Weis Builders litigation was for the Original GP to file an answer in order to prevent a default judgment against the Partnership. They certainly never "consented" to the filing of the Weis mechanic's lien or any legal claims against the Partnership. Notably, the Original GP filed the answer *before* informing PNC and Columbia Housing about the lawsuit, another default under the Partnership Agreement. *See* Partnership Agreement §§ 6.2(h), 6.5(m).

Additionally, the mechanic's lien and related litigation are obviously material. They seek a judgment in excess of $3.285 million as well as foreclosure on the Project. The loss of the Lucero Apartments complex would deprive the Partnership of its only reason for existing. This would not just materially affect the Partnership's operations—it would end them entirely.

Finally, the doctrines of waiver, estoppel, "induced breach," and others on the long list that Defendants assert have no application to the facts of this case. The Forward Commitment was terminated because the Original GP failed to cause the Partnership to satisfy the conditions to mortgage loan closing, such as producing a bona fide completed and executed Certificate of Substantial Completion. The issue of extension fees is simply a red herring: even if the Partnership had been granted a costless, second six month extension—contrary to market norms—it could not have closed on a permanent mortgage loan by May 23, 2017 without the required Certificate. *See* Forward Commitment, p. 10, § E.28. Further, the Partnership Agreement imposes no duty on PNC to consent to any replacement financing, and the Original GP never complied with the conditions to PNC's consent to the putative Arbor loan. In any event, the correspondence between Arbor and the Original GP admitted in evidence as Exhibit 37 at the preliminary injunction hearing reflects that the Arbor loan was never going to close, as

it would have required PNC and Columbia Housing to voluntarily relinquish significant rights under the Partnership Agreement without any consideration for doing so.

Defendants' attempts to defend their conduct fail. The Court should enter a preliminary injunction in favor of Plaintiffs (1) finding that Defendant 2013 Travis Oak Creek GP, LLC was removed as the general partner of the Partnership, and (2) enjoining Defendants (and any person acting in active concert with them) from taking any action that interferes with Columbia Housing's singular exercise of its role, authority, powers, control, rights, duties, obligations, or privileges as general partner of the Partnership.

Dated: July 25, 2017.                    By: /s/ *Robert M. Hoffman*

                                         Robert M. Hoffman
                                         Texas Bar No. 09788200
                                         robhoffman@andrewskurth.com
                                         James C. Bookhout (*admitted* pro hac vice)
                                         Texas Bar No. 24087187
                                         jamesbookhout@andrewskurth.com
                                         **ANDREWS KURTH KENYON LLP**
                                         1717 Main Street, Suite 3700
                                         Dallas, Texas 75201
                                         Telephone:   (214) 659-4400
                                         Facsimile:   (214) 659-4401

                                         David P. Whittlesey
                                         Texas Bar No. 00791920
                                         dwhittlesey@andrewskurth.com
                                         **ANDREWS KURTH KENYON LLP**
                                         111 Congress Avenue, Suite 1700
                                         Austin, Texas 78701
                                         Telephone:   (512) 320-9200
                                         Facsimile:   (512) 320-9292

                                         **ATTORNEYS FOR PLAINTIFFS
                                         PNC BANK, N.A., COLUMBIA HOUSING SLP
                                         CORPORATION, AND 2013 TRAVIS OAK
                                         CREEK, LP**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on July 25, 2017, a copy of the foregoing document was served on counsel for the Defendants in this case via email.

                                         /s/ *Robert M. Hoffman*
                                         Robert M. Hoffman