6.3.    Single Purpose Entity.  The nature of the General Partner as being a "single purpose entity" separate and distinct from its members, partners and/or shareholders, as applicable, is a material inducement to the ILP and SLP becoming Limited Partners of the Partnership and agreeing to make the Capital Contributions provided for in this Agreement.  To ensure compliance with the restrictions on the General Partner, the General Partner represents, warrants and covenants as follows:

(a)    The General Partner has not and will not engage in any business other than being the General Partner of the Partnership.

(b)    The General Partner shall not enter into and has not entered into any contract or agreement with any Affiliate of the General Partner, the Developer or Guarantor, except upon terms and conditions that are substantially similar to those that would be available on an arm's length basis.

(c)    The General Partner has paid and shall continue to pay its taxes, debts and liabilities from its own assets as the same shall become due.  No Affiliate of the General Partner has paid any debts or liabilities on behalf of the General Partner other than those related to the Partnership or pursuant to the Guaranty as contemplated herein.

(d)    The General Partner has maintained and shall continue to maintain books, financial records and bank accounts that are separate and distinct from any other Person.

(e)    The General Partner has maintained and shall continue to maintain separate annual financial statements showing its assets and liabilities separate and distinct from those of any other entity; in the event the financial statements of the General Partner are consolidated with the financial statements of any other entity, the General Partner has included and shall continue to cause to be included in such consolidated financial statements: (i) a narrative description of the separate assets, liabilities, business functions, operations and existence of the General Partner to ensure that such items are readily distinguishable; and (ii) a statement that the General Partner's assets and credit are not available to satisfy the debts of such other entity or any other person.

(f)    The General Partner has previously and shall continue to (i) hold itself out as an entity separate and distinct from any other Person; (ii) not identify itself as a division or part of any other Person; and (iii) correct any known misunderstanding regarding its separate status.

(g)    The General Partner has and shall continue to conduct its business in its own name so as to avoid or correct any misunderstanding on the part of any creditor concerning the fact that any invoices and other statements of account from creditors of the General Partner are to be addressed and mailed directly to the General Partner, though this provision shall not prohibit such mail to be delivered to the General Partner c/o any other entity.

(h)    The General Partner has and intends to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations.

(i)    The General Partner has not commingled and shall not commingle with any Person, any of its assets, funds or liabilities.

(j)    Except as may be required under the Bridge Loan or a Permitted Loans, the General Partner has not and shall not: (i) assume or guaranty the debts of any other Person in a manner that includes a pledge, encumbrance, transfer or hypothecation (whether by operation of law or otherwise) of any assets or interests of the Partnership or, (ii) hold itself out to be responsible for the debts of another Person in a manner that includes the pledge, encumbrance, transfer or hypothecation of any assets or interests of the Partnership (whether by operation of law or otherwise), or (iii) otherwise pledge, encumber, transfer or hypothecate the assets of the Partnership for the benefit of another Person or permit the same to occur except as specifically provided in the Project Documents executed on or before the Closing Date, or (iv) hold the Partnership's credit as being available to satisfy the obligations of any other Person.

4837-4545-8969.4

CONFIDENTIAL

PLAINTIFFS_00008492

(k)     All transactions carried out by the General Partner have been and will be, in all instances, made in good faith and without intent to hinder, delay or defraud creditors of the General Partner.

6.4.     [Reserved].

6.5.     Duties, Covenants, Obligations, Representations and Warranties.  The General Partner hereby agrees to undertake the following duties, covenants and obligations and further represents, warrants and covenants to the Limited Partners and to Tax Counsel that the following are presently true and will be true throughout the term of this Agreement, unless otherwise indicated:

(a)     The General Partner shall devote to the Partnership such time as may be necessary for the proper performance of its duties.  The General Partner shall cause the Partnership to promptly pay all Partnership debts when they become due and to perform all other Partnership obligations under all agreements and legal requirements of any kind or nature to which the Partnership, the Project or the General Partner may be subject.  The General Partner shall cause all accounts payable by the Partnership to be paid within sixty (60) days of their respective due dates.  Subject to this Agreement, the General Partner shall at all times act and exercise its discretion hereunder in a reasonable manner consistent with its fiduciary duties to the other Partners.

(b)     During the term of the Partnership, the General Partner shall cause the Partnership to obtain and keep in force, at Partnership expense, the insurance described in Exhibit 6 or such higher standard or amount of insurance coverage required under the Project Documents.   All policies evidencing such required insurance shall: (i) be issued by a company or companies acceptable to the SLP; (ii) include endorsements requiring at least thirty (30) days' prior written notice to the SLP of any cancellation, termination, premiums due, or reduction of coverage therein; (iii) not be written for a term of less than one (1) year; (iv) not permit a waiver of subrogation by the insured prior to a loss; and (v) not exclude coverage as a result of the presence of moisture and/or mold, unless either (A) separate coverage is obtained in form and substance acceptable to the SLP or (B) the General Partner provides evidence acceptable to the SLP that upon Final Construction Completion the Project will not be susceptible to moisture and/or mold issues.

(c)     The General Partner shall cause the Partnership to establish and maintain reasonable reserves to provide for working capital needs, Capital Expenditures, Operating Deficits and any other contingencies of the Partnership, and, at a minimum, shall:

(1)     Commencing six (6) months after Placement In Service, cause the Partnership to deposit monthly an amount of not less than \$20.83 per apartment unit into the Replacement Reserve Account, which amount shall be adjusted annually to reflect a 3% increase over the previous year's required deposit or such higher amount as may be required in any Project Document.  The Replacement Reserve Account must be maintained in an account which shall be separate from the Partnership's operating account(s) in compliance with all Lender and Agency requirements.  Pursuant to Section 10.9, the General Partner shall submit to the SLP for approval an annual budget of Capital Expenditures for the subsequent Fiscal Year.  The SLP's approval of the annual budget of Capital Expenditures shall be considered Consent for the Replacement Reserve Account disbursements for the purposes and in the amounts identified on such approved budget.  Any disbursements from the Replacement Reserve Account shall be subject to all Lender or Agency requirements, and any disbursement in excess of the amounts identified on the approved budget of Capital Expenditures for such year shall be made only with the Consent or upon the direction of the SLP (except for any disbursements in the event of an emergency and which is necessary to protect the safety of tenants or the structural and/or mechanical integrity of the Project, and the General Partner provides the SLP notice of such disbursement no later than the first business day following the emergency event).  In no event shall disbursements be made from the Replacement Reserve Account for ordinary and customary repairs and maintenance that do not constitute Capital Expenditures without the prior Consent of the SLP.  After each disbursement, the General Partner shall submit to the SLP the invoices showing:  the item or service purchased; the purchase date; the quantity purchased and per unit cost; the total purchase amount and reason for the expenditure.  If disbursements are made from the Replacement Reserve Account for items that do not constitute Capital Expenditures or in amounts in excess of the limits established hereunder without Consent of the SLP, the SLP shall have the right (in addition to other remedies under this Agreement, including, but not limited to, Section 7.7(b)) to require the General Partner to place the funds held in the Replacement Reserve Account into an account that requires the signatures of both the SLP and the General Partner for any disbursements.

33

CONFIDENTIAL                                                    PLAINTIFFS_00008493

(2)        The General Partner shall cause the Partnership to deposit into the Operating Reserve Account, at the time of the payment of the Third Installment, not less than the Operating Reserve Amount, which account shall be maintained in an account at PNC Bank, National Association in the name of the Partnership under the sole control of the SLP.  The General Partner may reduce or eliminate any Operating Deficit prior to making an advance pursuant to Section 6.5(d)(1) by requesting funds in the Operating Reserve Account but in no event shall any such funds be used while an Event of Default has occurred and is outstanding (unless the sole Event of Default is payment and expenditure of the funds for the Operating Deficit is otherwise permitted and would cure such Event of Default) or to pay any Development Costs.  Disbursements from the Operating Reserve Account (including any interest earned thereon) shall be requested in writing by the General Partner to the SLP (except for any disbursements in the event of an emergency and which is necessary to protect the safety of the tenants or the structural and/or mechanical integrity of the Project, and the General Partner provides the SLP with notice regarding such disbursements no later than the first business day following the disbursement).  The Operating Reserve Account shall be maintained until expiration of the Compliance Period at which time any remaining balance shall be disbursed as Net Cash Flow in accordance with Section 4.2.  Any remaining balance in the Operating Reserve Account upon sale of the Project shall be disbursed as provided in accordance with Section 4.5.

(3)        The General Partner shall cause the Partnership to deposit, at the time of the payment of the Third Installment not less than $3,000,000 (the "RSRA Amount"), into the Rental Subsidy Reserve Account, which shall be maintained in an escrow account at PNC Bank, National Association in the name of the Partnership under the sole control of the SLP.  The General Partner may reduce or eliminate an Operating Deficit resulting from the decrease or loss of funding under the HAP Contract (or any failure to enter into, a termination, an expiration or a lapse of the HAP Contract (including a failure to renew)) (a "Loss Event") by expending funds in the Rental Subsidy Reserve Account prior to making an advance pursuant to Section 6.5(d)(2), but in no event shall any such funds be used while an Event of Default has occurred and is outstanding or to pay any Development Costs.  Disbursements from the Rental Subsidy Reserve Account (including any interest earned thereon) shall be requested in writing by the General Partner to the SLP, approval of which shall not be unreasonably withheld, conditioned or delayed.  Any remaining balance in the Rental Subsidy Reserve Account shall be released, subject to the Release Restrictions (other than a Loss Event), in the priority set forth below, upon the first date upon which the Project is fully re-tenanted (if applicable upon complete loss, termination, or lapse of the HAP Contract) and determination by the SLP that the Project will maintain a Debt Service Coverage of 120% or greater through the Compliance Period (which calculation shall be performed in the same manner as for purposes of Stabilized Occupancy).  Except as set forth in the foregoing sentence, the Rental Subsidy Reserve Account shall be maintained until expiration of the Compliance Period at which time any remaining balance shall be disbursed subject to the Release Restrictions (other than a Loss Event), in the priority set forth below.  Any remaining balance in the Rental Subsidy Reserve Account upon sale of the Project shall be disbursed subject to the Release Restrictions (other than a Loss Event), in the priority set forth below.  Notwithstanding the foregoing, if the Rental Subsidy Reserve Account has not otherwise been released as set forth above and beginning upon the last day of the eleventh year of the Compliance Period and each anniversary thereafter any balance remaining in the Rental Subsidy Reserve Account in excess of the amount as follows shall be disbursed in the priority set forth below:

| | |
|---|---|
| End of year 11 | 80% of the RSRA Amount |
| End of year 12 | 60% of the RSRA Amount |
| End of year 13 | 40% of the RSRA Amount |
| End of year 14 | 20% of the RSRA Amount |
| End of year 15 | 0% of the RSRA Amount |

Any funds released hereunder shall be disbursed in the following priority: (A) first to fund any unfunded reserves of the Partnership, including, but not limited to the Operating Reserve Account and the Replacement Reserve Account and (B) then to the General Partner as a distribution, but in no event shall any such funds be disbursed (i) while an Event of Default has occurred and is outstanding, (ii) if the balance of the Operating Reserve Account is below the Operating Reserve Amount (unless the SLP otherwise determines sufficient funds from will be available from other sources to fully fund the Operating Reserve Account to the Operating Reserve Amount, including through release of

4837-4545-8969.4

CONFIDENTIAL

PLAINTIFFS_00008494

the Rental Subsidy Reserve Account funds, if necessary), (iii) if there is a Loss Event or (iv) if any amounts are due and owing to the ILP, SLP or any Affiliates thereof unless the General Partner has provided such amount will be paid upon any release (the "Release Restrictions").

(d)      (1)      The General Partner shall be obligated, without the requirement of notice or demand, to advance, or cause to be advanced by the Guarantor, all funds necessary during the ODG Period up to the ODG Cap (exclusive of any amounts funded from the Operating Reserve Account) in order to enable the Partnership to pay and satisfy Operating Deficits.

(2)      In addition to the obligations set forth in Section 6.5(d)(1) and notwithstanding any limitations set forth therein, in the event of a loss or reduction of the rental assistance provided under the HAP Contract for any reason, including, but not limited to, a loss or reduction caused by (i) a failure to enter into, a termination, an expiration or a lapse of the HAP Contract (including a failure to renew), or (ii) a failure of HUD to fully fund the HAP Contract due to a loss or reduction of appropriations, and such loss or reduction results, in whole or in part, in an Operating Deficit, then the General Partner, for the period commencing on the Closing Date and ending upon the termination of the Compliance Period, agrees and guarantees to advance or cause to be advanced by the Guarantor, without the requirement of notice or demand by the Partnership, any Partner or other party, an amount equal to the lesser of (i) the funds that would have been received under the HAP Contract with respect to the period of the Operating Deficit but for such loss or reduction of the rental assistance; and (ii) the amount of the Operating Deficit. If amounts are due under both (1) and (2) of this Section 6.5(d), advances made shall be treated as made first in satisfaction of the obligations under this paragraph until the obligations of this paragraph are satisfied in full and then in satisfaction of the obligations under Section 6.5(d)(1). Any amounts advanced under this paragraph shall not be credited toward the ODG Cap.

(3)      All advances pursuant to this Section 6.5(d) shall be Subordinated Loans repayable without interest in accordance with the provisions of Section 4.2 and Section 4.5; provided, however, that if the Accountants or the SLP determine that such treatment as Subordinated Loans would prevent the ILP from being allocated 99.99% of Net Losses, Net Losses from Sale and/or Tax Credit, then the advances shall be treated as payment of damages for breach of warranty.

(e)      The General Partner shall provide the Limited Partners, for purposes of seeking the Consent thereto, with a copy of any proposed new documents and/or any proposed amendment to any Project Document at least ten (10) days prior to the scheduled execution thereof. In no event shall any such documents be executed by or on behalf of the Partnership without obtaining the Consent of the SLP as to the form and substance of such documents.

(f)      The Partnership is and will continue to be a duly organized limited partnership, validly existing under the laws of the State and has complied and will continue to comply with all filing requirements necessary for the protection of the limited liability of the Limited Partners. Upon execution of this Agreement, the only partners of the Partnership are the General Partner, the ILP and the SLP. The Partnership has not made, and will not make, an election to be taxable as a corporation. The General Partner will not take any action that would result in the Partnership being treated as a corporation under Code Section 7701 or as a "publicly traded partnership" within the meaning of Code Section 7704. The Partnership has properly elected the accrual method of accounting. The profits, gains, losses and credits for tax and book accounting purposes, cash flow from operations, and sale or refinancing proceeds will be allocated among the Partners as set forth herein. No Partner will make any capital contributions to the Partnership other than the capital contributions provided for in this Agreement. The Partnership (i) is not an investment company within the meaning of the Investment Company Act of 1940 (referred to herein as the "**Act**") and (ii) is not relying on the exceptions contained in Section 3(c)(1) or Section 3(c)(7) of the Act in making such determination. In addition, at all times during the term of this Agreement, the Partnership (i) will not be an investment company within the meaning of the Act and (ii) will not rely on the exceptions contained in Section 3(c)(1) or Section 3(c)(7) of the Act in making such determination.

(g)      The execution and delivery of all instruments and the performance of all acts heretofore or hereafter made or taken pertaining to the Partnership or the Project by each of the General Partner and Affiliates of a General Partner have been duly authorized and the Partnership and the General Partner have active status for the right to transact business in the State, and the consummation of any such transactions with or on behalf of the

4837-4545-8969.4

CONFIDENTIAL

PLAINTIFFS_00008495

Partnership will not constitute a breach or violation of, or a default under, (i) the organizational documents of such entity, (ii) any agreement by which such entity or any of its property or assets are bound, or (iii) any law, regulation or court decree.

(h)     No default, Event of Default or event which, with the giving of notice or the passage of time or both, would constitute a default, has occurred and is continuing under this Agreement or any of the Project Documents, and the same are in full force and effect.  Neither the General Partner nor the Partnership is in violation of any Lender or Agency requirements.

(i)     The Partnership is not liable for any expense, debt, cost, liability, or other charge other than costs incurred in connection with the acquisition of the Property and construction and/or rehabilitation of the Project as reflected in the Project Budget and operating expenses arising in the ordinary course of business.

(j)     The General Partner, the Developer, the Guarantor, any partner, member or officer thereof (which officer has a Controlling Interest in any of the foregoing Persons) is not the subject of any governmental or private inquiry, proceeding or litigation, the outcome of which could be materially adverse to any such Person, the Project or the Partnership.

(k)     No Event of Bankruptcy has occurred, is pending or to the best of the General Partner's knowledge after due inquiry is threatened against the Partnership, the General Partner, the Original Limited Partner, the Developer, or the Guarantor, and no event that would constitute an Event of Withdrawal has occurred with respect to any General Partner.

(l)     To the extent not previously transferred, the General Partner hereby transfers and assigns to the Partnership all of the General Partner's (and its Affiliates) right, title and interest in and to the Project and in and to all Project Documents (excluding its right to receive payments and distributions in accordance with this Agreement and its Affiliates rights under the Seller Loan and the Developer's right to receive payment of the Development Fee).

(m)     The General Partner shall provide to the SLP written notice, within three (3) business days of the occurrence, of any event which would likely result in an Event of Default after passage of any cure period.

(n)     The General Partner and Guarantor collectively have and shall maintain an aggregate net worth exclusive of the General Partner's interest in the Partnership or any sums owed to the General Partner or Guarantor by the Partnership equal to at least $5,000,000, of which at least $2,500,000 shall be liquid assets until Stabilized Occupancy and thereafter the minimum liquidity requirement shall be $2,000,000 and then until the ODG Period End Date and thereafter the minimum liquidity requirement shall be $1,000,000 throughout the Compliance Period.

(o)     There are no agreements relating to and no claims filed, pending or to the best of the General Partner's knowledge after due inquiry is threatened against or concerning the Partnership by any Person not an Affiliate of the ILP in regard to any syndication or the sale or issuance of any limited partner interest in the Partnership.  The General Partner has or will have timely complied or will cause the timely compliance with all applicable securities laws in connection with the offer and sale of the Partnership interests in the Partnership to the ILP and SLP.

(p)     The General Partner has not received notice from the Internal Revenue Service that it has considered the General Partner or any Affiliate thereof to be involved in any abusive tax shelter and is not aware of any facts which, if known to the Internal Revenue Service, would cause such notice to be issued.

(q)     No General Partner, Developer or Guarantor, nor any Affiliate of any of the preceding or any of the General Partner's, Developer's, or Guarantor's respective officers, directors, principals, members or managers:

4837-4545-8969.4

CONFIDENTIAL     PLAINTIFFS_00008496

(1)      Has been convicted within the past ten (10) years of any felony or misdemeanor in connection with the purchase or sale of any security involving the making of a false filing with the Securities and Exchange Commission, or arising out of the conduct of the business of an underwriter, broker, dealer, municipal securities dealer or investment adviser;

(2)      Is or has been subject to any order, judgment or decree of any court of competent jurisdiction, temporarily or preliminary enjoining or restraining, within the past five (5) years, such person from engaging in or continuing any conduct or practice in connection with the purchase or sale of any security or involving the making of a false filing with the Securities and Exchange Commission, or arising out of the conduct of the business of an underwriter, broker, dealer, municipal securities dealer or investment adviser;

(3)      Is or has been subject to a United States Postal Service false representation order entered under Section 3005 of Title 39, United States Code, within the past five (5) years; or is or has been subject to a restraining order or preliminary injunction entered under Section 3007 of Title 39, United States Code, with respect to conduct alleged to have violated Section 3005 of Title 39, United States Code;

(4)      Has acted as underwriter of any securities:

(5)      Is covered by a registration statement which is the subject of any pending proceeding or examination under Section 8 of the Securities Act of 1933, as amended (the "**1933 Act**"), or is the subject of any refusal order or stop order entered thereunder within the past five (5) years; or

(6)      Is covered by any filing which is subject to any pending proceeding under Rule 261 or any similar rule promulgated under the provisions of Section 3(b) of the 1933 Act, or to an order entered thereunder, within the past five (5) years.

(r)      No Partner in the Partnership will be a tax-exempt entity, and no Partner in the Partnership will be controlled by a tax-exempt entity.  Further, no portion of the Project will be leased to a tax-exempt entity.

(s)      The recipient of the Partnership Management Fee is an accrual basis taxpayer for federal income tax purposes.

(t)      The General Partner has prepared its own financial analysis of the Project and is not relying on any financial analysis, projection or forecast prepared by the ILP or any Affiliate thereof of the costs associated with the development, construction and/or rehabilitation of the Project or the Project's operations.  There are sufficient sources of Development Funds to complete the Project in accordance with the Plans and Specifications and the Project Budget.  The General Partner has reviewed the Project Forecast and believes it to be correct in all material respects and is not aware of any facts that are inconsistent therewith.

(u)      The Partners and their respective Affiliates acknowledge that the Partnership interest of the ILP may be transferred to an Affiliate of the ILP or the SLP.  In connection therewith, the ILP and the SLP may disclose to prospective investors in such Affiliate such information previously supplied to the ILP and/or its Affiliates about the transaction, the Partnership, the Project, the General Partner, each of the other Partners, the Developer, the Guarantor, the Property Manager and Affiliates thereof, and the Partners, the Guarantor, the Developer and Affiliates thereof hereby agree to supply such further information as reasonably requested in order to effectuate such a transaction. The Partnership, the Partners, the Developer, the Guarantor, and their Affiliates each further agree to promptly execute and/or provide such documents and agreements as may be reasonably necessary to facilitate and expedite such transfer, including any amendments and supplements to this Agreement, legal opinions, title policy endorsements and other Project Documents, and to otherwise cooperate with the ILP and the SLP in this regard.  Specifically, and without limitation, the Partnership, the Partners, the Developer, and the Guarantor shall promptly execute an amendment to this Agreement and a Guarantor Acknowledgement and Consent in the form of the attached Exhibit 7, as such form may be revised as required by the Affiliate transferee (the "**Transfer Amendment**"); provided that such amendment that contains material terms beyond the form contemplated in Exhibit 7 shall be proposed in accordance with Section 7.6(a)(2) of this Agreement.  The ILP shall bear its own out-

37

CONFIDENTIAL                                     PLAINTIFFS_00008497

of-pocket costs, expenses, fees, taxes and similar charges arising in connection therewith and further agrees to reimburse the Partnership, the General Partner, the Developer and the Guarantor for their reasonable out-of-pocket costs, expenses, fees, taxes and similar charges in connection therewith up to an aggregate maximum reimbursement of (i) $2,500 for transfers to PNC Bank, National Association and/or any fund entity sponsored or managed by PNC Bank, National Association or its affiliates and (ii) $10,000 for transfers to any entity other than as referenced in (i).

(v)　　　The Partnership owns a fee simple interest in the Project, and the Project is not subject to an option or right of first refusal except as provided herein or as required by the Tax Credit Agency and the Extended Low Income Housing Use Commitment. No title exception, other than the lien(s) securing the Permitted Loan or Seller Loan, constitutes a material lien, exclusion, exception, condition or stipulation or refers to rights, the existence or exercise of which could have a material adverse effect on the ownership, development, operation or value of the Project. There is no official action of any governmental authority, pending or to the best of the General Partner's knowledge after due inquiry threatened, which in any way would involve any intended public improvements, which public improvements may result in any charge being levied against the Project or any special assessment being levied against the Property. There is no existing, proposed or, to the best of the General Partner's knowledge after due inquiry, contemplated, plan to widen, modify or realign any street or highway contiguous to the Project. The General Partner shall promptly notify the SLP of any official actions or plans, if and as they arise. No Person or entity other than the Partnership and those Persons holding indirect interests through the Partnership holds any equity or ownership interest in the Project. No Person except the Partnership has the right to any proceeds, after payment of all indebtedness, from the sale, refinancing or leasing of the Project, and the Partnership, except to the extent protected by insurance and excluding any risk borne by the lenders, shall bear the risk of loss if the Project is destroyed, condemned or diminished in value. Other than specifically provided in this Agreement, a creditor who makes a loan to the Partnership shall not at any time have or acquire, as a result of making the loan, any interest in the profits, capital or property of the Partnership other than as secured or unsecured creditor. No restrictions on the Sale or Refinancing of the Project exist, other than restrictions under Section 42 of the Code, the Extended Low Income Housing Use Commitment and this Agreement, and no such restrictions shall be placed upon the Project without the Consent of the SLP. The Partners acknowledge that notwithstanding anything in this Agreement to the contrary, any sale of the Project will be subject to the terms of the Extended Low Income Housing Commitment, including any rules, policies, or procedures promulgated by the Tax Credit Agency relating thereto.

(w)　　　No charges, liens, claims, covenants, conditions, restrictions, easements, rights of way, options, judgments, special assessments or encumbrances exist against the Project other than those which are created or permitted by the Project Documents or are noted or excepted in the Title. There is no reassessment (except for real estate property taxes), reclassification, rezoning, proceeding, ordinance or regulation (including amendments and modifications to any of the foregoing) pending or to the best of the General Partner's knowledge after due inquiry proposed to be imposed, by any authority or any public or private utility having jurisdiction over the Project which would have a material adverse effect upon the use or occupancy of the Project. No special assessments have been levied or to the best of the General Partner's knowledge after due inquiry are proposed to be levied against the Project and the General Partner will promptly notify the SLP of any such actions if and as they arise. Except as previously approved by the SLP, the completion of the construction or rehabilitation of the Project will not require the dedication of any portion of the Project.

(x)　　　No event, proceeding, adverse action, commission, suit, arbitration, or claim, including, but not limited to, judicial, municipal or administrative proceedings, unlawful detainer or tenant evictions, collections, alleged building code, health and safety or zoning violations, employment discrimination or unfair labor practices, workers' compensation, personal injuries or property damages, is pending, has occurred, or, to the best of the General Partner's knowledge after due inquiry, is threatened, the continuing effect of which could: (i) materially or adversely affect the operation of the Partnership or the Project; (ii) materially or adversely affect the ability of the General Partner or Guarantor to perform their obligations hereunder, under the Guaranty or under any other Project Document; or (iii) prevent Final Construction Completion or Mortgage Loan Commencement in substantial conformity with the Project Documents, unless any of the foregoing have been bonded against (or as to which other adequate financial security has been issued without recourse to Partnership assets) in a manner as to indemnify the Partnership against loss.

(y)　　　Except as otherwise disclosed in writing to the SLP, the General Partner has no knowledge of (i) any opposition to the Project, or (ii) any investigation or inquiry of the Partnership, the General

38

4837-4545-8969.4

PLAINTIFFS_00008498

Partner, the Developer, the Guarantor, or any partner, member or officer thereof, which has or may have a material adverse impact on the Project or the Partnership or which would result in a delay in the development of the Project.

(z)     If the Property or Project is eligible for a property tax exemption, abatement, or other relief and such exemption or abatement requires periodic filings or reporting to the taxing authority, the General Partner shall cause the Partnership to timely file same and provide copies of such filings to the SLP within ten (10) business days of filing.

(aa)     The Partnership has the primary obligation to pay all maintenance and operating costs, including all taxes levied upon, and all insurance costs attributable to, the Project.   There are no service or maintenance contracts, warranties, guarantees or bonds which are or will be obligations of the Partnership or the Project, other than which the General Partner has provided to the Limited Partners upon the request of the Limited Partners (collectively, the "**Service Contracts**").  All Service Contracts are or will be on an arm's-length basis with parties not affiliated with the General Partner, except as Consented to by the SLP.  There is no current default of any of the Service Contracts.  The Service Contracts have not been, and will not be, amended or modified except as permitted herein.  All fees paid to the General Partner or any Affiliate thereof in connection with the Partnership will be reasonable in amount for services actually performed.

(bb)     The fair market value of the Project currently exceeds, and throughout the term of the Permitted Loan is reasonably expected to exceed, the aggregate outstanding balance of the Permitted Loan.  Each Permitted Loan has a fixed maturity date which is prior to the end of the anticipated economic life of the Project, and the Partnership is reasonably expected to be able to repay each Permitted Loan as it matures.

(cc)     The General Partner is not related in any manner to the ILP or the SLP, nor is the General Partner acting as an agent of the ILP or the SLP.

(dd)     Other than the Seller Loan Lender and the Bridge Loan Lender, no Partner, nor any related person (within the meaning of Treasury Regulation Section 1.752-4(b)) of any Partner, has or will have any personal liability with respect to, or has personally guaranteed or will personally guarantee the payment of, the permanent phase of any Permitted Loan nor bears or will bear the economic risk of loss (within the meaning of Treasury Regulation Section 1.752-2) for the repayment of any permanent phase of a Permitted Loan.

(ee)     If the SLP directs the General Partner to do so or if required by the Agency or Lender or by law or regulation, or if recommended by a licensed environmental engineering firm preparing a third-party report for the Project, the General Partner will promptly cause to be implemented on behalf of the Partnership a moisture management and control program for the Project that will comply with all applicable requirements and recommendations set forth in any applicable report obtained by the Partnership or Partners at any time (the costs and expenses incurred by any Limited Partner in connection therewith to be reimbursed by the Partnership on demand); provided, that to the extent of any conflicting requirements or recommendations among such reports, the General Partner and SLP shall reasonably agree as to the requirements and the recommendations that should be implemented based on the benefits compared to the cost thereof; provided, however, in the event the General Partner and SLP do not reach an agreement, the SLP shall be permitted to make the final determination, in its sole discretion, as to which recommendations shall be implemented.

(ff)     The General Partner shall cause all leases of dwelling units to tenants to include a provision obligating such tenants to notify the Property Manager immediately of any suspected water leaks, moisture problems, or mold in dwelling units or common areas of the Project.

(gg)     The General Partner shall cause the Partnership to maintain tenant deposits in a separate account which must be used solely to hold tenant deposits as security for tenant rents and for no other purpose.

(hh)     Except as otherwise required by the Declaration of Covenants, Condtions, and Restrictions entered into by the seller of the Project in connection with the redevelopment thereof (the "Declaration"), the community and common area portions of the Project will be held exclusively for use by tenants and the Partnership will not charge a separate fee for the use of tenant facilities at the Project, and such tenant

39

CONFIDENTIAL                                     PLAINTIFFS_00008499

facilities will be available on a comparable basis to all tenants. Notwithstanding the foregoing, upon the recordation of the Extended Low Income Housing Use Commitment, the General Partner shall cause the Declaration to be terminated of record pursuant to Section 3.7 of the Declaration. The General Partner shall cause the Partnership to provide any supportive services as required by the Project Documents and all services provided to tenants will be optional and will not be required as a condition of occupancy.

(ii)     The General Partner agrees that the Partnership shall not obtain any financing which requires the approval of HUD until such HUD 2530 approval is obtained from HUD. If the Partnership intends to obtain HUD assistance or insurance or any other type of financing that necessitates the filing of a Form 2530 Previous Participation Certificate with HUD, the General Partner shall so notify those Partners from which information is required for such Certificate and shall provide adequate information to such Partner to enable it to file any additional documents with HUD.

(jj)     The General Partner shall notify the ILP and invite a representative of the ILP to attend any groundbreaking, ribbon-cutting or other public relations ceremony relating to the Project. To the extent requested by the ILP, the General Partner shall cause the Partnership, at the ILP's cost, to display a sign on the Property during construction/rehabilitation which clearly states the name of PNC as the arranger of equity funds for the Project. The sign shall be erected in a prominent place on the site within 10 days of receipt by the General Partner of the PNC image and directions. The General Partner agrees to remove such sign or reference to PNC if requested. The General Partner hereby gives permission to the ILP and any Affiliate lender of the Limited Partners to issue press releases and advertising relating to the equity commitment and the ILP's participation in the transaction; provided that the General Partner reviewed and approved any press release or advertising that references the General Partner or its Affiliates. Such media and marketing materials may include, among other things, photos, information about the location of the Project, the number of units, the amenities associated with the Project and the terms of the equity commitment.

(kk)     If the SLP directs the General Partner to do so, the Partnership shall elect out of any/all available bonus depreciation under the Code; provided that the foregoing shall not include cost segregation analysis done by the Accountants as previously disclosed to the Limited Partner.

6.6.     Limitation on Liability; Indemnification.

(a)     Except as provided in Section 6.6(b) and Section 6.6(d) below, the General Partner shall be indemnified by the Partnership, and shall have no liability to the Partnership or to any Partner for any loss suffered by the Partnership, for any losses, judgments, liabilities, expenses and amounts paid in settlement of any claims sustained by the General Partner in connection with the proper performance of its obligations under this Agreement in its capacity as a General Partner (and not in any other capacity, whether as Developer or otherwise), provided that (1) the General Partner, in good faith, determined that such course of conduct in its capacity as a General Partner was in the best interest of the Partnership, and (2) the matters for which the General Partner is seeking indemnification were not the result of or otherwise did not directly or indirectly arise out of or in connection with (A) any negligence or misconduct on the part of the General Partner or any Affiliate thereof, (B) any Event of Default, or any efforts to cure or mitigate any such Event of Default, (C) any removal of the General Partner pursuant to the exercise by a Limited Partner of its rights under Section 7.7 of this Agreement, (D) any exercise of a Limited Partner's right to demand repurchase under Article V herein, or (E) the performance or nonperformance of any of the General Partner's or any Affiliate's monetary obligations under this Agreement or any other obligation the General Partner or any Affiliate may have under this Agreement to pay any amounts to or on behalf of the Partnership or any Partner. Furthermore, without limiting the foregoing, the General Partner shall not be indemnified for any such losses, judgments, liabilities, expenses or settlement amounts unless and until (1) the General Partner becomes subject to a final and non-appealable order, judgment or ruling by a court of competent jurisdiction with respect to all matters with respect to which indemnification is being sought, (2) all such claims have been dismissed with prejudice on the merits by a court of competent jurisdiction in favor of the General Partner, or (3) a court of competent jurisdiction approves a settlement with respect to the General Partner fully covering all matters with respect to which indemnification is being sought; provided, to the extent it is reasonably likely that the General Partner will be entitled to reimbursement pursuant to the foregoing provisions, the General Partner may be reimbursed prior to such time by the Partnership for reasonable attorneys' fees and other reasonable costs in defending or pursuing the matter unless such reimbursement would cause an Operating Deficit and provided

40

CONFIDENTIAL                                        PLAINTIFFS_00008500

further, that in the event it is ultimately determined that the General Partner is not entitled to be indemnified as provided in this Section 6.6(a), it shall repay an amount equal to such attorneys' fees and other reasonable costs to the Partnership within thirty (30) days of such determination.

(b)      Notwithstanding Section 6.6(a), the General Partner shall not be indemnified for any losses, liabilities or expenses arising from or out of any alleged violation of federal or state securities laws unless (1) there has been a successful adjudication on the merits of each count involving alleged securities law violations in a manner favorable to the General Partner, or (2) such claims have been dismissed with prejudice on the merits by a court of competent jurisdiction as to the General Partner, or (3) a court of competent jurisdiction approves a settlement of the claims against the General Partner and such settlement concludes that the General Partner was not liable.

(c)      The Partnership shall not incur the cost of that portion of any insurance, other than public liability insurance, which insures any party against any liability, the indemnification of which is herein prohibited.

(d)      Without limiting any other indemnification obligations of the General Partner set forth in this Agreement, the General Partner shall indemnify, defend and hold harmless the Indemnitees from and against, and shall upon demand reimburse Indemnitees for any and all, losses, claims, liabilities, damages, injunctive relief, injuries to person, property or natural resources, costs, actions or causes of action, fines, penalties, judgments, taxes, charges, assessments, damages (including consequential damages suffered by a third-party claimant), costs and expenses (including reasonable attorneys' fees and expenses), of every kind and nature whatsoever, whether direct or indirect, realized, suffered or incurred by or imposed upon any of the Indemnitees before, during or after the term of the Partnership, arising, accruing, relating to or in connection with (i) any Event of Default, or the existence of any circumstance which would give rise to an Event of Default following any required notice and expiration of any cure period, (ii) any representation, warranty or statement of the General Partner in this Agreement or in any document, certificate or schedule furnished or to be furnished to the Limited Partners pursuant hereto that contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements or facts contained therein not materially misleading which has a material adverse effect on the Partnership, the Project or a Limited Partner, or (iii) any act or omission, including, without limitation, any negligence or misconduct, of the General Partner or any of its Affiliates which has a material adverse effect on the Partnership, the Project or a Limited Partner.

6.7.    Development Duties, Covenants and Obligations.  The General Partner shall promptly take all action which may be necessary or appropriate for the timely and proper development, construction and/or rehabilitation as applicable, maintenance and operation of the Project in accordance with the provisions of this Agreement, the Project Documents and all applicable laws and regulations.  Specifically and without limitation the General Partner does hereby agree to undertake the following duties, covenants and obligations and further represents, warrants and covenants to the Limited Partners the following:

(a)      The General Partner shall provide in the Project Budget for a hard cost contingency exclusive of any contingency line item set forth in the Construction Contract of at least 5% of the contract sum set forth in the Construction Contract for new construction or 10% for acquisition/rehabilitation.  Use of such hard cost contingency shall require the Consent of the SLP.  Neither the General Partner nor the Developer shall authorize any change orders or make any changes in the Plans and Specifications except as provided in Section 10.7.  All Builder fees will comply with the Tax Credit Agency limits and any amounts due over the limits will be the responsibility of the General Partner.

(b)      The General Partner shall cause the Plans and Specifications to comply with all requirements of the Agency, the Lender, each License and Permit issued in connection with the Project, all Governmental Regulations and all required recommendations in the Environmental Reports.

(c)      Prior to the submission of any draw requests for vertical construction costs of the Project's buildings, the General Partner shall obtain from a surveyor licensed to practice in the state in which the Property is located, an updated ALTA Survey in form and substance reasonably acceptable to the SLP and the Construction Consultant and including the physical location of all utility easements (either of record or planned to be placed of record as required by the Plans and Specifications) and the building foundations and any zoning setback

41

CONFIDENTIAL                                          PLAINTIFFS_00008501

requirements. Furthermore, the General Partner shall make all required building foundation adjustments which are necessary to cure any building setback violation and/or encroachments over easements and underground utility lines as evidenced by the updated ALTA Survey. The SLP shall have no obligation to approve a draw request for vertical construction costs related to any building until such time as the SLP has received and approved the updated survey in compliance with the above requirements and any defects or deficiencies in the foundations have been corrected in accordance herewith.

(d)     The Plans and Specifications approved by the SLP listed on Exhibit 4 were used to obtain all permits to construct and/or rehabilitate the Project and were approved by all applicable authority. Neither the General Partner nor the Developer shall authorize any change orders or make any changes in the Plans and Specifications except as provided in Section 10.7.

(e)     All material Licenses and Permits (including building permits) necessary for the ownership, construction and/or rehabilitation and development of the Project have been obtained or will be obtained in a timely manner (and will be maintained in full force and effect) by the Partnership. The Project will be improved, constructed, and developed to completion substantially in accordance with (1) all such Licenses and Permits (and all required certificates of occupancy shall be obtained upon completion of any such improvement, construction or development on or of the Project), (2) all Governmental Regulations, (3) accepted standards of good materials and workmanship, (4) all material covenants, conditions, restrictions, assessments and agreements of any kind or nature affecting the Project, including any in any existing documents, (5) the Plans and Specifications, and (6) the terms of this Agreement. Any conditions to any Licenses and Permits have been satisfied or will be satisfied upon Final Construction Completion.

(f)     The Partnership is not in violation of any zoning or similar regulations applicable to the Project. From and after Final Construction Completion, the Project will not endanger public health or the environment, and will conform with all applicable zoning, building, health, fire and environmental rules, regulations, ordinances or requirements of all governmental authorities having jurisdiction over the Project. There are no violations of any Governmental Regulations, and there will be no such violations (not promptly addressed and corrected) for the term of the Partnership. The General Partner has received no notices with respect to any violations of federal or state law or municipal ordinances or orders or requirements of any governmental body or authority within whose jurisdiction of the Project is located. If the General Partner receives such notices, it will promptly so notify the Limited Partners.

(g)     Final Construction Completion shall occur by the Completion Date. Upon Final Construction Completion, there will be no physical or mechanical defects or deficiencies in the condition of the Project which would materially and adversely affect the Project or any portion thereof. Upon Final Construction Completion the Project will be free from infestation by termites or other pests, insects, animals or other vermin and is free from mold or mildew, and the General Partner will undertake all commercially reasonable efforts to keep it so. Upon Final Construction Completion, the Project will be connected to and served by water, solid waste and sewage disposal, drainage, telephone, gas as applicable, electricity and other utility equipment facilities and services required by law, which will be (i) adequate for the proposed use and operation of the Project, (ii) installed and connected pursuant to valid permits, and (iii) in compliance with all material Governmental Regulations. No fact or condition exists which would result in the termination or impairment in the furnishing of the foregoing.

(h)     To the best of the General Partner's knowledge after due inquiry, there are no defects or conditions of the soil that would have a material adverse effect upon the construction and/or rehabilitation, development, use, occupancy or operation of the Project. The soil condition of the Property is such that it will support all of the improvements located or to be located thereon for the foreseeable life of the Project, without the need for unusual or new subsurface excavations, fill, footings, caissons or other installations, other than such excavations, fill, footings, caissons or other installations contemplated in the Plans and Specifications and in the Project Budget.

(i)     The General Partner agrees to diligently pursue remediation of any construction related issues prior to expiration of the warranty period under the Construction Contract.

4837-4545-8969.4

CONFIDENTIAL                                    PLAINTIFFS_00008502

(j)     The General Partner hereby unconditionally guarantees to the Partnership and the Limited Partners the due and punctual performance of all of the obligations under this Section 6.7 and all obligations of the Developer under the Development Agreement.  Furthermore, the General Partner and Developer hereby unconditionally jointly and severally agree to promptly pay any Development Costs to the extent available Development Funds are insufficient to pay such Development Costs when due (such obligations are referred to herein as the "**Development Completion Obligation**").  Prior to making any payment, the General Partner may require the Developer to defer payment of any outstanding balance of the Development Fee to the extent: (1) Development Funds would otherwise be available to pay such Development Fee at the time of the occurrence of a Development Completion Obligation but for the Development Fee then due, and (2) the SLP determines that there is a reasonable expectation that the Deferred Development Fee (as increased) can be paid by the 13th anniversary of Final Construction Completion.  Nothing contained in the preceding sentence shall create any duty or obligation on the part of the ILP to advance capital or fund any Installment prior to the satisfaction of all conditions thereto.

Any funds paid by the General Partner or Developer to satisfy a Development Completion Obligation (not including a deferral of Development Fee pursuant to the preceding paragraph) may be reimbursed to the General Partner or Developer, as applicable, from excess Development Funds which thereafter become available on or before the Final Determination is made in accordance with Section 6.7(k) below.  Any amounts paid by the General Partner or Developer (not including deferral of Development Fee) in connection with this Section 6.7(j) that are not reimbursed from Development Funds shall be accounted for as an indemnity payment to the Partnership and shall not be reimbursable or credited to the Capital Account of any Partner or may be treated as a Subordinated Loan repayable in accordance with Article IV only with the prior written Consent of the SLP.

(k)     Prior to funding the Final Installment, the SLP shall make a final determination (the "**Final Determination**") regarding all amounts the General Partner and/or Developer are obligated to pay pursuant to this Section 6.7.  Notwithstanding the above, in the event the Partnership is, or becomes, obligated to pay (i) any cost properly characterized as a Development Cost which is incurred after the Final Determination is made and/or (ii) any Development Cost which is not properly reflected on the Partnership records on the date of the Final Determination, then the General Partner and Developer shall immediately pay to the Partnership an amount equal to such additional Development Costs and such amounts shall be treated as Subordinated Loans repayable pursuant to Sections 4.2 and 4.5 of this Agreement.

(l)     It is expressly acknowledged that any failure of the General Partner or the Developer to fully perform obligations under this Section 6.7 (following a fifteen (15) business day notice and cure period for monetary defaults) constitutes adequate grounds for the removal of the General Partner pursuant to Section 7.7 and that any failure of the Developer to fully perform its obligations under this Section 6.7 or the Development Agreement (subject to a fifteen (15) business day notice and cure period) constitutes grounds for the immediate termination of the Development Agreement by the General Partner or the SLP, any provision of the Development Agreement notwithstanding.  Further, upon the removal of any General Partner pursuant to Section 7.7 or the withdrawal of any General Partner pursuant to Article IX, the new General Partner and the SLP shall have the option to immediately and without further cause terminate the Development Agreement, any provision of the Development Agreement notwithstanding, as well as any other contract between the Partnership and any Affiliate of the removed or withdrawing General Partner.  All amounts due to be paid in accordance with Section 6.8 and/or the Development Agreement are subject to offset and reduction in accordance with the terms of this Agreement; provided that the General Partner or the Developer has failed to fully perform the obligations under this Section 6.7 after expiration of the cure period set forth above.

6.8.    <u>Development and Other Fees</u>.  Except as specifically provided in this Agreement, the General Partner, the Developer, the Guarantor and all Affiliates thereof shall not be entitled to receive any salary, compensation or other fees paid by or on behalf of the Partnership, and any prior agreement, document or instrument purporting to create any obligation to pay the same shall be expressly superseded, amended and/or terminated to reflect only the following fees and compensation:

(a)     <u>Development Fee</u>.  The Partnership shall accrue and pay a Development Fee of $5,175,000 (or such other amount permitted by the Agency and ILP) to the Developer for services set forth in the Development Agreement.  The Development Fee shall be capitalized to the depreciable basis of the Project and earned in accordance with the Development Agreement.  The Development Fee is anticipated to be paid from the

43

CONFIDENTIAL                                                                    PLAINTIFFS_00008503

available proceeds of the following Installments or otherwise at the time of the payment of such Installments after payment of all other Development Costs and amounts owing to the Limited Partners then due:

| INSTALLMENT | AMOUNT |
|---|---|
| First Installment | $283,500 |
| Third Installment | $1,456,869 |
| Final Installment | $467,453 |
| TOTAL | $2,207,823 |

The Development Fee is subject to reduction, offset or application in accordance with the terms of this Agreement. The Developer acknowledges that payment of the Development Fee, whether payable under this Agreement or the Development Agreement, is subordinate in all respects to any obligations owing to (i) the ILP and/or SLP pursuant to this Agreement and the Guaranty, and/or (ii) any third-party creditor of the Partnership. The Developer shall not assign its right to receive the Development Fee to any party without the prior Consent of the SLP. Any unpaid balance of the Development Fee after payment of Final Installment (the "**Deferred Development Fee**") shall bear interest at 6% per annum and shall be paid in accordance with Article IV, but in no event later than the 13th anniversary of Final Construction Completion; in the event that any portion of the Deferred Development Fee remains unpaid on the 13th anniversary of Final Construction Completion, such amount shall be paid by the Partnership on said date from the proceeds of the additional Capital Contribution made by the General Partner pursuant to Section 3.1. Any cost savings in the Project Budget (including contingency) upon Final Determination (not including cost savings paid to the Contractor pursuant to the Construction Contract) may be applied to payment of Development Fee so long as there are no outstanding Development Costs or uncured Events of Default under this Agreement. To the extent of any conflict or inconsistency between the provisions of the Development Agreement and this Agreement, the provisions of this Agreement shall control.

(b)   Investor Services Fee. The Partnership shall pay to the ILP an annual cumulative fee equal to $8,650 per year, commencing with the year in which the first unit in the Project is occupied (the "**Investor Services Fee**"). The Investor Services Fee shall be payable pursuant to Section 4.2 and Section 4.5 and shall be increased annually by 3%.

The Investor Services Fee shall be paid for the following services: (1) monitoring the General Partner's reporting of operational results of the Project in the periodic reports required under this Agreement and other books of account of the Partnership; (2) reviewing the audited financial statements and tax returns prepared by the Accountants; (3) performing an annual review and physical inspection of the Project; (4) reviewing the annual operating budget and projected rental rates for the Project for each fiscal year during the term of this Agreement; (5) reviewing the occupancy/rental report for the Project; and (6) reviewing all other information available to the Partnership requested by the Limited Partner with respect to the Project.

(c)   Partnership Management Fee. The Partnership shall pay to the General Partner an annual cumulative fee equal to $34,600 per year, commencing in the year in which the first unit in the Project is occupied (the "**Partnership Management Fee**"). The Partnership Management Fee shall be payable pursuant to Section 4.2 and Section 4.5 and shall be increased annually by 3%. The Partnership Management Fee shall be for managing the affairs of the Partnership, which duties and responsibilities include: (1) the administration, management and direction of the business of the Partnership; (2) the monitoring of the management and operations of the Project and the making of recommendations with respect thereto; (3) the supervision of the Property Manager; (4) the maintenance of books and records of the Partnership; (5) the safekeeping and use of all funds and assets of the Partnership, including the maintenance of bank accounts; (6) the furnishing of all reports required by this Agreement; (7) consultation with and coordination of the activities of attorneys, Accountants and other professionals for the benefit of the Partnership; (8) the development and maintenance of favorable community relations between the Partnership and various social and community organizations; and (9) the maintenance of effective communication and necessary coordination with all governmental bodies having jurisdiction over the Project.

(d)   Incentive Management Fee. The Partnership shall pay to the General Partner an annual non-cumulative fee only to the extent of available funds pursuant to Section 4.2 of the Partnership Agreement (the

44

CONFIDENTIAL                                                                 PLAINTIFFS_00008504

"**Incentive Management Fee**") equal to 10% of Operating Revenue for such year for ensuring the satisfaction of each of the following: (1) the timely preparation and delivery of all financial and other reports required by this Agreement and by each Lender and Agency; (2) the performance of all compliance and monitoring covenants, duties and responsibilities pertaining to the Tax Credit; and (3) the performance of an annual review and physical inspection of the Project by the ILP by providing reasonable assistance to the ILP or its designee in performing such review. As used in this Agreement, a "non-cumulative fee" means that if funds are not available to pay such fee in a given year, then the fee for such year does not accrue and will not be subsequently paid, and a "cumulative fee" means if funds are not available to pay such fee in a given year, then the fee for such year will accrue and will be subsequently paid when funds are available.

(e)     Incentive Lease-Up Fee.  The Partnership shall pay to the General Partner the Incentive Lease-Up Fee pursuant to the terms set forth in Section 4.2 of this Agreement.

6.9.   Environmental Matters.

(a)     Environmental Representations and Warranty.  To the best of the General Partner's knowledge after due inquiry and based upon review of the Environmental Reports, except as disclosed in the Environmental Reports, no Hazardous Substance was ever or is now stored on, transported to or from, or disposed of on the Property except to the extent any such storage, transport or disposition was at all times in compliance with all laws, ordinances, and regulations pertaining thereto and fully disclosed to the SLP.  All operations or activities upon, or use of, the Project, or any portion thereof, by the Partnership, or, to the best of the General Partner's knowledge, by any tenant or occupant of the Project or any portion thereof, are, have been and will continue to be in compliance with all Governmental Regulations, including, without limitation, all Environmental Laws as now or at any time hereafter in effect relating to the generation, handling, manufacturing, treatment, storage, use, transportation, spillage, release, leakage, dumping, discharge or disposal (whether accidental or intentional) of any toxic or hazardous substances, materials or wastes, including, but not limited to, Hazardous Substances, the violation of which Governmental Regulations and Environmental Laws would have a material adverse effect, and no person has engaged in or permitted any dumping, discharge, disposal, spillage or leakage (whether legal or illegal, accidental or intentional) of Hazardous Substances, at, on, in or about, the Project or any portion thereof, which would have a material adverse effect on the Project or the Property.  Except as disclosed in the Environmental Reports, there is not present upon the Project, the Property, or any portion thereof, any asbestos, or any structures, fixtures, equipment or other objects or materials containing asbestos.  To the General Partner's knowledge, there is not any radon present on, in or about the Project or any portion thereof, in an amount sufficient to create a material hazard or violate local Governmental Regulations relating to radon.  No General Partner, Affiliate of a General Partner or Person for whose conduct any General Partner is or was responsible has ever received notification from any federal, state or other governmental authority of (i) any potential, known, or threatened release of any Hazardous Substance from, at, or to the Project or (ii) the incurrence of any expense or loss by any such governmental authority or by any other Person in connection with the assessment, containment or removal of any release or threat of release of any Hazardous Substances from, at or to the Project.  If any proceeding, inquiry or notice is commenced or received, the General Partner will promptly so notify the Limited Partners.

(b)     Environmental Covenants and Obligations.  The General Partner shall (i) not store (except in the ordinary course of business and in compliance with all laws, ordinances, and regulations pertaining thereto), dispose, dump, leak, treat, or discharge or permit the storage, disposal, treatment, dumping, leakage, seepage or discharge of any Hazardous Substance at the Project; (ii) neither directly nor indirectly transport or arrange for the transport of any Hazardous Substance (except in compliance with all laws, ordinances, and regulations pertaining thereto), and (iii) provide the ILP and the SLP with written notice (1) upon any General Partner obtaining knowledge of any potential or known release, or threat of release, of any Hazardous Substance at, from or to the Project; (2) upon any General Partner's receipt of any notice to such effect from any federal, state, or other governmental authority; and (3) upon any General Partner's obtaining knowledge of any incurrence of any expense or loss by any such governmental authority in connection with the assessment, containment, or removal of any Hazardous Substance for which expense or loss any General Partner may be liable or for which expense or loss or lien may be imposed on the Project.

(c)     Environmental Indemnification.  The General Partner hereby agrees to defend, indemnify and hold harmless the Indemnitees from and against, and shall upon demand reimburse Indemnitees for, any and all

45

CONFIDENTIAL                                    PLAINTIFFS_00008505

losses, claims, liabilities, damages, injunctive relief, injuries to person, property or natural resources, costs, actions or causes of action, fines, penalties, judgments, damages (including consequential damages suffered by a third party claimant) and expenses (including reasonable attorneys' fees and expenses) of every kind and nature whatsoever that are caused (whether before, during or after the term of the Partnership) by any or all of the following:

(1)     a threatened release or release of any Hazardous Substance at, on, to, from, in, under, affecting or otherwise related to any portion of any of the Project, whether foreseeable or unforeseeable, regardless of the source of such threatened release or release or when such release occurred or when its presence is discovered. The foregoing indemnity includes, without limitation, all costs in law or in equity of removal, remediation of any kind, and disposal of such Hazardous Substances, all costs of determining whether the Project is in compliance with, and causing the Project to be in compliance with, all applicable Governmental Regulations and Environmental Laws, all costs associated with claims for damages to persons, property, or natural resources, and the Indemnitees' reasonable attorneys' and consultants' fees and court costs in connection with the foregoing. This indemnity shall include the costs to the Indemnitees of removing and reducing the levels of any Hazardous Substance (i) to the levels required by Environmental Laws if permissible levels of such substances have been established by Environmental Laws, and (ii) to the extent necessary so that the Project is fit for its originally intended use, as determined by Indemnitees' consultant, if permissible levels have not been specifically established by applicable Environmental Laws. The foregoing indemnity also shall include all costs incurred by the Indemnitees necessary to restore the Project or otherwise enable the Project to be fit for the originally intended use; and

(2)     the enforcement of this environmental indemnity.

6.10.    Partnership Manager and Tax Matters Partner.

(a)     Partnership Manager. The General Partner is hereby appointed the Partnership Manager. In the event that the General Partner is comprised of more than one Person, the General Partner shall in writing appoint one of the Persons who is a General Partner as the Partnership Manager, subject to approval by the SLP. Such Partnership Manager shall exercise all the rights, powers and duties of the General Partner hereunder, and the other General Partner shall not exercise the same. Notwithstanding the foregoing, in the event the SLP or its designee becomes a substitute or additional General Partner in accordance with this Agreement, the SLP or its designee shall automatically and without further action become Partnership Manager and any designation or delegation of such function to any other General Partner shall be null and void. In no event shall the designation of the SLP as the Partnership Manager be revoked or terminated by any General Partner without the Consent of the SLP.

(b)     Tax Matters Partner.

(1)     The General Partner is hereby designated the Tax Matters Partner. The Tax Matters Partner shall take no action in its capacity as such without the Consent of the SLP, other than such action as the Tax Matters Partner may be required to take by law. The Tax Matters Partner shall comply with the responsibilities set forth in Sections 6221 through 6234 of the Code and in doing so shall incur no liability to the other Partners. The Tax Matters Partner shall be reimbursed for any expenses reasonably incurred in connection with the preparation for or pursuance of administrative or judicial proceedings, subject to the Consent of the SLP as to the amount of the expenditure. Notwithstanding the foregoing, in the event the SLP or its designee becomes a substitute or additional General Partner in accordance with this Agreement, the SLP or its designee shall automatically and without further action become the Tax Matters Partner and any designation or delegation of such function to any other General Partner pursuant to this Section shall be null and void. In no event shall the designation of the SLP as the Tax Matters Partner be revoked or terminated by any General Partner without the Consent of the SLP and ILP.

(2)     The Tax Matters Partners shall not enter into any extension of the period of limitations for making assessments on behalf of the ILP or the SLP without first obtaining the Consent of the affected Limited Partner.

(3)     The Tax Matters Partner shall not bind any Limited Partner to a settlement agreement without obtaining the written concurrence of such Limited Partner. For purposes of this subsection, the term "**settlement agreement**" shall include a settlement agreement at either an administrative or judicial level. Any

46

CONFIDENTIAL

PLAINTIFFS_00008506

Partner who enters into a settlement agreement with respect to any Partnership items (within the meaning of Section 6231(a)(3) of the Code)) shall notify the other Partners of such settlement agreement and its terms within thirty (30) calendar days from the date of settlement.

(4)     The Tax Matters Partner agrees that it will choose the United States Tax Court for litigation of all tax issues involving the Partnership, unless the Tax Matters Partner obtains the Consent of the ILP or the SLP to litigate in another forum.

(5)     The Tax Matters Partner shall keep the Limited Partners advised of any dispute the Partnership may have with any federal, state or local taxing authority (a "**Tax Dispute**"), and shall afford the Limited Partners the opportunity to participate directly in the negotiation of the Tax Dispute, to the extent permitted by law and shall not settle a Tax Dispute without the Consent of the SLP.  If, at any time, the Limited Partners desire to accept a settlement offer or other proposed resolution of a Tax Dispute, and the General Partner does not, then the Limited Partners shall either (i) permit the General Partner to continue protesting the adjustment at issue in the Tax Dispute; or (ii) advise the General Partner that the Limited Partners elect to resolve the Tax Dispute as proposed by the taxing authority, in which case the General Partner shall facilitate the resolution of the Tax Dispute favored by the Limited Partners; provided, if the Limited Partners elect this clause (ii), the General Partner shall resolve such Tax Dispute or may continue protesting the adjustment at issue in the Tax Dispute if the General Partner has a reasonable basis to do so and only after the General Partner deposits in an account at PNC Bank, National Association (which account shall be subject to a pledge agreement and account control agreement in favor of the SLP) an amount reasonably determined by the SLP which is sufficient to resolve the Tax Dispute as favored by the Limited Partners and cover additional costs and/or damages that may occur from the continued protest.  Upon a resolution of such Tax Dispute amounts in the reserve shall first be applied to satisfy obligations of the Tax Dispute, and to the extent obligations of the Tax Dispute are in excess of the reserve amount the General Partner shall pay all such amounts to the Partnership as damages for breach of warranty, provided if there is excess amounts in such reserve after resolution and satisfaction of the Tax Dispute as confirmed in writing by the SLP, such amounts shall be returned to the General Partner.  Legal fees incurred in connection with any Tax Dispute shall be paid by the Partnership.

(6)     If an Event of Withdrawal occurs with respect to the General Partner designated as the Tax Matters Partner, the Partnership shall, subject to the requirements of Section 6.10(b), designate a successor Tax Matters Partner in accordance with Treasury Regulation Section 301.6231(a)(7)-1 or any successor Regulation.  The Partnership shall notify the Internal Revenue Service of the designation of a successor Tax Matters Partner for such year as well as for all prior years that the withdrawn General Partner was serving as Tax Matters Partner.  In addition, at any time the SLP or an Affiliate thereof becomes a General Partner of the Partnership, the Partnership shall designate the SLP or its Affiliate as the successor Tax Matters Partner in accordance with the Treasury Regulation Section 301.6231(a)(7)-1 or any successor Regulation.  The Partnership shall then notify the Internal Revenue Service of the designation of the successor Tax Matters Partner for such year as well as for all prior years that neither the SLP nor an Affiliate thereof was serving as Tax Matters Partner.

(7)     The provisions of this Section 6.10 shall survive the termination of the Partnership or the termination of any Partner's interest in the Partnership and shall remain binding on the Partners for the period of time necessary to resolve with the Internal Revenue Service or the United States Department of the Treasury any and all matters regarding the United States federal income taxation of the Partnership.

6.11.   Property Manager.

(a)     The Partnership shall enter into a Property Management Agreement with the Property Manager pursuant to which the Property Manager will manage, operate and maintain the Project on a day-to-day basis and rent the apartment units in the Project in compliance with all of the regulations, requirements and restrictions of the Lender, the Agency and any other regulatory agency.  The Property Manager shall perform the services set forth in the Property Management Agreement and in consideration therefor the Partnership shall agree to pay to the Property Manager a monthly management fee in an amount not to exceed 2.72% of gross rents collected for the preceding month, as approved by HUD.  Any increase in said fee will require the Consent of the SLP, as well as the consent of any Lender and Agency, whose consent shall be required.  The General Partner and Property Manager hereby agree and acknowledge that the Partnership's budgeted line item in any year for "management fee"

47

4837-4545-8969.4

PLAINTIFFS_00008507

shall not be increased without the prior written Consent of the SLP.  In addition, in the event the Property Manager is an Affiliate of the General Partner, Developer or Guarantor, the Property Manager agrees to defer its fee and payment of any operating expenses (including, but not limited to, administrative expenses, salaries, fees expenses, reimbursement of costs or allocation of overhead) of the Property Manager and/or any Affiliate thereof to the extent necessary for the Partnership to prevent either (i) the occurrence of an Operating Deficit or (ii) a default under any Permitted Loan.  Such deferral of payment in accordance with the preceding sentence shall not be taken into account for purposes of any limit or cap established in Section 6.5(d).

(b)     The Property Manager shall submit to the Partners the necessary periodic reports with respect to the operations of the Project, as described in Section 10.7.  The Property Manager shall comply with all Environmental Laws pertaining to lead-based paint, including, but not limited to, the regular maintenance, inspection, risk assessment, remediation and notice to tenants.  The Property Manager further agrees to implement regular property management maintenance, inspection, risk assessment, and remediation efforts to address moisture and/or mold issues occurring with respect to the Project or any dwelling unit.  Each tenant's lease shall contain an affirmative covenant on the part of the tenant to report moisture, mold and/or leaks to the Property Manager and the Property Manager shall promptly address and remediate any such issues.

(c)     The Property Management Agreement shall be for a one (1) year term (which may include automatic renewals) and shall be terminable upon thirty (30) days' notice from the General Partner to the Property Manager without cause, and shall also be terminated immediately at the request of the SLP upon the occurrence of any of the following.

(1)     an Event of Bankruptcy with respect to the Property Manager;

(2)     the Property Manager shall commit misconduct or negligence in its conduct of its duties and obligations as the Property Manager;

(3)     the Property Manager is cited by any Lender or Agency for a violation or alleged violation of any applicable rules, regulations, covenant or requirements, including, but not limited to, noncompliance with the Minimum Set-Aside Test, the Rent Restriction Test, the Agency Set-Aside Test or any other Tax Credit-related provision and such violation is not cured within any applicable cure or grace period;

(4)     the Partnership has not achieved by the one (1) year anniversary of Final Construction Completion monthly Breakeven Operations for a three (3) consecutive month period or thereafter the Project fails to maintain Breakeven Operations on a monthly basis unless the General Partner and/or Guarantor is otherwise advancing funds to pay Operating Deficits;

(5)     the Property Manager fails to submit to the ILP or the SLP any periodic reports required under Sections 10.7(b), 10.7(c)(1), 10.7(c)(2), 10.7(c)(3) and 10.10 within the time periods required for two (2) consecutive time periods for each applicable report and the SLP has given notice to the Property Manager and the General Partner in accordance with Section 10.11;

(6)     the Property Manager leases a unit to a tenant who does not meet the income limitations under the Minimum Set-Aside Test or Agency Set-Aside Test, as applicable, or charges rents in excess of allowable rents for such units unless the foregoing relates to tenant fraud and the Property Manager is diligently working to correct the same;

(7)     if the Property Manager is a General Partner or an Affiliate of any General Partner or the Developer, the Project shall be subject to a substantial building, fire or safety code violation which shall not have been cured within six (6) months after notice from the applicable agency, other than with respect to safety code violations which must be cured within thirty (30) days of any such notice;

(8)     if the Property Manager is a General Partner or an Affiliate of any General Partner and an Event of Default has occurred pursuant to Section 7.7 which is not cured within any applicable cure or grace period,

48

4837-4545-8969.4

or if the Property Manager is the Developer or an Affiliate of the Developer and the Development Agreement is terminated by the Partnership; or

(9)     if the Property Manager is an Affiliate of the General Partner and there is any change in the identity or control of any General Partner.

(d)     The selection or appointment of the Property Manager, or a replacement or successor thereto, shall be subject to the Consent of the SLP.  In the event the SLP and the General Partner cannot mutually agree to a successor or replacement Property Manager, the General Partner shall cause the Partnership to appoint the Property Manager selected by the SLP.  The Partnership shall not enter into any future management arrangement unless such arrangement is terminable without penalty upon the occurrence of the events described in this Section 6.11.

(e)     Any personnel to be employed in the management of the Project will be employees of the Property Manager, and not the Partnership, and will be hired, paid, supervised and discharged by the Property Manager.

(f)     The terms of the Property Management Agreement and any modifications or amendments thereto (including any extension of the term) shall be subject to the prior Consent of the SLP.

(g)     The Property Manager agrees that if it becomes subject to an Event of Bankruptcy that it will not oppose the General Partner's proceedings in bankruptcy court to accomplish a termination of the Property Management Agreement.

(h)     Upon 24 hours prior notice by the ILP, the SLP or its agents, the Property Manager shall provide access to the Project to the requesting Partner or its agent in order to make a physical inspection of the exterior, the common areas and all units in the Project.  Such inspections shall take place during normal business hours unless otherwise agreed to between the SLP and the Property Manager be generally conducted on an annual basis and shall include the right to review the operating, maintenance and tenant records, as well as an interview of on-site staff and their supervisors.

(i)     Upon written notice from the ILP and/or SLP that an Event of Default has occurred under the Partnership Agreement and the election by the Limited Partners to exercise the rights set forth in Section 7.7(g), the Property Manager shall comply with the instructions from the SLP regarding all Project accounts, including deposits and withdrawals from such accounts.

In the event of any conflict between the provisions of the Property Management Agreement and this Agreement, the provisions of this Agreement shall govern.  The General Partner shall either (i) cause the provisions of this Section 6.11 to be included in the Property Management Agreement or (ii) cause the Property Manager to acknowledge the provisions of this Section 6.11 in writing in a form satisfactory to the SLP.

(j)     For purposes of this Section 6.11 only, each General Partner hereby grants to the SLP an irrevocable (to the extent permitted by applicable law) power of attorney coupled with an interest to take any action, including the right to cause the Partnership to terminate the Property Management Agreement with the Property Manager and to execute and deliver any and all documents and instruments on behalf of such General Partner and the Partnership as the SLP may deem to be necessary or appropriate in order to effectuate the provisions of this Section 6.11.  The SLP agrees to refrain from exercising such power of attorney until the earlier of an Event of Default or the failure by the General Partner to terminate the Property Manager as provided in this Section 6.11.

6.12.   <u>Transactions With Lenders, Agencies and Affiliates of the SLP or the ILP</u>.  The Partnership may secure loans, credit facilities and financial services from PNC Bank, National Association ("**PNC Bank**") and other Affiliates of the SLP, the partners of the ILP or their respective Affiliates.  The General Partner acknowledges that its decisions to cause the Partnership to deal with PNC Bank, other Affiliates of the SLP, the partners of the ILP or their respective Affiliates shall be made based upon the General Partner's good faith determination that such dealings are in the best interest of the Partnership and in accordance with the General Partner's rights and powers

49

4837-4545-8969.4

CONFIDENTIAL

under the terms of this Agreement.  The General Partner and the Developer each acknowledge and agree that the SLP, the ILP and their respective partners and Affiliates shall have no liability to the Partnership, the General Partner, or the Developer, as a result of any such loans, credit facilities, and other financial services and that none of the obligations of the General Partner, the Partnership, or the Developer to the SLP, the ILP and their respective partners and Affiliates shall be excused, limited or otherwise adversely affected as a result of any such loans, credit facilities or other financial services.  The General Partner, the Developer and their Affiliates each further acknowledge and expressly agree that the SLP, the ILP, PNC Bank and their respective partners and Affiliates may (i) share or disclose information with or to PNC Bank and other Affiliates of the SLP, the ILP, its respective partners and their Affiliates, investors, proposed investors, their agents and representatives, regulators and Agencies, and (ii) discuss matters related to the Project and Partnership and share or disclose information with Lenders, parties to Project Documents, prospective lenders, the Tax Credit Agency and other regulatory agencies, and any such disclosures and discussions are expressly permitted and agreed to and shall not constitute a breach of any duty or obligation, fiduciary or otherwise, owed to the Partnership, the General Partner, the Developer, or any Affiliate thereof by the SLP, the ILP, their respective partners and Affiliates, or PNC Bank.

6.13.   Applied Amounts.  Any amounts due by the General Partner hereunder which are not paid within fifteen (15) business days after demand is made therefor shall bear simple interest, from the due date therefor through the date of payment (including payment through application of Applied Amounts as set forth herein), equal to the lesser of (i) the Prime Rate plus 4% or (ii) the maximum permissible interest rate.  In the event that the General Partner shall fail to make any payment required pursuant to this Agreement, within fifteen (15) business days after demand is made therefor, then, in addition to any other remedies at law or in equity which may be available to the ILP, the General Partner shall be obligated to cause the Partnership to utilize amounts payable to the General Partner, the Developer and the Guarantor and their respective Affiliates under Section 4.2, Section 4.5, Section 6.8, Section 6.11, the Development Agreement, the Affiliate Loan, the Property Management Agreement (if the Property Manager is an Affiliate of the General Partner, the Guarantor or the Developer) and the other Project Documents (the "**Applied Amounts**") to meet the obligations of the General Partner.  Such utilization of Applied Amounts constitutes payment and satisfaction of the corresponding amounts with the proceeds thereof being applied to such obligations of the General Partner, and the obligation of the Partnership to make such payments is deemed satisfied to the extent thereof.  Each of the General Partner, the Developer, the Guarantor and the Property Manager if an Affiliate of the General Partner, the Guarantor or the Developer covenant and agree that the General Partner, the Guarantor, the Developer, the Property Manager, if applicable, and all Affiliates of the General Partner, the Guarantor and the Developer will recognize as income any Applied Amounts for federal and state income tax purposes.  Notwithstanding the foregoing, failure to make any payment required under this Agreement shall be an Event of Default, the provisions for collecting such outstanding amounts through the mechanism of Applied Amounts notwithstanding.

## ARTICLE VII

## RIGHTS AND LIMITATIONS OF LIMITED PARTNERS

7.1.   Limited Assessment.  Except as may otherwise be provided under applicable law, the Limited Partners shall not be bound by, or personally liable for, the expenses, liabilities or obligations of the Partnership and no Limited Partner shall be required to make any Capital Contributions (including if such Limited Partner becomes a general partner pursuant to the terms of this Agreement) other than the Capital Contributions required to be made by such Limited Partner pursuant to this Agreement.  The Partnership shall indemnify and hold harmless the SLP and the ILP, and their Affiliates, employees and representatives, from and against all losses, liabilities, damages, judgments, settlements and expenses (including legal fees) incurred as a result of actions against such Limited Partners in their capacity as partners of the Partnership.  The indemnification provided herein is in addition to and not a limit on any other right of contribution or indemnity by the Partnership or General Partner which otherwise might exist in favor of any of the Limited Partners.

7.2.   No Right To Manage; Right To Inspect.  Except as specifically provided in this Agreement, no Limited Partner shall take part in, or interfere in any manner with, the management, control, conduct or operation of the Partnership, or have any right, power or authority to act for or bind the Partnership.  Notwithstanding the foregoing limitation, the Limited Partners and their respective employees, agents and consultants shall have the right upon 24 hours prior notice to the General Partner to access all of the books and records of the Partnership and the

50

CONFIDENTIAL

PLAINTIFFS_00008510

Project, and physical access to the Project including all buildings and improvements thereof. These rights may be exercised by the Limited Partners at any time, though the Limited Partners shall endeavor to conduct such inquiries and inspections on weekdays between 9:00 a.m. and 5:00 p.m. Furthermore, the Limited Partners shall have the right, without the Consent of the General Partner, to contact, make inquiries of, and receive information from any third party directly or indirectly engaged by, or which have contracted with, or which are considering contracting with or becoming engaged by, the Partnership, or the General Partner or Property Manager on behalf of the Partnership, including, without limitation, any Lender, the Agency or Property Manager. All physical inspections of the Project and inquiries made to third parties by the Limited Partners in accordance with this paragraph shall not constitute a breach of any fiduciary or other duty that may be owed by the Limited Partners to the Partnership or to the General Partner. The General Partner shall cooperate with any request made to a third party and, if requested, shall aid the Limited Partners in identifying, contacting and obtaining any information from a third party in accordance with this Section 7.2.

      7.3.    Priority. No member of any class of Limited Partners shall have priority over any other member of such class of Limited Partners, either as to the return of Capital Contributions or as to Net Profit, Net Loss, Net Profit From Sale, Net Loss From Sale or Distributions, unless otherwise specifically provided herein.

      7.4.    Death, Disability, etc. of a Limited Partner. The Partnership shall not be dissolved by the death, insanity, adjudication of incompetency, bankruptcy, insolvency or withdrawal of any Limited Partner; by the assignment by any Limited Partner of its Partnership interest; or by the admission of a Substitute Limited Partner or a Supplemental Limited Partner.

      7.5.    Meetings. A meeting of the Partners may be called by any Partner. Meetings of Partners may be held in such place mutually agreed upon by the Partners. Meetings may be held via teleconference.

      7.6.    Proposal and Adoption of Amendments Generally.

      (a)    Amendments to this Agreement to reflect the addition or substitution of a Limited Partner, the designation of an additional or successor General Partner, or the removal or withdrawal of a General Partner shall be made at the time and in the manner otherwise provided herein. Any other amendments to this Agreement may be proposed in the following manner:

      (1)    By the General Partner, who shall give to the Limited Partners via written notice the text of the proposed amendment, and if requested by the SLP, other information to evaluate the terms of the amendment which may include an opinion of counsel to address any state law or federal tax matters associated with such proposed amendment; or

      (2)    By either the ILP or SLP, who shall submit to the General Partner via written notice the text of the proposed amendment, and if requested by the General Partner, other information to evaluate the terms of the amendment which may include an opinion of counsel to address any state law or federal tax matters associated with such proposed amendment.

      (b)    Amendments proposed pursuant to Section 7.6(a)(1) above, subject to the provisions of Section 7.7, shall be adopted if the Consent of both the ILP and the SLP is obtained thereto. Amendments proposed pursuant to Section 7.6(a)(2) above shall be adopted if approved by the General Partner, which approval shall be deemed to have been obtained if, after thirty (30) days from the date the proposal is received by the General Partner, neither the SLP nor the ILP has received via written notice notification of the General Partner's objection to the proposal. Each General Partner hereby grants to the SLP an irrevocable (to the extent permitted by applicable law) power of attorney coupled with an interest to execute and deliver any amendment to this Agreement which is proposed pursuant to Section 7.6(a)(2) and which the General Partner is deemed to have approved pursuant to the immediately preceding sentence. Notwithstanding anything to the contrary contained herein, the Partners agree not to amend this Agreement without the prior written consent of the First Mortgage Lender prior to Mortgage Loan Commencement, if the effect of such amendment is to affect the Capital Contributions of the ILP or the amount, timing or conditions to the funding of such Capital Contribution Installments; provided however, that the application of the provisions of Section 3.5 in accordance with the terms thereof shall not be deemed an amendment to this Agreement, which shall not be unreasonably withheld.

4837-4545-8969.4

CONFIDENTIAL      PLAINTIFFS_00008511

(c)     The General Partner shall, within a reasonable time after the adoption of any amendment to this Agreement, make any official filings, recordings and publications required or desirable to reflect such amendment.

(d)     Any amendment to admit a Substitute Limited Partner shall be adopted if compliance with the conditions specified in Section 8.2 shall have been satisfactorily achieved by the Person to be substituted or added, and, if a Limited Partner is to be substituted, by the assigning Limited Partner or its attorney-in-fact.

(e)     Amendments to reflect the designation of an additional or successor General Partner shall be adopted if the conditions specified in Section 7.7 and/or Article IX shall have been satisfactorily achieved and the amendment shall have been signed by such additional or successor General Partner.

(f)     Subject to Section 6.3, amendments for the removal or withdrawal of a General Partner, if the business of the Partnership is continued, shall be adopted if the conditions specified in Section 7.7 and/or Article IX, as applicable, shall have been satisfactorily achieved and the amendment shall have been signed by the successor General Partner and/or the SLP General Partner.

7.7.    <u>Special Rights of the Limited Partners</u>.  Upon the occurrence of an Event of Default (as defined below) that has not been timely cured as permitted herein, the SLP shall have the right, but not the obligation, to (i) cause itself or its Affiliate to be admitted to the Partnership as an additional General Partner as provided in Section 7.7(b), and/or (ii) remove each General Partner as provided in Section 7.7(c).  Each General Partner hereby makes, constitutes, and appoints the SLP, with full power of substitution, the true and lawful attorney of, and in the name, place and stead of, such Partner, with power from time to time to take all action and do all things necessary or appropriate to implement and carry out the provisions of this Section 7.7.  Such appointment shall constitute a power of attorney coupled with an interest, shall be irrevocable, shall survive the death, incompetence or dissolution of any Partner and shall be binding on any assignee of all or any portion of the Partnership interest of any Partner.  Each Partner agrees that the SLP or any Person it causes to be admitted as a General Partner pursuant to Section 7.7(b) and/or Section 7.7(c) may withdraw as a General Partner (while retaining its rights as the SLP, if applicable) without the consent of any Partner other than the ILP and SLP.

Notwithstanding anything to the contrary in this or any other agreement, neither the SLP nor its designee (in their respective capacities as an additional or replacement General Partner) shall assume or otherwise become liable for any of the removed General Partner's payment or indemnification obligations to the Partnership and its Partners, Lenders, or other creditors, or any of the representations, warranties, duties, covenants or obligations attributed to the General Partner in this Agreement unless specifically agreed to in writing.  Nothing in this Section 7.7 shall reduce or otherwise limit the rights, remedies or other actions available to the Partnership, the ILP and/or the SLP against the removed General Partner or the Guarantor.

(a)     An "**Event of Default**" shall be the occurrence at any time of any one or more of the following events unless expressly waived in writing by the SLP in its sole discretion;

(1)     20% or more of the anticipated Low Income Units in the Project shall not be in compliance with Section 42 of the Code;

(2)     The Partnership fails to achieve Final Construction Completion by the Completion Date or fails to achieve Placement in Service by December 31, 2015;

(3)     An Event of Bankruptcy occurs with respect to any General Partner, the Developer or Guarantor or an Event of Withdrawal occurs with respect to any General Partner;

(4)     A General Partner, the Guarantor or the Developer or any Affiliate thereof has, in connection with the Partnership or the Project, performed an act or failed to perform any act constituting fraud, misconduct, negligence (unless such negligence is cured within fifteen (15) business days of notice thereof), a violation of law, a breach of fiduciary duty (unless such violation or breach (except for deceit or dishonesty) is cured

4837-4545-8969.4

CONFIDENTIAL

PLAINTIFFS_00008512

within fifteen (15) business days of notice thereof), misappropriation or comingling of funds, dishonesty or misrepresentation or nondisclosure of material facts;

(5)     Any event with respect to which the ILP and/or the SLP become entitled to exercise any right or remedy under Article V;

(6)     Any default or breach by a General Partner (whether in its capacity as a General Partner or in any other capacity), the Guarantor or the Developer and/or any of their Affiliates of any covenant, representation, warranty, duty or obligation under this Agreement, the Guaranty, or any Project Document which is not cured within any applicable notice or cure period;

(7)     Any default under any Permitted Loan is declared which is not cured within any applicable notice or cure period;

(8)     A failure of the General Partner to (i) enforce the terms of the Property Management Agreement and/or the Construction Contract within five (5) days of a request from the SLP, (ii) cause the Partnership to terminate the Property Manager as provided in Section 6.11 or (iii) cause the Partnership to terminate, upon the request of the SLP, the Project Architect or, as provided in Section 10.11, the Accountant;

(9)     Any violation or noncompliance by the Partnership, the General Partner, the Developer, the Guarantor and/or their respective Affiliates with any applicable law, statute, ordinance, code, rule, regulation, judgment, order, ruling, condition or other requirement of a statutory, regulatory, administrative, judicial or quasi-judicial nature or any other legal or governmental requirement of whatever kind or nature that has or is likely to have an adverse effect on the ILP, the SLP, the Tax Credit, the Project or the Partnership as the SLP may determine, and such violation or noncompliance is not (or is unlikely to be) cured in all respects within the earlier of fifteen (15) business days or such time period allowable under the applicable laws or regulations;

(10)     The failure to obtain the Consent of the SLP and/or ILP where such Consent is required under the terms of this Agreement;

(11)     Any General Partner shall have conducted its own affairs or the affairs of the Partnership in such a manner as would (i) cause the termination of the Partnership for federal income tax purposes, or (ii) cause the Partnership to be treated as an association taxable as a corporation for federal income tax purposes;

(12)     Any (i) failure to maintain the net worth and liquidity covenants required pursuant to Section 6.5(n) and/or (ii) material adverse change in the financial condition of the General Partner, the Developer and/or the Guarantor;

(13)     The occurrence of a Reporting Default, unless the Reporting Default is cured in accordance with Section 10.11;

(14)     The criminal conviction of the General Partner, the Developer or the Guarantor or any Affiliate thereof for fraud or any felony; or

(15)     At any time after Stabilized Occupancy, Breakeven Operations is not attained during any six (6) month period, unless the General Partner and/or Guarantor is otherwise advancing funds to pay any Operating Deficits.

The SLP shall determine in its sole discretion whether any Event of Default has occurred and whether such default has been cured or is likely to be cured within any grace period allowed within this Agreement upon expiration of which the SLP may exercise its rights set forth in this Section 7.7.

With respect to any Event of Default set forth in Section 7.7(a)(1) and Sections 7.7(a)(5) through 7.7(a)(8), Section 7.7(a)(10) and Section 7.7(a)(12)  and to the extent that such default is capable of being cured, the General Partner shall have the greater of fifteen (15) business days or the cure period provided in any Project Document to

4837-4545-8969.4

CONFIDENTIAL

PLAINTIFFS_00008513

cure such default upon receipt of notice from the SLP or any party to a Project Document if the Event of Default pertains to a Project Document (all notice/cure periods to run concurrently). Any cure of any default by a Limited Partner whether by the acceleration of capital, advance of money, consent to release funds from reserves or otherwise shall not constitute a cure of any Event of Default, nor shall such actions on the part of the Limited Partners relieve any General Partner, Guarantor or Developer of its respective obligations under this Agreement, the Guaranty, or the Project Documents.

If an Event of Default is not cured within any applicable cure period or is not susceptible of being cured, then in addition to all of the other rights and remedies under this Agreement, including the right to remove a General Partner pursuant to this Section 7.7, the SLP shall have the right, but not the obligation, to terminate or assign without penalty all contracts or agreements entered into between the Partnership and any General Partner, the Developer or the Guarantor and/or their Affiliates who were engaged to provide services to the Partnership or the Project and each Partner hereby consents to any such action. If the foregoing provision is held to be invalid by any court of competent jurisdiction or if such terminated Persons seek recovery against the Partnership or the Limited Partners in connection with such termination, then the General Partner (excluding the SLP or its designee if it elects to become an additional or substitute General Partner) shall indemnify the Partnership and its Partners from such expenses or liabilities. All amounts then owing to the General Partner, the Developer and/or the Guarantor and/or their Affiliates at the time of termination or assignment shall automatically be assigned to the SLP without the necessity of any further action.

(b)     If, after an Event of Default that is not timely cured as set forth herein, the SLP elects to admit itself or its designee as an additional General Partner ("**SLP General Partner**"), such admission shall occur automatically and without further action by any Partner upon the giving of notice thereof by the SLP to the Partners, and each of the Partners hereby agrees and consents in advance to the foregoing admission, including the designation of the SLP General Partner as Partnership Manager and Tax Matters Partner pursuant to Section 6.10. Upon admission of the SLP General Partner it shall have all power and authority of the General Partner under this Agreement (including, without limitation, all right to deposit to, withdraw from and otherwise control all Partnership bank accounts) and no other General Partner shall have any such right. Notwithstanding its admission to the Partnership, the SLP General Partner shall not undertake or assume, or be deemed to have undertaken or assumed, any obligations or liabilities imposed on the General Partner, the Developer and/or the Guarantor pursuant to this Agreement, the Guaranty, the Development Agreement or the Project Documents, and/or those which arise in any other manner with respect to the Partnership or the Partners.

The economic rights interest of the SLP as the SLP shall continue unaffected by the new status of the SLP or its designee as a General Partner.

(c)     If, after an Event of Default that is not timely cured as set forth herein, the SLP elects to remove a General Partner, then such removal shall occur automatically and without further action by any Partner upon the giving of notice thereof by the SLP to the Partners. Upon the removal of the General Partner, each of the following shall occur automatically:

(1)     The removed General Partner's Partnership interest shall be sold to the SLP or its designee for an amount equal to the lesser of (i) $100, or (ii) the amount of the removed General Partner's Capital Account, less any damages incurred by the Partnership in connection with the General Partner's removal;

(2)     Any and all rights and powers of the removed General Partner under this Agreement and the Project Documents shall transfer automatically to the SLP or its designee, including the designation of the SLP or its designee as Partnership Manager and Tax Matters Partner pursuant to Section 6.10;

(3)     The removed General Partner shall pay any and all damages suffered by the Partnership relating to each Event of Default; and

(4)     Any and all rights and claims the General Partner or any of its Affiliates may have against the Partnership for fees, repayment of any loan (specifically excluding the Seller Loan and GP Predevelopment Loan), and other payments owed by the Partnership shall terminate, inclusive of those payments, Distributions and fees that have been assigned pursuant to the terms of this Agreement.

4837-4545-8969.4

CONFIDENTIAL                                      PLAINTIFFS_00008514

(d)     All of the General Partner's and Guarantor's obligations and liabilities under this Agreement (including all indemnification obligations) shall survive such General Partner's whole or partial loss of powers, removal or withdrawal from the Partnership for any reason whatsoever, whether under this Section 7.7 or otherwise, and such General Partner shall not be excused to any extent from the payment or performance thereof, except that the removed General Partner shall not be liable for any liabilities and obligations first arising after the effective date of such removal or withdrawal unless such liabilities or obligations are:  (i) a result of an event occurring before such removal or withdrawal or the event giving rise to such removal or withdrawal; (ii) a reasonable consequence of such removal or withdrawal; (iii) a contractual obligation entered into prior to the effective date of such withdrawal or removal even though the time for performance or satisfaction of such obligation may not have yet occurred (including, without limitation, making capital contributions to enable the Partnership to pay Affiliate Loans or Deferred Development Fee); and/or (iv) attributable in any part to events occurring prior to the effective date of such withdrawal or removal.  The General Partner shall fully indemnify and hold harmless the Partnership, the ILP, and the SLP (and its designee in regards to this Section 7.7, if applicable) from any and all losses, judgments, liabilities, expenses and amounts paid in settlement of any claims sustained, to the extent that any such liabilities and expenses relate to, arise from, or are attributable to claims, actions, omissions or events occurring in whole or in part prior to the date of the whole or partial loss of powers, removal or withdrawal from the Partnership for any reason whatsoever, whether under this Section 7.7 or otherwise.

(e)     Effective prior to the date of the removal or withdrawal of the General Partner, such General Partner shall be obligated to make a Capital Contribution to the Partnership in the amount of the then outstanding balance of any Affiliate Loan with said Capital Contribution to be paid by the Partnership (subject to the rights of other creditors of the Partnership and the application of Applied Amounts pursuant to Section 6.13) to the satisfaction of the Affiliate Loan; provided, however, that if (1) such loans are secured by a mortgage and (2) Tax Counsel concludes that such loans "should" or "will" be included in the computation of the ILP's minimum gain, then the General Partner shall not be obligated to make a Capital Contribution immediately prior to the effective date of the removal to satisfy the outstanding balance of the Affiliate Loan but the General Partner hereby acknowledges and agrees that any Affiliate Loan shall, in the sole and absolute discretion of the SLP, be subject to offset by any amounts owed by such removed General Partner, Developer, or Guarantor or Affiliates thereof to the Partnership.  The balance, if any, remaining to be paid with respect to an Affiliate Loan shall be subordinate in all respect to amounts needed to induce a replacement General Partner to assume the role thereof and the distribution of Net Cash Flow and Net Cash Proceeds shall be adjusted accordingly to accomplish such purpose.

(f)     The parties hereto acknowledge and agree that this Agreement is a contract under which the SLP and the ILP are excused from accepting performance from a General Partner, the Developer, and/or the Guarantor (or from their respective assignees, receivers or trustees) in the event that the General Partner, Developer, and/or Guarantor is granted relief under the Bankruptcy Code.  The parties agree that the effect of Section 7.7(b) and Section 7.7(c) is to make this Agreement subject to the exceptions to assumption and assignment of contracts set forth in Sections 365(c)(1) and 365(e)(2) of the Bankruptcy Code and the General Partner (i) shall not seek any assumption or assignment of this Agreement without the Consent of the SLP and the ILP; and (ii) will not oppose any application or motion to enforce the provisions of the foregoing Section of the Bankruptcy Code, even if the effect of such motion or application is to remove the General Partner from its position; provided, however, that such removal shall be pursuant to the provisions of this Section 7.7.

If removal of the General Partner is as a result of the occurrence of an Event of Bankruptcy, and, in the sole discretion of the SLP, the exercise of the rights and remedies under this Agreement would require permission of a bankruptcy court or other court of applicable jurisdiction, then the General Partner, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, agrees not to oppose any action that the SLP, or any other Partner acting with the approval of the SLP, may take to obtain relief from any automatic stay imposed by Section 362 of the Bankruptcy Code or other similar statute, law or rule under which the General Partner is provided relief from its creditors, in order to exercise the rights and remedies available under this Agreement.

In the event that the General Partner files a petition for relief under the Bankruptcy Code in a jurisdiction other than a venue agreed upon by the parties in Section 13.12, the SLP may seek from the bankruptcy court with jurisdiction over said petition a change of venue to a bankruptcy court (and division, if applicable) in a district

4837-4545-8969.4

CONFIDENTIAL

PLAINTIFFS_00008515

located in a venue set forth in Section 13.12, and each Partner and the Partnership hereby agree not to oppose or object to such application or motion.

(g)     Upon the occurrence of an Event of Default (or an event which, with the giving of notice or passage of time or both, would constitute an Event of Default), prior to exercising any other rights available to the SLP in this Agreement, the SLP may, but shall be under no obligation to (1) require that all Partnership and Project accounts be transferred into bank accounts held for the benefit of the Partnership which accounts shall require dual signatures for payment or transfer from all such accounts (one of which must be a representative of the SLP), (2) direct the Property Manager (or replacement or successor thereto) to deposit all income from the Partnership and the Project into the accounts described in the preceding clause (1) and/or (3) require the prior written Consent of the SLP to the payment or disbursement of any Partnership or Project funds.

(h)     Notwithstanding anything to the contrary contained herein, upon the removal or withdrawal of the General Partner, the Seller Loan and GP Predevelopment Loan shall not be transferred but shall be subject to offset as determined by the SLP.  In addition, notwithstanding anything in Section 4.2 or Section 4.5 herein, any payments toward the Seller Loan and GP Predevelopment Loan otherwise owed pursuant to Section 4.2(c) or Section 4.5(e) shall be subordinated and only paid immediately following payment of all amounts under Section 4.2(g) and/or Section 4.5(f), as applicable herein.  Furthermore, in the event the Net Cash Proceeds are insufficient to repay the Seller Loan and GP Predevelopment Loan upon a sale of the Project the balance of such loans shall be forgiven and, notwithstanding any provision to the contrary contained in this Agreement, the original General Partner and Guarantors jointly and severally agree to indemnify and hold the ILP harmless from the reduction in tax benefits and the income tax consequences attributable to any cancelation or forgiveness of such Partnership indebtedness and agree such obligation survives the removal/withdrawal of the General Partner notwithstanding anything to the contrary herein.

7.8.     <u>Extraordinary Limited Partner Expenses.</u>

(a)     Any and all costs and expenses incurred by or on behalf of the ILP and/or the SLP in connection with protecting and/or enforcing their respective rights and remedies against the Partnership, the General Partner, the Developer or the Guarantor or any Affiliate thereof with respect to this Agreement or any Project Document whether or not the General Partner is removed, withdrawn or otherwise, including, without limitation, attorneys' and/or other professionals' fees and expenses, shall be paid by the General Partner on demand whether or not a legal action is actually commenced.  In the event that it is ultimately determined by a court of competent jurisdiction that no basis exists for actions taken by the ILP and/or the SLP in connection with the exercise of its rights and remedies against the General Partner, the ILP and/or the SLP will not be entitled to be reimbursed for expenses under this Section 7.8 and they hereby agree to repay all amounts paid by the General Partner pursuant to this Section 7.8 together with costs and expenses incurred by the General Partner relating to the same.

(b)     The Partnership shall pay (or the General Partner shall pay if the Partnership has insufficient funds), on demand, any and all costs and expenses incurred by or on behalf of the Limited Partners, including reasonable attorneys' fees (which may include a new, updated, or revised tax opinion), in connection with any of the following: (1) Project or Partnership financing that is documented or otherwise closed anytime after the Closing Date, including the conversion of any forward-committed permanent loan that is made by a Lender other than PNC Bank, National Association and its Affiliates; (2) any Project refinancing or amendment of any Permitted Loan; or (3) any amendments to this Agreement or such other amendments to the Project Documents requiring the Consent of the Limited Partners (but excluding those relating to a transfer of the interest of the ILP, or such other amendments required or requested for the benefit of the SLP or ILP).  In addition, the Partnership shall pay (or the General Partner shall pay if the Partnership has insufficient funds), on demand, an administrative fee of $2,000 payable to the SLP in connection with the foregoing except for financing with respect to (1) which was contemplated on the Closing Date.

7.9.     <u>Limited Partners as Lenders.</u>  Subject to provisions of this Agreement with respect to related party loans, a limited partner of the ILP, including, without limitation, a bank, insurance company, or other financial institution (such limited partner being referred to, for purposes of this Section 7.9 only, as a "**Mortgagee**"), at any time may make, guarantee, own, acquire, or otherwise credit enhance, in whole or in part, a loan secured by a mortgage, deed of trust, trust deed, or other security instrument encumbering the Project owned by the Partnership

56

CONFIDENTIAL

PLAINTIFFS_00008516

(for purposes of this Section 7.9 only, any such loan being referred to as a "**Mortgage Loan**").   Under no circumstances will a Mortgagee be considered to be acting on behalf or as an agent or the alter ego of such ILP.   A Mortgagee may take any actions that the Mortgagee, in its discretion, determines to be advisable in connection with a Mortgage Loan (including in connection with the enforcement of a Mortgage Loan).   By acquiring an interest in the Partnership, each Partner acknowledges that to the extent permitted by applicable law no Mortgagee owes the Partnership or any Partner any fiduciary duty or other duty or obligation whatsoever by virtue of such Mortgagee being a limited partner in the ILP.   Neither the Partnership nor any Partner will make any claim against a Mortgagee, or against the ILP in which the Mortgagee is a limited partner, relating to a Mortgage Loan and alleging any breach of any fiduciary duty, duty of care, or other duty whatsoever to the Partnership or to any Partner based in any way upon the Mortgagee's status as a limited partner of the ILP.

7.10.   Sale; Purchase Option and Right of First Refusal.

(a)   Purchase Option.   For a period of twelve (12) months immediately following the end of the Compliance Period for the last building in the Project (the "**Option Period**"), the General Partner (if it is then serving as general partner of the Partnership) will have an option to purchase the Project (the "**Asset Option**") or the Limited Partners' entire interest in the Partnership (the "**Interest Option**").   Notwithstanding the foregoing, the Option Period with respect to the Interest Option shall begin six (6) months immediately following the end of the Credit Period for the last building in the Project; provided, however, to the extent the Interest Option is exercised prior to the expiration of the Compliance Period, the General Partner shall provide a bond or collateral in favor of the ILP and/or SLP in an amount covering 100% of the recapture risk, adjusted annually, in form and substance satisfactory to the ILP and SLP.

(1)   The purchase price of the Project (the "**Project Purchase Price**") if acquired pursuant to the Asset Option shall be the greater of: (A) the fair market value of the Project, and (B) the sum of one dollar ($1.00) plus (i) the amount of the outstanding debt secured by deeds of trust or mortgages on the Project and any other obligations of the Partnership, including, but not limited to, any loans from any Partner or any of their affiliates plus (ii) an amount sufficient to enable the Partnership to distribute cash to the Limited Partners pursuant to the liquidation provisions of the Partnership Agreement in an amount equal to the sum of (a) the amount of Exit Taxes payable by the Limited Partners in connection with the sale and receipt of any corresponding cash and (b) any amount owed to the Limited Partners under any provision of this Agreement (including all Adjustment Amounts owed under Section 3.5, inclusive of amounts payable only pursuant to Article IV of this Agreement), to the extent that such amounts are not otherwise paid from the proceeds of (A).   The Project Purchase Price shall be payable by the General Partner by taking the Project subject to the existing debt (but only to the extent permitted by all Lenders), and if not permitted by any Lender, or if the purchase price exceeds such debt, the Project Purchase Price (or the balance thereof) shall be payable in readily available funds which shall be distributed pursuant to the liquidation provisions of the Partnership Agreement.

(2)   The purchase price of the Limited Partners' Partnership interest (the "**Interest Purchase Price**") if acquired pursuant to the Interest Option shall be the sum of: (A) the fair market value of the Limited Partners' Partnership interest and (B) the amount of Exit Taxes payable by the Limited Partners in connection with the sale and receipt of any corresponding cash and any amount owed to the Limited Partners under any provision of this Agreement (including all credit adjustments owed under Section 3.5, inclusive of amounts payable only pursuant to Article IV of this Agreement), to the extent such amounts are not otherwise paid from proceeds of (A). The Interest Purchase Price shall be paid to the Limited Partners at closing in cash, unless otherwise mutually agreed to by the parties hereto.   The fair market value pursuant to (A) above shall be the amount the Limited Partners would receive in liquidation of the Partnership if the Project were sold for fair market value on such date.

(3)   The fair market value of the Project pursuant to Section 7.10(a)(1) and/or Section 7.10(a)(2) shall be determined by mutual agreement of the parties or, in the absence of such agreement, as follows: the General Partner and the Limited Partners shall select a mutually acceptable appraiser who shall determine the fair market value of the Project.   In the event the parties are unable to agree upon an appraiser, the General Partner and the Limited Partners shall each select an appraiser.   If the difference between the two appraisals is within 10% of the lower of the two appraisals, the fair market value shall be the average of the two appraisals.   If the difference between the two appraisals is greater than 10% of the lower of the two appraisals, then the two appraisers shall jointly select a third appraiser.   If the two appraisers are unable jointly to select a third appraiser, either the General

57

4837-4545-8969.4