Partner or the Limited Partners may, upon written notice to the other, request that the appointment be made by the American Arbitration Association or its designee. If the third appraisal is less than either of the first two, then fair market value shall be the average of the two lowest appraisals. If the third appraisal is greater than the first two, then fair market value shall be the average of the two highest appraisals. If the third appraisal falls between the previous two appraisals, the fair market value shall be the value established by the third appraisal.

(4)     The General Partner and the Limited Partners shall share the cost equally of any appraiser jointly selected or shall pay the costs of the appraiser they each select and shall share the cost equally of any third appraiser. Any appraiser selected pursuant to this section shall be an MAI appraiser with at least five (5) years of experience in valuing income-restricted multifamily rental property. In determining the fair market value of the Project, the appraisal shall take into account (among other factors) any title restrictions and the requirement that the Project remain dedicated for the use of low income households pursuant to any restrictions under any loan agreements or regulatory agreements and shall additionally take into account any bond or collateral provided by the General Partner to the ILP and/or SLP for recapture risk, if any, as set forth in Section 7.10(a) above.

(5)     The closing pursuant to the purchase option shall occur within ninety (90) days after the Limited Partners' receipt of the General Partner's written notice of exercise of a specified option (such closing date may occur after the Option Period, provided that the Limited Partners receive such notice on or before the last day of the Option Period). As a condition to closing, the General Partner shall remain the General Partner and obtain all consents from any lessor, governmental agency and holder of a mortgage or deed of trust on the Project, or other person or entity whose consent to a sale is required. Except as provided above with respect to appraisal costs, all costs associated with the sale of the Project (or the Limited Partners' Partnership Interest) to the General Partner, including, without limitation, any transfer taxes, title policy premiums, recordation costs and costs related to the assumption of the underlying loans, shall be shared by the General Partner and the Partnership in accord with local custom. The Partners acknowledge that notwithstanding anything in this Agreement to the contrary, any sale of the Project will be subject to the terms of the Extended Low Income Housing Use Commitment and any rules, policies or procedures promulgated by the Tax Credit Agency relating thereto, including but not limited to any requirements for a right of first refusal to a qualified non-profit organization.

(b)     Limited Partner Right To Require Sale.

(1)     The General Partner shall be obligated to consider any reasonable offer by the Limited Partners to purchase the Project, or any reasonable third-party offer communicated to the Limited Partners or to resyndicate the Limited Partners' interests in the Partnership. In addition, at any time after the end of the Option Period, the SLP may, at its sole discretion, require the General Partner to commence marketing the Project with a broker selected by the General Partner approved by the SLP. If the Partnership, General Partner or SLP receives a bona fide written offer to purchase the Project which the Limited Partners desire to have the Partnership accept, then the SLP shall send notice to the General Partner that the SLP desires the Partnership to accept the offer. Within sixty (60) days of its receipt of any such notice, the General Partner must notify the SLP of the General Partner's decision either to accept such offer on behalf of the Partnership or to refuse such offer. If the General Partner elects to accept such offer, the General Partner shall be required to proceed promptly to close such transaction in accordance with the terms of the offer unless otherwise instructed by the SLP at any point prior to the closing of such transaction. If the General Partner refuses the offer, the General Partner shall be obligated to purchase all of the Limited Partners' interests in the Partnership within ninety (90) days for a purchase price equal to the amount of Net Cash Proceeds which the Limited Partners would have been entitled to receive pursuant to Section 4.5 hereof if the sale of the Project had been completed under the terms of the refused offer.

(2)     [Reserved].

(c)     Limited Partner Put. Notwithstanding anything to the contrary contained herein, the ILP and SLP shall have the right exercisable in their sole and absolute discretion to put their respective interests in the Partnership at any time following the end of the Credit Period to the General Partner or its designee for a price equal to the sum of the following: (i) one thousand and No/100ths Dollars ($1,000.00); (ii) the Limited Partners' costs and expenses incurred in connection with the transfer of their interests in the Partnership; and (iii) all amounts due and owing to the Limited Partners. Such transfer shall be made pursuant to an assignment and assumption agreement reasonably acceptable to the Limited Partners (which will address such matters as mutual release of the Partners and

58

4837-4545-8969.4

Guarantors (subject to ongoing obligations for recapture a set forth below)) and indemnity of the Limited Partners from and after the effective date of such assignment and assumption and, if during the Compliance Period, the continuation and ratification of the guarantees of the General Partner and Guarantors for Tax Credit recapture in accordance with Section 3.5 and certain ongoing compliance reporting obligations with respect to the Tax Credit.

       (d)    Special Considerations Applicable to Future Developments.  To the extent a General Partner or the Developer or any Affiliates thereof (the "**Proposed Developer**") plan to develop a low income housing tax credit project within three (3) miles of the Project, the ILP, or its designee, shall have the right of first refusal for thirty (30) days beginning on the date the ILP, or its designee, receives the bid package for such development with a tax credit award issued by the Agency to commit in writing to become the tax credit investment limited partner (or member) of such proposed project (with terms of such investment being consistent with those set forth in this Agreement and pricing based on that paid by PNC for similar transactions in the past 12 months), and the Proposed Developer shall negotiate in good faith to allow such opportunity to invest; provided, however, such right of first refusal shall expire if no agreement is reached within such thirty (30) day period.  In addition, the Proposed Developer shall not take any action with respect to the development of any Tax Credit rental housing within three (3) miles of the Project without the Consent of the SLP, which shall not be unreasonably withheld, delayed or conditioned.

**ARTICLE VIII**

**TRANSFER BY LIMITED PARTNERS**

       8.1.    Compliance With Securities Laws.  No Partnership interest has been registered under the Securities Act of 1933, as amended, or under any state securities law.  Except as set forth in this Article VIII, a Limited Partner may not transfer all or any part of its Partnership interest.  Any transfer shall be in compliance with applicable federal and state securities laws.  A transfer, for purposes of this Agreement, shall be deemed to include, but not be limited to, any sale, transfer, assignment, pledge, creation of a security interest or other disposition, other than a pledge or creation of a security interest contemplated under the terms of this Agreement; provided, however, that no transfer shall be deemed to have occurred for purposes of the restrictions on transferability under this Article VIII, as a result of any change in the partners of the ILP.

       8.2.    Transfer and Substitution.  The ILP and/or the SLP may transfer or assign all or any part of its interest in the Partnership to an Affiliate of the ILP without the consent of any other Partner.  Any transferee of such Limited Partner's interest shall promptly execute any documents reasonably necessary to effect the transfer in order to become a Substitute Limited Partner.  The General Partner shall cooperate as requested by the transferor Limited Partner in facilitating such transfer.

       Transfers to non-affiliates of the Limited Partners prior to payment of all Installments owed by the ILP will require General Partner consent, which consent shall not be unreasonably withheld.  A transferor of a Limited Partner interest may give its transferee the right to become a Substitute Limited Partner without the consent of any other Partner only after the transferee (a) adopts and approves in writing all the terms and provisions of this Agreement then in effect; and (b) assumes the obligations, if any, of the transferor to the Partnership.  Any transfer in contravention of this Article VIII shall be void and ineffectual and shall not bind the Partnership.  In the event of a proposed transfer of the SLP's or ILP's interest to a non-Affiliate of such Limited Partner, the General Partner shall not be required to make any material revisions to this Agreement or any ancillary documents and such Limited Partners shall reimburse the General Partner, Guarantor, and/or the Partnership for their reasonable out-of-pocket expenses incurred with respect to the transfer as provided herein.

       8.3.    Status of Transferee.  A transferee of a Limited Partner interest in the Partnership who is not admitted to the Partnership as a Substitute Limited Partner shall be entitled to receive only that share of Distributions, and the return of Capital Contribution, to which its transferor would otherwise have been entitled with respect to the interest transferred, and shall have no right to obtain any information on account of the Partnership's transactions, to inspect the Partnership books or to vote with the Limited Partners on any matter.  However, if a transferee and transferor jointly advise the General Partner in writing of a transfer of a Limited Partner or other interest in the Partnership, the Partnership shall furnish the transferee with pertinent tax information at the end of each Fiscal Year.

59

CONFIDENTIAL PLAINTIFFS_00008519

8.4.    <u>SLP Consent</u>. From and after the Closing Date, no Limited Partner shall be admitted to the Partnership without the Consent of the SLP which Consent shall be in the SLP's sole discretion.

## ARTICLE IX

### CHANGES AMONG GENERAL PARTNERS

9.1.    <u>Withdrawal</u>.

(a)    Each of the following acts shall constitute an "**<u>Event of Withdrawal</u>**":

(1)    Without the prior Consent of the SLP, the voluntary or involuntary (including, without limitation, by operation of law) sale, disposition, transfer, conveyance, assignment, relinquishment, withdrawal, or other event (removal, pledge, hypothecation, creation of Partnership security interest not otherwise permitted by this Agreement, etc.) of the General Partner's interest in the Partnership or any Controlling Interest in such General Partner or of an interest which results in a new Person holding a Controlling Interest in such General Partner;

(2)    The death, adjudication of incompetency or other circumstance the result of which Rene O. Campos is no longer supervising the Project on behalf of the General Partner unless within ninety (90) days after such event a proposed successor and/or replacement shall have received the Consent of the SLP;

(3)    Without the prior Consent of the SLP, the voluntary or involuntary dissolution of a General Partner;

(4)    Without the prior Consent of the SLP, an Event of Bankruptcy with respect to any General Partner or with respect to the holder of any Controlling Interest in any General Partner; or

(5)    The SLP's removal of the General Partner as General Partner of the Partnership.

(b)    Upon the occurrence of an Event of Withdrawal, such General Partner shall automatically cease to be a Partner of the Partnership and, unless expressly waived in writing by the SLP at the time of the withdrawal and by specific reference to this provision, in addition to any and all other legal remedies which may be pursued by the Partners, shall automatically and without notice or action of the Partners, relinquish to the SLP or its designee, the following, collectively, the "**<u>Relinquished Interests</u>**":

(1)    such General Partner's entire economic interest in the Partnership;

(2)    all unpaid fees, distributions, loans, profits or other amounts actually or allegedly due and owing by the Partnership and its Partners to such General Partner, the Developer, or any other Affiliate of such General Partner; and

(3)    any and all other rights, interests, credits, advantages, preferences, opportunities, priorities or other benefits arising from or relating to, in whole or in part (1) or (2) herein.

Further, to the extent the Developer is an Affiliate of the withdrawn General Partner, the Developer shall relinquish all of its economic interest in the Partnership and the Project, including, but not limited to, the right to receive any Development Fee payable pursuant to Section 6.8 and/or the Development Agreement, and the same shall be included as Relinquished Interests.

The Relinquished Interests shall be automatically transferred to the SLP or its designee and shall thereafter be fully and freely assignable and/or transferable in whole or in part (subject to applicable law) by the SLP (no Consent from any other Partner being required). The withdrawn General Partner shall remain liable for any and all duties and obligations such General Partner had under this Agreement even after their Partnership interest has been transferred to the SLP, its designee or any subsequent transferee, provided that the withdrawn General Partner shall

4837-4545-8969.4

CONFIDENTIAL    PLAINTIFFS_00008520

not be liable for any duties and obligations arising subsequent to the withdrawal of the withdrawn General Partner and solely attributable to events occurring after the withdrawal of the withdrawn General Partner.

Except as otherwise required by law, the SLP or its designee shall have the right, but not the obligation, to automatically be admitted as a General Partner upon the occurrence of such Event of Withdrawal without any further notice or action other than filing any required amendment to a document on file with the State and each remaining Partner hereby expressly consents to such transfer and to the admission of the SLP or its designee as a General Partner.

(c)     Moreover, if the Partnership is required by law to recognize a transfer of a General Partner's Partnership interest not otherwise Consented to by the Limited Partners, the transferee shall not have the rights of a Partner, and the Partnership interest transferred shall be strictly limited to the transferor's rights to allocations and distributions as provided by this Agreement with respect to the transferred interest, if any, which allocations and distributions may be applied in the Partnership's sole discretion (without limiting any other legal or equitable rights of the Partnership) to satisfy in whole or in part the debts, obligations, or liabilities for damages, of whatever kind or nature, that the transferor or transferee of such interest may have to the Partnership, including, without limitation, any such debts, obligations, or liabilities for damages arising under or pursuant to this Agreement or any other Project Documents.

9.2.     Obligation To Continue.  Upon the occurrence of an Event of Withdrawal as to a General Partner, each remaining General Partner, if any, shall have the right and obligation to continue the business of the Partnership, employing its assets and name, all as contemplated by the Partnership Act.  Within thirty (30) days after they obtain knowledge of the occurrence of an Event of Withdrawal as to a General Partner, the remaining Persons who comprise the General Partner, if any, shall notify the SLP and the ILP of such Withdrawal.

9.3.     Withdrawal of All General Partners.  If, following the occurrence of an Event of Withdrawal as to a General Partner, there is no remaining General Partner, the ILP and the SLP may elect to reconstitute the Partnership and continue the business of the Partnership by selecting a successor General Partner.  If the ILP and the SLP elect to reconstitute the Partnership pursuant to this Section 9.3 and admit the designated successor General Partner, the relationship among the then Partners shall be governed by this Agreement.

9.4.     Interest of General Partner After Permitted Withdrawal.  In the event the SLP has Consented to an occurrence of an Event of Withdrawal as to a General Partner (for the purposes of this Section 9.4, the "**Withdrawing General Partner**"), and except as otherwise provided in Section 7.7, the Withdrawing General Partner hereby covenants and agrees to transfer to the remaining General Partner, if any, to an SLP General Partner or a successor General Partner selected in accordance with Section 9.3, as the case may be, such portion of the Partnership interest of the Withdrawing General Partner as such remaining SLP General Partner or successor General Partner may designate, such transfer to be made in consideration of the payment by the transferee of either the agreed value of such Partnership interest or, if such value is not agreed to, the fair market value of such Partnership interest as determined by a committee of three qualified real estate appraisers, one selected by the Withdrawing General Partner, one selected by the transferee and the third selected by the other two appraisers so chosen.  The portion of the Withdrawing General Partner's Partnership interest designated to be transferred in accordance with the provisions of this Section 9.4 shall be sufficient to ensure the continued treatment of the Partnership as a partnership under the Code and as a limited partnership under the Partnership Act and, for the purposes of Article II, shall be deemed to be effective as of the date of the Event of Withdrawal, but the Partnership shall not make any Distributions to the designated transferee until the transfer shall have been made.  Any holder of any portion of the Partnership interest of a Withdrawing General Partner which is not designated to be transferred to the remaining or successor General Partner pursuant to the provisions of this Section 9.4 shall become a Supplemental Limited Partner, (i) with the same share of the Net Profits, Net Loss, Net Loss from Sale, Tax Credit, Net Cash Flow, Net Cash Proceeds and other Distributions to which the holder of such Partnership interest was entitled when held as a General Partner interest, (ii) which shall not participate in the votes, approvals or Consents of the Limited Partners hereunder and (iii) to the extent required by the SLP, this Agreement shall be amended in form and substance satisfactory to the SLP, to reflect the forgoing.  The admission of any successor or additional General Partner shall be subject to any required Consent of any Lender or Agency and to the Consent of each of the ILP and the SLP.

61

CONFIDENTIAL                                                    PLAINTIFFS_00008521

9.5.    SLP Consent.  Except as provided in Sections 7.7(b) and 9.3, from and after the Closing Date, no General Partner shall be admitted to the Partnership without the Consent of the SLP, which Consent shall be in the SLP's sole discretion and until such Person shall have agreed to be bound by this Agreement (and assume the obligations of a General Partner hereunder) and by all Project Documents to the same extent and under the same terms as each other General Partner.

## ARTICLE X

## ACCOUNTING, RECORDS & FINANCIAL REPORTING

10.1.    Books and Records.  The General Partner shall keep the Partnership's accurate and complete books and records, which shall include the list of names and addresses for all Partners, this Agreement, any and all amendments to this Agreement, all loan documents and all first-year tenant and income certifications and lease documents that support the initial qualified basis.  Such books and records shall be kept at the Partnership's principal office or at the Project or at the Property Manager's office and shall be maintained in accordance with sound accounting practices, the Partnership Act, and any applicable requirements of the Lenders and Tax Credit Agency through the later of (a) six (6) years following the expiration of the Compliance Period, or (b) the Termination Date, and such books and records shall be open to inspection and examination by any Limited Partner or its duly authorized representatives at all reasonable times upon 24 hours notice to the General Partner.  All books and records pertaining to the first year of the Credit Period, including, but not limited to, supporting documentation for tenant eligibility as Qualified Tenants shall be kept in fireproof storage at the Partnership's principal office or at the Project or at the Property Manager's office for the period described in the preceding sentence.

For any loan closings or conversions that occur on or after the Closing Date, the General Partner shall cause complete transcripts and binders (including all signatures and recording information) to be sent to the SLP within thirty (30) days of such closing.  Such transcripts and binders may be sent on any standard electronic storage medium in lieu of paper documents.

10.2.    Books of Account.  The General Partner shall ensure that the Partnership's books of account are kept and maintained safely, accurately, completely, and on the accrual basis.

10.3.    Fiscal Year.  The Fiscal Year shall be the calendar year (twelve (12) calendar months ending on December 31st annually).

10.4.    Special Basis Adjustments.  In the event of a transfer of the ILP's Partnership interest or in the event of a transfer by a partner or member of the ILP of such partner's or member's interest in the ILP, the Partnership shall elect, upon the request of the ILP, to adjust the basis of Partnership property pursuant to Section 754 of the Code.  Any adjustments under Section 743 of the Code resulting from such Section 754 election shall affect only the successor in interest to the transferring ILP or the transferring partner(s) or member(s) of the ILP. Each Partner will furnish to the Partnership all information necessary to give effect to any such election.

10.5.    Bank Accounts.  The Partnership shall establish and maintain an operating (checking) account for the Project's daily routine operations in an FDIC-insured account.  Withdrawals from such account shall be made only in the regular course of business on such procedures deemed prudent by the General Partner, subject to the requirements of Articles IV and VI of this Agreement.  Other accounts and reserves of the Partnership shall be established and maintained as specified in Section 6.5.

10.6.    Accountants.  The Accountants shall prepare the audits, tax returns and other documents required herein and as required by the Lender and Agency.  The General Partner shall furnish a copy of the accounting services agreement to the SLP which shall include the Accountant Addendum.

10.7.    Construction Draws, Audits, Tax Filings and Compliance.  The General Partner shall cause to be prepared and delivered to the SLP and ILP the following information and reports, all in form and substance satisfactory to the SLP:

62

CONFIDENTIAL   PLAINTIFFS_00008522

(a)      Construction Matters and Reporting.

(1)      Construction Consultant.  The General Partner shall timely cooperate with (and cause the Builder, Project Architect and Property Manager to cooperate with) the Construction Consultant in the fulfillment of the Construction Consultant's inspection and reporting services conducted for the benefit of the Limited Partners and Lender (as applicable).

(2)      Construction Draws.  A "**Construction Draw**" shall be any request for the use of Development Funds occurring after the Closing Date until Final Construction Completion, and any request of Development Funds or casualty insurance proceeds for construction-related activities occurring after Final Construction Completion.  The General Partner shall provide to the SLP a copy of each and every Construction Draw, regardless of whether the ILP's Capital Contribution is a requested source of funding for such Construction Draw.  The General Partner shall send each Construction Draw to the SLP at the same time it is sent to any other Partner, Lender, Agency or other source of Development Funds.  Construction Draws may be submitted no more frequently than once per calendar month and may not include costs which have previously been reimbursed.  Upon receipt by the SLP of a complete Construction Draw submission (see below), the SLP shall have ten (10) business days to review and either Consent and/or comment upon the Construction Draw.  If the SLP issues comments on the Construction Draw that require action by other parties, the General Partner shall cause such actions to be taken as requested by the SLP within thirty (30) days of the SLP making such comments, and the General Partner shall receive the Consent of the SLP prior to the General Partner's submittal of any further Construction Draws.

At a minimum, Construction Draws must include the following:

(i)      A reconciled sources and uses Project Budget in form and substance satisfactory to the SLP and reflecting all Development Funds and Development Costs detailed on a line-item basis;

(ii)     An AIA document G702 and G703 or similar HUD form for all construction costs, signed by the General Partner and Builder, accompanied by all change orders (discussed below), and certified by the Project Architect;

(iii)    A completed inspection report from the Construction Consultant approving the work completed and costs requested on the G702 and G703 or similar HUD form;

(iv)     Receipts, invoices and other supporting documents for any "soft" costs that are outside of the Construction Contract;

(v)      A date-down endorsement to the owner's Title Policy (if not available in the State, then a limited title search will be acceptable); and

(vi)     For the first draw following completion of all building pads or foundations, a foundation survey for any newly constructed improvements as described in Section 6.7(c).

Other items the General Partner may be required to furnish to the SLP with the Construction Draw include, but are not limited to, copies of contracts and insurance policies for subcontractors, lien waivers, invoices related to purchases of construction materials, soil compaction testing results, concrete foundation cylinder test results and such other documentation as may be requested pursuant to Section 10.9.

(3)      Change Orders.  Without the prior Consent of the SLP, neither the General Partner nor the Developer shall authorize the Partnership, the Project Architect or the Builder to make any change to the Plans and Specifications or modification of or reallocation of any budgeted line item (either within or outside of the Construction Contract) that would:

4837-4545-8969.4

CONFIDENTIAL                                   PLAINTIFFS_00008523

(i)        expend or reallocate funds on any line item in the Project Budget in excess of (A) for any single line item, the lesser of $75,000 or 10% of the original Project Budget amount for such line item, or (B) $250,000 in the aggregate when combined with all prior or current changes; and/or

(ii)      diminish the quality of materials, finishes or workmanship of the Project, or cause a change in the Project amenities from those set forth in the Project Documents.

Upon receipt by the SLP of any such change order request, the SLP shall have ten (10) days to review and either issue Consent, denial, or comment upon the requested change. The General Partner shall provide a copy of the fully executed change order to the SLP within ten (10) days of receiving such Consent.

If at any point, the General Partner or the Developer believes that there is a probability that the funds approved by the SLP for any line item of the Project Budget will be insufficient to ensure completion in accordance with the Project Documents or the Project is or will be Out-Of-Balance or any change order may have an adverse effect on the Project Budget, then the General Partner and/or the Developer shall immediately provide written notice thereof to the SLP and there shall be no payment of Development Fee until such time as the Project is back on schedule and budget, as determined by the SLP.

(b)      <u>Tenant Files and Compliance</u>.

(1)      The General Partner shall provide a copy of each initial tenant file and shall cooperate with and assist (and shall cause the Property Manager to so cooperate with and assist) in the initial tenant file review, and shall cause the Property Manager to promptly cure any deficiencies in tenant files or practices and procedures identified during the initial tenant file review. Neither such reviews nor the existence of the right to make such reviews shall relieve the General Partner of its obligation (or constitute a defense against breach of such obligation) to maintain the Project in compliance with all rules and requirements under the Code and of the Tax Credit Agency.

(2)      The General Partner shall cooperate with and assist (and shall cause the Property Manager to so cooperate with and assist) the SLP in making periodic reviews of the Partnership's tenant files for the purpose of assessing compliance with respect to the Property's leasing practices under the Code and the requirements of the Tax Credit Agency. During each review, the General Partner and the Property Manager shall make available to the SLP (either at the office of the Property Manager during regular business hours or, if so requested by the SLP, by sending photocopies to the SLP) all or a portion of the tenant files and leasing practices and procedures of the Property. Such reviews (or sending of photocopies) shall occur within three (3) business days following written notice by the SLP to the General Partner. The SLP expects to make reviews periodically during initial leasing of the Property and thereafter on an annual basis, but shall have the right to make more frequent reviews in its reasonable discretion. Neither such reviews nor the existence of the right to make such reviews shall relieve the General Partner of its obligation (or constitute a defense against breach of such obligation) to maintain the Property in compliance with all rules and requirements under the Code and of the Tax Credit Agency. The General Partner shall cause the Property Manager to cure all deficiencies in tenant files or practices and procedures identified by the SLP as a result of such reviews.

(3)      If applicable, the General Partner shall furnish to the SLP copies of any and all documentation required by any Agency in order to establish or reestablish tenant eligibility (for example, USDA-RD Form 1944-8).

(4)      If requested by the SLP, the General Partner shall furnish to the SLP copies of any and all documentation to reestablish tenant eligibility resulting from the annual recertification of tenants, which documentation shall be a tenant recertification. As long as no Event of Default has occurred and remains uncured, the SLP will make such requests no more frequently than once per Fiscal Year.

4837-4545-8969.4

(c)     Financial and Operating Reports.  As further described below, the following financial and operating reports shall be required during the periods described.  Each reference to an "audit" shall mean an annual audited financial statement prepared by the Accountants in full compliance with GAAP.  Each reference to "certified" means the Person who is the subject of the statement shall certify in writing to the Limited Partners that the information is current, accurate, and complete.

(1)     Partnership.  The General Partner shall cause the Partnership to submit to the SLP, the following reports and information:

(i)     "Tax Credit Qualification Schedule" to be submitted monthly and not more than five (5) days in arrears commencing when the first unit in the Project is occupied and continuing until the 100% Occupancy Date is achieved; once the 100% Occupancy Date is achieved, such report shall be submitted quarterly within thirty (30) days of the end of the applicable quarter until the Termination Date. The "Tax Credit Qualification Schedule" shall report for each apartment unit the following information: unit number, tenant name, number of bedrooms, household size, initial move-in date, current lease expiration date, tenant annual gross income, the tenant rent contribution, and the approved utility allowance, together with the total number of Low Income Units qualified and the overall occupancy of the Low Income Units.

(ii)     "Occupancy Report and Rent Roll" to be submitted monthly and not more than five (5) days in arrears commencing when the first unit in the Project is occupied and continuing until the 100% Occupancy Date is achieved; thereafter, such report shall be due monthly within twenty five (25) days of the applicable month-end until Stabilized Occupancy is achieved; once Stabilized Occupancy is achieved, such report shall be submitted quarterly, within thirty (30) days of the end of the applicable quarter until the Termination Date.  The "Occupancy Report and Rent Roll" shall contain the following information: the total number of units in service, the number of physically occupied and vacant units, and all known move-ins and move-outs (including dates).  The rent roll must provide all information customarily included in this type of report in the industry, and must also specify which units are receiving Section 8 rental assistance or the like (and state both the total collected rent and the amount of rent paid by the tenant), which units are designated Low Income Units, and the utility allowance for each Low Income Unit.

(iii)     "Income Statement and Balance Sheet" to be submitted monthly within twenty (20) days of the applicable month-end commencing when the first unit in the Project is occupied and continuing until Stabilized Occupancy is achieved and thereafter, such report shall be submitted quarterly, within thirty (30) days of the end of the applicable quarter until the Termination Date.  The General Partner and/or Property Manager shall prepare a month-end Income Statement and Balance Sheet on the accrual basis for each calendar month; the Income Statement shall include the account detail described in Section 10.9, and the Balance Sheet shall be supported upon request of the SLP by bank and/or brokerage statements for cash accounts not held in PNC Bank, National Association.

(iv)     "Quarterly Status Reports" to be submitted quarterly within thirty (30) days of the end of the applicable quarter commencing when the first unit in the Project is occupied and continuing until the Termination Date.  The "Quarterly Status Reports" shall be in form and content acceptable to the SLP and shall contain the information requested in Exhibit 10, attached hereto, as such Quarterly Status Report may be amended or modified from time to time by the SLP.

4837-4545-8969.4

(v)    "Partnership Audit" for each Fiscal Year to be submitted annually by March 1st of the succeeding Fiscal Year; provided, however, to the extent the Partnership does not have operating income in such Fiscal Year, a modified report acceptable to the SLP which includes certification of each Partnership account shall be permitted.  The Accountants shall prepare a draft of the Partnership's audited financial statements in accordance with the Accountant Addendum (the "**Partnership Audit**").  The General Partner shall cause the Accountants to send a complete copy of the Partnership Audit directly to the SLP within the time period described in the preceding sentence.  The General Partner shall cause the Accountants to finalize and resend the Partnership Audit within five (5) business days upon receiving Consent thereto from the SLP.

(vi)    "Partnership Tax Returns" for each Fiscal Year to be submitted annually by February 15th of the succeeding Fiscal Year.  The General Partner shall cause the Accountants to send directly to the SLP a complete draft of the Partnership's federal and state tax returns for the previous calendar year and all accompanying schedules, which must include the K-1s presented on a tax basis and any state analogs thereto.  The tax returns must be prepared by the Accountants in compliance with the Accountant Addendum.  The General Partner shall not file such tax return until the SLP shall have given Consent to the specific documents for filing.

(2)    <u>General Partner</u>.  The General Partner shall submit to the SLP, the following reports and information:

(i)    "Certified Annual Financial Statements" for each General Partner to be submitted annually by March 1st commencing with the Fiscal Year in which the Closing Date occurs and continuing thereafter until the Termination Date.  Such statements shall include sufficient details about the accounts underlying those shown on the statements, together with a balance sheet and reasonable supporting documentation as the SLP may request, which may include, but is not limited to, copies of bank and/or brokerage statements, promissory notes, and payment schedules for receivables.

(ii)    "Certified Schedule of Contingent Liabilities" for each General Partner to be submitted annually by March 1st commencing with the Fiscal Year in which the Closing Date occurs and continuing thereafter until the Termination Date.

(3)    <u>Guarantor</u>.  The General Partner shall cause each Guarantor to submit to the SLP, the following reports and information:

(i)    "Certified Annual Financial Statements" for each Guarantor to be submitted annually by June 1st commencing with the Fiscal Year in which the Closing Date occurs and continuing thereafter until the Termination Date.  For a corporate Guarantor, such Annual Financial Statement shall be an Audited Financial Statement and for each individual Guarantor, such Annual Financial Statement shall be certified.  Such statements shall include sufficient details about the accounts underlying those shown on the statements, together with a balance sheet and reasonable supporting documentation as the SLP may request, which may include, but is not limited to, copies of bank and/or brokerage statements, promissory notes, and payment schedules for receivables.

(ii)    "Certified Schedule of Contingent Liabilities" for each Guarantor to be submitted annually by June 1st or within sixty (60) days of request by the SLP commencing with the Fiscal Year in which the Closing Date occurs and continuing thereafter until the Termination Date.

66

CONFIDENTIAL    PLAINTIFFS_00008526

(iii)    "Schedule of Real Estate Owned" for each Guarantor to be submitted annually by June 1st or within sixty (60) days of request by the SLP commencing with the Fiscal Year in which the Closing Date occurs and continuing thereafter until the Termination Date. Each required schedule of real estate owned shall be prepared using a form similar to that accepted by the Limited Partners on or before the Closing Date.

    (d)    <u>Projected Distributions</u>. By October 1st of each Fiscal Year, the General Partner shall send to the SLP an estimate prepared by the General Partner or the Accountants of each Limited Partner's respective share of Distributions, Tax Credit, Net Cash Flow, and Net Profit or Loss and, if applicable, Net Profit from Sale, Net Loss from Sale and Net Proceeds from Sale, of the Partnership for income tax purposes for the current Fiscal Year.

    (e)    <u>Tax Credit Reporting</u>. In addition to the other reporting requirements set forth in this Agreement, the General Partner shall send to the SLP copies of any material correspondence or filings sent to or received from any Lender, Agency or governmental authority pertaining to the Partnership or the Property, including, but not limited to, the following items:

    (1)    A copy of any Tax Credit monitoring report forwarded to the Tax Credit Agency, including, but not limited to, any certification in accordance with Treasury Regulations 1.42-g and any other annual Tax Credit compliance certificate which makes representations as to the status of Tax Credit compliance of the Partnership or the Project, or to the extent such a compliance certificate is not required by the Tax Credit Agency, an annual statement representing the status of Tax Credit compliance in a form acceptable to the SLP;

    (2)    Copies of any notices  pertaining to Governmental Regulations or Environmental Laws, notices of any default by the Partnership under any Project Document, any site inspection reports from any Lender or Agency, notices of any noncompliance on Form 8823 or similar forms, or notices of default in payment of any Permitted Loan, taxes, interest or any other obligation; and

    (3)    Copies of any Real Estate Assessment Center (REAC) inspection reports received with respect to the Partnership or the Project as well as any notices from HUD, including, but not limited to, any management review findings, Section 8 HAP contract inspections, and/or notices pertaining to HUD regulatory agreements, if any.

    (f)    <u>Lender & Agency Reporting</u>. With respect to any correspondence or filings sent by or on behalf of the Partnership to any Lender, Agency or governmental authority, final drafts of such correspondence or filings shall be submitted to the SLP at least fifteen (15) business days prior to the required submission or filing date thereof, and the General Partner shall obtain the Consent of the SLP prior to submitting or filing the same, except as otherwise permitted in Section 3.5(a)(6) and Section 3.5(a)(12); provided, however, that any such submissions or filings that are already required to be submitted to both the SLP and the Lender, Agency or governmental authority, as applicable, under this Agreement shall be subject to the timeframes set forth in the applicable provisions of this Agreement.

    10.8.    <u>Insurance</u>. Prior to the expiration date for each Partnership insurance policy required to be maintained pursuant to <u>Exhibit 6</u> and Section 6.5(b), the General Partner shall deliver (or shall cause its insurance agent to deliver) evidence of a comparable new or replacement insurance policy to the SLP by certificates of insurance on ACORD forms (ACORD 28 version 2003/10 for casualty; ACORD 25 for general liability) and evidence of premium payment. Upon request by the SLP, the General Partner shall also provide a copy of any insurance policy, including all endorsements thereto, bound by the General Partner on behalf of the Partnership.

    10.9.    <u>Operating and Capital Expenditure Budgets</u>. By November 1st of each Fiscal Year, the General Partner shall deliver to the SLP an annual operating budget of revenues and expenses for the Partnership for the following Fiscal Year that shall include all operating revenues and expenses applicable to the Project, including the following accounts detailed in the Accountant's Addendum. By November 1st of each year, the General Partner shall send to the SLP a budget of Capital Expenditures for the subsequent Fiscal Year which shall include a

67

CONFIDENTIAL

description of the item or service, anticipated date of purchase or completion of service, total cost, reason for expenditure and anticipated source of funds (e.g., operations or replacement reserves).

10.10.   <u>Other Management Reporting, Miscellaneous</u>.  Within ten (10) days after each of the following becomes available to the Partnership, the General Partner shall send to the SLP:

(a)   a copy of any updated, renewed or new Project management plan, including any new or revised operating and maintenance plan for environmental conditions;

(b)   notification of any fact which has or may have a material adverse effect upon the Project, the Partnership, the General Partner, the Limited Partner or Guarantor, or which could materially and adversely affect Distributions of cash or allocations of profits, losses or Tax Credit to any Limited Partner, or any other such matters as may be material to the existence or operation of the Partnership, its business or the Project, including, but not limited to, events adversely affecting habitability, safety, occupancy or the use and enjoyment of the Project by tenants;

(c)   copy of any notice of audit, inspection, management or financial review report, inquiry or investigation of the Partnership or Project by the Tax Credit Agency or other regulatory body and copies of all subsequent correspondence with respect to such audit, inquiry or investigation;

(d)   any update of applicable utility allowances for the computation of maximum-allowable Tax Credit rents paid by the tenants; and

(e)   not more than ten (10) business days after the later of (i) the real property tax due date, or (ii) the date the real property taxes are paid, written evidence in a form acceptable to the SLP that the real property taxes for the Project have been paid.

10.11.   <u>Reporting Defaults</u>.

(a)   If the General Partner fails to deliver, or cause to be delivered, to the SLP the documents required by Section 10.7(a), Section 10.7(c), Section 10.7(e), Section 10.7(f) or Section 10.9 within the time periods set forth in said Sections, or fails to perform (or cause to be performed) any requirement made under Section 10.13(b) (individually and collectively, a "**Reporting Default**"), the General Partner and/or Guarantor shall, upon receipt of an invoice from the SLP and assuming that no Limited Partner has caused such delay, pay as damages the sum of $100 per day per report due pursuant to Section 10.7(c), commencing on the first day after the date the report was due and ending on the date the report in question is received by the SLP (the "**Reporting Damages**").  No notice or warning of such reporting delinquency shall be required and, if notice or warning is given by the SLP, such notice shall not affect the date the report in question was due or the amount of Reporting Damages owed to the ILP. If the General Partner and/or Guarantor fail to pay, any amount of such Reporting Damages not so paid shall be deducted against such Section 4.2 and/or 4.5 payments or distributions otherwise due to the General Partner, the Guarantor and/or their Affiliates.  Further, all Partners hereby expressly consent to the exercise by the SLP of collecting payment of such Reporting Damages from any Capital Contributions to be funded by the ILP and/or from Partnership reserves.

(b)   If a Reporting Default occurs with respect to Section 10.7(c) and such default is not cured within fifteen (15) days, the SLP may by written notice instruct the General Partner to change the Accountants, and the General Partner shall cause the Partnership to promptly terminate the Partnership's engagement of the Accountants and appoint a replacement acceptable to the Limited Partners.  If the SLP notifies the Partnership that the Accountants are to be replaced, and if within thirty (30) days of such notice the General Partner fails to cause the Partnership to replace the Accountants with a firm satisfying the terms of the preceding sentence, then the SLP shall appoint replacement Accountants of its own choosing.  All Partners hereby grant to the SLP a special power of attorney, irrevocable to the extent permitted by law, coupled with an interest, to so appoint replacement Accountants and to do anything else which in the view of the SLP may be necessary or appropriate to accomplish the purposes of this Section 10.11.   The General Partner shall immediately furnish to such replacement Accountants all documentation and other information necessary to prepare such statements, returns, forms and reports.

4837-4545-8969.4

CONFIDENTIAL

PLAINTIFFS_00008528

(c)     Any failure of the Partnership and General Partner to provide documents or other information required according to Section 10.7 to the ILP and/or the SLP for two (2) consecutive periods for each applicable report by the due dates therefor and the General Partner shall not have cured such default within ten (10) business days following notice thereof from the ILP or the SLP, shall constitute grounds for the removal of the Property Manager pursuant to Section 6.11.

10.12.   Elections.

(a)     With respect to all depreciable assets for which cost recovery deductions are permitted, the Partnership shall, so far as permitted by the provisions of the Code, depreciate its residential rental property, site improvements and personal property costs, respectively, over 27.5 years (straight-line), 15 years (150% declining balance) and 5 years (200% declining balance).  For purposes of financial accounting in accordance with generally accepted accounting principles, the Partnership shall depreciate its residential rental property, site improvements and personal property costs, respectively, over 40 years, 20 years and 10 years.

(b)     Subject to the provisions of Section 10.4, all other elections required or permitted to be made by the Partnership under the Code shall be made by the General Partner in such manner as will, in the opinion of the Accountants and the SLP, be most advantageous to the ILP but shall not create additional obligations on the part of the General Partner.

10.13.   General Terms and Provisions of Article X.

(a)     Expenses.  All books, records, reports and other such duties and obligations of the Partnership, General Partner, Guarantor and their Affiliates set forth in this Article X shall be completed in form and substance reasonably acceptable to the SLP, and the costs related thereto shall be an expense of the Partnership unless otherwise stated therein.

(b)     Other Requests of the SLP.  In addition to the stated requirements of this Article X, the General Partner shall be required to provide any other information or documentation reasonably requested by the SLP related to the Project, the Partnership or its Partners.  The General Partner shall cause any applicable Person to cooperate as necessary in order to fulfill any such requests of the SLP, and such cooperation includes access to and cooperation of their respective employees, agents, representatives, books and records during normal business hours.

10.14.   Compliance With Other Interested Parties.  The requirements of this Article X are specific to the needs and requirements of the Limited Partners.  If the reporting requirements herein are different than requirements imposed by any Lender or Agency, compliance with the requirements of this Agreement does not nullify the obligation of the Partnership, the Partners and their Affiliates to comply with the distinct and enforceable requirements of each Lender and Agency.

## ARTICLE XI

## TERMINATION AND DISSOLUTION

11.1.   Dissolution.  The Partnership shall be dissolved upon the earliest to occur of the following:

(a)     An Event of Withdrawal with respect to a sole General Partner, unless the Partnership is continued in accordance with Section 9.3;

(b)     The Termination Date; or

(c)     The Sale of the Project other than pursuant to a contract of sale in which the purchase is to be paid over a period of more than one (1) year.

In no event shall the Partnership terminate if such termination would result in a violation of any law, regulation or regulatory agreement to which the Partnership is bound.

4837-4545-8969.4

CONFIDENTIAL                    PLAINTIFFS_00008529

11.2.    Distribution of Assets.  Upon dissolution of the Partnership, the General Partner (or, if there is no General Partner then remaining, such other Person(s) designated by the Limited Partners or the Person(s) designated by the court in a judicial dissolution) shall take full account of the Partnership's assets and liabilities, shall liquidate the assets as promptly as is consistent with obtaining the fair value thereof, and shall apply and distribute the proceeds therefrom, after payment of the debts and obligations of the Partnership (including fees and any interest owed to the Partners), in accordance with the Capital Account balances (after taking into account all adjustments to Capital Accounts).  In the event that a General Partner has a negative balance in its Capital Account following the liquidation of the Partnership or such General Partner's interest therein, after taking into account all Capital Account adjustments for the Partnership taxable year in which such liquidation occurs, such General Partner shall pay to the Partnership in cash an amount equal to the negative balance in such General Partner's Capital Account (unless applicable State laws do not require such payments from a General Partner upon liquidation of the Partnership).  Such payment (if required) shall be made by the end of such taxable year (or, if later, within ninety (90) days after the date of such liquidation) and shall, upon liquidation of the Partnership, be paid to recourse creditors of the Partnership or distributed to other Partners in accordance with the positive balances in their Capital Accounts.

Upon liquidation of the Partnership, the ILP shall not be obligated to restore any deficit balance in its Capital Account.  However, if an allocation of Net Losses, or any item thereof, to the ILP would cause the ILP to have a Capital Account deficit in excess of its share of Partnership Minimum Gain plus its share of Partner Nonrecourse Debt Minimum Gain in any Fiscal Year, the ILP may elect in its sole discretion by written notice (the "**DRO Notice**") to the Partnership to obligate the ILP to restore a negative balance in its Capital Account in accordance with the prior paragraph up to the amount specified in such DRO Notice; provided, however, the ILP's obligation to restore any deficit balance in its Capital Account shall be adjusted at the end of each year, following delivery of the DRO Notice, to an amount equal to the lesser of (a) the dollar amount set forth in the DRO Notice, or (b) the difference between (i) the ILP's deficit Capital Account balance at the end of such year and (ii) any Minimum Gain then allocable to the ILP.  The DRO Notice automatically shall be deemed to constitute a duly adopted amendment to the Partnership Agreement without any further action by any party.  Such DRO Notice must be delivered to the Partnership on or before the last date on which such DRO Notice will create a valid restoration obligation for the Fiscal Years(s) for which it is intended to be effective under the provisions of Sections 1.704-1(b)(2)(ii)(c), 1.704-1(b)(2)(ii)(h), or any other applicable section(s) of the allocation regulations under Section 704 of the Code.  Nothing contained herein shall obligate the ILP to issue a DRO Notice.

Notwithstanding anything to the contrary contained herein, any fee payments, loan repayments, return of capital or distributions otherwise payable or distributable to the General Partner or any Affiliate thereof under Sections 4.2, 4.5, and/or 11.2 shall be paid to the ILP to the extent of any unpaid amounts (including accrued interest thereon) owed under Section 3.5, and shall be treated as being first paid or distributed to the General Partner, and then paid by the Partnership on behalf of the General Partner to the ILP.

If at the time of liquidation the General Partner or other liquidating Person(s) shall determine that an immediate sale of part or all of the Partnership assets would cause undue loss to the Partners, the liquidating Person(s) may, in order to avoid loss, either defer liquidation and retain all or a portion of the assets or distribute all or a portion of the assets to the Partners in kind.  In the event that the liquidating Person(s) elect to distribute such assets in kind, the assets shall first be assigned a value (by appraisal of a professionally qualified appraiser) and the unrealized appreciation or depreciation in value of the assets shall be allocated to the Partners' Capital Accounts, as if such assets had been sold, in the manner described in Article IV, and such assets shall then be distributed to the Partners as provided herein.

## ARTICLE XII

## AGENCY REGULATIONS

In addition to the obligations and commitments contained in this Agreement and so long as any of the Agency obligations or commitments is in effect, the General Partner covenants to act in accordance with the Project Documents and to cause the Partnership to comply with the rules imposed by the Tax Credit Agency, to the extent such rules or requirements do not conflict with the requirements under Section 42 of the Code.

70

4837-4545-8969.4

     PLAINTIFFS_00008530

## ARTICLE XIII

## MISCELLANEOUS

13.1.   <u>Notices</u>.  Notices to any Partner shall be sent to the address(es) of that Partner set forth in <u>Exhibit 2</u>.  Any Partner may require notices to be sent to a different address by giving notice thereof to all of the other Partners.  All notices or other communication required or permitted hereunder shall be in writing, and shall be deemed to have been given on (i) the third (3rd) day after deposit in the United States mail, postage prepaid, (ii) the first (1st) day after deposit with Federal Express or similar overnight delivery service, or (iii) delivery if delivered personally.

13.2.   <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement among the parties and supersedes any prior agreement or understanding among them respecting the subject matter of this Agreement.  In addition, nothing in this Agreement is meant to nor shall be deemed to, create an agency relationship between the Limited Partners.

13.3.   <u>Joint and Several Obligations</u>.  If there shall be more than one General Partner at any time, the obligations of the General Partner hereunder shall be the joint and several obligations of each Person comprising the General Partner.  Except as provided herein, such obligations shall survive the removal of, or an Event of Withdrawal by, a General Partner from the Partnership.

13.4.   <u>Consents and Approvals</u>.  Unless otherwise expressly provided to the contrary in this Agreement, under any circumstance in which a provision of this Agreement requires or otherwise contemplates the approval, consent, election, requirement or determination of the ILP or the SLP with respect to any matter, such approval, consent, election, requirement or determination shall be at the sole discretion of the ILP or the SLP, as the case may be, and shall be effective only if given or made in writing.

13.5.   <u>Headings</u>.  All Article and Section headings in this Agreement are for convenience of reference only and are not intended to qualify the meaning of any Article or Section.

13.6.   <u>Certain Provisions</u>.  If the operation of any provision of this Agreement would contravene the provisions of the Partnership Act, or would result in the imposition of general liability on the Limited Partner, such provision shall be void and ineffectual.

13.7.   <u>Saving Clause</u>.  If any provision of this Agreement, or the application of such provision to any Person or circumstance, shall be held invalid or unenforceable, neither the remainder of this Agreement nor the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable shall be affected thereby.

13.8.   <u>Pronouns and Plurals</u>.  All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular, or plural as the identity of the Person or Persons may require.

13.9.   <u>Binding Agreement</u>.  This Agreement shall be binding upon, and inure to the benefit of, the parties hereto, their successors, heirs, legatees, devisees, assigns, legal representatives, and personal representatives, except as otherwise provided herein.

13.10.   <u>Remedies Not Exclusive</u>.  The General Partner and Guarantor acknowledge and agree that the ILP's and/or SLP's exercise or restraint from exercising their respective rights and remedies under any provision hereof shall in no way impair, impede, modify, or delay the duties, obligations, or liabilities of the Partnership, General Partner or Guarantor under any other provision of this Agreement.

13.11.   <u>Counterparts</u>.  This Agreement may be executed in several counterparts, and all so executed shall constitute one agreement, binding on all the parties hereto, even though all parties are not signatories to the original or the same counterpart.  Any counterpart which has attached to it separate signature pages, which altogether contain the signatures of all parties whose signature thereon are required, shall for all purposes be deemed a fully executed

4837-4545-8969.4

CONFIDENTIAL                    PLAINTIFFS_00008531

instrument.  Delivery of a manually executed counterpart to this Agreement or delivery of a copy of such manually executed counterpart by email or facsimile transmission shall each constitute effective delivery of such counterpart.  Any party delivering a copy of such manually executed counterpart of this Agreement by email or facsimile transmission shall promptly thereafter deliver the manually executed counterpart, provided that any failure to do so shall not affect the validity of the copy of the manually executed counterpart delivered by email or facsimile transmission.

13.12.  <u>Governing Law, Jurisdiction and Venue</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State, exclusive of its conflict of laws principles.  Each of the undersigned irrevocably (i) agrees that any suit, action or other legal proceeding arising out of this Agreement or any of the transactions contemplated hereby shall be brought in the courts of either the State of Texas or the Commonwealth of Pennsylvania; (ii) consents to the jurisdiction of each such court in any suit, action, or proceeding; and (iii) waives any objection which he or it may have to the laying of venue of any such suit, action or proceeding in each of such courts.  Each of the undersigned expressly agrees that the right to remove any suit, action or other legal proceedings arising out of this Agreement or any of the transactions contemplated hereby to federal court has not been waived.  Each of the undersigned waives any right it may have to assert the doctrine of forum non conveniens or similar doctrine with respect to any such suit, action or proceeding in each of such courts and such provisions are intended to be mandatory and not permissive thereby precluding the possibility of any such suit, action or proceeding in any jurisdiction other than as specified in this paragraph.

13.13.  <u>No Third-Party Beneficiary</u>.  No creditor or other third party having dealings with the Partnership, other than the Bridge Lender, shall have the right to enforce the right or obligation of any Partner to make Capital Contributions or loans or to pursue any other right or remedy hereunder or at law or in equity, it being understood and agreed that the provisions of this Agreement shall be solely for the benefit of, and may be enforced solely by, the parties hereto and their respective successors and assigns.  None of the rights or obligations of the Partners herein set forth to make Capital Contributions or loans to the Partnership shall be deemed an asset of the Partnership for any purpose by any creditor or other third party, other than the Bridge Lender, until such Capital Contribution is made or loan is advanced nor may such rights or obligations be sold, transferred or assigned by the Partnership or pledged or encumbered by the Partnership to secure any debt or other obligation of the Partnership or of any of the Partners, other than the Bridge Lender.  Without limiting the generality of the foregoing, a deficit Capital Account of a Partner shall not be deemed to be a liability of such Partner nor an asset or property of the Partnership.

[SIGNATURE PAGE TO FOLLOW]

4837-4545-8969.4

CONFIDENTIAL

PLAINTIFFS_00008532

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written, and declare under penalty of perjury that they have examined the foregoing Amended and Restated Agreement of Limited Partnership, and, to the best of their knowledge and belief, it is true, correct and complete.

GENERAL PARTNER:

2013 Travis Oak Creek GP, LLC

By: _____
         Rene O. Campos, Manager

ORIGINAL LIMITED PARTNER:

By: _____
         Rene O. Campos, individually

DEVELOPER (for the purposes of acknowledging and agreeing to this Agreement and not as a partner):

2013 Travis Oak Creek Developer, Inc.

By: _____
         Rene O. Campos, President

4837-4545-8969.4

CONFIDENTIAL

STATE OF _TEXAS_    )
                         ) ss.
COUNTY OF _DALLAS_   )

     This instrument was acknowledged before me on the _20th_ day of May, 2014 by Rene O. Campos, as (a) Manager of 2013 Travis Oak Creek GP, LLC, the General Partner, (b) the Original Limited Partner, and (c) President of Travis Oak Creek Developer, Inc., the Developer.

                                      Notary Public in and for the
                                      State of _TEXAS_
                                      My Commission Expires: _4/23/2018_

**REED A STANDLY**
**My Commission Expires**
**April 23, 2018**

4837-4545-8969.4

CONFIDENTIAL

PLAINTIFFS_00008534

ILP:

**PNC BANK, NATIONAL ASSOCIATION**

By: _Wendy Bade_
Wendy Bade, Senior Vice President

SLP:

**COLUMBIA HOUSING SLP CORPORATION**

By: _Wendy Bade_
Wendy Bade, Senior Vice President

STATE OF Kentucky.           )
                             ) ss.
COUNTY OF Jefferson          )

This instrument was acknowledged before me on the 23 day of May, 2014 by Wendy S. Bade, as Senior Vice President of (a) PNC Bank, National Association, and (b) Columbia Housing SLP Corporation.

_Stacy Z L_
Notary Public in and for the
State of Kentucky
My Commission Expires: 8-30-15

4837-4545-8969.4

PLAINTIFFS_00008535

PROPERTY MANAGER ACKNOWLEDGMENT

The undersigned Property Manager for the Project acknowledges and agrees to be bound by the terms of Sections 6.11, 6.13 and 10.7 of the Amended and Restated Agreement of Limited Partnership of 2013 Travis Oak Creek, LP, dated as of May 23, 2014 (the "**Agreement**"), and, additionally, if and to the extent the undersigned Property Manager is an Affiliate of a General Partner of the Partnership, then the undersigned Property Manager also acknowledges and agrees to be bound by the provisions of the Agreement which specifically reference and relate to the Property Manager.

Capitalized terms used but not defined shall have the meanings set forth in Article II of the Agreement.

PROPERTY MANAGER:

EUREKA MULTIFAMILY GROUP, L.P.

By: Eureka Multifamily Group GP, Inc.

By: _____
Rene O. Campos, Jr., its President

1

4837-4545-8969.4

CONFIDENTIAL

PLAINTIFFS_00008536

SCHEDULE TO
AMENDED AND RESTATED
AGREEMENT OF LIMITED PARTNERSHIP

| Term | Description |
|---|---|
| Accountants | CohnReznick LLP |
| Architectural Contract | The Standard AIA Form Agreement between Owner and Architect dated July 15, 2013, entered into by and between the 2007 Travis Heights, LP and the Project Architect, as assigned to the Partnership on or about the date hereof. |
| Bridge Loan | The loan obligation incurred by the Partnership from PNC Bank, National Association (the "Bridge Lender") in the maximum principal amount of $11,425,000 on such terms and conditions which shall have received the Consent of the SLP. |
| Builder | Weis Builders, Inc. |
| Carryover Allocation | $2,000,000 per annum |
| City Mortgage Loan | The mortgage loan to the Partnership from the Austin Housing Finance Corporation (the "**City Mortgage Lender**") in the maximum principal amount of $2,000,000, to be secured by a mortgage or deed of trust and on such terms and conditions as are set forth in the documents related thereto (collectively, the "**City Mortgage Loan Documents**"), all of the terms of which shall have received the Consent of the SLP. |
| Completion Date | March 1, 2016 |
| Construction Consultant | Betzler and Company |
| Construction Contract | The Standard AIA Form of Agreement between Owner and Contractor dated May 21, 2014, by and between the Partnership and the Builder which provides for a guaranteed maximum price of $32,703,003, in form and substance acceptable to the SLP.  The Construction Contract must be secured by 100% payment and performance bonds in form and substance acceptable to the SLP from a bonding company reasonably acceptable to the SLP. |
| Delivery Percentages | 2015         29.82%<br>2016-2024     100%<br>2025         100% less first year percentage |
| Developer | 2013 Travis Oak Creek Developer, Inc. |
| Development Agreement | Development Agreement dated on or about the date hereof by and between the Partnership and the Developer. |
| Environmental Reports | The phase I environmental report prepared by Terracon Consultants, Inc. dated March 28, 2014; the geotechnical report prepared by ECS Texas, LLP dated April 3, 2014. |
| First Mortgage Loan | The mortgage loan to the Partnership from PNC Bank, National Association (the "**First Mortgage Lender**") in the maximum principal amount of $27,300,000, to be secured by a mortgage or deed of trust and on such terms and conditions as are set forth in the documents related thereto (collectively, the "**First Mortgage Loan Documents**"), all of the terms of which shall have received the Consent of the SLP. |
| Forecasted Tax Credit | 2015         $596,279<br>2016-2024     $1,999,800<br>2025         $1,403,521 |

2

4837-4545-8969.4

| | |
|---|---|
| GP Predevelopment Loan | The loan to the Partnership from the General Partner in the maximum principal amount of $1,000,000, for payment of certain predevelopment expenses, on such terms and conditions as are set forth in the documents related thereto (collectively, the "**GP Predevelopment Loan Documents**"), all of the terms of which shall have received the Consent of the SLP. |
| HAP Contract | The 20-year Housing Assistance Payments Contract executed by HUD, as assigned to (or assumed by) the Partnership, providing rental assistance to 170 Low Income Units in the Project with an effective term through June 1, 2034. |
| ODG Cap | $3,080,542 |
| Operating Reserve Amount | $1,529,143 |
| Original Agreement | Agreement of Limited Partnership dated January 3, 2013. |
| Original Certificate | Certificate of Limited Partnership filed with the Secretary of State of Texas on January 3, 2013. |
| Permitted Loan | Collectively, the First Mortgage Loan and the City Mortgage Loan, as described in this Schedule. |
| Place of Business | 3001 Knox Street, Suite 400<br>Dallas, TX 75205 |
| Placement In Service Date | December 31, 2015 |
| Project Architect | Craycroft McElroy Hendryx LLC (or Bercy Chen Studio LP, with respect to the Project pavilion only) |
| Property Manager | Eureka Multifamily Group, L.P. |
| Registered Agent | 2001 Agency Corporation<br>14160 Dallas Parkway, Suite 800<br>Dallas, TX 75254 |
| Seller Loan | The mortgage loan to the Partnership from the 2007 Travis Oak Creek, LP (the "**Seller Lender**") in the maximum principal amount of $7,330,000, to be secured by a mortgage or deed of trust and on such terms and conditions as are set forth in the documents related thereto (collectively, the "**Seller Loan Documents**"), all of the terms of which shall have received the Consent of the SLP. |
| Tax Credit Price | $0.9350 |

4837-4545-8969.4

CONFIDENTIAL

PLAINTIFFS_00008538

**EXHIBIT 1**

**REAL PROPERTY DESCRIPTION**

The property is that which is listed in the Title Policy.

EXHIBIT 1

4837-4545-8969.4

CONFIDENTIAL

PLAINTIFFS_00008539

## EXHIBIT 2

## PARTNERS' CAPITAL CONTRIBUTIONS AND INTERESTS

As of May 23, 2014

| General Partner | Capital Contributions | Percentage Interest in Class of Partners |
|---|---|---|
| 2013 Travis Oak Creek GP, LLC<br>3001 Knox Street, Suite 400<br>Dallas, TX 75205 | $100 | _____% |

| SLP | Capital Contributions | Percentage Interest in Class of Partners |
|---|---|---|
| Columbia Housing SLP Corporation<br>121 S.W. Morrison Street, Suite 1300<br>Portland, Oregon 97204-3143 | $10 | 100% |

| ILP | Agreed-to Capital Contribution | Paid-In Capital Contribution* | Percentage Interest in Class of Partners |
|---|---|---|---|
| PNC Bank, National Association<br>121 S.W. Morrison Street, Suite 1300<br>Portland, Oregon 97204-3143 | $18,698,130 | $2,804,720 | 100% |

*Paid-in Capital Contribution as of the date of this Exhibit 2. Future Capital Contributions are subject to adjustment and are due at the times and subject to the conditions set forth in the Agreement to which this Exhibit 2 is attached.

EXHIBIT 2

4837-4545-8969.4

PLAINTIFFS_00008540

**EXHIBIT 3**

## GENERAL PARTNER'S FUNDING CERTIFICATE

**For [draws subsequent to closing for First] [Second] [Third] [Final] Installment. [Must be on Partnership letterhead]**

STATE OF _____ )
                                        ) ss.
COUNTY OF _____ )

## AFFIDAVIT

I, Rene O. Campos, as Manager of the General Partner defined below, being first duly sworn on oath, depose and say that:

**[to be included in each Affidavit delivered]**

1.      I am the Manager of 2013 Travis Oak Creek GP, LLC (the "**General Partner**"), a Texas limited liability company and the sole general partner of 2013 Travis Oak Creek, LP (the "**Partnership**"), a limited partnership organized and existing under the laws of the State of Texas.

2.      I am fully familiar with all of the General Partner's and the Partnership's business and financial affairs, including, without limiting the generality of the foregoing, all of the matters herein described.

3.      This Affidavit is made and delivered for the purpose of, among other things, inducing the Columbia Housing SLP Corporation and PNC Bank, National Association (collectively, the "**Limited Partners**") to fund their respective Capital Contribution Installments to the Partnership in connection with the development of that certain project known as Oak Creek Village (the "**Project**").

4.      The representations and warranties contained herein and in the Partnership's Amended and Restated Agreement of Limited Partnership of the Partnership (the "Agreement") are true and correct, in all material respects, and are not in any way misleading.

5.      The covenants contained in the Agreement that were to have been performed and completed by the date of this Affidavit have been fully and completely performed, as of this date, except as otherwise Consented to in advance by the Limited Partners, in writing.

6.      No default, breach or violation of the terms of the Agreement or any of the Project Documents on the part of the General Partner or the Partnership has occurred and is uncured as of this date.

7.      Neither the General Partner nor the Partnership is in default of any obligation relating to the business of the Partnership or the Project, as of the date hereof, and all obligations of the General Partner and the Partnership will be satisfied when due.

8.      No actions or proceedings of any kind or nature are pending or to the best of the General Partner's knowledge threatened against the General Partner or the Partnership, except as may be described in an exhibit attached hereto and made a part hereof. Such actions or proceedings are fully covered by insurance or, if adversely determined, would not have a material adverse effect on the General Partner's, or the Partnership's, as applicable, ability to pay when due any amounts that may become payable in respect of the Agreement or in connection with the Project, or to continue with the development and operation of the Project.

CONFIDENTIAL                                                                        PLAINTIFFS_00008541

9.      As of the date of this Affidavit, the General Partner (a) is solvent; (b) is able to pay its debts as they mature; (c) has capital sufficient to carry on the businesses in which it is engaged; and (d) has assets the present fair saleable value of which is greater than the amount of its liabilities.  The General Partner will not be rendered insolvent by performing the currently foreseeable obligations on its part to be performed in respect of the Project, or by conducting the transactions contemplated under the Agreement.

10.      All insurance requirements of the Agreement have been met and satisfied in all respects.

11.      As of the date of this Affidavit, all of the conditions and prerequisites for funding the **[subsequent construction draw for First] [Second] [Third] [Final]** Installment, as set forth in the Agreement, have been fully and completely performed and all representations and warranties contained in the Agreement are true and correct and not in any way misleading.

12.      There have been no changes to the Plans and Specifications except as permitted in the Agreement.

13.      As of the date of this Affidavit, the Guarantor meets the minimum net worth and liquidity requirements as set forth in Section 6.5(n) of the Agreement.

14.      There has been no material adverse change in the Project or the Partnership since delivery of the last Funding Certificate.

The foregoing matters are certified and agreed to by the undersigned General Partner as of the date of this Certificate, and you may rely hereon in consummating your investment in the Project/Partnership or in advancing your Capital Contribution Installment.  All certifications made herein shall constitute representations and warranties of the undersigned.  In the event of any material and adverse inaccuracy in any of the foregoing certifications, or failure to perform any of the foregoing agreements, the Limited Partners shall be entitled to any and all remedies under the Partnership Agreement and applicable law, including remedies for breach of warranty, representation, or agreement, and the undersigned shall defend and indemnify the Limited Partners against any liability or damages therefrom.

Capitalized terms used but not defined herein shall have the meaning given them in the Agreement.

GENERAL PARTNER:

2013 Travis Oak Creek GP, LLC
a(n) Texas limited liability company

By: _____
            Rene O. Campos, Manager

Sworn to before me on
this _____ day of
_____, 20____

_____
Notary Public

EXHIBIT 3 – Page 2

4837-4545-8969.4

**EXHIBIT 4**

**PLANS AND SPECIFICATIONS**

EXHIBIT 4

CONFIDENTIAL

PLAINTIFFS_00008543

May 13, 2014

# Exhibit "A" - List of Documents

Oak Creek Village Phase 1
2324 Wilson Street
Austin, Texas  78704

| Document Type | Labeled | Description | Dated |
|---|---|---|---|
| SITE | 01 OF 11 | DURWOOD STREET IMPROVEMENTS | 03.06.14 |
| | 02 OF 11 | GENERAL NOTES | 03.06.14 |
| | 03 OF 11 | EXISTING CONDITIONS AND DEMOLITION PLAN | 03.06.14 |
| | 04 OF 11 | SITE PLAN AND EROSION/SEDIMENTATION CONTROL PLAN | 03.06.14 |
| | 05 OF 11 | GRADING AND TEMPORARY TRAFFIC CONTROL PLAN | 03.06.14 |
| | 06 OF 11 | DRAINAGE PLAN | 03.06.14 |
| | 07 OF 11 | WATER LINE PROFILE PLAN | 03.06.14 |
| | 08 OF 11 | GENERAL DETAILS | 03.06.14 |
| | 09 OF 11 | GENERAL DETAILS | 03.06.14 |
| | 10 OF 11 | GENERAL DETAILS | 03.06.14 |
| | 11 OF 11 | TEMPORARY TRAFFIC CONTROL DETAILS | 03.06.14 |
| | 01 OF 47 | COVER SHEET | 03.11.14 |
| | 02 OF 47 | GENERAL NOTES | 03.11.14 |
| | 03 OF 47 | EXISTING CONDITIONALS & SITE DEMOLITION PLAN | 03.11.14 |
| | 04 OF 47 | UTILITY DEMOLITION AND RELOCATION PLAN | 03.11.14 |
| | 05 OF 47 | OVERALL SITE PLAN | 03.11.14 |
| | 06 OF 47 | SITE PLAN TABLES & NOTES | 03.11.14 |
| | 07 OF 47 | BUILDING ELEVATIONS PLAN | 03.11.14 |
| | 08 OF 47 | DETAILED SITE PLAN – NORTH | 03.11.14 |
| | 09 OF 47 | DETAILED SITE PLAN – SOUTH | 03.11.14 |
| | 10 OF 47 | DIMENSION CONTROL PLAN | 03.11.14 |
| | 11 OF 47 | PAVING PLAN | 03.11.14 |
| | 12 OF 47 | OVERALL UTILITY PLAN | 03.11.14 |
| | 13 OF 47 | DETAILED UTILITY PLAN – NORTH | 03.11.14 |
| | 14 OF 47 | DETAILED UTILITY PLAN – SOUTH | 03.11.14 |
| | 15 OF 47 | EXISTING DRAINAGE AREA PLAN | 03.11.14 |
| | 16 OF 47 | PROPOSED DRAINAGE AREA PLAN | 03.11.14 |
| | 17 OF 47 | OVERALL GRADING PLAN | 03.11.14 |
| | 18 OF 47 | DETAILED GRADING PLAN – NORTH | 03.11.14 |
| | 19 OF 47 | DETAILED GRADING PLAN – SOUTH | 03.11.14 |
| | 20 OF 47 | OVERALL STORM DRAIN PLAN | 03.11.14 |
| | 21 OF 47 | DETAILED STORM DRAIN PLAN – NORTH | 03.11.14 |


WEIS builders

Page 1 of 11

CONFIDENTIAL

PLAINTIFFS_00008544

May 13, 2014

# Exhibit "A" - List of Documents

| | | | |
|---|---|---|---|
| | 22 OF 47 | DETAILED STORM DRAIN PLAN – SOUTH | 03.11.14 |
| | 23 OF 47 | DETAILED STORM DRAIN PLAN – WEST | 03.11.14 |
| | 24 OF 47 | BIOFILTRATION POND PLAN | 03.11.14 |
| | 25 OF 47 | BIOFILTRATION POND DETAILS PLAN | 03.11.14 |
| | 26 OF 47 | EROSION AND SEDIMENTATION CONTROL PLAN | 03.11.14 |
| | 27 OF 47 | GENERAL DETAILS | 03.11.14 |
| | 28 OF 47 | GENERAL DETAILS | 03.11.14 |
| | 29 OF 47 | GENERAL DETAILS | 03.11.14 |
| | 30 OF 47 | GENERAL DETAILS | 03.11.14 |
| | 31 OF 47 | GENERAL DETAILS | 03.11.14 |
| | 32 OF 47 | GENERAL DETAILS | 03.11.14 |
| | 33 OF 47 | GENERAL DETAILS | 03.11.14 |
| | 34 OF 47 | GENERAL DETAILS | 03.11.14 |
| | 35 OF 47 | GENERAL DETAILS | 03.11.14 |
| | 36 OF 47 | TEMPORARY TRAFFIC CONTROL PLAN | 03.11.14 |
| | 37 OF 47 | TEMPORARY TRAFFIC CONTROL PLAN DETAILS | 03.11.14 |
| | 38 OF 47 | TEMPORARY TRAFFIC CONTROL PLAN DETAILS | 03.11.14 |
| | 39 OF 47 | TEMPORARY TRAFFIC CONTROL PLAN DETAILS | 03.11.14 |
| | 40 OF 47 | TEMPORARY TRAFFIC CONTROL PLAN DETAILS | 03.11.14 |
| | 41 OF 47 | LANDSCAPE DEMOLITION PLAN | 03.11.14 |
| | 42 OF 47 | LANDSCAPE PLAN | 03.11.14 |
| | 43 OF 47 | BIOFILTRATION POND LANDSCAPE PLAN | 03.11.14 |
| | 44 OF 47 | LANDSCAPE NOTES & DETAILS | 03.11.14 |
| | 45 OF 47 | EROSION & SEDIMENTATION CONTROL DETAILS | 03.11.14 |
| | 46 OF 47 | SUBDIVISION PLAT | 03.11.14 |
| | 47 OF 47 | PARKING GARAGE PLAN | 03.11.14 |
| ARCHITECTURAL | A0.00 | COVER PAGE | 04.15.14 |
| | A0.01 | DATA SHEET | 04.15.14 |
| | A0.02 | FIRE RESISTANCE RATED ASSEMBLY PLAN | 04.15.14 |
| | A0.03 | FIRE RESISTANCE RATED ASSEMBLY DETAILS | 04.15.14 |
| | A0.04a | LIFE SAFETY PLAN – LEVELS 5 & 6 | 04.15.14 |
| | A0.04b | LIFE SAFETY PLAN – LEVELS 2 & 3 EXIT DISCHARGE LEVELS | 04.15.14 |
| | A0.06 | GA.F.R.R. ASSEMBLY GA-RC #2601 & UL U905 1-HR F.R.R. TEXT | 12.16.13 |
| | A0.07a | UL L528 1-HR F.R.R. FLOOR/CEILING ASSEMBLY TEXT | 12.16.13 |
| | A0.07b | UL L528 1-HR F.R.R. FLOOR/CEILING ASSEMBLY TEXT | 12.16.13 |

CONFIDENTIAL

PLAINTIFFS_00008545

May 13, 2014

# Exhibit "A" - List of Documents

| | | |
|---|---|---|
| A0.08 | UL L528 1-HR F.R.R. FLOOR/CEILING ASSEMBLY TEXT | 12.16.13 |
| A0.09 | UL M500 2-HR F.R.R. FLOOR/CEILING ASSEMBLY TEXT | 12.16.13 |
| A0.10 | UL U301 2-HR F.R.R. ROOF ASSEMBLY TEXT | 12.16.13 |
| A0.11a | UL U305 1-HR F.R.R. WALL ASSEMBLY TEXT | 12.16.13 |
| A0.11b | UL U305 1-HR F.R.R. WALL ASSEMBLY TEXT | 12.16.13 |
| A0.12 | UL U341 1-HR F.R.R.ROOF ASSEMBLY TEXT | 12.16.13 |
| A0.13 | UL U356 1-HR F.R.R. WALL ASSEMBLY TEXT | 12.16.13 |
| A0.14 | UL V455 – SYSTEM B 2-HR F.R.R. TEXT | 12.16.13 |
| A0.15 | UL LISTED F.R.R ASSEMBLY | 04.15.14 |
| A1.01a | ARCHITECTURAL SITE PLAN – NORTH END & SITE PLAN – SOUTH PORTION | 04.15.14 |
| A1.01b | ARCHITECTURAL SITE PLAN – SOUTH END | 04.15.14 |
| A1.01c | PHASING PLAN & C.O.A. REQUIREMENTS FOR A TCO | 04.15.14 |
| A2.00a | GARAGE PLAN – LEVEL G1 | 04.15.14 |
| A2.00b | GARAGE PLAN – LEVEL G2 | 04.15.14 |
| A2.00c | GARAGE PODIUM DRAINAGE PLAN AND DETAILS | 04.15.14 |
| A2.00d | PODIUM PAVER PLAN | 04.15.14 |
| A2.01 | 1 BEDROOM ADAPTABLE FLOOR AND RCP PLANS | 04.15.14 |
| A2.02 | 2 BEDROOM ADAPTABLE FLOOR AND RCP PLANS | 04.15.14 |
| A2.02a | 2 BEDROOM ADAPTABLE FLOOR CANTILEVER | 04.15.14 |
| A2.03 | 3 BEDROOM ADAPTABLE FLOOR AND RCP PLANS | 04.15.14 |
| A2.03a | 3 BEDROOM ADAPTABLE FLOOR CANTILEVER | 04.15.14 |
| A2.04 | 4 BEDROOM ADAPTABLE FLOOR AND RCP PLANS | 04.15.14 |
| A2.05 | 1 BEDROOM – BF FLOOR AND RCP PLANS | 04.15.14 |
| A2.06 | 2 BEDROOM – BF FLOOR AND RCP PLANS | 04.15.14 |
| A2.07 | 3 BEDROOM – BF FLOOR AND RCP PLANS | 04.15.14 |
| A2.08 | 4 BEDROOM – BF FLOOR AND RCP PLANS | 04.15.14 |
| A3.01 | RESIDENTIAL UNIT INTERIOR ELEVATIONS | 04.15.14 |
| A3.02 | RESIDENTIAL UNIT INTERIOR ELEVATIONS | 02.20.14 |
| A3.03 | RESIDENTIAL UNIT INTERIOR ELEVATIONS | 04.15.14 |
| A3.04 | RESIDENTIAL UNIT INTERIOR ELEVATIONS | 04.15.14 |
| A4.01 | BUILDING FLOOR PLANS & TYP. PLAN DETAILS | 04.15.14 |
| A4.02 | BUILDING FLOOR PLANS & TYP. PLAN DETAILS | 04.15.14 |
| A4.03 | BUILDING FLOOR PLANS & TYP. PLAN DETAILS | 04.15.14 |
| A4.04 | BUILDING FLOOR PLANS & TYP. PLAN DETAILS | 04.15.14 |
| A4.05 | BUILDING FLOOR PLANS & TYP. PLAN DETAILS | 04.15.14 |
| A4.06 | BUILDING ROOF PLANS & TYP. PLAN DETAILS | 04.15.14 |

WEIS builders

CONFIDENTIAL

PLAINTIFFS_00008546

May 13, 2014

# Exhibit "A" - List of Documents

■  ■  ■  ■

| | | |
|---|---|---|
| A4.06a | BUILDING ROOF PLANS & TYP. PLAN DETAILS | 04.15.14 |
| A4.06b | BUILDING ROOF PLANS & TYP. PLAN DETAILS | 02.20.14 |
| A5.01 | S.E. AND N.W. EXTERIOR ELEVATIONS & RELATED DETAILS | 02.20.14 |
| A5.02 | S.E. AND N.W. INT. COURTYARD EXTERIOR ELEVATIONS | 02.20.14 |
| A5.03 | S.W. AND N.E. EXTERIOR ELEVATIONS | 02.20.14 |
| A6.01 | BUILDING SECTIONS AND DETAILS | 04.15.14 |
| A6.02 | BUILDING SECTIONS AND DETAILS | 04.15.14 |
| A6.06 | ENLARGED STAIR SECTIONS & DETAILS | 04.15.14 |
| A6.07 | ENLARGED ENCLOSED STAIR SECTIONS AND RELATED DETAILS | 12.16.13 |
| A6.08 | ENLARGED ELEVATOR A SECTIONS AND RELATED DETAILS | 12.16.13 |
| A7.01 | DOOR & DOOR HARDWARE SCHED. & RELATED DTLS | 04.15.14 |
| A7.02 | WINDOW SCHEDULE AND RELATED DETAILS | 04.15.14 |
| A8.01 | ENLARGED COMMUNITY BUILDING FLOOR PLANS | 04.15.14 |
| A8.02 | ENLARGED COMMON AREAS – ROOF DECK PLANS | 04.15.14 |
| A8.03 | ENLARGED COMMON AREAS | 02.20.14 |
| A8.04 | ENLARGED COMMON AREAS | 04.15.14 |
| A8.06 | ENLARGED STAIR PLANS & DETAILS | 02.20.14 |
| A8.07 | ENLARGED STAIR PLANS & DETAILS | 04.15.14 |
| A8.08 | ENLARGED STAIR PLANS & DETAILS | 04.15.14 |
| A8.09 | ENLARGED STAIR PLANS & DETAILS | 02.20.14 |

| | | | |
|---|---|---|---|
| STRUCTURAL | S0.00 | STRUCTURAL COVER SHEET | 12.19.13 |
| | S0.01 | STRUCTURAL DESIGN CRITERIA | 12.19.13 |
| | S0.02 | CONCRETE SPECIFICATIONS | 04.15.14 |
| | S0.03 | CONCRETE SPECIFICATIONS | 12.19.13 |
| | S0.04 | ELEVATED POST TENSION SLAB NOTES | 12.19.13 |
| | S0.05 | GENERAL SPECIFICATIONS | 12.19.13 |
| | S0.06 | GENERAL SPECIFICATIONS | 12.19.13 |
| | S0.07 | GENERAL SPECIFICATIONS | 12.19.13 |
| | S1.10 | OVERALL FOUNDATION PLAN | 02.20.14 |
| | S1.10A | FOUNDATION PLAN – A | 12.19.13 |
| | S1.10AN | FOUNDATION PLAN | 02.20.14 |
| | S1.10AS | FOUNDATION PLAN | 02.20.14 |
| | S1.10B | FOUNDATION – B | 04.15.14 |
| | S1.10C | FOUNDATION – C | 02.20.14 |
| | S1.10D | FOUNDATION – D | 04.15.14 |

**WEIS builders**

CONFIDENTIAL

PLAINTIFFS_00008547

May 13, 2014

# Exhibit "A" - List of Documents

| | | |
|---|---|---|
| S1.10E | FOUNDATION – E | 12.19.13 |
| S1.11B | POST TENSION CABLE PLAN – B | 02.20.14 |
| S1.11D | POST TENSION CABLE PLAN – D | 02.20.14 |
| S.111E | POST TENSION CABLE PLAN – E | 12.19.13 |
| S2.00 | OVERALL LEVEL 2 FORMING PLAN | 02.20.14 |
| S2.00A | LEVEL 2 FORMING PLAN - A | 12.19.13 |
| S2.00AN | LEVEL 2 FORMING PLAN | 02.20.14 |
| S2.00AS | LEVEL 2 FORMING PLAN | 04.15.14 |
| S2.00B | LEVEL 2 FORMING PLAN - B | 12.19.13 |
| S2.00C | LEVEL 2 FORMING PLAN – C | 02.20.14 |
| S2.01 | OVERALL LEVEL 2 ELEVATED P.T.PLAN | 02.20.14 |
| S2.01A | LEVEL 2 ELEVATED P.T. PLAN – A | 12.19.13 |
| S2.01AN | LEVEL 2 ELEVATED P.T. PLAN | 02.20.14 |
| S2.01AS | LEVEL 2 ELEVATED P.T. PLAN | 02.20.14 |
| S2.01B | LEVEL 2 ELEVATED P.T. PLAN – B | 12.19.13 |
| S2.01C | LEVEL 2 ELEVATED P.T. PLAN – C | 02.20.14 |
| S2.02 | OVERALL LEVEL 2 ELEVATED REINFORCING PLAN | 02.20.14 |
| S2.02A | LEVEL 2 ELEVATED REINFORCING PLAN – A | 12.19.13 |
| S2.02AN | LEVEL 2 ELEVATED REINFORCING PLAN | 02.20.14 |
| S2.02AS | LEVEL 2 ELEVATED REINFORCING PLAN | 02.20.14 |
| S2.02B | LEVEL 2 ELEVATED REINFORCING PLAN – B | 12.19.13 |
| S2.02C | LEVEL 2 ELEVATED REINFORCING PLAN – C | 02.20.14 |
| S2.10 | OVERALL LEVEL 3 ELEVATED FORMING PLAN | 02.20.14 |
| S2.10A | LEVEL 3 FORMING PLAN – A | 12.19.13 |
| S2.10AN | LEVEL 3 FORMING PLAN | 04.15.14 |
| S2.10AS | LEVEL 3 FORMING PLAN | 04.15.14 |
| S2.10B | LEVEL 3 FORMING PLAN – B | 12.19.13 |
| S2.10C | LEVEL 3 FORMING PLAN – C | 04.15.14 |
| S2.11 | OVERALL LEVEL 3 P.T. PLAN | 02.20.14 |
| S2.11A | LEVEL 3 ELEVATED P.T. PLAN - A | 12.19.13 |
| S2.11AN | LEVEL 3 ELEVATED P.T. PLAN | 02.20.14 |
| S2.11AS | LEVEL 3 ELEVATED P.T. PLAN | 02.20.14 |
| S2.11B | LEVEL 3 ELEVATED P.T. PLAN – B | 12.19.13 |
| S2.11C | LEVEL 3 ELEVATED P.T. PLAN – C | 02.20.14 |
| S2.12 | OVERALL LEVEL 3 ELEVATED REINFORCING PLAN | 02.20.14 |
| S2.12A | LEVEL 3 ELEVATED REINFORCING PLAN - A | 12.19.13 |
| S2.12AN | LEVEL 3 ELEVATED REINFORCING PLAN | 02.20.14 |
| S2.12AS | LEVEL 3 ELEVATED REINFORCING PLAN | 02.20.14 |
| S2.12B | LEVEL 3 ELEVATED REINFORCING PLAN – B | 12.19.13 |



WEIS builders

CONFIDENTIAL

PLAINTIFFS_00008548

# Exhibit "A" - List of Documents

| | | |
|---|---|---|
| S2.12C | LEVEL 3 ELEVATED REINFORCING PLAN – C | 02.20.14 |
| S3.10A | STUD LAYOUT PLAN – A | 12.19.13 |
| S3.10AN | STUD LAYOUT PLAN | 02.20.14 |
| S3.10AS | STUD LAYOUT PLAN | 02.20.14 |
| S3.10B | STUD LAYOUT PLAN – B | 02.20.14 |
| S3.10C | STUD LAYOUT PLAN – C | 02.20.14 |
| S3.10D | STUD LAYOUT PLAN – D | 02.20.14 |
| S3.10E | STUD LAYOUT PLAN – E | 12.19.13 |
| S4.10B | FLOOR & ROOF FRAMING PLAN – LEVEL 3 | 04.15.14 |
| S4.10D | FLOOR & ROOF FRAMING PLAN – LEVEL 3 | 04.15.14 |
| S4.10E | FLOOR & ROOF FRAMING PLAN – LEVEL 3 | 12.19.13 |
| S4.20A | FLOOR & ROOF FRAMING PLAN – LEVEL 4 | 12.19.13 |
| S4.20AN | FLOOR & ROOF FRAMING PLAN – LEVEL 4 | 04.15.14 |
| S4.20AS | FLOOR & ROOF FRAMING PLAN – LEVEL 4 | 04.15.14 |
| S4.20B | FLOOR & ROOF FRAMING PLAN – LEVEL 4 | 04.15.14 |
| S4.20C | FLOOR & ROOF FRAMING PLAN – LEVEL 4 | 02.20.14 |
| S4.20D | FLOOR & ROOF FRAMING PLAN – LEVEL 4 | 04.15.14 |
| S4.20E | FLOOR & ROOF FRAMING PLAN – LEVEL 4 | 12.19.13 |
| S4.21A | FLOOR & ROOF FRAMING PLAN – LEVEL 5 | 12.19.13 |
| S4.21AN | FLOOR & ROOF FRAMING PLAN – LEVEL 5 | 04.15.14 |
| S4.21AS | FLOOR & ROOF FRAMING PLAN – LEVEL 5 | 04.15.14 |
| S4.21B | FLOOR & ROOF FRAMING PLAN – LEVEL 5 | 04.15.14 |
| S4.21C | FLOOR & ROOF FRAMING PLAN – LEVEL 5 | 02.20.14 |
| S4.21D | FLOOR & ROOF FRAMING PLAN – LEVEL 5 | 04.15.14 |
| S4.21E | FLOOR & ROOF FRAMING PLAN – LEVEL 5 | 12.19.13 |
| S4.22A | FLOOR & ROOF FRAMING PLAN – LEVEL 6 | 12.19.13 |
| S4.22AN | FLOOR & ROOF FRAMING PLAN – LEVEL 6 | 02.20.14 |
| S4.22AS | FLOOR & ROOF FRAMING PLAN – LEVEL 6 | 04.15.14 |
| S4.22B | FLOOR & ROOF FRAMING PLAN – LEVEL 6 | 12.19.13 |
| S4.22C | FLOOR & ROOF FRAMING PLAN – LEVEL 6 | 02.20.14 |
| S5.10A | BRACING PLAN – A | 12.19.13 |
| S5.10AN | BRACING PLAN | 02.20.14 |
| S5.10AS | BRACING PLAN | 02.20.14 |
| S5.10B | BRACING PLAN – B | 02.20.14 |
| S5.10C | BRACING PLAN – C | 02.20.14 |
| S5.10D | BRACING PLAN – D | 02.20.14 |
| S5.10E | BRACING PLAN – E | 12.19.13 |
| S6.10A | ROOF FRAMING PLAN | 12.19.13 |
| S6.10AN | ROOF FRAMING PLAN | 02.20.14 |


WEIS builders

CONFIDENTIAL

PLAINTIFFS_00008549

May 13, 2014

# Exhibit "A" - List of Documents

| | | | |
|---|---|---|---|
| | S6.10AS | ROOF FRAMING PLAN | 02.20.14 |
| | S6.10B | ROOF FRAMING PLAN | 02.20.14 |
| | S6.10C | ROOF FRAMING PLAN | 02.20.14 |
| | S6.10D | ROOF FRAMING PLAN | 02.20.14 |
| | S6.10E | ROOF FRAMING PLAN | 12.19.13 |
| | S7.01 | FOUNDATION DETAILS | 04.15.14 |
| | S7.02 | FOUNDATION DETAILS | 12.19.13 |
| | S7.03 | FOUNDATION DETAILS | 02.20.14 |
| | S7.10 | ELEVATED POST TENSION DETAILS | 12.19.13 |
| | S7.11 | ELEVATED POST TENSION DETAILS | 12.19.13 |
| | S7.12 | ELEVATED POST TENSION DETAILS | 12.19.13 |
| | S7.13 | STUD RAIL SCHEDULES | 12.19.13 |
| | S7.14 | COLUMN, RCB & SHEARWALL SCHEDULE | 12.19.13 |
| | S7.20 | ELEVATED CONCRETE DETAILS | 12.19.13 |
| | S7.21 | ELEVATED CONCRETE DETAILS STEEL BASE PLATE | 12.19.13 |
| | S8.00 | ROOF UPLIFT SECTIONS | 12.19.13 |
| | S8.01 | ROOF UPLIFT SECTIONS | 12.19.13 |
| | S8.02 | ROOF UPLIFT SECTIONS | 12.19.13 |
| | S8.10 | TYPICAL 2 STORY G.T. UPLIFT DETAILS | 12.19.13 |
| | S8.11 | TYPICAL 3 STORY G.T. UPLIFT DETAILS | 12.19.13 |
| | S8.12 | TYPICAL 4 STORY G.T. UPLIFT DETAILS | 12.19.13 |
| | S8.20 | TYPICAL FRAMING DETAILS | 12.19.13 |
| | S8.21 | TYPICAL FRAMING DETAILS | 12.19.13 |
| | S8.40 | FLOOR FRAMING DETAILS | 04.15.14 |
| | S8.41 | FLOOR FRAMING DETAILS | 04.15.14 |
| | S8.42 | FLOOR FRAMING DETAILS | 04.15.14 |
| | S8.43 | STAIR LANDING FRAMING | 04.15.14 |
| | S8.50 | ROOF FRAMING DETAILS | 02.20.14 |
| | S8.60 | WOOD SHRINKAGE DETAIL | 12.19.13 |
| | S9.01 | 2 STORY ANCHORAGE ELEVATIONS | 12.19.13 |
| | S9.02 | 3 STORY ANCHORAGE ELEVATIONS | 12.19.13 |
| | S9.03 | 4 STORY ANCHORAGE ELEVATIONS | 12.19.13 |
| | S9.04 | SHEARWALL SCHEDULE & DETAILS | 12.19.13 |
| MECHANICAL | M0.01 | MECHANICAL COVER SHEET | 04.15.14 |
| | M1.01 | MECHANICAL PLAN - PARTIAL GARAGE PLAN | 01.06.14 |
| | M1.02 | MECHANICAL PLAN - PARTIAL GARAGE PLAN | 01.06.14 |
| | M1.03 | MECHANICAL PLAN - PARTIAL GARAGE PLAN | 04.15.14 |
| | M2.01 | MECHANICAL PLAN - THEATER & MAINTENANCE AREAS | 04.15.14 |


WEIS builders

CONFIDENTIAL

PLAINTIFFS_00008550

May 13, 2014

# Exhibit "A" - List of Documents

| | | | |
|---|---|---|---|
| | M2.02 | MECHANICAL PLAN - FITNESS AREA | 04.15.14 |
| | M2.03 | MECHANICAL PLAN - FITNESS AREA | 04.15.14 |
| | M2.04 | MECHANICAL PLAN – LEVEL 6 | 04.15.14 |
| | M2.10 | MECHANICAL PLAN - PARTIAL ROOF | 04.15.14 |
| | M2.11 | MECHANICAL PLAN - PARTIAL ROOF | 04.15.14 |
| | M2.12 | MECHANICAL PLAN - PARTIAL ROOF | 04.15.14 |
| | M3.01 | MECHANICAL PLAN – UNIT PLANS | 02.20.14 |
| | M3.02 | MECHANICAL PLAN – UNIT PLANS | 02.20.14 |
| | M3.03 | MECHANICAL PLAN – UNIT PLANS | 02.20.14 |
| | M3.04 | MECHANICAL PLAN – UNIT PLANS | 02.20.14 |
| | M3.05 | MECHANICAL PLAN – UNIT PLANS | 02.20.14 |
| | M3.06 | MECHANICAL PLAN – UNIT PLANS | 02.20.14 |
| | M4.01 | MECHANICAL DETAILS | 01.06.14 |
| | M5.01 | MECHANICAL SPECIFICATIONS | 01.06.14 |
| ELECTRICAL | E0.01 | ELECTRICAL COVER SHEET | 04.15.14 |
| | E0.02 | SITE KEY PLAN | 01.06.14 |
| | E0.03 | SITE LIGHTING PLAN | 01.06.14 |
| | E0.04 | SITE LIGHTING PLAN | 01.06.14 |
| | E0.05 | SITE PHOTOMETRIC PLAN | 01.06.14 |
| | E0.06 | SITE PHOTOMETRIC PLAN | 01.06.14 |
| | E1.01 | ELECTRICAL BUILDING 1AW – LEVEL 2 PLANS | 04.15.14 |
| | E1.02 | ELECTRICAL BUILDING 1AW – LEVEL 3 PLANS | 04.15.14 |
| | E1.03 | ELECTRICAL BUILDING 1AW – LEVEL 4 PLANS | 04.15.14 |
| | E1.04 | ELECTRICAL BUILDING 1AW – LEVEL 5 PLANS | 04.15.14 |
| | E1.05 | ELECTRICAL BUILDING 1AE – LEVEL 2 PLANS | 04.15.14 |
| | E1.06 | ELECTRICAL BUILDING 1AE – LEVEL 3 PLANS | 04.15.14 |
| | E1.07 | ELECTRICAL BUILDING 1AE – LEVEL 4 PLANS | 04.15.14 |
| | E1.08 | ELECTRICAL BUILDING 1AE – LEVEL 5 PLANS | 04.15.14 |
| | E1.09 | ELECTRICAL BUILDING 1BW – LEVEL 3 PLANS | 04.15.14 |
| | E1.10 | ELECTRICAL BUILDING 1BW – LEVEL 4 PLANS | 04.15.14 |
| | E1.11 | ELECTRICAL BUILDING 1BW – LEVEL 5 PLANS | 04.15.14 |
| | E1.12 | ELECTRICAL BUILDING 1BW – LEVEL 6 PLANS | 04.15.14 |
| | E1.13 | ELECTRICAL BUILDING 1BW – LEVELS 3, 4 & 5 PLANS | 04.15.14 |
| | E1.14 | ELECTRICAL BUILDING 1BE – LEVEL 3 PLANS | 04.15.14 |
| | E1.15 | ELECTRICAL BUILDING 1BE – LEVELS 3 & 4 PLANS | 04.15.14 |
| | E1.16 | ELECTRICAL BUILDING 1BE – LEVEL 4 PLANS | 04.15.14 |
| | E1.17 | ELECTRICAL BUILDING 1BE – LEVEL 5 PLANS | 04.15.14 |
| | E1.18 | ELECTRICAL BUILDING 1BE – LEVELS 5 & 6 PLANS | 04.15.14 |

CONFIDENTIAL

PLAINTIFFS_00008551

May 13, 2014                          Exhibit "A" - List of Documents

| | | | |
|---|---|---|---|
| | E1.19 | ELECTRICAL BUILDING 1BE – LEVEL 6 PLANS | 04.15.14 |
| | E1.20 | ELECTRICAL ROOF PLANS | 04.15.14 |
| | E1.21 | ELECTRICAL ROOF PLANS | 04.15.14 |
| | E2.01 | ELECTRICAL PARKING GARAGE PLANS | 04.15.14 |
| | E2.02 | ELECTRICAL PARKING GARAGE PLANS | 04.15.14 |
| | E2.03 | ELECTRICAL PARKING GARAGE ENLARGED PLANS | 04.15.14 |
| | E2.04 | ELECTRICAL THEATER/MAINTENANCE/TRASH ROOMS PLANS | 04.15.14 |
| | E2.05 | ELECTRICAL FITNESS/COMMUNITY ROOMS PLANS | 04.15.14 |
| | E2.06 | ELECTRICAL ROOF DECK | 04.15.14 |
| | E3.01 | TYPICAL UNIT PLANS | 04.15.14 |
| | E3.02 | TYPICAL UNIT PLANS | 02.20.14 |
| | E3.03 | TYPICAL UNIT PLANS | 02.20.14 |
| | E3.04 | TYPICAL UNIT PLANS | 02.20.14 |
| | E3.05 | TYPICAL UNIT PLANS | 02.20.14 |
| | E3.06 | TYPICAL UNIT PLANS | 02.20.14 |
| | E4.01 | ELECTRICAL SERVICE RISER DIAGRAMS | 04.15.14 |
| | E4.02 | ELECTRICAL SERVICE RISER DIAGRAMS | 04.15.14 |
| | E4.03 | ELECTRICAL SERVICE RISER DIAGRAMS | 04.15.14 |
| | E4.04 | ELECTRICAL SERVICE RISER DIAGRAMS | 04.15.14 |
| | E5.01 | ELECTRICAL LOAD SUMMARIES AND PANEL SCHEDULES | 04.15.14 |
| | E5.02 | ELECTRICAL LOAD SUMMARIES AND PANEL SCHEDULES | 04.15.14 |
| | E5.03 | ELECTRICAL LOAD SUMMARIES AND PANEL SCHEDULES | 04.15.14 |
| | E5.04 | ELECTRICAL LOAD SUMMARIES AND PANEL SCHEDULES | 04.15.14 |
| | E6.01 | ELECTRICAL SPECIFICATIONS | 01.06.14 |
| | | LOW VOLTAGE HAND DRAWN SITE SCHEMATIC – POE – AT & T | NO DATE SIGNED |
| | | POE – GRANDE HAND DRAWN ON OVERALL SITE PLAN | 03.11.14 |
| | | POE – TIME WARNER | 02.21.14 |
| VOICE VIDEO DATA | 01-25 OF 25 | VOICE VIDEO DATA | 03.17.14 |
| PLUMBING | P0.01 | PLUMBING COVER SHEET | 04.15.14 |
| | P0.02 | PLUMBING SITE PLAN | 04.15.14 |
| | P0.03 | PLUMBING SITE PLAN | 04.15.14 |
| | P1.01 | PLUMBING BUILDING 1A – W LEVEL 2 PLANS | 04.15.14 |
| | P1.02 | PLUMBING BUILDING 1A – W LEVEL 3 PLANS | 04.15.14 |

WEIS builders

CONFIDENTIAL                                    PLAINTIFFS_00008552

May 13, 2014

# Exhibit "A" - List of Documents

| | | |
|---|---|---|
| P1.03 | PLUMBING BUILDING 1A – W LEVEL 4 PLANS | 04.15.14 |
| P1.04 | PLUMBING BUILDING 1A – W LEVEL 5 PLANS | 04.15.14 |
| P1.05 | PLUMBING BUILDING 1A – E LEVEL 2 PLANS | 04.15.14 |
| P1.06 | PLUMBING BUILDING 1A – E LEVEL 3 PLANS | 04.15.14 |
| P1.07 | PLUMBING BUILDING 1A – E LEVEL 4 PLANS | 04.15.14 |
| P1.08 | PLUMBING BUILDING 1A – E LEVEL 5 PLANS | 04.15.14 |
| P1.09 | PLUMBING BUILDING 1B – W LEVEL 3 PLANS | 04.15.14 |
| P1.10 | PLUMBING BUILDING 1B – W LEVEL 4 PLANS | 04.15.14 |
| P1.11 | PLUMBING BUILDING 1B – W LEVEL 5 PLANS | 04.15.14 |
| P1.12 | PLUMBING BUILDING 1B – W LEVEL 6 PLANS | 04.15.14 |
| P1.13 | PLUMBING BUILDING 1B – E LEVEL 3 PLANS | 04.15.14 |
| P1.14 | PLUMBING BUILDING 1B – E LEVEL 3 & 4 PLANS | 04.15.14 |
| P1.15 | PLUMBING BUILDING 1B – E LEVEL 4 PLANS | 04.15.14 |
| P1.16 | PLUMBING BUILDING 1B – E LEVEL 5 PLANS | 04.15.14 |
| P1.17 | PLUMBING BUILDING 1B – E LEVEL 5 & 6 PLANS | 04.15.14 |
| P1.18 | PLUMBING BUILDING 1B – E LEVEL 6 PLANS | 04.15.14 |
| P1.19 | PLUMBING BUILDING 1B – S LEVEL 3, 4 & 5 PLANS | 04.15.14 |
| P2.01 | PARTIAL GARAGE LEVEL G1 | 04.15.14 |
| P2.02 | PARTIAL GARAGE LEVEL G2 | 04.15.14 |
| P3.01 | COMMUNITY AND FITNESS ROOMS | 04.15.14 |
| P3.02 | BUSINESS CENTER AND CLASSROOM | 04.15.14 |
| P3.03 | MAINTENANCE/SPLASH WATER AND VENT | 04.15.14 |
| P3.04 | BREAKROOM AND TOILET WASTE AND VENT | 04.15.14 |
| P4.01 | UNIT PLANS PLUMBING | 04.15.14 |
| P4.02 | UNIT PLANS PLUMBING | 04.15.14 |
| P4.03 | UNIT PLANS PLUMBING | 04.15.14 |
| P5.01 | PLUMBING SCHEDULES | 04.15.14 |
| P5.02 | PLUMBING DETAILS | 04.15.14 |
| P5.03 | PLUMBING DETAILS | 01.06.14 |
| P6.01 | PLUMBING AND FIRE SUPPRESSION SPECIFICATIONS | 01.06.14 |
| P7.01 | TYPICAL STACK DETAILS | 04.15.14 |
| P7.02 | TYPICAL STACK DETAILS | 04.15.14 |
| P7.03 | TYPICAL STACK DETAILS | 04.15.14 |
| 1SF | ONE BEDROOM INTERIOR FINISH SCHEDULE – FINISHES | 03.19.14 |
| 1SH | ONE BEDROOM INTERIOR FINISH SCHEDULE – HARDWARE | 03.19.14 |
| 2SF | TWO BEDROOM INTERIOR FINISH SCHEDULE – FINISHES | 03.19.14 |

INTERIOR DESIGN

WEIS builders

CONFIDENTIAL

PLAINTIFFS_00008553

May 13, 2014

# Exhibit "A" - List of Documents

| | 2SH | TWO BEDROOM INTERIOR FINISH SCHEDULE – HARDWARE | 03.19.14 |
|---|---|---|---|
| | 3SF | THREE BEDROOM INTERIOR FINISH SCHEDULE – FINISHES | 03.19.14 |
| | 3SH | THREE BEDROOM INTERIOR FINISH SCHEDULE – HARDWARE | 03.19.14 |
| | 4SF | FOUR BEDROOM INTERIOR FINISH SCHEDULE – FINISHES | 03.19.14 |
| | 4SH | FOUR BEDROOM INTERIOR FINISH SCHEDULE – HARDWARE | 03.19.14 |
| | AC-SFH | AUDITORIUM-CLASSROOM INTERIOR FINISH SCHEDULE – FINISHES – SCHEDULE – HARDWARE | 03.19.14 |
| | BFM-SF | BUSINESS CTR-FITNESS-MAIL – INTERIOR FINISH SCHEDULE – FINISHES | 03.19.14 |
| | BFM-SH | BUSINESS CTR-FITNESS-MAIL – INTERIOR FINISH SCHEDULE – HARDWARE | 03.19.14 |
| | KML-SF | PUBLIC KITCHEN-MANAGER-LEASING OFFICES – INTERIOR FINISH SCHEDULE – FINSHES | 03.19.14 |
| | KML-SH | PUBLIC KITCHEN-MANAGER-LEASING OFFICES – INTERIOR FINISH SCHEDULE – HARDWARE | 03.19.14 |
| | PRR-SFH | PUBLIC RESTROOMS INTERIOR FINISH – SCHEDULE – FINISHES – SCHEDULE - HARDWARE | 03.19.14 |
| COLOR SCHEME | 1-2 OF 2 | OAK CREEK VILLAGE – PHASE 1 – COLOR SCHEME PER BCS | 04.01.14 |
| PROJECT MANUAL | | PROJECT MANUAL FOR OAK CREEK VILLAGE – PHASE 1 | 12.16.13 |
| GEOTECHNICAL | | GEOTECHNICAL ENGINEERING REPORT | 04.03.14 |



CONFIDENTIAL

PLAINTIFFS_00008554

May 13, 2014

# Exhibit "E" – Contractor's Clarifications and Exclusions

Eureka Development
Oak Creek Village Phase I
Austin, Texas

### DIVISION 2: Sitework

1. Removal of all above grade items identified in the plans such as existing buildings, pavement, sidewalks, and walls identified in Exhibit A documents.
2. Removal and disposal of any buried structures, debris or trash not currently identified in Exhibit A documents is not included.
3. An allowance per Exhibit F is included for shoring and maintaining the structure in the existing leasing office around the boilers.
4. Cost associated with tree relocations is by owner.
5. An allowance per Exhibit F is included for a temporary sediment basin structure.
6. Building pad construction is prepared per the Geotech provided by ECS dated April 3, 2014.
7. All site dry utilities are direct buried or in conduit (concrete encasement not included).
8. An allowance per Exhibit F is included for existing utility modifications of electrical, gas, water and irrigation.
9. Dewatering of site is not included.
10. All existing on-site materials are considered to be "unrestricted re-use".
11. Parking lot striping is included with wheel stops.
12. All concrete flatwork shall receive broom finish.
13. Concrete pavers on pedestals are included for the corridors, splash pad and roof top deck.
14. Site retaining walls are included as a stone gravity wall with a mosaic pattern.
15. An Allowance per Exhibit F is included for site furnishings.
16. A 6' painted wrought iron picket fence along Wilson Street and the north property line along Phase I is included.
17. Pedestal paver provided at the splash pad area and corridors of area (A) & (C) for a total of 6,220sf. Pedestal pavers and Mexican beach rock are not included in the court yard of area (A) & (C); accepted VE.
18. Tree pruning of existing trees to remain is not included.
19. Landscaping and irrigation per landscape drawing sheet # 42 of 47 of the civil plans.

### Division 3: Concrete

1. Integral concrete waterproofing admixture for the concrete is not included.
2. Building slab on grade is based on a 4" post-tension slab with grade beams over a 10 mil poly for areas B & D.
3. Area A & C includes interior columns supported on piers with a min length of 8' and a spread footing for the basement walls.
4. The garage slab on grade is a 5" slab over 6" of rock with #4 bars at 15" o.c.e.w.
5. The courtyard area of the elevated podium slab is finished with slopes to drains
6. The courtyard area of the elevated podium slab includes a 2" topping slab.
7. 3/4" cementitious underlayment flooring by Maxxon (or equal), 2.1 mix design with a 2,000 psi with sound mat under all hard surface areas is included at the wood elevated floors.
8. Level 3 of areas A & C includes 8" of EPS board with drilled pier holes and a 2" gypsum topping.
9. Minimum of 1-1/2" pea gravel mix concrete for the balconies and breezeways with a drain board and 60 mil waterproofing. All concrete topping shall receive broom finish.



CONFIDENTIAL                    PLAINTIFFS_00008555

# Exhibit "E" – Contractor's Clarifications and Exclusions

## Division 4: Masonry

1. CMU elevator shafts are included.
2. CMU stair shafts are included in the garage and at stair A north to the 6th level.

## Division 5: Steel

1. 180 degree stairs of C-channel metal stringers with precast treads and closed risers are included with precast concrete treads
2. 42" high guardrail with punched circles through plated material is included at stairs, balconies and corridors.
3. Guard rails along low parapets are not included.
4. All stairs, handrails and guardrail are pre-primed and field painted.

## Division 6: Woods & Plastics

1. Lumber is priced per current "Random Links" market conditions
2. Studs – 2x4 & 2x6, grade and species per structural design.
3. Plates – 2x4 & 2x6, grade and species per structural design.
4. 2x4 & 2x6 pressure treated plate on the first floor.
5. Radiant Barrier Roof Decking: 4x8 – 23/32" OSB for flat roof areas.
6. Floor Decking: 4x8 – 23/32" T&G OSB.
7. Exterior sheathing and shear walls: 15/32" OSB at UL356 and 5/8" dens glass at UL305 assemblies.
8. Prefabricated roof, floor trusses per manufacturer's design.
9. Unit interior trim is based on MDF material for the 2" casing base and window stools.
10. Theater, Classroom, Office, Leasing, Break room and common area trim labor and material allowance per Exhibit F is included.

## Division 7: Thermal & Moisture Protection

1. Attic: (R-38) fiberglass batt insulation in the attic attached to roof deck.
2. Ext. Walls: R19 batts unfaced.
3. Party Walls: R11 batts for sound attenuation.
4. Roofing includes a 60mil TPO membrane over mechanical attached 1" polyiso insulation w/ a 20yr warranty.
5. A fluid applied air barrier system is included.
6. An air barrier is not included at the roof per detail 9/A0.03.
7. Fire stopping per codes & governing authority.
8. Polyguard Underseal below grade waterproofing system is included as blindside waterproofing of garage walls.
9. Polyguard total flow drain system in lieu of below grade drain tile system is included.
10. Podium deck waterproofing system includes drain board and a 60mil waterproofing membrane topping.

## Division 8: Doors & Windows

1. Unit entry doors are included as a Flat slab Metal Insulated doors.
2. Interior doors are a Flat slab hollow core hardboard prehung unit.
3. Provide 3068 hollow core bedroom doors at (A) unit in lieu of barn doors; accepted VE
4. Provide hollow core unit bedroom doors in lieu of solid core doors; accepted VE
5. Single hung and horizontal sliding thermal break aluminum windows with ¼ screens are included.
6. Fire rated windows are included for all windows facing and adjacent to breezeways.

WEIS
builders

CONFIDENTIAL

PLAINTIFFS_00008556

May 13, 2014

# Exhibit "E" – Contractor's Clarifications and Exclusions

7. Door hardware is included as grade 3 hardware by BHP or Kwickset.
8. Vanity mirrors are included.

## Division 9: Finishes

1. EIFS is included for 100% of the building exterior skin.
2. Drywall material.
   a) 5/8" fire-resistant type "X" gypboard on fire rated walls.
   b) 5/8" moisture resistant gypboard at tubs surround, bath walls and ceiling, trash room and fire riser rooms.
   c) 5/8" fire-resistant type "C" on RC channel at ceilings.
3. Unit shower and tub surrounds are 6" x 6" semi-gloss tile with bullnose edge in lieu of 12" x 24" standard tile; accepted VE.
4. Vinyl plank wood look flooring 6" x 36" x 6mil is included in kitchens, baths, living rooms, bedrooms and closets in lieu of specified material.
5. Interior painting is based on typical apartment standards; semi-gloss on millwork & doors, kitchen & baths walls and ceiling; all other surfaces will be flat.
6. Exterior elastomeric accent paint is included per the Color Scheme dated: 04.01.2014 provided by Bercy Chen Studio.

## Division 10: Special Conditions

1. Signage is by owner.
2. Toilet partitions are not included.
3. Fire extinguishers included in each kitchen & provided per building code.
4. Mailboxes and parcel boxes as per applicable codes.
5. Flag poles are not included.
6. Bath accessories per plan include:
   • Towel bar.
   • Toilet paper holder.
   • Shower Rod.
   • Mirrored medicine cabinets

## Division 11: Equipment

1. Black and Stainless standard apartment grade appliances in lieu of appliance package specified; accepted VE.
   • 2009 Whirlpool 18TFA SS - W8RXEGMWS
   • 30" FS Range Elec Coil Slf Cln SS - WFC310S0AS
   • 1.7 cu. ft. Microwave Hood, Non Sensor - WMH31017AS
   • Dishwasher - WDF310PAAS
   • Whirlpool 18 cu.ft. XL SS - WRT138TFYS (ADA)
   • 30" FS Range Elec Coil Front Controls SS - WFC340S0AS (ADA)
   • 1.6 cu. ft. Countertop Microwave Oven - WMC30516AS (ADA)
   • Dishwasher - WDF550SAAS (ADA)
2. Stacked front load washer and dryer in lieu of combo washer & dryer appliance; accepted VE
   • 27" Axial Flow - Elec Alpha - WED70HEBW
   • 27" FL - Alpha NAR - WFW70HEBW

## Division 12: Furnishings



CONFIDENTIAL

PLAINTIFFS_00008557