May 13, 2014

# Exhibit "E" – Contractor's Clarifications and Exclusions

1. Resident kitchens, vanities and office break room casework upper, lower & vanity cabinets are the Italia cabinet line with espresso finish and standard hardware in lieu of the Monza cabinet line from Master wood craft; accepted VE
2. Full extension drawer guides and magnetic catches for the cabinets are not included.
3. 2cm eased edge Group 1 Granite tops at kitchens and vanities are included in lieu of Quartz tops; accepted VE
4. 2" faux wood horizontal mini blinds on windows and patio doors.

## Division 13: Special Construction

1. Fire alarm system per IBC requirements.
2. Unit security pre-wire is not included; Accepted VE.
3. Pre-wire of future controlled access allowance per Exhibit F is included.
4. A controlled access system to the site, buildings or the garage is not included.
5. A splash pad allowance per Exhibit F is included.
6. Abatement of the existing structures is by owner.

## Division 14: Conveying Systems

1. Electric traction elevators in locations per plans with standard cab finishes are included.
2. Trash chute with sound damping coating included.
3. Trash compactor and carts are by owner.

## Division 15: Mechanical

1. NFPA 13 fire sprinkler system with standpipes and booster pump is included.
2. Residential white sprinkler heads with white escutcheons are included.
3. Sprinkler protections of the attic and floor trusses is included.
4. PVC waste and vent piping is included.
5. C.P.V.C. domestic water piping is included.
6. Washing machine drain pans are not included.
7. Plumbing fixtures provided per MEP plans dated: 01.06.2014 in lieu of ID schedule; accepted VE
8. Timers for the water heaters are not included.
9. Individual remote read domestic water meters in the units are not included. Plumbing for future meters is included.
10. Garage and courtyard deck drains are not included
11. Insulation of water systems is per minimum code requirements only.
12. The sewer ejector pump is not included.
13. Each unit includes individual programmable thermostats.
14. Split DX HVAC systems by Goodman with condensers located on the roof, SEER ratings per plans.
15. Anti-microbial duct board with flex duct for all supply ducting is included.
16. Garage ventilation system with CO2/NO2 detection systems is included.
17. 50 cfm bath exhaust vented horizontally to exterior wall. Fans are mounted on the bathroom walls in lieu of the ceiling.
18. Ducting of the kitchen vent-a-hood is included.
19. HVAC allowance per Exhibit F included for office, lease, break room and IDF rooms.



May 13, 2014

# Exhibit "E" -- Contractor's Clarifications and Exclusions

### Division 16: Electrical

1. Site trenching and conduit for primary electrical service with a max distance of 300' is included. Conductors to be furnished and installed by utility provider.
2. Site trenching, conduit, conductors for secondary electrical service are included.
3. Cost associated with an "In Network" system by Austin Energy is not included.
4. Sub-feeders are aluminum cable sized per code and not in conduit.
5. Romex cable for all branch and lighting circuits in all buildings is included.
6. Smoke detectors are 110v with battery backup.
7. Unit security pre-wire is not included; accepted VE
8. Allowance per Exhibit F for pre-wire of future access control locations; accepted VE
9. Allowance per Exhibit F for CCTV in 4 locations; accepted VE
10. Two (2) conduit to IDF rooms in lieu of three (3) conduit; accepted VE
11. Unit low voltage conduit is not included; accepted VE
12. Site lighting is included utilizing wall packs, 2ea parking lot light poles and 3ea pedestrian light bollards.
13. Allowance per Exhibit F is included for structured wire for Phone, Data and CATV.
14. Dry utility underground conduit allowance per Exhibit F included.
15. Equipment in the main communication and secondary rooms is by the service provider.

### General Notes:

1. GMP does not include Weis Builders or its subcontractors achieving any specific work force goals/requirements, wage requirements, or participation goals/requirements (such as those related to disadvantaged or minority owned businesses).
2. Cost associated with the Landscape/Hardscape plans by Bercy Chen is not included; no plans provided.
3. Cost associated with 3rd party inspections for the requirements of the Austin Green Buildings Program are not included.
4. Offsite Civil permit, Onsite Civil permit, Building permits, impact fees, and utility provider fees and costs will be paid directly by owner.
5. Traffic control and trade permits costs are included.
6. Cost associated with the shutdown and rework of the existing chilled water and boiler systems are by owner.
7. Payment and Performance bonds is included.
8. Builders Risk insurance is included.
9. Contractor's controlled insurance program is included. Weis Builders will be responsible for all deductibles.
10. All warranties for labor, material, and equipment are for one year from substantial completion except where manufacturer's standard warranty for material and/or equipment is greater.
11. All testing will be performed and directly paid for by the owner.
12. The work does not include any FF&E items i.e. furniture, televisions, computers, telephones, fax machines, photocopiers, or office equipment of any sort.
13. Contractor guarantees to build, per the plans and specifications. In doing so, Contractor does not guarantee specific STC or IIC sound ratings.
14. GMP is based on a continuous build out from the notice to proceed.
15. Water proofing, pedestal pavers and Mexican beach rock is not included in area B & D corridors.
16. City Comment No. 2 plans dated 04.15.2014 are included as an allowance per Exhibit F for the following scope changes:



Page 5 of 6

PLAINTIFFS_00008559

May 13, 2014

# Exhibit "E" – Contractor's Clarifications and Exclusions

      a.  Temporary fence for levels G1 and G2 of the parking garage.
      b.  Concrete curb on the podium deck located at the North edge.
      c.  9" tall x 8" wide pedestal footing base of column walls.
      d.  Additional ½" gypsum topping on holly board.
      e.  Stair shaft (A) tower increased length additional 2ft.
      f.  Trash room area (A) 2hr construction.
      g.  ADA open shelves in BF units.
      h.  Roof bridge extension level 6 roofs.
      i.  Window opening control devices.
      j.  Fixed (C) windows in lieu of operable (G) windows.
      k.  Barn door at theater location.
      l.  Stair shaft (A) podium level added a wall and door.
      m.  Common wall between building A & C revised UL assembly UL375.
      n.  South facing wall of building B & D added UL assembly UL301.
      o.  UL301 assembly revised.
      p.  Stair (A) Shaft wall UL905 revised.
      q.  Community ceiling defined to be new ULM500 assembly.
      r.  Secondary weeps add to podium level deck drains.
      s.  Public restrooms added in maintenance area, business center and classroom areas.
      t.  HVAC revisions and addition to classroom, fitness, and business center.
      u.  Added oil separators and sanitary sewer injector.
      v.  Floor drains and trap primer added in trash rooms and existing common bath.
      w.  Floor drains and trap primers in unit restroom are excluded.
      x.  Fire department connections on the roofs are included per code minimum.
      y.  Low frequency sound fire alarms are included.
      z.  Electrical fixtures and circuit revisions.

17. Future community pavilion structures and all associated green space features located in the southeast corner of development are not included.



CONFIDENTIAL

PLAINTIFFS_00008560

**EXHIBIT 5**

**AGREEMENT OF GUARANTY**

THIS AGREEMENT OF GUARANTY ("**Guaranty**") is made as of the 23rd day of May, 2014, by the undersigned (whether one or more, referred to as the "**Guarantor**"), for the benefit of 2013 Travis Oak Creek, LP, a Texas limited partnership (the "**Partnership**"), and PNC Bank, National Association, a national banking association, and Columbia Housing SLP Corporation, an Oregon corporation (collectively, the "**Limited Partners**"), which are limited partners in the Partnership governed pursuant to the Amended and Restated Agreement of Limited Partnership of the Partnership dated as of the date hereof (the "**Agreement**") for the purposes of acquiring, developing, owning and operating a multifamily residential rental apartment project (the "**Project**") located in the State of Texas (the "**State**"), and where 2013 Travis Oak Creek GP, LLC, a Texas limited liability company (the "**General Partner**"), is the general partner and 2013 Travis Oak Creek Developer, Inc., a Texas corporation, is the developer of the Project (the "**Developer**").

NOW, THEREFORE, in consideration of the foregoing recitals and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Guarantor, for the benefit of the Partnership and the Limited Partners, hereby irrevocably and unconditionally guarantees and agrees as follows:

1.      Reliance.  The Guarantor agrees and acknowledges that this Guaranty is given to induce the Limited Partners to invest in and become limited partners in the Partnership.  Absent execution and delivery of this Guaranty, the Limited Partners would not have invested in the Partnership as limited partners and would not have agreed to make capital contributions to the Partnership.  The Guarantor acknowledges that Guarantor was and will be directly benefited by the Limited Partners becoming limited partners in the Partnership.

2.      Guaranteed Obligations.  The Guarantor hereby unconditionally, jointly and severally guarantees to the Partnership and the Limited Partners the full and prompt payment, performance, observance, compliance, and satisfaction of all obligations, covenants, representations, and warranties on the part of the General Partner to be paid, performed, observed, complied with, or satisfied with respect to the Agreement, as and when due.  The Guarantor also unconditionally, jointly and severally guarantees to the Partnership and the Limited Partners full prompt payment, performance, observance, compliance and satisfaction of all obligations, covenants, representations, and warranties on the part of the Developer to be paid, performed, observed, complied with, or satisfied with respect to Section 6.7 of the Agreement and with respect to the Development Agreement.  All obligations of the General Partner and the Developer herein guaranteed are referred to as the "**Guaranteed Obligations**."

3.      Guaranty of Payment.  The guaranty made hereunder is of payment and not of collection, and Guarantor waives any right to require that any action be brought against the General Partner or any other Person liable for performance or payment of any of the Guaranteed Obligations or that resort first be had to any other security therefor.

4.      Effect of Payment by Guarantor to Partnership and/or Limited Partners.  No payment by the Guarantor to the Partnership and/or the Limited Partners under the terms of this Guaranty shall constitute a Capital Contribution, loan, or advance to the Partnership or change in any interest of any of the Partners in the Partnership, except as expressly provided for under the terms of the Agreement.  The Guarantor shall not have any rights in or to the Partnership or its assets as a creditor or a Partner by virtue of any payments made hereunder.

5.      Continuing Guaranty.  This Guaranty shall be unconditional, continuing, absolute and irrevocable, and shall continue until all Guaranteed Obligations have been fully performed, paid, and satisfied, and shall not be affected or impaired by: (a) any modification, extension, or amendment of the Agreement or any other agreement now or hereafter executed by the Partnership, the General Partner, or a Limited Partner, or any of them; (b) any modification, extension of time for the payment of, forbearance, settlement, release, surrender, exchange, or discharge of any Guaranteed Obligations, any collateral therefor, or any party liable or to become liable, primarily, secondarily, or otherwise, with respect to any Guaranteed Obligations (herein "**Other Obligors**"); (c) payment of additional Capital Contributions by the Limited Partners after default or the release of any security after default

EXHIBIT 5 – Page 1

4837-4545-8969.4

whether material or otherwise; (d) death, dissolution, or insolvency of the Partnership, the General Partner, the Guarantor, or any Other Obligors; (e) release of the General Partner, or any Other Obligors from the performance or observance of any of the Guaranteed Obligations, arising by operation of law or otherwise, whether made with or without notice to the Guarantor; (f) the fact that the Partnership and/or the General Partner may or may not be personally liable under the Agreement or the Project Documents to pay any money judgment; (g) any act done, suffered, or left undone by a Limited Partner, the Partnership, or the General Partner or the Developer relating to the Agreement, the Project Documents, this Guaranty, or any other instrument or thing, including, without limitation, any delay or failure on the part of the Partnership or Limited Partners in exercising any right, power or privilege under the Agreement, this Guaranty, or any other instrument or document executed by the Partnership, the General Partner, the Developer or any Other Obligors; (h) any failure to give any notices of acceptance, notices of default, or other notices; (i) the execution of any guaranty by any personal corporation, partnership, or other entity relating to the Agreement, the Project Documents or otherwise; (j) any sale, transfer, pledge, surrender compromise, realization upon, release renewal, extension, exchange, or other hypothecation of any kind of this Guaranty, all or any part of the Agreement, and all or any part of any security or collateral given to secure any of the obligations thereunder; (k) any failure, invalidity, or unenforceability of, or any defect in, the Agreement or any security or collateral given to secure any of or all the obligations thereunder; (l) any change in the manner, place, or terms of payment of, or any change or extension of time of payment of, or any renewal of alteration in any of the Guaranteed Obligations, any security therefor, or any liability incurred directly or indirectly in respect thereof; (m) the Limited Partners' exercise or forbearance from exercising any rights or remedies against the Partnership, the General Partner, the Developer or Other Obligors, or any other act, or failure to act in any manner, which may deprive the Guarantor of any rights of subrogation, contribution, or indemnity against the Partnership, the General Partner, the Developer, or any Other Obligors; (n) any change in any of the Partners of the Partnership; or (o) any removal of any General Partner of the Partnership; provided, the obligations of the Guarantor shall not extend to provisions for which the General Partner is not liable under the Agreement.

6. <u>Direct Liability</u>. The liability of the Guarantor hereunder is direct and unconditional and may be enforced without requiring the Limited Partners or the Partnership, as the case may be, first to exercise, enforce, or exhaust any right or remedy against the Partnership, the Developer or any General Partner, or against any Other Obligors. Upon any default by the Partnership or the General Partner or the Developer or Other Obligors relating to any obligation under the Agreement, the Limited Partners may, at either of their option, proceed directly and at once against the Guarantor to collect the full amount of the Guarantor's liability hereunder, or any portion thereof, without first proceeding against the Partnership, the General Partner, the Developer, any Other Obligors, or any person, corporation, partnership, or other entity.

7. <u>Waivers</u>. The Guarantor hereby waives: (a) presentment, demand, protest, and notice of acceptance, notice of demand, notice of protest, notice of dishonor, notice of default, notice of nonpayment, and all other notices to which the Guarantor might otherwise be entitled; (b) any and all claims or defenses relating to lack of diligence or delays in collection or enforcement, or any other indulgence or forbearance whatsoever with respect to any obligations relating to the Agreement, the Project Documents, or the Guaranteed Obligations and any defense which the Guarantor may have by reason of any defense which the Partnership, any General Partner, the Developer or any Other Obligors may have against the Limited Partners, other than payment, satisfaction, and performance of the Guaranteed Obligations; (c) notice of any advances or Capital Contributions made under the Agreement or Project Documents; (d) any right, title, or interest in, or claim to, whether by subrogation or otherwise, any collateral or assets of the Partnership, the Developer or the General Partner, or Other Obligors until all Guaranteed Obligations have been fully paid, satisfied, and performed; and (e) any defense or claim relating to the marshaling of assets or any requirement to proceed against any parties or collateral in any particular order; and (f) all other suretyship defenses, rights, and claims.

8. <u>Costs and Attorney Fees</u>. The Guarantor agrees, in addition to the liability for the Guaranteed Obligations, to reimburse the Limited Partners and the Partnership for all costs and expenses, including reasonable attorney fees, which the Limited Partners or the Partnership, as the case may be, may incur (a) in the collection of any amounts owing under this Guaranty, the Agreement or any part thereof, (b) for the enforcement of this Guaranty, the Agreement or any term, agreement, covenant, provision, obligation, or duty arising thereunder, (c) in the realization of any collateral obligation or duty hereunder, and/or (d) in connection with any bankruptcy or similar proceeding wherein the Partnership, the General Partner, the Guarantor, or any Other Obligors are the "debtor". In the event of litigation or other proceeding in connection with this Guaranty, the Limited Partners shall

EXHIBIT 5 – Page 2

4837-4545-8969.4

CONFIDENTIAL

PLAINTIFFS_00008562

be entitled, in addition to all other sums and relief, to reasonable attorney fees, costs, disbursements, including all such fees, costs, and disbursements incurred both at and in preparation for trial and any appeal or review, said amount to be set by the courts before which the matter is heard. Notwithstanding the foregoing, the ILP and the SLP shall not be entitled to any reimbursement hereunder in the event of a determination by applicable authority that the ILP or the SLP acted wrongfully or negligently in its collection efforts hereunder, and such acts had a material adverse impact on the undersigned.

9.     <u>Statute of Limitations; Bankruptcy</u>.   The Guarantor shall remain liable with respect to the payment, performance, observance, compliance, or satisfaction of the Guaranteed Obligations or any part thereof irrespective of whether a recovery upon the same may have been barred by any statute of limitations. Any payment made on any obligations under the Agreement that may thereafter be required to be refunded, as a preference or otherwise, under any state or federal law shall not be considered payment for purposes hereof, nor shall it have the effect of reducing the amount of the Guaranteed Obligations or the liability of the Guarantor hereunder.

10.     <u>Actions Regarding Other Obligors</u>.   The Guarantor hereby represents and warrants that the Guarantor was not induced to give this Guaranty by the fact that there are or may be Other Obligors, or by the fact that there may be other collateral securing the Guaranteed Obligations. No election to proceed in one form of action or proceeding or against any party, or on any obligation, shall constitute a waiver of the Limited Partners' or Partnership's, as the case may be, right to proceed in any other form of action or proceeding or against any other parties. Without limiting the generality of the foregoing, no action or proceeding by the Limited Partners or the Partnership, as the case may be, against the General Partner, Developer or any Other Obligors, shall serve to diminish the liability of the Guarantor hereunder except to the extent that the Limited Partners or the Partnership, as the case may be, realizes payment by such action or proceeding, notwithstanding the effect of any suit or proceeding upon the Guarantor's rights of subrogation or contribution against the Partnership, the General Partner, Developer or such Other Obligors. The Limited Partners and the Partnership, as the case may be, shall, at its option, have the right to join the Partnership, the General Partner, the Developer, the Guarantor, and any Other Obligors, in any action or proceeding related to the Guaranteed Obligations.

11.     <u>Investigation</u>.   The Guarantor delivers this Guaranty based solely upon the Guarantor's own independent investigation of the financial condition of the Partnership, other Guarantors, Developer, the Other Obligors, and the General Partner and in no part upon any representation or statement of the Limited Partners with respect thereto. The Guarantor is in a position to and does hereby assume full responsibility for obtaining any additional information concerning the financial condition of the Partnership other Guarantors, the Other Obligors, the Developer and the General Partner as the Guarantor may deem material to Guarantor's obligations hereunder, and the Guarantor is not relying upon, nor expecting the Limited Partners to furnish, any information in the Limited Partners' possession concerning the financial condition of such parties. The Guarantor agrees that the Guarantor hereby knowingly accepts the full range of risks encompassed within this Guaranty, which risks include, without limitation, the possibility that the Partnership, the General Partner, the Developer, other Guarantors and/or Other Obligors may incur additional obligations for which the Guarantor may be liable hereunder after the financial condition of the Partnership, the Developer, other Guarantors, Other Obligors and/or the General Partner, or ability to pay their lawful debts when they are due has deteriorated, and the Guarantor understands that the amount of the obligations may be increased or decreased and the ratio of obligations to collateral, if any, may be changed adversely to the Guarantor. This Guaranty will be effective when delivered to the Partnership and the Limited Partners without need for acceptance or any other formality.

12.     <u>Representation and Warranty of Financial Condition</u>.   The Guarantor hereby represents and warrants that all financial statements of the Guarantor heretofore delivered to the Limited Partners by or on behalf of the Guarantor are true and correct in all material respects and fairly present the financial condition of the Guarantor as of the respective dates thereof, and remain true and correct and not in any way misleading, as of the date hereof. The Guarantor agrees to provide by June 1st of each year a certified financial statement of the Guarantor as of the end of the Partnership's previous Fiscal Year, including, but not limited to, a balance sheet and income statement with supporting schedules or exhibits. The Guarantor also agrees to provide at any time upon the request of any Limited Partner bank statements and brokerage statements, together with any other appropriate documentation evidencing to the satisfaction of such Limited Partner the liquidity of the Guarantor for the purposes of Section 6.5(n) of the Agreement. The Guarantor hereby expressly agrees to the release of such financial information by the

<div align="center">EXHIBIT 5 – Page 3</div>

4837-4545-8969.4

Limited Partner to their Affiliates, agents and representatives, partners of the Limited Partners and proposed investors of the Limited Partners.

13.    Partnership's and Limited Partners' Rights.  The Partnership and/or any Limited Partner may, at any time and from time to time, with or without the consent of, or notice to, the Guarantor, and without incurring responsibility or liability to the Guarantor or impairing or releasing the obligations of the Guarantor hereunder:

(i)    change the manner, place, or terms of performance or payment of, or renew, replace, extend, or otherwise modify any document now or hereafter creating, securing, or governing the disbursement of any of the Guaranteed Obligations (including, without limitation, the Agreement) other than this Guaranty;

(ii)    sell, exchange, release, surrender, realize upon, or otherwise deal with, in any manner and in any order, any property by whomsoever and whenever pledged to secure, or howsoever securing, any of the Guaranteed Obligations or any liability (including, without limitation, any of those hereunder) incurred directly or indirectly in respect thereof or hereof, or any offset there against;

(iii)    exercise or refrain from exercising, for any period of time whatsoever, any rights against the General Partner, the Developer, other Guarantors or Other Obligors (including, without limitation, the Guarantor) available to the Partnership by law or under any document now or hereafter creating any of the Guaranteed Obligations, any other security therefor, or any liability (including, without limitation, any of those hereunder) incurred directly or indirectly in connection therewith or herewith (including, without limitation, failing to attempt to collect any of the Guaranteed Obligations);

(iv)    settle or compromise any of the Guaranteed Obligations, any security therefor, or any liability (including, without limitation, any of those hereunder) incurred directly or indirectly in connection therewith or herewith;

(v)    accept any further security for payment of the Guaranteed Obligations in addition to this Guaranty; and

(vi)    perform such other acts as may be permitted under the Agreement.

14.    Subrogation.  Until the Guaranteed Obligations have been performed and paid in full, the Guarantor shall have no right of subrogation against the General Partner, the Developer, or any Other Obligor in connection with this Guaranty nor any right to participate in realization upon any security for any of the Guaranteed Obligations.

15.    Subordination.  Any indebtedness of the General Partner, the Developer, or any Other Obligor to the Guarantor now or hereafter existing is hereby subordinated to the Guaranteed Obligations.  Any such indebtedness of the General Partner, the Developer, or any Other Obligor to the Guarantor, upon written demand of the Partnership, shall be collected (by action or proceeding, if required by the Partnership) and received by the Guarantor in trust for the Partnership and shall be paid over to the Partnership on account of the Guaranteed Obligations without impairing or releasing the obligations of the Guarantor hereunder; provided, however, that while no default exists in the payment of the Guaranteed Obligations, the Guarantor may apply to its own account any payments made to it on account of any indebtedness of the General Partner to the Guarantor.

16.    Successors.  This Guaranty shall be binding upon the Guarantor, the Guarantor's heirs, personal representatives, successors, and assigns, and shall inure to the Limited Partners' benefit and to the benefit of the Limited Partners' successors and assigns, and to the benefit of anyone claiming title to any collateral sold by the Limited Partners pursuant to any rights, powers, and privileges it or they now have or may hereafter possess.

17.    Integration; Waiver.  This Guaranty contains the sole and entire understanding and agreement of the parties hereto with respect to the subject matter hereof, and supersedes all prior negotiations and understandings. This Guaranty may not be terminated or otherwise amended, changed, or modified, nor shall there by any waiver or

EXHIBIT 5 – Page 4

4837-4545-8969.4

CONFIDENTIAL                                                                                        PLAINTIFFS_00008564

estoppel by the Limited Partners or the Partnership, except by a written instrument signed by the Limited Partners and the Partnership. No waiver, express or implied, by the Limited Partners or Partnership of any default hereunder shall be deemed a waiver of any other or succeeding default hereunder.

18.     <u>Interpretation</u>. This Guaranty and the rights and obligations of the Guarantor shall be governed and construed in accordance with the internal laws of the State of Texas. If for any reason any provision of this Guaranty does violate any such laws or is not fully enforceable in accordance with the terms and provisions hereof, this Guaranty shall be limited or construed to comply with such laws and shall be enforced to the full extent permitted by such laws. If there is more than one Guarantor, the liability of each Guarantor shall be joint and several. Capitalized terms used in this Guaranty shall have the meanings specified herein or in the Agreement.

19.     <u>Personal Jurisdiction and Venue</u>. The Guarantor hereby submits to personal jurisdiction as provided in this Section 19 for the enforcement of this Guaranty and waives any and all personal rights to object to such jurisdiction for the purposes of litigation to enforce this Guaranty. The Guarantor hereby consents to the jurisdiction of the courts of either the State of Texas or the Commonwealth of Pennsylvania or the courts of the United States of America for the District of Texas or the District of Pennsylvania, in any action, suit, or proceeding which any Limited Partner may at any time wish to file in connection with this guaranty or any related matter. The Guarantor hereby agrees that an action, suit, or proceeding to enforce this Guaranty may be brought in any state or federal court in the State of Texas or the Commonwealth of Pennsylvania and hereby waives any objection which the Guarantor may have to the laying of the venue of any such action, suit, or proceeding in any such court; provided, however, that the provisions of this Paragraph 19 shall not be deemed to preclude any Limited Partner from filing any such action, suit, or proceeding in any other appropriate forum. The Guarantor hereby agrees that any process or notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the Guarantor by registered or certified mail to or by personal service at the last known address of the Guarantor, whether such address be within or without the jurisdiction of any such court.

20.     <u>Effect of Certain Events</u>. Guarantor further covenants that this Guaranty shall remain and continue in full force and effect as to and notwithstanding any amendment of the Agreement, or transfer of the Interest of any Partner thereunder, or withdrawal or removal of any Partner thereunder, and that indulgences or forbearance may be granted under the Agreement, with or without notice to or further consent of Guarantor, except as otherwise specifically stated in the Agreement.

In conjunction with any sale, transfer or assignment by the ILP of all or any part of its Interest in accordance with the provisions of the Agreement, the ILP is hereby authorized to obtain updated UCC, judgment and tax lien searches and updated financial statements with respect to the Guarantor and the Guarantor represents and agrees that it will take all actions reasonably necessary (or requested by the ILP) to cooperate with the ILP and facilitate the ILP's disposition of its Interest, provided that any such items shall be done at the ILP's expense. In addition, in conjunction with any such sale, transfer or assignment, the ILP is hereby authorized, and the Guarantor hereby consents to the disclosure and/or release of the Guarantor's financial statements and any other information relating to the Guarantor which is relevant to such sale, transfer or assignment.

21.     <u>Security Interest</u>. In order to ensure the timely payment and performance by the Guarantor of the Guaranteed Obligations, each Guarantor hereby grants to the Partnership and the Limited Partners a security interest in all of their respective right, title and interest in the Partnership, including any and all fees, distributions, and payments due or paid to the Guarantor or any of their Affiliates by the Partnership as fees, returns of capital, distributions, repayments of loans or advances or for any other purpose, together with any and all tax benefits and other property rights and distributions, and all of the proceeds and products thereof, all in order to secure the Guarantor's obligations hereunder. Each Guarantor acknowledges and agrees that any amounts owed by the Partnership to a Guarantor is subject to offset and reduction in the event of the Guarantor's failure to satisfy any Guaranteed Obligation. Further, the termination of the Development Agreement or removal of the General Partner for cause under the terms of the Agreement shall result in the termination of any payment or distribution obligation of the Partnership owing to any Guarantor regardless of whether such fee was fully earned prior to the effective date of the termination of the Development Agreement or removal of the General Partner.

22.     <u>Counterparts</u>. This Guaranty may be executed in several counterparts, and all so executed shall constitute one agreement, binding on all the parties hereto, even though all parties are not signatories to the original

EXHIBIT 5 – Page 5

4837-4545-8969.4

CONFIDENTIAL

PLAINTIFFS_00008565

or the same counterpart.  Any counterpart which has attached to it separate signature pages, which altogether contain the signatures of all parties whose signature thereon are required, shall for all purposes be deemed a fully executed instrument.  Delivery of a manually executed counterpart to this Guaranty or delivery of a copy of such manually executed counterpart by email or facsimile transmission shall each constitute effective delivery of such counterpart. Any party delivering a copy of such manually executed counterpart of this Guaranty by email or facsimile transmission shall promptly thereafter deliver the manually executed counterpart, provided that any failure to do so shall not affect the validity of the copy of the manually executed counterpart delivered by email or facsimile transmission.

       23.     **WAIVER OF TRIAL BY JURY**.  THE GUARANTOR, THE PARTNERSHIP, AND THE LIMITED PARTNERS EACH HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHT UNDER THIS GUARANTY OR THE AGREEMENT OR RELATING THERETO OR ARISING FROM THE TRANSACTION WHICH IS THE SUBJECT OF THIS GUARANTY AND AGREE THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

**[Signature Page Follows]**

4837-4545-8969.4

EXHIBIT 5 – Page 6

PLAINTIFFS_00008566

This Guaranty has been executed and delivered effective as of the date first written above.

**GUARANTOR**:

2013 Travis Oak Creek Developer, Inc.
a Texas corporation

By: _____
Name:      Rene O. Campos
Title:      President


Chula Investments, Ltd.
a Texas limited partnership

By: Chula Management, L.L.C., the sole General Partner

By: _____
Name:      Rene O. Campos
Title:      Manager


_____
Name:      Rene O. Campos
in his individual capacity as
guarantor


EXHIBIT 5 – Page 7

4837-4545-8969.4

CONFIDENTIAL

**EXHIBIT 6**

**REQUIRED INSURANCE**

**PNC Real Estate**

**A.  General Requirements**
**All policies or documents evidencing the required insurance shall:**
1.  Be provided at least ten (10) days prior to equity closing to ensure adequate lead time for PNC to engage its consultant and receive its Final Insurance Due Diligence Report prior to closing; updates must be provided as required for each capital contribution.
2.  Be maintained throughout the term of the loan(s) and the term of ownership for all borrowers/owners/investment partners.
3.  Clearly identify the property location or description on each certificate.
4.  Be provided in the following form, with all forms and endorsements noted:
    - Accord 25 - Ink-signed Certificate of Liability Insurance
    - Accord 28 (2003/10 edition) - Ink-signed Evidence of Property Insurance
    - A full copy of the policy when available
5.  Name the Operating Partnership as the First Named Insured on each policy provided by the Owner, or on behalf of the Owner, and name the following entities as Additional Insureds on all policies required of any party under these guidelines (with the exception of auto liability , professional liability (E&O) and Workers' Compensation:
    - ILPs and their successors and assigns,
    - SLPs and their successors and assigns and
    - All Additional Investors (the equity providers)
6.  All liability insurance policies provided by parties other than the Owner shall name the Partnership and/or the entities that comprise it as Additional Insureds.  Professional liability coverage shall indicate the Partnership as certificate holder
7.  Binders may be accepted for a 30-day period only.
    - Continuous binders are acceptable if issued by the insurance company's underwriter.  Continuous binders must be replaced with certificates or policies within 30 days of receipt.
    - Facsimile copies are acceptable as temporary evidence of coverage.  Hard copies must be promptly delivered to confirm evidence.
8.  Be issued/written by insurance carrier or carriers acceptable to the lender and investor and having:
    - A rating of A: Class VII or better (a couple of investors require A-/X or better) by A.M. Best's Key Rating guide (*note*: the insurance company's NAIC number is needed in addition to their name), **or**
    - A rating of "A" or higher from Standard & Poor's.
9.  Be written on a per occurrence basis (, professional liability coverage and Environmental Impairment Liability including contractor's pollution legal liability insurance coverage, which may be written on a claims-made basis).
10. Have a cancellation provision requiring the carrier to notify the parties (Partnerships, GP, ILP, SLP, Lenders and equity providers) at least thirty (30) days in advance ,(10) days for nonpayment of premium, of any policy reduction, cancellation, premiums due, any lapse expiration, material change, amendment or non-renewal intent. Notice should be advance *written* notice via certified mail return receipt requested.
11. Be written for a term of not less than one year, with premiums prepaid and evidence of premium payment accompanying the binders and policies.

**The following requirements apply to Property policies:**
12. Name the Lender and its successors and assigns (collectively, the Lender) as Mortgagee and  Loss Payee..
13. Name the SLP and its successors and assigns as Loss Payee
14. Contain a deductible or self insured retention (SIR) not greater than $10,000 (except when a separate wind-loss deductible applies, then the amount must not exceed 3% of the face amount of the policy).
15. Builders Risk policies must be on a non-reporting basis.
16. Not contain any effective co-insurance provisions.

EXHIBIT 6 – Page 1

4837-4545-8969.4

CONFIDENTIAL

PLAINTIFFS_00008568

17. Not use a blanket or package policy unless it provides the same or better coverage as a single property insurance policy, **and**:
   - All other projects must be listed and identifiable in the policy and associated schedules.  Note: The Declaration page listing each appropriate Endorsement /Form and copies of each Form will be accepted as evidence.
   - Total coverage must be based on 100% replacement value of all properties covered , Coverage limits other than replacement cost are generally not acceptable and any variations from an amount less than replacement cost must be pre approved by the SLP.

## B.  Insurance to be Maintained During Construction

**The following coverages must be maintained on all properties, on a per project basis, during construction and until permanent insurance is placed, and are required by all investors (unless noted) though amounts may vary.**

1. **Owner's Commercial General Liability and Excess/Umbrella Liability Insurance**: General Partner shall carry, for the benefit of the Partnership and General Partner, covering the premises and operations by independent contractors, Commercial General Liability Insurance of the real estate development class against claims for bodily injury, personal injury and products and completed operations..
   - 
   - Form should remain silent on assault & battery, sexual assault and punitive damages (no exclusions or limitations).
   - Environmental Liability Insurance will be required for existing Apartment Complexes that are being substantially rehabilitated.
   - The minimum amount of primary coverage is $1 million per occurrence / $2 million general aggregate and contain a deductible no greater than $10,000.
   - The minimum Umbrella/Excess Liability Insurance ranges from $4 million per occurrence and $4 million general aggregate to $30 million per occurrence and $30 million general aggregate (depending on investor and the guidelines shown below):

      Garden Apts 1-3 stories, SF, & other non-elevator buildings:
         < 50 Units: $4 million as noted above
         51 - 300 Units: $5 million
         > 300 Units: $5 -$10 million, depending on location/conditions

      Mid-rise Apartment Building (4-10 stories):
         < 50 Units: $5 million as noted above
         51 - 300 Units: $5 -$10 million , depending on location/etc.
         > 300 Units: $10 -$20 million, depending on location/conditions

      High-rise Apartment Building (11-40 stories):
         1 - 300 Units: $10 -$30 million , depending on location/conditions
         > 300 Units: $30 million and above, depending on location/etc.

2. **All-Risk Builder's Risk Insurance**: Insurance providing 100% replacement cost coverage (including a 5% contingency), in an amount equal to the completed construction value plus personal property and shall include coverage for Soft Costs including 12 months Business Interruption (Loss of Rents) or actual loss sustained, loan interest, real estate taxes, architect's & engineer's fees, legal & accounting fees, insurance premiums, and advertising and promotional expenses.  Additional coverage requirements are as follows:
   - If any of the units will be turned over and occupied prior to completion, policy shall include a Permission for Partial Occupancy Endorsement.
   - No coinsurance or coinsurance offset by an Agreed Amount Endorsement
   - Ordinance & Law Coverage (See **Section C**. for coverage requirements).
   - The maximum deductible is $10,000 per occurrence.
   - Windstorm, earthquake, and flood exclusions are generally acceptable exclusions provided that a separate policy is obtained for these risks.  See **Section C**. for details regarding coverage requirements for these separate perils.

EXHIBIT 6 – Page 2

4837-4545-8969.4

3. **General Contractor's General Liability and Excess/Umbrella Liability Insurance**: The General Contractor shall provide the following insurance coverages:

A) **Commercial General Liability Insurance**: The General Contractor (and each prime contractor having a direct contract with the Partnership) shall provide Commercial General Liability Insurance covering claims for bodily injury,  property damage and personal injury arising out of the Contractor' operations, independent contractors, and products/completed operations.

- Coverage limits of the construction exposure class shall be in an amount not less than $5 million combined single limits (per occurrence / per project aggregate).  This requirement can be met through any combination of primary and excess insurance, such as the standard $1 million/ $2 million primary with $4 million/ $4 million umbrella.  If the primary coverage applies to other locations or activities, then the primary aggregate must apply to each insured location separately.
- $1 million per occurrence /$2 million general aggregate shall be required for prime contractors other than the GC.  If the primary coverage applies to other locations or activities, then the primary general aggregate must apply to each insured project separately.

B) **Pollution/Environmental Coverage Insurance**: Providing defense and indemnity coverage for bodily injury, property damage and environmental investigation and clean-up costs for pollution conditions.  Coverage limits of the construction exposure class shall be in an amount not less than $1 million combined single limits (per occurrence/per location and in the aggregate).

C) **Automobile Liability Insurance**: Commercial Automobile Liability with coverage for owned, hired, and non-owned autos with no less than $1 million combined single limit per occurrence.

D) **Workers' compensation and Employers' Liability Insurance**: Coverage shall be in statutory amounts with Employers Liability limits of $1 million bodily injury by accident for each accident, bodily injury by disease for each employee and policy limit for bodily injury by disease ($500,000 fallback).

E) **Payment and Performance Bonds**: The Construction Contract must be secured by one of the following:

- A letter of credit in an amount not less than fifteen (15%) of the Construction Contract amount, or
- 100% payment and performance bonds in a form and substance acceptable to the SLP, or
- Each major subcontractor, as identified by the SLP, being bonded in a form and substance acceptable to the SLP.

4. **Construction Manager's Commercial General Liability Insurance (If applicable)**: If a construction manager is utilized, Commercial General Liability Insurance is to be and the amount of coverage shall be no less than $500,000 combined single limits.  $500,000 combined single limits Automobile Liability (including coverage for liability assumed under contract), statutory Workers' Compensation and $500,000 Employers' Liability shall also be maintained.

5. **Architect's & Engineer's Professional Liability / Errors & Omissions Insurance**:  Professional Liability (E & O) Insurance shall be provided covering each professional entity for the greater of $500,000 or 10% of the construction contract amount each claim and in the aggregate ($1 million or 10% for high-rises), in a form satisfactory to the Investor.  Coverage shall remain in effect for three years from acceptance of the Project by Owner.

- Comprehensive General Liability insurance with a minimum of $500,000 in combined single limits shall be provided.

**C. Insurance to be Obtained Upon Completion (or on Existing Buildings) & Maintained Thereafter**

Commencing from the earliest of (i) Receipt of final Certificates of Occupancy for all buildings in the Property, (ii) Final Construction Completion or (iii) the lapse in Builders Risk Coverage; and continuing until no longer required by the SLP, the Partnership shall maintain the following insurance coverage:

1. **General Contractor's Commercial General Liability Insurance**: General Contractor must continue to carry Products and Completed Operations insurance for a minimum of three (3) years following completion of construction.

2. **Architect's & Engineer's Professional Liability / Errors & Omissions Insurance**: Each entity must continue to carry the same Professional Liability insurance coverage as required in B.6 for a minimum of three (3) years following completion of construction.

3. **Owner's Commercial General Liability Insurance**: The General Partner shall cause the Partnership to continue to carry the same insurance coverages as required in B.1. with the following additional loss control requirement to be implemented:

EXHIBIT 6 – Page 3

4837-4545-8969.4

CONFIDENTIAL

PLAINTIFFS_00008570

- Contains a deductible of no greater than $10,000.
4. **Property (Special Cause of Loss Form) Insurance**: Insurance on the project covering risks of direct physical loss.
   - Such insurance shall be in an amount equal to 100% replacement value of the property.
   - The policy shall provide Replacement Cost coverage.
   - The policy shall include an Agreed Amount Clause or Waiver of Coinsurance.
   - The maximum deductible is $10,000 per occurrence (except when a separate wind-loss deductible applies, then the amount must not exceed 3% of the face amount of the policy).
5. **Business Interruption Insurance** - Loss of income insurance shall be carried in an amount equal to 12 months anticipated gross rental income from tenant occupancy (including any commercial portion) of the property plus Tax Credit..
6. **Windstorm Coverage** - If the Special Causes of Loss Form property damage insurance excludes wind-related events, a separate windstorm insurance policy shall be obtained for 100% replacement cost of the property. The policy must include business interruption. The maximum deductible is 3%.
7. **Flood** - PNC Real Estate requires flood insurance if any property is, or planned to be located, in a Special Flood Hazard Area designated by FEMA as Zone A or V in an amount equal to the full replacement cost and 12 months Business Income coverage . The maximum deductible is 2% of the total insured value per building. If this coverage amount is more than the maximum amount of insurance available under the National Flood Insurance Program, an excess flood or difference in conditions policy may be required for the difference.
8. **Earthquake** - Where the Property is located in an area prone to seismic activity (zones 3 & 4) and has a PML greater than 20%, earthquake insurance is required for the life of the investment. Coverage must equal 100% of the full replacement cost, include Business Interruption, and have a maximum deductible of 5%-10% of the total insured value.
9. **Ordinance and Law Coverage** - Where the Property represents an non-conforming use under current building, zoning, or land use laws or ordinances, insurance shall be obtained in the following amounts: * Loss of Undamaged Portion of the Building - Full replacement cost of the structure minus the local threshold; * Demolition Cost - Minimum of 10% of replacement cost; and * Increased Cost of construction - Minimum of 10% of the replacement cost.
10. **Extended Period of Indemnity** - Business Interruption (Loss of Rents) coverage shall be extended for a minimum of three months after property is ready for occupancy following a casualty.
11. **Owner's Boiler & Machinery Insurance**: Required where any centralized HVAC equipment is in operation at the Property or where the Property contains boilers or other pressure-fired vessels that are required to be regulated by the State as follows:
    - Boiler and Machinery Insurance shall be required for the full replacement cost of the building that houses the equipment.
    - Coverage against loss or damage from steam boiler explosion, electrical breakdown or mechanical breakdown which can include refrigeration equipment, air conditioning equipment, various types of piping, turbines, engine's pumps, compressors, electric motors, transformers and other assorted types of apparatus now or hereafter installed on the Property.
    - Coverage shall be extended to include Business Income.
    - Deductibles must be equal or lower than the deductibles on the Property Insurance Policy
12. **Property Manager's Insurance Requirements**: Project Manager (i.e., the property management company) shall maintain and provide evidence of insurance for the following:
    - Worker's Compensation Coverage pursuant to statutory limits required by law.
    - Automobile Liability Coverage covering owned, hired and non-owned auto for limits no less than $1MM combined single limited per occurrence for bodily injury, property damage and physical damage (collision and comprehensive).
    - **Fidelity Bond** in an amount equivalent to the lesser of $1 million or six month's gross income.
13. **Other Insurance (as needed)**:- Such other insurance in such amounts, and with such companies as the SLP may require, including but not limited to, insurance coverage covering wind, mudslide (as needed), acts of terrorism, toxic mold, fungus, moisture, microbial contamination, pathogenic organisms or covering other parties such as the Project Architect, the Builder, any other prime contractors, the construction manager, if applicable, and the Project Manager to the extent such insurance can be acquired on a commercially reasonable basis in the sole discretion of the SLP.

EXHIBIT 6 – Page 4

4837-4545-8969.4

CONFIDENTIAL

PLAINTIFFS_00008571

**EXHIBIT 7**

**FORM OF TRANSFER AMENDMENT**

FIRST AMENDMENT
TO
AMENDED AND RESTATED
AGREEMENT OF LIMITED PARTNERSHIP OF
2013 TRAVIS OAK CREEK, LP

THIS FIRST AMENDMENT TO AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP (the "**First Amendment**") of 2013 TRAVIS OAK CREEK, LP, a Texas limited partnership (the "**Partnership**"), is entered into effective as of **[DATE]**, by and among PNC BANK, NATIONAL ASSOCIATION, a national banking association (the "**Original ILP**"), PNC REAL ESTATE TAX CREDIT CAPITAL INSTITUTIONAL FUND [#] LIMITED PARTNERSHIP, a **[Delaware]** limited partnership (the "**Substitute ILP**"), and COLUMBIA HOUSING SLP CORPORATION, an Oregon corporation (the "**SLP**"), and is acknowledged by 2013 Travis Oak Creek GP, LLC, a Texas limited liability company ("the **General Partner**").

Immediately prior to the effective date hereof, the Partnership has been governed by that certain Amended and Restated Agreement of Limited Partnership of the Partnership dated as of May [#], 2014 (the "**Agreement**"). The parties hereto now desire to modify the terms of the Agreement to acknowledge the withdrawal of the Original ILP as the ILP of the Partnership, to recognize the admission of the Substitute ILP as the sole ILP of the Partnership, and to otherwise modify the terms of the Agreement, as set forth below.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

(1)      Capitalized terms used but not defined herein shall have the meanings given to them in the Agreement.

(2)      The Original ILP hereby: (i) withdraws as the ILP of the Partnership; (ii) acknowledges repayment in full of all amounts owed to it by the Partnership and the other Partners; (iii) acknowledges that it has no further rights as an ILP of the Partnership; and (iv) acknowledges the receipt of payment of **[$AMOUNT]** from the Substitute ILP on the date hereof and agrees that the amount paid by the Substitute ILP to the Original ILP is fair and adequate consideration for the Original ILP's interest in the Partnership.

(3)      The Substitute ILP hereby: (i) is admitted as the sole ILP; (ii) adopts and approves all of the terms of the Agreement (as amended hereby); (iii) assumes the rights and obligations of the ILP under the Agreement; (iv) succeeds to the Capital Account of the Original ILP; and (v) has agreed to fund the remaining unpaid Capital Contribution obligations of the ILP in the amount of **[$AMOUNT]**, as and when due under the Agreement, subject to adjustment and reduction as set forth therein.

(4)      The General Partner hereby acknowledges and the SLP hereby consents to the withdrawal from the Partnership of the Original ILP and the admission to the Partnership of the Substitute ILP, as set forth herein.

(5)      [Reserved].

(6)      Exhibit 2 to the Agreement which is entitled "Partners' Capital Contributions and Interests" is hereby deleted in its entirety and replaced with Exhibit 2, which is entitled "Partners' Capital Contributions and Interests," attached hereto and incorporated herein by this reference.

(7)      This First Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

EXHIBIT 7 – Page 1

4837-4545-8969.4

                                    PLAINTIFFS_00008572

(8)     Except as amended hereby, the Agreement is hereby ratified and confirmed and continues in full force and effect.

**[SIGNATURE PAGES FOLLOW]**

EXHIBIT 7 – Page 2

4837-4545-8969.4

CONFIDENTIAL                                        PLAINTIFFS_00008573

IN WITNESS WHEREOF, the undersigned have signed this First Amendment as of the dates set forth below their respective signatures.

ORIGINAL ILP:                                              SLP:

**PNC BANK, NATIONAL ASSOCIATION**            **COLUMBIA HOUSING SLP CORPORATION**

By:      _____

       Name:                                            By:      _____
       Title:
       Date:                                                            Name:
                                                     Title:
SUBSTITUTE ILP:                                                  Date:

**PNC REAL ESTATE TAX CREDIT CAPITAL
INSTITUTIONAL FUND [#] LIMITED
PARTNERSHIP**

By:      **[PNC Real Estate Tax Credit Capital
       Fund [#], Inc., its general partner]**

By:      _____

       Name:
       Title:
       Date:

**ACKNOWLEDGED BY:**

GENERAL PARTNER:

**2013 TRAVIS OAK CREEK GP, LLC**

By:      _____

       Name: Rene O. Campos
       Title: Manager
       Date:

EXHIBIT 7 – Page 3

4837-4545-8969.4

CONFIDENTIAL

EXHIBIT 2

PARTNERS' CAPITAL CONTRIBUTIONS AND INTERESTS

As of **[DATE]**

| General Partner | Capital Contribution | Percentage Interest in Class of Partners |
|---|---|---|
| 2013 Travis Oak Creek GP, LLC<br>3001 Knox Street, Suite 400<br>Dallas, TX 75205 | $100 | 100% |

| SLP | Capital Contribution | Percentage Interest in Class of Partners |
|---|---|---|
| Columbia Housing SLP Corporation<br>121 S.W. Morrison Street, Suite 1300<br>Portland, OR 97204-3143<br>Facsimile No: (503) 808-1301 | $10 | 100% |

| ILP | Agreed-to Capital Contribution | Paid-in Capital Contribution* | Remaining Capital Contribution** | Percentage Interest in Class of Partners |
|---|---|---|---|---|
| PNC Real Estate Tax Credit Capital Institutional Fund **[#]** Limited Partnership<br>121 S.W. Morrison Street, Suite 1300<br>Portland, OR 97204-3143<br>Facsimile No: (503) 808-1301 | **[$AMOUNT]** | **[$AMOUNT]** | **[$AMOUNT]** | 100% |

---

* Amount reflects the paid-in Capital Contribution as of the date of this Exhibit 2, including any amounts contributed by the withdrawing Original ILP, to whose Capital Account the Substitute ILP has succeeded as of the date hereof.

**Future Installments of Capital Contribution are subject to adjustment and are due at the times and subject to the conditions set forth in the Amended and Restated Agreement of Limited Partnership to which this Exhibit 2 is attached.

EXHIBIT 7 – Page 4

CONFIDENTIAL

PLAINTIFFS_00008575

GUARANTOR ACKNOWLEDGEMENT AND CONSENT
TO FIRST AMENDMENT TO THE AMENDED AND RESTATED AGREEMENT OF
LIMITED PARTNERSHIP OF
2013 TRAVIS OAK CREEK, LP

The undersigned Guarantors (i) acknowledge that pursuant to the Agreement of Guaranty, dated as of May **[#]**, 2014 (the "**Guaranty**"), they have guaranteed the performances of the Guaranteed Obligations (as defined in the Guaranty) to 2013 Travis Oak Creek, LP, a Texas limited partnership (the "**Partnership**"), Columbia Housing SLP Corporation, an Oregon corporation (the "SLP"), and PNC Bank, National Association, a national banking association; (ii) acknowledge the terms of the First Amendment, effective **[DATE]** (the "**First Amendment**"), to Amended and Restated Agreement of Limited Partnership of the Partnership attached hereto, dated **[DATE]** (the "**Original Agreement**"); (iii) acknowledge that from and after the effective date of the First Amendment, the beneficiaries under the Guaranty are the Partnership, the SLP and PNC Real Estate Tax Credit Capital Institutional Fund **[#]** Limited Partnership; and (iv) confirm that the Guaranty remains in full force and effect as the same may have been modified pursuant to the First Amendment.

This Acknowledgement and Consent to First Amendment has been executed and delivered effective as of **[_____, 201__]**.

GUARANTOR:

2013 Travis Oak Creek Developer, Inc.,
a Texas corporation

By: _____
Name: _____Rene O. Campos_____
Title: _____President_____

Chula Investments, Ltd.,
a Texas limited partnership

By: Chula Management, L.L.C., its general partner

By:_____
Name:_____Rene O. Campos_____
Title: _____Manager_____

_____
Name: _____Rene O. Campos_____
in his individual capacity as
guarantor

EXHIBIT 7 – Page 5

4837-4545-8969.4

**EXHIBIT 8**

**PROJECT FORECAST**

EXHIBIT 8

4837-4545-8969.4

CONFIDENTIAL

PLAINTIFFS_00008577

CONFIDENTIAL

PLAINTIFFS_00008578

FUND FLOW ANALYSIS

| PROJECT COSTS | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

INCLUDING CONSTRUCTION

TOTAL LAND

TOTAL ACQUISITION COSTS

Site Work

Building Costs

TOTAL IMPROVEMENTS

TOTAL SOFT COSTS

TOTAL USES INCLUDING CONSTRUCTION

PROJECT USES AT COMPLETION

TOTAL USES AT COMPLETION

CONFIDENTIAL

PLAINTIFFS_00008579

CONFIDENTIAL

PLAINTIFFS_00008580

2117 Texas Oak Creek, LP

Oak Creek Village

# FUND FLOW ANALYSIS

5/21/2014

2:25 PM

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Draw Percentage | 121.88% | | 4.03% | 1.05% | 4.05% | 4.03% | 2.00% | 3.00% | 1.40% | | | | | |
| | Month | | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| PROJECT COSTS | Total | | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Apr-16 |
| USES DURING CONSTRUCTION | | | 946,463 | 311,360 | 946,463 | 946,463 | 468,252 | 468,252 | 241,116 | | | | | |
| Land | $ 1,550,000 | OK | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| TOTAL LAND | $ 1,550,000 | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| - | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| - | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| - | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| - | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| TOTAL ACQUISITION COSTS | - | | - | - | - | - | - | - | - | - | - | - | - | - |
| - | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Site Work | 4,287,447 | OK | 238,165 | 238,166 | 238,166 | 238,165 | 278,284 | 248,999 | 238,165 | - | - | - | - | - |
| Amenities Allowance | 159,000 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| - | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Building Costs - E | 20,853,851 | OK | 496,455 | 141,189 | 995,493 | 496,455 | 498,213 | 498,317 | 249,116 | - | - | - | - | - |
| - | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| General Requirements | 1,430,229 | OK | 18,609 | 43,567 | 38,466 | 38,445 | 29,095 | 29,065 | 14,937 | - | - | - | - | - |
| Contractor Overhead Timing Costs | 316,903 | OK | 13,604 | 17,608 | 13,600 | 13,666 | 17,629 | 11,489 | 12,829 | - | - | - | - | - |
| Contractor Profit | 1,003,802 | OK | 43,352 | 32,514 | 43,352 | 43,352 | 21,676 | 21,676 | 10,838 | - | - | - | - | - |
| Contingency | 1,647,395 | OK | 65,895 | 44,431 | 65,835 | 65,895 | 32,947 | 32,947 | 16,474 | - | - | - | - | - |
| Completion Phase Contingency | 270,000 | OK | - | 33,269 | - | - | - | 93,069 | - | - | - | - | - | - |
| Overhead Furnishing Closing | 519,344 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Owner Allowances | 517,831 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Contingency on Owner Allowances | 115,102 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Builder's Risk Insurance | 115,100 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| - | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| - | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Credit Improvements Allowance | 100,000 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| - | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| - | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| TOTAL HARD COSTS | 33,937,449 | | 423,476 | 1,101,169 | 1,413,499 | 1,419,499 | 835,636 | 913,615 | 546,530 | - | - | - | - | - |
| Architectural - Design | 877,287 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| - | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Engineering Fees | 309,483 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Real Estate Attorney / Other Legal | 541,796 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Accounting Fees | 94,300 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Bond / Taxable Interest | 495,353 | OK | 18,232 | 18,252 | 18,332 | 18,352 | 18,351 | 18,351 | 18,233 | 18,251 | 18,352 | 18,352 | 18,252 | 18,332 |
| Building Permits & Related Costs - E | 51,009 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Freddie Rate Lock Deposit | 314,030 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Appraisal and Market Study | 33,100 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Closer Legal | 38,166 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Environmental Assessment | 9,895 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Soils Report | 19,973 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Survey | 29,791 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Soft Cost Contingency | 50,000 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Partnership Hazard & Liability Insurance | 50,000 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Real Property Taxes | 39,400 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Tenant Relocation / Permanent Relocation | 1,274,330 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Telecom, Fixtures, and Traffic Consultants | 295,425 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| FF&E | 135,000 | OK | 44,351 | 44,331 | 48,750 | - | - | - | - | - | - | - | - | - |
| Tax Credit Fees | 94,516 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Closer Construction Loan Inspection | 35,100 | OK | 3,000 | 3,000 | 2,000 | - | - | - | - | - | - | - | - | - |
| Market Consultant | 13,100 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Eligible Interest | 578,632 | OK | 63,991 | 96,772 | 40,592 | 47,300 | 44,438 | 45,859 | - | - | - | - | - | - |
| Ineligible Interest | 211,541 | OK | - | 21,692 | 29,872 | 30,304 | 31,952 | 32,547 | 11,481 | - | - | - | - | - |
| Cash Acquisition Fee | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Cash Development Fee | 251,500 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Deferred Fees | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| TOTAL SOFT COSTS | 6,305,947 | | 131,270 | 135,419 | 118,136 | 95,166 | 94,402 | 96,466 | 96,211 | 18,253 | 18,252 | 18,252 | 18,252 | 18,232 |
| - | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| - | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Agency Application Fee | 39,500 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Agency Standby Fee | 136,591 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Construction Loan Origination | 290,200 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Title and Recording | 137,100 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| PNC FNMA Commitment Fee | 33,160 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| PNC FNMA Perm Financing Fee | 277,108 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| PNC FNMA Legal and Processing | 33,166 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| PNC FNMA UW and Servicing | 14,700 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| PNC Bridge Loan Legal | 21,170 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| PNC Bridge Loan Fee | 33,125 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| TOTAL FINANCIAL COSTS | 1,011,318 | | - | - | - | - | - | - | - | - | - | - | - | - |
| TOTAL USES DURING CONSTRUCTION | 39,311,937 | | 1,551,282 | 1,236,598 | 1,531,635 | 1,539,565 | 932,041 | 1,029,895 | 649,142 | 18,353 | 18,252 | 18,252 | 18,232 | 18,257 |

| PROJECT USES AFTER COMPLETION | Total | | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Apr-16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Operating Reserve | 1,529,143 | OK | - | - | - | - | - | - | - | - | - | - | - | 1,529,143 |
| Remaining Reserve | 3,000,000 | OK | - | - | - | - | - | - | - | - | - | - | - | 3,000,000 |
| - | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| - | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| - | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| - | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| - | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| - | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Eligible Interest | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Ineligible Interest | 335,835 | OK | - | - | - | - | - | - | - | 11,996 | 82,181 | 57,282 | 57,249 | 57,417 |
| Cash Acquisition Fee | - | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| Cash Development Fee | 1,438,111 | OK | - | - | - | - | - | - | - | - | - | - | - | 1,438,885 |
| Deferred Fees | 2,892,111 | OK | - | - | - | - | - | - | - | - | - | - | - | - |
| TOTAL USES AFTER COMPLETION | 8,724,678 | | - | - | - | - | - | - | - | 11,996 | 82,181 | 57,282 | 57,249 | 6,043,431 |

CONFIDENTIAL

PLAINTIFFS_00008582

FUND FLOW ANALYSIS

CONFIDENTIAL

PLAINTIFFS_00008583



PLAINTIFFS_00008584

2015 Town Lake Park, LP

Oak Creek Village

## INTEREST RESERVE ANALYSIS

**SELLER NOTE CONVERSION LOAN**

Forward Funding Balance
- Beginning Balance
- less Draw Amount
- less Repayment
- Ending Balance
- Interest Incurred on End Balance Incl 0.00%

Outstanding Balance
- Beginning Balance
- add Draw Amount
- less Repayment
- Ending Balance
- Interest Incurred on Beg Balance Incl 0.00%

Total Interest Cost
- Building PIK %
- Eligible Interest Cost
- Ineligible Interest Cost
- Total Interest Cost

**GP CONTRIBUTION NOTE CONVERSION LOAN**

Forward Funding Balance
- Beginning Balance
- less Draw Amount
- less Repayment
- Ending Balance
- Interest Incurred on End Balance Incl 0.00%

Outstanding Balance
- Beginning Balance
- add Draw Amount
- less Repayment
- Ending Balance
- Interest Incurred on Beg Balance Incl 0.00%

Total Interest Cost
- Building PIK %
- Eligible Interest Cost
- Ineligible Interest Cost
- Total Interest Cost

**CITY OF AUSTIN CONVERSION LOAN**

Forward Funding Balance
- Beginning Balance
- less Draw Amount
- less Repayment
- Ending Balance
- Interest Incurred on End Balance Incl 0.00%

Outstanding Balance
- Beginning Balance
- add Draw Amount
- less Repayment
- Ending Balance
- Interest Incurred on Beg Balance Incl 0.00%

Total Interest Cost
- Building PIK %
- Eligible Interest Cost
- Ineligible Interest Cost
- Total Interest Cost

INTEREST RESERVE ANALYSIS

SELLER NOTE CONVERSION LOAN

Forward Funding Balance
Beginning Balance
less Draw Amount
less Repayment
Ending Balance
Interest accrue on End Bal of 0.00%
Interest Cost on Beg Bal @ 0.00%

Outstanding Balance
Beginning Balance
add Draw Amount
less Repayment
Ending Balance
Interest Cost on Beg Bal @ 0.00%

Total Interest Cost
Funding P.S.%
Eligible Interest Cost
Ineligible Interest Cost
Total Interest Cost

CP CONTRIBUTION NOTE CONVERSION

Forward Funding Balance
Beginning Balance
less Draw Amount
less Repayment
Ending Balance
Interest accrue on End Bal of 0.00%
Interest Cost on Beg Bal @ 0.00%

Outstanding Balance
Beginning Balance
add Draw Amount
less Repayment
Ending Balance
Interest Cost on Beg Bal @ 0.00%

Total Interest Cost
Funding P.S.%
Eligible Interest Cost
Ineligible Interest Cost
Total Interest Cost

CITY OF AUSTIN CONVERSION LOAN

Forward Funding Balance
Beginning Balance
less Draw Amount
less Repayment
Ending Balance
Interest accrue on End Bal of 0.00%
Interest Cost on Beg Bal @ 0.00%

Total Interest Cost
Funding P.S.%
Eligible Interest Cost
Ineligible Interest Cost
Total Interest Cost

CONFIDENTIAL

PLAINTIFFS_00008586

PRH, INC.

Twin Oak Crest Forecast 05-20-14

CONFIDENTIAL

PLAINTIFFS_00008587

STABILIZED NET OPERATING INCOME

PLAINTIFFS_00008588

NET OPERATING INCOME

Scenario Name:

Oak Creek Village

CONFIDENTIAL

PLAINTIFFS_00008589

CASH FLOW

CONFIDENTIAL

PLAINTIFFS_00008590

CONFIDENTIAL

PLAINTIFFS_00008591

2015 [illegible] Oak Creek, LP

Oak Creek Village

## BENEFITS SCHEDULE

### QUARTERLY FEDERAL TAX CREDITS AND TAXABLE INCOME (LOSS) DURING RENT UP

| YEAR | QTR | MONTH | MAX MONTHLY TC | MONTHLY TC ACCESS % | MONTHLY TC [illegible] | QTRLY TC AMT | ANNUAL AVG UNITS OCC % | UNITS OCC % | [illegible] PRE-OCC EXPENSES | ADJUSTED VARIABLE EXPENSES | WEIGHTED PHYS OCC % | WEIGHTED VARIABLE EXP | MONTHLY TAXABLE INC (LOSS) | QTRLY TAXABLE INC (LOSS) | AVAIL CASH FLOW | WEIGHTED CASH FLOW | [illegible] % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2014 | Q1 | Jan | $ 166,667 | 0% | $ - | | | 0% | $ - | $ (21,544) | 0% | $ - | $ - | | $ 71,861 | $ - | 0% |
| | | Feb | 166,667 | 0% | - | | | 0% | - | (21,544) | 0% | - | - | | 71,861 | - | 0% |
| Annual Tax Credits | | Mar | 166,667 | 0% | - | $ - | | 0% | - | (21,544) | 0% | - | - | $ - | 71,861 | - | 0% |
| $596,139 | Q2 | Apr | 166,667 | 0% | - | | | 0% | - | (21,544) | 0% | - | - | | 71,861 | - | 0% |
| | | May | 166,667 | 0% | - | | | 0% | - | (21,544) | 0% | - | - | | 71,861 | - | 0% |
| Annual Taxable Income (Loss) | | Jun | 166,667 | 21% | 34,642 | 34,642 | | 21% | (46,357) | (21,544) | 21% | (15,036) | (61,[illegible]) | (61,[illegible]) | 71,861 | [illegible] | 42% |
| ([illegible]) | Q3 | Jul | 166,667 | 42% | 69,764 | | | 42% | (46,157) | (21,544) | 100% | (30,072) | (76,429) | | 71,861 | [illegible] | 42% |
| | | Aug | 166,667 | 42% | 69,764 | | | 42% | (46,157) | (21,544) | 100% | (30,072) | (76,429) | | 71,861 | [illegible] | 42% |
| Annual Uncontrollable Expenses | | Sep | 166,667 | 42% | 69,764 | 209,[illegible] | | 42% | (46,157) | (21,544) | 100% | (30,072) | (76,429) | (229,[illegible]) | 71,861 | [illegible] | 42% |
| $ ([illegible]) | Q4 | Oct | 166,667 | 42% | 69,764 | | | 42% | (46,157) | (21,544) | 100% | (30,072) | (76,429) | | 71,861 | [illegible] | 42% |
| | | Nov | 166,667 | 71% | 117,[illegible] | | | 71% | (46,157) | (21,544) | 237% | (51,[illegible]) | (97,[illegible]) | | 71,861 | [illegible] | 100% |
| | | Dec | 166,667 | 100% | 166,667 | 351,[illegible] | 40% | 100% | (46,157) | (21,544) | 355% | (72,[illegible]) | (118,[illegible]) | (292,[illegible]) | 71,861 | [illegible] | 100% |
| 2015 | Q1 | Jan | 166,667 | 100% | 166,667 | | | 100% | (109,738) | (91,823) | 100% | (91,823) | (201,561) | | 88,451 | 88,451 | 100% |
| | | Feb | 166,667 | 100% | 166,667 | | | 100% | (109,738) | (91,823) | 100% | (91,823) | (201,561) | | 88,451 | 88,451 | 100% |
| Annual Tax Credits | | Mar | 166,667 | 100% | 166,667 | 500,000 | | 100% | (109,738) | (91,823) | 100% | (91,823) | (201,561) | (604,683) | 88,451 | 88,451 | 100% |
| $2,000,000 | Q2 | Apr | 166,667 | 100% | 166,667 | | | 100% | (109,738) | (91,823) | 100% | (91,823) | (201,561) | | 88,451 | 88,451 | 100% |
| | | May | 166,667 | 100% | 166,667 | | | 100% | (109,738) | (91,823) | 100% | (91,823) | (201,561) | | 88,451 | 88,451 | 100% |
| Annual Taxable Income (Loss) | | Jun | 166,667 | 100% | 166,667 | 500,000 | | 100% | (109,738) | (91,823) | 100% | (91,823) | (201,561) | (604,683) | 88,451 | 88,451 | 100% |
| ([illegible]) | Q3 | Jul | 166,667 | 100% | 166,667 | | | 100% | [illegible] | [illegible] | 100% | [illegible] | [illegible] | | [illegible] | [illegible] | 100% |
| | | Aug | 166,667 | 100% | 166,667 | | | 100% | [illegible] | [illegible] | 100% | [illegible] | [illegible] | | [illegible] | [illegible] | 100% |
| Annual Uncontrollable Expenses | | Sep | 166,667 | 100% | 166,667 | 500,000 | | 100% | [illegible] | [illegible] | 100% | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 100% |
| $ ([illegible]) | Q4 | Oct | 166,667 | 100% | 166,667 | | | 100% | [illegible] | [illegible] | 100% | [illegible] | [illegible] | | [illegible] | [illegible] | 100% |
| | | Nov | 166,667 | 100% | 166,667 | | | 100% | [illegible] | [illegible] | 100% | [illegible] | [illegible] | | [illegible] | [illegible] | 100% |
| | | Dec | 166,667 | 100% | 166,667 | 500,000 | 100% | 100% | [illegible] | [illegible] | 100% | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 100% |
| 2016 | Q1 | Jan | 166,667 | 100% | 166,667 | | | 100% | [illegible] | [illegible] | 100% | [illegible] | [illegible] | | [illegible] | [illegible] | 100% |
| | | Feb | 166,667 | 100% | 166,667 | | | 100% | [illegible] | [illegible] | 100% | [illegible] | [illegible] | | [illegible] | [illegible] | 100% |
| Annual Tax Credits | | Mar | 166,667 | 100% | 166,667 | 500,000 | | 100% | [illegible] | [illegible] | 100% | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 100% |
| $2,000,000 | Q2 | Apr | 166,667 | 100% | 166,667 | | | 100% | [illegible] | [illegible] | 100% | [illegible] | [illegible] | | [illegible] | [illegible] | 100% |
| | | May | 166,667 | 100% | 166,667 | | | 100% | [illegible] | [illegible] | 100% | [illegible] | [illegible] | | [illegible] | [illegible] | 100% |
| Annual Taxable Income (Loss) | | Jun | 166,667 | 100% | 166,667 | 500,000 | | 100% | [illegible] | [illegible] | 100% | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 100% |
| ([illegible]) | Q3 | Jul | 166,667 | 100% | 166,667 | | | 100% | [illegible] | [illegible] | 100% | [illegible] | [illegible] | | [illegible] | [illegible] | 100% |
| | | Aug | 166,667 | 100% | 166,667 | | | 100% | [illegible] | [illegible] | 100% | [illegible] | [illegible] | | [illegible] | [illegible] | 100% |
| Annual Uncontrollable Expenses | | Sep | 166,667 | 100% | 166,667 | 500,000 | | 100% | [illegible] | [illegible] | 100% | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 100% |
| $ ([illegible]) | Q4 | Oct | 166,667 | 100% | 166,667 | | | 100% | [illegible] | [illegible] | 100% | [illegible] | [illegible] | | [illegible] | [illegible] | 100% |
| | | Nov | 166,667 | 100% | 166,667 | | | 100% | [illegible] | [illegible] | 100% | [illegible] | [illegible] | | [illegible] | [illegible] | 100% |
| | | Dec | $ 166,667 | 100% | $ 166,667 | $ 500,000 | 100% | 100% | [illegible] | [illegible] | 100% | [illegible] | [illegible] | $ ([illegible]) | [illegible] | [illegible] | 100% |

NOTE: [illegible]

### QUARTERLY FEDERAL TAX CREDITS 10 YEARS AFTER RENT UP

| YEAR | QTR | MONTH | MAX MONTHLY TC | MONTHLY TC AMT IF [illegible] | MONTHLY TC AMT | QTRLY TC AMT |
|---|---|---|---|---|---|---|
| 2025 | Q1 | Jan | $ 166,667 | $ - | $ 166,667 | |
| | | Feb | 166,667 | - | 166,667 | |
| | | Mar | 166,667 | - | 166,667 | $ 500,000 |
| Annual Tax Credits | Q2 | Apr | 166,667 | - | 166,667 | |
| $1,403,861 | | May | 166,667 | - | 166,667 | |
| | | Jun | 166,667 | [illegible] | [illegible] | [illegible] |
| | Q3 | Jul | 166,667 | [illegible] | [illegible] | |
| | | Aug | 166,667 | [illegible] | [illegible] | |
| | | Sep | 166,667 | [illegible] | [illegible] | [illegible] |
| | Q4 | Oct | 166,667 | [illegible] | [illegible] | |
| | | Nov | 166,667 | [illegible] | [illegible] | |
| | | Dec | 166,667 | [illegible] | - | [illegible] |
| 2026 | Q1 | Jan | 166,667 | 166,667 | - | |
| | | Feb | 166,667 | 166,667 | - | |
| | | Mar | 166,667 | 166,667 | - | |
| Annual Tax Credits | Q2 | Apr | 166,667 | 166,667 | - | |
| $- | | May | 166,667 | 166,667 | - | |
| | | Jun | 166,667 | 166,667 | - | |
| | Q3 | Jul | 166,667 | 166,667 | - | |
| | | Aug | 166,667 | 166,667 | - | |
| | | Sep | 166,667 | 166,667 | - | |
| | Q4 | Oct | 166,667 | 166,667 | - | |
| | | Nov | 166,667 | 166,667 | - | |
| | | Dec | 166,667 | 166,667 | - | |
| 2027 | Q1 | Jan | 166,667 | 166,667 | - | |
| | | Feb | 166,667 | 166,667 | - | |
| | | Mar | 166,667 | 166,667 | - | |
| Annual Tax Credits | Q2 | Apr | 166,667 | 166,667 | - | |
| $- | | May | 166,667 | 166,667 | - | |
| | | Jun | 166,667 | 166,667 | - | |
| | Q3 | Jul | 166,667 | 166,667 | - | |
| | | Aug | 166,667 | 166,667 | - | |
| | | Sep | 166,667 | 166,667 | - | |
| | Q4 | Oct | 166,667 | 166,667 | - | |
| | | Nov | 166,667 | 166,667 | - | |
| | | Dec | $ 166,667 | $ 166,667 | $ - | |

NOTE: [illegible]

### ANNUAL BENEFITS

| FORECASTED TAX CREDITS | | 1 2014 | 2 2015 | 3 2016 | 4 2017 | 5 2018 | 6 2019 | 7 2020 | 8 2021 | 9 2022 | 10 2023 | 11 2024 | 12 2025 | 13 2026 | 14 2027 | 15 2028 | 16 2029 | 17 2030 | 18 2031 | 19 2032 | 20 2033 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL FEDERAL CREDIT | 100% | $ 596,139 | $ 2,000,000 | $ 2,000,000 | $ 2,000,000 | $ 2,000,000 | $ 2,000,000 | $ 2,000,000 | $ 2,000,000 | $ 2,000,000 | $ 2,000,000 | $ 1,403,861 | $ - | $ - | $ - | $ - | $ - | $ - | | | | $ 20,000,000 |
| TOTAL HISTORIC CREDIT | 100% | - | - | - | - | - | - | - | - | | | | | | | | | | | | | $ - |
| TOTAL STATE CREDIT | 100% | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | | | | $ - |
| TAX CREDITS TO ILP | 99.99% | 596,079 | 1,999,800 | 1,999,800 | 1,999,800 | 1,999,800 | 1,999,800 | 1,999,800 | 1,999,800 | 1,999,800 | 1,999,800 | 1,403,721 | - | - | - | - | - | - | | | | 19,998,000 |
| TAX CREDITS TO GP | 0.01% | 60 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 140 | - | - | - | - | - | - | - | - | - | 2,000 |

| FORECASTED PROFIT (LOSS) | | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 | 2027 | 2028 | 2029 | 2030 | 2031 | 2032 | 2033 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL PROFIT (LOSS) | 100% | $ ([illegible]) | $ ([illegible]) | $ ([illegible]) | $ ([illegible]) | $ ([illegible]) | $ ([illegible]) | $ ([illegible]) | $ ([illegible]) | $ ([illegible]) | $ ([illegible]) | $ ([illegible]) | $ ([illegible]) | $ ([illegible]) | $ ([illegible]) | $ ([illegible]) | $ ([illegible]) | $ ([illegible]) | $ ([illegible]) | $ [illegible] | $ [illegible] | $ ([illegible]) |
| TAX PROFIT (LOSS) TO ILP | 99.99% | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | - | - | - | [illegible] | [illegible] | ([illegible]) |
| TAX PROFIT (LOSS) TO GP | 0.01% | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | ([illegible]) | [illegible] | 42 | ([illegible]) |

| FORECASTED CASH FLOW | | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 | 2027 | 2028 | 2029 | 2030 | 2031 | 2032 | 2033 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL CASH FLOW | 100% | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - | - |
| CASH FLOW TO ILP | [illegible]% | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| CASH FLOW TO GP | [illegible]% | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |

[illegible] Oak Creek Forecast 06-20-14

CONFIDENTIAL

PLAINTIFFS_00008592

CAPITAL ACCOUNTS & RUNNING GAIN CALCULATION

CONFIDENTIAL

PLAINTIFFS_00008593

PAGE 09-A

| 2013 Travis Oak Creek, LP | DEBT ANALYSIS AT END OF YEAR 18 (2032) | 5/21/2014 |
|---|---|---|
| Oak Creek Village | | 2:59 PM |

**INCOME APPROACH**

ESTIMATED INCOME AT END OF YEAR 18 (2032)

| | | |
|---|---|---|
| Stabilized NOI (less Rep. Reserves) in Year 19 (2033) | $ | 3,221,984 |
| Capitalization Rate | | 9.50% |
| VALUE OF PROPERTY AT THE END OF YEAR 18 | $ | 33,915,617 |

DEBT BALANCES AT THE END OF YEAR 18 (2012)

| | | |
|---|---|---|
| Investor Services Fee Payable | $ | - |
| Partnership Management Fee Payable | | - |
| Seller Note | 3,782,604 | |
| GP Contribution Note | 2,423,750 | |
| City of Austin | 2,000,000 | |
| - | | - |
| PNC - FNMA | 20,864,305 | - |
| - | | - |
| - | | - |
| - | | - |
| TOTAL DEBT BALANCE | $ | 29,070,659 |
| INDICATED LOAN TO VALUE AT END OF YEAR 18 | | 85.71% |

**COST APPROACH**

ESTIMATED REPLACEMENT COST AT END OF YEAR 18 (2032)

| | | |
|---|---|---|
| Development Costs (Dep. Costs less Dev. Fee plus Land) | | 46,847,881 |
| Net Increase Rate (includes depreciation) | | 2.00% |
| VALUE OF PROPERTY AT THE END OF YEAR 18 | | $66,910,310.25 |
| TOTAL DEBT BALANCE | $ | 29,070,659 |
| INDICATED LOAN TO VALUE AT END OF YEAR 18 | | 43.45% |

Travis Oak Creek Forecast 05-20-14

CONFIDENTIAL

PLAINTIFFS_00008594