# DEVELOPMENT AGREEMENT

**THIS DEVELOPMENT AGREEMENT** (this "Agreement") is made and entered into effective as of the 23rd day of May, 2014, between, **2013 TRAVIS OAK CREEK DEVELOPER, INC.**, a Texas corporation, (the "Developer"), and **2013 TRAVIS OAK CREEK, LP**, a Texas limited partnership (the "Partnership").

W I T N E S S E T H :

WHEREAS, the Partnership has been formed for the purposes, *inter alia*, of acquiring, financing, owning, constructing, developing, maintaining, improving, operating, leasing and selling or otherwise disposing of certain real property, improvements, furnishings, equipment and personal property to be located in Austin, Travis County, Texas, and known as Oak Creek Village (the "Project"), which Project is intended to be rented and managed in order that it will qualify for the low-income housing tax credit provided in Section 42 of the Internal Revenue Code of 1986, as amended (the "Code");

WHEREAS, in order to effectuate the purposes for which it has been formed, the Partnership has engaged the services of the Developer with respect to overseeing the development of the Project for the Partnership; and

WHEREAS, the parties desire to enter into this Agreement that amends and restates in total any and all prior agreements between the parties with respect to the subject matter hereof and sets forth the obligations of, and the services to be performed by, the Developer and the compensation for such services.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

**Section 1. Obligations of the Developer**.  The Developer shall have the following duties, to the extent they have not already been performed:

(a)   The Developer shall oversee the development and construction of the Project and shall perform the services and carry out the responsibilities with respect to the Project as are set forth herein, and such additional duties and responsibilities as are reasonably within the general scope of such services and responsibilities and are designated from time to time by the General Partner of the Partnership.

(b)   The Developer's services shall be performed in the name and on behalf of the Partnership and shall consist of the duties set forth in the following subparagraphs of this Section 1(b) and as provided elsewhere in this Agreement; provided, however, that if the performance of any duty of the Developer set forth in this Agreement is beyond the reasonable control of the Developer, the Developer shall nonetheless be obligated to use commercially reasonable efforts to perform such duty and promptly notify the General

Partner that the performance of such duty is beyond their reasonable control. The Developer has performed or shall perform the following:

(i) negotiate and cause to be executed in the name and on behalf of the Partnership agreements for architectural, engineering, testing or consulting services for the Project, and any agreements for the construction of the Project and any improvements to be constructed or installed by the Partnership or the furnishing of any supplies, materials, machinery or equipment therefor, or any amendments thereof, provided that no material agreement shall be executed, nor binding commitment made, until the terms and conditions thereof and the party with whom the agreement is to be made have been approved by the General Partner;

(ii) assist the Partnership in dealing with neighborhood groups, local organizations, abutters and other parties interested in the development of the Project;

(iii) establish and implement appropriate administrative and financial controls for the design and construction of the Project, including but not limited to:

(A) coordination and administration of the Project architect, the general contractor and other contractors, professionals and consultants employed in connection with the design or construction of the Project;

(B) administration of any construction contracts on behalf of the Partnership;

(C) participation in conferences and the rendering of such advice and assistance as will aid in developing economical, efficient and desirable design and construction procedures;

(D) rendering of advice and recommendations as to the selection procedures for and selection of subcontractors and suppliers;

(E) review and submission to the General Partner for approval of all requests for payments under any architectural agreement, general contractor's agreement or any loan agreements with any lending institutions providing funds for the benefit of the Partnership for the design or construction of any improvements;

(F) submission of any suggestions or requests for changes which could in any reasonable manner improve the design, efficiency or cost of the Project;

(G) applying for and maintaining in full force and effect any and all governmental permits and approvals required for the lawful construction of the Project;

(H) compliance with all terms and conditions applicable to the Partnership or the Project contained in any governmental permit or approval required or obtained for the lawful construction of the Project, or in any insurance policy affecting or covering the Project, or in any surety bond obtained in connection with the Project;

(I) furnishing such consultation and advice relating to the Project as may be reasonably requested from time to time by the General Partner;

(J) giving or making the Partnership's instructions, requirements, approvals and payments provided for in the agreements with the Project architect, general contractor and other contractors, professionals and consultants retained for the Project; and

(K) at the Partnership's expense, filing on behalf of and as the attorney-in-fact for the Partnership any notices of completion required or permitted to be filed upon the completion of any improvement(s) and taking such actions as may be required to obtain any certificates of occupancy or equivalent documents required to permit the occupancy of dwelling units and other space in the Project;

(iv) inspecting the progress of construction of the Project, including verification of the materials and labor being furnished to and on such construction so as to be fully competent to approve or disapprove requests for payment made by the Project architect and the general contractor, or by any other parties with respect to the design and construction of the Project, and in addition to provide oversight that the same is being carried out substantially in accordance with the plans and specifications approved by the General Partner or, in the event that the same is not being so carried out, to promptly so notify the General Partner;

(v) if requested to do so by the General Partner, perform on behalf of the Partnership all obligations of the Partnership with respect to the design and construction of the Project contained in any loan agreement or security agreement entered into in connection with any financing for the Project, or in any lease or rental agreement relating to space in the Project, or in any agreement entered into with any governmental body or agency relating to the terms and conditions of such construction, provided that copies of such agreements have been provided by the Partnership to the Developer, or the Partnership has otherwise notified the Developer in writing of such obligations;

(vi) to the extent requested to do so by the General Partner, prepare and distribute to the General Partner a critical path schedule, and periodic updates thereto as necessary to reflect any material changes, but in any event not less frequently than quarterly, other design or construction cost estimates as required by the Partners, and financial accounting reports, including monthly progress reports on the quality, progress and cost of construction and recommendations as

to the drawing of funds from any loans arranged by the Partnership to cover the cost of design and construction of the Project;

(vii)   assist the Partnership in obtaining and maintaining insurance coverage for the Project, the Partnership and its employees during the development and construction phase of the Project, which insurance shall include general public liability insurance covering claims for personal injury, including but not limited to bodily injury, or property damage, occurring in or upon the Property or the streets, passageways, curbs and vaults adjoining the Property;

(viii)   comply with all applicable present and future laws, if applicable, ordinances, orders, rules, regulations and requirements (hereinafter called "laws") of all federal, state and municipal governments, courts, departments, commissions, boards and offices, any national or local Board of Fire Underwriters or Insurance Services Offices having jurisdiction in the county in which the Project is located or any other body exercising functions similar to those of any of the foregoing, or any insurance carriers providing any insurance coverage for the Partnership or the Project, which may be applicable to the Project or any part thereof;

(ix)   assemble and retain all contracts, agreements and other records and data as may be necessary to carry out the Developer's functions hereunder;

(x)   coordinate and administer the design and construction of all interior improvements to be constructed or furnished with respect to the Project;

(xi)   use commercially reasonable efforts to accomplish the timely completion of the Project in accordance with the approved plans and specifications and the time schedules for such completion approved by the General Partner;

(xii)   at the direction of the General Partner, implement any decisions of the Partners made in connection with the design, development and construction of the Project or any policies and procedures relating thereto, exclusive of leasing activities; and

(xiii)   perform and administer any and all other services and responsibilities of the Developer which are set forth in any other provisions of this Agreement or which are requested to be performed by the General Partner and are within the general scope of the services described herein.

**Section 2.   Obligation To Complete Construction and To Pay Development Costs**. The Developer shall complete the construction of the Project or cause the same to be completed in a good and workmanlike manner, free and clear of all mechanics,' materialmen's or similar liens, and shall equip the Project or cause the same to be equipped with all necessary and appropriate fixtures, equipment and articles of personal property, including refrigerators and ranges, all in accordance with the applicable Project loan documents and substantially in accordance with the drawings and specifications forming a part of the construction contract.

The Partnership and the Developer hereby agree and acknowledge that the Partnership shall be exclusively responsible for the payment of all costs and expenses not included in the Project's eligible basis as determined under Code Section 42(h)(4)(B). To the extent any of such costs (such as reserve requirements, marketing costs and permanent financing costs) have been incurred by the Developer, the Partnership agrees to reimburse Developer for same and such reimbursement shall not reduce or otherwise count against the Development Fee owed pursuant to Section 4 below.

**Section 3.   Accounts and Records**.  The Developer, on behalf of the Partnership, shall keep such books of account and other records as may be required and approved by the General Partner, including, but not limited to, records relating to the costs for which construction advances have been requested and/or received.  The Developer shall keep vouchers, statements, receipted bills and invoices and all other records, in the form approved by the General Partner, covering all collections, if any, disbursements and other data in connection with the Project prior to final completion of construction.  All accounts and records relating to the Project, including all correspondence, shall be surrendered to the Partnership upon demand without charge therefor.

**Section 4.   Development Fee**. In consideration of the performance by the Developer of the development and construction services described herein, the Partnership shall pay to the Developer a Development Fee (herein so called) in the amount of $5,175,000, or such other amount permitted by the Agency and all applicable laws, rules and regulations, in the manner provided in the Amended and Restated Agreement of Limited Partnership dated as of the date hereof (the "Partnership Agreement").

The Partnership and Developer acknowledge and agree that 20% of the Development Fee was earned prior to the date of this Agreement, and further agree that the remainder of the Development Fee shall be earned pro rata as services are completed hereunder, but in any event all of the Development Fee shall be earned upon the receipt by the Partnership of the final certificate of occupancy (or equivalent document) for the last building in the Project.  The Developer hereby acknowledges and agrees that $0 of the Development Fee referenced above, and no other portion, shall be earned for services performed in connection with the acquisition of the Project, the development of nonresidential improvements, the organization or syndication of the Partnership, obtaining an allocation of Tax Credits or securing Project financing other than construction financing, it being the understanding between the parties hereto that all such listed activities and services are the exclusive responsibility of the Partnership, the General Partner and/or consultants or others engaged by the Partnership.

Any payment of a portion of the Development Fee otherwise due hereunder or under the Partnership Agreement shall not be paid from the proceeds of the Investment Limited Partner's Capital Contributions to the extent that any amount required to be paid under Section 6.7 of the Partnership Agreement by the General Partner shall not yet have been paid or, if not paid, adequately provided for in the sole discretion of the Special Limited Partner.  Any portion of the Development Fee withheld pursuant to the immediately preceding sentence shall be reimbursed from excess Development Funds, if available on or before the Final Determination is made pursuant to Section 6.7(k) of the Partnership Agreement.

Any Development Fee that is not otherwise paid by the time of the Final Installment of the Investment Limited Partner's Capital Contribution (the "Deferred Development Fee") shall bear interest at 6% per annum and shall be paid from future Net Cash Flow or sale or refinancing fees pursuant to Article IV of the Partnership Agreement.  In addition, any costs savings in the Project Budget (including contingency) upon Final Determination shall be applied to payment of Development Fee so long as there no outstanding Development Costs or uncured defaults under this Agreement or uncured Events of Default under the Partnership Agreement Notwithstanding anything to the contrary, the Development Fee shall be fully paid no later than the thirteenth (13th) anniversary of Final Construction Completion.

**Section 5. Termination of Duties and Responsibilities of Developer**.  The Developer shall have no further duties or obligations hereunder after receipt of a final certificate of occupancy for the last building in the Project and completion of all punch list items, or equivalent.  The Developer's duties, responsibilities and rights hereunder shall not be terminated by the Partnership except as set forth in the Partnership Agreement and for "cause" as finally determined by a court of competent jurisdiction.  For purposes hereof, "cause" shall mean fraud, dishonesty, reckless disregard for customary practices and intentional misconduct after at least 30 days' prior notice and opportunity to cure.

**Section 6. Miscellaneous**.

(a)   This Agreement shall be binding upon the parties hereto and their respective successors and permitted assigns.  This Agreement may not be assigned by any of the parties hereto without the written consent of the other party, except that the Developer may assign its rights but not its duties under this Agreement.

(b)   The descriptive paragraph headings of this Agreement are inserted for convenience only and are not intended to and shall not be construed to limit, enlarge, or affect the scope or intent of this Agreement nor the meaning of any provision hereof.

(c)   This Agreement and the rights and obligations of the parties hereto shall be governed and construed and enforced in accordance with the laws of the State of Texas.

(d)   This Agreement and the Partnership Agreement embody the entire agreement and understanding between the parties relating to the subject matter hereof and supersede all prior agreements and understandings related to such subject matter, and it is agreed that there are no terms, understandings, representations or warranties, express or implied, other than those set forth herein.

(e)   This Agreement shall not be amended or modified in any respect without the prior written consent of each party hereto.

(f)   No party hereto shall file or attempt to file this Agreement of record.

(g)   This Agreement and the obligations of the Developer hereunder are solely for the benefit of the Partnership, the General Partner and the Limited Partners and no benefits to any other third parties are intended.  The parties hereto agree and

acknowledge that the Limited Partners and their respective successors and assigns shall each be a third party beneficiary of this Agreement and shall be able to enforce the rights of the Partnership herein at any time (and upon at least fifteen (15) business days' notice and cure for monetary defaults as set forth in the Partnership Agreement); provided, however, this enforcement right is for the benefit of the Limited Partner and shall not create any obligations on the part of such Limited Partners.

(h)   In the event any provision hereof is deemed to be unenforceable or against public policy, then such provision shall be deemed omitted from this Agreement and to the extent possible such provision shall be replaced with an enforceable provision which corresponds with the spirit of the omitted provision, and no other provision of this Agreement shall be affected by such omission or unenforceability.

(i)   The parties agree that the prevailing party in any action or dispute involving litigation concerning the subject matter hereof, shall be entitled to reasonable attorneys' fees and court costs.

(j)   The waiver by any party of any breach of this Agreement shall not operate or be construed to be a waiver of any subsequent breach.

(k)   All capitalized terms herein shall have the same meanings as set forth in the Partnership Agreement, except as otherwise expressly set forth herein.

**Section 7.  Notice**.  Any notice required to be given hereunder shall be in writing and mailed to all parties at the addresses set forth on the signature page hereof by certified mail, postage prepaid, or hand delivered or sent by a recognized overnight courier, in each case, with receipt of delivery.  Each party shall have the right to change its address for the receipt of notices, upon the giving of proper notice to all other parties hereto.  Whenever a period of time is to be computed from the date of receipt of an item of certified mail, such period shall be computed from the fifth day following the date of mailing if delivery of the certified mail item is refused by the party to whom it was directed.

**Section 8.  Counterparts**.  This Agreement may be executed in several counterparts, each of which shall be deemed to be an original copy and all of which together shall constitute one agreement binding on all parties hereto, notwithstanding that all the parties shall not have signed the same counterpart.

**Section 9.  Responsibilities of the Partnership**.  In order for the Developer to perform duties described herein, the Partnership shall:

(a)   provide full information regarding its requirements for the Project;

(b)   designate a representative who shall be fully acquainted with the scope of the work and has authority to render decisions promptly and furnish information expeditiously; and

  (c) if the Partnership becomes aware of any fault or defect in the Project or nonconformance with any contract or other documents, it shall give prompt written notice thereof to the Developer.

  **Section 10. Independent Contractor**.  The parties hereto do not intend to create a partnership or any similar association for any purpose.  The Developer shall be independent contractors for all purposes.

[Signature page follows.]

IN WITNESS WHEREOF, the parties have executed this Development Agreement on the date and year first above written.

DEVELOPER:

**2013 Travis Oak Creek Developer, Inc.**,
a Texas corporation

By: _____
Rene O. Campos, President

Address:

3001 Knox Street, Suite 400
Dallas, Texas 75205


PARTNERSHIP:

**2013 Travis Oak Creek, LP**,
a Texas limited partnership

By:   2013 Travis Oak Creek GP, LLC,
      a Texas limited liability company,
      its general partner

      By: _____
          Rene O. Campos, Manager

Address:

3001 Knox Street, Suite 400
Dallas, Texas 75205