

**MULTIFAMILY**

May 21, 2014

2013 Travis Oak Creek, LP
c/o Eureka Multifamily Group
3001 Knox Street, Suite 400
Dallas, TX 75205
Attention: Rene Campos

> Re:  Forward Commitment for Fixed Rate Mortgage Loan not to exceed $27,300,000.00 under the Fannie Mae DUS Product Line relating to a 173 Unit multifamily housing project to be known as Oak Creek Village, and located in Austin, Texas (the "**Project**")

Dear Mr. Campos:

PNC Bank, National Association, a national banking association ("**PNC**"), in its capacity as an authorized Seller/Servicer under the Delegated Underwriting and Servicing Program promulgated by Fannie Mae, hereby commits to make a mortgage loan with respect to the Project (the "**Mortgage Loan**") to 2013 Travis Oak Creek, LP, a Texas limited partnership ("**Borrower**"), upon and subject to the terms, conditions and limitations set forth in this letter (together with all exhibits hereto, the "**Commitment**"). Capitalized terms used and not defined in the body of this Commitment shall have the respective meanings ascribed to them in Exhibit A attached hereto.

A.  Satisfaction of Fannie Mae Requirements. This Commitment is issued subject to and in accordance with a delegation of authority by Fannie Mae to PNC pursuant to the Fannie Mae Delegated Underwriting and Servicing Product Line. Notwithstanding anything in this Commitment to the contrary, the effectiveness of this Commitment shall at all times be contingent upon Borrower's compliance with the DUS Product Line requirements (including, without limitation, the Fannie Mae Multifamily Delegated Underwriting and Servicing Guide) as in effect as of the date hereof, subject to procedural changes as may hereafter become adopted by Fannie Mae (the "**Fannie Mae Guidelines**"), as modified by the express provisions of this Commitment.

B.  Satisfaction of MBS Investor Trade Confirmation Requirements. This Commitment is issued in coordination with the MBS Trade Confirmation among PNC Capital Markets LLC ("**MBS Investor**"), and PNC dated as of May 23, 2014 (the "**MBS Trade Confirmation**"), pursuant to which PNC will cause Fannie Mae to issue and deliver to MBS Investor a Fannie Mae mortgage-backed security (the "**MBS**") secured by the Mortgage Loan.

PLAINTIFFS_00020826

Oak Creek Village
May 21, 2014

C.    <u>Conditions to Rate Lock</u>.  The availability of the Mortgage Loan and PNC's obligation to consent to the MBS Investor's setting of the interest rate for the Mortgage Loan (the **"Rate Lock"**) shall be expressly conditioned upon the satisfaction of the following conditions precedent to the satisfaction of PNC:

1.    PNC shall have received and approved a preliminary title report and survey with respect to the Project, and evidence satisfactory to it that fee title to the Project is vested in Borrower, and PNC shall be assured the a loan policy of title insurance meeting Fannie Mae Guidelines can be obtained upon the Mortgage Loan Closing (as defined in <u>Section E</u> below).  The current Fannie Mae Guidelines with respect to title matters are attached as <u>Exhibit F</u> hereto.

2.    PNC shall have received and approved all final plans and specifications with respect to the construction and/or rehabilitation of the Project (the **"Approved Plans"**), a budget for construction and/or rehabilitation of the Project, a copy of the executed fixed price contract for construction and/or rehabilitation of the Project with a general contractor acceptable to PNC, a timeline for completion of the construction and/or rehabilitation of the Project, and a projected absorption schedule for the lease-up of the units in the Project.

3.    PNC shall have received and approved copies of the organizational documents of each of Borrower, each manager, managing member and/or general partner of Borrower, and each Key Principal and Guarantor which is not a natural person, all evidencing (i) the due organization, valid existence and good standing of each such entity, (ii) each such entity's power and authority to undertake the ownership and operation of the Project and otherwise undertaking its obligations with respect to the Project, and (iii) each such entity's power and authority to execute, deliver and perform its respective obligations under the Mortgage Loan Documents (as defined in <u>Section E</u> below), all of which shall be in compliance with applicable Fannie Mae Guidelines.  Without in any way limiting the foregoing requirements, Borrower's organizational structure shall be identical to the organizational structure previously provided to and underwritten by Lender, which structure is shown in the organizational chart attached as <u>Exhibit L</u> hereto.

4.    PNC and, to the extent required under the Fannie Mae Guidelines, Fannie Mae, shall have approved the terms and provisions of Borrower's construction financing loan from **JPMorgan Chase Bank, N.A.**, a national banking association (**"Construction Lender"**), with respect to construction financing in the amount of $26,000,000, with a loan term of at least twenty four (24) months (the **"Construction Loan"**), which Construction Loan shall be evidenced and secured by a promissory note, loan agreement, deed of trust and such other loan documents as may be required by Construction Lender in connection with the Construction Loan, including, without limitation, any tri-party agreement that may be required by the Construction Lender with respect to the Construction Loan, this Commitment, the Permanent Mortgage Loan, and/or such other matters

-2-

CONFIDENTIAL        PLAINTIFFS_00020827

Oak Creek Village
May 21, 2014

as may be approved by PNC and Fannie Mae (collectively, the "**Construction Loan Documents**"). Prior to Rate Lock, all conditions to the closing the Construction Loan must be satisfied to PNC's reasonable satisfaction, and all Construction Loan Documents must be executed.

5.  PNC shall have engaged or otherwise approved a construction consultant to monitor the progress of the construction and/or rehabilitation of the Project (**"Construction Consultant"**), and Borrower and the Construction Consultant shall have executed and delivered to PNC a consulting services agreement in form and substance acceptable to PNC, pursuant to which the Construction Consultant shall agree to monitor the progress of the construction and/or rehabilitation of the Project in the manner required under the Fannie Mae Guidelines and to provide the certifications required pursuant to this Commitment upon completion of the Project. Such activities shall be undertaken by the Construction Consultant for the sole benefit and reliance of PNC, but at the sole cost and expense of Borrower

6.  PNC shall have received and approved the final architectural/cost review report from the Construction Consultant. THIS CONDITION HAS BEEN SATISFIED.

7.  Borrower shall have provided PNC with a copy of its executed Amended and Restated Agreement of Limited Partnership reflecting the admission of PNC Bank, National Association, as Borrower's Investor Limited Partner, and confirming, to PNC's satisfaction, the low-income housing tax credit equity contributions underwritten by PNC in connection with the Mortgage Loan.

8.  Borrower shall have provided PNC with copies of the final site, grading, foundation and building permits for the Project , and/or permit-ready letters, and a zoning letter from the City of Austin. THIS CONDITION HAS BEEN SATISFIED.

9.  PNC shall have received evidence of policies of liability insurance coverage naming PNC and Fannie Mae as additional insureds under such policy(ies). Additionally, PNC shall have received evidence that Borrower has builder's-risk insurance in force. THIS CONDITION HAS BEEN SATISFIED.

10. PNC shall have approved the proposed property manager and received and approved a copy of the proposed management agreement. The management agreement must, under all circumstances, provide for management fees not to exceed the Underwritten Management Fee (as set forth in Exhibit A hereto), and both the property manager and management agreement shall comply with the Fannie Mae Guidelines. THIS CONDITION HAS BEEN SATISFIED.

11. PNC shall have received copies of all existing HAP contracts (including any and all extensions, amendments, riders and exhibits thereto), or drafts thereof along with a comfort letter evidencing that any pending HAP contracts will be issued

-3-

CONFIDENTIAL                    PLAINTIFFS_00020828

Oak Creek Village
May 21, 2014

prior to Mortgage Loan Closing, and PNC shall have also received satisfactory evidence of each HAP contract administrator's consent, or satisfactory evidence of its willingness to consent, to the collateral assignment of such HAP contract to PNC in connection with the Mortgage Loan Closing. Additionally, PNC shall have received evidence of HUD's post-construction rent approval.

12.    Borrower shall have executed and delivered a forward loan commitment delivery assurance certificate (the "**Delivery Assurance Certificate**"), which shall be secured by a subordinate deed of trust encumbering the Project (the "**Delivery Assurance Security Instrument**"), both in the form attached as <u>Exhibit D</u> hereto, evidencing and securing the Borrower's obligations to close the Mortgage Loan pursuant to the terms and provisions of this Commitment, as further detailed in such Delivery Assurance Certificate.

13.    PNC shall have received written confirmation from any subordinate lender confirming its willingness to subordinate its Approved Subordinate Financing (as described in <u>Exhibit A</u> hereto), including any loan documentation and regulatory agreements related thereto, to the Mortgage Loan pursuant to a subordination agreement conforming with Fannie Mae Guidelines.  PNC shall have reviewed and approved the terms of any such Approved Subordinate Financing and any and all documents related thereto, and PNC shall have received evidence that all conditions precedent to the closing and funding of such Approved Subordinate Financing have been satisfied.

14.    PNC shall have received and approved all existing and proposed Regulatory Agreements relating to the Project.

15     Borrower shall have furnished to PNC acceptable evidence of Borrower's qualification for federal low-income housing tax credits in the approximate amount set forth on the Sources and Uses of Funds Schedule attached as <u>Exhibit B</u> hereto (the "**Sources and Uses of Funds Schedule**"). THIS CONDITION HAS BEEN SATISFIED.

16.    Receipt and approval by PNC of current UCC, judgment, tax lien, credit and Mornet searches performed at the appropriate state and local levels with respect to Borrower, each general partner or limited liability company manager of Borrower, and each Key Principal. THIS CONDITION HAS BEEN SATISFIED.

17.    Fannie Mae shall have approved the Mortgage Loan and all waivers required in connection therewith.

18.    PNC shall have received a copy of MBS Trade Confirmation.

19.    Borrower shall have paid to PNC the Good Faith Deposit (as set forth in Section K below).

-4-

Forward Commitment/Unfunded MBS Rate Lock

CONFIDENTIAL

PLAINTIFFS_00020829

Oak Creek Village
May 21, 2014

20.     Borrower and each Key Principal shall have executed and delivered this Commitment to PNC.

D.     Rate Lock. Following satisfaction (as determined by PNC in its sole and absolute discretion) of all conditions precedent set forth in Sections A, B and C above, then, within five (5) days after the date on which Borrower and each Key Principal have delivered this Commitment, executed by each such party, to PNC (the "**Commitment Acceptance Date**"), Borrower and PNC, in consultation with MBS Investor, shall proceed with the Rate Lock pursuant to an Authorization to Rate Lock (the "**Authorization**") to be executed by Borrower authorizing such Rate Lock pursuant to the terms and provisions of this Commitment at the interest rate specified in such Authorization. The date that the Rate Lock is completed shall thereafter be added to Exhibit A hereto and referred to herein as the "**Rate Lock Date**". Concurrently with the Rate Lock, PNC shall determine the maximum amount of the Mortgage Loan in accordance with the terms and provisions hereof, and such amount shall thereafter be added to Exhibit A hereto and referred to herein as the "**Maximum Mortgage Loan Amount**." To the extent that the Maximum Mortgage Loan Amount, as so determined, is less than $27,300,000.00, then Borrower shall deliver to PNC for its review and approval an updated Sources and Uses of Funds Schedule for the Project.

E.     Conditions to Mortgage Loan Closing. The closing of the Mortgage Loan (the "**Mortgage Loan Closing**") shall be conditioned upon the satisfaction and completion of each and all of the following requirements, all to the satisfaction of PNC:

1.     There shall have not occurred and be continuing any event of default, beyond any applicable notice and cure period, with respect to the Construction Loan and/or any Approved Subordinate Financing, nor shall there have occurred any payment defaults beyond any applicable grace or notice and cure period under the Construction Loan and/or any Approved Subordinate Financing during the twelve (12) month period immediately preceding the proposed date of the Mortgage Loan Closing.

2.     Borrower and, as applicable, each Key Principal and Guarantor, shall have executed and delivered in favor of PNC, in recordable form if required, a permanent loan promissory note, loan agreement, security instrument and such other loan documents as required by PNC and/or Fannie Mae in connection with the Mortgage Loan Closing, all in form and content required by PNC and/or Fannie Mae to evidence and secure the Mortgage Loan in accordance with the Fannie Mae Guidelines, and otherwise to the satisfaction of PNC and Fannie Mae (collectively, the "**Mortgage Loan Documents**"). The Mortgage Loan Documents shall include, without limitation, each of the documents listed on Exhibit E attached hereto, as such documents (i) have been modified and approved by Borrower prior to the Commitment Acceptance Date (as indicated in

-5-

Forward Commitment/Unfunded MBS Rate Lock

CONFIDENTIAL

Oak Creek Village
May 21, 2014

Exhibit E), and (ii) may be further modified and/or supplemented following the Commitment Acceptance Date and prior to the Mortgage Loan Closing as required by the then-applicable Fannie Mae Guidelines.

3.    PNC shall have received and approved a loan policy of title insurance issued with respect to the Mortgage Loan, insuring, among other things, ownership of the Project by the Borrower, the first-priority lien of the security instrument securing the Mortgage Loan, and otherwise in compliance with the Fannie Mae Guidelines.

4.    PNC shall have received and approved an updated ALTA "as-built" survey with respect to the Project conforming to the Fannie Mae Guidelines. The current Fannie Mae Guidelines with respect to survey matters are attached as Exhibit G hereto.

5.    PNC shall have received and approved then-current UCC, judgment, tax lien, credit and Mornet searches performed at the appropriate state and local levels with respect to Borrower, each general partner or limited liability company manager of Borrower, and each Key Principal and Guarantor.

6.    PNC shall have received a final inspection report from the Construction Consultant (the **"Final Inspection Report"**), and such other certificates and reports of engineering and other consultants as required by PNC, to establish that Borrower has completed the Project (including all amenities, landscaping, signs, parking and the like, except for minor punch list and weather-sensitive items, and items for which sufficient funds have been reserved in a completion/repair reserve fund established with PNC), (a) in a good and workmanlike manner and substantially in accordance with the Approved Plans, (b) on a lien-free basis, (c) in compliance with all applicable requirements of all governmental authorities having jurisdiction over the Project, including, without limitation, all applicable laws, building codes, zoning requirements, subdivision requirements, fire and safety laws, ADA requirements and design and construction requirements established pursuant to the Fair Housing Act, as amended. Additionally, PNC shall have determined that (i) no portion of the Project shall have been damaged or destroyed by fire or other casualty (unless same has been repaired to the satisfaction of PNC), (ii) no portion of the Project shall be the subject of a condemnation or other similar proceeding, no material adverse change shall have occurred with respect to the physical condition of the Project, and (iii) no construction condition exists (whether deemed to be a "construction defect" or otherwise) which does or could threaten the life or safety of any tenants in occupancy on the Project or any other persons on or about the Project.

7.    Borrower shall have delivered to PNC for its review and approval (a) evidence of the availability of all public utilities necessary for the operation of the Project, (b) true and correct copies of each unconditional certificate of occupancy (or the local

-6-

Forward Commitment/Unfunded MBS Rate Lock

CONFIDENTIAL                                                    PLAINTIFFS_00020831

Oak Creek Village
May 21, 2014

equivalent of a certificate of occupancy), issued by the governmental authority empowered to exercise jurisdiction over the Project and to properly issue such certificates, for all portions of the Project for which such a certificate is required or, if certificates of occupancy are not required by local law, evidence that the Project has passed all inspections and received all approvals which are conditions precedent to occupancy of all parts of the improvements thereon, and (c) true and correct copies of all operating permits and licenses for the Project.

8. PNC shall have received evidence necessary to establish that the Project has achieved the Minimum Occupancy Requirement and Net Operating Income sufficient to support the Applicable Debt Service Coverage Factor  at the Maximum Mortgage Loan Amount (all as set forth in Exhibit A hereto).

9. PNC shall have received satisfactory evidence that the Low-Income Units (as set forth in Exhibit A hereto) in the Project will be leased at rents affordable to persons whose incomes do not exceed the percentages of the area gross median income adjusted for family size, all as set forth in Exhibit A hereto.

10. PNC shall have received and approved subordination agreements in conformity with the then-applicable Fannie Mae Guidelines with respect to (a) any cable television leases affecting the Project that are with affiliates of Borrower or any Key Principal, or (b) any laundry leases affecting the Project that (i) are with affiliates of Borrower or any Key Principal, (ii) provide for above-market rentals, as determined by PNC, or (iii) do not contain provisions allowing for termination for cause.

11. PNC shall have received and approved insurance policies and paid receipts conforming with such requirements, and covering such risks, as PNC and Fannie Mae shall determine in accordance with the Fannie Mae Guidelines.  The current Fannie Mae Guidelines with respect to insurance matters are attached as Exhibit H hereto.

12. The proposed property manager and management agreement reviewed and approved by PNC under Section C.11 above shall not have been terminated, replaced or revised or, if any termination, replacement and/or revision or the like has occurred, PNC shall have approved such replacement property manager and received and approved a copy of the amended or replacement management agreement.  The management agreement must, under all circumstances, provide for management fees not to exceed the Underwritten Management Fee, and both the property manager and the final management agreement shall comply with the Fannie Mae Guidelines. The management agreement shall be collaterally assigned to Fannie Mae pursuant to an Assignment of Management Agreement in form and content acceptable to PNC and otherwise in accordance with Fannie Mae Guidelines.

-7-

Forward Commitment/Unfunded MBS Rate Lock

CONFIDENTIAL                                            PLAINTIFFS_00020832

Oak Creek Village
May 21, 2014

13.    As of the Mortgage Loan Closing, (i) the identity and composition of the Borrower shall not have changed since the date of this Commitment, (ii) the Borrower shall be an eligible borrower under the Fannie Mae Guidelines, (iii) the Borrower shall own the Mortgaged Property, and (iv) there shall be no material adverse change in the condition, financial or otherwise, of the Borrower.

14.    As of the Mortgage Loan Closing, (i) the identity and composition of each Key Principal and Guarantor shall not have changed since the date of this Commitment, (ii) each Key Principal and Guarantor shall be an eligible key principal and guarantor, as applicable, under Fannie Mae Guidelines, (iii) there shall be no reduction in each such Key Principal's and/or Guarantor's direct or indirect ownership interest in or control over the Borrower, except to the extent permitted under the Loan Documents, and (iv) there shall be no material adverse change in the condition, financial or otherwise, of any Key Principal and/or Guarantor.

15.    PNC shall have received and approved complete copies of any changes or modifications to the organizational documents of Borrower, each general partner or limited liability company manager of Borrower, each Guarantor, and each Key Principal, since the date hereof, along with updated good standing certificates and, as applicable, certificates of authority to transact business in the jurisdiction in which the Project is located, all evidencing the due organization, valid existence and good standing of such entities, an organizational structure suitable to the tasks of owning and operating the Project, full power and authority to execute, deliver and perform under the Mortgage Loan Documents, and compliance with all applicable Fannie Mae Guidelines.

16.    PNC shall have received and approved an opinion of counsel to Borrower in the form attached as Exhibit I hereto.  Borrower acknowledges that any deviations from the Fannie Mae promulgated opinion form will require PNC to seek the prior written approval of Fannie Mae and will delay the Mortgage Loan Closing.

17.    Intentionally Omitted.

18.    Pursuant to the terms and conditions of the Loan Agreement, Borrower shall have established an account with PNC for reserves for the completion of any immediate repairs and/or "punch-list" and weather-sensitive items identified in the Final Inspection Report and, if the individual or aggregate amount thereof exceeds $10,000, Borrower shall have funded such account to the extent required by PNC.  The reserves for completion shall constitute additional security for the Mortgage Loan.

19.    Pursuant to the terms and conditions of the Loan Agreement, Borrower shall have established an account with PNC for reserves for ongoing replacements during the term of the Mortgage Loan.  Borrower shall cause to be deposited into such

-8-

Forward Commitment/Unfunded MBS Rate Lock

CONFIDENTIAL

PLAINTIFFS_00020833

Oak Creek Village
May 21, 2014

account an initial deposit and subsequent monthly deposits in the amounts provided for in <u>Exhibit A</u> hereto. The monthly deposit requirements under the Replacement Reserve Agreement shall be subject to adjustment on the basis of physical needs assessments, which shall be conducted once every five (5) years during the term of the Mortgage Loan. The reserves for replacements shall constitute additional security for the Mortgage Loan.

20. Borrower shall have executed and delivered to PNC such documentation as shall be required by PNC to enroll Borrower in the PNC autodebit program for processing monthly payments due under the Mortgage Loan. An Autodebit Authorization form is attached as <u>Exhibit K</u> hereto.

21. Borrower shall have funded with PNC all impound accounts as shall be required by PNC under the Mortgage Loan Documents.

22. PNC shall have received satisfactory evidence that, other than the Mortgage Loan, all sources of funds reflected on the final Sources and Uses of Funds Schedule, including, without limitation, (a) all equity contributions to be made to the Borrower prior to the Mortgage Loan Closing in accordance with the terms and conditions of Borrower's partnership agreement, (b) all Approved Subordinate Financing, and (c) all other funds required to be contributed to Borrower and/or otherwise invested in the Project on or prior to the Mortgage Loan Closing, have been received by Borrower and all such funds have been properly invested in or otherwise applied to the Project.

23. PNC shall have received such additional certifications as may be reasonably required by Fannie Mae and PNC consistent with this Commitment and the applicable Fannie Mae Guidelines.

24. No law or regulation shall have been adopted, and no order, judgment or decree of any governmental authority having jurisdiction over Borrower, any Key Principal, any Guarantor and/or the Project shall have been issued, and no litigation shall be pending with respect to Borrower, any Key Principal, any Guarantor and/or the Project, which, in the good faith judgment of PNC, would enjoin, prohibit, restrain or otherwise impose or cause to be imposed any condition which materially and adversely affects, or which may, directly or indirectly, materially and adversely affect, (a) the transactions to be effected pursuant to this Commitment, or (b) the ability of PNC to deliver the Mortgage Loan to Fannie Mae in accordance with and in the time and manner required under the Fannie Mae Guidelines.

25. Borrower shall have delivered to PNC (i) a complete copy of each HAP contract affecting the Project, including all exhibits, amendments and renewals thereto, and any assignments thereof, and (ii) an executed consent by the administrator of each such HAP contract to the collateral assignment thereof in favor of PNC and/or Fannie Mae in connection with the Mortgage Loan.

-9-

Forward Commitment/Unfunded MBS Rate Lock

CONFIDENTIAL

PLAINTIFFS_00020834

Oak Creek Village
May 21, 2014

26.     PNC shall have received evidence of compliance with all then-current zoning
        laws.

27.     PNC shall have received evidence necessary to establish that the Project is
        eligible for low-income housing tax credits, and that such low-income housing tax
        credits have been reserved for or allocated to the Project in the required amount,
        all to be evidenced by PNC's receipt of an IRS Form 8609 with respect to the
        Project.

28.     PNC shall have received a copy of the certification of substantial completion
        (AIA Document G704, or its then-current equivalent) executed by the appropriate
        parties including the architect, the general contractor and the owner representative
        for the Project.

29.     PNC shall have received final executed copies of the loan documents and
        regulatory agreements relating to any Approved Subordinate Financing,
        evidencing that such financing constitutes "soft debt" as defined under Fannie
        Mae Guidelines, and each such financing shall be subordinated to the Mortgage
        Loan pursuant to a subordination agreement conforming with applicable Fannie
        Mae Guidelines.

30.     No more than sixty (60) days prior to the Mortgage Loan Closing, Borrower shall,
        at its sole cost and expense, obtain an update to the Environmental Assessment
        (as defined in Section I below) by consultants acceptable to PNC to confirm that
        no adverse changes have occurred with respect to the environmental condition of
        the Project from that reflected in such Environmental Assessment[s].

31.     No later than ninety (90) days prior to the Mortgage Loan Closing, Borrower shall
        have furnished to PNC such information as may be required by PNC in
        accordance with then-applicable Fannie Mae Guidelines to review the final
        underwriting for the Project, including, without limitation, a final Sources and
        Uses of Funds Schedule for the Project.

32.     Borrower shall not have obtained another permanent mortgage loan with respect
        to the Project, other than as expressly permitted under this Commitment.

33.     Borrower shall have otherwise complied with all delivery and timing
        requirements imposed herein.

F.      Calculation of Mortgage Loan Amount. The Maximum Mortgage Loan Amount is the
        amount set forth in Exhibit A hereto; provided, however, that prior to Mortgage Loan
        Closing the Maximum Mortgage Loan Amount shall be recomputed by PNC in accordance
        with the provisions of this Section F, and such recomputed amount shall be deemed to be the

-10-

CONFIDENTIAL                                    PLAINTIFFS_00020835

Oak Creek Village
May 21, 2014

Maximum Mortgage Loan Amount for purposes of this Commitment. The Maximum Mortgage Loan Amount determined as of the Mortgage Loan Closing (the "**Mortgage Loan Amount**") will be determined by application of the mortgage loan formula set forth below.

1.     <u>Mortgage Loan Amount</u>. The Mortgage Loan Amount will be determined by dividing (x) by (y), where (x) is the quotient obtained by dividing the Net Operating Income of the Project by the applicable Debt Service Coverage Factor (as set forth in <u>Exhibit A</u> hereto), and (y) is the Annual Debt Service Constant or, expressed as a formula:

$$\text{Mortgage Loan Amount} = \frac{x \quad = \quad (\text{Net Operating Income} \div \text{Debt Service Coverage Factor})}{y \quad = \quad \text{Annual Debt Service Constant}}$$

"**Net Operating Income**" means the difference between: (a) the annualized effective gross income of the Project determined on the basis of the actual effective gross income produced by the Project during the three (3) consecutive full calendar months immediately preceding the month in which the Borrower requests that PNC determine the Mortgage Loan Amount under this Commitment (the "**Three-Month Period**"), as established in accordance with this Commitment; and (b) the annualized expenses for the Project determined in accordance with the Fannie Mae Guidelines and on the basis of the higher of the: (1) annualized expenses of the Project from the date the Project achieves ninety percent (90%) occupancy, plus such other expenses as PNC, in its discretion, may require, or (2) the Underwritten Expenses assumed by PNC in its underwriting of the Mortgage Loan and set forth in <u>Exhibit A</u> hereto; provided, however, that such expense calculations shall exclude taxes, insurance and management fees, each of which must be determined separately and then added to the expense calculation to determine the total Underwritten Expenses.

"**Annual Debt Service Constant**" means the constant annual percentage necessary to fully amortize the Mortgage Loan in level monthly annuity payments over the Amortization Period set forth in <u>Exhibit A</u> hereto (when expressed as a percentage, the Annual Debt Service Constant must be carried out to at least six decimal places).

The Mortgage Loan Amount, as determined in accordance with this <u>Section F</u> shall be rounded to the nearest hundred dollars.

2.     <u>Establishment of Effective Gross Income</u>. The Mortgage Loan Amount shall be calculated based on the actual effective gross income produced by the Project in the Three-Month Period, including only: (a) rental income from the Units as certified on the Fannie Mae prescribed underwriting certificate (currently known as "**Fannie Mae Form 6460**"), less any concessions as provided or calculated in accordance

-11-

Forward Commitment/Unfunded MBS Rate Lock

CONFIDENTIAL

PLAINTIFFS_00020836

Oak Creek Village
May 21, 2014

with the Fannie Mae Guidelines and any vacancies and thirty (30) day or more delinquencies and (b) any other income permitted by or calculated in accordance with the Fannie Mae Guidelines and used by PNC in underwriting the Mortgage Loan. Notwithstanding the foregoing, in computing the Mortgage Loan Amount, the actual rental income from the Project shall be reduced as necessary to reflect an assumed vacancy equal to the higher of: (a) five percent (5%); or (b) the actual vacancy rate at the time of establishment of the actual effective gross income under this <u>Section F</u>. No other income may be included for purposes of establishing the actual effective gross income produced by the Project in the Three-Month Period. Borrower shall deliver to PNC such information and documentation as shall be required to establish: (a) the percentage of the Units in the Project that have achieved occupancy (in accordance with paragraph 3 below), categorized by bedroom configuration (<u>e.g.</u>, one-bedroom, two-bedroom, etc.), size (<u>i.e.</u>, square footage) and Unit type (<u>i.e.</u>, low-income or market rate); (b) the actual effective gross income and net rental income produced by the Project in the Three-Month Period, and (c) the rental income by Unit type.

3.      <u>Minimum Occupancy Requirement</u>. Borrower shall deliver to PNC, as of the Mortgage Loan Closing Date, a fully executed Certification to Project Rent Roll, on Fannie Mae Form 6460, for each of the three (3) months comprising the Three-Month Period, each certified as true and correct and which is otherwise complete by the Borrower and, with respect to the most recent rent roll, demonstrating that, in each of the three (3) months comprising the Three-Month Period, not less than ninety percent (90%) of the Units were physically occupied under Acceptable Leases (the "**Minimum Occupancy Requirement**"). The rent rolls for the second and third months of the Three-Month Period shall be dated thirty (30) days and sixty (60) days, respectively, from the date of the rent roll for the first month of the Three-Month Period. The Borrower must certify, as of the date of the Mortgage Loan Closing, that there has been no material adverse change in the information contained in the Fannie Mae Form 6460 previously certified to PNC. For purposes of this Commitment, "**Acceptable Leases**" means legally valid, binding and enforceable written lease agreements with bona fide tenants (excluding employees of the Borrower or any Affiliate of the Borrower) providing for initial lease terms of not less than six (6) months and complying with all applicable laws and with the Fannie Mae Guidelines.

4.      <u>Financing of Shortfall</u>. In the event that the Mortgage Loan Amount determined in accordance with this <u>Section F</u> is less than the Maximum Mortgage Loan Amount set forth in <u>Exhibit A</u> hereto, the Borrower shall be required to secure, to the satisfaction of PNC, a source of funds, whether debt or equity, acceptable to PNC, including, without limitation, any cost savings, to cover the difference between the Maximum Mortgage Loan Amount and the Mortgage Loan Amount. If the Borrower has incurred or will incur additional debt to cover such difference, the additional debt must be subordinated to the Mortgage Loan, and the terms,

Forward Commitment/Unfunded MBS Rate Lock

CONFIDENTIAL                                                    PLAINTIFFS_00020837

Oak Creek Village
May 21, 2014

conditions and documentation of the additional debt must meet the requirements for subordinate financing as set forth in the Fannie Mae Guidelines.

G.   <u>Commencement and Completion of Improvements</u>.   Borrower shall commence construction and/or rehabilitation of the Improvements, as applicable, within one hundred eighty (180) days from the Commitment Acceptance Date, and shall undertake and complete the same in a good and workmanlike manner, substantially in accordance with the Approved Plans, on a lien-free basis, in compliance with all applicable requirements of governmental authorities having jurisdiction over the Project and in accordance with the applicable Fannie Mae Guidelines.  Any modification or deviation from the Approved Plans that (i) decreases the size of the Project or materially reduces the size of any unit or of any material structures comprising the Project in any material respect, (ii) changes the number of residential units, (iii) diminishes the quality of materials or finishes in any material respect, (iv) decreases or modifies any of the material amenities, the main design (such as a reconfiguration of the floor plans) or the asset quality features comprising the Project in any material respect, or (v) result in a change order of $100,000 or more, shall be subject to the prior written approval of PNC.

H.   <u>Single Purpose Entity</u>.  Borrower shall all times be a single asset, single-purpose entity, organized and operated in a manner that renders it unlikely to become insolvent as a result of its own activities and which is adequately insulated from the consequences of any related party's insolvency, as determined by PNC in its discretion.

I.   <u>Environmental Assessment</u>.  PNC confirms that it has received an acceptable Phase I Environmental Assessment with respect to the Project, (the "**Environmental Assessment**").  To the extent disclosed in the Environmental Assessment, Borrower shall undertake such remedial actions and shall enter into such operations and maintenance agreements as PNC shall require in order to address any conditions indicated in the Environmental Assessment and to conform with the Fannie Mae Guidelines.  Prior and as a condition to the Mortgage Loan Closing, Borrower shall, at its sole cost and expense, obtain an update to the Environmental Assessment to confirm that it has completed the remediation required under the Environmental Assessment and confirming that no adverse change to the environmental condition of the Project has occurred since the date of the original Environmental Assessment.

-13-

Forward Commitment/Unfunded MBS Rate Lock

CONFIDENTIAL

PLAINTIFFS_00020838

Oak Creek Village
May 21, 2014

J.   Subordinate Financing.

1.   Upon the Mortgage Loan Closing, neither the Project, nor any direct or indirect interest of Borrower in the Project, nor any direct or indirect interest in any Key Principal or Guarantor in the Project, may be encumbered by, benefit from, or be otherwise affected, directly or indirectly, by junior or subordinate financing (without regard to whether such junior or subordinate financing will be secured by a lien on the Project or any such direct or indirect interest), or any form of public, quasi-public, public/private or private debt or equity infusion, grant, subsidy, tax relief or abatement, plan, program or other form of assistance (without regard to whether such assistance is or will be secured by a lien on the Project or any such direct or indirect interest), except for the Approved Subordinate Financing.

2.   With respect to any Approved Subordinate Financing, Borrower shall be permitted to record a mortgage or deed of trust securing the same against the Project provided that the following conditions shall have been satisfied: (a) the loan documents evidencing and securing the Approved Subordinate Financing shall be in form and substance reasonably acceptable to PNC and Fannie Mae, and shall conform to the Fannie Mae Guidelines, (b) Borrower and the subordinate lender shall have entered into a Fannie Mae form subordination agreement, substantially in the form attached as Exhibit J hereto, which shall be recorded against the Project, and (c) Fannie Mae's loan policy of title insurance shall reflect (by endorsement or otherwise) that the lien(s) securing such Approved Subordinate Financing is subordinate in all respects to the lien(s) securing the Mortgage Loan.

K.   Fees and Costs to be Paid by Borrower.  The following fees and costs shall be due and payable by Borrower:

1.   A loan origination fee equal to one percent (1%) of the Maximum Mortgage Loan Amount (the "**Origination Fee**") shall be due and payable to PNC upon the acceptance of this Commitment by Borrower and shall be paid by certified check or wire transfer.  The Origination Fee shall be non-refundable and shall be deemed fully earned upon the acceptance of this Commitment by Borrower.

2.   A Standby Forward Commitment Deposit Fee equal to 25 basis points (0.25%) of the Maximum Mortgage Loan Amount per annum for two year period commencing as of the Rate Lock Date, shall be due and payable to PNC upon the acceptance of this Commitment and shall be paid by certified check or wire transfer.  If the Final Delivery Date is extended pursuant to Section L below, an additional Standby Forward Commitment Deposit Fee will be due.

-14-

Forward Commitment/Unfunded MBS Rate Lock

CONFIDENTIAL

PLAINTIFFS_00020839

Oak Creek Village
May 21, 2014

3.    A "Good Faith Deposit" (as defined in the Delivery Assurance Certificate) in an amount equal to three percent (3%) the Maximum Mortgage Loan Amount (the "**Good Faith Deposit**") shall be deposited, held and, as applicable, applied and/or refunded in accordance with the terms and provisions of the Delivery Assurance Certificate.

4.    A "Non-Delivery Fee" (as defined in the Delivery Assurance Certificate) shall be due and payable in accordance with the terms and provisions of the Delivery Assurance Certificate.

5.    A "Shortfall Fee" (as defined in the Delivery Assurance Certificate) shall be due and payable in accordance with the terms and provisions of the Delivery Assurance Certificate.

6.    A Construction Loan Administration Fee equal to $300.00 per month shall be due and payable on or before the Rate Lock Date for the twenty four (24) month period commencing as of the Rate Lock Date.  An additional Construction Loan Administration Fee shall be due and payable to PNC upon each extension of the Final Delivery Date (as set forth in Exhibit A hereto) in an amount equal to the monthly fee set forth above multiplied by the number of months of the extension. All such fees shall be paid by certified check or wire transfer.

7.    Borrower shall pay all reasonable closing fees, costs and expenses incurred by PNC in connection with the Mortgage Loan including, without limitation, legal fees and costs incurred by PNC, engineering, seismic, appraisal, market study and environmental assessment fees, survey fees, title insurance fees and premiums, recording fees, Construction Consultant fees, and any fees and expenses of Fannie Mae, including, without limitation, the fees and expenses of its outside counsel, if any, which are chargeable to PNC pursuant to the Fannie Mae Guidelines, and any fees and expenses associated with the Rate Lock.  Borrower further agrees to pay all fees of brokers arising in connection with the execution of this Commitment by PNC or the consummation of transactions contemplated hereby, all whether or not the transactions close.  Borrower hereby agrees to indemnify PNC against any and all claims for payment of the forgoing fees, costs and expenses.

8.    Upon the Mortgage Loan Closing, Borrower shall pay to or reimburse PNC for all reasonable out of pocket costs and expenses incurred or anticipated to be incurred by PNC in connection with the re-underwriting of the Mortgage Loan and the satisfaction of the Fannie Mae requirements in connection therewith, including, but not limited to, a $20,000 Mortgage Loan Closing Fee.  The payment of such $20,000 Mortgage Loan Closing Fee shall be due and payable upon demand by PNC prior to the commencement of its re-underwriting of the Mortgage Loan.

Forward Commitment/Unfunded MBS Rate Lock

CONFIDENTIAL                                                    PLAINTIFFS_00020840

Oak Creek Village
May 21, 2014

9. The obligations of Borrower to pay the fees, costs and expenses set forth in this Commitment shall survive the Mortgage Loan Closing or the termination of this Commitment.

L. Expiration; Termination.

1. This Commitment shall expire if (a) it is not executed by Borrower and each Key Principal and returned to PNC by May 23, 2014 or, (b) Rate Lock has not occurred by the date that is five (5) days after the Commitment Acceptance Date, or (c) if the Mortgage Loan Closing does not occur at least thirty (30) days prior to the Final Delivery Date, which date is subject to extension of up to six (6) months by PNC in its sole and absolute discretion. If any such date is not a business day, then such date shall be extended to the next succeeding business day thereafter. Time is of the essence with respect to any and all deadlines set forth in this Commitment.

2. In connection with any request for an extension of the Final Delivery Date, Borrower shall deliver to PNC, at least ninety (90) days prior to the original Final Delivery Date, (a) a summary report of the status of the Project, including the reasons for any delays, (b) such reports from the Borrower's construction, engineering, architectural or other consultants, and any other persons as required by PNC, to establish that the Project can reasonably be completed in the manner and to the extent required under this Commitment by the Final Delivery Date, as extended, and (c) such information and documentation as shall be reasonably required by PNC to confirm that there have been no material and adverse changes to the status of the Project, Borrower, any Key Principal and/or any Guarantor. In addition, if the Good Faith Deposit is held by Fannie Mae, PNC and/or MBS Investor in the form of a letter of credit, the extension of the Final Delivery Date shall be conditioned upon receipt by Fannie Mae, PNC and/or MBS Investor, as applicable, at least thirty (30) days prior to the original Final Delivery Date, of an amendment to the letter of credit or a replacement letter of credit, accompanied by an appropriate opinion conforming with the Fannie Mae Guidelines, extending the expiration date of such letter of credit to the date which is fifteen (15) days following the Final Delivery Date, as extended. The current Fannie Mae Guidelines with respect to letter of credit matters are attached as Exhibit C hereto.

3. As noted above in Section K 2, and additional Standby Forward Commitment Fee of twenty-five (25) basis points (.25%) of the Maximum Mortgage Loan Amount (per annum – i.e. 12.5 basis points for 6-months) shall be due and payable upon the approval of the 6-month extension described in the Section L. Borrower shall also pay an extension fee of fifty (50) basis points (.50%) of the Maximum Mortgage Loan Amount for a six-month extension which PNC shall collect on behalf of MBS Investor.

-16-

Forward Commitment/Unfunded MBS Rate Lock

CONFIDENTIAL                                       PLAINTIFFS_00020841

Oak Creek Village
May 21, 2014

M.   <u>Additional Conditions and Provisions</u>.   The following additional conditions and provisions shall apply to this Commitment:

1.   This Commitment may be terminated by PNC at its option upon (a) the failure by the Borrower to comply with any of the terms and conditions of this Commitment and the Fannie Mae Guidelines to the extent any such failure is not cured within thirty (30) days after notice thereof from PNC, or (b) the filing by or against Borrower or any Key Principal and/or Guarantor of a petition in bankruptcy or insolvency, the appointment of a receiver or trustee, the making by Borrower or any Key Principal and/or Guarantor of an assignment for benefit of creditors, or the filing by Borrower or any Key Principal and/or Guarantor of a petition or an arrangement with creditors.

2.   This Commitment is not assignable or transferable by Borrower, by operation of law or otherwise, except that Borrower may collaterally assign this Commitment to the Construction Lender.

3.   Counsel for PNC shall review all organizational documentation, title and survey work, prepare loan documentation and oversee the Mortgage Loan Closing.  The form and substance of each and every document evidencing the Mortgage Loan and security thereof, or incident thereto, and the title and evidence thereof, shall be satisfactory to and approved by counsel for PNC.

4.   Borrower hereby gives permission to PNC to issue press releases, subject to Borrower's prior written consent not to be unreasonably withheld or delayed, and advertising with respect to the general terms of the Mortgage Loan and the Project and PNC's participation in connection therewith.   Such media and marketing materials may include, among other things, information about the location of the Property, the number of units in the Project, the amenities associated with the Project, and the Mortgage Loan terms (including economic terms such as the interest rate and amortization terms).

5.   Borrower hereby represents and warrants that, as of the Commitment Acceptance Date, (a) all information and materials submitted by or on behalf of Borrower to PNC in connection with the Project and this Commitment are true, complete and accurate in all material respects and are not misleading in any material respect; (b) there has been no material adverse change to the financial condition of Borrower or the physical condition of the Project from that previously represented by Borrower to PNC; (c) there has been no material change to either the income and expenses of the Project or the sources and uses of the funding of the costs of the Project from that set forth in the Sources and Uses of Funds Schedule; and (d) (i) there are no actions, suits, proceedings, arbitrations, tenant disputes, labor disputes or governmental investigations pending or, to the best of Borrower's knowledge, threatened against or otherwise affecting Borrower, any Key Principal and/or Guarantor, and/or the Project, which, if successful, could have a material

-17-

Forward Commitment/Unfunded MBS Rate Lock

Oak Creek Village
May 21, 2014

adverse effect on any such party and/or the Project, (ii) none of Borrower or any Key Principal and/or Guarantor are operating under, or is subject to, any order, writ, injunction, decree or demand of any court or any governmental authority which could have a material adverse effect on any such party and/or the Project, and (iii) no actions, suits, proceedings or arbitrations are pending or, to the best knowledge of each of Borrower and each Key Principal and/or Guarantor, threatened against any of them and which, if successful, could have a material adverse effect on any such party and/or the Project.   In the event that, at any time between the Commitment Acceptance Date and Rate Lock, any of the foregoing representations and warranties become untrue in any material respect, Borrower shall immediately notify PNC of the same and provide PNC with any and all additional or updated information required by PNC with respect to the same.

6.    Borrower shall indemnify and hold harmless PNC and each of its officers, directors, employees and agents from and against any and all out-of-pocket losses, damages, liabilities, costs, expenses and legal counsel fees incurred by PNC as a result of (a) the assertion of any claim made in connection with the issuance by PNC of this Commitment, the Mortgage Loan and/or Fannie Mae's involvement in connection with the Mortgage Loan (except to the extent that any such damages are finally proven to have been caused by the gross negligence or willful misconduct of PNC, Fannie Mae and/or any of their respective officers, directors, employees or agents), provided that such claim is based upon or arises from, out of or as a consequence of any act, event, circumstance or omission of, or is otherwise caused by or is within the control or direction of, Borrower or any Key Principal and/or Guarantor, and/or or their respective directors, officers or employees, and (b) any fraud or material misrepresentation by Borrower or any Key Principal and/or Guarantor in connection with the Mortgage Loan.

7.    This Commitment, and the Exhibits attached hereto, contain the complete and entire understanding of the parties hereto of the agreement by PNC with respect to the subject matter hereof, and supersedes all prior agreements, discussions and any previously issued letters of intent or commitments with respect thereto.   No changes or amendments to this Commitment shall be valid unless made in writing and executed by the parties hereto.

8.    This Commitment may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument.

9.    The terms and conditions of this Commitment shall survive the Mortgage Loan Closing.

**[Signatures begin on next page]**

-18-

Forward Commitment/Unfunded MBS Rate Lock

CONFIDENTIAL

PLAINTIFFS_00020843

Oak Creek Village
May 21, 2014

To accept this Commitment, Borrower must execute and return to PNC, by 5:00 p.m. Pacific Time on May 23, 2014, a "pdf" copy of this Commitment, with the original to be delivered by the following business day via overnight delivery. This Commitment shall automatically expire if not accepted as and when set forth above.

**PNC:**

PNC BANK, NATIONAL ASSOCIATION,
a national banking association

By:  _Kelli A. Tyler_____
      Kelli A. Tyler,
      Vice President

**[Signatures continue on next page]**

S-1

Forward Commitment/Unfunded MBS Rate Lock

CONFIDENTIAL

PLAINTIFFS_00020844

By signing below, Borrower acknowledges its acceptance of this Commitment and agrees to close the Mortgage Loan in accordance with the terms and conditions of this Commitment.

**BORROWER:**

2013 TRAVIS OAK CREEK, LP,
a Texas limited partnership

By:  2013 TRAVIS OAK CREEK GP, LLC,
a Texas limited liability company,
its general partner

By: _____
Rene O. Campos,
Manager

Date: _____, 2014

By signing below, the Guarantor/Key Principal agrees to be liable to PNC for the obligations of Borrower to pay the fees and expenses set out in Section K of this Commitment and for the indemnification obligations of Borrower set out in Section M(5) of this Commitment.

**KEY PRINCIPAL / GUARANTOR:**

_____
RENE O. CAMPOS

Date: _____, 2014

Forward Commitment/Unfunded MBS Rate Lock

CONFIDENTIAL

PLAINTIFFS_00020845

## <u>SCHEDULE OF EXHIBITS</u>

<u>Exhibit A</u>:     Commitment Terms and Conditions

<u>Exhibit B</u>:     Sources and Uses of Funds

<u>Exhibit C</u>:     Letter of Credit Requirements – Intentionally Omitted

<u>Exhibit D</u>:     Forms of Delivery Assurance Certificate and Delivery Assurance Security
                    Instrument

<u>Exhibit E</u>:     List of Anticipated Mortgage Loan Documents and Approved Modifications

<u>Exhibit F</u>:     Title Insurance Requirements

<u>Exhibit G</u>:     Survey Requirements

<u>Exhibit H</u>:     Insurance Requirements

<u>Exhibit I</u>:     Form of Borrower's Counsel Opinion Letter

<u>Exhibit J</u>:     Form of Subordination Agreement

<u>Exhibit K</u>:     Form of Autodebit Authorization

<u>Exhibit L</u>:     Borrower Organizational Structure

CONFIDENTIAL                                    PLAINTIFFS_00020846

## EXHIBIT A

## COMMITMENT TERMS AND CONDITIONS

This Exhibit A is an integral part of, and establishes additional terms, conditions and requirements of, the PNC Commitment.

## A.   SUMMARY OF MORTGAGE LOAN TERMS

**Project:**              Oak Creek Village, Austin, Texas

**Improvements:**   The Project includes (or will include) the following Units:

| # of Units | # of Bedrooms | Approx. Sq. Footage |
|---|---|---|
| 51 | 1 | 719 |
| 58 | 2 | 1,037 |
| 48 | 3 | 1,382 |
| 16 | 4 | 1,503 |

**Maximum Mortgage Loan Amount:**              $27,300,000.00

**Rate Lock Date:**              May 23, 2014

**PNC and Fannie Mae Fees to be included in Gross Note Rate on Mortgage Loan:**

Fannie Mae Guaranty Fee:   One-hundred twenty-eight (128) basis points per annum applied to the outstanding unpaid principal balance of the Mortgage Loan at the time of calculation.

A-1

Forward Commitment/Unfunded MBS Rate Lock

CONFIDENTIAL                    PLAINTIFFS_00020847

| | |
|---|---|
| PNC Servicing Fee: | Seven (7) basis points per annum applied to the outstanding unpaid principal balance of the Mortgage Loan at the time of calculation. |
| Pass-Through Rate: | 4.80% per annum |
| Gross Note Rate: | 6.15% per annum |
| **Mortgage Loan Term**: | Fifteen (15) years from the Mortgage Loan Closing Date. |
| **Day-Year Interest Accrual Method**: | Actual/360 Method |
| **Amortization Commencement Date**: | The Amortization Period shall: (i) if the Mortgage Loan Closing Date is the first day of a month, begin on the Mortgage Loan Closing Date; or (ii) if the Mortgage Loan Closing Date is other than the first day of the month, begin on the first day of the calendar month following the month in which the Mortgage Loan Closing Date falls. |
| **Amortization Period**: | 35 years |
| **Yield Maintenance Period**: | 14.5 years |
| **Final Delivery Date**: | Twenty-four (24) months following the date of the acceptance of this Commitment, subject to an extension of up to six (6) months pursuant to <u>Section L</u> of the Commitment. |
| **Low-Income Units**: | 10.4% @ 30% AMI<br>40.5% @ 50% AMI<br>49.1% @ 60% AMI |

**The Mortgage Loan Amount shall be determined based on the formula set forth in <u>Section F</u> of the Commitment and applying the following values:**

| | |
|---|---|
| Applicable Debt Service Coverage Factor: | 1.20 to 1.00 |
| Underwritten Expenses: | The greater of actual expenses or $ 7,064/unit/year (including $250/unit/year for Replacement Reserves) |

A-2

Forward Commitment/Unfunded MBS Rate Lock

CONFIDENTIAL

PLAINTIFFS_00020848

Underwritten Net Operating Income:  $2,379,919

Underwritten Interest Rate  6.23%

Maximum Underwritten Loan to Value Ratio:  90.0%

Actual Loan to Value  68.1%

Pricing Tier:  Tier 2

Underwritten Management Fee  4.0% of effective gross income, per year

**B.** **REQUIRED RESERVES**

Replacement Reserve: $250.00/Unit/Year minimum in years 1-5 and thereafter, based upon a physical needs assessment. Replacement Reserve collections will escalate 3% per year.

**C.** **BORROWER, KEY PRINCIPAL, AND GUARANTOR**

Borrower: 2013 Travis Oak Creek, LP
3001 Knox St., Suite 400, Dallas, TX 75205
EIN#: 46-1682109

Key Principal: Rene O. Campos
3001 Knox St., Suite 400, Dallas, TX 75205
EIN#: 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

Guarantor: Rene O. Campos
3001 Knox St., Suite 400, Dallas, TX 75205
EIN#: 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

**D.** **CONSTRUCTION LENDER**

JPMorgan Chase Bank, N.A.
Community Development Group
221 West 6th St., 2nd Floor
Austin, TX 78701

A-3

Forward Commitment/Unfunded MBS Rate Lock

CONFIDENTIAL

PLAINTIFFS_00020849

**E.**   **APPROVED SUBORDINATE FINANCING**

- Seller Note: The seller of the property (an entity owned by the Guarantor) will provide a seller note representing the value of the property conveyed and carrying an interest rate of 8.5% and a loan term of 20 years. Repayment of principal and interest is soft and payments are subordinated to senior debt and made from available cash flow after other obligations are satisfied. The Seller Note will be secured by a lien on the subject property, subordinate to the Fannie Mae loan.

- General Partner Note: The GP will loan the funds needed for the 3% Good Faith Deposit (1% to Fannie Mae, 2% to MBS Investor) to the project. The note has a maturity date of 2035 and is unsecured.

- Subordinate Financing: Loan of $2,000,000 is funded at closing from the HUD Community Development Block Grant (CDBG) program, and will have a loan term of 40 years, 0% interest rate, and payments deferred to maturity. There will be a restrictive covenant associated with the financing which will require a 40-year affordability period, affordability set asides will not contradict or supersede the LIHTC set asides. Upon foreclosure or deed in lieu, the restrictive covenants have no further force or effect.

**F.**   **SPECIAL CONDITIONS**

**Underwriting waivers approved by Fannie Mae:**

1.   Amortization – utilize 35-year amortization in underwriting with minimum DSCR of 1.20; alternate test utilizing 30-year amortization with minimum DSCR of 1.15

2.   Construction Loan Administration Fee – request reduction in fee from $2,500 per month to $300 per month

3.   Modified Loss Sharing – due to PNC providing tax credit equity, Fannie Mae requires Lender to take no loss sharing risk in transaction

4.   Section 8 Overhang – Lender requests approval to underwrite < 5% Section 8 HAP rent overhang on two out of four unit types

A-4

Forward Commitment/Unfunded MBS Rate Lock

CONFIDENTIAL                                        PLAINTIFFS_00020850

## EXHIBIT B

## SOURCES AND USES OF FUNDS

Forward Commitment/ Unfunded MBS Rate Lock

CONFIDENTIAL

PLAINTIFFS_00020851

## Permanent Sources and Uses

Oak Creek Village

| Sources | | | Uses | | |
|---|---|---:|---|---|---:|
| Loan Amount | $ | 27,300,000 | Land Acquisition (appraised value) | $ | 7,330,000 |
| LIHTC Equity | | 18,698,130 | | | |
| City of Austin Loan | | 2,000,000 | Origination Fee | 1.00% | 273,000 |
| Seller Note | | 7,330,000 | Construction Hard Costs | | 35,687,488 |
| Deferred Developer Fee | | 2,967,177 | Owner Carried Items | | - |
| General Partner Equity | | 100 | Soft Costs | | 5,561,272 |
| General Partner Note | | 1,000,000 | Financial Costs | | 739,504 |
| | | | Debt Service Reserve | | 1,529,143 |
| | | | Retenanting Reserve | | 3,000,000 |
| | | | Developer Fee | | 5,175,000 |
| **Cash from Borrower** | | - | **Cash to Borrower** | | - |
| **Total Sources** | **$** | **59,295,407** | **Total Uses** | **$** | **59,295,407** |

CONFIDENTIAL

PLAINTIFFS_00020852

## **EXHIBIT C**

### **LETTER OF CREDIT REQUIREMENTS**

Intentionally Omitted

C-1

Forward Commitment/ Unfunded MBS Rate Lock

CONFIDENTIAL

PLAINTIFFS_00020853

**EXHIBIT D**

**FORMS OF DELIVERY ASSURANCE CERTIFICATE AND
DELIVERY ASSURANCE SECURITY INSTRUMENT**

D-1

Forward Commitment/ Unfunded MBS Rate Lock

CONFIDENTIAL

PLAINTIFFS_00020854

## DELIVERY ASSURANCE CERTIFICATE

### (MBS Financing Method
### Multifamily Affordable Housing Product Line)

**THIS DELIVERY ASSURANCE CERTIFICATE** (the "**Certificate**") dated as of May 23, 2014 (the "**Effective Date**") is made by 2013 TRAVIS OAK CREEK, LP, a Texas limited partnership, together with its permitted successors and assigns ("**Borrower**"), and delivered to PNC BANK, NATIONAL ASSOCIATION, a national banking association, approved by Fannie Mae as a DUS Multifamily Affordable Housing Lender of conventional mortgage loans (together with its successors and assigns, "**DUS Lender**").

### RECITALS

A.     DUS Lender has issued a commitment dated May 21, 2014 (the "**Permanent Mortgage Loan Commitment**") to make a permanent mortgage loan (the "**Permanent Mortgage Loan**") to Borrower in an original principal amount not to exceed Twenty-Seven Million Three Hundred Thousand Dollars ($27,300,000) (the "**Maximum Mortgage Loan Amount**") to provide permanent mortgage financing for a multifamily housing project known as Oak Creek Village, located in Austin, Texas (the "**Project**").

B.     Pursuant to an MBS Trade Confirmation dated as of May [___], 2014 (the "**MBS Trade Confirmation**"), DUS Lender has agreed to sell, and PNC Capital Markets LLC ("**MBS Purchaser**") has agreed to purchase, on the terms and conditions set forth in the MBS Trade Confirmation, one or more Fannie Mae Mortgage-Backed Securities (the "**Security**") backed by the Permanent Mortgage Loan.

C.     As more particularly described in the Permanent Mortgage Loan Commitment, Borrower's obligations under the Permanent Mortgage Loan Commitment are subject to various conditions including (1) completion of construction (or rehabilitation) of the Project in accordance with the Approved Plans, and (2) lease-up and stabilization of the Project at not less than ninety percent (90%) occupancy for three consecutive calendar months as adjusted for economic vacancy in accordance with the DUS Guide (the "**Minimum Occupancy Requirement**") unless waived by Fannie Mae, both conditions to be satisfied on or before May 23, 2016, or a later date as extended by DUS Lender and by Fannie Mae (the "**Final Delivery Date**").

D.     In consideration of DUS Lender's agreement to lock the interest rate on the Permanent Mortgage Loan upon Borrower's acceptance of the Permanent Mortgage Loan Commitment (the "**Rate Lock**"), DUS Lender requires that Borrower execute and deliver this Certificate, together with a deed of trust securing Borrower's obligations under this Certificate (the "**Security Instrument**").

E.     All terms used in this Certificate and defined in this Certificate or in any of the attached Exhibits shall have the meanings so given.

In consideration of the above recitals and the promises contained in this Certificate, the receipt and sufficiency of which are acknowledged, Borrower agrees as follows:

CONFIDENTIAL                                                    PLAINTIFFS_00020855

**SECTION 1.   Borrower's Agreement to Close Permanent Mortgage Loan.**  In consideration of DUS Lender's Permanent Mortgage Loan Commitment and Rate Lock, Borrower agrees to close the Permanent Mortgage Loan with DUS Lender (the "**Permanent Mortgage Loan Closing**") not less than 30 days prior to the Final Delivery Date on the terms set forth in the Permanent Mortgage Loan Commitment, as such terms may be changed in accordance with Section 2(d) below, and for the amount at which the Permanent Mortgage Loan underwrites at the time of the Permanent Mortgage Loan Closing as determined by DUS Lender.

**SECTION 2.   Borrower Acknowledgements.**  Borrower acknowledges and agrees that:

(a)    Fannie Mae has agreed to confirm its commitment to purchase the Permanent Mortgage Loan from DUS Lender, and to issue the Security to MBS Purchaser under Forward Commitment Confirmation number 874426 (the "**Forward Commitment**").

(b)    MBS Purchaser has agreed to purchase the Security as evidenced by the MBS Trade Confirmation.

(c)    [Intentionally Omitted]

(d)    Fannie Mae shall have the right, from time to time to do any or all of the following, in which event Borrower shall remain obligated to close the Permanent Mortgage Loan as set out in Section 1 above:

(1)    extend the Final Delivery Date;

(2)    lessen the Minimum Occupancy Requirement by the percentage of occupancy, the type of occupancy or the time period over which the occupancy requirement must be met; and

(3)    waive any condition to the closing or delivery of the Permanent Mortgage Loan or any term or condition of the Permanent Mortgage Loan Commitment or the Forward Commitment or to otherwise lessen any standard of performance or achievement required of the Property or Borrower or any Key Principal of Borrower as a condition to the closing or delivery of the Permanent Mortgage Loan under the Permanent Mortgage Loan Commitment or the Forward Commitment as it may deem appropriate in its sole discretion.

**SECTION 3.   Payment, Allocation and Use of Good Faith Deposit.**

(a)    Pursuant to the Forward Commitment and this Certificate, Fannie Mae and DUS Lender require Borrower to provide a good faith deposit in an amount equal to three percent (3%) of the Maximum Mortgage Loan Amount (the "**Good Faith Deposit**").  Borrower has paid the Good Faith Deposit in an amount equal to $819,000, one-third of which (i.e., $273,000) shall be held by Fannie Mae in a non-interest bearing account (the "**Fannie Mae GFD Allocation**"), and two-thirds of which (i.e., $546,000) shall be held by DUS Lender for the account of MBS Purchaser in and interest-bearing account selected by DUS Lender in its commercially reasonable discretion (the "**MBS Purchaser GFD Allocation**").

(b)    Should a Non-Delivery Fee become due to Fannie Mae and MBS Purchaser pursuant to Section 4 below, then (i) Fannie Mae shall apply the Fannie Mae GFD Allocation toward the applicable portion of the Non-Delivery Fee that is due to Fannie Mae, and (ii) DUS Lender shall apply the

**Delivery Assurance Certificate - MBS Financing Method**                                              Page 2
**Multifamily Affordable Housing Product Line**

                                                        PLAINTIFFS_00020856

MBS Purchaser GFD Allocation toward the applicable portion of the Non-Delivery Fee that is due to MBS Purchaser. If the amount of any such fees due to Fannie Mae and/or MBS Purchaser exceeds, respectively, the amount of the Fannie Mae GFD Allocation and/or the MBS Purchaser GFD Allocation, then Borrower shall be responsible to pay the excess amount(s) due to Fannie Mae and/or to DUS Lender for the account of MBS Purchaser, as applicable.

(c)     Should a Shortfall Fee become due to MBS Purchaser pursuant to Section 5 below (it being understood that no Shortfall Fee shall be due to Fannie Mae under any circumstances), then DUS Lender shall apply the MBS Purchaser GFD Allocation toward the Shortfall Fee that is due to MBS Purchaser. If the amount of the Shortfall Fee due to MBS Purchaser exceeds the amount of the MBS Purchaser GFD Allocation, then Borrower shall be responsible to pay the excess amount due to DUS Lender for the account of MBS Purchaser.

(d)     If (i) no Non-Delivery Fee or Shortfall Fee becomes due, or (ii) the amount of any Shortfall Fee paid to DUS Lender for the account of MBS Purchaser pursuant to Section 5 below is less than the amount of the MBS Purchaser GFD Allocation, then Fannie Mae and DUS Lender shall refund, respectively, the Fannie Mae GFD Allocation and the MBS Purchaser GFD Allocation, or any unapplied portion(s) thereof, with such refund(s) to be paid to Borrower promptly following DUS Lender's delivery of the Permanent Mortgage Loan to Fannie Mae and Fannie Mae's delivery of the Security to MBS Purchaser.

**SECTION 4.   Non-Delivery Fee**.  If (i) Fannie Mae terminates the Forward Commitment in accordance with its terms before the Final Delivery Date, or (ii) by no later than the Final Delivery Date, the Permanent Mortgage Loan has not been made by DUS Lender to Borrower, or DUS Lender has not delivered the Permanent Mortgage Loan for purchase to Fannie Mae, or Fannie Mae determines that the Mortgage Loan Delivery Package for the Permanent Mortgage Loan is not acceptable (each, a "**Delivery Failure**"), then Borrower shall pay a non-delivery fee (the "**Non-Delivery Fee**") to (a) Fannie Mae, and (b) DUS Lender for account of MBS Purchaser, in accordance with the provisions of this Section 4. The Non-Delivery Fee shall be due and payable on the first to occur of (1) the date Fannie Mae terminates the Forward Commitment in accordance with its terms, or (2) if there is a Delivery Failure, the Final Delivery Date. If the Permanent Mortgage Loan closes, but the amount of the Permanent Mortgage Loan is less than ninety percent (90%) of the Maximum Mortgage Loan Amount (as further addressed in Section 5 below), then a Non-Delivery Fee shall not be due under this Section 4, but a Shortfall Fee may be due pursuant to the terms and provisions of Section 5 below.

(a)     **Stabilization Failure**.  If the Permanent Mortgage Loan fails to close on or before the Final Delivery Date because, in spite of the best efforts of Borrower, the Project fails to satisfy the Minimum Occupancy Requirement on or before the Final Delivery Date (a "**Stabilization Failure**"), then the Non-Delivery Fee shall be calculated and paid as set forth in Exhibit B to this Certificate.

(b)     **Any Other Reason**.  If the Permanent Mortgage Loan fails to close on or before the Final Delivery Date for any reason other than a Stabilization Failure, or if Fannie Mae terminates the Forward Commitment in accordance with its terms before the Final Delivery Date, then the Non-Delivery Fee shall be calculated and paid as set forth in Exhibit C to this Certificate.

(c)     **Application of Good Faith Deposit Toward Non-Delivery Fee**.  Fannie Mae shall apply the Fannie Mae GFD Allocation toward the portion of the Non-Delivery Fee due to Fannie Mae, and DUS Lender shall apply the MBS Purchaser GFD Allocation toward the portion of the Non-Delivery Fee due to DUS Lender for the account of MBS Purchaser. If the amount of the Non-Delivery

CONFIDENTIAL                                                              PLAINTIFFS_00020857

Fee exceeds the Good Faith Deposit, Borrower shall be responsible to pay the excess amount due to Fannie Mae and/or to DUS Lender for the account of MBS Purchaser, as applicable.

(d)     **Savings Provision**.  Nothing in this Section 4 shall be interpreted to allow Borrower to avoid its obligation to close the Permanent Mortgage Loan as required by Section 1 above.

SECTION 5.     **Shortfall Fee**.  If the Permanent Mortgage Loan closes, but the principal amount of the Permanent Mortgage Loan (the "**Actual Loan Amount**") is less than ninety percent (90%) of the Maximum Mortgage Loan Amount because the principal amount of the Permanent Mortgage Loan was reduced as a condition to delivery of the Permanent Mortgage Loan as determined by DUS Lender, then Borrower agrees to pay a shortfall fee in an amount which shall be calculated and paid as set forth in Exhibit D (the "**Shortfall Fee**").  The Shortfall Fee shall be due and payable on the closing date of the Permanent Mortgage Loan and payment of the Shortfall Fee shall be a condition precedent to the closing of the Permanent Mortgage Loan.  DUS Lender shall apply the MBS Purchaser GFD Allocation toward any such Shortfall Fee.  If the amount of such Shortfall Fee exceeds the MBS Purchaser GFD Allocation, Borrower shall be responsible to pay the excess amount due to DUS Lender for the account of MBS Purchaser.

SECTION 6.     **Reasonable Estimates**.  Borrower recognizes that the occurrence of any event which gives rise to the payment of a fee under Sections 4 or 5 above will result in DUS Lender and/or MBS Purchaser incurring additional expenses, loss to DUS Lender in not being able to originate the Permanent Mortgage Loan and to MBS Purchaser in not being able to purchase and own the Security and the interest to accrue thereon and frustration or impairment of DUS Lender's ability and/or MBS Purchaser's ability to meet its respective commitments to third parties.  Borrower agrees that, upon the occurrence of any such event, each of DUS Lender and MBS Purchaser shall be entitled to damages for the detriment caused thereby, but that it is extremely difficult and impractical to ascertain the extent of such damages.  Borrower therefore acknowledges and agrees that the compensatory fees referred to in Sections 4 and 5 above represent reasonable estimates of such damages to DUS Lender and to MBS Purchaser.  Borrower further acknowledges that this provision is a material part of the consideration for the Permanent Mortgage Loan Commitment, Rate Lock and the Forward Commitment.

SECTION 7.     **Interest**.  Borrower agrees to pay interest on the unpaid balance of any fee which becomes due under this Certificate from the date upon which such fee first becomes due to the date upon which such fee is paid in full at a per annum interest rate equal to the sum of the Prime Rate plus four percent (4%), or, if less, the highest maximum rate permitted to be charged by applicable law.  The term "**Prime Rate**" means an annual rate of interest equal to the prime rate of interest as reported from day to day in The Wall Street Journal (notwithstanding that such publication shows the prime rate of interest for the preceding Business Day) as the base rate on corporate loans posted by at least seventy-five percent (75%) of the nation's 30 largest banks, or, if such rate is no longer available, then the base rate or prime rate of interest of any "Money Center" bank designated from time to time by DUS Lender, in its discretion.  Any change in the interest rate under this Certificate due to a change in the prime rate of interest as reported in The Wall Street Journal shall take effect on the date of publication.  Interest shall be computed on the basis of a 360-day year and twelve 30-day months.

SECTION 8.     **Additional Security**.  As security for the performance of Borrower's obligations under this Certificate, Borrower has delivered to DUS Lender the Security Instrument to be filed of record against the Project.

SECTION 9.     **Remedies**.  Should any fee become payable under Sections 4 or 5 above and not be paid when due, DUS Lender shall have the right to take such action at law or in equity, without notice

**Delivery Assurance Certificate  - MBS Financing Method**                                               Page 4
**Multifamily Affordable Housing Product Line**

or demand, as it deems advisable to protect and enforce the rights of DUS Lender against Borrower and/or in and to the Project, and to exercise any and all rights and remedies available to it under this Certificate and the Security Instrument.

**SECTION 10.  No Remedy Exclusive.**  Each right, power and remedy of DUS Lender under this Certificate or under applicable laws shall be cumulative and concurrent, and the exercise of any one or more of them shall not preclude the simultaneous or later exercise by DUS Lender of any or all such other rights, powers or remedies.  No failure or delay by DUS Lender to insist upon the strict performance of any one or more provisions of this Certificate or to exercise any right, power or remedy under this Certificate shall constitute a waiver thereof or preclude DUS Lender from exercising any such right, power or remedy.  In order to entitle DUS Lender to exercise any remedy reserved to DUS Lender, it shall not be necessary for DUS Lender to give any notice thereof.

**SECTION 11.  Limits on Personal Liability.**  DUS Lender's only recourse for the satisfaction of the indebtedness evidenced by this Certificate and the performance of any other obligations of Borrower under this Certificate or the Security Instrument shall be DUS Lender's exercise of its rights and remedies with respect to that certain real property and the other property described as security in the Security Instrument.

**SECTION 12.  Successors and Assigns Bound.**  This Certificate shall be binding upon Borrower and its successors and assigns, and shall inure to the benefit of and may be enforced by DUS Lender and its successors, transferees and assigns.  Borrower shall not assign any of its rights and obligations under this Certificate without the prior written consent of DUS Lender.

**SECTION 13.  Entire Agreement; Amendment and Waiver.**  This Certificate, together with the attached Exhibits, contains the complete and entire understanding of Borrower with respect to the matters covered and no change or amendment shall be valid unless it is made in writing and executed by Borrower with the written consent of DUS Lender.  No specific waiver of any of the terms of this Certificate by DUS Lender shall be considered as a general waiver.

**SECTION 14.  Notices.**  All notices given under this Certificate shall be in writing to the other party, at the address and in the manner set forth in the Security Instrument.

**SECTION 15.  Severability.**  The invalidity, illegality or unenforceability of any provision of this Certificate pursuant to judicial decree shall not affect the validity or enforceability of any other provision of this Certificate, all of which shall remain in full force and effect.

**SECTION 16.  Applicable Law.**  This Certificate shall be governed by and construed in accordance with the laws of the jurisdiction in which the Project is located.

**[Continued on next page]**

Delivery Assurance Certificate - MBS Financing Method                                    Page 5
Multifamily Affordable Housing Product Line

**SECTION 17.  Acceptance**.  Borrower waives any requirement that DUS Lender accepts or give notice of acceptance of this Certificate.

**BORROWER:**

2013 TRAVIS OAK CREEK, LP.,
a Texas limited partnership

By:     2013 Travis Oak Creek GP, LLC,
        a  Texas limited liability company,
        its general partner

        By:     _____
                Rene O. Campos,
                Manager

CONFIDENTIAL                                                          PLAINTIFFS_00020860

### Exhibit A

### DEFINITIONS

The following defined terms shall have the meanings set forth in this Exhibit A and shall be applicable to the Certificate to which this Exhibit A is attached:

**Approved Plans**:  Plans, drawings, sketches, specifications, reports, modifications and change orders prepared by the Project Consultants and approved by the Architectural Consultant.

**Architectural Consultant**:  The architect engaged to provide services on behalf of DUS Lender and Fannie Mae with respect to the Project.

**Conditions to Delivery**: Fannie Mae's obligation to purchase the Permanent Mortgage Loan and deliver the Security is subject to Fannie Mae's determination, in its sole and absolute discretion, that the conditions to delivery set forth below, and each special condition set forth in the Permanent Mortgage Loan Commitment (each, a "**Condition to Delivery**") have been satisfied:

   (i)     Completion of the Project. As evidenced by the satisfaction of the requirements set forth in subparagraph (ii) below, Borrower has completed the Project (including all amenities, landscaping, signs, parking and the like, except for minor punch list and weather-sensitive items for which sufficient funds have been reserved in a completion/repair reserve fund) as of the Final Delivery Date (a) in a good and workmanlike manner and substantially in accordance with the Approved Plans; (b) on a lien-free basis; (c) in compliance with all applicable requirements of all governmental authorities having jurisdiction over the Project, including, without limitation, all applicable laws, building codes, zoning requirements, subdivision requirements, fire and safety laws, the requirements of the Americans with Disabilities Act and, if applicable, the design and construction requirements established pursuant to the Fair Housing Act, as amended; and (d) in compliance with the environmental requirements of the DUS Guide.

   (ii)    Evidence of Completion.  All certificates and reports of the Project Architect, the Architectural Consultant and other Project Consultants as required by the DUS Guide to establish completion of the Improvements in accordance with the requirements of the DUS Guide have been provided to or obtained by DUS Lender, including (a) evidence of the availability of all public utilities necessary to the operation of the Project; (b) true and correct copies of each unconditional certificate of occupancy (or the local equivalent of a certificate of occupancy), issued by the governmental authority empowered to exercise jurisdiction over the Project and to properly issue such certificates, for all portions of the Project for which such a certificate is required or, if certificates of occupancy are not required by local law, evidence that the Project has passed all inspections and received all approvals which are conditions precedent to occupancy of all parts of the Improvements; (c) true and correct copies of all operating permits and licenses for the Project; and (d) certificates from the Architectural Consultant and the Project Consultants, including the Project Architect, in form and substance acceptable to DUS Lender and Fannie Mae, in its discretion, stating that the Improvements have been completed substantially in accordance with the Approved Plans.

CONFIDENTIAL                                                                                    PLAINTIFFS_00020861

(iii)   <u>Timely Delivery of Mortgage Loan Delivery Package</u>.  DUS Lender has timely delivered the Mortgage Loan Delivery Package to Fannie Mae, including, where appropriate, executed assignments or endorsements of the Permanent Mortgage Loan Documents.

(iv)   <u>Payment of Fees</u>.  All required fees under the Forward Commitment have been paid.

(v)   <u>Equity Contributions</u>.  Borrower has provided to DUS Lender a certificate, or other evidence satisfactory to Fannie Mae, confirming that all funds reflected on Borrower's sources and uses of funds statement, including but not limited to all equity contributions to Borrower required to be paid in as of the time of Mortgage Loan Delivery, have been received by Borrower and have been properly invested in the Project as of the time of Mortgage Loan Delivery.

(vi)   <u>Evidence of Low-Income Housing Credit Reservation or Allocation</u>.  The Project (if it is a Multifamily Affordable Housing Property as specified in the DUS Guide) is eligible for Low-Income Housing Tax Credits, and Low-Income Housing Tax Credits have been reserved for, or allocated to, the Project in the required amount.

(vii)   <u>Continued Compliance with Fannie Mae Eligibility and Underwriting Standards</u>. Borrower under the Permanent Mortgage Loan must remain unchanged, subject to the right of Borrower's construction lender for the Project to provide a Substitute Borrower; Borrower must continue to be an eligible borrower under the DUS Guide; Borrower must continue to own the Project; there must be no change in the Key Principals and no reduction in the Key Principals' direct or indirect ownership interest in and control over Borrower; and there must be no material adverse change in the condition, financial or otherwise, of Borrower or any Key Principal.

(viii)   <u>Minimum Occupancy Requirement</u>. The Minimum Occupancy Requirement is achieved.

In spite of anything to the contrary contained in this definition, the term "Conditions to Delivery" shall be automatically and correspondingly adjusted if and to the extent Fannie Mae waives any of the conditions set out above or otherwise lessens any standard of performance or achievement required of the Property, Borrower or any Key Principal, all as set out in <u>Section 2(d)</u> of the Certificate.

**DUS Guide**:  Fannie Mae's Delegated Underwriting and Servicing Guide in its present form and as amended, modified, supplemented or reissued from time to time by Fannie Mae, including any DUS Lender Memos, announcements or guide updates (all references to Parts, Chapters, Sections and other subdivisions of the DUS Guide shall be deemed references to (a) the Parts; Chapters, Sections and other subdivisions in effect on the Effective Date; and (b) any successor provisions to such Parts, Chapters, Sections and other subdivisions.

**Improvements**:  For the Project, all improvements on the land described in the Permanent Mortgage Loan Commitment, whether existing or to be reconstructed and, if existing, without regard to whether being rehabilitated.

**Mortgage Loan Delivery**:  DUS Lender's assignment and delivery of the Permanent Mortgage Loan (including all Permanent Mortgage Loan Documents) to Fannie Mae.

**Delivery Assurance Certificate - MBS Financing Method**
**Multifamily Affordable Housing Product Line**

Page A-2

**Mortgage Loan Delivery Package**:  The loan and loan-related documents required to be delivered to Fannie Mae in connection with Fannie Mae's purchase of a mortgage loan as specified in the Fannie Mae DUS Guide.

**Permanent Mortgage Loan Documents**:  All documents to be executed and delivered by Borrower in connection with the Permanent Mortgage Loan, which must, in form and substance, satisfy the requirements of the DUS Guide.

**Project Architect**:  For the Project, the Architect employed or engaged by Borrower to prepare the plans and specifications for the Project.

**Project Consultants**:  All architects (except the Architectural Consultant), landscape architects, structural engineers, civil engineers, environmental engineers, mechanical engineers, electrical engineers and other architects, designers, engineers, consultants and professionals engaged to provide services with respect to the Project.

**Substitute Borrower**:  One who is approved by DUS Lender and meets the requirements of the DUS Guide. Fannie Mae must be reimbursed in full for all costs, expenses and fees owing to Fannie Mae in connection with substitution of the Substitute Borrower.  The Substitute Borrower must be substituted in a timely manner in order to effect the Mortgage Loan Delivery on or before the Final Delivery Date.

CONFIDENTIAL                                                                    PLAINTIFFS_00020863

**Exhibit B**

**Non-Delivery Fee**
**(Stabilization Failure)**

The Non-Delivery Fee under this Exhibit B shall be the greater of:

(1)    three percent (3%) of the Maximum Mortgage Loan Amount; or

(2)    an amount calculated by multiplying:

- the difference between (i) the Note Rate for the Permanent Mortgage Loan in the Forward Commitment less the Servicing Fee (the "**Required Net Coupon Rate**") and (ii) the Required Net Coupon Rate offered for purchase by Fannie Mae for an immediate funding loan with the same terms as the Permanent Mortgage Loan in the Forward Commitment on the Final Delivery Date or, if terminated prior to the Final Delivery Date, the last day of the calendar month in which the Forward Commitment is terminated; TIMES

- the Maximum Mortgage Loan Amount; TIMES

- a present value factor, calculated using the following formula:

$$\frac{1 - (1+r)^{-n/12}}{r}$$

- where:

  | | | |
  |---|---|---|
  | r | = | the Required Net Coupon Rate used in (ii) above; and |
  | n | = | the number of months in the Yield Maintenance Period of the Permanent Mortgage Loan in the Forward Commitment. |

One-third (1/3rd) of the Non-Delivery Fee as calculated under just line (1) above (i.e., one percent (1%) of the Maximum Mortgage Loan Amount) shall be due and payable to Fannie Mae per the terms of the Forward Commitment, and the remainder of the Non-Delivery Fee as calculated under lines (1) and (2) above, as applicable, shall be due and payable to DUS Lender for the account of MBS Purchaser per the terms of the MBS Trade Confirmation.

**Delivery Assurance Certificate - MBS Financing Method**                                 Page B-1
**Multifamily Affordable Housing Product Line**

CONFIDENTIAL                                                                 PLAINTIFFS_00020864

## Exhibit C

### Non-Delivery Fee
### (Any Other Reason)

The Non-Delivery Fee under this Exhibit C shall be the greater of:

(1)     three percent (3%) of the Maximum Mortgage Loan Amount; or

(2)     an amount calculated by multiplying:

- the difference between (i) the Note Rate for the Permanent Mortgage Loan in the Forward Commitment and (ii) the yield rate (the "**Yield Rate**") of the U.S. Treasury security selected by Fannie Mae whose maturity is closest to the end of the Yield Maintenance Period of the Permanent Mortgage Loan in the Forward Commitment on the Final Delivery Date, or if terminated prior to the Final Delivery Date, the last day of the calendar month in which the Forward Commitment is terminated, as the Yield Rate is reported in *The Wall Street Journal*; TIMES

- the Maximum Mortgage Loan Amount; TIMES

- a present value factor, calculated using the following formula:

$$\frac{1 - (1+r)^{-n/12}}{r}$$

- where:

    $r$     =     the Yield Rate; and

    $n$     =     the number of months in the Yield Maintenance Period of the Permanent Mortgage Loan in the Forward Commitment.

One-third (1/3rd) of the Non-Delivery Fee as calculated under just line (1) above (i.e., one percent (1%) of the Maximum Mortgage Loan Amount) shall be due and payable to Fannie Mae per the terms of the Forward Commitment, and the remainder of the Non-Delivery Fee as calculated under lines (1) and (2) above, as applicable, shall be due and payable to DUS Lender for the account of MBS Purchaser per the terms of the MBS Trade Confirmation.

**Delivery Assurance Certificate - MBS Financing Method**                                          Page C-1
**Multifamily Affordable Housing Product Line**

## Exhibit D

### Shortfall Fee

As used in this Exhibit D, the term **"Shortfall Amount"** shall mean the difference between (i) the amount which is ninety percent (90%) of the Maximum Mortgage Loan Amount, and (ii) the Actual Loan Amount.

The Shortfall Fee under this Exhibit D shall be the greater of:

(1)     two percent (2%) of the Shortfall Amount; or

(2)     an amount calculated by multiplying:

- the difference between (i) the Note Rate for the Permanent Mortgage Loan in the Forward Commitment less the Servicing Fee (the **"Required Net Coupon Rate"**) and (ii) the Required Net Coupon Rate offered for purchase by Fannie Mae for an immediate funding loan with the same terms as the Permanent Mortgage Loan in the Forward Commitment on the date the Lender delivers the Permanent Mortgage Loan to Fannie Mae; TIMES

- the Shortfall Amount; TIMES

- a present value factor, calculated using the following formula:

$$\frac{1 - (1+r)^{-n/12}}{r}$$

- where:

    r     =     the Required Net Coupon Rate used in (ii) above; and

    n     =     the number of months in the Yield Maintenance Period of the Permanent Mortgage Loan in the Forward Commitment.

The Shortfall Fee calculated under lines (1) and (2) above, as applicable, shall be due and payable to DUS Lender for the account of MBS Purchaser per the terms of the MBS Trade Confirmation.

**Delivery Assurance Certificate  - MBS Financing Method**
**Multifamily Affordable Housing Product Line**

Page D-1

CONFIDENTIAL

PLAINTIFFS_00020866

Prepared by, and after recording
return to:

PNC Bank, National Association
26901 Agoura Rd., Suite 200
Calabasas Hills, California 91301
PNC Loan No. 310401235
Fannie Mae No. 874426

# PERMANENT MORTGAGE LOAN COMMITMENT
## MULTIFAMILY DEED OF TRUST,
## ASSIGNMENT OF LEASES AND RENTS,
## SECURITY AGREEMENT
## AND FIXTURE FILING

## (TEXAS)

**Fannie Mae Multifamily Security Instrument**          Form 6025.TX
**Modified – Permanent Mortgage Loan Commitment**
**Texas**                                                06-12                    © 2012 Fannie Mae

CONFIDENTIAL                                     PLAINTIFFS_00020867