# Fannie Mae Survey Requirements

An acceptable as-built survey prepared in connection with the origination of the Mortgage Loan must:

☐ meet the requirements of an ALTA/ACSM Land Title Survey, made in accordance with the 2011 Minimum Standard Detail Requirements for ALTA/ACSM Land Title Surveys as adopted by American Land Title Association and National Society of Professional Surveyors, including, at a minimum, the following Table A items: 1, 2, 3, 4, 6(a) and (b), 7(a), 8, 9, 10, 11(a) and (b), 13, 16 and 20;

☐ include the certification required in the 2011 Minimum Standard Detail Requirements for ALTA/ACSM Land Title Surveys as adopted by American Land Title Association and Society of Professional Surveyors; and

☐ be dated no more than 360 days prior to the date of the Security Instrument is recorded.

**Certification**: The survey needs to be certified to: ☐ PNC Bank, National Association ☐ Fannie Mae, it successors and/or assigns ☐ Title Insurer ☐ Owner / Borrower

**Draft Survey**:  When available send one copy to Lender and one copy to the Title Insurer for review. Please send one hard copy and If possible, please email a pdf version.

**Final Survey**:  Four (4) original signed surveys to Lender; Two (2) original signed surveys to Title Insurer.

**Lender Contact:** Ms. Lee Peterson Sr. Title Coordinator PNC Bank 11800 338ᵗʰ Ave NE Carnation, WA 98014
(p) 425-788-4124
(f) 425-788-3126 lee.peterson@pnc.com

CONFIDENTIAL

**EXHIBIT H**

**INSURANCE REQUIREMENTS**

H-1

Forward Commitment/ Unfunded MBS Rate Lock

CONFIDENTIAL

PLAINTIFFS_00020906

**Fannie Mae Insurance Requirements Guide**
**for PNC Bank, National Association**

**GENERAL REQUIREMENTS SECTION**

## 1. <u>General Insurance Requirements</u>

Fannie Mae requires each Property to be covered by Property and Liability Insurance for the life of the Mortgage Loan. The Borrower must be listed as a named insured on the policy. Policies must comply with all of the following provisions.

- Policies must be written on a per occurrence basis except for Earthquake and Professional Liability coverage, which may be written on a "claims made" basis.

- Policies must have a cancellation provision requiring the carrier to notify the Lender at least 30 days in advance of policy cancellation for any reason other than non-payment of premium.

- Policies must include a cancellation provision that provides for at least a 10 day written notification for non-payment of premium.

- Policies must name Fannie Mae as "additional insured" on General Liability and Excess/Umbrella policies.

- Property policies must contain a mortgagee clause and loss payable clause acceptable to Fannie Mae. An acceptable mortgagee clause would be:

**Fannie Mae, its successors and/or assigns,**
**as their interest may appear**
**C/O PNC Bank, National Association**
**26901 Agoura Road, Suite 200**
**Calabasas Hills, CA 91301**

## 2. <u>Blanket and Other Policies Covering More Than One Property</u>

Use of a Blanket Policy (or policies) or multiple property policy (or policies) covering the Property and General/Excess/Umbrella/Professional Liability is acceptable, provided: the policy provides the same or better insurance coverage as a single property insurance policy;

- the Property is listed and identified in the policy or associated schedules;

- the policy complies with all other applicable requirements contained in this Guide; and

- all insured properties covered by the policy either:

  ❖ have common ownership with the Borrower, or with a Key Principal, Principal or Affiliate of the Borrower; or

  ❖ are managed by the same property management company.
  ❖ A Statement of Values and, if requested, a Probable Maximum Loss Report or other verification that the limits being provided are adequate.

1/2014

FNMA Guide

CONFIDENTIAL

PLAINTIFFS_00020907

**3. Blanket Policies for Properties Not Having Common Ownership**

Use of Blanket Polices insuring non-related entities is subject to review and approval by Fannie Mae.

**4. Insurance Carrier Rating**

All property and casualty insurance carriers must meet one of the following rating requirements even if it is rated by one or more rating agencies or conditions:

- A.M. Best Company general policyholder's rating of "A-" or better, and a financial performance index rating of "VI" or better;

- state wind pools or state funds, if they are the only coverages that can be obtained; or

- flood coverages issued by the National Flood Insurance Program ("NFIP") or written by companies approved under the NFIP's "Write Your Own" program.

**5. Term**

Polices must have a minimum 12-month policy term. For new Mortgage Loans, a Property may be added mid-term to an existing 12-month policy.

**6. Payment of Premium**

Premiums for all required policies must be paid in full with no premium financing. For Mortgage Loans where no insurance impounds are being collected, the Borrower must provide evidence that all policies are paid in full annually.

**7. Evidence of Insurance**

The Borrower must provide evidence of insurance for the Property on or before the closing or the policy's renewal date. Evidence of insurance coverages for the Property must be provided as follows.

- Temporary Evidence – Any of the following are acceptable forms of temporary evidence of insurance:

  ❖ ACORD 28 – "Evidence of Commercial Property Insurance" (most recent version or per state requirements if applicable), combined with ACORD 25 – "Certificate of Liability Insurance";

  ❖ ACORD 75 – "Insurance Binder"; or

  ❖ Mortgage Bankers Association (MBA) Evidence of Insurance – Commercial Property Form. In states where the MBA form is filed and approved, the appropriate state form must be used otherwise the most recently revised MBA form should be used, which can be found at:

1/2014

FNMA Guide

CONFIDENTIAL

PLAINTIFFS_00020908

http://www.mortgagebankers.org/IndustryResources/ResourceCenters/Evi
denceofInsuranceResourceCenter.

If an ACORD certificate is not available, Fannie Mae will accept a letter signed by the Borrower and the licensed insurance broker/agent certifying that all coverage requirements and terms and conditions meet Fannie Mae's requirements.

■ Permanent Evidence – The following are acceptable forms of permanent evidence of insurance:

❖ The original or duplicate copy of each current insurance policy, which must be received, reviewed and placed in the Lender's Servicing File within 90 days after the delivery of the Mortgage Loan or the date of the insurance policy renewal. Except for an NFIP policy, only the complete insurance policy is sufficient evidence of coverage. Insurance policy declarations pages, single policy endorsements, insurance binders and certificates of insurance are not an acceptable form of permanent insurance coverage. The Policy Declaration page of an NFIP policy is acceptable evidence of flood insurance coverage.

❖ For Properties securing a Mortgage Loans with an Unpaid Principal Balance ("UPB") of $10 million or below, the "MBA Evidence of Insurance – Commercial Property Form" is acceptable under the following conditions:

➢ Form must be complete in its entirety;

➢ Form must have an original signature of an individual authorized to execute the "Evidence of Insurance" on behalf of the insurance carriers issuing each policy of Property Insurance described on the form; and

➢ In states where the form is filed and approved, the appropriate state form must be used, otherwise the most recently revised MBA Evidence of Insurance – Commercial Property Form should be used.

❖ For Properties securing a Mortgage Loan with an UPB in excess of $10 million and/or for multi-layered Blanket Policies, including Master Property Insurance Programs, a duplicate copy of the primary insurance policies must be received along with a letter (signed and dated on company letterhead) from an individual authorized to execute any evidence of insurance on behalf of the insurance carriers issuing each policy of Property Insurance, and stating that all policies follow the same Terms, Conditions and Exclusions as the primary policy. Any differences must be specified.

1/2014

FNMA Guide

CONFIDENTIAL

PLAINTIFFS_00020909

# PROPERTY DAMAGE REQUIREMENTS SECTION

This Section covers the guidelines and requirements for Property Insurance. Fannie Mae requires that each Property be covered by Property Insurance for the life of the Mortgage Loan.

## 8. Property Damage Minimum Requirements

Fannie Mae requires Special Causes of Loss Form (formerly referred to as "All Risk") for all property types. In addition:

- Single-building Properties: 100% of estimated replacement cost.
- Multiple-building Properties: 90% of estimated replacement cost. Coinsurance is allowed up to 90% provided that the amount of coverage in place is at least 90% of the estimated replacement cost of the Improvements and Business Income including Rental Value.
- The maximum deductibles are as follows:
    - ❖ $15,000 per occurrence for a Property securing the Mortgage Loan that is on a policy with less than $5 million in total insurable values.
    - ❖ $25,000 per occurrence for a Property securing the Mortgage Loan that is on a policy having greater than or equal to $5 million and less than $50 million in total insurable values.
    - ❖ $100,000 per occurrence for a Property securing the Mortgage Loan that is on a policy having greater than or equal to $50 million and less than $100 million in total insurable values.
    - ❖ $250,000 per occurrence for a Property securing the Mortgage Loan that is on a policy having greater than or equal to $100 million in total insurable values.

## 9. Business Income (including Rental Value) Minimum Requirements

Either Business Income, including Rental Value or Rental Value (if no other source of income applies) is required for all properties.
- Coverage is required for all required property insurance perils including windstorm, flood, earthquake and terrorism even if written by a stand-alone policy.
- The minimum amount of coverage is:
    - ❖ 12 months of coverage if written on an Actual Loss Sustained basis or,
    - ❖ 12 months of coverage based on Effective Gross Income for the most recent year-end financials.
- For mortgages with an Unpaid Principal Balance (UPB) of $25 million or more, 90 Days Extended Period of Indemnity is also required.
- The maximum deductible is the same as for the building or up to a 72 hour waiting period.

1/2014

FNMA Guide

CONFIDENTIAL

PLAINTIFFS_00020910

## 10. Ordinance or Law Coverage

Ordinance or Law coverage is required for the following properties:

- Any Property that contains any type of non-conformance under current land use laws or ordinances (building, zoning, energy management, "green", etc.) and cannot be rebuilt "as is".

- Any Property with a construction date 25 years or more before closing.
- The minimum limits of coverage are:
  - ❖ Coverage A-Loss of Undamaged Portion of the Property, in an amount equal to the greater of (i) 100% of the full replacement cost of the Property less the damage threshold of the local building ordinance, or (ii) 50% if the threshold of the local building ordinance is not explicitly stated.
  - ❖ Coverage B- Demolition/Debris Removal Cost in the minimum amount of 10% of the full replacement cost of the Property.
  - ❖ Coverage C- Increased Cost of Construction in the minimum amount of 10% of the full replacement cost of the Property.
  - ❖ Note: When Ordinance or Law is offered with A, B and C combined, the minimum limit must be the Coverage A calculation, as explained above, plus 20% of the full replacement cost of the property. When B & C are combined, the minimum limit is 20% of the full replacement cost of the property.

## 11. Boiler and Machinery/Equipment/Mechanical Breakdown Minimum Requirements

Boiler and Machinery coverage is required if the building contains any centralized HVAC boiler, water heater or other high-pressure vessels that are in operation and regulated by the state where the Property is located. The limits and deductible are the same as outlined in item 8 in the Property Damage Section.

## 12. Builder's Risk Minimum Requirements

Builder's Risk Insurance is required if Property coverage is excluded or limited during construction, renovation or restoration of the Property. The required limit is 100% of the completed value and must be insured on a non-reporting basis. The deductibles are the same as outlined in item 8 in the Property Damage Section.

## 13. Fidelity Bond/Crime Minimum Requirements

Fidelity Bond/Crime Insurance is required for all Cooperative Organizations. The minimum limit is 3 months of scheduled maintenance fees of the cooperative. The maximum deductible is $25,000.

1/2014

FNMA Guide

CONFIDENTIAL

PLAINTIFFS_00020911

**14. Regional Perils Minimum Requirements**

Sinkhole, mine subsidence, volcanic eruption, avalanche, etc. is required for Properties prone to these geological phenomena. The limits and deductible are the same as outlined in item 8 in the Property Damage Section.

# CATASTROPHIC RISK INSURANCE REQUIREMENTS SECTION

**15. Windstorm Minimum Requirements**

Windstorm coverage is required for all Properties. If the Special Causes of Loss Form excludes any type of wind-related catastrophic event, a separate windstorm insurance policy must be obtained. Coverage obtained through state insurance plans, other state-managed windstorm or beach erosion insurance pools are acceptable if that is the only windstorm coverage available in the insurance marketplace. The minimum amounts of coverage and the maximum deductible is as follows:

- The minimum limit for the Property is 100% of the replacement cost.
- The maximum deductible is 10% of the Property's replacement cost.
- The Business Income limits are the same as outlined in Section 9 in the Property Damage Section.

**16. Flood Minimum Requirements**

Flood Insurance is required if any improved sections of the Property Improvements are located in a Special Flood Hazard Area (SFHA), Zone A or Zone V. Coverage is required for both the building and loss of income. **Because the insurance coverage available under the NFIP is not sufficient to meet the requirements set forth below, an Excess Flood or Difference in Condition ("DIC") insurance to provide the difference up to the full replacement cost of the property, including Business Income and Rental Value must also be obtained.**

- The minimum amount of coverage is 100% of replacement cost of Improvements located in a SFHA.
- Business Income/Rental Value is required:
  - ❖ Coverage based on Actual Loss Sustained for 12 months, or;
  - ❖ 12 months coverage based on annual Effective Gross Income for the most recent year-end financials;
  - ❖ 90 Days Extended Indemnity for loans with a UPS of $25 million or higher.
- The maximum deductible is:
  - ❖ For National Flood Insurance Policies, or their equivalent, $10,000 for apartment buildings and $50,000 for nonresidential buildings (clubhouse, management office, laundry, etc.).

1/2014

FNMA Guide

CONFIDENTIAL                                    PLAINTIFFS_00020912

❖ 5% of the Property's replacement cost for any stand-alone flood policy insuring both the buildings and Business Income offering Flood coverage on a blanket basis.
- Flood insurance must be in the form of the standard policy issued by members of the NFIP.   Other policies that meet the NFIP's requirements, such as those issued by a licensed property and casualty insurance company that are authorized to participate in NFIP's "Write Your own" program are acceptable.
- Equivalent flood insurance policies written by insurance carriers are acceptable with an adequate AM Best rating (A- VI) are also acceptable.
- If conditions warrant, Fannie Mae or PNC may require flood insurance for Property Improvements located outside of a SFHA Zone A or Zone V but within an area designated by FEMA as Zone X, such as a Property that is in an area subject to flooding due to storm water or within close proximity to a SFHA boundary.

## 17. Earthquake Insurance Minimum Requirements

Earthquake insurance may be required by Fannie Mae.  If required, coverage must be for 100% of the replacement cost of the Property Improvements.  12 Months Business Income is also required.  If the UPB is $25 million or higher, 90 Days Extended Indemnity is also required.  The maximum deductible is 10%.

## 18. Terrorism Insurance Minimum Requirements

Terrorism Insurance may be required for any loan that is viewed as a potential target.  Terrorism Insurance is required for any loan with a UPB of $25 million or more.  If required, coverage must be provided for both property and liability exposures.  Coverage must be equal to 100% of the replacement cost of the Property and must include 12 Months Business Income coverage and 90 Days Extended Indemnity.  The maximum deductible, if coverage is provided by a stand-alone policy, is 20% of the replacement cost of the Property.

FNMA Guide

CONFIDENTIAL

PLAINTIFFS_00020913

## LIABILITY INSURANCE REQUIREMENTS SECTION

This section covers the guidelines and requirements for liability insurance. Fannie Mae requires that each Property and Borrower be covered by liability insurance for the life of the Mortgage Loan.

### 19. Commercial General Liability Minimum Requirements

Commercial General Liability insurance for bodily injury, property damage, and personal injury is required for all property types.

- The minimum amount of coverage is $1million per occurrence, $2 million general aggregate, plus minimum Umbrella/Excess liability insurance as follows:

  | | |
  |---|---|
  | Up through 4 stories | $2 million |
  | 5 –10 stories | $5 million |
  | 11 - 20 stories | $10 million |
  | Greater than 20 stories | $25 million |

- For an Umbrella/Excess liability policy covering multiple locations, the minimum coverage limit may be satisfied when the limit meets the requirement for the location with the most stories.
- For Seniors Properties, if General Liability is combined with Professional Liability, policies written on a "claims made" basis are acceptable with the following conditions:
  - ❖ PNC's approval must be obtained upon the event of any the following:
    - ➤ the insurance carrier is changed;
    - ➤ the "retroactive date" changes for any claims-made policy;
    - ➤ the insurance coverage returns to an "occurrence policy" from a "claims-made" policy; or
    - ➤ any other material change in insurance/risk financing such as forming a Captive insurer, forming or joining a risk retention group, etc.;
  - ❖ If any of the above changes are approved, an "Extended Reporting Period" coverage ("tail coverage") for the "claims-made" policy in a dollar amount and for the applicable time period assuring that there is no potential lapse in coverage must be purchased.
- The Maximum Deductible/SIR for general/excess liability coverages are:
  General Liability:

  $15,000 per occurrence for a Property securing the Mortgage Loan that is on a policy with less than $5 million in total insurable values.

  $25,000 per occurrence for a Property securing the Mortgage Loan that is on a policy having greater than or equal to $5 million and less than $50 million in total insurable values.

  $100,000 per occurrence for a Property securing the Mortgage Loan that is on a policy having greater than or equal to $50 million.

1/2014

FNMA Guide

CONFIDENTIAL

PLAINTIFFS_00020914

> $250,000 per occurrence for a Property securing the Mortgage Loan that is on a policy having greater than or equal to $100 million in total insurable values.
>
> Umbrella/Excess Liability:
> $25,000

## 20. Professional Liability Minimum Requirements

Assisted living facilities or other Seniors Housing Properties where any level of healthcare is provided must maintain Professional Liability Insurance. Professional Liability Insurance covers professional errors and omissions, medical malpractice and all types of abuse. **Fannie Mae must not be named an additional insured on Professional Liability Insurance policies.**

- The minimum amount of coverage is $1 million per occurrence/$2 million minimum general aggregate limit per location **plus** minimum umbrella/excess liability insurance as follows:

  | | |
  |---|---|
  | Up to 100 licensed beds | $2 million |
  | 101 to 500 licensed beds | $5 million |
  | 501 to 1000 licensed beds | $10 million |
  | Over 1000 licensed beds | $25 million |

- The minimum required coverage limit may be satisfied by adding any combination of primary and umbrella/excess limits so that the sum of both equals the sum of the limits required in (1) plus (2) above.

- For an Umbrella/Excess liability policy covering multiple locations, the minimum required coverage may be satisfied when that limit meets the requirement for the location with the most licensed beds.

- When there is a combination of independent and assisted living beds, only the number of assisted living beds should be used to determine the limit required.

- When General Liability and Professional Liability are combined in an Umbrella policy and cover multiple locations, the higher limit of the two required coverages is the minimum acceptable (with the umbrella coverage being in addition to the applicable underlying coverages for General Liability and Professional Liability).

## 21. Workers' Compensation

Workers' Compensation Insurance (including Terrorism) is required whenever direct employees of the Borrower are required to be covered by Workers' Compensation laws of the state where the Property is located. The minimum amount of coverage is the Statutory Limits for injured employees and $1 million Employer Liability limits.

## 22. Directors' and Officers' Liability Minimum Requirements

Directors and Officers Liability Insurance is required for all Cooperative Organizations. The minimum limit is $1,000,000 and the maximum deductible is the same as for general liability.

1/2014

FNMA Guide

CONFIDENTIAL

PLAINTIFFS_00020915

**23.** <u>**Commercial Auto Liability Minimum Requirements**</u>

Commercial Auto Liability insurance that covers owned, non-owned, hired and leased vehicles (whichever shall apply), including personal injury protection as required by state statute is required if the Borrower owns or hires any vehicles in its name, or if any individuals use their own vehicles for any type of business on behalf of the Borrower or the Property.   The minimum amount of coverage is $1 million.

## SMALL LOANS

All insurance requirements provided in Sections 1-23 are applicable to Small Mortgage Loans, except as provided below.

**24.** <u>**Permanent Evidence**</u>

The following are acceptable evidence of insurance coverage for Small Loans.

- The originals or duplicate copies of current insurance policies must be sent within 90 days of closing.  Except for a National Flood Insurance Program (NFIP) policy, only the complete insurance policy is sufficient evidence of coverage.  Insurance policy declarations pages, single policy endorsements, insurance binders and certificates of insurance are not an acceptable form of permanent insurance coverage.   The Policy Declaration page of a NFIP policy is acceptable evidence of flood insurance coverage.

- A signed and dated statement from Borrower's insurance agent or broker confirming the policy has been reviewed and contains the following information:

  - ❖ Named insured listed as Fannie Mae Borrower.

  - ❖ Mortgagee Clause acceptable to Fannie Mae.

  - ❖ Insurance Carrier(s) have compliant AM Best Rating.

  - ❖ Policy Term is 12 months.

  - ❖ Cancellation Clause per Fannie Mae requirements.

  - ❖ Special Coverage Form applies.

  - ❖ No Coinsurance or confirmation that an Agreed Value Endorsement is attached to the policy if there is Coinsurance.

  - ❖ Limits of insurance for all required coverages including any sub-limits or other restrictions, i.e. catastrophic limits (Wind, Flood, Earthquake, etc.) that may differ from the standard property coverage amount.

  - ❖ A Statement of Values where applicable.

  - ❖ Coverage is subject to Replacement Cost valuation.

- Mortgage Bankers Association (MBA) Evidence of Insurance – Commercial Property Form.  In states where the MBA form is filed and approved, the appropriate state form must be used; otherwise the most recently revised MBA form should be used.

1/2014

FNMA Guide

CONFIDENTIAL

PLAINTIFFS_00020916

**25. <u>Umbrella/Excess Liability Minimum Requirements</u>**

$1 Minimum umbrella/excess liability insurance is required when the Property has 4 stories or less and the Mortgage Loan amount is less than or equal to $3 million.

**26. <u>Terrorism Insurance</u>**

Terrorism insurance coverage is not required for Small Loans.

CONFIDENTIAL

PLAINTIFFS_00020917

## EXHIBIT I

**FORM OF BORROWER'S COUNSEL OPINION LETTER**

Forward Commitment/ Unfunded MBS Rate Lock

CONFIDENTIAL                                        PLAINTIFFS_00020918

# OPINION OF BORROWER'S COUNSEL ON ORIGINATION OF MORTGAGE LOAN [WITH ENFORCEABILITY OPINION]
## [ENFORCEABILITY REQUIRED IF ANY CHANGE MADE TO FORM DOCUMENTS]

[insert loan closing date]

Fannie Mae
3900 Wisconsin Avenue, NW
Washington, DC  20016

[Lender]

Re:   Lender: _____
       Borrower: _____
       Property Name: _____
       Property Address: _____
       Mortgage Loan Amount: $_____

Ladies and Gentlemen:

We have acted as [special/general] counsel to [name], a [type of entity] ("**Borrower**"), [[name], the [general partner/managing member] of Borrower], [and] [[name] ("**Guarantor**")] [*INCLUDE GUARANTOR, IF ANY, AND ADD ALL GUARANTOR OPINIONS BELOW*] in connection with a mortgage loan (the "**Mortgage Loan**") in the original principal amount of $_____ from [name], a [type of entity] ("**Lender**") to Borrower.  [We have also acted as [special/general] counsel to Borrower in connection with a subordinate mortgage loan (the "**Subordinate Loan**") in the original principal amount of $_____ from [name], a [type of entity] ("**Subordinate Lender**") to Borrower.]  We have been advised by Borrower that the proceeds of the Mortgage Loan are to be used to [insert refinance a loan secured by, rehabilitate and/or purchase] a multifamily residential property known generally as [name of project] (the "**Project**") located at [address] in [state and local jurisdictions].

We have been advised by Lender that it expects to sell the Mortgage Loan to Fannie Mae, pursuant to the terms of Fannie Mae's Multifamily product line.  Borrower [and Guarantor] [has/have] requested that we deliver this opinion to you, [has/have] consented to reliance by Lender and Fannie Mae on this opinion in making and purchasing, respectively, the Mortgage Loan, and [has/have] waived any privity between Borrower [, Guarantor] and us in order to permit you to so rely on this opinion.  We understand and, with the consent of Borrower [and Guarantor], consent to your so relying on this opinion.

CONFIDENTIAL                                                                         PLAINTIFFS_00020919

In our capacity as counsel to Borrower [and Guarantor], we have examined the following documents, each dated as of _____ except as otherwise indicated below:

A.    [Loan Commitment between Borrower and Lender, dated as of _____;]

B.    Multifamily Loan and Security Agreement (and any schedules, exhibits and/or other addenda) executed by Borrower and Lender (the "**Loan Agreement**");

C.    Multifamily Note (and any schedules) in the original principal amount of _____ Dollars ($_____) executed by Borrower payable to the order of Lender (the "**Note**");

D.    Multifamily [Deed of Trust] [Mortgage] [Deed to Secure Debt], Assignment of Leases and Rents [and] Security Agreement [and Fixture Filing] (and any exhibits) executed by Borrower for the benefit of Lender (the "**Security Instrument**"), granting a security interest in the Project as more specifically described in the Security Instrument (the "**Mortgaged Property**");

E.    [Indicate number of UCCs to be filed]   Uniform Commercial Code Financing Statement[s] naming Borrower as debtor and naming Lender as secured party (the "**Financing Statements**");

F.    Assignment of Management Agreement, executed by Borrower, Lender and [name], as property manager;

G.    Environmental Indemnity Agreement executed by Borrower for the benefit of Lender;

H.    [Subordination, Non-disturbance and Attornment Agreement executed by Borrower, Lender and [name of tenant of Project;]

I.    [DRAFTING NOTE: INSERT FOR FANNIE MAE SUPPLEMENTAL DEBT] [Multifamily Loan and Security Agreement executed by Subordinate Lender and Borrower;]

J.    [Subordination Agreement dated as of _____, by and among Borrower, Lender and Subordinate Lender];

K.    [List all other documents executed in connection with the Mortgage Loan or Subordinate Loan;]

L.    Guaranty of Non-Recourse Obligations executed by Guarantor (the "**Guaranty**");

CONFIDENTIAL                                                                    PLAINTIFFS_00020920

M.      A Certificate of Borrower attached to this opinion as Exhibit A[-1] (the "**Borrower's Certificate**") [and a Certificate of Guarantor attached to this opinion as Exhibit A[-2] (the "**Guarantor's Certificate**")];

N.      Certified copies of the organizational documents of Borrower [, Guarantor] [and each general partner or managing member of Borrower] as more particularly set forth on Exhibit B attached hereto (collectively, the "**Organizational Documents**");

O.      Certified copies of the borrowing resolutions of Borrower [, Guarantor] [and each general partner or managing member of Borrower, if any,] dated as of _____;

P.      With respect to Borrower [(i)] a certificate of [good standing/identify proper name of certificate] issued by the State of _____ on _____; [and (ii) [identify proper name of the certificate(s) of authority to transact business if Borrower's state of organization is other than the Mortgaged Property jurisdiction] issued by the State of _____ on _____,] [a copy/copies] of which [is/are] attached to Exhibit C hereto ([together,] the "**Borrower Good Standing Certificate[s]**")];

Q.      [With respect to [the general partner/managing member] of Borrower [(i)] certificates of [good standing/identify proper name of certificate] issued by the State of _____ on _____; [and (ii) [identify proper name of the certificate(s) of authority to transact business if Manager's/GP's state of organization is other than the Mortgaged Property jurisdiction] issued by the State of _____ on _____,] [a copy/copies] of which [is/are] attached to Exhibit C hereto ([together,] the "**[Manager/GP] Good Standing Certificate[s]**");]]

R.      [With respect to Guarantor, a certificate of [good standing/identify proper name of certificate] issued by the State of _____ on _____, a copy of which is attached to Exhibit C hereto (the "**Guarantor Good Standing Certificate**");]

S.      Such other documents, matters, statutes, ordinances, published rules and regulations, published judicial and governmental decisions interpreting or applying the same, and other official interpretations as we deem applicable in connection with this opinion.

The documents listed in B through **[L]** above are referred to collectively as the "**Loan Documents**." The documents listed in **[M]** through **[S]** above are referred to collectively as the "**Ancillary Documents**." The documents listed in A through **[S]** above are referred to collectively as the "**Documents**."

In basing the opinions set forth in this opinion on "our knowledge," the words "our knowledge" signify that, in the course of our representation of Borrower [and Guarantor], no

CONFIDENTIAL                                                    PLAINTIFFS_00020921

facts have come to our attention that would give us actual knowledge or actual notice that any such opinions or other matters are not accurate. Except as otherwise stated in this opinion, we have undertaken no investigation or verification of such matters. Further, the words "our knowledge" as used in this opinion are intended to be limited to the actual knowledge of the attorneys within our firm who have been directly involved in representing Borrower [and Guarantor] in any capacity, including but not limited to, in connection with the Mortgage Loan.

In reaching the opinions set forth below, we have assumed the following:

(a)    The Loan Documents will be duly and validly executed by all parties other than Borrower [and Guarantor], and delivered for value.

(b)    Other than with respect to Borrower [and Guarantor], each person executing the Loan Documents, whether individually or on behalf of an entity, will have the requisite power and authority to do so at the time of execution, and the obligations of any party other than Borrower [or Guarantor] will be its legal, valid and binding obligations, enforceable in accordance with the terms thereof.

(c)    Each natural person executing the Loan Documents will be legally competent to do so.

(d)    The Mortgaged Property will be located in the [insert jurisdiction] and will consist of one (1) or more residential apartment buildings and aggregating more than four (4) units and also may include one (1) or more commercial tenants.

(e)    The Security Instrument and the Financing Statements will be duly filed, indexed and recorded among the appropriate official records, as set forth below, with all fees, charges and taxes having been paid.

(f)    The parties to the Loan Documents and their successors and assigns will (i) act in good faith and in a commercially reasonable manner in the exercise of any rights or enforcement of any remedies under the Loan Documents; (ii) not engage in any conduct in the exercise of such rights or enforcement of such remedies that would constitute other than fair dealing; and (iii) comply with all requirements of applicable procedural and substantive law in exercising any rights or enforcing any remedies under the Loan Documents.

(g)    The exercise of any rights or enforcement of any remedies under the Loan Documents will not be unconscionable, result in a breach of the peace or otherwise be contrary to public policy.

(h)    Borrower will have title to, or other interest in, each item of real and personal property comprising the Mortgaged Property.

CONFIDENTIAL                                                    PLAINTIFFS_00020922

(i)    The Loan Documents will reflect accurately the understanding of the parties with respect to the matters contained in, and the rights and obligations of the parties under, such documents.

We have made reasonable inquiry of Borrower [and Guarantor] with respect to the above assumptions and, based on such inquiries, our review of the Loan Commitment and the Ancillary Documents, and our knowledge, nothing has come to our attention that leads us to believe that we are not justified in so assuming.

In rendering this opinion we have, with your approval, relied as to certain matters of fact on the Ancillary Documents, as set forth herein.  We have made reasonable inquiry of Borrower [and Guarantor] as to the accuracy and completeness of the Ancillary Documents and, based on such inquiries and our knowledge, nothing has come to our attention that leads us to believe that we are not justified in so relying thereon.

Based on the foregoing and subject to the assumptions and qualifications set forth in this letter, it is our opinion that:

1.    Based solely on the Borrower Good Standing Certificate[s], Borrower is a [type of entity], duly organized, validly existing and in good standing under the laws of _____ [, and is qualified to transact business as a foreign [name of entity] in [Mortgaged Property jurisdiction]. [*OR IF BORROWER IS A TRUST:* Borrower is [name of the type of trust] validly existing under the laws of [jurisdiction] [, and is qualified to transact business as a foreign entity in [Mortgaged Property jurisdiction]]]. [*OR IF BORROWER IS AN INDIVIDUAL:* [insert full name of Borrower as it appears in the Loan Documents] is the full, legal name of Borrower, and [he/she] is a resident of the State of [_____].]

2.    [Based solely on the Guarantor Good Standing Certificate, Guarantor is a [type of entity], duly organized, validly existing and in good standing under the laws of _____.] [*OR, IF GUARANTOR IS A TRUST:* Guarantor is [name of the type of trust] validly existing under the laws of [jurisdiction]]. [*OR, IF GUARANTOR IS AN INDIVIDUAL:* Guarantor is an individual resident in the State of _____.]]

3.    [*IF THE GENERAL PARTNER/MANAGING MEMBER OF ANY TYPE OF BORROWER IS AN ENTITY:* [Based solely on the [Manager/GP] Good Standing Certificate[s], the [general partner/managing member] of Borrower is a [type of entity], duly organized, validly existing and in good standing under the laws of _____ [and is qualified to transact business as a foreign _____ in [Mortgaged Property jurisdiction].]]

4.    Borrower has the [limited liability company/corporate/partnership/trust] authority to execute, deliver and perform its obligations under the Loan Documents. [*OR, IF*

CONFIDENTIAL                                                                    PLAINTIFFS_00020923

***BORROWER IS AN INDIVIDUAL:*** Borrower has the authority and legal capacity to execute, deliver and perform its obligations under the Loan Documents.]

5.    [Guarantor has the [limited liability company/corporate/partnership/trust] authority to execute, deliver and perform its obligations under the Guaranty. [***OR, IF GUARANTOR IS AN INDIVIDUAL***: Guarantor has the authority and legal capacity to execute, deliver and perform its obligations under the Guaranty.]]

6.    The execution and delivery of the Loan Documents by or on behalf of Borrower, and the consummation by Borrower of the transactions contemplated thereby, and the performance by Borrower of its obligations thereunder, have been duly and validly authorized by all necessary [limited liability company/corporate/partnership/trust] action by or on behalf of Borrower. [***OMIT PARAGRAPH IF BORROWER IS AN INDIVIDUAL***]

7.    [The execution and delivery of the Guaranty by or on behalf of Guarantor, and the consummation by Guarantor of the transactions contemplated thereby, and the performance by Guarantor of its obligations thereunder, have been duly and validly authorized by all necessary [limited liability company/corporate/partnership/trust] action by or on behalf of Guarantor. [***OMIT PARAGRAPH IF GUARANTOR IS AN INDIVIDUAL***]]

8.    Each of the Loan Documents has been duly executed and delivered by Borrower, and the individual[s] executing the Loan Documents on behalf of Borrower [has/have] the authority and legal capacity to do so. [***OR, IF BORROWER IS AN INDIVIDUAL:*** Each of the Loan Documents has been duly executed and delivered by Borrower.]

9.    [The Guaranty has been duly executed and delivered by Guarantor and the individual[s] executing the Guaranty on behalf of Guarantor [has/have] the authority and legal capacity to do so. [***OR, IF GUARANTOR IS AN INDIVIDUAL:*** The Guaranty has been duly executed and delivered by Guarantor.]]

***IF THE LOAN DOCUMENTS HAVE BEEN MODIFIED OTHER THAN BY A STANDARD SCHEDULE OR EXHIBIT AND AN ENFORCEABILITY OPINION IS REQUIRED, ADD THE FOLLOWING PARAGRAPH:***

10.    Each of the Loan Documents constitutes the valid and legally binding obligation of Borrower [and the Guaranty constitutes the valid and legally binding obligation of Guarantor], enforceable against [Borrower/such party] in accordance with its terms, subject to the following qualifications:

(i)    the effect of applicable bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and other similar laws affecting the rights of creditors generally;

CONFIDENTIAL                                                      PLAINTIFFS_00020924

(ii)     the effect of the exercise of judicial discretion in accordance with general principles of equity (whether applied by a court of law or of equity); and

(iii)     certain remedies, waivers, and other provisions of the Loan Documents [and Guaranty] may not be enforceable, but, subject to the qualifications set forth in the foregoing subparagraphs (i) and (ii), such unenforceability will not preclude (a) the enforcement of the obligation of Borrower to pay the principal, interest[, late charges, if any,] and prepayment premium, if any, as provided in the Loan Documents and (b) the foreclosure of the Security Instrument upon the event of a material breach.

11.     The execution and delivery of, and the performance of the obligations under, the Loan Documents by Borrower [and of the Guaranty by Guarantor], will not violate the Organizational Documents of Borrower [or Guarantor].

12.     Based solely upon (a) our knowledge, and (b) the Borrower's Certificate [and the Guarantor's Certificate], the execution and delivery of the Loan Documents by Borrower [and of the Guaranty by Guarantor] will not (i) cause Borrower [or Guarantor] to be in violation of, or constitute a material default under the provisions of any agreement to which Borrower [or Guarantor] is a party or by which Borrower [or Guarantor] is bound, (ii) conflict with, or result in the breach of, any court judgment, decree or order of any governmental body to which Borrower [or Guarantor] is subject, and (iii) result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of the property or assets of Borrower [or Guarantor] except as specifically contemplated by the Loan Documents [and Guaranty].

13.     Based solely upon (a) our knowledge, and (b) the Borrower's Certificate [and the Guarantor's Certificate], there is no litigation or other claim pending before any court or administrative or other governmental body or threatened against Borrower, the Mortgaged Property, or any other properties of Borrower [or Guarantor] [, except as identified on Exhibit D].

14.     Based solely on (a) our knowledge, and (b) the Borrower's Certificate [and the Guarantor's Certificate], no authorization, consent, approval, or other action by, or filing with, any [organizational and Mortgaged Property jurisdictions] or federal court or governmental authority is required in connection with the execution and delivery by Borrower of the Loan Documents [and by Guarantor of the Guaranty].

15.     Venue for any foreclosure proceeding under the Security Instrument may be had in [Mortgaged Property jurisdiction].  The laws of [Mortgaged Property jurisdiction] govern the interpretation and enforcement of the Loan Documents notwithstanding that Borrower may be formed in a jurisdiction other than [Mortgaged Property jurisdiction].  *IF BORROWER IS A TRUST, ADD:* Borrower can sue and be sued in [Mortgaged Property jurisdiction] without the necessity of joining any of the beneficiaries of Borrower, including without limitation, a suit on the Note or a foreclosure proceeding arising under the Security Instrument.  Borrower is an

CONFIDENTIAL                                                        PLAINTIFFS_00020925

irrevocable trust that has a term longer than the term of the Mortgage Loan and the term of the irrevocable trust is not affected by the terms of any of the beneficiaries' interests.]

We express no opinion as to the laws of any jurisdiction other than the laws of [the Mortgaged Property jurisdiction and the state of Borrower's organization [and Guarantor's state of organization] if it is not the same as the Mortgaged Property jurisdiction] and the laws of the United States of America. The opinions expressed above concern only the effect of the laws (excluding the principles of conflict of laws) of [the Mortgaged Property jurisdiction and, the state of Borrower's organization if it is not the same as the Mortgaged Property jurisdiction] and the United States of America as currently in effect. We assume no obligation to supplement this opinion if any applicable laws change after the date of this opinion, or if we become aware of any facts that might change the opinions expressed above after the date of this opinion.

We confirm that we do not have any financial interest in the Mortgaged Property or the Mortgage Loan, and that other than as counsel for Borrower [and Guarantor], we have no interest in Borrower [, Guarantor] or Lender and do not serve as [a director, officer or] [an] employee of Borrower [, Guarantor] or Lender. We have no undisclosed interest in the subject matters of this opinion.

The foregoing opinions are for the exclusive reliance by Lender, Fannie Mae and by any subsequent holder of the Note.

Very truly yours,

_____

[Authorized Signature]

| | | |
|---|---|---|
| **Opinion of Borrower's Counsel on Origination of Mortgage Loan [With Enforceability Opinion]** | Form 6401<br>08-13 | **Page 8**<br>© 2013 Fannie Mae |

CONFIDENTIAL

PLAINTIFFS_00020926

## LIST OF EXHIBITS

EXHIBIT A  -  Certificate of Borrower

EXHIBIT B  -  Organizational Documents of Borrower [, Guarantor and Managing Members/General Partners of Borrower]

EXHIBIT C  -  Certificates of Good Standing of Borrower [, Guarantor and Managing Members/General Partners of Borrower]

EXHIBIT D  -  List of Litigation

CONFIDENTIAL          PLAINTIFFS_00020927

## EXHIBIT A[-1]

### Certificate of Borrower

This Certificate of Borrower is made the _____ day of _____, _____, by _____ ("**Borrower**") for reliance upon by _____ ("**Borrower's Counsel**") in connection with the issuance of an opinion letter dated as of even date herewith (the "**Opinion Letter**") by Borrower's Counsel as a condition of settlement of the $_____ loan (the "**Mortgage Loan**") from [Lender] to Borrower. In connection with the Opinion Letter, Borrower hereby certifies to Borrower's Counsel for its reliance, the truth, accuracy and completeness of the following matters:

1.  The Organizational Documents (as defined in the Opinion Letter) are the only documents creating or governing the internal affairs of Borrower or authorizing the Mortgage Loan, and the Organizational Documents have not been amended or modified except as stated in the Opinion Letter.

2.  The terms and conditions of the Mortgage Loan as reflected in the Loan Documents (as defined in the Opinion Letter) have not been amended, modified or supplemented, directly or indirectly, by any other agreement or understanding of the parties or waiver of any of the material provisions of the Loan Documents.

3.  All tangible personal property of Borrower in which a security interest is granted under the Loan Documents (other than accounts or goods of a type normally used in more than one jurisdiction) is located at the Mortgaged Property (as defined in the Opinion Letter) and Borrower's [Chief Executive Office/only place of business/residence] is located in _____.

4.  No authorization, consent, approval, or other action by, or filing with, any [organizational and Mortgaged Property jurisdiction(s)] or federal court or governmental authority is required in connection with the execution and delivery by Borrower of the Loan Documents.

5.  The execution and delivery of the Loan Documents will not (i) cause Borrower to be in violation of, or constitute a material default under the provisions of any agreement to which Borrower is a party or by which Borrower is bound, (ii) conflict with, or result in the breach of, any court judgment, decree or order of any governmental body to which Borrower is subject, and (iii) result in the creation or imposition of any lien, charge, or encumbrance of any nature whatsoever upon any of the property or assets of Borrower, except as specifically contemplated by the Loan Documents.

CONFIDENTIAL                                              PLAINTIFFS_00020928

6.  There is no litigation or other claim pending before any court or administrative or other governmental body or threatened against Borrower, the Mortgaged Property, or any other properties of Borrower [, except as identified on <u>Exhibit D</u>, List of Litigation, in the Opinion Letter.]

**[Remainder of Page Intentionally Blank]**

CONFIDENTIAL                                                                    PLAINTIFFS_00020929

IN WITNESS WHEREOF, Borrower has executed this Certificate of Borrower effective as of the date set forth above.

BORROWER:

_____

_____

_____

_____

_____

CONFIDENTIAL                    PLAINTIFFS_00020930

## EXHIBIT A[-2]

### Certificate of Guarantor

This Certificate of Guarantor is made the _____ day of _____, _____, by _____ ("**Guarantor**") for reliance upon by _____ ("**Borrower's Counsel**") in connection with the issuance of an opinion letter dated as of even date herewith (the "**Opinion Letter**") by Borrower's Counsel as a condition of settlement of the $_____ loan (the "**Mortgage Loan**") from [Lender] to [Borrower]. In connection with the Opinion Letter, Guarantor hereby certifies to Borrower's Counsel for its reliance, the truth, accuracy and completeness of the following matters:

1. The Organizational Documents (as defined in the Opinion Letter) are the only documents creating or governing the internal affairs of Guarantor or authorizing the Mortgage Loan, and the Organizational Documents have not been amended or modified except as stated in the Opinion Letter.

2. The terms and conditions of the Guaranty (as defined in the Opinion Letter) have not been amended, modified or supplemented, directly or indirectly, by any other agreement or understanding of the parties or waiver of any of the material provisions of the Guaranty.

3. No authorization, consent, approval, or other action by, or filing with, any [organizational and Mortgaged Property jurisdiction(s)] or federal court or governmental authority is required in connection with the execution and delivery by Guarantor of the Guaranty.

4. The execution and delivery of the Guaranty will not (i) cause Guarantor to be in violation of, or constitute a material default under the provisions of any agreement to which Guarantor is a party or by which Guarantor is bound, (ii) conflict with, or result in the breach of, any court judgment, decree or order of any governmental body to which Guarantor is subject, and (iii) result in the creation or imposition of any lien, charge, or encumbrance of any nature whatsoever upon any of the property or assets of Guarantor, except as specifically contemplated by the Guaranty.

5. There is no litigation or other claim pending before any court or administrative or other governmental body or threatened against Guarantor or any properties of Guarantor [, except as identified on Exhibit D, List of Litigation, in the Opinion Letter.]

### [Remainder of Page Intentionally Blank]

**Opinion of Borrower's Counsel on Origination of Mortgage Loan [With Enforceability Opinion]**     **Form 6401**     **Page A-2-1**
                                                                **08-13**      **© 2013 Fannie Mae**

CONFIDENTIAL

IN WITNESS WHEREOF, Guarantor has executed this Certificate of Guarantor effective as of the date set forth above.

GUARANTOR:

_____

_____

_____

_____

_____

CONFIDENTIAL

**EXHIBIT B**

**Organizational Documents of Borrower [, Guarantor and Managing Members/General Partners of Borrower]**

[LIST ALL ORGANIZATIONAL DOCUMENTS OF PARTIES COVERED BY OPINION]

Opinion of Borrower's Counsel on Origination of
Mortgage Loan [With Enforceability Opinion]

Form 6401
08-13

Page B-1
© 2013 Fannie Mae

CONFIDENTIAL

PLAINTIFFS_00020933

**EXHIBIT C**

**Certificates of Good Standing of Borrower [, Guarantor and Managing Members/General Partners of Borrower]**

[ATTACH GOOD STANDING CERTIFICATES FOR PARTIES COVERED BY OPINION]

CONFIDENTIAL

**EXHIBIT D**

**List of Litigation**

[IF "NONE," SO STATE.]

**Opinion of Borrower's Counsel on Origination of
Mortgage Loan [With Enforceability Opinion]**

**Form 6401**
**08-13**

**Page D-1**
**© 2013 Fannie Mae**

CONFIDENTIAL

**EXHIBIT J**

**FORM OF SUBORDINATION AGREEMENT**

Forward Commitment/Unfunded MBS Rate Lock

CONFIDENTIAL

PLAINTIFFS_00020936

Prepared by, and after recording
return to:

PNC Bank, National Association
26901 Agoura Rd., Suite 200
Calabasas Hills, California 91301
PNC Loan No. 310401235
Fannie Mae No. [＿＿＿＿＿＿]

---

## SUBORDINATION AGREEMENT
## (Affordable)

### (Permanent Loan/AHFC Loan)

This SUBORDINATION AGREEMENT (this "**Agreement**") dated as of [＿＿＿＿＿＿＿＿, 20＿＿], is executed by and among (i) PNC BANK, NATIONAL ASSOCIATION, a national banking association (the "**Senior Lender**"), (ii) AUSTIN HOUSING FINANCE CORPORATION, a Texas public, non-profit corporation organized under Chapter 394 of the Texas Government Code (the "**Subordinate Lender**"), and (iii) 2013 TRAVIS OAK CREEK, LP, a Texas limited partnership (the "**Borrower**").

### RECITALS:

A.    Pursuant to that certain Multifamily Loan and Security Agreement dated as of the date hereof, executed by and between Borrower and Lender (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Senior Loan Agreement**"), Senior Lender has agreed to make a loan to Borrower in the original principal amount of [Twenty-Seven Million Three Hundred Thousand and 00/100 Dollars ($27,300,000)] (the "**Senior Loan**"), as evidenced by that certain Multifamily Note dated as of the date hereof, executed by Borrower and made payable to the order of Senior Lender in the amount of the Senior Loan (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Senior Note**").

B.    In addition to the Senior Loan Agreement, the Senior Loan and the Senior Note are also secured by a certain Multifamily Mortgage, Deed of Trust or Deed to Secure Debt dated as of the date hereof (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Senior Security Instrument**"), encumbering the property described in the Senior Security Instrument as the "**Mortgaged Property**."

C.    Borrower has requested Senior Lender to permit that certain subordinate loan in the amount of [Two Million and 00/100 U.S. Dollars ($2,000,000.00)] (the "**Subordinate Loan**") from Subordinate Lender to Borrower and to allow the Subordinate Loan to be secured by a mortgage lien against the Mortgaged Property.

| Subordination Agreement (Affordable) | Form 6456 | Page 1 |
|---|---|---|
| Fannie Mae | 08-13 | © 2013 Fannie Mae |

D.     Senior Lender has agreed to permit the Subordinate Loan and to allow the subordinate mortgage lien against the Mortgaged Property subject to all of the conditions contained in this Agreement.

## AGREEMENTS:

NOW, THEREFORE, in order to induce Senior Lender to permit the Subordinate Loan to Borrower and to allow a subordinate mortgage lien against the Mortgaged Property, and in consideration thereof, Senior Lender, Subordinate Lender and Borrower agree as follows:

**1.     Recitals.**

The recitals set forth above are incorporated herein by reference.

**2.     Definitions.**

In addition to the terms defined in the Recitals to this Agreement, for purposes of this Agreement the following terms have the respective meanings set forth below:

"**Affiliate**" means, when used with respect to a Person, any corporation, partnership, joint venture, limited liability company, limited liability partnership, trust or individual Controlled by, under common Control with, or which Controls such Person, and in all cases any other Person that holds fifty percent (50%) or more of the ownership interests in such Person.

"**Borrower**" means the Person named as such in the first paragraph on page 1 of this Agreement, any successor or assign of Borrower, including without limitation, a receiver, trustee or debtor-in-possession and any other Person (other than Senior Lender) who acquires title to the Mortgaged Property after the date of this Agreement.

"**Business Day**" means any day other than (a) a Saturday, (b) a Sunday, (c) a day on which Senior Lender is not open for business, or (d) a day on which the Federal Reserve Bank of New York is not open for business.

"**Condemnation Action**" means any action or proceeding, however characterized or named, relating to any condemnation or other taking, or conveyance in lieu thereof, of all or any part of the Mortgaged Property, whether direct or indirect.

"**Control**" (including with correlative meanings, the terms "Controlling," "Controlled by" and "under common Control with"), as applied to any entity, means the possession, directly or indirectly, of the power to direct or cause the direction of the management or operations of such entity, whether through the ownership of voting securities, ownership interests or by contract or otherwise.

"**Default Notice**" means: (a) a copy of any written notice from Senior Lender to Borrower and Subordinate Lender stating that a Senior Loan Default has occurred under the Senior Loan Documents; or (b) a copy of the written notice from Subordinate Lender to Borrower and Senior Lender stating that a Subordinate Loan Default has occurred under the Subordinate Loan

| Subordination Agreement (Affordable) | Form 6456 | Page 2 |
| Fannie Mae | 08-13 | © 2013 Fannie Mae |

Documents. Each Default Notice shall specify the default upon which such Default Notice is based.

"**Person**" means an individual, an estate, a trust, a corporation, a partnership, a limited liability company or any other organization or entity (whether governmental or private).

"**Senior Lender**" means the Person named as such in the first paragraph on Page 1 of this Agreement, its successors and assigns and any other Person who becomes the legal holder of the Senior Loan after the date of this Agreement.

"**Senior Loan Default**" means the occurrence of an "Event of Default" as that term is defined in the Senior Loan Documents.

"**Senior Loan Documents**" means the Senior Security Instrument, the Senior Note, the Senior Loan Agreement, and all other "Loan Documents" as that term is defined in the Senior Loan Agreement.

"**Subordinate Lender**" means the Person named as such in the first paragraph on page 1 of this Agreement, any successor or assign of Subordinate Lender, including without limitation, a receiver, trustee or debtor-in-possession and any other Person who becomes the legal holder of the Subordinate Note after the date of this Agreement.

"**Subordinate Loan Agreement**" means that certain Rental Housing Development Assistance Program Loan Agreement dated May [____], 2014, executed by Borrower and Subordinate Lender.

"**Subordinate Loan Default**" means a default by Borrower in performing or observing any of the terms, covenants or conditions in the Subordinate Loan Documents to be performed or observed by it, which continues beyond any applicable period provided in the Subordinate Loan Documents for curing the default.

"**Subordinate Loan Documents**" means the Subordinate Note, the Subordinate Mortgage, the Subordinate Loan Agreement and all other documents evidencing, securing or otherwise executed and delivered in connection with the Subordinate Loan.

"**Subordinate Mortgage**" means the Deed of Trust and Security Agreement and Fixture Filing dated May [____], 2014, executed by Borrower for the benefit of Subordinate Lender, and recorded in the Official Records of Travis County, Texas, on May [____], 2014 as Document No. [_____].

"**Subordinate Note**" means the Promissory Note dated as of May [____], 2014, made by Borrower to Subordinate Lender, or order, to evidence the Subordinate Loan.

**3.    Permission to Place Mortgage Lien Against Mortgaged Property.**

Senior Lender agrees, notwithstanding the prohibition against inferior liens on the Mortgaged Property contained in the Senior Loan Documents and subject to the provisions of

CONFIDENTIAL                                              PLAINTIFFS_00020939

this Agreement, to permit Subordinate Lender to record the Subordinate Mortgage and other recordable Subordinate Loan Documents against the Mortgaged Property to secure Borrower's obligation to repay the Subordinate Note and all other obligations, indebtedness and liabilities of Borrower to Subordinate Lender under and in connection with the Subordinate Loan.

**4.     Borrower's and Subordinate Lender's Representations and Warranties.**

Borrower and Subordinate Lender each makes the following representations and warranties to Senior Lender:

**(a)     Subordinate Loan Documents**.

The Subordinate Loan is evidenced by the Subordinate Note and is secured by the Subordinate Mortgage, the Subordinate Loan Agreement and the Subordinate Loan Documents.

**(b)     Subordinate Note.**

The Subordinate Note contains, or will be amended to contain, the following provision:

"The indebtedness evidenced by this Note is and shall be subordinate in right of payment to the prior payment in full of the indebtedness evidenced by a Multifamily Note (and any schedules) dated as of [_____, 20___] in the original principal amount of $[27,300,000], executed by Borrower and payable to the order of PNC Bank, National Association, a national banking association ("**Senior Lender**"), to the extent and in the manner provided in that certain Subordination Agreement dated as of [_____, 20___] between Borrower, Senior Lender, and the Austin Housing Finance Corporation (the "**Subordination Agreement**"). The Mortgage, Deed of Trust or Deed to Secure Debt (and any exhibits) securing this Note is and shall be subject and subordinate in all respects to the liens, terms, covenants and conditions of the Multifamily Mortgage, Deed of Trust or Deed to Secure Debt (and any exhibits) securing the Multifamily Note and the terms, covenants and conditions of the Multifamily Loan and Security Agreement evidencing the terms of the Multifamily Note, as more fully set forth in the Subordination Agreement. The rights and remedies of the payee and each subsequent holder of this Note under the Mortgage, Deed of Trust or Deed to Secure Debt (and any exhibits) securing this Note are subject to the restrictions and limitations set forth in the Subordination Agreement. Each subsequent holder of this Note shall be deemed, by virtue of such holder's acquisition of the Note, to have agreed to perform and observe all of the terms, covenants and conditions to be performed or observed by Subordinate Lender under the Subordination Agreement."

**(c)     Relationship of Borrower to Subordinate Lender and Senior Lender.**

Subordinate Lender is not an Affiliate of Borrower and is not in possession of any facts which would lead it to believe that Senior Lender is an Affiliate of Borrower.

CONFIDENTIAL                                          PLAINTIFFS_00020940

**(d)    Term.**

The term of the Subordinate Note does not end before the stated term of the Senior Note.

**(e)    Subordinate Loan Documents.**

The executed Subordinate Loan Documents are substantially in the same forms as those submitted to, and approved by, Senior Lender prior to the date of this Agreement.

**5.    Deliveries.**

Subordinate Lender shall submit the following items to Senior Lender the later of (a) ten (10) Business Days after the date on which the proceeds of the Subordinate Loan are disbursed to Borrower, and (b) the effective date of the Senior Loan Documents:

**(1)    Title Policy.**

A policy of title insurance insuring the lien of the Senior Security Instrument which insures that (A) there are no liens or other encumbrances affecting the Mortgaged Property, other than "Permitted Encumbrances" (as defined in the Senior Security Instrument), the Subordinate Mortgage, and other Subordinate Loan Documents filed or recorded against the Mortgaged Property, (B) the lien of the Subordinate Mortgage is subordinate to the lien of the Senior Security Instrument, and (C) this Agreement has been recorded among the applicable land records.

**(2)    Certification.**

A certification from Borrower and Subordinate Lender to Senior Lender that the Subordinate Loan Documents do not contain any changes from the Subordinate Loan Documents submitted to, and approved by, Senior Lender prior to the date of this Agreement.

**(3)    Subordinate Loan Documents.**

A complete set of the fully executed Subordinate Loan Documents, certified by Borrower to be true, correct and complete.

**(4)    Senior Loan Documents**.

An executed copy of each of the Senior Loan Documents, certified by Borrower to be true, correct and complete.

CONFIDENTIAL                                                   PLAINTIFFS_00020941

6.     **Terms of Subordination.**

(a)     **Agreement to Subordinate.**

Senior Lender and Subordinate Lender agree that (1) the indebtedness evidenced by the Subordinate Loan Documents is and shall be subordinated in right of payment, to the extent and in the manner provided in this Agreement, to the prior payment in full of the Indebtedness evidenced by the Senior Loan Documents, and (2) the liens, terms, covenants and conditions of the Subordinate Mortgage and the other Subordinate Loan Documents are and shall be subject and subordinate in all respects to the liens, terms, covenants and conditions of the Senior Security Instrument and the other Senior Loan Documents and to all advances heretofore made or which may hereafter be made pursuant to the Senior Security Instrument and the other Senior Loan Documents (including but not limited to, all sums advanced for the purposes of (A) protecting or further securing the lien of the Senior Security Instrument, curing defaults by Borrower under the Senior Loan Documents or for any other purpose expressly permitted by the Senior Loan Documents, or (B) constructing, renovating, repairing, furnishing, fixturing or equipping the Mortgaged Property).

(b)     **Subordination of Subrogation Rights.**

Subordinate Lender agrees that if, by reason of its payment of real estate taxes or other monetary obligations of Borrower, or by reason of its exercise of any other right or remedy under the Subordinate Loan Documents, it acquires by right of subrogation or otherwise a lien on the Mortgaged Property which (but for this subsection) would be senior to the lien of the Senior Security Instrument, then, in that event, such lien shall be subject and subordinate to the lien of the Senior Security Instrument.

(c)     **Payments Before Senior Loan Default.**

Until Subordinate Lender receives a Default Notice (or otherwise acquires actual knowledge) of a Senior Loan Default, Subordinate Lender shall be entitled to retain for its own account all payments made under or pursuant to the Subordinate Loan Documents.

(d)     **Payments After Senior Loan Default.**

Borrower agrees that, after it receives a Default Notice (or otherwise acquires knowledge) of a Senior Loan Default, it will not make any payments under or pursuant to the Subordinate Loan Documents (including but not limited to principal, interest, additional interest, late payment charges, default interest, attorneys' fees, or any other sums secured by the Subordinate Loan Documents) without Senior Lender's prior written consent. Subordinate Lender agrees that, after it receives a Default Notice from Senior Lender with written instructions directing Subordinate Lender not to accept payments from Borrower on account of the Subordinate Loan, it will not accept any payments under or pursuant to the Subordinate Loan Documents (including but not limited to principal, interest, additional interest, late payment charges, default interest, attorneys' fees, or any other sums secured by the Subordinate Loan Documents) without Senior Lender's prior written consent. If Subordinate Lender receives written notice from Senior Lender that the

CONFIDENTIAL                                              PLAINTIFFS_00020942

Senior Loan Default which gave rise to Subordinate Lender's obligation not to accept payments has been cured, waived, or otherwise suspended by Senior Lender, the restrictions on payment to Subordinate Lender in this Section 6 shall terminate, and Senior Lender shall have no right to any subsequent payments made to Subordinate Lender by Borrower prior to Subordinate Lender's receipt of a new Default Notice from Senior Lender in accordance with the provisions of this Section 6(d).

      (e)    **Remitting Subordinate Loan Payments to Senior Lender.**

If, after Subordinate Lender receives a Default Notice from Senior Lender in accordance with Section 6(d), Subordinate Lender receives any payments under the Subordinate Loan Documents, Subordinate Lender agrees that such payment or other distribution will be received and held in trust for Senior Lender and unless Senior Lender otherwise notifies Subordinate Lender in writing, will be promptly remitted, in kind to Senior Lender, properly endorsed to Senior Lender, to be applied to the principal of, interest on and other amounts due under the Senior Loan Documents in accordance with the provisions of the Senior Loan Documents. By executing this Agreement, Borrower specifically authorizes Subordinate Lender to endorse and remit any such payments to Senior Lender, and specifically waives any and all rights to have such payments returned to Borrower or credited against the Subordinate Loan. Borrower and Senior Lender acknowledge and agree that payments received by Subordinate Lender, and remitted to Senior Lender under this Section 6, shall not be applied or otherwise credited against the Subordinate Loan, nor shall the tender of such payment to Senior Lender waive any Subordinate Loan Default which may arise from the inability of Subordinate Lender to retain such payment or apply such payment to the Subordinate Loan.

      (f)    **Notice of Payment from Other Persons.**

Subordinate Lender agrees to notify (telephonically or via email, followed by written notice) Senior Lender of Subordinate Lender's receipt from any Person other than Borrower of a payment with respect to Borrower's obligations under the Subordinate Loan Documents, promptly after Subordinate Lender obtains knowledge of such payment.

      (g)    **Agreement Not to Commence Bankruptcy Proceeding.**

Subordinate Lender agrees that during the term of this Agreement it will not commence, or join with any other creditor in commencing any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings against or with respect to Borrower, without Senior Lender's prior written consent.

**7.    Default Under Subordinate Loan Documents.**

      (a)    **Notice of Subordinate Loan Default and Cure Rights.**

Subordinate Lender shall deliver to Senior Lender a Default Notice within five (5) Business Days in each case where Subordinate Lender has given a Default Notice to Borrower. Failure of Subordinate Lender to send a Default Notice to Senior Lender shall not prevent the

CONFIDENTIAL                              PLAINTIFFS_00020943

exercise of Subordinate Lender's rights and remedies under the Subordinate Loan Documents, subject to the provisions of this Agreement.  Senior Lender shall have the right, but not the obligation, to cure any Subordinate Loan Default within sixty (60) days following the date of such notice; provided, however that Subordinate Lender shall be entitled, during such sixty (60) day period, to continue to pursue its rights and remedies under the Subordinate Loan Documents. All amounts paid by Senior Lender in accordance with the Senior Loan Documents to cure a Subordinate Loan Default shall be deemed to have been advanced by Senior Lender pursuant to, and shall be secured by, the Senior Loan Agreement and the Senior Security Instrument.

**(b)     Subordinate Lender's Exercise of Remedies After Notice to Senior Lender.**

If a Subordinate Loan Default occurs and is continuing, Subordinate Lender agrees that, without Senior Lender's prior written consent, it will not commence foreclosure proceedings with respect to the Mortgaged Property under the Subordinate Loan Documents or exercise any other rights or remedies it may have under the Subordinate Loan Documents, including, but not limited to accelerating the Subordinate Loan (and enforcing any "due on sale" provision included in the Subordinate Loan Documents), collecting rents, appointing (or seeking the appointment of) a receiver or exercising any other rights or remedies thereunder unless and until it has given Senior Lender at least sixty (60) days prior written notice; during such sixty (60) day period, however, Subordinate Lender shall be entitled to exercise and enforce all other rights and remedies available to Subordinate Lender under the Subordinate Loan Documents and/or under applicable laws, including without limitation, rights to enforce covenants and agreements of Borrower relating to income, rent, or affordability restrictions contained in any land use restriction agreement.

**(c)     Cross Default.**

Borrower and Subordinate Lender agree that a Subordinate Loan Default shall constitute a Senior Loan Default under the Senior Loan Documents and Senior Lender shall have the right to exercise all rights or remedies under the Senior Loan Documents in the same manner as in the case of any other Senior Loan Default.  If Subordinate Lender notifies Senior Lender in writing that any Subordinate Loan Default of which Senior Lender has received a Default Notice has been cured or waived, as determined by Subordinate Lender in its sole discretion, then provided that Senior Lender has not conducted a sale of the Mortgaged Property pursuant to its rights under the Senior Loan Documents, any Senior Loan Default under the Senior Loan Documents arising solely from such Subordinate Loan Default shall be deemed cured, and the Senior Loan shall be reinstated, provided, however, that Senior Lender shall not be required to return or otherwise credit for the benefit of Borrower any default rate interest or other default related charges or payments received by Senior Lender during such Senior Loan Default.

CONFIDENTIAL                                                      PLAINTIFFS_00020944

8.    **Default Under Senior Loan Documents.**

(a)    **Notice of Senior Loan Default and Cure Rights.**

Senior Lender shall deliver to Subordinate Lender a Default Notice within five (5) Business Days in each case where Senior Lender has given a Default Notice to Borrower. Failure of Senior Lender to send a Default Notice to Subordinate Lender shall not prevent the exercise of Senior Lender's rights and remedies under the Senior Loan Documents, subject to the provisions of this Section 8(a), nor shall such failure constitute a default by Senior Lender under this Agreement. Subordinate Lender shall have the right, but not the obligation, to cure any such Senior Loan Default within sixty (60) days following the date of such Default Notice or the date on which Subordinate Lender otherwise acquires actual knowledge of Senior Loan Default; provided, however, that Senior Lender shall be entitled during such sixty (60) day period to continue to pursue its remedies under the Senior Loan Documents. Subordinate Lender may have up to ninety (90) days from the date of the Default Notice to cure a non-monetary default if during such ninety (90) day period Subordinate Lender keeps current all payments required by the Senior Loan Documents. In the event that such a non-monetary default creates an unacceptable level of risk relative to the Mortgaged Property, or Senior Lender's secured position relative to the Mortgaged Property, as determined by Senior Lender in its sole discretion, then Senior Lender may exercise during such ninety (90) day period all available rights and remedies to protect and preserve the Mortgaged Property and the rents, revenues and other proceeds from the Mortgaged Property. All amounts paid by Subordinate Lender to Senior Lender to cure a Senior Loan Default shall be deemed to have been advanced by Subordinate Lender pursuant to, and shall be secured by the Subordinate Loan Agreement and the Subordinate Mortgage.

(b)    **Cross Default.**

Subordinate Lender agrees that, notwithstanding any contrary provision contained in the Subordinate Loan Documents, a Senior Loan Default shall not constitute a default under the Subordinate Loan Documents (if no other default has occurred under the Subordinate Loan Documents) until either (1) Senior Lender has accelerated the maturity of the Senior Loan, or (2) Senior Lender has taken affirmative action to exercise its rights under the Senior Loan Documents to collect rent, to appoint (or seek the appointment of) a receiver or to foreclose on (or to exercise a power of sale contained in) the Senior Loan Documents. At any time after a Senior Loan Default is determined to constitute a default under the Subordinate Loan Documents, Subordinate Lender shall be permitted to pursue its remedies for default under the Subordinate Loan Documents, subject to the restrictions and limitations of this Agreement. If at any time Borrower cures any Senior Loan Default to the satisfaction of Senior Lender, as evidenced by written notice from Senior Lender to Subordinate Lender, any default under the Subordinate Loan Documents arising from such Senior Loan Default shall be deemed cured and the Subordinate Loan shall be retroactively reinstated as if such Senior Loan Default had never occurred.

CONFIDENTIAL                                          PLAINTIFFS_00020945

9.     **Conflict.**

Borrower, Senior Lender and Subordinate Lender each agrees that, in the event of any conflict or inconsistency between the terms of the Senior Loan Documents, the Subordinate Loan Documents and the terms of this Agreement, the terms of this Agreement shall govern and control solely as to the following: (a) the relative priority of the security interests of Senior Lender and Subordinate Lender in the Mortgaged Property; (b) the timing of the exercise of remedies by Senior Lender and Subordinate Lender under the Senior Loan Documents and the Subordinate Loan Documents, respectively; and (c) solely as between Senior Lender and Subordinate Lender, the notice requirements, cure rights, and the other rights and obligations which Senior Lender and Subordinate Lender have agreed to as expressly provided in this Agreement.  Borrower acknowledges that the terms and provisions of this Agreement shall not, and shall not be deemed to: extend Borrower's time to cure any Senior Loan Default or Subordinate Loan Default, as the case may be; give Borrower the right to notice of any Senior Loan Default or Subordinate Loan Default, as the case may be other than that, if any, provided, respectively under the Senior Loan Documents or the Subordinate Loan Documents; or create any other right or benefit for Borrower as against Senior Lender or Subordinate Lender.

10.    **Rights and Obligations of Subordinate Lender Under the Subordinate Loan Documents and of Senior Lender under the Senior Loan Documents.**

Subject to each of the other terms of this Agreement, all of the following provisions shall supersede any provisions of the Subordinate Loan Documents covering the same subject matter:

(a)    **Protection of Security Interest.**

Subordinate Lender shall not, without the prior written consent of Senior Lender in each instance, take any action which has the effect of increasing the indebtedness outstanding under, or secured by, the Subordinate Loan Documents, except that Subordinate Lender shall have the right to advance funds to cure Senior Loan Defaults pursuant to Section 8(a) and advance funds pursuant to the Subordinate Loan Documents for the purpose of paying real estate taxes and insurance premiums, making necessary repairs to the Mortgaged Property and curing other defaults by Borrower under the Subordinate Loan Documents.

(b)    **Condemnation or Casualty.**

Following the occurrence of (1) a Condemnation Action, or (2) a fire or other casualty resulting in damage to all or a portion of the Mortgaged Property (collectively, a "**Casualty**"), at any time or times when the Senior Security Instrument remains a lien on the Mortgaged Property the following provisions shall apply:

(A)    Subordinate Lender hereby agrees that its rights (under the Subordinate Loan Documents or otherwise) to participate in any proceeding or action relating to a Condemnation Action or a Casualty, or to participate or join in any settlement of, or to adjust, any claims resulting from a Condemnation Action or a Casualty shall be and remain subject and subordinate in all respects to Senior

CONFIDENTIAL                                                          PLAINTIFFS_00020946

Lender's rights under the Senior Loan Documents with respect thereto, and Subordinate Lender shall be bound by any settlement or adjustment of a claim resulting from a Condemnation Action or a Casualty made by Senior Lender; provided, however, this subsection or anything contained in this Agreement shall not limit the rights of Subordinate Lender to file any pleadings, documents, claims or notices with the appropriate court with jurisdiction over the proposed Condemnation Action or Casualty; and

(B)     all proceeds received or to be received on account of a Condemnation Action or a Casualty, or both, shall be applied (either to payment of the costs and expenses of repair and restoration or to payment of the Senior Loan) in the manner determined by Senior Lender in its sole discretion; provided, however, that if Senior Lender elects to apply such proceeds to payment of the principal of, interest on and other amounts payable under the Senior Loan, any proceeds remaining after the satisfaction in full of the principal of, interest on and other amounts payable under the Senior Loan shall be paid to, and may be applied by, Subordinate Lender in accordance with the applicable provisions of the Subordinate Loan Documents, provided however, Senior Lender agrees to consult with Subordinate Lender in determining the application of Casualty proceeds, provided further however that in the event of any disagreement between Senior Lender and Subordinate Lender over the application of Casualty proceeds, the decision of Senior Lender, in its sole discretion, shall prevail.

**(c)     Insurance.**

Subordinate Lender agrees that all original policies of insurance required pursuant to the Senior Security Instrument shall be held by Senior Lender.  The preceding sentence shall not preclude Subordinate Lender from requiring that it be named as a loss payee, as its interest may appear, under all policies of property damage insurance maintained by Borrower with respect to the Mortgaged Property, provided such action does not affect the priority of payment of the proceeds of property damage insurance under the Senior Security Instrument, or that it be named as an additional insured under all policies of liability insurance maintained by Borrower with respect to the Mortgaged Property.

**(d)     No Modification of Subordinate Loan Documents.**

Borrower and Subordinate Lender each agree that, until the principal of, interest on and all other amounts payable under the Senior Loan Documents have been paid in full, it will not, without the prior written consent of Senior Lender in each instance, increase the amount of the Subordinate Loan, increase the required payments due under the Subordinate Loan, decrease the term of the Subordinate Loan, increase the interest rate on the Subordinate Loan, or otherwise amend the Subordinate Loan terms in a manner that creates an adverse effect upon Senior Lender under the Senior Loan Documents.  Any unauthorized amendment of the Subordinate Loan Documents or assignment of Subordinate Lender's interest in the Subordinate Loan without Senior Lender's consent shall be void ab initio and of no effect whatsoever.

CONFIDENTIAL                                                PLAINTIFFS_00020947

**11.    Modification or Refinancing of Senior Loan.**

Subordinate Lender consents to any agreement or arrangement in which Senior Lender waives, postpones, extends, reduces or modifies any provisions of the Senior Loan Documents, including any provision requiring the payment of money. Subordinate Lender further agrees that its agreement to subordinate hereunder shall extend to any new mortgage debt which is for the purpose of refinancing all or any part of the Senior Loan (including reasonable and necessary costs associated with the closing and/or the refinancing); and that all the terms and covenants of this Agreement shall inure to the benefit of any holder of any such refinanced debt; and that all references to the Senior Loan, the Senior Note, the Senior Loan Agreement, the Senior Security Instrument, the Senior Loan Documents and Senior Lender shall mean, respectively, the refinance loan, the refinance note loan agreement, the mortgage securing the refinance note, all documents evidencing securing or otherwise pertaining to the refinance note and the holder of the refinance note.

**12.    Default by Subordinate Lender or Senior Lender.**

If Subordinate Lender or Senior Lender defaults in performing or observing any of the terms, covenants or conditions to be performed or observed by it under this Agreement, the other, non-defaulting lender shall have the right to all available legal and equitable relief.

**13.    Reinstatement.**

To the extent that Borrower makes a payment to Senior Lender or Senior Lender receives any payment or proceeds of the collateral securing the Senior Loan for Borrower's benefit, which payment or proceeds or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy law, state or federal law, common law or equitable doctrine, then to the extent of such payment or proceeds received and not retained by Senior Lender, this Agreement shall be reinstated and continue in full force and effect until full and final payment shall have been made to Senior Lender. Subordinate Lender agrees to hold in trust for Senior Lender and promptly remit to Senior Lender any payments received by Subordinate Lender after such invalidated, rescinded or returned payment was originally made.

**14.    Notices.**

**(a)    Process of Serving Notice.**

All notices under this Agreement shall be:

(1)    in writing and shall be:

(A)    delivered, in person;

(B)    mailed, postage prepaid, either by registered or certified delivery, return receipt requested;

CONFIDENTIAL                                                                    PLAINTIFFS_00020948