(C)     sent by overnight courier; or

          (D)     sent by electronic mail with originals to follow by overnight courier;

      (2)     addressed to the intended recipient at the address(es) below the signature block, as applicable; and

      (3)     deemed given on the earlier to occur of:

          (A)     the date when the notice is received by the addressee; or

          (B)     if the recipient refuses or rejects delivery, the date on which the notice is so refused or rejected, as conclusively established by the records of the United States Postal Service or any express courier service.

**(b)**    **Change of Address.**

Any party to this Agreement may change the address to which notices intended for it are to be directed by means of notice given to the other parties identified in this Agreement.

**(c)**    **Receipt of Notices.**

Senior Lender, Subordinate Lender or Borrower shall not refuse or reject delivery of any notice given in accordance with this Agreement. Each party is required to acknowledge, in writing, the receipt of any notice upon request by the other party.

**15.**    **General.**

**(a)**    **Assignment/Successors.**

This Agreement shall be binding upon Borrower, Senior Lender and Subordinate Lender and shall inure to the benefit of the respective legal successors, transferees and assigns of Borrower, Senior Lender and Subordinate Lender. Borrower shall not assign any of its rights and obligations under this Agreement without the prior written consent of Senior Lender.

**(b)**    **No Partnership or Joint Venture.**

Senior Lender's permission for the placement of the Subordinate Loan does not constitute Senior Lender as a joint venturer or partner of Subordinate Lender. Neither party hereto shall hold itself out as a partner, agent or Affiliate of the other party hereto.

**(c)**    **Senior Lender's and Subordinate Lender's Consent.**

Wherever Senior Lender's consent or approval is required by any provision of this Agreement, such consent or approval may be granted or denied by Senior Lender in its sole and absolute discretion, unless otherwise expressly provided in this Agreement. Wherever

CONFIDENTIAL                         PLAINTIFFS_00020949

Subordinate Lender's consent or approval is required by any provision of this Agreement, such consent or approval may be granted or denied by Subordinate Lender in its sole and absolute discretion, unless otherwise expressly provided in this Agreement.

**(d)     Further Assurances.**

Subordinate Lender, Senior Lender and Borrower each agrees, at Borrower's expense, to execute and deliver all additional instruments and/or documents reasonably required by any other party to this Agreement in order to evidence that the Subordinate Mortgage is subordinate to the lien, covenants and conditions of the Senior Loan Documents, or to further evidence the intent of this Agreement.

**(e)     Amendment.**

This Agreement shall not be amended except by written instrument signed by all parties hereto.

**(f)     Governing Law.**

This Agreement shall be governed by the laws of the jurisdiction in which the Mortgaged Property is located without giving effect to any choice of law provisions thereof that would result in the application of the laws of another jurisdiction. Senior Lender, Subordinate Lender and Borrower agree that any controversy arising under or in relation to this Security Instrument shall be litigated exclusively in the jurisdiction in which the Mortgaged Property is located. The state and federal courts and authorities with jurisdiction in such locale shall have exclusive jurisdiction over all controversies that arise under or in relation to this Agreement. The parties hereto irrevocably consent to service, jurisdiction, and venue of such courts for any such litigation and waive any other venue to which any might be entitled by virtue of domicile, habitual residence or otherwise.

**(g)     Severable Provisions.**

If any provision of this Agreement shall be invalid or unenforceable to any extent, then the other provisions of this Agreement, shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

**(h)     Term.**

The term of this Agreement shall commence on the date hereof and shall continue until the earliest to occur of the following events: (1) the payment in full of the principal of, interest on and other amounts payable under the Senior Loan Documents; (2) the payment in full of the principal of, interest on and other amounts payable under the Subordinate Loan Documents, other than by reason of payments which Subordinate Lender is obligated to remit to Senior Lender pursuant to Section 6 hereof; (3) the acquisition by Senior Lender of title to the Mortgaged Property pursuant to a foreclosure or a deed in lieu of foreclosure of, or the exercise of a power of sale contained in, the Senior Loan Documents; or (4) the acquisition by Subordinate Lender of

CONFIDENTIAL                                                                    PLAINTIFFS_00020950

title to the Mortgaged Property pursuant to a foreclosure or a deed in lieu of foreclosure of, or the exercise of a power of sale contained in, the Subordinate Loan Documents, but only if such acquisition of title does not violate any of the terms of this Agreement.

**(i)      Counterparts.**

This Agreement may be executed in any number of counterparts, each of which shall be considered an original for all purposes; provided, however, that all such counterparts shall together constitute one (1) and the same instrument.

**(j)      Sale of Senior Loan.**

Nothing in this Agreement shall limit Senior Lender's (including any assignee or transferee of Senior Lender) right to sell or transfer the Senior Loan, or any interest in the Senior Loan. The Senior Loan or a partial interest in the Senior Loan (together with this Agreement and the other Loan Documents) may be sold one or more times without prior notice to Borrower.

**[Remainder of Page Intentionally Blank]**

CONFIDENTIAL            PLAINTIFFS_00020951

**IN WITNESS WHEREOF**, Borrower, Senior Lender and Subordinate Lender have signed and delivered this Agreement under seal (where applicable) or have caused this Agreement to be signed and delivered under seal (where applicable) by a duly authorized representative.   Where applicable law so provides, Borrower, Senior Lender and Subordinate Lender intend that this Agreement shall be deemed to be signed and delivered as a sealed instrument.

**SENIOR LENDER:**

PNC BANK, NATIONAL ASSOCIATION,
a national banking association

By: _____
Name: Kelli A. Tyler
Title:   Vice President

Address:        26901 Agoura Road, Suite 200
                Calabasas Hills, California 91301

                With a copy to:
                Fannie Mae
                Attention:   Multifamily Operations -
                Asset Management
                Drawer AM
                3900 Wisconsin Avenue, N.W.
                Washington, DC  20016

**[SIGNATURES CONTINUED ON NEXT PAGE]**

CONFIDENTIAL                                                    PLAINTIFFS_00020952

**SUBORDINATE LENDER:**

AUSTIN HOUSING FINANCE CORPORATION,
a Texas public, non-profit corporation

By:     _____
Name:   Bert Lumbreras
Title:  Authorized Representative

Address:        1000 East 11th Street, 2nd Floor
                Austin, Travis County, Texas 78702


**[SIGNATURES CONTINUED ON NEXT PAGE]**

CONFIDENTIAL                                          PLAINTIFFS_00020953

**BORROWER:**

2013 TRAVIS OAK CREEK, LP,
a Texas limited partnership

By:    2013 Travis Oak Creek GP, LLC,
       a Texas limited liability company,
       its general partner

       By:   _____

            Rene Campos,
            Manager

Address:   3001 Knox Street, Suite 400
           Dallas, Texas 75205

CONFIDENTIAL PLAINTIFFS_00020954

## ACKNOWLEDGEMENT

STATE OF CALIFORNIA                          )
                                             ) SS
COUNTY OF _____ )

    On _____, 20___, before me, _____,
Notary Public, personally appeared _____, who proved to me on the
basis of satisfactory evidence to be the person whose name is subscribed to the within instrument
and acknowledged to me that she executed the same in his/her/their authorized capacity(ies), and
that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

    I certify under PENALTY OF PERJURY under the laws of the State of California that
the foregoing paragraph is true and correct.

    WITNESS my hand and official seal.


Signature        _____

                                                              (SEAL)


**Subordination Agreement (Affordable)**   **Form 6456**               **© 2013 Fannie Mae**
**Fannie Mae**                             **08-13**

ACKNOWLEDGMENT

STATE OF TEXAS

COUNTY OF _____

This instrument was acknowledged before me on _____, 20___, by **BERT LUMBRERAS** as Authorized Representative of Austin Housing Finance Corporation, a Texas public, non-profit corporation on behalf of the corporation.

_____
Notary Public's Signature

(Personalized Seal)

Subordination Agreement (Affordable)          Form 6456
Fannie Mae                                     08-13                        © 2013 Fannie Mae

ACKNOWLEDGMENT

STATE OF TEXAS

COUNTY OF _____

This instrument was acknowledged before me on _____, 20___, by **RENE CAMPOS** as Manager of 2013 Travis Oak GP, LLC, a Texas limited liability company, General Partner of 2013 Travis Oak Creek, LP, a Texas limited partnership, on behalf of the limited partnership.


_____
Notary Public's Signature


(Personalized Seal)

**Subordination Agreement (Affordable)**         Form 6456
**Fannie Mae**                                    08-13                    © 2013 Fannie Mae

## EXHIBIT A

### LEGAL DESCRIPTION OF THE MORTGAGED PROPERTY(LOT 1A)

LEGAL DESCRIPTION OF A 3.879 ACRE (168,990 SQUARE FEET) TRACT OR PARCEL OF LAND OUT OF THE ISSAC DECKER SURVEY, LOCATED IN THE CITY OF AUSTIN, AND BEING ALL OF LOT 1A, RESUBDIVISION OF LOT 1 OAK CREEK VILLAGE, AS RECORDED IN DOC. 201400101 OF THE OFFICIAL PUBLIC RECORDS, TRAVIS COUNTY, TEXAS, SAID OAK CREEK VILLAGE BEING A SUBDVISION RECORDED IN BOOK 50, PAGE 11, PLAT RECORDS, TRAVIS COUNTY, TEXAS, AND CONVEYED TO OAK CREEK AUSTIN HOUSING, INC. BY SPECIAL WARRANTY DEED IN DOC. 2007116822 OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, SAID 3.879 ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AND THE ACCOMPANYING SKETCH AS FOLLOWS:

**BEGINNING** at a ½-inch iron rod found with cap on the northwest right-of-way (R.O.W. ) line of Wilson Street (60-foot R.O.W.) at the east corner of Lot C, of the "Resubdivision of a Portion of Lot 16, Live Oak Grove", as recorded in Doc. 199900381, Official Public Records, Travis County, Texas (O.P.R.T.C.T), same being the south corner of said Lot 1A, and said Lot 1, Oak Creek Village, for the south corner and **POINT OF BEGINNING** of the herein described tract, from which a ½" iron rod with cap found at the south corner of Lot "B" of said Live Oak Grove Resubdivision bears S26°39'56"W a distance of 100.17 feet;

**THENCE, N62°40'33"W**, with the southwest line of said Lot 1A, same being the southwest line of said Lot 1, Oak Creek Village, passing a ½" iron rod found at a distance of 158.19', offset 0.40 feet left (south) at the north corner of said Lot C, same being a point in the most northerly line of a 2-foot strip of land conveyed to the C.O.A. in Volume 3834, Page 1414, Deed Records, Travis County, Texas, (D.R.T.C.T.), said strip lying adjacent to a 18-foot City of Austin alley conveyed in Volume 3451, Page 2224, D.R.T.C.T., and continuing with the north line of said 2-foot strip for **a total distance of 354.58 feet** to a ½" iron rod set with cap labeled "P Flugel 5096" for a west corner of this tract;

**THENCE,** with the common lot line between said Lot 1A, and Lot 1B, of said Resubdivision of Lot 1, Oak Creek Village, for the following eleven (11) courses:

1) **N26°39'57"E a distance of 26.40 feet** to a ½" iron rod set with cap labeled "P Flugel 5096" for an ell corner of this tract;

2) **S63°20'03"E a distance of 92.90 feet** to a ½" iron rod set with cap labeled "P Flugel 5096" for an ell corner of this tract;

3) **N26°39'57"E a distance of 47.50 feet** to a ½" iron rod set with cap labeled "P Flugel 5096" for an ell corner of this tract;

4) **N63°20'03"W a distance of 10.50 feet** to a ½" iron rod set cap labeled "P Flugel 5096" for an ell corner of this tract;

CONFIDENTIAL                                                    PLAINTIFFS_00020958

**5) N26°39'57"E a distance of 5.00 feet** to calculated point for an ell corner of this tract;

**6) S63°20'03"E a distance of 10.50 feet** to calculated point for an ell corner of this tract;

**7) N26°39'57"E a distance of 288.09 feet** to a MAG NAIL set for an ell corner of this tract;

**8) N63°20'03"W a distance of 10.50 feet** to a MAG NAIL set for an ell corner of this tract;

**9) N26°39'57"E a distance of 5.00 feet** to a MAG NAIL set for an ell corner of this tract;

**10) S63°20'03"E a distance of 10.50 feet** to a MAG NAIL set for an ell corner of this tract;

**11) N26°39'57"E a distance of 263.10 feet** to a ½" iron rod set with cap labeled "P Flugel 5096" in the north line of said Lot 1, Oak Creek Village, same being the north corner of this tract and the east corner of said Lot 1B; same also being a point in the south line of Lot 5A, Amended Plat of Lots 5, 6, and 7, Shelton's Subdivision, as recorded in Volume 87, Page 12D, Plat Records, Travis County, Texas,

**THENCE**, with the southerly line of said Lot 5A, and the southerly line of Shelton's Subdivision, as recorded in Book 4, Page 163, P.R.T.C.T, same being the northerly line of said Oak Creek Village Lot 1 and this tract, **S62°38'45"E a distance of 261.49 feet** to a ½" iron rod found in the northwest R.O.W. line of said Wilson Street, at the south corner of Lot 1, of said Shelton's Subdivision for the east corner of this tract;

**THENCE**, with said northwest line of said Wilson Street, **S26°38'55"W a distance of 636.02 feet** to the **POINT OF BEGINNING** and containing **3.879 acres** (or 168,990 square feet) of land, more or less.

The bearings described herein are based on NAD'83 state plane coordinates, Texas Central (4203) zone.

**As Prepared by**
**Flugel Land Surveying**
Firm Registration No. 10193837

CONFIDENTIAL                                                PLAINTIFFS_00020959

Prepared by, and after recording
return to:

PNC Bank, National Association
26901 Agoura Rd., Suite 200
Calabasas Hills, California 91301
PNC Loan No. 310401235
Fannie Mae No. [_____]

---

## SUBORDINATION AGREEMENT
### (Affordable)

### (Permanent Loan/Seller Loan)

This SUBORDINATION AGREEMENT (this "**Agreement**") dated as of
[_____, 20___], is executed by and among (i) PNC BANK, NATIONAL
ASSOCIATION, a national banking association (the "**Senior Lender**"), (ii) 2007 TRAVIS
HEIGHTS, LP, a Texas limited partnership (the "**Subordinate Lender**"), and (iii) 2013 TRAVIS
OAK CREEK, LP, a Texas limited partnership (the "**Borrower**").

### <u>RECITALS</u>:

A.      Pursuant to that certain Multifamily Loan and Security Agreement dated as of the
date hereof, executed by and between Borrower and Lender (as amended, restated, replaced,
supplemented or otherwise modified from time to time, the "**Senior Loan Agreement**"), Senior
Lender has agreed to make a loan to Borrower in the original principal amount of [Twenty-Seven
Million Three Hundred Thousand and 00/100 Dollars ($27,300,000)] (the "**Senior Loan**"), as
evidenced by that certain Multifamily Note dated as of the date hereof, executed by Borrower and
made payable to the order of Senior Lender in the amount of the Senior Loan (as amended,
restated, replaced, supplemented or otherwise modified from time to time, the "**Senior Note**").

B.      In addition to the Senior Loan Agreement, the Senior Loan and the Senior Note
are also secured by a certain Multifamily Mortgage, Deed of Trust or Deed to Secure Debt dated
as of the date hereof (as amended, restated, replaced, supplemented or otherwise modified from
time to time, the "**Senior Security Instrument**"), encumbering the property described in the
Senior Security Instrument as the "**Mortgaged Property**."

C.      Borrower has requested Senior Lender to permit that certain subordinate loan in
the amount of [Seven Million Three Hundred Thirty Thousand and 00/100 Dollars
($7,330,000.00)] (the "**Subordinate Loan**") from Subordinate Lender to Borrower and to allow
the Subordinate Loan to be secured by a mortgage lien against the Mortgaged Property.

---

CONFIDENTIAL                                    PLAINTIFFS_00020960

D.      Senior Lender has agreed to permit the Subordinate Loan and to allow the subordinate mortgage lien against the Mortgaged Property subject to all of the conditions contained in this Agreement.

## AGREEMENTS:

NOW, THEREFORE, in order to induce Senior Lender to permit the Subordinate Loan to Borrower and to allow a subordinate mortgage lien against the Mortgaged Property, and in consideration thereof, Senior Lender, Subordinate Lender and Borrower agree as follows:

**1.      Recitals.**

The recitals set forth above are incorporated herein by reference.

**2.      Definitions.**

In addition to the terms defined in the Recitals to this Agreement, for purposes of this Agreement the following terms have the respective meanings set forth below:

"**Affiliate**" means, when used with respect to a Person, any corporation, partnership, joint venture, limited liability company, limited liability partnership, trust or individual Controlled by, under common Control with, or which Controls such Person, and in all cases any other Person that holds fifty percent (50%) or more of the ownership interests in such Person.

"**Borrower**" means the Person named as such in the first paragraph on page 1 of this Agreement, any successor or assign of Borrower, including without limitation, a receiver, trustee or debtor-in-possession and any other Person (other than Senior Lender) who acquires title to the Mortgaged Property after the date of this Agreement.

"**Business Day**" means any day other than (a) a Saturday, (b) a Sunday, (c) a day on which Senior Lender is not open for business, or (d) a day on which the Federal Reserve Bank of New York is not open for business.

"**Condemnation Action**" means any action or proceeding, however characterized or named, relating to any condemnation or other taking, or conveyance in lieu thereof, of all or any part of the Mortgaged Property, whether direct or indirect.

"**Control**" (including with correlative meanings, the terms "Controlling," "Controlled by" and "under common Control with"), as applied to any entity, means the possession, directly or indirectly, of the power to direct or cause the direction of the management or operations of such entity, whether through the ownership of voting securities, ownership interests or by contract or otherwise.

"**Default Notice**" means: (a) a copy of any written notice from Senior Lender to Borrower and Subordinate Lender stating that a Senior Loan Default has occurred under the Senior Loan Documents; or (b) a copy of the written notice from Subordinate Lender to Borrower and Senior Lender stating that a Subordinate Loan Default has occurred under the Subordinate Loan

| Subordination Agreement (Affordable) | Form 6456 | Page 2 |
|---|---|---|
| Fannie Mae | 08-13 | © 2013 Fannie Mae |

CONFIDENTIAL

Documents. Each Default Notice shall specify the default upon which such Default Notice is based.

"**Person**" means an individual, an estate, a trust, a corporation, a partnership, a limited liability company or any other organization or entity (whether governmental or private).

"**Senior Lender**" means the Person named as such in the first paragraph on Page 1 of this Agreement, its successors and assigns and any other Person who becomes the legal holder of the Senior Loan after the date of this Agreement.

"**Senior Loan Default**" means the occurrence of an "Event of Default" as that term is defined in the Senior Loan Documents.

"**Senior Loan Documents**" means the Senior Security Instrument, the Senior Note, the Senior Loan Agreement, and all other "Loan Documents" as that term is defined in the Senior Loan Agreement.

"**Subordinate Lender**" means the Person named as such in the first paragraph on page 1 of this Agreement, any successor or assign of Subordinate Lender, including without limitation, a receiver, trustee or debtor-in-possession and any other Person who becomes the legal holder of the Subordinate Note after the date of this Agreement.

"**Subordinate Loan Default**" means a default by Borrower in performing or observing any of the terms, covenants or conditions in the Subordinate Loan Documents to be performed or observed by it, which continues beyond any applicable period provided in the Subordinate Loan Documents for curing the default.

"**Subordinate Loan Documents**" means the Subordinate Note, the Subordinate Mortgage and any and all other documents evidencing, securing or otherwise executed and delivered in connection with the Subordinate Loan.

"**Subordinate Mortgage**" means the Third Lien Deed of Trust, Mortgage and Security Agreement dated as of May [___], 2014, executed by Borrower for the benefit of Subordinate Lender, and recorded in the Official Records of Travis County, Texas, on May [___], 2014 as Document No. [_____].

"**Subordinate Note**" means the Promissory Note dated May [___], 2014, made by Borrower to Subordinate Lender, or order, to evidence the Subordinate Loan.

3.      **Permission to Place Mortgage Lien Against Mortgaged Property.**

Senior Lender agrees, notwithstanding the prohibition against inferior liens on the Mortgaged Property contained in the Senior Loan Documents and subject to the provisions of this Agreement, to permit Subordinate Lender to record the Subordinate Mortgage and other recordable Subordinate Loan Documents against the Mortgaged Property to secure Borrower's

CONFIDENTIAL                                              PLAINTIFFS_00020962

obligation to repay the Subordinate Note and all other obligations, indebtedness and liabilities of Borrower to Subordinate Lender under and in connection with the Subordinate Loan.

**4. Borrower's and Subordinate Lender's Representations and Warranties.**

Borrower and Subordinate Lender each makes the following representations and warranties to Senior Lender:

**(a) Subordinate Loan Documents.**

The Subordinate Loan is evidenced by the Subordinate Note and is secured by the Subordinate Mortgage and the Subordinate Loan Documents.

**(b) Subordinate Note.**

The Subordinate Note contains, or will be amended to contain, the following provision:

"The indebtedness evidenced by this Note is and shall be subordinate in right of payment to the prior payment in full of the indebtedness evidenced by a Multifamily Note (and any schedules) dated as of [_____, 20____] in the original principal amount of $[27,300,000], executed by Maker and payable to the order of PNC Bank, National Association, a national banking association ("**Senior Lender**"), to the extent and in the manner provided in that certain Subordination Agreement dated as of [_____, 20____] between Maker, Payee and Senior Lender (the "**Subordination Agreement**"). The Mortgage, Deed of Trust or Deed to Secure Debt (and any exhibits) securing this Note is and shall be subject and subordinate in all respects to the liens, terms, covenants and conditions of the Multifamily Mortgage, Deed of Trust or Deed to Secure Debt (and any exhibits) securing the Multifamily Note and the terms, covenants and conditions of the Multifamily Loan and Security Agreement evidencing the terms of the Multifamily Note, as more fully set forth in the Subordination Agreement. The rights and remedies of the payee and each subsequent holder of this Note under the Mortgage, Deed of Trust or Deed to Secure Debt (and any exhibits) securing this Note are subject to the restrictions and limitations set forth in the Subordination Agreement. Each subsequent holder of this Note shall be deemed, by virtue of such holder's acquisition of the Note, to have agreed to perform and observe all of the terms, covenants and conditions to be performed or observed by Subordinate Lender under the Subordination Agreement."

**(c) Relationship of Borrower to Subordinate Lender and Senior Lender.**

Subordinate Lender is not an Affiliate of Borrower and is not in possession of any facts which would lead it to believe that Senior Lender is an Affiliate of Borrower.

**(d) Term.**

The term of the Subordinate Note does not end before the stated term of the Senior Note.

CONFIDENTIAL PLAINTIFFS_00020963

**(e)** **Subordinate Loan Documents.**

The executed Subordinate Loan Documents are substantially in the same forms as those submitted to, and approved by, Senior Lender prior to the date of this Agreement.

**5.** **Deliveries.**

Borrower and/or Subordinate Lender, as applicable, shall submit the following items to Senior Lender the later of (a) ten (10) Business Days after the date on which the proceeds of the Subordinate Loan are disbursed to Borrower, and (b) the effective date of the Senior Loan Documents:

**(1)** **Title Policy.**

A policy of title insurance insuring the lien of the Senior Security Instrument which insures that (A) there are no liens or other encumbrances affecting the Mortgaged Property, other than "Permitted Encumbrances" (as defined in the Senior Security Instrument), the Subordinate Mortgage, and other Subordinate Loan Documents filed or recorded against the Mortgaged Property, (B) the lien of the Subordinate Mortgage is subordinate to the lien of the Senior Security Instrument, and (C) this Agreement has been recorded among the applicable land records.

**(2)** **Certification.**

A certification from Borrower and Subordinate Lender to Senior Lender that the Subordinate Loan Documents do not contain any changes from the Subordinate Loan Documents submitted to, and approved by, Senior Lender prior to the date of this Agreement.

**(3)** **Subordinate Loan Documents.**

A complete set of the fully executed Subordinate Loan Documents, certified by Borrower to be true, correct and complete.

**(4)** **Senior Loan Documents**.

An executed copy of each of the Senior Loan Documents, certified by Borrower to be true, correct and complete.

**6.** **Terms of Subordination.**

**(a)** **Agreement to Subordinate.**

Senior Lender and Subordinate Lender agree that (1) the indebtedness evidenced by the Subordinate Loan Documents is and shall be subordinated in right of payment, to the extent and in the manner provided in this Agreement, to the prior payment in full of the Indebtedness evidenced by the Senior Loan Documents, and (2) the liens, terms, covenants and conditions of

CONFIDENTIAL                                         PLAINTIFFS_00020964

the Subordinate Mortgage and the other Subordinate Loan Documents are and shall be subject and subordinate in all respects to the liens, terms, covenants and conditions of the Senior Security Instrument and the other Senior Loan Documents and to all advances heretofore made or which may hereafter be made pursuant to the Senior Security Instrument and the other Senior Loan Documents (including but not limited to, all sums advanced for the purposes of (A) protecting or further securing the lien of the Senior Security Instrument, curing defaults by Borrower under the Senior Loan Documents or for any other purpose expressly permitted by the Senior Loan Documents, or (B) constructing, renovating, repairing, furnishing, fixturing or equipping the Mortgaged Property).

**(b)** **Subordination of Subrogation Rights.**

Subordinate Lender agrees that if, by reason of its payment of real estate taxes or other monetary obligations of Borrower, or by reason of its exercise of any other right or remedy under the Subordinate Loan Documents, it acquires by right of subrogation or otherwise a lien on the Mortgaged Property which (but for this subsection) would be senior to the lien of the Senior Security Instrument, then, in that event, such lien shall be subject and subordinate to the lien of the Senior Security Instrument.

**(c)** **Payments Before Senior Loan Default.**

Until Subordinate Lender receives a Default Notice (or otherwise acquires actual knowledge) of a Senior Loan Default, Subordinate Lender shall be entitled to retain for its own account all payments made under or pursuant to the Subordinate Loan Documents.

**(d)** **Payments After Senior Loan Default.**

Borrower agrees that, after it receives a Default Notice (or otherwise acquires knowledge) of a Senior Loan Default, it will not make any payments under or pursuant to the Subordinate Loan Documents (including but not limited to principal, interest, additional interest, late payment charges, default interest, attorneys' fees, or any other sums secured by the Subordinate Loan Documents) without Senior Lender's prior written consent. Subordinate Lender agrees that, after it receives a Default Notice from Senior Lender with written instructions directing Subordinate Lender not to accept payments from Borrower on account of the Subordinate Loan, it will not accept any payments under or pursuant to the Subordinate Loan Documents (including but not limited to principal, interest, additional interest, late payment charges, default interest, attorneys' fees, or any other sums secured by the Subordinate Loan Documents) without Senior Lender's prior written consent. If Subordinate Lender receives written notice from Senior Lender that the Senior Loan Default which gave rise to Subordinate Lender's obligation not to accept payments has been cured, waived, or otherwise suspended by Senior Lender, the restrictions on payment to Subordinate Lender in this Section 6 shall terminate, and Senior Lender shall have no right to any subsequent payments made to Subordinate Lender by Borrower prior to Subordinate Lender's receipt of a new Default Notice from Senior Lender in accordance with the provisions of this Section 6(d).

CONFIDENTIAL                                              PLAINTIFFS_00020965

(e)    **Remitting Subordinate Loan Payments to Senior Lender.**

If, after Subordinate Lender receives a Default Notice from Senior Lender in accordance with Section 6(d), Subordinate Lender receives any payments under the Subordinate Loan Documents, Subordinate Lender agrees that such payment or other distribution will be received and held in trust for Senior Lender and unless Senior Lender otherwise notifies Subordinate Lender in writing, will be promptly remitted, in kind to Senior Lender, properly endorsed to Senior Lender, to be applied to the principal of, interest on and other amounts due under the Senior Loan Documents in accordance with the provisions of the Senior Loan Documents. By executing this Agreement, Borrower specifically authorizes Subordinate Lender to endorse and remit any such payments to Senior Lender, and specifically waives any and all rights to have such payments returned to Borrower or credited against the Subordinate Loan. Borrower and Senior Lender acknowledge and agree that payments received by Subordinate Lender, and remitted to Senior Lender under this Section 6, shall not be applied or otherwise credited against the Subordinate Loan, nor shall the tender of such payment to Senior Lender waive any Subordinate Loan Default which may arise from the inability of Subordinate Lender to retain such payment or apply such payment to the Subordinate Loan.

(f)    **Notice of Payment from Other Persons.**

Subordinate Lender agrees to notify (telephonically or via email, followed by written notice) Senior Lender of Subordinate Lender's receipt from any Person other than Borrower of a payment with respect to Borrower's obligations under the Subordinate Loan Documents, promptly after Subordinate Lender obtains knowledge of such payment.

(g)    **Agreement Not to Commence Bankruptcy Proceeding.**

Subordinate Lender agrees that during the term of this Agreement it will not commence, or join with any other creditor in commencing any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings against or with respect to Borrower, without Senior Lender's prior written consent.

7.    **Default Under Subordinate Loan Documents.**

(a)    **Notice of Subordinate Loan Default and Cure Rights.**

Subordinate Lender shall deliver to Senior Lender a Default Notice within five (5) Business Days in each case where Subordinate Lender has given a Default Notice to Borrower. Failure of Subordinate Lender to send a Default Notice to Senior Lender shall not prevent the exercise of Subordinate Lender's rights and remedies under the Subordinate Loan Documents, subject to the provisions of this Agreement. Senior Lender shall have the right, but not the obligation, to cure any Subordinate Loan Default within sixty (60) days following the date of such notice; provided, however that Subordinate Lender shall be entitled, during such sixty (60) day period, to continue to pursue its rights and remedies under the Subordinate Loan Documents. All amounts paid by Senior Lender in accordance with the Senior Loan Documents to cure a Subordinate Loan Default shall be deemed to have been advanced by Senior Lender

CONFIDENTIAL     PLAINTIFFS_00020966

pursuant to, and shall be secured by, the Senior Loan Agreement and the Senior Security Instrument.

**(b)    Subordinate Lender's Exercise of Remedies After Notice to Senior Lender.**

If a Subordinate Loan Default occurs and is continuing, Subordinate Lender agrees that, without Senior Lender's prior written consent, it will not commence foreclosure proceedings with respect to the Mortgaged Property under the Subordinate Loan Documents or exercise any other rights or remedies it may have under the Subordinate Loan Documents, including, but not limited to accelerating the Subordinate Loan (and enforcing any "due on sale" provision included in the Subordinate Loan Documents), collecting rents, appointing (or seeking the appointment of) a receiver or exercising any other rights or remedies thereunder unless and until it has given Senior Lender at least sixty (60) days prior written notice; during such sixty (60) day period, however, Subordinate Lender shall be entitled to exercise and enforce all other rights and remedies available to Subordinate Lender under the Subordinate Loan Documents and/or under applicable laws, including without limitation, rights to enforce covenants and agreements of Borrower relating to income, rent, or affordability restrictions contained in any land use restriction agreement.

**(c)    Cross Default.**

Borrower and Subordinate Lender agree that a Subordinate Loan Default shall constitute a Senior Loan Default under the Senior Loan Documents and Senior Lender shall have the right to exercise all rights or remedies under the Senior Loan Documents in the same manner as in the case of any other Senior Loan Default.  If Subordinate Lender notifies Senior Lender in writing that any Subordinate Loan Default of which Senior Lender has received a Default Notice has been cured or waived, as determined by Subordinate Lender in its sole discretion, then provided that Senior Lender has not conducted a sale of the Mortgaged Property pursuant to its rights under the Senior Loan Documents, any Senior Loan Default under the Senior Loan Documents arising solely from such Subordinate Loan Default shall be deemed cured, and the Senior Loan shall be reinstated, provided, however, that Senior Lender shall not be required to return or otherwise credit for the benefit of Borrower any default rate interest or other default related charges or payments received by Senior Lender during such Senior Loan Default.

**8.    Default Under Senior Loan Documents.**

**(a)    Notice of Senior Loan Default and Cure Rights.**

Senior Lender shall deliver to Subordinate Lender a Default Notice within five (5) Business Days in each case where Senior Lender has given a Default Notice to Borrower. Failure of Senior Lender to send a Default Notice to Subordinate Lender shall not prevent the exercise of Senior Lender's rights and remedies under the Senior Loan Documents, subject to the provisions of this Section 8(a), nor shall such failure constitute a default by Senior Lender under this Agreement.  Subordinate Lender shall have the right, but not the obligation, to cure any such Senior Loan Default within sixty (60) days following the date of such Default Notice or the date on which Subordinate Lender otherwise acquires actual knowledge of Senior Loan Default;

CONFIDENTIAL                                                        PLAINTIFFS_00020967

provided, however, that Senior Lender shall be entitled during such sixty (60) day period to continue to pursue its remedies under the Senior Loan Documents. Subordinate Lender may have up to ninety (90) days from the date of the Default Notice to cure a non-monetary default if during such ninety (90) day period Subordinate Lender keeps current all payments required by the Senior Loan Documents. In the event that such a non-monetary default creates an unacceptable level of risk relative to the Mortgaged Property, or Senior Lender's secured position relative to the Mortgaged Property, as determined by Senior Lender in its sole discretion, then Senior Lender may exercise during such ninety (90) day period all available rights and remedies to protect and preserve the Mortgaged Property and the rents, revenues and other proceeds from the Mortgaged Property. All amounts paid by Subordinate Lender to Senior Lender to cure a Senior Loan Default shall be deemed to have been advanced by Subordinate Lender pursuant to, and shall be secured by the Subordinate Mortgage.

> **(b)** **Cross Default.**

Subordinate Lender agrees that, notwithstanding any contrary provision contained in the Subordinate Loan Documents, a Senior Loan Default shall not constitute a default under the Subordinate Loan Documents (if no other default has occurred under the Subordinate Loan Documents) until either (1) Senior Lender has accelerated the maturity of the Senior Loan, or (2) Senior Lender has taken affirmative action to exercise its rights under the Senior Loan Documents to collect rent, to appoint (or seek the appointment of) a receiver or to foreclose on (or to exercise a power of sale contained in) the Senior Loan Documents. At any time after a Senior Loan Default is determined to constitute a default under the Subordinate Loan Documents, Subordinate Lender shall be permitted to pursue its remedies for default under the Subordinate Loan Documents, subject to the restrictions and limitations of this Agreement. If at any time Borrower cures any Senior Loan Default to the satisfaction of Senior Lender, as evidenced by written notice from Senior Lender to Subordinate Lender, any default under the Subordinate Loan Documents arising from such Senior Loan Default shall be deemed cured and the Subordinate Loan shall be retroactively reinstated as if such Senior Loan Default had never occurred.

**9.     Conflict.**

Borrower, Senior Lender and Subordinate Lender each agrees that, in the event of any conflict or inconsistency between the terms of the Senior Loan Documents, the Subordinate Loan Documents and the terms of this Agreement, the terms of this Agreement shall govern and control solely as to the following:  (a) the relative priority of the security interests of Senior Lender and Subordinate Lender in the Mortgaged Property; (b) the timing of the exercise of remedies by Senior Lender and Subordinate Lender under the Senior Loan Documents and the Subordinate Loan Documents, respectively; and (c) solely as between Senior Lender and Subordinate Lender, the notice requirements, cure rights, and the other rights and obligations which Senior Lender and Subordinate Lender have agreed to as expressly provided in this Agreement. Borrower acknowledges that the terms and provisions of this Agreement shall not, and shall not be deemed to: extend Borrower's time to cure any Senior Loan Default or Subordinate Loan Default, as the case may be; give Borrower the right to notice of any Senior Loan Default or Subordinate Loan Default, as the case may be other than that, if any, provided,

CONFIDENTIAL                                     PLAINTIFFS_00020968

respectively under the Senior Loan Documents or the Subordinate Loan Documents; or create any other right or benefit for Borrower as against Senior Lender or Subordinate Lender.

**10.    Rights and Obligations of Subordinate Lender Under the Subordinate Loan Documents and of Senior Lender under the Senior Loan Documents.**

Subject to each of the other terms of this Agreement, all of the following provisions shall supersede any provisions of the Subordinate Loan Documents covering the same subject matter:

**(a)    Protection of Security Interest.**

Subordinate Lender shall not, without the prior written consent of Senior Lender in each instance, take any action which has the effect of increasing the indebtedness outstanding under, or secured by, the Subordinate Loan Documents, except that Subordinate Lender shall have the right to advance funds to cure Senior Loan Defaults pursuant to Section 8(a) and advance funds pursuant to the Subordinate Loan Documents for the purpose of paying real estate taxes and insurance premiums, making necessary repairs to the Mortgaged Property and curing other defaults by Borrower under the Subordinate Loan Documents.

**(b)    Condemnation or Casualty.**

Following the occurrence of (1) a Condemnation Action, or (2) a fire or other casualty resulting in damage to all or a portion of the Mortgaged Property (collectively, a "**Casualty**"), at any time or times when the Senior Security Instrument remains a lien on the Mortgaged Property the following provisions shall apply:

(A)    Subordinate Lender hereby agrees that its rights (under the Subordinate Loan Documents or otherwise) to participate in any proceeding or action relating to a Condemnation Action or a Casualty, or to participate or join in any settlement of, or to adjust, any claims resulting from a Condemnation Action or a Casualty shall be and remain subject and subordinate in all respects to Senior Lender's rights under the Senior Loan Documents with respect thereto, and Subordinate Lender shall be bound by any settlement or adjustment of a claim resulting from a Condemnation Action or a Casualty made by Senior Lender; provided, however, this subsection or anything contained in this Agreement shall not limit the rights of Subordinate Lender to file any pleadings, documents, claims or notices with the appropriate court with jurisdiction over the proposed Condemnation Action or Casualty; and

(B)    all proceeds received or to be received on account of a Condemnation Action or a Casualty, or both, shall be applied (either to payment of the costs and expenses of repair and restoration or to payment of the Senior Loan) in the manner determined by Senior Lender in its sole discretion; provided, however, that if Senior Lender elects to apply such proceeds to payment of the principal of, interest on and other amounts payable under the Senior Loan, any proceeds remaining after the satisfaction in full of the principal of, interest on and

CONFIDENTIAL                                                    PLAINTIFFS_00020969

other amounts payable under the Senior Loan shall be paid to, and may be applied by, Subordinate Lender in accordance with the applicable provisions of the Subordinate Loan Documents, provided however, Senior Lender agrees to consult with Subordinate Lender in determining the application of Casualty proceeds, provided further however that in the event of any disagreement between Senior Lender and Subordinate Lender over the application of Casualty proceeds, the decision of Senior Lender, in its sole discretion, shall prevail.

    **(c)**    **Insurance.**

Subordinate Lender agrees that all original policies of insurance required pursuant to the Senior Security Instrument shall be held by Senior Lender. The preceding sentence shall not preclude Subordinate Lender from requiring that it be named as a loss payee, as its interest may appear, under all policies of property damage insurance maintained by Borrower with respect to the Mortgaged Property, provided such action does not affect the priority of payment of the proceeds of property damage insurance under the Senior Security Instrument, or that it be named as an additional insured under all policies of liability insurance maintained by Borrower with respect to the Mortgaged Property.

    **(d)**    **No Modification of Subordinate Loan Documents.**

Borrower and Subordinate Lender each agree that, until the principal of, interest on and all other amounts payable under the Senior Loan Documents have been paid in full, it will not, without the prior written consent of Senior Lender in each instance, increase the amount of the Subordinate Loan, increase the required payments due under the Subordinate Loan, decrease the term of the Subordinate Loan, increase the interest rate on the Subordinate Loan, or otherwise amend the Subordinate Loan terms in a manner that creates an adverse effect upon Senior Lender under the Senior Loan Documents. Any unauthorized amendment of the Subordinate Loan Documents or assignment of Subordinate Lender's interest in the Subordinate Loan without Senior Lender's consent shall be void ab initio and of no effect whatsoever.

**11.**    **Modification or Refinancing of Senior Loan.**

Subordinate Lender consents to any agreement or arrangement in which Senior Lender waives, postpones, extends, reduces or modifies any provisions of the Senior Loan Documents, including any provision requiring the payment of money. Subordinate Lender further agrees that its agreement to subordinate hereunder shall extend to any new mortgage debt which is for the purpose of refinancing all or any part of the Senior Loan (including reasonable and necessary costs associated with the closing and/or the refinancing); and that all the terms and covenants of this Agreement shall inure to the benefit of any holder of any such refinanced debt; and that all references to the Senior Loan, the Senior Note, the Senior Loan Agreement, the Senior Security Instrument, the Senior Loan Documents and Senior Lender shall mean, respectively, the refinance loan, the refinance note loan agreement, the mortgage securing the refinance note, all documents evidencing securing or otherwise pertaining to the refinance note and the holder of the refinance note.

CONFIDENTIAL        PLAINTIFFS_00020970

**12.    Default by Subordinate Lender or Senior Lender.**

If Subordinate Lender or Senior Lender defaults in performing or observing any of the terms, covenants or conditions to be performed or observed by it under this Agreement, the other, non-defaulting lender shall have the right to all available legal and equitable relief.

**13.    Reinstatement.**

To the extent that Borrower makes a payment to Senior Lender or Senior Lender receives any payment or proceeds of the collateral securing the Senior Loan for Borrower's benefit, which payment or proceeds or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy law, state or federal law, common law or equitable doctrine, then to the extent of such payment or proceeds received and not retained by Senior Lender, this Agreement shall be reinstated and continue in full force and effect until full and final payment shall have been made to Senior Lender.  Subordinate Lender agrees to hold in trust for Senior Lender and promptly remit to Senior Lender any payments received by Subordinate Lender after such invalidated, rescinded or returned payment was originally made.

**14.    Notices.**

**(a)    Process of Serving Notice.**

All notices under this Agreement shall be:

(1)    in writing and shall be:

(A)    delivered, in person;

(B)    mailed, postage prepaid, either by registered or certified delivery, return receipt requested;

(C)    sent by overnight courier; or

(D)    sent by electronic mail with originals to follow by overnight courier;

(2)    addressed to the intended recipient at the address(es) below the signature block, as applicable; and

(3)    deemed given on the earlier to occur of:

(A)    the date when the notice is received by the addressee; or

(B)    if the recipient refuses or rejects delivery, the date on which the notice is so refused or rejected, as conclusively established by the records of the United States Postal Service or any express courier service.

CONFIDENTIAL                                                      PLAINTIFFS_00020971

(b)    **Change of Address.**

Any party to this Agreement may change the address to which notices intended for it are to be directed by means of notice given to the other parties identified in this Agreement.

(c)    **Receipt of Notices.**

Senior Lender, Subordinate Lender or Borrower shall not refuse or reject delivery of any notice given in accordance with this Agreement.  Each party is required to acknowledge, in writing, the receipt of any notice upon request by the other party.

**15.    General.**

(a)    **Assignment/Successors.**

This Agreement shall be binding upon Borrower, Senior Lender and Subordinate Lender and shall inure to the benefit of the respective legal successors, transferees and assigns of Borrower, Senior Lender and Subordinate Lender.  Borrower shall not assign any of its rights and obligations under this Agreement without the prior written consent of Senior Lender.

(b)    **No Partnership or Joint Venture.**

Senior Lender's permission for the placement of the Subordinate Loan does not constitute Senior Lender as a joint venturer or partner of Subordinate Lender.  Neither party hereto shall hold itself out as a partner, agent or Affiliate of the other party hereto.

(c)    **Senior Lender's and Subordinate Lender's Consent.**

Wherever Senior Lender's consent or approval is required by any provision of this Agreement, such consent or approval may be granted or denied by Senior Lender in its sole and absolute discretion, unless otherwise expressly provided in this Agreement.    Wherever Subordinate Lender's consent or approval is required by any provision of this Agreement, such consent or approval may be granted or denied by Subordinate Lender in its sole and absolute discretion, unless otherwise expressly provided in this Agreement.

(d)    **Further Assurances.**

Subordinate Lender, Senior Lender and Borrower each agrees, at Borrower's expense, to execute and deliver all additional instruments and/or documents reasonably required by any other party to this Agreement in order to evidence that the Subordinate Mortgage is subordinate to the lien, covenants and conditions of the Senior Loan Documents, or to further evidence the intent of this Agreement.

(e)    **Amendment.**

This Agreement shall not be amended except by written instrument signed by all parties hereto.

Subordination Agreement (Affordable)          Form 6456                              Page 13
Fannie Mae                                                   08-13                           © 2013 Fannie Mae

CONFIDENTIAL                                                            PLAINTIFFS_00020972

**(f)    Governing Law.**

This Agreement shall be governed by the laws of the jurisdiction in which the Mortgaged Property is located without giving effect to any choice of law provisions thereof that would result in the application of the laws of another jurisdiction.  Senior Lender, Subordinate Lender and Borrower agree that any controversy arising under or in relation to this Security Instrument shall be litigated exclusively in the jurisdiction in which the Mortgaged Property is located.  The state and federal courts and authorities with jurisdiction in such locale shall have exclusive jurisdiction over all controversies that arise under or in relation to this Agreement.  The parties hereto irrevocably consent to service, jurisdiction, and venue of such courts for any such litigation and waive any other venue to which any might be entitled by virtue of domicile, habitual residence or otherwise.

**(g)    Severable Provisions.**

If any provision of this Agreement shall be invalid or unenforceable to any extent, then the other provisions of this Agreement, shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

**(h)    Term.**

The term of this Agreement shall commence on the date hereof and shall continue until the earliest to occur of the following events: (1) the payment in full of the principal of, interest on and other amounts payable under the Senior Loan Documents; (2) the payment in full of the principal of, interest on and other amounts payable under the Subordinate Loan Documents, other than by reason of payments which Subordinate Lender is obligated to remit to Senior Lender pursuant to Section 6 hereof; (3) the acquisition by Senior Lender of title to the Mortgaged Property pursuant to a foreclosure or a deed in lieu of foreclosure of, or the exercise of a power of sale contained in, the Senior Loan Documents; or (4) the acquisition by Subordinate Lender of title to the Mortgaged Property pursuant to a foreclosure or a deed in lieu of foreclosure of, or the exercise of a power of sale contained in, the Subordinate Loan Documents, but only if such acquisition of title does not violate any of the terms of this Agreement.

**(i)    Counterparts.**

This Agreement may be executed in any number of counterparts, each of which shall be considered an original for all purposes; provided, however, that all such counterparts shall together constitute one (1) and the same instrument.

**(j)    Sale of Senior Loan.**

Nothing in this Agreement shall limit Senior Lender's (including any assignee or transferee of Senior Lender) right to sell or transfer the Senior Loan, or any interest in the Senior Loan.  The Senior Loan or a partial interest in the Senior Loan (together with this Agreement and the other Loan Documents) may be sold one or more times without prior notice to Borrower.

CONFIDENTIAL                                                    PLAINTIFFS_00020973

**[Signatures begin on next page]**

CONFIDENTIAL                                    PLAINTIFFS_00020974

**IN WITNESS WHEREOF**, Borrower, Senior Lender and Subordinate Lender have signed and delivered this Agreement under seal (where applicable) or have caused this Agreement to be signed and delivered under seal (where applicable) by a duly authorized representative.  Where applicable law so provides, Borrower, Senior Lender and Subordinate Lender intend that this Agreement shall be deemed to be signed and delivered as a sealed instrument.

**SENIOR LENDER:**

PNC BANK, NATIONAL ASSOCIATION,
a national banking association

By: _____
Name: Kelli A. Tyler
Title:   Vice President

Address:        26901 Agoura Road, Suite 200
                Calabasas Hills, California 91301

                With a copy to:
                Fannie Mae
                Attention:  Multifamily Operations -
                Asset Management
                Drawer AM
                3900 Wisconsin Avenue, N.W.
                Washington, DC  20016

**[SIGNATURES CONTINUED ON NEXT PAGE]**

CONFIDENTIAL                                                        PLAINTIFFS_00020975

**SUBORDINATE LENDER:**

2007 TRAVIS HEIGHTS, LP,
a Texas limited partnership

By:    2007 Travis Heights GP, LLC,
       a Texas limited liability company,
       its general partner

        By:   _____

            Rene Campos,
            Manager

Address:   3001 Knox Street, Suite 400
            Dallas, TX 75205

**[SIGNATURES CONTINUED ON NEXT PAGE]**

CONFIDENTIAL                    PLAINTIFFS_00020976

**BORROWER:**

2013 TRAVIS OAK CREEK, LP,
a Texas limited partnership

By:    2013 Travis Oak Creek GP, LLC,
        a Texas limited liability company,
        its general partner

        By:   _____
                Rene Campos,
                Manager

Address:    3001 Knox Street, Suite 400
            Dallas, TX 75205

CONFIDENTIAL                                      PLAINTIFFS_00020977

<u>ACKNOWLEDGEMENT</u>

STATE OF CALIFORNIA         )
                                         ) SS

COUNTY OF _____)

      On _____, 20___, before me, _____,
Notary Public, personally appeared _____, who proved to me on the
basis of satisfactory evidence to be the person whose name is subscribed to the within instrument
and acknowledged to me that she executed the same in his/her/their authorized capacity(ies), and
that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

      I certify under PENALTY OF PERJURY under the laws of the State of California that
the foregoing paragraph is true and correct.

      WITNESS my hand and official seal.


Signature       _____

                                                   (SEAL)

**Subordination Agreement (Affordable)**     **Form 6456**
**Fannie Mae**                            **08-13**                       **© 2013 Fannie Mae**

ACKNOWLEDGMENT

STATE OF TEXAS

COUNTY OF _____

This instrument was acknowledged before me on _____, 20___, by **RENE CAMPOS,** as Manager of 2007 Travis Heights GP, LLC, a Texas limited liability company, General Partner of 2007 Travis Heights, LP, a Texas limited partnership, on behalf of the limited partnership.

_____
Notary Public's Signature

(Personalized Seal)

CONFIDENTIAL        PLAINTIFFS_00020979

ACKNOWLEDGMENT

STATE OF TEXAS

COUNTY OF _____

This instrument was acknowledged before me on _____, 20___, by **RENE CAMPOS** as Manager of 2013 Travis Oak GP, LLC, a Texas limited liability company, General Partner of 2013 Travis Oak Creek, LP, a Texas limited partnership, on behalf of the limited partnership.

_____
Notary Public's Signature

(Personalized Seal)

| | | |
|---|---|---|
| **Subordination Agreement (Affordable)** | **Form 6456** | |
| **Fannie Mae** | **08-13** | **© 2013 Fannie Mae** |

CONFIDENTIAL

## EXHIBIT A

### LEGAL DESCRIPTION OF THE MORTGAGED PROPERTY(LOT 1A)

LEGAL DESCRIPTION OF A 3.879 ACRE (168,990 SQUARE FEET) TRACT OR PARCEL OF LAND OUT OF THE ISSAC DECKER SURVEY, LOCATED IN THE CITY OF AUSTIN, AND BEING ALL OF LOT 1A, RESUBDIVISION OF LOT 1 OAK CREEK VILLAGE, AS RECORDED IN DOC. 201400101 OF THE OFFICIAL PUBLIC RECORDS, TRAVIS COUNTY, TEXAS, SAID OAK CREEK VILLAGE BEING A SUBDVISION RECORDED IN BOOK 50, PAGE 11, PLAT RECORDS, TRAVIS COUNTY, TEXAS, AND CONVEYED TO OAK CREEK AUSTIN HOUSING, INC. BY SPECIAL WARRANTY DEED IN DOC. 2007116822 OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, SAID 3.879 ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AND THE ACCOMPANYING SKETCH AS FOLLOWS:

**BEGINNING** at a ½-inch iron rod found with cap on the northwest right-of-way (R.O.W. ) line of Wilson Street (60-foot R.O.W.) at the east corner of Lot C, of the "Resubdivision of a Portion of Lot 16, Live Oak Grove", as recorded in Doc. 199900381, Official Public Records, Travis County, Texas (O.P.R.T.C.T), same being the south corner of said Lot 1A, and said Lot 1, Oak Creek Village, for the south corner and **POINT OF BEGINNING** of the herein described tract, from which a ½" iron rod with cap found at the south corner of Lot "B" of said Live Oak Grove Resubdivision bears S26°39'56"W a distance of 100.17 feet;

**THENCE, N62°40'33"W**, with the southwest line of said Lot 1A, same being the southwest line of said Lot 1, Oak Creek Village, passing a ½" iron rod found at a distance of 158.19', offset 0.40 feet left (south) at the north corner of said Lot C, same being a point in the most northerly line of a 2-foot strip of land conveyed to the C.O.A. in Volume 3834, Page 1414, Deed Records, Travis County, Texas, (D.R.T.C.T.), said strip lying adjacent to a 18-foot City of Austin alley conveyed in Volume 3451, Page 2224, D.R.T.C.T., and continuing with the north line of said 2-foot strip for **a total distance of 354.58 feet** to a ½" iron rod set with cap labeled "P Flugel 5096" for a west corner of this tract;

**THENCE,** with the common lot line between said Lot 1A, and Lot 1B, of said Resubdivision of Lot 1, Oak Creek Village, for the following eleven (11) courses:

**1) N26°39'57"E a distance of 26.40 feet** to a ½" iron rod set with cap labeled "P Flugel 5096" for an ell corner of this tract;

**2) S63°20'03"E a distance of 92.90 feet** to a ½" iron rod set with cap labeled "P Flugel 5096" for an ell corner of this tract;

**3) N26°39'57"E a distance of 47.50 feet** to a ½" iron rod set with cap labeled "P Flugel 5096" for an ell corner of this tract;

**4) N63°20'03"W a distance of 10.50 feet to** a ½" iron rod set cap labeled "P Flugel 5096" for an ell corner of this tract;

CONFIDENTIAL                                          PLAINTIFFS_00020981

**5) N26°39'57"E a distance of 5.00 feet** to calculated point for an ell corner of this tract;

**6) S63°20'03"E a distance of 10.50 feet** to calculated point for an ell corner of this tract;

**7) N26°39'57"E a distance of 288.09 feet** to a MAG NAIL set for an ell corner of this tract;

**8) N63°20'03"W a distance of 10.50 feet** to a MAG NAIL set for an ell corner of this tract;

**9) N26°39'57"E a distance of 5.00 feet** to a MAG NAIL set for an ell corner of this tract;

**10) S63°20'03"E a distance of 10.50 feet** to a MAG NAIL set for an ell corner of this tract;

**11) N26°39'57"E a distance of 263.10 feet** to a ½" iron rod set with cap labeled "P Flugel 5096" in  the north line of said Lot 1, Oak Creek Village, same being the north corner of this tract and the east corner of said Lot 1B; same also being a point in the south line of Lot 5A, Amended Plat of Lots 5, 6, and 7, Shelton's Subdivision, as recorded in Volume 87, Page 12D, Plat Records, Travis County, Texas;

**THENCE**, with the southerly line of said Lot 5A, and the southerly line of Shelton's Subdivision, as recorded in Book 4, Page 163, P.R.T.C.T, same being the northerly line of said Oak Creek Village Lot 1 and this tract, **S62°38'45"E a distance of 261.49 feet** to a ½" iron rod found in the northwest R.O.W. line of said Wilson Street, at the south corner of Lot 1, of said Shelton's Subdivision for the east corner of this tract;

**THENCE**, with said northwest line of said Wilson Street, **S26°38'55"W a distance of 636.02 feet** to the **POINT OF BEGINNING** and containing **3.879 acres** (or 168,990 square feet) of land, more or less.

The bearings described herein are based on NAD'83 state plane coordinates, Texas Central (4203) zone.

**As Prepared by**
**Flugel Land Surveying**
Firm Registration No. 10193837

CONFIDENTIAL                                                   PLAINTIFFS_00020982

## EXHIBIT K

## FORM OF AUTODEBIT AUTHORIZATION

PNC LOAN NUMBER:_____

PROJECT NAME:_____

As part of PNC's AutoDebit Program:

1.     Supply the required information about your financial institution in the space    provided below.

2.     Attach a **VOIDED** check from the checking account you wish to use in making   your monthly mortgage payment.

3.     Return this form, along with a voided check, in the envelope provided.

You must be certain that sufficient funds are in your account each month to cover the draft. Any outstanding charges in addition to your normal monthly payment (such as late charges or NSF fees) will be drafted along with your monthly mortgage payment. Any changes in your monthly payment (escrow shortages/overages, ARM adjustments, etc.) will also be drafted accordingly.

I/We authorize PNC Bank, National Association to draft my/our checking account in the amount of my/our mortgage payment on the **4th** day of each month at:

_____
(Financial Institution Name)


_____
(Institution's Phone Number)

This agreement will remain in effect until loan has been repaid in full.


_____       _____
Signature                                                Date


_____       _____
Signature                                                Date

K-1

Forward Commitment Unfunded MBS Rate Lock

CONFIDENTIAL

## <u>EXHIBIT L</u>

## BORROWER ORGANIZATIONAL STRUCTURE



L-1

Forward Commitment Unfunded MBS Rate Lock

CONFIDENTIAL

PLAINTIFFS_00020984