UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **PNC BANK, N.A. COLUMBIA HOUSING SLP CORPORATION, and 2013 TRAVIS OAK CREEK, LP** | § § § § | |
| **Plaintiffs,** | § § | **Case No. 1:17-cv-584-RP-ML** |
| v. | § § § § | **consolidated with** **Case No. 1:17-cv-560-RP** |
| **2013 TRAVIS OAK CREEK GP, LLC, 2013 TRAVIS OAK CREEK DEVELOPER, INC., CHULA INVESTMENTS, LTD., and RENE O. CAMPOS** | § § § § § § § | |
| **Defendants.** | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO CLARIFY OR MODIFY PRELIMINARY INJUNCTION**

Plaintiffs PNC Bank, N.A. ("**PNC**"), Columbia Housing SLP Corporation ("**Columbia**"), and 2013 Travis Oak Creek, LP (the "**Partnership**") (collectively the "**Plaintiffs**") respectfully submit this Response to the Motion to Clarify or Modify Preliminary Injunction [ECF Doc. No. 103] (the "**Motion**") filed by Defendants 2013 Travis Oak Creek GP, LLC (the "**First GP**"), 2013 Travis Oak Developer, Inc., Chula Investments, Ltd., and Rene O. Campos (collectively, "**Defendants**").

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO CLARIFY OR MODIFY PRELIMINARY INJUNCTION—Page i**
DAL:966224.2

## I. INTRODUCTION

The Court should deny the Motion—without a hearing—because it seeks sweeping, mandatory injunctive relief requiring PNC and Columbia to spend millions of dollars without providing any evidence or argument in support.

*First*, the Motion's main argument isn't true. Defendants assert that PNC and Columbia promised the Court that they would prevent the Partnership's senior lender from foreclosing on the Lucero Apartments complex, but that PNC and Columbia haven't done so. But in fact, PNC purchased the construction loan from JPMorgan Chase Bank, N.A. ("**Chase**") in full on October 3 (which closed on October 12). For that reason, there is no further threat that Chase will ever take any action with respect to the Partnership's property because the construction loan and the associated lien now belong to PNC. In short, the main point of the Motion is entirely moot.

*Second*, there are no grounds to enter any order based on the Partnership's pending state court litigation (the "**Weis Litigation**") with Weis Builders, Inc. ("**Weis**") and Weis's subcontractors. Defendants have put forth no evidence that judicial foreclosure of the Weis lien is imminent. In point of fact, it is not. Plaintiffs' pledge to the Court was plainly that—if the First GP would cease its interference with Columbia's function as successor general partner—Plaintiffs would not let Weis foreclose on its lien through judicial foreclosure, and such pledge remains firmly in place.

As a prudent new general partner should, Columbia has diligently retained a consulting expert to examine the condition of the Lucero Apartments complex and provide a comprehensive final opinion as to the nature, scope, and cost to repair the defects; allowed Weis and its subcontractors to inspect the property; sought early mediation with Weis and its subcontractors; and resisted attempts from Defendants' counsel to impede the lawsuit's progress. For example,

Defendants attempted to convince the state court to impose an indefinite stay pending the outcome of this litigation. Such a stay would have prevented inspections, expert analysis, mediation, and any chance to remove Weis's mechanic's lien. Columbia, acting for the Partnership, successfully defeated that attempted interference.

The Weis Litigation is critically important to the Partnership, as Columbia's preliminary determination is that the Lucero Apartments complex is in considerably worse physical shape than the First GP ever previously admitted. The sensible course is to continue the Weis Litigation in the hope of achieving a win for the Partnership, release of the Weis lien, and repair of the extensive construction defects that the First GP allowed and its contractor.

For these reasons, there are no viable legal grounds to modify the Court's Preliminary Injunction. PNC and Columbia have saved the Partnership from certain foreclosure by Chase at the cost of tens of millions of dollars and continue to work to rectify the First GP's failings as general partner. As they pledged to the Court at the Preliminary Injunction hearing, PNC and Columbia have diligently avoided any foreclosure against the Partnership.

If Defendants cared about the Partnership, they would applaud these efforts.

## II.     BACKGROUND AND PROCEDURAL HISTORY

### A.     The Partnership Dispute.

On or about May 23, 2014, PNC and Columbia, as limited partners, and the First GP, as the original general partner, entered into the Amended and Restated Agreement of Limited Partnership of 2013 Travis Oak Creek, LP (the "**Partnership Agreement**"). [*See* ECF Doc. No.72-3 (Plaintiffs' Exhibit No. 3).] The Partnership Agreement is the governing document of the Partnership. The purpose of the Partnership is to develop, construct, and operate a low-

income housing multifamily apartment complex located in Austin, known as the Lucero Apartments (the "**Property**").

Under the Partnership Agreement, the First GP was the Partnership's original general partner, and PNC and Columbia were limited partners overseeing their investment with no fiduciary duty to the First GP or the Partnership. *See id.* §§ 1.3; 6.1; 7.1–7.2. The First GP was to manage, oversee, and ensure the successful construction and ongoing operation of the Project. *See id.* §§ 6.1, 6.5 & 6.7. Importantly, the Partnership Agreement provided that if the First GP failed to fulfill its contractual obligations, then an "**Event of Default**" would occur, which would empower Columbia to remove and replace the First GP. *See id.* § 7.7.

After listening to a full day of evidence and two subsequent hours of oral argument from counsel, this Court found a substantial likelihood that the First GP committed multiple Events of Default. [ECF Doc. No. 73.] Based on the First GP's Events of Default, on June 7, 2017, Columbia exercised its contract right to remove and replace the First GP as the Partnership's general partner. When the First GP flatly refused to relinquish control of the Partnership and instead interfered with Columbia's right to perform as general partner, this litigation ensued.[1]

**B.    The Preliminary Injunction.**

On June 8, 2017, PNC and Columbia filed the instant lawsuit against the First GP, the Developer, and related parties alleging claims for breach of contract, suit on a guaranty of Partnership debts, and breach of fiduciary duty, and seeking a declaratory judgment that the First

---

[1] Defendants responded to the June 7 letter removing the First GP with the following threat: "[U]nderstand that if you or your law firm represent that you are counsel for the partnership or that your clients are the general partner, we intend to sue you and your firm for that wrongful misconduct."

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO CLARIFY OR MODIFY PRELIMINARY INJUNCTION—Page 3**
DAL:966224.2

GP was removed as the Partnership's general partner and replaced by Columbia. [ECF Doc. No. 1] (the "**First-Filed Action**").[2]

An evidentiary hearing on the parties' cross-motions for preliminary injunction was held on July 21, 2017. On August 2, 2017, the Court found that Plaintiffs have a substantial likelihood of establishing multiple Events of Default by the First GP under the Partnership Agreement at a trial on the merits and enjoined the First GP from interfering with Columbia's singular rights as the Partnership's new general partner. [ECF Doc. No. 73]; *see also* [ECF Doc. No. 75] (injunction bond).

C.   **Subsequent Developments.**

On October 3, 2017, Chase and PNC entered into a Sale and Assignment Agreement whereby PNC agreed to purchase the outstanding construction loan in the original principal balance of $26 million used to construct the Lucero Apartments complex (the "**Chase Construction Loan**"). On October 12, 2017, that sale closed, and Chase executed an Assignment of Deed of Trust and Other Loan Documents in favor of PNC.[3] The Chase Construction Loan was supported by a Guaranty of Payment and Completion dated May 23, 2014 (the "**Guaranty**") executed by Rene O. Campos, 2013 Travis Oak Creek Developer, Inc., Chula Investments, Ltd., and Eureka Multifamily Group, LP for the benefit of Chase. On November 4, 2017, PNC filed suit on the Guaranty in state court in Travis County, Texas.

---

[2] On June 9, 2017, the First GP filed an Original Petition against PNC and Columbia for injunctive relief and appointment of a receiver over the Partnership in state court in Travis County, Texas, which was removed to this Court. [Case No. 1:17-cv-560, ECF Doc. No. 2] (the "**Second-Filed Action**"). On June 19, 2017, the Court consolidated the Second-Filed Action into the First-Filed Action.

[3] *See* **Exhibit A** attached hereto.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO CLARIFY OR MODIFY PRELIMINARY INJUNCTION—Page 4**
DAL:966224.2

### III.   ARGUMENT AND AUTHORITIES

**A.   Plaintiffs Have Done Precisely What They Stated They Would Do.**

   *1.   PNC and Columbia Pledged to the Court that They Would Prevent Foreclosure.*

The Motion contains a number of cherry-picked quotations from the transcript for the Preliminary Injunction hearing, the main purpose of which is to suggest that PNC and Columbia somehow promised that, upon Columbia's being allowed to exercise its rights as general partner, PNC and Columbia would immediately pay off the Chase Construction Loan and the Weis lien in full, no questions asked.

   In reality, in their opening statement, PNC and Columbia promised the Court as follows:

> ***Here's my pledge, Your Honor***, and you're going to hear not just from me, you are going to hear it from a witness, on the stand, under oath, PNC employee; ***PNC has the wherewithal*** and has -- it's the fifth-largest bank in the country -- has the wherewithal and a longstanding relationship with Chase ***to prevent foreclosure by Chase and a foreclosure by Weis, and it pledges to do it***. It is not going to let the foreclosures happen.

Transcript of Preliminary Injunction Hearing, November 21, 2017 at 19:20–20:2 (emphasis added).

   While the Motion tries to bury this statement in between other excerpts and by omitting the entire introductory clause, the clear meaning of the pledge made to the Court is that PNC and Columbia would take whatever actions were necessary to prevent a foreclosure by Chase or Weis.

   Further, as promised, Mr. Hasselwander, a Vice President and representative of both PNC and Columbia, testified in the affirmative when asked just that question:

> Q. And if Columbia Housing is allowed to resume its role as the general partner in the partnership, does PNC pledge, under oath, that it will prevent foreclosure by Chase and Weis?

A. Yes.

*Id.* at 126:21–126:25.

In the Motion, Defendants attempt to mischaracterize PNC's and Columbia's words, arguing that they promised to pay off the Chase Construction Loan and the Weis lien. The only excerpt that Defendants provide to the Court with respect to that claim is Mr. Hoffman's point during closing argument that, by becoming the general partner in the Partnership, Columbia was potentially exposing itself to $30 million in liabilities. See Transcript of Preliminary Injunction Hearing, November 25, 2017 at 76:22–77:3. In context, Mr. Hoffman was demonstrating that, far from obtaining a windfall, Columbia was assuming an enormous potential liability. Indeed, most of that potential liability has already been incurred, as PNC spent tens of millions of dollars to take out the Chase loan.

In any event, neither PNC nor Columbia ever made any statement to the Court that they would immediately pay off the Chase Construction Loan and the Weis lien to suit Defendants' schedule. Defendants do not point the Court to any such promise. Instead, PNC and Columbia pledged to prevent a foreclosure by Chase or Weis against the Partnership's Property. And as set forth below in detail, that's what they've done.

> 2. *PNC Has Purchased the Chase Construction Loan in Full, Thus Preventing Any Imminent Foreclosure.*

As it promised the Court, PNC has completely prevented Chase from foreclosing on the Partnership's property by purchasing the Chase Construction Loan in full.

As a result of the sale of the Chase Construction Loan to PNC, Chase cannot ever threaten to foreclose on the Property again, and the relief that Defendants request with respect to that loan is therefore moot. Further, Defendants have no grounds to claim that PNC has done anything other than what it stated it would do. In fact, PNC has put up tens of millions of dollars

of its own funds to ensure that Chase couldn't foreclose on the defaulted Chase Construction Loan. Thus, PNC has clearly fulfilled its promise to the Court and protected the Partnership Property from foreclosure, at considerable expense. There is no remaining danger to the Partnership from Chase, and the Chase Construction Loan cannot support any modification of the Preliminary Injunction.

> 3. *Columbia Continues to Pursue a Remedy for the Stucco Defects Against the General Contractor on Behalf of the Partnership.*

With respect to the Weis Litigation, Columbia is actively determining the extent of the defects plaguing the Property and to prosecute its case against the builder (i.e., Weis) on behalf of the Partnership.

Since Columbia was allowed to fulfill its role as the general partner in the Partnership, it has retained consulting experts to evaluate the physical condition of the Lucero Apartments complex. Unfortunately, those experts' preliminary opinion is that the issues facing the Property, including the stucco defects, are substantially *worse* than Defendants had previously revealed. Further, Columbia has been forced to essentially pick the case up from the beginning, as little or no attempt to resolve or move the case forward had occurred prior to the substitution of counsel, despite the case having been pending for more than 6 months at the time of the Preliminary Injunction. Counsel for Weis and its subcontractors had been effectively stonewalled by the first GP from coming onto the Property for an inspection with their experts, which is of course essential to any resolution of the Weis Litigation. No discovery had taken place, no mediation planned, and the Partnership's designated experts had yet to produce a comprehensive final report.

In contrast to the First GP, Columbia has done exactly what it has said it would do: try to resolve the Weis Litigation on favorable terms to the Partnership. Accordingly, it has allowed the

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO CLARIFY OR MODIFY PRELIMINARY INJUNCTION—Page 7**
DAL:966224.2

opposing parties to visit the Property; has engaged a consulting expert to thoroughly examine the entire Property for defects so it can develop a comprehensive, final report to be used at mediation; has pushed opposing counsel for mediation dates to try and resolve the Weis Litigation; and has otherwise proceeded to get the Weis Litigation on track.

Most importantly, Weis cannot foreclose on its lien against the Partnership unless it reduces its claim to judgment in the Weis Litigation, and Plaintiffs have pledged never to allow that to occur. Given the extensive nature of the defects in the construction of the Lucero Apartments, the best interests of the Partnership mandate that Columbia continue to prosecute the Weis Litigation to obtain compensation for the Partnership's damages, and at the same time prevent judicial foreclosure of the Weis lien. That is precisely what Columbia is doing.

Additionally, Defendants have repeatedly attempted to interfere with the Weis Litigation. On September 6, 2017, Defendants' counsel sent an email to Amy Gelsone at Wiss, Janney, Elstner Associates, Inc. ("**WJE**"), the Partnership's construction and engineering expert in the Weis Litigation, threatening to make WJE a witness in the instant Partnership dispute and claiming that the "correctness or necessity of WJE's work" was somehow at issue in this case. *See* **Exhibit B**, September 6, 2017 Email. Further, Defendants' counsel stated that "we do not know whether the need for WJE to act as a witness … creates an actual or just potential conflicts [*sic*] of interest … but I must confirm that 2013 Travis Oak Creek GP, LLC is not willing to waive any actual or potential conflicts that may exist now or in the future." *See id.* Defendants' email was obviously calculated to improperly interfere with the Partnership's relationship with its testifying expert witness and was not supported by any factual basis. The "correctness or necessity of WJE's work" is not at issue in this case. Nor have Defendants—despite requesting 10 depositions, the limit allowed under the federal rules—requested one of WJE. And there is

absolutely no apparent or potential "conflict of interest." WJE was retained to provide expert opinions for the *Partnership* at the request of the First GP while it was acting as general partner. WJE is being asked to continue its work on behalf of the *Partnership* at the request of Columbia. Its client has not changed. There is no rational reason for Defendants' communication to WJE other than to disrupt the Partnership's relationship with WJE.

Further, while Columbia was trying to advance the Weis Litigation to resolution, the First GP actively sought an indefinite stay of that case. Prior to this Court's decision on the Preliminary Injunction, at the First GP's request and with Weis's agreement, the state court entered a stay in the Weis Litigation to last *only* until this Court entered a decision determining who was empowered to act for the Partnership. After this Court entered the Preliminary Injunction, the First GP actively opposed all other parties' attempts—including both from Weis and the Partnership—to lift the stay of the case; instead arguing at a hearing that the stay should be left in place until this case is resolved in its entirety, including the resolution of any appeals. *See* **Exhibit C**, Response to Motion to Lift Stay. This would have resulted in a years-long delay in the resolution of the Weis Litigation and the Weis lien—the same lien that Defendants now contend must be resolved immediately and by force of mandatory injunction. Fortunately, the state court rejected this argument, and lifted the stay. Nevertheless, by not agreeing with all other counsel to lift the stay, the First GP succeeded in delaying that lawsuit by a number of weeks.

For all of these reasons, there are no grounds to require PNC or Columbia to post a bond to cover the Weis Litigation. In the unlikely event that a foreclosure on the Weis lien becomes imminent at some point in the future, PNC or Columbia can pay off or bond around the Weis lien at that time. PNC's take out of the Chase Construction Loan is strong evidence that Plaintiffs will do what is necessary to avoid an imminent foreclosure. In any event, there is no contractual

or legal basis to require PNC to gratuitously post a bond to cover the Weis lien, and the Motion does not identify one.[4] As set forth above, Columbia has done exactly what it told the Court it would do—namely, it has continued to seek to mitigate any further harm to the Partnership from Weis's failures as the First GP's general contractor. Given Weis's failure to properly construct the Lucero Apartments, Columbia is rationally pursuing payment for those failures on behalf of the Partnership under the relevant construction contract, while at the same time providing a proven backstop against foreclosure.

Similarly, there are no grounds to "reinstate" the First GP as general partner in the Partnership based on the Weis Litigation. Certainly, if the First GP had any reasonable alternative to dealing with the Weis lien and the Weis Litigation, it would have implemented it prior to being removed as the general partner in the Partnership. And, it wouldn't have attempted to interfere with the Partnership's resolution of that case. The Partnership is in no worse situation with respect to the Weis Litigation than when the First GP was removed, and is arguably in a much better position now that the lawsuit is allowed to proceed toward a resolution.

### B. The Motion Presents No Basis for the Sweeping Relief it Requests.

The Motion is also inappropriate in that it effectively requests a far-reaching mandatory injunction requiring PNC and Columbia to pay off the Chase Construction Loan default (with a balance in excess of $26 million) and to post a bond against the lien filed against the Partnership by Weis (in the amount of approximately $3.25 million).

---

[4] Contrary to Defendants' assertions, Plaintiffs never represented to the Court that a bond would be posted. As set forth in the Transcript of the Preliminary Injunction hearing, PNC and Columbia pledged to use their funds to prevent a foreclosure on the Weis lien. *See* Transcript of July 25, 2017 Hearing at 76:22–77:3. They will fulfill that promise if it becomes necessary to do so.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO CLARIFY OR MODIFY PRELIMINARY INJUNCTION—Page 10**
DAL:966224.2

A mandatory injunction is proper only in rare instances. *Harris v. Wilters*, 596 F.2d 678, 680 (5th Cir. 1979). "[I]t is well established that the requirements for issuing a mandatory injunction are much stricter than the very strict grounds for the issue of a prohibitory injunction." *Greenhouse v. Greco*, 368 F. Supp. 736, 739 (W.D. Tex. 1973). To obtain a mandatory injunction, the movant must show: (1) a *substantial* likelihood that the movant will prevail on the merits, (2) a *substantial* threat that the movant will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury outweighs the threatened harm the injunction may do to the enjoined party, and (4) that granting the preliminary injunction will not disserve the public interest. *See, e.g.*, *Harris*, 596 F.2d at 680.

Here, Defendants are not really seeking an Order from the Court "clarifying" or modifying the Preliminary Injunction. Instead, they seek an Order to "compel PNC Bank and Columbia to do what they pledged and promised they would do, if the injunction was entered, *which is to use their wherewithal to take out the Chase loan and bond around or otherwise secure the Weis lien*." *See* Motion at 10 (emphasis added). This is in effect a request for a mandatory injunction from the Court affirmatively requiring PNC and Columbia to spend millions of dollars, including substantial funds to "bond around or otherwise secure the Weis lien" when no imminent harm of foreclosure exists.

In support of this extraordinary request, Defendants provide the Court with no evidence and no argument as to any of the four elements necessary to obtain such relief.[5] In particular, they do not even argue that they have a substantial likelihood of succeeding on any claim that

---

[5] Any arguments in this regard made for the first time by way of Reply brief should be disregarded. *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005) ("Arguments raised for the first time in a reply brief … are waived."); *Cullum v. Diamond A Hunting, Inc.*, Civ. Ac. No. SA–07–CA–76–FB, 2009 WL 10669503, *3 n.4 (W.D. Tex. Oct. 2, 2009).

would allow the Court to compel PNC or Columbia to post a bond for the Weis lien, much less provide any evidence. Certainly, there is no evidence that *Defendants* face a substantial and imminent threat of an irreparable injury from the Weis lien, particularly when they were responsible for allowing it to exist in the first place. Because Defendants have requested that the Court enter mandatory injunctive relief without providing any legal or factual basis, the Court should deny Defendants' request in its entirety without the expense of a hearing.

C.  **The First GP Offers No Grounds for Its Reinstatement as General Partner.**

Finally, there are no grounds to "modify the injunction and restore control over the Partnership to [the First GP]." *See* Motion at 10. Once the First GP is removed under Section 7.7(c) of the Partnership Agreement, there is no provision for allowing it back into the Partnership, absent the written agreement of the other partners. [*See* ECF Doc. No. 72-3 (Plaintiffs' Exhibit 3) at 54.] The Partnership Agreement has not been altered, and the relevant facts related to removal remain the same today as of the date the Preliminary Injunction was entered. The First GP does not present any evidence that events have occurred that alleviate it of responsibility for the Events of Default identified in the Court's Preliminary Injunction Order.

The First GP offers no more than vague assertions that it wants authority to "arrange financing for the Partnership" or "arrange a bond … to bond around the Weis lien." *See id.* Conspicuously, it fails to make any promise that it will (or even that it has the ability to) do so. Further, the First GP has made these types of assertions before, arguing that it was supposedly ready and willing to obtain a permanent mortgage loan from Arbor Commercial Mortgage ("**Arbor**"). But the evidence presented to the Court at the Preliminary Injunction hearing conclusively established that the First GP was nowhere near obtaining any such funding or providing security for the Weis lien as of the date of the Preliminary Injunction hearing. [*See*

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO CLARIFY OR MODIFY PRELIMINARY INJUNCTION—Page 12**
DAL:966224.2

ECF Doc. No. 72-7 at 34 (Plaintiffs' Exhibit 37) (containing numerous unfulfilled conditions precedent from Arbor to even continuing with underwriting of the proposed permanent mortgage loan)]. In fact, the First GP was required to post such security for the Weis lien as a condition precedent demanded by Arbor, but it never did so. *See id.*

There are no new facts that would justify altering the Preliminary Injunction or effectively dissolving it. Instead, the available evidence shows that PNC and Columbia are earnestly working to solve the Partnership's many problems—problems that were caused by the First GP's failure to comply with the Partnership Agreement in the first place. As it pledged to do, PNC has already prevented an imminent foreclosure by Chase when it paid tens of millions of dollars to purchase the defaulted Chase Construction Loan and avoid imminent foreclosure. As they promised the Court, PNC and Columbia are righting a ship that was already perilously close to sinking—despite Defendants' disruptions. Columbia should be allowed to continue that effort.

## IV.   CONCLUSION

Plaintiffs respectfully request that the Court (i) deny Defendants' Motion to Clarify or to Modify Preliminary Injunction [ECF Doc. No. 103]; and (ii) grant Plaintiffs all such other and further relief to which they may be justly entitled.

| | |
|---|---|
| Dated: November 30, 2017. | By: /s/ *Robert M. Hoffman*<br>Robert M. Hoffman<br>Texas Bar No. 09788200<br>robhoffman@andrewskurth.com<br>James C. Bookhout<br>Texas Bar No. 24087187<br>jamesbookhout@andrewskurth.com<br>**ANDREWS KURTH KENYON LLP**<br>1717 Main Street, Suite 3700<br>Dallas, Texas 75201<br>Telephone:  (214) 659-4400<br>Facsimile:   (214) 659-4401<br><br>David P. Whittlesey<br>Texas Bar No. 00791920<br>dwhittlesey@andrewskurth.com<br>**ANDREWS KURTH KENYON LLP**<br>111 Congress Avenue, Suite 1700<br>Austin, Texas 78701<br>Telephone:  (512) 320-9200<br>Facsimile:   (512) 320-9292<br><br>**ATTORNEYS FOR PLAINTIFFS PNC BANK, N.A., COLUMBIA HOUSING SLP CORPORATION, AND 2013 TRAVIS OAK CREEK, LP** |

## CERTIFICATE OF SERVICE

I certify that on November 30, 2017, a copy of the foregoing document was served on all counsel of record via the Court's CM/ECF facilities.

                                                                      /s/ *Robert M. Hoffman*
                                                                     Robert M. Hoffman