UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PNC BANK, N.A. COLUMBIA HOUSING SLP CORPORATION, and 2013 TRAVIS OAK CREEK, LP § § § § | | |
| Plaintiffs, § | Case No. 1:17-cv-584-RP-ML | |
| v. § § § § | consolidated with Case No. 1:17-cv-560-RP | |
| 2013 TRAVIS OAK CREEK GP, LLC, 2013 TRAVIS OAK CREEK DEVELOPER, INC., CHULA INVESTMENTS, LTD., and RENE O. CAMPOS § § § § § § | | |
| Defendants. § | | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO CONSOLIDATE**

Plaintiffs PNC Bank, N.A. ("**PNC**"), Columbia Housing SLP Corporation ("**Columbia**"), and 2013 Travis Oak Creek, LP (the "**Partnership**") (collectively the "**Plaintiffs**") respectfully submit this Response to the Motion to Consolidate [ECF Doc. No. 107] (the "**Motion**") filed by Defendants 2013 Travis Oak Creek GP, LLC (the "**First GP**"), 2013 Travis Oak Developer, Inc., Chula Investments, Ltd., and Rene O. Campos (collectively, "**Defendants**").

## I.     INTRODUCTION

The Court should deny the Motion because of any one of these three fundamental impediments: (i) the Court lacks subject matter jurisdiction over the litigation concerning the guaranty of the Chase construction loan (the "**Guaranty Litigation**"); (ii) there is no meaningful overlap between this litigation and the Guaranty Litigation; and (iii) the substantial risk of confusion of the issues between the cases and prejudice to PNC.

*First*, the Motion is premature because there is a pending Motion to Remand in the Guaranty Litigation. For the reasons set forth in the Motion to Remand, the "snap" removal of the Guaranty Litigation to federal court violated the forum defendant rule, and it should therefore be remanded to state court. Therefore, the Court lacks the requisite subject matter jurisdiction to grant Defendants' Motion as to the Guaranty Litigation.

*Second*, the issues in the Guaranty Litigation have little or nothing to do with the issues in this case. As the Court is aware, this case is a dispute between former partners related to the First GP's actions with respect to the Partnership. The other three defendants are guarantors of those *First GP* obligations. But in the Guaranty Litigation, PNC seeks to enforce a totally separate guaranty of an outstanding loan. Until quite recently and for almost the entirety of its existence, that guaranty was for the benefit of JPMorgan Chase Bank, N.A. ("**Chase**"), not PNC. PNC has merely stepped into Chase's shoes following an assignment by Chase. The First GP, the principal defendant in this case, is not even a party to the Guaranty Litigation. Similarly, PNC is the only plaintiff in the Guaranty Litigation, while all of PNC, Columbia, and the Partnership are plaintiffs in the instant case. PNC even has separate counsel in the Guaranty Litigation because of the separate nature of the agreements at issue. Thus, there is no material factual overlap between the two cases.

***Third***, consolidation presents a substantial risk of confusion of the issues and prejudice to PNC. Because the guaranty of the Chase construction loan contains a clear jury waiver, the Guaranty Litigation will be the subject of a bench trial. In contrast, although not entitled to one on all claims, Defendants have demanded a jury in the instant litigation. There is no similarity in the defenses at issue in each case—particularly since the Chase guarantors have waived any and all such defenses. Thus, if the cases were consolidated, a jury would likely be required to hear substantial testimony concerning Chase, the guaranty, and the assignment process that has nothing to do with their decision in the instant case. Moreover, given the overlap in some parties between the cases and the already complex nature of the relationships, duties, and obligations arising under the Partnership Agreement at issue in this case, there is a substantial risk that a jury would be confused by hearing testimony concerning agreements and parties over which it will not decide. Finally, consolidation might prevent entry of a final judgment in the Guaranty Litigation, despite the straightforward nature of the issues (and waiver of any defenses).

For these reasons, Defendants' Motion should be denied.

## II. BACKGROUND AND PROCEDURAL HISTORY

A. **The Partnership Litigation.**

On or about May 23, 2014, PNC and Columbia, as limited partners, and the First GP, as the original general partner, entered into the Amended and Restated Agreement of Limited Partnership of 2013 Travis Oak Creek, LP (the "**Partnership Agreement**"). [*See* ECF Doc. No.72-3 (Plaintiffs' Exhibit No. 3).] The Partnership Agreement is the governing document of the Partnership. The purpose of the Partnership is to develop, construct, and operate a low-income housing multifamily apartment complex located in Austin, Texas, known as the Lucero Apartments (the "**Property**").

Under the Partnership Agreement, the First GP was the Partnership's original general partner, and PNC and Columbia were limited partners overseeing their investment. *See id.* §§ 1.3; 6.1; 7.1–7.2. The First GP was to manage, oversee, and ensure the successful construction and ongoing operation of the Project. *See id.* §§ 6.1, 6.5 & 6.7. Importantly, the Partnership Agreement provided that if the First GP failed to fulfill its contractual obligations, then an "**Event of Default**" would occur, which by agreement would empower Columbia to remove and replace the First GP. *See id.* § 7.7.

Based on the First GP's Events of Default, on June 7, 2017, Columbia exercised its contractual right to remove and replace the First GP as the Partnership's general partner. When the First GP flatly refused to relinquish control of the Partnership and instead interfered with Columbia's right to perform as general partner, this litigation ensued. After listening to a full day of evidence and two subsequent hours of oral argument from counsel, the Court found a substantial likelihood that the First GP committed multiple Events of Default, and entered a preliminary injunction prohibiting Defendants from interfering with Columbia's role as the sole general partner in the Partnership. [*See* ECF Doc. No. 73.]

**B.     The Unrelated Guaranty Litigation.**

The Partnership originally obtained a loan for the construction of the Lucero Apartments complex from Chase in the original principal amount of $26,000,000.00 (the "**Chase Construction Loan**"). As part of that loan, Rene O. Campos, 2013 Travis Oak Creek Developer, Inc., Chula Investments, Ltd., and Eureka Multifamily Group, LP signed an unconditional Guaranty of Payment and Completion (the "**Chase Guaranty**") in favor of Chase that guarantied all of the Partnership's obligations under the Chase Construction Loan, as well as the completion of the Lucero Apartments complex and performance by the Partnership's general contractor,

Weis Builders, Inc. ("**Weis**"). Chase also obtained a mortgage on the Property under a deed of trust that secured the Chase Construction Loan. The Chase Guaranty provides that:

> … the [guarantors] absolutely, unconditionally, and irrevocably waive any and all right to assert or interpose any defense (other than the final and indefeasible payment in full of the Debt), setoff, counterclaim or crossclaim of any nature whatsoever with respect to this Guaranty or the obligations of the undersigned under this Guaranty … .

Thus, the Chase Guaranty contains a broad waiver of all defenses to liability.

As a result of the First GP's failure to cause the Partnership to close on a permanent mortgage loan, the Partnership defaulted on the Chase Construction Loan, which had a maturity date of May 23, 2017. On June 2, 2017, Chase sent the Partnership a Notice of Default declaring the Partnership to be in formal default on the Chase Construction Loan and reserving the right to exercise any and all remedies against the Partnership, including against any collateral.

On October 3, 2017, Chase and PNC entered into a Sale and Assignment Agreement whereby PNC agreed to purchase the Chase Construction Loan. On October 12, 2017, that sale closed, and Chase executed an Assignment of Deed of Trust and Other Loan Documents in favor of PNC.

On November 4, 2017, PNC filed suit on the Chase Guaranty in state court in Travis County, Texas, against guarantors 2013 Travis Oak Creek Developer, Inc., Chula Investments, Ltd., Rene O. Campos, and Eureka Multifamily Group, LP (the "**Guaranty Defendants**"). On that same date, the Guaranty Defendants removed that case to federal court. [*See* Case No. 1:17-cv-01081-RP.]

### III. LEGAL STANDARD

Rule 42(a) provides that "[w]hen actions involving a common question of law or fact are pending before the court, … ***it may*** order all the actions consolidated … ." FED. R. CIV. P. 42(a)

(emphasis added). Courts may consider a number of factors when considering whether to consolidate cases, such as whether actions are pending in the same court, whether common parties are involved in the cases, whether there are common questions of law or fact, whether there is risk of prejudice or confusion if the cases are consolidated, and if so, whether the risk is outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are tried separately, and whether consolidation will conserve judicial resources and reduce the time and cost of trying the cases separately. *See, e.g.*, *Pfeffer v. HAS Retail, Inc.*, Civ. Ac. No. SA–11–CV–959–XR , 2012 WL 394645, at *1 (W.D. Tex. Feb. 6, 2012); *Mayfield v. Am. Auto Ins. Co.*, No. Civ. A. 502CV256C, 2003 WL 21250935, at *1 (N.D. Tex. May 27, 2003).

## IV.     ARGUMENT AND AUTHORITIES

**A.     The Court's Subject Matter Jurisdiction Over the Guaranty Litigation Is in Considerable Question, and Therefore the Motion Is Premature.**

The Motion to Consolidate is premature because the Guaranty Litigation is likely to be remanded back to Texas state court as the Court lacks subject matter jurisdiction over that case.

On November 29, 2017, PNC filed a Motion to Remand in the Guaranty Litigation. [*See* Case No. 1:17-cv-01081-RP, ECF Doc. No. 7.][1] The Motion to Remand demonstrates that all of the Guaranty Defendants are Texas citizens; indeed, they admit this in their Notice of Removal. Thus, they are all "forum-defendants" for purposes of 28 U.S.C. § 1441(b)(2). Under the long-established "forum defendant rule," they were not entitled to remove the case to federal court. *See, e.g.*, *In re Exxon Chem. Fire*, 558 F.3d 378, 391 (5th Cir. 2009).

Nevertheless, the Guaranty Defendants removed the Guaranty Litigation within hours of its filing—a so-called "snap removal"—hoping to take advantage of the fact that they had not yet been served. As discussed in the Motion to Remand, snap removals by forum defendants are not

---

[1] The Motion to Remand is incorporated herein by reference for all purposes.

permitted. *See, e.g.*, *Leech v. 3M Co.*, No. CV-17-446, 2017 WL 433424, at *7 (E.D. La. Sept. 30, 2017), *Smethers v. Bell Helicopter Textron, Inc.*, No. 6-16-cv-58, 2017 WL 1277512, at *3 (S.D. Tex. Apr. 4, 2017). Indeed, allowing forum defendants to remove to federal court simply because they have not been served would gut § 1441(b)(2), and "yield[] an undeniably absurd result." *Breitweiser v. Chesapeake Energy Corp.,* No. 3:15-cv-2043-B, 2015 WL 6322625, at *5 (N.D. Tex. Oct. 20, 2015). For that reason, the Guaranty Litigation will likely be remanded to state court in Travis County, Texas.

Given the pendency of the Motion to Remand, the Motion to Consolidate is premature. If the Court agrees with its sister courts in the Fifth Circuit and remands the case, then there will be no subject matter jurisdiction and no pending Guaranty Litigation to consolidate with this case. Since subject matter jurisdiction is a threshold determination, the Motion to Consolidate should not be decided until after the Court enters an order on PNC's pending Motion to Remand the Guaranty Litigation.

**B.     The Facts Underlying the Two Lawsuits Are Completely Different.**

Further, the facts underlying the instant lawsuit and the Guaranty Litigation are connected only on the most superficial level.

The Motion contains no real argument that the two cases should be consolidated. It does not discuss any of the factual allegations at issue in each case, and contains little more than a boilerplate recitation of Rule 42(a) and conclusory statements that consolidation is appropriate. As such, Defendants have failed to meet their burden as movants, and they cannot remedy this defect by reply brief.

In this lawsuit, PNC and Columbia seek to recover for the First GP's breaches under the Partnership Agreement and sought injunctive relief seeking to prevent Defendants from interfering with Columbia's right to act as successor general partner in the Partnership, which the

Court granted. [*See* ECF Doc. No. 9 (First Amended Complaint ¶¶ 20–24) ("**Amended Complaint**"); ECF Doc. No. 73 (Order on Motion for Preliminary Injunction).] The other Defendants are guarantors of the First GP's obligations *under the Partnership Agreement*. *See* Amended Complaint ¶¶ 29–30. The principal defendant in this case is the First GP, and the disputes at issue center around the First GP's operation of the Partnership and the First GP's failures to comply with the performance requirements and benchmarks set forth in the Partnership Agreement. *See id.* ¶¶ 35–39. The Chase Construction Loan is relevant only in the sense that it exists, and the First GP allowed it to go into default. *See id.* ¶ 20. The enforcement of the Chase Construction Loan is manifestly not at issue.

In contrast, the Guaranty Litigation concerns agreements and events related to Chase. [*See* Case No. 1:17-cv-01081-RP, ECF Doc. No. 1-1 (Original Petition ¶¶ 11–13).] Indeed, Chase was the lender on the Chase Construction Loan for 99% of its existence. *See id.* When it assigned its interest to PNC, it did so for valuable consideration. *See id.* ¶ 15. At that time, PNC stepped into Chase's shoes as assignee. *See id.* ¶ 16–18. Thus, the Guaranty Litigation is no different than if Chase had chosen to file that lawsuit for itself. The facts at issue in that case have nothing to do with the Partnership dispute over the First GP's defaults. The only questions in the Guaranty Litigation are whether there was a valid, outstanding debt and whether the Guaranty Defendants are obligated to pay it off under the Chase Guaranty. *See id.* ¶¶ 19–24; *see also Sunbelt Sav., FSB, Dallas, Tex. v. Birch*, 796 F. Supp. 991, 995 (N.D. Tex. 1992) (establishing straightforward elements in guaranty lawsuit and granting summary judgment for beneficiary of guaranty). In fact, PNC is not even represented by the same counsel in the Guaranty Litigation as Plaintiffs in this case. *See id.* at p. 9.

Notably, the First GP—the principal defendant in this case—is not a party to the Guaranty Litigation because it is not a guarantor of the Chase Construction Loan. Similarly, Eureka Multifamily Group, LP—which is the primary operating company of the various Guaranty Defendants—is not a defendant in this case because it is not a guarantor of the First GP's obligations under the Partnership Agreement. Thus, while the difference in defendants between the two cases is numerically small, the key defendant present in each case but not in the other one has an immense importance to the facts of that particular suit. Additionally, the only plaintiff in the Guaranty Litigation is PNC, as lender. In this case, Columbia and the Partnership are also Plaintiffs—precisely because this case is about a dispute between former partners of the Partnership, not a lender and its guarantors. Thus, the similarity in parties is substantially less than first meets the eye.

For these reasons, there is little or no overlap between the two suits. This lawsuit is a partnership dispute. The Guaranty Litigation is about the failure of certain guarantors to pay off the Chase Construction Loan. Pursuing the Guaranty Litigation does not affect any Guaranty Defendant's rights in the instant lawsuit.

C.      There Is A Substantial Risk of Confusion of the Issues and Prejudice to PNC.

Finally, there is a substantial risk of confusion of the issues and prejudice to PNC because, while the instant litigation and the Guaranty Litigation have some of the same parties, the defendants are liable in each of the two suits for very different reasons.

Defendants have demanded a jury in this lawsuit, while none of the claims in the Guaranty Litigation will go to a jury, since the Chase Guaranty contains a straightforward jury waiver. Even assuming, *arguendo*, that the Defendants in the instant case had any valid defenses, those defenses couldn't apply in the Guaranty Litigation because the Guaranty Defendants waived the right to raise any defenses. *See, e.g.*, *Fed. Deposit Ins. Corp. v. Nobles*, 901 F.2d 477,

480 (5th Cir. 1990) ("Under general contract law, waivers ... found in ... the guaranty agreement[] are valid and enforceable."); *Interstate 35/Chisam Road, L.P. v. Moayedi*, 377 S.W.3d 791, 800 (Tex. App.—Dallas 2012), *aff'd* 438 S.W.3d 1 (Tex. 2014) (holding waiver of "each and every such defense" encompassed all possible defenses and conveyed intent that guaranty would not be subject to any defense other than payment). But there is a substantial risk that the defendants will attempt to conflate their defenses in each case to confuse the jury over issues that have little to do with each other. Indeed, that is likely why they are so eager to consolidate the two cases. Further, explaining the reasons why the defenses in each case are distinct (or do not legally apply) is also likely to be confusing to potential factfinders.

Similarly, the difference between the Defendants in this case and the Guaranty Defendants in the Guaranty Litigation would likely be confusing to potential jurors. This Partnership litigation and the relationships between the First GP, on the one hand, and PNC and Columbia, on the other hand, are already complicated, particularly given the complex nature of the business deal set forth in the Partnership Agreement. It would likely risk confusing a jury to bring unrelated claims on the Chase Guaranty into this case by widening the amount of information presented concerning the structure of a number of financial transactions involving many different parties—information that would have no relevance to the determinations at issue in the instant litigation. For example, to present the issues to the Court, the jury would unavoidably hear extensive testimony concerning the Chase Guaranty, its assignment to PNC, and so forth. At the very least, a juror would rightfully wonder what those issues had to do with the issues presented under the Partnership Agreement. It would likely be difficult for a factfinder to keep such questions separate and avoid confusing the relationships at issue.

Further, assuming the cases were consolidated, it would likely delay the final resolution of one of the disputes. In particular, the Guaranty Litigation is straightforward and will take less time and discovery than this case. If a summary judgment were entered in the Guaranty Litigation before the instant case is resolved, the summary judgment might remain interlocutory for an extended period of time pending the outcome of this case. But there would be no reason to postpone enforcement of such a judgment while this case remained pending. Thus, there is a substantial risk of prejudice to PNC from such consolidation.

Plaintiffs respectfully submit that consolidating the two suits would make the lawsuit too unwieldy for jurors and would cause needless confusion and inefficiency. Given that the two cases have very little overlap, the risk of confusion outweighs the minimal benefit of combining two suits that are only peripherally related to one another. For these reasons, consolidation would be inadvisable given its extremely limited utility.

## V.     CONCLUSION

Plaintiffs respectfully request that the Court (i) deny Defendants' Motion to Consolidate [ECF Doc. No. 107]; and (ii) grant Plaintiffs all such other and further relief to which they may be justly entitled.

| | |
|---|---|
| Dated: December 6, 2017. | By: /s/ *Robert M. Hoffman* |
| | Robert M. Hoffman |
| | Texas Bar No. 09788200 |
| | robhoffman@andrewskurth.com |
| | James C. Bookhout |
| | Texas Bar No. 24087187 |
| | jamesbookhout@andrewskurth.com |
| | **ANDREWS KURTH KENYON LLP** |
| | 1717 Main Street, Suite 3700 |
| | Dallas, Texas 75201 |
| | Telephone:   (214) 659-4400 |
| | Facsimile:    (214) 659-4401 |
| | |
| | David P. Whittlesey |
| | Texas Bar No. 00791920 |
| | dwhittlesey@andrewskurth.com |
| | **ANDREWS KURTH KENYON LLP** |
| | 111 Congress Avenue, Suite 1700 |
| | Austin, Texas 78701 |
| | Telephone:   (512) 320-9200 |
| | Facsimile:    (512) 320-9292 |
| | |
| | **ATTORNEYS FOR PLAINTIFFS PNC BANK, N.A., COLUMBIA HOUSING SLP CORPORATION, AND 2013 TRAVIS OAK CREEK, LP** |

## **CERTIFICATE OF SERVICE**

I certify that on December 6, 2017, a copy of the foregoing document was served on all counsel of record via the Court's CM/ECF facilities.

                                        */s/ Robert M. Hoffman*
                                        Robert M. Hoffman