UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| PNC BANK, N.A. COLUMBIA § <br> HOUSING SLP CORPORATION, and § <br> 2013 TRAVIS OAK CREEK, LP § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> 2013 TRAVIS OAK CREEK GP, LLC, § <br> 2013 TRAVIS OAK CREEK § <br> DEVELOPER, INC., § <br> CHULA INVESTMENTS, LTD., § <br> and RENE O. CAMPOS § <br> § <br> Defendants. § <br> ------------------------------------------------------ <br> 2013 TRAVIS OAK CREEK GP, LLC § <br> and 2013 TRAVIS OAK CREEK, LP, § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> PNC BANK, N.A. and COLUMBIA § <br> HOUSING SLP CORPORATION § <br> § <br> Defendants. § | Civil Action No. 1:17-cv-584-RP <br> (Consolidated with 1:17-cv-560-RP) |

**MOTION TO APPOINT RECEIVER**
**(ORAL HEARING IS REQUESTED)**

2013 Travis Oak Creek GP, LLC, ("TOCGP") files this Motion to Appoint Receiver, pursuant to Rule 66, F. R. Civ. P. and respectfully shows as follows:

**FACTS**

1.   In its August 2, 2017 Order [Doc. 73, p. 24], the Court noted that "all parties are in agreement that some form of equitable relief is necessary to provide clarity as to what entity is the

MOTION TO APPOINT RECEIVER                                                                                                         Page 1

general partner and allow the Partnership to secure permanent financing out from under the cloud of litigation[1] . . . The Court must do something, the question is simply what." The Court further stated [Doc. 73, fn. 1], the following;

> For the reasons outlined in this order, the Court grants Plaintiffs' motion for a preliminary injunction. For the same reasons, and because the injunctive relief granted herein obviates the need for a receiver, the Court denies Defendants' motion for a receiver and ancillary injunctive relief.

2.      Explaining its reasons for granting the injunctive relief, thereby obviating the need for a receiver, the Court observed [Doc. 73 at p. 23, emphasis added] "PNC and Columbia Housing contend[ed] the requested injunction will clarify what entity controls the Partnership **and thereby allow the Partnership to secure permanent financing and pay off the Construction Lender"** (*i.e.,* **Chase Bank)**. The Court also expressed [Doc. 73 at p. 23] its concern that time was of the essence in allowing Columbia to take the "necessary steps to secure financing and cure [the Partnership's] default."

3.      On November 13, 2017, Defendants filed a Motion to Clarify or Modify Preliminary Injunction [Doc. 103], in which Defendants write:

> The Court's injunction order was premised upon emphatic promises and sworn pledges by PNC Bank N.A. ("PNC Bank") and Columbia (together, the "PNC Parties") and their counsel during the preliminary injunction hearing in July 2017 that if an injunction was ordered, the PNC Parties would cause Chase Bank – the Partnership's construction lender – to be paid, thereby curing the Partnership's ongoing post-loan maturity/non-payment default; and that the PNC Parties would bond around or otherwise secure Weis Builder's general contractor's lien against the Partnership's property. In fact, as shown below, the PNC Parties swore they would immediately take this action on behalf of the Partnership after complaining that Travis Oak Creek GP's supposed refusal to do so caused the Partnership to face imminent foreclosures.

---

[1] The Court previously had been informed that because this litigation had been commenced and given the Partnership control disputes and questions presented, Arbor Commercial Mortgage had withdrawn its willingness to refinance the Chase Bank construction loan.

4. That motion specifically complains about the fact that three plus months after obtaining control of the Partnership through the injunction they obtained upon promising and pledging they would act as fiduciaries and immediately refinance and take out the Chase loan (and secure the Weis lien) – an injunction the Court seemingly entered for that purpose, Columbia and PNC Bank have done neither. The motion asks the Court to compel Columbia – the Partnership's acting general partner – to refinance the Chase loan as promised or pledged or to allow Defendants to find such a new loan for the Partnership's benefit to cure *its* default under the Chase loan, given Columbia's refusal to do so.

5. A day or two after filing that motion, Defendants discovered that while the Defendant guarantors of the Chase loan were attempting to determine the status of the PNC Parties' efforts to refinance the Chase debt and cure the Partnership's default thereunder after the injunction was entered, PNC and Columbia were concealing from the guarantors that they had no intention of refinancing the debt or curing the default on behalf of the Partnership.

6. In lieu of Columbia fulfilling its refinance and cure promise to the Court, and its refinance obligation as the acting general partner under the Partnership Agreement, on October 12, 2017, PNC acquired an assignment of the Chase debt, and on November 14, 2017 – confirming the Partnership's default under the Chase loan has not been cured by the Partnership or refinanced -- PNC (acting as the new holder of that debt) filed a suit in state court to recover the full amount of the Partnership's defaulted debt to Chase from the Defendant guarantors. That suit was removed and is now pending in this Court. Defendants' consolidation motion and PNC Bank's remand motion are also pending.

7. PNC's and Columbia's Motion for Preliminary Injunction acknowledges the Chase construction loan was a temporary financing arrangement, and the Partnership Agreement requires

its retirement upon maturity via a refinance by the Partnership, with a new loan. *See* Motion [Doc. 10 (in the Northern District proceeding), at p. 5]. Since becoming the Partnership's acting general partner, Columbia has failed to cause the Partnership to refinance the Chase loan with a new loan (as the Partnership Agreement requires, and as Columbia promised the Court it would do as a basis for being granted the right of control via an injunction), or otherwise cure the Partnership's default.[2]

8.   The Court has observed [Doc. 73, p. 20] "[t]here is some evidence in the record suggesting that PNC and Columbia Housing may not have always had the Partnership's best interests at heart." Now, the PNC Parties object to any notion that the Court can compel them to refinance the Chase debt they concede the acting general partner is required and duty-bound to refinance (and to any notion that the Court can compel them to bond around the Weis lien). They object to the notion of TOCGP being reinstated as the acting general partner or otherwise being permitted to obtain refinancing of the Partnership's Chase debt, on the Partnership's behalf. Indeed the PNC Parties object to any modification or clarification of the injunction that would cause its purposes to be effectuated, in particular, its purpose in causing the Partnership to refinance its Chase loan debt and cure the Partnership's default thereunder.

9.   Ignoring its assurances to the Court, PNC Bank has not acted to benefit the Partnership by, for example, reinstating the Chase debt and extending its payoff date, or even passing along to the Partnership any discounts in the purchase price PNC paid to acquire the loan, as a true-partner acquiring the debt might do.[3] Instead the Chase loan continues to exist, in default.

---

[2] Ironically, the PNC Parties' counsel has argued that the Partnership through its acting general partner has a *duty* to pay off the Chase loan, a duty that is intended to benefit the entire Partnership. *See* Exhibit "B," Transcript Excerpt, p. 13, l. 1-8.

[3] PNC Bank (through counsel Mr. Hoffman) has been asked to identify what it paid to acquire the Chase loan. PNC Bank (through Mr. Hoffman) has confirmed its refusal to provide the information.

**MOTION TO APPOINT RECEIVER**                                                                                     **Page 4**

PNC seeks payment of its unpaid principal balance, in full. And now, the Partnership is at the mercy of PNC Bank with regard to what PNC Bank itself has argued, in this case, is a mandatory and imminent foreclosure obligation. As the transcript excerpts attached to this Motion confirm, insisting that foreclosure was imminent during the preliminary injunction hearing in this case, counsel for the PNC Parties (Mr. Hoffman) urgently argued the following:

    a.    Chase Bank is highly regulated as banks are, in the highly regulated banking industry;[4]

    b.    There is no way that a regulator is going to allow Chase to carry a $26 million bad loan or defaulted loan on its books when there is a $50 million apartment complex that sits for the taking in a foreclosure sale;[5] and,

    c.    PNC is subject to the same OCC regulations that Chase is subject to.[6]

If regulated banks like Chase and PNC – bound by the same regulatory requirements – *must* promptly foreclose upon collateral property when it is worth more than the amount due on a defaulted debt that is secured by that property, rather than keep the defaulted loan on its books, the Partnership now remains at imminent and (given the duration of the default) a greater risk of facing a required foreclosure, at the hands of one of its partners who, regulatorily must foreclose, according to its lawyer.

    10.    Moreover, in failing and refusing to refinance the Chase debt in the manner required by the Partnership Agreement, and choosing instead to allow PNC (a partner in the Partnership and adverse lender holding a defaulted debt) to sue the guarantors for collection, Columbia Housing (a PNC Bank subsidiary) is exposing the Partnership to litigation over the debt that

---

[4] *See* Transcript Excerpt, Exhibit "A," p. 5, l. 24 to p. 6, l.1.

[5] *See* Exhibit "A," p. 6, l. 2-5; Exhibit "B," p. 15, l. 3-9.

[6] *See* Exhibit "B," p. 16, l. 17-19.

otherwise would not exist, because the guarantors will have to sue the Partnership and Columbia, for contribution and indemnity and/or under the theory of equitable subrogation.

## ARGUMENT AND AUTHORITIES

The PNC Parties are not managing the affairs of the Partnership for the benefit of the Partnership, or the benefit of all the partners. Vacating the injunction and vesting control over the Partnership in someone who neutrally will report to and act under the supervision of the Court, neutrally managing the Partnership's affairs and obligations in the interests of the Partnership and all of its partners while the merits of the case are adjudicated, is something the Court should consider at this juncture.

Pursuant to Rule 66, F. R. Civ. P., appointment of a receiver may be sought "by anyone showing an interest in certain property or a relation to the party in control or ownership thereof such as to justify conservation of the property by a court officer," and it is in the sound discretion of the court to appoint one. *Santibanez v. Wier McMahon & Co.,* 105 F.3d 234, 241 (5th Cir. 1997). "[T]he forum and quantum of evidence required on a motion requesting the appointment of a receiver is a matter of judicial discretion." *Id.* A court can appoint a receiver to preserve property pending final merits of a claim. *Id.* (citing *Haase v. Chapman,* 308 F. Supp. 399 (W.D. Mo. 1969).

To determine the necessity to appoint a receiver, courts have considered factors including: "a valid claim by the party seeking the appointment; the probability that fraudulent conduct has occurred or will occur to frustrate that claim; imminent danger that property will be concealed, lost, or diminished in value; inadequacy of legal remedies; lack of a less drastic equitable remedy; and likelihood that appointing the receiver will do more good than harm." *Id.* at 241-42.

A court may appoint a receiver in an action between partners or others jointly owning or interested in any property or fund, and such appointment request is governed by the rules of equity.

*See*, Sections 64.001(a)(3) and (6) and 64.004, Tex. Civ. Prac. & Rem. Code, and Sections 11.402(a) and 11.403(a)(3), Tex. Bus Org. Code.

The appointment of a receiver will protect the Partnership and its property, ensure the Partnership meets is obligations and acts in accordance with the Partnership Agreement. TOCGP has grave concerns that give rise to this request. As the Court is aware, TOCGP is still a partner in the Partnership, having forfeited no interests. As the Court also is aware, the PNC Parties have sued TOCGP in this case to force its repurchase of the PNC Parties' interests in the Partnership, so they may exit the Partnership. TOCGP has offered to repurchase those interests for the price set forth in the provision of the Partnership Agreement that sets the purchase price, but PNC and Columbia demand a substantially greater price, and thus will not sell. Assuming such a repurchase nevertheless may occur in the future, TOCGP is concerned about what the Partnership's and its property's condition will look like as a result of the PNC Parties' interim mismanagement, and their ongoing self-dealing in lieu of managing the same as the fiduciary they claim to be  A receiver can alleviate these concerns.

A receiver should be appointed to:

    a.    Obtain and close financing to replace the Chase loan and cure the Chase Bank post maturity default; and,

    b.    Manage and operate the affairs and business of the Partnership until such time as the Court adjudicates the question of who will be the authorized general partner, and the Partnership's partners, on an ongoing basis, post-litigation.

Such an appointment will also allow the Court to efficiently achieve the orderly disposition of the parties' claims. *Woodson v. Surgitek, Inc.,* 57 F.3d 1406, 1417 (5th Cir. 1995).

Respectfully submitted,

*/s Kenneth B. Chaiken*
Kenneth B. Chaiken
State Bar No. 04057800
kchaiken@chaikenlaw.com

**CHAIKEN & CHAIKEN, P.C.**
Legacy Town Center III
5801 Tennyson Parkway
Plano, Texas 75024
(214) 265-0250 telephone
(214) 265-1537 facsimile

William S. Rhea
State Bar No. 16807100
brhea@dbc.com

**DuBOIS, BRYANT & CAMPBELL, LLP**
303 Colorado Street, Suite 2300
Austin, TX 78701
(512) 457-8000
(512) 457-8008 (Facsimile)

**ATTORNEYS FOR DEFENDANT**

Karl S. Stern
State Bar No. 19175665
karlstern@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
711 Louisiana Street, Suite 500
Houston, Texas 77002
(713) 221-7000
(713) 221-7100 (Facsimile)

**ATTORNEYS FOR DEFENDANTS 2013 TRAVIS OAK CREEK GP, LLC AND RENE O. CAMPOS**

## CERTIFICATE OF CONFERENCE

I hereby certify that I have conferred with Robert Hoffman, counsel for PNC Bank, National Association and Columbia Housing SLP Corporation, and Mr. Hoffman informed us that Respondents opposing the relief requested in this Motion.

/s Kenneth B. Chaiken
Kenneth B. Chaiken

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on all counsel of record via the Court's electronic filing system on this 11th day of December, 2017.

/s Kenneth B. Chaiken
Kenneth B. Chaiken