# EXHIBIT B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

PNC BANK N.A.,                          )
COLUMBIA HOUSING SLP CORPORATION        )
                                        )
            Plaintiffs,                 )
                                        )
       vs.                              ) Case No. 17-CV-584-RP
                                        )
2013 TRAVIS OAK CREEK GP, LLC,          )
2013 TRAVIS OAK CREEK DEVELOPER INC,    )
CHULA INVESTMENTS LTD.,                 )
RENE O. CAMPOS,                         )
                                        )
            Defendants.                 )
_____)

TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING
BEFORE THE HONORABLE ROBERT PITMAN,
TUESDAY JULY 25, 2017, 1:00 P.M.

FOR THE PLAINTIFF:   ROBERT M. HOFFMAN, ESQ.
                     JAMES C. BOOKHOUT, ESQ.

FOR THE DEFENDANT:   KENNETH B. CHAIKEN, ESQ.
                     WILLIAM S. RHEA, ESQ.
                     MILLICENT M. LUNDBURG, ESQ.

Proceedings recorded by mechanical stenography, transcript
produced using computer aided transcription.

Pamela J. Andasola, CSR/RMR/FCRR
FEDERAL OFFICIAL COURT REPORTER
355 EAST CESAR E. CHAVEZ BLVD.
SAN ANTONIO, TEXAS 78210

2

1         <u>AFTERNOON SESSION, JULY 25, 2017</u>

2                     \*\*\*\*\*

3      (The following proceedings were had in

4      open court with all parties present at

5      the hour of 1:00 p.m.)

6                     \*\*\*\*\*

7      THE CLERK: Court calls 17-CV-584, PNC Bank, N.A.,

8 Columbia Housing SLP Corporation versus 2013 Travis Oak

9 Creek GP, LLC, and others, for continuation of preliminary

10 injunction hearing.

11      THE COURT: If I can get announcements for the

12 record, please.

13      MR. HOFFMAN: Rob Hoffman and James Bookhout for

14 the plaintiffs, Your Honor.

15      MR. CHAIKEN: Good afternoon, Judge.

16      Kenneth Chaiken, Bill Rhea and Millicent Lundburg

17 for the other parties, whatever we're calling them. And

18 Rene Campos is here with us again.

19      THE COURT: Good afternoon. Thank you.

20      So, before you make whatever sort of summary

21 argument you would like to make following our hearing last

22 week, let me just reiterate what I have expressed in the

23 past to no avail but it doesn't hurt to mention it again,

24 and that is what occurred to me before the hearing, but

25 especially after the hearing, is the extent of which -- I'm

1  construction documents.  But that's not what the
2  construction documents say.
3          The -- a lien is created by statutory law,
4  mechanic's lien law.  The construction-law documents merely
5  say that if a lien is filed, here's how you have to deal
6  with it.  It doesn't say go out and create a lien
7  contractor.  It just gives you a condition for -- or gives
8  you circumstances in which to -- if there isn't a lien
9  against the property, here's how you handle it.
10         In fact, the construction documents say the
11 opposite.  They say you have to produce a lien waiver,
12 completely inconsistent to their argument.
13         Fourth, is the contractor lawsuit, another event
14 of default.  Weis Builders is using this lawsuit to
15 foreclose on it's mechanic's lien.  They are seeking
16 $3.285-million in those damages, also delayed damages of an
17 unknown quantity plus 18 percent interest annually under the
18 Prompt Payment Act.  That's an estimated exposure of the
19 partnership of between 5- and $10-million.
20         That lawsuit remains unbonded and again no reserve
21 has -- no contingency reserve has been created by that
22 partnership or by the original GP.
23         Fifth -- and I'll move away from the events of
24 default -- is receivership.  They clearly promise not to
25 pursue a case for receiver.  They say, Well it's not an

                                                                13
1  insolvency receiver, but that doesn't make sense either.
2  The partnership is insolvent.  They have a duty to pay its
3  debts when they become due.  They haven't done that.  The
4  $26 million, the 5- to $10-million for Weis, the mechanics
5  lien, et cetera.
6           The partnership is not able to pay its debts when
7  they become due, there are no reserves set up for these
8  contingencies.
9           THE COURT:  Slow down a little bit.
10          MR. HOFFMAN:  Oh, I'm sorry.  I get so excited.
11          THE COURT:  Yeah.
12          MR. HOFFMAN:  That is the definition of
13 insolvency.
14          All right.  So here what -- getting to the Court's
15 question, PNC could not -- could not hold out any longer.
16 On February 28th, 2017, PNC sent a notice to the original GP
17 to clean up its defaults or risk removal as the GP.
18          As the partnership agreement requires, PNC gave 15
19 business days for this cure to take place.  But PNC didn't
20 rush after 15 business days and rush with a Notice of
21 Removal.
22          But things continued to get worse.  The defaults
23 continued to pile up.  To your point about why only three
24 defaults are mentioned on February 28th; more and more
25 defaults piled up.

1         And then, finally, the Chase construction loan
2    default was the straw that broke the camel's back.  A
3    default on a first mortgage loan of $26-million would be a
4    final straw for any prudent investor because it threatens to
5    lose the very reason for this single purpose entity.  So on
6    June 7th, a Notice of Removal was sent, ninety days after
7    the February 28th email -- I'm sorry, February 28th letter,
8    not fifteen business days, ninety days.  And as you used the
9    words, it was self-effectuating.  The Columbia Housing
10   immediately became the GP and now they're trying to stop
11   that.
12        So, the original GP has placed this partnership in
13   a perilous situation.  This, as admitted, was the original
14   general partners' first new construction project.  It was
15   its first low-income housing project.  Under the partnership
16   agreement, the original GP took on the responsibility to
17   avoid and clean up all of these defaults and it failed in
18   its general-partner obligations.  There was no options for
19   PNC, other than to try and save the partnership, which is
20   the effect of the June 7th notice of removal of the failing
21   original GP.
22        Now, Your Honor, moving on to substantial threat
23   of irreparable harm, there are three plaintiffs.  Let's talk
24   about the partnership first and the irreparable harm to the
25   partnership.  The partnership is facing an imminent

```
                                                                  15
 1   foreclosure from Chase.  The loss of the Lucero Apartments
 2   complex will be the end of this partnership.  It will end
 3   its existence.  Chase is exercising its remedies.  It's
 4   doing everything it can to move toward foreclosure,
 5   including taking partnership cash and moving toward the --
 6   satisfying the OCC guidelines.
 7           Chase cannot keep a $26 million postmaturity
 8   default on its books when there's collateral that's more
 9   than sufficient to cover it.  Now, as the Court is aware,
10   Texas law only requires 21 days' notice between posting the
11   foreclosure and selling the property at auction.  If it
12   sells at auction, the next owner is not required to des --
13   keep the designation of affordability, low-income housing.
14   So that's --
15           THE COURT:  That would be a more convincing
16   argument if this was a low-income-housing corporation which
17   was the general partner and that's what their reason for
18   being was and that's why they did this.  You're a bank.  You
19   invested in this, presumably to make money.  So it's about
20   the money and that's why you've made this investment, that's
21   what you were expecting from it.  So doesn't that sort of
22   give strength to their argument that at the end of the day
23   it's just money so you can come after them for money if they
24   owe you money at the end of the day?
25           MR. HOFFMAN:  Your Honor, that's only partially
```


16

1  true. We did invest to make money but we also invested
2  because this was low-income housing and it's important to
3  PNC to promote low-income housing.
4          PNC invests in thousands of low income housing, as
5  it is to any bank, frankly. It's required by law to invest
6  in low-income housing.
7          PNC does it because it's a good thing. Don't get
8  me wrong, I don't want to overstate that. Making money is
9  clearly important, it's important to everybody in this room,
10 but I don't want to diminish the importance of this
11 remaining low-income housing and affordable housing. My
12 point is only this, the citizens of Travis County have this
13 low-income-housing opportunity that is in danger of being
14 lost if there is a foreclosure by Chase.
15         And here's the other problem. PNC cannot easily
16 come back to court after receiving the foreclosure notice
17 from Chase and as a practical matter, and here's why:  PNC
18 is subject to the same OCC regulations that Chase is subject
19 to. PNC has to get an appraisal, PNC has to do that same
20 due diligence before it can by -- it can take care of the
21 Chase foreclosure. It could -- it may be that it might not
22 be able to do that within 21 days' notice, I'm told it takes
23 normally 30 to 40 days to perform all those things, so if --
24 if we're really at the last second, the last moment before
25 these dominoes go into effect and the partnership loses the

79

## C E R T I F I C A T E

     I, Pamela J. Andasola, Certified Shorthand Reporter, Registered Merit Reporter, Federal Certified Realtime Reporter, in my capacity as Official Reporter do hereby certify that I was present and recorded the above proceedings in stenotype and reduced the same to typewritten form, that the foregoing 78 pages constitute a true and complete record of the proceedings, to the best of my ability, had and done on July 25, 2017, before the Honorable ROBERT PITMAN, Courtroom 4 of the United States District Court, Western District of Texas, Austin Division.

     Dated this 31st day of August, 2017.


     s/Pamela J. Andasola
     PAMELA J. ANDASOLA, CSR/RMR/FCRR