# EXHIBIT B

## GUARANTY OF PAYMENT AND COMPLETION

May 23, 2014

WHEREAS, 2013 TRAVIS OAK CREEK, LP, a Texas limited partnership, having an office at 3001 Knox Street, Suite 400, Dallas, Texas 75205 (the "Borrower"), has applied to JPMORGAN CHASE BANK, N.A., a national banking association having an office at 221 W. Sixth Street, Second Floor (Mail Code TX3-8207), Austin, Texas 78701 (the "Lender"), for a loan in the aggregate principal sum of $26,000,000.00 (the "Loan"), which Loan will be evidenced by the Note, secured by the Mortgage, and advanced pursuant to the Loan Agreement, as described and defined in Exhibit A attached hereto;

WHEREAS the Lender is willing to make the Loan to the Borrower only if the undersigned executes and delivers this Guaranty and unconditionally guarantees payment to the Lender of the Debt (as herein defined) in the manner hereinafter provided;

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, and in order to induce the Lender to make the Loan to the Borrower, the undersigned hereby acknowledge, agree and confirm that all of the above recitals are true, correct and complete and hereby covenant and agree with the Lender as follows:

1.   (a)   The undersigned guarantee (each a "Guarantor"), jointly and severally, absolutely, irrevocably and unconditionally, to the Lender the payment of the Debt notwithstanding that advances of the Loan have been, or may be, made in the face of a default under the Loan Documents (hereinbelow defined) or otherwise not in compliance with the lending criteria set forth in the Loan Agreement.  The term "**Debt**" as used in this Guaranty shall mean all liabilities of the Borrower to the Lender of whatever nature, whether now existing or hereafter incurred, whether created directly or acquired by the Lender, by assignment or otherwise, whether matured or unmatured and whether absolute or contingent, any principal, interest, additional interest (including specifically all interest accruing from and after the commencement of any case, proceeding or action under any existing or future laws relating to bankruptcy, insolvency or similar matters with respect to the Borrower) and other sums of any nature whatsoever which may be due or shall become due and payable pursuant to the provisions of the Note, the Mortgage, the Loan Agreement or any other document or instrument now or hereafter executed that governs, secures and/or evidences the Loan (said Note, Mortgage, Loan Agreement and such other documents and instruments, collectively, the "Loan Documents") and any agreement executed by Borrower with respect to any swap, forward,

future or derivative transaction or option or similar agreement involving, or settled by reference to, one or more rates, currencies, commodities, equity or debt instruments or securities, or economic, financial or pricing indexes or measures of economic, financial or pricing risk or value or any similar transaction or any combination of these transactions (all of the above unaffected by modification thereof in any bankruptcy or insolvency proceeding), and even though the Lender may not have allowed a claim for the same against the Borrower as a result of any bankruptcy or insolvency proceeding.

(b)   Without limiting the terms of Section 1(a) above, each Guarantor jointly and severally hereby guarantees the performance by Weis Builders, Inc. ("Contractor") of all the terms and provisions of the Construction Contract (the "Construction Contract") between Borrower and Contractor (which was provided to Lender under and as required by the Loan Agreement) pertaining to Borrower's obligations with respect to the construction of the Improvements.  Without limiting the generality of the foregoing, Guarantor guarantees that:  (a) construction of the Improvements shall commence and be constructed within the time limits set forth in the Construction Contract; (b) the Improvements shall be completed substantially in accordance with the Plans and the other provisions of the Construction Contract, without substantial deviation therefrom unless approved by Lender in writing (or otherwise permitted by the Loan Agreement); (c) the Improvements shall be constructed and completed free and clear of any mechanic's liens, materialman's liens and equitable and other liens except as permitted in the Loan Agreement; (d) all costs of constructing the Improvements shall be paid when due; and (e) the Loan proceeds shall remain available for disbursement free and clear of any mechanic lien affidavits or claims or retention notices.  Completion of the Improvements free and clear of liens shall be deemed to have occurred upon:  (a) (i) Lender's receipt of a written statement or certificate executed by the architect designated or shown on the Plans certifying, without qualification or exception, based solely on the architect's limited obligations for inspection under its contract with Borrower, that the Improvements are substantially completed, and (ii) Lender's receipt of all required occupancy permit(s) for all of the Improvements issued by the local government agency having jurisdiction and authority to issue same, and (iii) the expiration of the statutory period(s) within which valid mechanic's liens, materialman's liens and/or similar affidavits or notices may be recorded and/or served by reason of the construction of the Improvements, or, alternatively, Lender's receipt of valid, unconditional releases thereof from all persons entitled to record said liens or serve said affidavits or notices (unless that lien is bonded around in a manner satisfactory to Lender); or (b) Lender's receipt of such other evidence of lien free completion as Lender deems satisfactory in its reasonable discretion.  With respect to the foregoing, and without limiting Lender, other rights under this Guaranty, if the Improvements are not commenced and completed in the manner and within the time required by the Loan Agreement other than as a result of Lender's failure to make advances of the Construction

Loan when Lender is required by the Loan Agreement, or if, prior to the expiration of the time limits for said completion set forth in the Loan Agreement, the development of the Improvements should cease or be halted prior to completion and such cessation or halt constitutes an Event of Default (as defined in the Loan Agreement), Guarantor shall, promptly upon written demand of Lender:  (a) diligently proceed to complete the Improvements at Guarantor's sole cost and expense, in accordance with the requirements of the Loan Agreement; (b) fully pay and discharge all liens and other claims for labor performed and material and specially fabricated materials furnished in connection with the Improvements (including, without limitation, all cost overruns) (unless bonded around in a manner satisfactory to Lender); (c) release and discharge all mechanic's liens, materialman's liens and equitable liens or related affidavits or notices that may arise in connection with the construction of the Improvements (unless bonded around in a manner satisfactory to Lender); and (d) pay to Lender the amount of any actual loss or damage incurred by Lender as a result of any delay in the completion of the Improvements beyond the time specified in the Loan Agreement for such completion, which amount shall include, but not be limited to interest on the principal amount outstanding under the Loan for any period of such delay which precedes the transfer of title to the Premises to Lender.  Without in any way limiting the above obligations of Guarantor, Lender shall make the undisbursed Construction Loan funds available to Guarantor (pursuant to the terms and conditions of the Loan Documents) for the purposes of completing the Improvements and fulfilling Guarantor's other obligations under this Guaranty; <u>provided</u>, <u>however</u>, that the obligation of Lender to make such undisbursed Construction Loan funds available to Guarantor is expressly conditioned upon: (x) there being no continuing default by Guarantor under this Guaranty; and (y) Borrower (and/or Guarantor) having provided to Lender all additional equity and deposits required by the terms and conditions of the Loan Agreement. Without limiting the foregoing, Guarantor guarantees the payment of all completion bonuses due and payable to Contractor under the terms of the Construction Contract.

2. All capitalized terms used in this Guaranty, which are not otherwise defined herein, shall have the meanings assigned to such terms in the Loan Agreement.

3. The undersigned agree that, except to the extent caused solely and exclusively by the gross negligence or willful misconduct of Lender and/or any other Indemnified Person, the undersigned shall indemnify and hold the Lender harmless and defend the Lender at the undersigned's sole cost and expense against any reasonable loss, liability, cost or expense (including, but not limited to, reasonable attorneys' fees and disbursements of the Lender's counsel, whether in-house staff retained firms or otherwise), and all reasonable claims, actions, procedures and suits arising out of or in connection with:

(a)     any ongoing matters arising out of the transaction contemplated hereby, this Guaranty, the Debt, the Mortgage, the Note, the Loan Agreement any other Loan Document, including, but not limited to, all costs of appraisals and reappraisals of the property encumbered by the Mortgage or any part thereof;

(b)     any amendment to, or restructuring of, this Guaranty, the Debt and the Mortgage, the Note, the Loan Agreement or any of the other Loan Documents;

(c)     any and all lawful action that may be taken by the Lender in connection with the enforcement of the provisions of this Guaranty, the Note, the Mortgage, the Loan Agreement or any of the other Loan Documents, whether or not suit is filed in connection with the same, or in connection with any of the undersigned, the Borrower and/or any partner, joint venturer or shareholder of any thereof becoming party to a voluntary or involuntary federal or state bankruptcy, insolvency or similar proceeding; and

(d)     the past, current and/or future sale or offering for sale of limited partnership interests in any of the undersigned or the Borrower, including, without limitation, liabilities under any applicable securities or blue sky laws.

All reasonable sums described in this Section 3 and expended by the Lender shall be payable on demand and, until reimbursed by the Borrower or by the undersigned pursuant hereto, shall bear interest at the default interest rate as set forth in the Note.

4.     The undersigned will furnish to Lender such financial statements and other information relating to the financial condition, properties and affairs of Guarantor as required by the Loan Agreement and as Lender otherwise reasonably requests from time to time.  The undersigned hereby represent and warrant that all financial statements of the undersigned heretofore delivered to the Lender by or on behalf of the undersigned are true and correct in all material respects and fairly present the financial condition of the undersigned as of the respective dates thereof, and no material adverse change has occurred in the financial conditions reflected therein since the respective dates thereof.  In addition, the undersigned covenants that so long as this Guaranty has not terminated by its terms, the Guarantor shall provided to Lender all financial and other information as may be required by the Loan Agreement.

5.     In addition to any right available to the Lender under applicable law or any other agreement, the undersigned hereby gives to the Lender a continuing lien on, security interest in and right of set-off against all moneys, securities and other property of the undersigned and the proceeds thereof, now on deposit or now or hereafter delivered, remaining with or in transit in any manner to the Lender, its

correspondents, participants or its agents from or for the undersigned in connection with the Loan, whether for safekeeping, custody, pledge, transmission, collection or otherwise or coming into possession of the Lender in any way, and also, any balance of any deposit account and credits of the undersigned with, and any and all claims of the undersigned against, the Lender at any time existing, as collateral security for the payment of the Debt and all of the other obligations of the undersigned under this Guaranty, including fees, contracted with or acquired by the Lender, whether joint, several, absolute, contingent, secured, matured or unmatured (for the purposes of this paragraph 5 and paragraphs 7, 9 and 19 below, collectively, the "<u>Liabilities</u>"), hereby authorizing the Lender at any time or times when an Event of Default exists, without prior notice, to apply such balances, credits or claims, or any part thereof, to such Liabilities in such amounts as it may select, whether contingent, unmatured or otherwise and whether any collateral security therefore is deemed adequate or not. The collateral security described herein shall be in addition to any collateral security described in any separate agreement executed by any or all of the undersigned. The Lender, in addition to any right available to it under applicable law or any other agreement, shall have the right, at its option, to immediately set off against any Liabilities all monies owed by the Lender in any capacity to any or all of the undersigned, whether or not due, and the Lender shall, at its option, be deemed to have exercised such right to set off and to have made a charge against any such money immediately upon the occurrence of any events of default set forth below, even though such charge is made or entered on the books of the Lender subsequent to those events.

6.   All moneys available to the Lender for application in payment or reduction of the Debt may be applied by the Lender in such manner and in such amounts and at such time or times and in such order, priority and proportions as the Lender may see fit to the payment or reduction of such portion of the Debt as the Lender may elect.

7.   The undersigned hereby expressly agree that this Guaranty is independent of, and in addition to, all collateral granted, pledged or assigned under the Loan Documents, and the undersigned hereby consents that from time to time, before or after any default by the Borrower, with or without further notice to or assent from any of the undersigned:

(a)   any security at any time held by or available to the Lender for any obligation of the Borrower, or any security at any time held by or available to the Lender for any obligation of any other person or party primarily, secondarily or otherwise liable for all or any portion of the Debt, any other Liabilities and/or any other obligations of the Borrower or any other person or party, other than the Lender, under any of the Loan Documents ("<u>Other Obligations</u>"), including any guarantor of the Debt and/or any of such Other Obligations, may be accelerated, settled, exchanged, surrendered or released and the Lender may fail to set off and

may release, in whole or in part, any balance of any deposit account or credit on its books in favor of the Borrower, or of any such other person or party;

    (b)    any obligation of the Borrower, or of any such other person or party, may be changed, altered, renewed, extended, continued, accelerated, surrendered, compromised, settled, waived or released in whole or in part, or any default with respect thereto waived; and

    (c)    the Lender may extend further credit in any manner whatsoever to the Borrower, and generally deal with the Borrower or any of the above-mentioned security, deposit account, credit on its books or other person or party as the Lender may see fit; and the undersigned shall remain bound in all respects under this Guaranty, without any loss of any rights by the Lender and without affecting the liability of the undersigned, notwithstanding any such exchange, surrender, release, change, alteration, renewal, extension, continuance, compromise, waiver, inaction, extension of further credit or other dealing. In addition, all moneys available to the Lender for application in payment or reduction of the Debt and/or any Other Obligations may be applied by the Lender in such manner and in such amounts and at such time or times and in such order, priority and proportions as the Lender may see fit (unless otherwise specifically required by a Loan Document).

    8.    To the extent not prohibited by applicable law or to the extent otherwise expressly provided in the Loan Documents, the undersigned waives (i) diligence and promptness in preserving liability of any person on Debt, and in collecting or bringing suit to collect Guaranteed Indebtedness; (ii) all rights of the undersigned under Rule 31, Texas Rules of Civil Procedure, or Chapter 43 Section 17.001 of the Texas Business and Commerce Code, or Chapter 43 of the Texas Civil Practice and Remedies Code;  (iii) to the extent Guarantor is subject to the Texas Revised Partnership Act ("TRPA"), compliance by Lender with Section 3.05(d) of TRPA;  (iv) protest;  (v) notice of extensions, renewals, modifications, rearrangements and substitutions of Debt; and (vi) notice of acceptance of this Guaranty, creation of Debt, failure to pay Debt as it matures, any other default, adverse change in Borrower's financial condition, release or substitution of collateral, subordination of Lender's rights in any collateral, and every other notice of every kind. If any part of the Debt is secured by an interest in real property ("Real Property"), and such interest is foreclosed upon pursuant to a judicial or nonjudicial foreclosure sale, the undersigned agrees that notwithstanding the provisions of Section 51.003, 51.004, and 51.005 of the Texas Property Code (as amended from time to time), and to the extent permitted by law, Lender may seek a deficiency judgment from the undersigned and any other party obligated on the Debt equal to the difference between the amount owing on the Debt and the amount for which the Real Property was sold at judicial or nonjudicial foreclosure sale.  Nothing herein is intended to waive or vary the duties of Lender or the rights

of the undersigned in violation of Section 9.602 of the Texas Business and Commerce Code. The undersigned irrevocably waives and shall not seek to enforce or collect upon any rights which Guarantor now has or may acquire against Borrower, either by way of subrogation, indemnity, reimbursement or contribution, for any amount paid under this Guaranty or by way of any other obligations of Borrower to the undersigned until 91 days after the Debt is paid in full.

9.  The occurrence and continuance of an Event of Default under and as defined in the Loan Agreement shall constitute an Event of Default under this Guaranty. In any such event, the Lender may declare the Liabilities to be, and the same shall become, immediately due and payable.

10. This is a guaranty of payment and not of collection and the undersigned further waives any right to require that any action be brought against the Borrower or any other person or party or to require that resort be had to any security or to any balance of any deposit account or credit on the books of the Lender in favor of the Borrower or any other person or party. Any payment on account of or reacknowledgment of the Debt by the Borrower, or any other party liable therefor, shall be deemed to be made on behalf of the undersigned and shall serve to start anew the statutory period of limitations applicable to the Debt.

11. Each reference herein to the Lender shall be deemed to include its successors and assigns, in whose favor the provisions of this Guaranty shall also inure. Each reference herein to the undersigned shall be deemed to include the heirs, executors, administrators, legal representatives, successors and assigns of the undersigned, all of whom shall be bound by the provisions of this Guaranty, provided, however, that the undersigned shall in no event nor under any circumstance have the right, without obtaining the prior written consent of the Lender, to assign or transfer the undersigned's obligations and liabilities under this Guaranty, in whole or in part, to any other person, party or entity.

12. The term **"undersigned"** as used herein shall, if this Guaranty is signed by more than one party, unless otherwise stated herein, mean the "undersigned and each of them" and each undertaking herein contained shall be their joint and several undertaking and on an individual and collective basis. All covenants, agreements, representations, and warranties shall be deemed to have been made by each Guarantor individually and collectively and on a joint and several basis. The Lender may proceed against none, one or more of the undersigned at one time or from time to time as it sees fit in its sole and absolute discretion. If any party hereto shall be a partnership or limited liability company, the agreements and obligations on the part of the undersigned herein contained shall remain in force and application notwithstanding any changes in the individuals composing the partnership or limited liability company and the term "undersigned" shall include any altered or successive partnerships or limited liability companies, but the predecessor partnerships or

limited liability companies and their partners or members shall not thereby be released from any obligations or liability hereunder. If any party hereto shall be a corporation, the agreements and obligations on the part of the undersigned herein contained shall remain in force and application notwithstanding the merger, consolidation, reorganization or absorption thereof, and the term "undersigned" shall include such new entity, but the old entity shall not thereby be released from any obligations or liabilities hereunder.

13. Reserved.

14. No delay on the part of the Lender in exercising any right or remedy under this Guaranty or failure to exercise the same shall operate as a waiver in whole or in part of any such right or remedy. No notice to or demand on any or all of the undersigned shall be deemed to be a waiver of the obligations of any or all of the undersigned or of the right of the Lender to take further action without notice or demand as provided in this Guaranty. No course of dealing between any of the undersigned and the Lender shall change, modify or discharge, in whole or in part, this Guaranty or any obligations of the undersigned hereunder.

15. This Guaranty may only be modified, amended, changed or terminated by an agreement in writing signed by the Lender and the undersigned. No waiver of any term, covenant or provision of this Guaranty shall be effective unless given in writing by the Lender and if so given by the Lender shall only be effective in the specific instance in which given. The execution and delivery hereafter to the Lender by any or all of the undersigned of a new instrument of guaranty or any reaffirmation of guaranty, of whatever nature, shall not terminate, supersede or cancel this instrument, unless expressly so provided therein, and all rights and remedies of the Lender hereunder or under any instrument of guaranty hereafter executed and delivered to the Lender by any or all of the undersigned shall be cumulative and may be exercised singly or concurrently.

16. Except as otherwise expressly provided in this Guaranty and the other Loan Documents, the undersigned acknowledge that this Guaranty and the undersigned's obligations under this Guaranty are and shall at all times continue to be absolute, irrevocable and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise constitute a defense to this Guaranty and the obligations of any or all of the undersigned under this Guaranty or the obligations of any other person or party (including, without limitation, the Borrower) relating to this Guaranty or the obligations of any or all of the undersigned hereunder or otherwise with respect to the Debt, including, but not limited to, a foreclosure of the Mortgage or the realization upon any other collateral given, pledged or assigned as security for all or any portion of the Debt, or the filing of a petition under Title 11 of the United States Code with regard to the Borrower or

any or all of the undersigned, or the commencement of an action or proceeding for the benefit of the creditors of the Borrower or the undersigned, or the obtaining by the Lender of title to, respectively, the premises encumbered by the Mortgage or any other collateral given, pledged or assigned as security for the Debt by reason of the foreclosure or enforcement of the Mortgage or any other pledge or security agreement the acceptance of a deed or assignment in lieu of foreclosure or sale, or otherwise. This Guaranty sets forth the entire agreement and understanding of the Lender and the undersigned with respect to the matters covered by this Guaranty and the undersigned acknowledge that no oral or other agreements, understandings, representations or warranties exist with respect to this Guaranty or with respect to the obligations of the undersigned under this Guaranty, except those specifically set forth in this Guaranty.

17. This Guaranty has been validly authorized, executed and delivered by each of the undersigned. The undersigned represents and warrants to the Lender that it has the power to do so and to perform its obligations under this Guaranty, this Guaranty is given in furtherance of its purposes and this Guaranty constitutes the legally binding obligation of the undersigned fully enforceable against the undersigned in accordance with the terms hereof.

18. The undersigned further represent and warrant to the Lender that:

(a) neither the execution and delivery of this Guaranty nor the consummation of the transactions contemplated hereby nor compliance with the terms and provisions hereof will violate any applicable provision of law or any applicable regulation or other manifestation of governmental action; and

(b) all necessary approvals, consents, licenses, registrations and validations of any governmental regulatory body, including, without limitation, approvals required to permit the undersigned to execute and carry out the provisions of this Guaranty, for the validity of the obligations of the undersigned hereunder and for the making of any payment or remittance of any funds required to be made by the undersigned under this Guaranty, have been obtained and are in full force and effect.

19. Notwithstanding any payments made by any or all of the undersigned pursuant to the provisions of this Guaranty, the undersigned irrevocably waive all rights to enforce or collect upon any rights which it now has or may acquire against the Borrower either by way of subrogation, indemnity, reimbursement or contribution for any amount paid under this Guaranty or by way of any other obligations whatsoever of the Borrower to any or all of the undersigned, nor shall any or all of the undersigned file, assert or receive payment on any claim, whether now existing or hereafter arising, against the Borrower in the event of the commencement of a case by or against the Borrower under Title 11 of the United

States Code. In the event either a petition is filed under said Title 11 of the United States Code with regard to the Borrower or the commencement of an action or proceeding for the benefit of the creditors of the Borrower, this Guaranty shall at all times thereafter remain effective in regard to any payments or other transfers of assets to the Lender received from or on behalf of the Borrower prior to notice of termination of this Guaranty and which are held voidable on the grounds of preference or fraud, whether or not the Debt has been paid in full. The provisions of this paragraph 19 shall survive the term of this Guaranty, the payment in full of the Debt and all other Liabilities and the termination of any commitment to make any further advances of Loan proceeds pursuant to the Loan Agreement.

20. Any notice, request or demand given or made under this Guaranty shall be in writing and shall be hand delivered or sent by Federal Express or other reputable courier service or by postage prepaid registered or certified mail, return receipt requested, and shall be deemed given (a) when received at the following addresses if hand delivered or if sent by Federal Express or other reputable courier service, and (b) three (3) business days after being postmarked and addressed as follows if sent by registered or certified mail, return receipt requested:

If to the Lender:

JPMorgan Chase Bank, N.A.
c/o Community Development Banking
221 West Sixth Street, Second Floor
Austin, Texas 78701
Mail Code: TX3-8207)
Attention: Audrey M. Watson

With a copy to:

JPMorgan Chase Bank, N.A.
Legal Department
245 Park Avenue – NY1-Q657
New York, New York 10167
Attention:   Michael R. Zients, Executive Director
 and Assistant General Counsel

If to the undersigned:

At the address set forth opposite the signatures below.

With a copy to:

PNC Bank, National Association
c/o PNC Real Estate
121 S.W. Morrison Street, Suite 1300
Portland, Oregon 97201

With a copy of all notices sent simultaneously to:

2013 Travis Oak Creek, LP
3001 Knox Street, Suite 400
Dallas, Texas 75205
Attn: Rene O. Campos

it being understood and agreed that each party will use reasonable efforts to send copies of any notices to the addresses marked "With a copy to" hereinabove set forth; provided, however, that failure to deliver such copy or copies shall have no consequence whatsoever to the effectiveness of any notice made to any of the undersigned or the Lender. Each party to this Guaranty may designate a change of address by notice given, as herein provided, to the other party fifteen (15) days prior to the date such change of address is to become effective.

21.    This Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of Texas and shall be in all respects governed, construed, applied and enforced in accordance with the laws of the State of Texas without regard to principles of conflicts of laws.

22.    **NOTWITHSTANDING ANYTHING TO THE CONTRARY SET FORTH IN THIS GUARANTY AND/OR ANY OF THE OTHER LOAN DOCUMENTS, THE UNDERSIGNED AND LENDER HEREBY AGREE THAT THE STATE AND FEDERAL COURTS LOCATED IN AUSTIN, TRAVIS COUNTY, TEXAS SHALL HAVE EXCLUSIVE JURISDICTION AND VENUE WITH RESPECT TO ALL ACTIONS BROUGHT BY OR AGAINST ANY PARTY UNDER OR PURSUANT TO THIS GUARANTY, AND THE UNDERSIGNED AND LENDER HEREBY CONSENT TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS AND TO SERVICE OF PROCESS, EFFECTIVE UPON RECEIPT BY PERSONAL SERVICE, OVERNIGHT EXPRESS DELIVERY OR REGISTERED OR CERTIFIED MAIL.**

23.    Except as to the limitations to liability expressly set forth in this Guaranty or as otherwise provided in the Loan Documents, the undersigned absolutely, unconditionally and irrevocably waive any and all right to assert or interpose any defense (other than the final and indefeasible payment in full of the Debt), setoff, counterclaim or crossclaim of any nature whatsoever with respect to this Guaranty or the obligations of the undersigned under this Guaranty, or the

obligations of any other person or party (including without limitation, the Borrower) relating to this Guaranty, or the obligations of the undersigned hereunder or otherwise with respect to the Loan in any action or proceeding brought by the Lender to collect the Debt, or any portion thereof, or to enforce the obligations of the undersigned under this Guaranty (provided, however, that the foregoing shall not be deemed a waiver of the right of the undersigned to assert any compulsory counterclaim maintained in a court of the United States, or of the State of Texas if such counterclaim is compelled under local law or rule of procedure, nor shall the foregoing be deemed a waiver of the right of the undersigned to assert any claim which would constitute a defense, setoff, counterclaim or crossclaim of any nature whatsoever against the Lender in any separate action or proceeding). The undersigned hereby undertake and agree that this Guaranty shall remain in full force and effect for all of the obligations and liabilities of the undersigned hereunder, notwithstanding the maturity of the Loan, whether by acceleration, scheduled maturity or otherwise.

24. No exculpatory provisions which may be contained in the Note, the Mortgage, the Loan Agreement, or in any other Loan Document shall in any event or under any circumstances be deemed or construed to modify, qualify, or affect in any manner whatsoever the obligations and liabilities of the undersigned under this Guaranty.

25. The obligations and liabilities of the undersigned under this Guaranty are in addition to the obligations and liabilities of the undersigned under the Other Guaranties (as hereinafter defined). The discharge of any or all of the undersigned's obligations and liabilities under any one or more of the Other Guaranties by the undersigned or by reason of operation of law or otherwise shall in no event or under any circumstance constitute or be deemed to constitute a discharge, in whole or in part, of the undersigned's obligations and liabilities under this Guaranty. Conversely, the discharge of any or all of the undersigned's obligations and liabilities under this Guaranty by the undersigned or by reason of operation of law or otherwise shall in no event or under any circumstance constitute or be deemed to constitute a discharge, in whole or in part, of the undersigned's obligations and liabilities under any of the Other Guaranties. The term "**Other Guaranties**" as used herein shall mean any other guaranty of payment, guaranty of performance, completion guaranty, indemnification agreement or other guaranty or instrument creating any obligation or undertaking of any nature whatsoever (other than this Guaranty) now or hereafter executed and delivered by any or all of the undersigned to the Lender in connection with the Loan.

26. This Guaranty may be executed in one or more counterparts by some or all of the parties hereto, each of which counterparts shall be an original and all of which together shall constitute a single agreement of guaranty. The failure of any party listed below to execute this Guaranty, or any counterpart hereof, or the

ineffectiveness for any reason of any such execution, shall not relieve the other signatories from their obligations hereunder, nor shall any implication arise from the failure of any of the original guarantors to sign this Guaranty that such non-signing guarantor, or any other guarantor, is released from any of his/her/its respective obligations under the original guaranty.

27.   **THE UNDERSIGNED AND THE LENDER HEREBY WAIVE, TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A JURY TRIAL IN ANY LEGAL PROCEEDING, DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTY HERETO HAVE BEEN INDUCED TO ENTER INTO THIS GUARANTY BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.**

28.   **TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE UNDERSIGNED AND LENDER SHALL NOT ASSERT, AND HEREBY WAIVE, ANY CLAIM AGAINST THE OTHER, ON ANY THEORY OF LIABILITY, FOR SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES (AS OPPOSED TO DIRECT OR ACTUAL DAMAGES) ARISING OUT OF, IN CONNECTION WITH, OR AS A RESULT OF, THIS GUARANTY OR ANY AGREEMENT OR INSTRUMENT CONTEMPLATED HEREBY, THE TRANSACTIONS, THE LOAN OR THE USE OF THE PROCEEDS THEREOF.**

29.   Notwithstanding anything to the contrary set forth in this Guaranty, the obligations of the undersigned under this Guaranty will terminate upon the full and final payment of the Note and the termination of all funding commitments thereunder.

**THIS GUARANTY REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES WITH RESPECT TO THE UNDERSIGNED'S GUARANTY OF GUARANTEED INDEBTEDNESS AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. NO COURSE OF DEALING BETWEEN GUARANTOR AND LENDER, NO COURSE OF PERFORMANCE, NO TRADE PRACTICES, AND NO EXTRINSIC EVIDENCE OF ANY NATURE MAY BE USED TO CONTRADICT OR MODIFY ANY TERM OF THIS GUARANTY.**

**THERE ARE NO ORAL AGREEMENTS BETWEEN GUARANTOR AND LENDER.**

THIS GUARANTY IS executed as of May 23, 2014.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**GUARANTOR:**

_____
RENE O. CAMPOS


2013 TRAVIS OAK CREEK DEVELOPER, INC., a Texas corporation

By: _____
Rene Campos, President


CHULA INVESTMENTS, LTD., a Texas limited partnership

By: Chula Management, L.L.C., a Texas limited liability company, its general partner

By: _____
Rene O. Campos, manager


Address:

3001 Knox Street
Suite 400
Dallas, Texas 75205


SIGNATURE PAGE TO GUARANTY OF PAYMENT AND COMPLETION

GARDERE01 - 6427952

THE STATE OF TEXAS             §
                               §
COUNTY OF  Dallas              §

This instrument was acknowledged before me on the 20th day of May, 2014, by Rene Campos, President of 2013 TRAVIS CREEK DEVELOPER, INC., a Texas corporation, on behalf of said corporation.

_____
NOTARY PUBLIC, State of Texas

[Notary seal: REED A STANDLY, My Commission Expires April 23, 2018]

THE STATE OF TEXAS             §
                               §
COUNTY OF  Dallas              §

This instrument was acknowledged before me on the 20th day of May, 2014, by Rene O. Campos, manager of Chula Management, L.L.C., a Texas limited liability company, on behalf of said limited liability company, as general partner of Chula Investments, Ltd., a Texas limited partnership.

_____
NOTARY PUBLIC, State of Texas

[Notary seal: REED A STANDLY, My Commission Expires April 23, 2018]

THE STATE OF TEXAS             §
                               §
COUNTY OF  Dallas              §

This instrument was acknowledged before me on the 20th day of May, 2014, by RENE O. CAMPOS.

_____
NOTARY PUBLIC, State of Texas

[Notary seal: REED A STANDLY, My Commission Expires April 23, 2018]

EUREKA MULTIFAMILY GROUP, LP, a Texas limited partnership

By: Eureka Multifamily Group GP, Inc., a Texas corporation, its general partner

By: _____
Name: _____
Title: _____

THE STATE OF TEXAS           §
                             §
COUNTY OF Dallas             §

This instrument was acknowledged before me on the 20th day of May, 2014, by Rene Campos, Director of Eureka Multifamily Group GP, Inc., a Texas corporation, on behalf of said corporation, as general partner of EUREKA MULTIFAMILY GROUP, LP, a Texas limited partnership.

_____
NOTARY PUBLIC, State of Texas

REED A STANDLY
My Commission Expires
April 23, 2018

GARDERE01 – 6427952
SIGNATURE PAGE TO GUARANTY OF PAYMENT AND COMPLETION

LENDER: (Lender's signature is provided as its acknowledgement of the above as the final written agreement between the parties and its agreement with the Jury Trial Waiver.)

JPMORGAN CHASE BANK, N.A.

By: *[signature]*

Audrey M. Watson, Authorized Officer

# EXHIBIT A

<u>Loan Agreement</u>:  The term **"Loan Agreement"** as used in this Guaranty shall mean a certain Credit Support and Funding Agreement dated of even date herewith to be entered into between the Lender and the Borrower, as the same may be modified, amended, renewed or replaced from time to time.

<u>Mortgage</u>:  The term **"Mortgage"** as used in this Guaranty shall mean a certain Construction Deed of Trust, Absolute Assignment of Rents, Security Agreement and Financing Statement dated of even date herewith, securing, among other things, the Note to be given by the Borrower to the Lender covering the fee estate of the Borrower in certain premises located in Austin, Travis County, Texas, as more particularly described therein; and intended to be duly recorded in the Official Public Records of Travis County, Texas, as the same may be modified, amended, renewed or replaced from time to time.

<u>Mortgaged Property</u>:  The term **"Mortgaged Property"** as used in this Guaranty shall have the meaning ascribed to such term in the Mortgage.

<u>Note</u>:  The term **"Note"** as used in this Guaranty shall mean a certain Advance Promissory Note dated of even date herewith, in the original principal sum of $26,000,000.00 to be given by the Borrower to the Lender, as the same may be modified, amended, renewed or replaced from time to time.